UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br> *Plaintiffs,*<br><br> v.<br><br>AMERICAN AIRLINES INC.,<br><br> *Defendant.* | **Civil Action No. 4:24-cv-00980**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SEVER AND STAY
CLAIMS AGAINST VIASAT'S IN-FLIGHT CONNECTIVITY SYSTEMS**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. BACKGROUND .......................................................................................................... 2

III. ARGUMENT ................................................................................................................ 3

    A. The Customer Suit Exception Does Not Apply. ................................................... 3

    B. The Traditional Stay Factors Do Not Warrant A Stay ........................................... 9

    C. The Court Should Order Limited Discovery ....................................................... 10

IV. CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Corydoras Techs., LLC v. Best Buy Co.*,
  No. 2:19-cv-00304-JRG-RSP, 2020 WL 1275782 (E.D. Tex. Mar. 17, 2020) ......................4, 9

*CyWee Grp. Ltd. v. Huawei Device Co.*,
  No. 2:17-cv-495-WCB, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ...................................8

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  No. 2:15-CV-1202-WCB, 2016 WL 1659924 (E.D. Tex. Apr. 26, 2016) ................................7

*Fleet Connect Sols., LLC v. Precision Drilling Corp.*,
  No. 6:21-CV-00987-ADA, 2022 WL 2373711 (W.D. Tex. June 30, 2022) ....................5, 6, 9

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ...........................................................................................8

*Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.*,
  No. 2:24-CV-00125-JRG, 2024 WL 4729750 (E.D. Tex. Nov. 8, 2024)........................ *passim*

*Mirror Worlds Techs., LLC v. Dell, Inc.*,
  No. 6:13–CV–941, 2014 WL 11268268 (E.D. Tex. Sept. 29, 2014) ..............................5, 6, 10

*Network Sys. Techs., LLC v. Samsung Elecs. Co.*,
  No. 2:22-CV-00481-JRG, 2023 WL 7649372 (E.D. Tex. Nov. 14, 2023)...............................8

*Parallel Networks Licensing, LLC v. Superior Turnkey Solutions Group, Inc.*,
  No. 4:19-cv-516, 2020 WL 2098203 (E.D. Tex. May 1, 2020) ...............................................6

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
  No. 2:19-CV-00025-JRG, 2019 WL 6344471 (E.D. Tex. Nov. 27, 2019)...............................7

*SITO Mobile R&D IP, LLC v. SFA Holdings, Inc.*,
  No. 1:23-CV-688-RP, 2024 WL 3843804 (W.D. Tex. Apr. 19, 2024) .....................................8

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006)................................................................................................8

*Wapp Tech Ltd. P'ship v. Wells Fargo & Co.*,
  No. 4:18-CV-00501, 2019 WL 3890172 (E.D. Tex. Aug. 19, 2019).................................3, 10

*Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*,
  No. 2:21-CV-0453-RWS-RSP, 2023 WL 318466 (E.D. Tex. Jan. 19, 2023*)* ...........................8

I.  **PRELIMINARY STATEMENT**[1]

Faced with Plaintiffs' ("IV") allegations regarding Defendant's ("American") infringement of several IV patents, American seeks to sever and stay IV's claims for two of six patents relating to American's incorporation and provision of in-flight Wi-Fi connectivity to its customers, in deference to a Delaware declaratory judgment action filed by ViaSat, Inc. ("ViaSat"), a manufacturer of certain components used in those in-flight connectivity systems, well after this suit was filed. American's motion ("Motion"), however, confirms that there is no valid basis for, or efficiency gained by, severing two of the six patents or staying a portion of this case.

*First*, while American invokes the "customer suit exception" to the first-filed rule, it cannot meet the requirements of that exception because the systems at issue involve more than American's mere resale or use of another manufacturer's product and ViaSat is *not the only source* of in-flight connectivity that American utilizes in its aircraft. American uses at least three suppliers for the Accused Functionality (and potentially other suppliers as well), only one of which (ViaSat) has filed a declaratory action in Delaware. American incorporates those manufacturers' products into its aircraft to provide specific services to American's customers through American's internet portal, which requires analyzing infringement beyond the subject manufacturers.[2] Accordingly, American is not a mere "reseller," and ViaSat is not the sole provider of the Accused Functionality. Moreover, ViaSat's declaratory judgment complaint does not contend that it is responsible for the design and development of the specific technology accused here. Instead ViaSat's complaint

---

[1] Submitted herewith is the February 28, 2025, declaration of Jonathan K. Waldrop, with exhibits ("Ex. __").

[2] A complete determination of all the components that provide for American's infringement of IV's patents during the damages time period is currently unfeasible because there has been no discovery. During a meet and confer on February 13, 2025, IV requested limited discovery related to American's Motion and a briefing schedule. American did not answer this request and filed this Motion.

1

alleges that parts of this technology are provided by third party component makers, suggesting that third-party discovery and witnesses may be required. *See* Ex A at ¶ 48.

*Second*, a stay would not simplify this litigation and is inconvenient. Staying and severing would force IV to litigate its infringement claims against American in separate courts in two different states, one case addressing ViaSat only, in Delaware, and in this case against non-ViaSat suppliers (and other fora, assuming that IPRs are filed in the case). This would result in separate cases involving the same or similar issues pending at the same time. Further, American's motion identifies no factual connection to Delaware (beyond IV's incorporation there).

*Third*, a stay is not convenient for the parties. American's only (tenuous) connection to Delaware is ViaSat's lawsuit there.

## II.   BACKGROUND

On November 11, 2024, IV filed this action, alleging that American infringes six patents for which IV owns all rights, title and interest, including United States Patent Nos. 8,027,326 (the "'326 Patent"), entitled "Method and System for High Data Rate Multi-Channel WLAN Architecture," and 7,324,469 (the "'469 Patent"), entitled "Satellite Distributed High Speed Internet Access."[3] On January 27, 2025, American filed a motion to dismiss, arguing that the claims of the '785 Patent and '582 Patent are unpatentable and claim ineligible subject matter, and that IV failed to plausibly plead infringement of the '844 Patent and '722 Patent. Dkt. 15.[4] On February 17, 2025, American filed the instant motion to sever and stay IV's claims relating only to the '326 and '469 Patents, based on the pendency of ViaSat's Delaware declaratory judgment action.

---

[3] The other patents involved in this action are United States Patent Nos. 8,332,844 (the "'844 Patent"); 8,407,722 (the "'722 Patent"); 7,949,785 (the "'785 Patent"); and 7,257,582 (the "'582 Patent"). American does not seek to sever or stay this action for those patents.
[4] IV has until March 12, 2025, to respond to American's motion to dismiss. Dkt. 19.

Meanwhile, on January 14, 2025, ViaSat brought suit against IV in the United States District Court for the District of Delaware, seeking a declaratory judgment that its products do not infringe the '326 and '469 Patents and that IV's infringement claims regarding the '326 Patent are exhausted. Ex. A. ViaSat alleges that IV's claims here "directly accuse[] ViaSat's in-flight connectivity systems of patent infringement, impacting ViaSat's business and relationships with its customer." *Id*. at ¶ 9. ViaSat also alleges that: (1) certain of its products do not infringe the '326 Patent or the '469 Patent; and (2) IV's infringement allegations relating to the '326 Patent are barred by patent exhaustion. *Id*. at ¶¶ 45, 46, 64. ViaSat does not contend it is the exclusive provider of Wi-Fi services to American (nor could it, as there are other providers, including at least Intelsat and Panasonic). Additionally, ViaSat alleges that its in-flight connectivity systems "exclusively use[] Wi-Fi base stations." *Id*. at ¶ 48.

### III.   ARGUMENT

#### A.   The Customer Suit Exception Does Not Apply.

The customer suit exception to the first to file rule is inapplicable here. As this Court has noted, this exception is applied "if it would 'facilitate just, convenient, efficient, and less expensive determination' of the issues," and resolve the case in a manner that "substantial savings of litigation resources can be expected." *Wapp Tech Ltd. P'ship v. Wells Fargo & Co.*, No. 4:18-CV-00501, 2019 WL 3890172, at *2 (E.D. Tex. Aug. 19, 2019). Indeed, American concedes that the "customer-suit exception is guided by the principles of efficiency and judicial economy" (Mot. at 4), principles which are not achieved by a stay or severance here. In deciding whether to apply the customer suit exception, the Court analyzes: "(1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed

3

action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Liberty Access Techs. Licensing LLC v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-CV-00125-JRG, 2024 WL 4729750, at *2 (E.D. Tex. Nov. 8, 2024) (citations omitted). American cannot meet this test.

*First*, American is not a mere reseller or user of ViaSat systems because American does not merely purchase and utilize those products in their "off the shelf" condition. *Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-cv-00304-JRG-RSP, 2020 WL 1275782, at *3 (E.D. Tex. Mar. 17, 2020) (holding that "[t]he customers themselves are the 'true defendants' because they purchased accused products from multiple unrelated manufacturers"). Rather, American incorporates those products into its aircraft for "in flight" passenger use. *See, e.g.*, Dkt. 1-12 at 2 ("The Accused Systems and Services *include without limitation American systems and services* that provide Wi-Fi access points …") (emphasis added); *id*. at 7-8 ("American provides in flight Wi-Fi connectivity through provider equipment, such as the ViaSat Select Router and Panasonic modem"); *id.* at 2 ("The American Systems and Services provide Wi-Fi Access Points that enable Internet connectivity on its airplanes").

For example, IV alleges infringement specifically of claim 24 of the '469 Patent, which recites elements that ViaSat's complaint does not address. Claim 24 recites in part "*a web-ready device* operatively coupled to the at least one router … having a browser application operating thereon" and "wherein *the user may authenticate the subscription account* and access the Internet." Dkt. 1-13 at 31. (emphasis added). ViaSat does not allege that it provides all elements recited in this claim, *e.g.,* the "web ready device operatively coupled to the at least one router [having] a browser application …." *See generally* Dkt. 1 and Ex. A. American's Motion to Dismiss and this Motion do not address this claim element or identify the hardware and software that American

4

contends are related to the asserted claims. *See generally* Dkt. 15.  As another example, ViaSat is silent on the authentication step of this claim, which relates to American's web portal technology. *See* Dkt. 1-13 at 19 ("American passengers authenticate themselves on the american.com web portal to access in-flight Wi-Fi for example through the subscriber access unit"). Certainly, a customer portal designed specifically for American is not an "off the shelf" product, even if ViaSat is involved somehow in its design. Thus, IV's complaint involves allegations of how *American* enables its passengers to access in-flight Wi-Fi through steps and components that go beyond ViaSat's "in-flight Wi-Fi systems."

Even assuming *arguendo* ViaSat's products alone directly infringe the '469 and '362 Patents, that does not mean American's conduct and services do not directly and indirectly infringe that patent, for example in the context of web-ready devices that are not provided by ViaSat. While staying and severing in favor of the Delaware declaratory judgment actions may perhaps resolve certain issues, the *major* ones, *i.e.*, American's direct and indirect infringement, will not be resolved by doing so. See *Mirror Worlds Techs., LLC v. Dell, Inc.*, No. 6:13–CV–941, 2014 WL 11268268, at *3 (E.D. Tex. Sept. 29, 2014) (customer suit exception inapplicable where stay would not resolve several major issues). *See also Fleet Connect Sols., LLC v. Precision Drilling Corp*., No. 6:21-CV-00987-ADA, 2022 WL 2373711, at *2 (W.D. Tex. June 30, 2022) ("to warrant a stay of the customer suit," manufacturer case must have the "potential to resolve the 'major issues' concerning the claims against the customer"). Thus, severing and staying will not "avoid wasteful expenditure of resources," the *sine qua non* of the customer suit exception. *See id*. at *2-3 (denying motion to stay under customer suit exception where plaintiff advanced claims that would not be

resolved in manufacturer's declaratory judgment action).[5] Because ViaSat's declaratory judgement complaint does not seek declarations related to invalidity, the Court will also have to address these issues serially and inefficiently.

Indeed, in *Mirror Worlds*, this Court denied a motion to stay under the customer suit exception where Microsoft, the primary manufacturer of the software in the accused products, filed a declaratory judgment action, because other defendants "implement the software on their products in ways that potentially infringe." 2014 WL 11268268, at *2-3. So too, here, the accused products/services may include ViaSat's technology, but they are incomplete without incorporation by American of those components in its aircraft, along with other hardware/software necessary for the system to allow passengers to utilize in-flight Wi-Fi. American is thus not a mere user or reseller of ViaSat products. *See also Liberty Access,* 2024 WL 4729750, at *2 (rejecting customer suit exception where "Plaintiff's infringement theory relies on a combination of [manufacturer's] and [defendant's] functionalities"); *Fleet Connect*, 2022 WL 2373711, at *2-3 (rejecting customer suit exception because plaintiff contended defendant "infringes the system claims by combining [the manufacturer's] products with 'components, including smartphones, vehicles, and data' provided by Defendant and its personnel" and the accused systems were "incomplete without components supplied by Defendant … This suggests that Defendant is more than a mere user."); *Parallel Networks Licensing, LLC v. Superior Turnkey Solutions Group, Inc.*, No. 4:19-cv-516, 2020 WL 2098203, at *3 (E.D. Tex. May 1, 2020) (denying motion to stay in favor of Delaware declaratory judgment action by technology manufacturer where "[r]egardless of the outcome in the … declaratory judgment action, [plaintiff] will still have a cause of action against [movant] …

---

[5] Because an infringement determination in the Delaware action will not necessarily resolve the direct infringement claims against American, American's representation that it "agrees to be bound" (Mot. at 7, 9) by the Delaware determination is meaningless.

6

as a user of—or as one who has provided and caused to be used—the method patents-in-suit"); *Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 WL 6344471, at *3-4 (E.D. Tex. Nov. 27, 2019) (denying motion to stay under customer suit exception where Apple incorporated chipsets of manufacturers in accused Apple products); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *3 (E.D. Tex. Apr. 26, 2016) (customer use exception inapplicable to infringement claim where customer did not use manufacturer's product "off the shelf").

American relies on the declaration of Bryan Riffe, its "Managing Director, Cabin Configuration Engineering" for the proposition that American does not "design or manufacture the In-flight WiFi systems, including the equipment used in [those] systems," and American does not maintain relevant source code or technical documentation for those systems. Dkt. 20-4 at ¶¶ 5-7. However, IV has had no opportunity to depose Mr. Riffe or investigate his contentions, including whether there are additional suppliers of necessary components. Moreover, Mr. Riffe does not identify what hardware and software are involved and stops well short of confirming that ViaSat has possession, custody, and control of the discovery and witnesses that are relevant here. ViaSat itself has identified components supplied by third parties as relevant to the accused technology. Ex. A at ¶ 48.

Further, ViaSat is not the "only source of the infringing product." On its face, American's Motion makes clear that the infringing products come from several parties. *See* Dkt. 20-4 ("American contracts with three manufacturer vendors for its in-flight Wifi Systems: ViaSat, Panasonic Avionics and Intelsat"). American does not refute IV's allegation that American "has partnered with Intelsat, ViaSat, GoGo, and Panasonic to provide its passengers with in-flight Wi-

7

Fi connectivity. American Airline's aircrafts are equipped with Intelsat, ViaSat, GoGo, and Panasonic's In-Flight Connectivity system." Mot. at 5 n. 2.[6]

Accordingly, American also cannot satisfy the third customer suit exception prong. *See Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (declining to apply customer suit exception where there were other sources of the accused software functionality, explaining that the alleged manufacturer "is not the only source of the software used in the phones alleged to infringe."); *Liberty Access,* 2024 WL 4729750, at *3 (customer suit exception inapplicable where the purported customer "relies on a combination of functionality provided by [purported manufacturer] and [it]'s own platforms, systems, and mobile application," and explaining that software interface that is provided by the customer weighs against a stay).[7]

---

[6] American states that "[i]n its allegations regarding the '469 patent, Docket No. 1-13, Intellectual Ventures also references "GoGo," but Intelsat bought Gogo's commercial aviation business in 2020," and that "[t]oday, Gogo does not offer services to commercial airlines such as American Airlines, and thus gogoair.com has no ongoing relevance to this action." Dkt. 20 at 2 n. 1. American makes no such representations regarding Intelsat and Panasonic.

[7] This fact, *inter alia*, distinguishes this case from American's cases. *See, e.g., In re Google Inc*., 588 F. App'x 988, 990 (Fed. Cir. 2014) (declaratory judgement action involved all of the same seven patents as the first-filed litigation and plaintiff provided identical infringement contentions to all defendants); *SITO Mobile R&D IP, LLC v. SFA Holdings, Inc.*, No. 1:23-CV-688-RP, 2024 WL 3843804, at *3 (W.D. Tex. Apr. 19, 2024) (exception applied where only one manufacturer supplied accused technology and stay would simplify case because parallel action involved "the same six patents asserted in this case"); *Network Sys. Techs., LLC v. Samsung Elecs. Co*., No. 2:22-CV-00481-JRG, 2023 WL 7649372, at *4 (E.D. Tex. Nov. 14, 2023) (non-movant did not claim that movant made modifications to the software at issue); *Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.,* No. 2:21-CV-0453-RWS-RSP, 2023 WL 318466, at *2 (E.D. Tex. Jan. 19, 2023*)* ("there is no allegation that Ford has modified or customized the accused fuel injector"); *CyWee Grp. Ltd. v. Huawei Device Co*., No. 2:17-cv-495-WCB, 2018 WL 4002776, at *6 (E.D. Tex. Aug. 22, 2018) ("neither party has asserted that there are any other sources of the infringing product other than through the combined efforts of Google and Huawei").

8

### B. The Traditional Stay Factors Do Not Warrant A Stay

A stay is also not warranted under the traditional stay factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Liberty Access*, 2024 WL 4729750, at *2.

Staying this action would prejudice IV because a stay would delay enforcement of its patents and risk spoliation of infringement evidence.[8] Indeed, because the customer suit stay factors are not met, the traditional stay factors are also not met. *See Liberty Access*, 2024 WL 4729750, at *3 (where customer suit exception did not apply, "a stay would unduly delay Plaintiff's right to seek timely enforcement of its intellectual property rights before a court of law [and] would not mitigate Plaintiff's concerns about spoliation of evidence, which is a reasonable risk with any delay."); *Fleet Connect*, 2022 WL 2373711, at *4 ("in failing to show that it is a mere reseller, [defendant] has not shown that the issues of direct infringement are clearly common between these cases …[I]t is unlikely that a stay will simplify the issues in this Action. This is typically the most important factor in the stay analysis … All a stay would accomplish is delay [plaintiff] from seeking vindication of its hard-won patent rights ….").

Litigating these issues in Delaware would also prejudice IV because "(1) [IV] would not be able to address issues related to [American] along with all of the related issues and (2) any favorable relief for [IV] could be substantially delayed if this case were stayed." *See Corydoras Techs.*, 2020 WL 1275782, at *5 (concluding that the prejudice factor "weighed against a stay because of the increased expense and delay"). Moreover, a stay here pending ViaSat's Delaware

---

[8] American's contention that IV will not be prejudiced because it can obtain its monetary damages in the Delaware action (Mot. at 8) is misguided. IV *has no claim* pending in that action, which in any event seeks only declaratory relief.

9

action will not simplify the issues here, because it would not resolve the issues of whether American's conduct and services directly and indirectly infringe the Patents. *See supra,* Section III.A. Thus, a stay is not warranted under the second traditional factor. *See Liberty Access*, 2024 WL 4729750, at *3 (stay unwarranted where declaratory judgment action would leave certain major issues unresolved).

### C. The Court Should Order Limited Discovery

IV respectfully requests that this Court grant IV leave to conduct limited discovery to supplement the record in view of the declaration submitted in support of American's motion. IV requires further information from American regarding its motion and statements made by Mr. Riffe. This Court has granted limited discovery in similar situations. *See, e.g.*, *Wapp Tech* , 2019 WL 3890172, at *3 (finding defendant's motion to stay premature "as additional discovery should be conducted by the parties to determine whether Defendant is a customer or manufacturer of an accused system."). *See also Mirror Worlds*, 2014 WL 11268268, at *3 ("It would be improper at this stage in the litigation to dismiss [plaintiff's] allegations against the [defendants] as baseless. The Court is not in a position, nor could it be prior to discovery, to determine the merit of each allegation in [plaintiff's] infringement contentions").[9]

## IV. CONCLUSION

For the foregoing reasons, American's motion to sever and stay should be denied in its entirety.

Dated: February 28, 2025               Respectfully Submitted,

By: /s/ *Jonathan K. Waldrop*
    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com

---

[9] Indeed, staying this action absent discovery would expose IV to numerous, duplicative declaratory judgment actions as additional providers are identified.

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Allen F. Gardner (TX Bar No. 24043679)
Allen@allengardnerlaw.com
ALLEN GARDNER LAW, PLLC
609 S. Fannin
Tyler, TX 75701
Phone: (903) 944-7537
Fax: (903) 944-7856

*Attorneys for Plaintiff*
*INTELLECTUAL VENTURES I LLC and*
*INTELLECTUAL VENTURES II LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on February 28, 2025, via the Court's CM/ECF system.

                                              */s/ Allen F. Gardner*
                                               Allen F. Gardner