# EXHIBIT E

# United States District Court

### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **SYNQOR INC.** | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **Civil Action No. 2:14cv287-RWS-JBB** |
| | § | |
| **VICOR CORPORATION** | § | |
| **Defendant** | § | |

---

## <u>ORDER</u>

---

The above-referenced cause of action has been referred to the undersigned United States

Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motion

is before the Court:

> **Defendant Vicor Corporation's Motion to Strike Dr. Dickens as a Substitute Expert (Dkt. No. 386).**

The Court, having considered the relevant briefing, is of the opinion the motion to strike Dr. Dickens

as a substitute expert should be **DENIED**.

# Contents

I.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

II.   Motion to Strike . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

III.  Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

IV.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

   A. Motion to strike Dr. Dickens as a substitute expert . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   B. Alternative motion to strike three discrete portions of Dr. Dickens' supplemental reports. .19

    1. Parties' assertions, generally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

    2. Applicable law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    3. Motion to strike two portions of Dr. Dickens' third supplemental report. . . . . . . . . . . . . .21

    4. Motion to strike Dr. Dickens' fourth supplemental report in its entirety. . . . . . . . . . . . . . .25

V.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

# I. BACKGROUND

SynQor Inc. ("SynQor") has been pursuing its patent infringement claims against Vicor Corporation ("Vicor") since January 2011. *See* Cause No. 2:11cv54 ("'54 case") against Cisco Systems, Inc. ("Cisco") and Vicor. SynQor engaged the same two technical experts it utilized in Cause No. 2:07cv497 ("'497 case") that was tried to a Marshall jury in December 2010 – Dr. James Dickens for validity and Dr. Steven Leeb for infringement. Dr. Dickens offered opinions regarding validity in support of SynQor's Motion for Preliminary Injunction ("PI"), and Vicor deposed Dr. Dickens on May 13, 2011. Dr. Leeb offered opinions regarding infringement in support of that PI motion, and he was deposed on February 28, 2011 and March 4, 2011. After the PI phase of the '54 case, SynQor consolidated the validity and infringement issues with Dr. Leeb and the case proceeded through claim construction and fact and expert discovery.

In 2014, now-retired Magistrate Judge Craven granted Cisco's motion to sever SynQor's claims against it from SynQor's claims against Vicor, creating two newly-created causes of action. *See* Cause No. 2:14cv286 ("'286 case") against Cisco; *see also* Cause No. 2:14cv287 ("'287 case" or "current case") against Vicor. In the '287 case, SynQor alleged Vicor indirectly infringes four patents relating to unregulated bus converter technology—United States Patent Nos. 7,072,190 (the '190 patent), 7,564,702 (the '702 patent), 8,023,290 (the '290 patent) and 7,272,021 (the '021 patent). Dkt. No. 2, ¶¶ 35-58. Throughout 2014 and 2015, Dr. Leeb prepared multiple expert reports disclosing his opinions, and he was deposed by Vicor (and Cisco, who has since settled) over the course of four days in May 2014. In 2016, shortly before trial in the current case, Vicor sought and obtained a stay of SynQor's claims pending the final resolution of *inter partes* reexaminations Vicor had filed with the Patent Office.

3

Well over five years later, the Court lifted the stay and authorized supplemental discovery for the purpose of "updating the record based on occurrences since the prior close of discovery." Dkt. Nos. 311, 353. The Court also set the case for a status conference on February 2, 2022 to discuss, among other things, resetting the case for trial. Post-reexamination, the only asserted patent claims that remain at issue are claims 2, 19, 28, and 31 of the '190 patent and claims 55, 67, and 71 of the '702 patent.[1]

Two days before the status conference, SynQor informed Vicor that Dr. Leeb was no longer available to serve as SynQor's expert and that SynQor had reached out to Dr. Dickens, who is already under the protective order, regarding his availability. Dkt. No. 386-1 (email chain between M. Hatcher and L. Brewer) at 2. SynQor stated Dr. Dickens was available and in the process of reviewing Dr. Leeb's reports and depositions, and he believed (subject to completing that review) that he could "adopt Dr. Leeb's opinions and substitute in for him." *Id.* When Vicor asked to know the "specific reason why Dr. Leeb is unavailable (for example, is it illness or injury or retirement from the profession and, if not, then what)," SynQor responded that "Dr. Leeb wanted to be replaced for personal reasons." *Id*. at 1.

At the February 2 status conference, SynQor's counsel first noted that Vicor had produced updated sales data through the expiration of the patents in January of 2018. Dkt. No. 332 (Transcript) at 10:7-10. Counsel then discussed the "limited fact and expert [supplemental] discovery" remaining,

---

[1] On May 25, 2022, Judge Craven issued a Report and Recommendation of the United States Magistrate Judge ("R&R"), recommending Vicor's motion for the involuntary dismissal of the '290 patent be granted and that the Court dismiss with prejudice the '290 patent at this time. Dkt. No. 368. SynQor has filed objections to the R&R, which are still pending before District Judge Schroeder.

During the February 2, 2022 status conference, SynQor's counsel stated, regarding the '021 patent, that "all of the asserted claims were held unpatentable in re-exam," so "it's now out or it will be out." Dkt. No. 332 at 20:3-6; *see also id.* at 22:5-7 ("And of course, the '021's going to fall out. It's just a matter of when.").

specifically noting the following supplemental fact discovery that would be needed: (1) review the supplemental sales data produced by Vicor; (2) technical documents and information regarding the six new part numbers in the supplemental data (or reach an agreement about that, including confirmation from Vicor that all of its old part numbers have not changed in the interim between when the case was stayed and the expiration of the patents); (3) supplemental interrogatory responses to confirm whether all of Vicor's bus converters are still made in the United States; (4) documents from Vicor on how the three "new higher volume end customers use the accused part numbers" and potentially documents from the three end customers; and (5) update SynQor's discovery responses and productions "on the issue of SynQor's equivalence to Vicor's part numbers," "SynQor's capacity data for the interim period," and "any royalty payments that have occurred since the case was last stayed." *Id.* at 10:13-13:24. On the expert discovery side, SynQor's counsel stated "the parties should each be able to supplement their prior expert reports, updating them to address the additional volumes and part numbers." *Id*. at 13:25-14:4. SynQor then raised the "expert continuity issue" with Judge Craven and represented that Dr. Dickens was reviewing all of Dr. Leeb's materials and would be able to "adopt all of Dr. Leeb's opinions and testimony as his own, and thus, be able to simply substitute in place of Dr. Leeb." *Id*. at 15:19-21.

Vicor's counsel noted the fact that SynQor's expert is unavailable is "very frustrating," further highlighting the prejudice it would suffer if the Court allows the substitution; however, counsel acknowledged that courts in the Eastern District of Texas would allow substitution as long as there are "no new opinions." *Id.* at 24:1-25:18 (stating Dr. Dickens should be required to substantively adopt Dr. Leeb's opinions verbatim and certify that he will adopt the deposition testimony as his own in order for Vicor to cross-examine him and further stating there would still

5

be severe prejudice on cross examination "because it is a different person who said it").  Judge Craven indicated those conditions seemed fair and noted the parties and the Court could work out specific issues as they arose. *Id*. at 25:9-11, 26:10-12.

On April 5, 2022, the Court granted the parties' Joint Motion for Entry of Proposed Scheduling Order Governing the Case, setting May 6 as the deadline for submission of supplemental expert reports for which the party bears the burden of proof and June 3 as the deadline for submission of supplemental expert reports for which the party does not bear the burden of proof, including responding to the opposing party's burden supplemental expert reports. Dkt. No. 353. The parties agreed "that the supplemental fact and expert discovery is limited to supplemental discovery for the purpose of updating the record based on occurrences since the prior close of discovery, and both parties reserve the right to object to the other party's discovery requests and/or expert reports as improper supplemental discovery." *Id*. at 1, n. 1.

On June 3, 2022, after completing his review of the relevant materials, Dr. Dickens provided a signed statement, adopting "all of Dr. Leeb's opinions and testimony therein relating to SynQor's claims against Vicor on the '190 patent, the '702 patent, and the '021 patent, including to the extent relevant to Vicor's counterclaims."[2] Dkt. No. 386-4 (Dr. James Dickens Statement Adopting Dr.

---

[2] Dr. Dickens' adoption includes Dr. Leeb's following opinions and testimony regarding infringement, validity and any issues in support of damages: (1) February 8, 2011 Declaration of Steven B. Leeb, Ph.D. in Support of Motion for Preliminary Injunction; (2) March 14, 2011 First Supplemental Declaration of Steven B. Leeb, Ph.D. in Support of Motion for Preliminary Injunction; (3) April 8, 2011 Second Supplemental Declaration of Steven B. Leeb, Ph.D. in Support of Motion for Preliminary Injunction; (4) May 16, 2011 Third Supplemental Declaration of Steven B. Leeb, Ph.D. in Support of Motion for Preliminary Injunction; (5) September 6, 2013 Declaration of Steven B. Leeb, Ph.D. in Support of Claim Construction; (6) April 11, 2014 Infringement Expert Report of Steven B. Leeb, Ph.D.; (7) May 2, 2014 First Supplement Infringement Expert Report of Steven B. Leeb, Ph.D.; (8) May 9, 2014 Validity Expert Report of Steven B. Leeb, Ph.D.; (9) May 19, 2014 Rebuttal Expert Report of Steven B. Leeb, Ph.D.; (10) March 6, 2015 Second Supplement Infringement Expert Report of Steven B. Leeb, Ph.D.; (11) September 4, 2015 Supplemental Validity Expert Report of Steven B. Leeb, Ph.D.; and (12) February 28, 2011; March 14, 2011; October 11, 2013; May 27, 2014; May 28, 2014; May 29, 2014; and May 30, 2014 Depositions of Steven Leeb, Ph.D.

Steven Leeb's Opinions and Testimony) at 1. Dr. Dickens also reviewed the following expert report and trial testimony of Dr. Leeb from the '497 case and adopts "all of Dr. Leeb's opinions and testimony relating to Vicor's bus converters as specified" in the "October 1, 2010 Supplemental Infringement Report of Steven B. Leeb, Ph.D. in '497 case, paragraphs 4 to 21 only" and Dr. Leeb's "trial testimony at pages 177 to 179 of the 12/15 am trial transcript for the '497 case." *Id.* at 2.

Since the February 2, 2022 status conference, SynQor has also served two reports from Dr. Dickens, styled as the "third" and "fourth" supplemental reports to Dr. Leeb's previous reports. In the May 6, 2022 Third Supplemental Infringement Expert Report of James Dickens, Ph.D. ("third supplemental report"), Dr. Dickens addresses: (1) Vicor's statements and documents regarding any changes to its accused bus converters since fact discovery last closed, (2) Vicor bus converters sold to, among others, Infinera Corporation ("Infinera"), Micron Technologies, Inc. ("Micron"), and UniTest Inc. and/or its subsidiary UT America Inc. (together, "UniTest"), (3) the continued absence of suitable non-infringing alternatives since the March 2015 Report, and (4) the availability of suitable replacement SynQor bus converters for certain Vicor accused bus converters which were more recently sold. Dkt. No. 386-8 (third supplemental report) at 2.

Following the expiration of the May 6 deadline for affirmative supplemental expert reports, SynQor served the June 10, 2022 Fourth Supplemental Infringement Expert Report of James Dickens Ph.D. ("fourth supplemental report") one business day before Vicor was set to depose Dr. Dickens. *See* Dkt. No. 386-6 (fourth supplemental report); *see also* Dkt. No. 386-7 (Vicor's notice of deposition of Dr. Dickens) at 1 (setting deposition date on Monday, June 13). Vicor thereafter deposed Dr. Dickens for seven hours on the record.

7

## II. MOTION TO STRIKE

On June 24, 2022, Vicor filed its current motion, first asserting Dr. Dickens should be stricken as SynQor's substitute expert. Dkt. No. 386 at 8-12. Applying the four "good cause" factors that apply to a late-designated expert, Vicor submits the "factors strongly favor excluding Dr. Dickens from testifying as a substitute expert for Dr. Leeb." *Id.* at 8. In the alternative, Vicor asserts the Court should strike the new "problematic portions of Dr. Dickens's third supplemental report and strike his fourth report in its entirety." *Id.* at 12 (emphasis removed). Vicor states Dr. Dickens has not merely "step[ped] into the shoes" of Dr. Leeb as represented by SynQor but has "attempted to fix flaws with" Dr. Leeb's prior reports. *Id.* at 10 (quoting Dkt. No. 337 at 4, n. 3). According to Vicor, in his third supplemental report, Dr. Dickens adds two new accused products that were omitted by Dr. Leeb in his original reports. He also provides "belated technical opinions to support SynQor's lost-profits theory that Dr. Leeb could have, but did not, provide." *Id.* (claiming that two SynQor parts could replace certain Vicor's accused parts). Vicor states the fourth supplemental report "also introduced new opinions that SynQor could have had Dr. Leeb provide, but did not." *Id.* at 11. Vicor further contends the fourth supplemental report should be stricken for the "additional, independent reason" that is was served five weeks past the supplemental report deadline and less than one business day before Vicor was set to depose Dr. Dickens. *Id.* at 13-14.

In its response, SynQor first focuses on Vicor's failure to meet and confer regarding Vicor's primary request to strike Dr. Dickens as a substitute expert. According to SynQor, after "accommodating every demand Vicor made regarding Dr. Dickens," (specifically, Dr. Dickens adopted all of Dr. Leeb's opinions, declarations, reports, and depositions transcripts requested by Vicor and sat for a full-day deposition on the scope of topics Vicor requested, where Vicor's counsel

8

was given the opportunity to explore Dr. Dickens' adoption of Dr. Leeb's testimony), "SynQor believed the issue was fully resolved" and was completely surprised when Vicor filed the current motion. Dkt. No. 414 at 4, 6, 11 & n. 2 (stating the "alternative" relief regarding the "three discrete portions of Dr. Dickens' supplemental reports" was "the only relief Vicor sought during the parties' meet and confer"). Based on Vicor's failure to confer in good faith regarding the entire scope of its motion, SynQor requests the Court deny Vicor's motion without even reaching the merits. *Id.* at 7. However, SynQor argues the motion also fails on the merits.

SynQor states Dr. Dickens' opinions are "critically important," and Vicor faces "no undue prejudice" by the substitution or by Dr. Dickens' third and fourth supplemental reports. *Id.* at 8-10. SynQor maintains the supplemental reports, rather than conflicting with any of Dr. Leeb's prior opinions, supplement Dr. Leeb's reports "with new evidence and information that has arisen over the last six years, and do not unfairly alter the substance of Dr. Leeb's opinions." *Id.* at 9.

## III.  APPLICABLE LAW

An expert required to provide a written report must include a "complete statement of all opinions the witness will express and the basis and reasons for them." *Firtiva Corp. v. Funimation Glob. Grp., LLC*, Civil Action No. 2:21-CV-00111-JRG-RSP, 2022 WL 1792818, at *1 (E.D. Tex. June 1, 2022) (quoting FED. R. CIV. P. 26(a)(2)(B)(i)). Parties must provide their expert disclosures "at the times and in the sequence that the court orders." *Id.* (quoting FED. R. CIV. P. 26(a)(2)(D)). A "supplemental" report adds to a previously-served report without going beyond the opinions expressed in the report and without using information available prior to the deadline for service of the supplemented report. *Id.* (citing *CEATS, Inc. v. TicketNetwork, Inc.*, Civil Action No.

2:15-cv-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (citing *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 569-71 (5th Cir. 1996))).

Federal Rule of Civil Procedure 37 sets the consequences of untimely or insufficient disclosure by a party: "[T]he party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *Id.* (quoting FED. R. CIV. P. 37(c)(1)). When determining substantial justification or harm, courts consider (1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing any such prejudice by a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order or rules. *Id.* (citing *Sierra Club*, 73 F.3d at 572 (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989))).

To minimize the inevitable prejudice caused by a substitution of an expert, "[c]ourts granting motions to substitute experts after the close of discovery have routinely required the new expert's testimony to be limited to the subject matter opinions espoused in the first expert's report." *Am. Can! v. Arch Ins. Co.*, Civil Action No. 3:20-CV-0850-X-BH, 2022 WL 1467424, at *3 (N.D. Tex. Apr. 6, 2022) (citing *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-CV-179, 2014 WL 1045960, at *4 (S.D. Ohio Mar. 17, 2014); *Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 04-CV-00396, 2010 WL 3892860, at *4 (N.D. Ind. Sept. 30, 2010) (holding that substitute expert would "only be permitted to address the same subject matter as the previous expert without making any meaningful changes"); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-01509, 2021 WL 3617152, at *2 (S.D. Ohio Aug. 16, 2021) ("Even when the substitution of the expert is substantially justified, as here, courts still limit the scope of substitute

10

expert testimony to that of the original expert's testimony.")). The substitute expert "may use different language and even reach 'slightly broader conclusions' so long as the new report is 'substantially similar in all material respects' to the previous report." *Id*. (quoting *Lefta Assocs., Inc. v. Hurley*, Civil Action No. 1:09-CV-2487, 2013 WL 12239510, at *2 (M.D. Pa. Feb. 13, 2013) (quoting *Potoski v. Wilkes University*, Civil Action No. 3:06-CV-2057, 2010 WL 3811973, at *8 (M.D. Pa. Sept. 22, 2010))). If the opinions of the substitute expert go beyond the scope of the original expert's report, the opposing party may then move to exclude those opinions. *Id*. (citing *Baumann v. American Family Mut. Ins. Co.*, 278 F.R.D. 614, 616 (D. Colo. 2012)).

## IV. DISCUSSION

### A.    Motion to strike Dr. Dickens as a substitute expert

SynQor asserts Vicor did not meaningfully meet and confer in good faith before filing this motion. Vicor states it complied with the meet and confer requirement, noting SynQor has known since the February 2 status conference that Vicor objected to the substitution.

In the Eastern District of Texas, Local Rule CV-7 provides that, for certain opposed motions, counsel for the parties must "meet and confer" in good faith before filing a motion with the Court. *Indorama Ventures Oxides LLC v. M/V NATCHEZ EXPRESS*, Civil Action No. 1:20-CV-00054, 2021 WL 2935299, at *1 (E.D. Tex. Mar. 2, 2021) (citing Local Rule CV-7(h)). The rule requires for non-dispositive motions "at a minimum, a personal conference, by telephone or in person, between the lead attorney and any local counsel for the movant and the lead attorney and any local counsel for the non-movant." *Id.* In the personal conference, the participants must give each other the opportunity to express his or her views concerning the disputes. Local Rule CV-7(h). "The participants must also compare views and have a discussion in an attempt to resolve their differing

11

views before coming to court. Such discussion requires a sincere effort in which the participants

present the merits of their respective positions and meaningfully assess the relative strengths of each

position." *Id.* The rule requires a more detailed discussion for discovery related motions. The rule

further provides as follows:

> Except as otherwise provided by this rule, a request for court intervention is not
> appropriate until the participants have met and conferred, in good faith, and
> concluded, in good faith, that the discussions have conclusively ended in an impasse,
> leaving an open issue for the court to resolve. Good faith requires honesty in one's
> purpose to discuss meaningfully the dispute, freedom from intention to defraud or
> abuse the discovery process and faithfulness to one's obligation to secure information
> without court intervention. For opposed motions, correspondence, e-mails, and
> facsimile transmissions do not constitute compliance with the substantive component
> and are not evidence of good faith. Such materials, however, may be used to show
> bad faith of the author.

> An unreasonable failure to meet and confer violates Local Rule AT-3 and is grounds
> for disciplinary action. A party may file an opposed motion without the required
> conference only when the non-movant has acted in bad faith by failing to meet and
> confer. The procedural requirement of the "meet and confer" rule is one of
> certification. It appears in Section (i) of this rule, entitled "Certificates of
> Conference."

*Id.*

According to Vicor, it stated three times via email that if Dr. Dickens did not adopt all of Dr.

Leeb's prior reports, declarations, and testimony (including from the '497 case), then Vicor would

have to "revisit the issue of your expert substitute with the Court," Dkt. No. 386-5 at 4 (April 6, 2022

email), "object to his substitution in this case," *id.* at 3 (May 20, 2022 email), and "will ask the

Court to exclude him [at] trial." *id*. at 1 (May 26, 2022 email). Vicor attached to its reply the

Declaration of Patrick Schmidt ("Schmidt Decl."), wherein Mr. Schmidt states SynQor, in response

to Mr. Schmidt's requests, "served three statements from Dr. Dickens (on March 25, April 21, and

June 3) each purporting to adopt incrementally more portions of Dr. Leeb's prior declaration, reports, and testimony." Dkt. No. 426-1, Schmidt Decl., ¶ 3. According to Mr. Schmidt, "none of these adoptions, individually or collectively, addressed all of what Vicor contended Dr. Dickens should be required to adopt."[3] *Id.*

On June 14, 2022 in an email to SynQor's counsel, counsel for Vicor identified three opinions from Dr. Dickens' third and fourth supplemental reports that Vicor objected to as untimely. Dkt. No. 414-4, SynQor Ex. 5 at 9-10. Vicor did not disclose that it intended to move to strike the entirety of Dr. Dickens' opinions. The parties thereafter met and conferred on June 17, 2022. According to the Declaration of Michael D. Hatcher in Support of SynQor's Opposition to Vicor's Motion to Strike Dr. Dickens as a Substitute Expert ("Hatcher Decl."), the meet and confer concerned "these three narrow objections." Dkt. No. 414-1, Hatcher Decl., ¶ 7. Mr. Hatcher further asserts as follows:

> On that conference, Vicor was represented by Patrick Schmidt and Brian Craft; SynQor was represented by me and Thomas Rein. SynQor proposed a "horse trade" under which both sides would drop competing objections to certain portions of supplemental expert reports. Vicor took this proposal under advisement and

---

[3] In its motion, Vicor states that while Dr. Dickens "finally adopted all of Dr. Leeb's reports, declarations, depositions, and testimony in this case," Dr. Dickens still has not adopted the entirety of the relevant materials (identified by Vicor) from the '497 case. Dkt. No. 386 at 6 (*comparing* Dkt. No. 386-5 (email chain between P. Schmidt and M. Hatcher) at 1-2 with Dkt. No. 386-4 at 2). In its reply, Vicor again states Dr. Dickens refuses to adopt certain relevant testimony about the same patents from the '497 case. Dkt. No. 426 at 2. However, in conferring about the scope of Dr. Dickens' adoption of Dr. Leeb's prior opinions, counsel for SynQor asked Vicor to identify any specific testimony or opinion from the prior '497 case (beyond what Dr. Dickens had already reviewed and adopted). Specifically, in the June 3, 2022 email from Mr. Hatcher to Mr. Schmidt, Mr. Hatcher stated that although SynQor disagrees "the '497 case Leeb materials are applicable," SynQor reviewed the materials from the '497 case identified by Vicor in the May 26 email and "identified all the places where Vicor was addressed." Dkt. No. 471-2 at 2. Mr. Hatcher stated "Dr. Dickens has reviewed and adopted those opinions too." *Id.* (further stating that if "Vicor believes there is more portions addressing Vicor we missed, please identify it with specificity and we will review.") According to SynQor's surreply, Vicor never responded. Dkt. No. 471 at 2.

To the extent Vicor believes there are additional portions from the '497 case which should be reviewed and adopted by Dr. Dickens, Vicor shall specifically identify those portions and discuss it with SynQor.

ultimately declined it after the meet and confer, as reflected in Ex. 5 at 4 ("Vicor does not agree to your proposal to mutually stand down on motions to strike the objected to supplemental expert testimony. … [W]e understand that the parties are at an impasse on the objected to portions of the supplemental expert reports. We plan on filing our motion to strike on Friday with the other dispositive motion filings."). The parties were thus unable to resolve Vicor's three objections to Dr. Dickens' third and fourth supplemental reports. At no point during the teleconference did counsel for Vicor disclose an intention to move to strike the entirety of Dr. Dickens' testimony on the basis that Dr. Dickens is an improper substitute expert. Rather, as reflected above, following the teleconference, Mr. Schmidt confirmed that "the parties are at an impasse on the object[ed] to portions of the supplemental expert reports" and that Vicor intended to move to strike those portions. Ex. 5, at 4.

*Id.*

Specifically regarding the meet and confer requirement, Mr. Schmidt for Vicor states in his declaration as follows:

> On June 17, 2022, the Parties met and conferred via teleconference over Vicor's motion to strike Dr. Dickens. SynQor was represented by Michael Hatcher and Thomas Rein; Vicor was represented by myself and Brian Craft. During that phone call, I stated that while Vicor's recent written correspondence raised three specific objections to Dr. Dickens's third and fourth supplemental report, I wished to make clear to SynQor that Vicor viewed those three issues as part of the more fundamental problem with substituting Dr. Dickens for Dr. Leeb. Mr. Hatcher responded that he understood this position.

Dkt. No. 426-1, Schmidt Decl., ¶ 4. Mr. Schmidt's declaration does not represent that Vicor's counsel ever stated Vicor would seek to strike the entirety of Dr. Dickens' opinions and move to exclude him from testifying at trial. Rather, it suggests that SynQor should have been aware – from prior correspondence between the parties – that the three specific objections discussed were "part of the more fundamental problems with substituting Dr. Dickens for Dr. Leeb." *Id.*

In its surreply, SynQor attached another Declaration of Michael D. Hatcher ("Hatcher Supp. Decl."), wherein Mr. Hatcher represents that in "no way did Vicor's counsel raise the prospect during

14

the telephonic meet and confer that Vicor would seek to strike Dr. Dickens in his entirety." Dkt. No. 471-1, Hatcher Supp. Decl., ¶ 3. Mr. Hatcher further states as follows:

> Rather, consistent with the correspondence between the parties both before and after the telephonic meet and confer, only Vicor's objections to the three discrete portions of Dr. Dickens' supplemental reports were discussed. Furthermore, in the email memorializing the telephonic meet and confer, counsel for Vicor did not reference any objection to Dr. Dickens beyond the three narrow objected-to portions of Dr. Dickens' supplemental expert reports.

*Id.* In its surreply, SynQor states this "is further corroborated by correspondence Vicor sent four day after the meet-and-confer confirming that the parties discussed only the three narrow objections." Dkt. No. 471 at 1 (citing Dkt. No. 414-4 ("[W]e understand that the parties are at an impasse on the *objected to portion of the supplemental reports*.")) (emphasis added by SynQor).

Vicor has failed to demonstrate it met and conferred on the entirety of its motion in good faith, which requires "honesty in one's purpose to discuss meaningfully the dispute." Local Rule C.V. 7(h). Vicor did not identify its intention to move to strike Dr. Dickens as a substitute expert or to preclude Dr. Dickens from testifying at trial. For that reason alone, the Court is of the opinion the first part of Vicor's motion – requesting Dr. Dickens be stricken as a substitute expert – should be denied.

The request also fails on the merits. Having also considered the relevant factors, the Court finds they weigh in favor of substitution.

Beginning with the first factor, the importance of the witness' testimony, Vicor does not dispute that SynQor's expert's infringement and validity testimony is important. Dkt. No. 426 at 4. Dr. Dickens' proposed testimony is not only important, but as urged by SynQor, it is potentially case

15

dispositive. *See* Dkt. No. 471 at 2 ("SynQor would be hard pressed to carry its burden of proof without a technical expert to address infringement.") This factor weighs heavily in favor of finding good cause.

As it did with Judge Craven, Vicor focuses on the prejudice factor, noting impeachment of a witness with someone else's testimony is not as effective as impeaching the witness with his own prior statement. Dkt. No. 426 at 2-3. Because Dr. Dickens has fully adopted Dr. Leeb's opinions and testimony in this case as his own, the Court finds any prejudice to Vicor by the substitution has been minimized. Vicor has also had the opportunity to depose Dr. Dickens. Should Dr. Dickens depart from his deposition testimony, Vicor can impeach him with his own testimony.

The third factor, the possibility of curing any such prejudice by a continuance, is neutral. Neither side wants a continuance. Nor would the Court be inclined to continue the October 2022 trial setting for a case that was filed in 2011. Even so, the Court finds a continuance would be unnecessary to cure any remaining prejudice to Vicor.

Finally, for the explanation for the party's failure to comply with the rule, Vicor focuses on Dr. Leeb's purported unavailability due to "personal reasons," without more specificity as to what those reasons are. Dkt. No. 426 at 2 (noting SynQor still refuses to give a meaningful justification for Dr. Leeb's absence other than it is for "personal reasons"). Vicor argues courts deny substitution, for example, when the party does nothing more than assert that the original expert has medical problems without submitting detailed evidence explaining the nature of the problems and why "further participation" in the case might exacerbate them. Dkt. No. 386 at 8-9 (citing, among other

cases, *Commonwealth Scientific & Indus. Research Organisation v. Buffalo Tech.*, Civil Action No. 6:06–cv–324, 2009 WL 260953 (E.D. Tex. Feb.3, 2009)).

In *Buffalo*, the defendants were attempting to rely on a new expert to address the then recently issued *KSR* opinion from the Federal Circuit. *Buffalo*, 2009 WL 260953, at *1-2. The plaintiff argued that the defendants wanted to distance themselves from admissions their original expert Bagby made in his deposition and noted the court had already denied a previous motion to substitute. Though the defendants claimed that the expert was concerned about his health, the defendants still reserved the right to call Bagby at trial. *Id*. at *2. The court noted this was the defendants' second attempt to replace Bagby and denied the request, explaining, "Bagby's prior statements and the absolute lack of evidence concerning his health, Buffalo's attempt to replace Bagby with McNair appears to be a litigation tactic to avoid those negative statements." *Id*. at *3.

The Court finds *Buffalo* distinguishable. SynQor never moved to substitute expert witnesses prior to the stay of this case. Nor is there any indication SynQor's current motion is a litigation tactic. According to SynQor, Vicor successfully obtained and maintained a "six-year stay of an infringement case as it was nearing trial," explicitly arguing – in response to SynQor's concerns about "evidentiary prejudice" and that two specific trial witnesses who are in their 60s might not be available in the future – was "entirely speculative" and "without merit." Dkt. No. 471 at 3; *see also* Dkt. 414 at 10 (quoting Dkt. 261 at 4, n. 2). SynQor states its concerns about witness availability were neither speculative nor meritless. Dkt. No. 414 at 10. Vicor does not dispute these explanations. According to SynQor, now that the almost six-year stay has been lifted, Dr. Leeb is unavailable "for purely person reasons that have nothing to do with the merits of this case," and "SynQor has been forced to switch experts." Dkt. No. 471 at 3. While SynQor's explanation that Dr. Leeb does not

wish to testify for personal reasons is not sufficient – by itself – to show good cause to replace experts, given the unique circumstances of this case, replacement should be allowed.

Finally, when SynQor raised the expert continuity issue at the February 2 status conference, Judge Craven did not request – or condition substitution on – any further explanation of Dr. Leeb's personal circumstances. She further noted this sort of situation might be expected given that the case has been stayed for so long. Dkt. No. 332 at 26:14-18 ("I mean, the case has been stayed for six years. . . . What do we expect, somebody's doing to drop off in some way? Thank goodness he's still with us."). And, as noted above, Vicor's counsel acknowledged that substitution is often allowed as long as there are "no new opinions." *Id.* at 24:1-25:18. At the status conference, the expert continuity issue was addressed and presumptively settled, with the condition that Dr. Dickens would adopt Dr. Leeb's opinions as his own, which he has done. Vicor did not raise the substitution issue again until it filed the current motion to strike (and without having engaged in a meaningful meet and confer on the issue as required by the Local Rules).

Viewed collectively, the relevant factors weigh in favor of substitution. For this reason, in addition to Vicor's failure to meet and confer in good faith on the entire scope of its current motion, the Court denies Vicor's motion to strike Dr. Dickens as a substitute expert. The Court now considers Vicor's alternative request to strike the three discrete portions of Dr. Dickens' supplemental reports.

**B.** **Alternative motion to strike three discrete portions of Dr. Dickens' supplemental reports**

**1.** **Parties' assertions, generally**

Vicor seeks, in the alternative, to strike the following portions of Dr. Dickens' third and fourth supplemental reports: (1) a footnote addressing an omission of two part numbers from a portion of a pre-stay report, which SynQor claims was inadvertent; (2) a section addressing SynQor's replacement bus converters for Vicor's IBC070 bus converters; and (3) Dr. Dickens' fourth supplemental report that SynQor claims is limited to addressing new documents and a new declaration that third-party Micron produced at the end of the discovery period. SynQor contends all three challenged portions are appropriate supplemental opinions within the permissible scope of supplemental expert opinions.

According to Vicor, in his third supplemental report, "Dr. Dickens purports to expand the list of accused products (adding IB050Q096T80N2-BP and IB050Q096T80N3-00), presuming Dr. Leeb 'inadvertently omitted' them from the original reports." Dkt. No. 386 at 6 (citing third supplemental report at 4, n.2). At Dr. Dickens' recent deposition, Vicor asked Dr. Dickens whether he has spoken with Dr. Leeb since he began participating in this case in 2022, and Dr. Dickens stated he has not. Dkt. No. 386-12, Deposition of James Claude Dickens, Ph.D. ("Dickens Dep.") at 20:9-11. Thus, Vicor states Dr. Dickens has no way of actually confirming that Dr. Leeb "inadvertently" omitted these products. Dkt. No. 386 at 10.

Vicor also moves to strike paragraphs 30-31 of the third supplemental report, asserting Dr. Dickens, attempting "to tee up new lost-profits theories," "adds new opinions that two SynQor parts (BQ55090QZB84 and BQ57090QZB84) could serve as adequate substitutes for Vicor parts

19

(IBC070Q01-00, -01, -B1, -B2, and IB050Q096T80N2-BP)." *Id.* at 6-7. Vicor submits these SynQor parts and Vicor parts were known to SynQor long before Dr. Dickens' third supplemental report.

As for Dr. Dickens' fourth supplemental report, which Vicor asserts was served five weeks too late, Vicor claims it also raises issues that should have been raised by Dr. Leeb prior to the stay. The report addresses documents that Micron recently produced regarding its products that incorporate alleged infringing Vicor bus converters.

## 2.    Applicable law

An "initial," "affirmative," or "opening" report is one that contradicts an expected portion of the opposing party's case. *CEATS, Inc. v. TicketNetwork, Inc.*, Civil Action No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (citing *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 556 (5th Cir. 1979) ("[A] defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one.")). A "rebuttal" report explains, repels, counteracts, or disproves evidence of the adverse party's initial report. *Id.* (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.")).

A "supplemental" report adds to a previously-served report without going beyond the opinions expressed in the report and without using information available prior to the deadline for service of the supplemented report. *Id.* (citing *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 569–71 (5th Cir. 1996) ("The purpose of rebuttal and supplementary disclosures is just that—to rebut and supplement."); *Simmons v. Johnson*, Civil Action No. 06-325-A-M2, 2008 WL 474203, at *2 (M.D. La. Feb. 14, 2008) (noting "[c]ourts have routinely rejected untimely 'supplemental' expert

20

reports and testimony where the opinions are based upon information available prior to the deadline for service of initial expert reports")). Supplemental disclosures, however, "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 469 (E.D. Tex. 2020) (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016) (citing *Sierra Club*, 73 F.3d at 571)). In keeping with this principle, supplemental disclosures are only permissible as a means of "correcting inaccuracies[ ] or filling the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure.*" *Id.* (quoting *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012) (citing *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006)) (emphasis in original)).

Regardless of the character of a report, Rule 37 sets the consequences of untimely or insufficient disclosure by a party: "[T]he party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *CEATS*, 2018 WL 453732, at *3 (quoting FED. R. CIV. P. 37(c)(1)).

As negotiated by the parties and ordered by the Court, supplemental fact and expert discovery post-stay was limited to "supplemental discovery for the purpose of updating the record based on occurrences since the prior close of discovery." Dkt. No. 353 at 1, n. 1.

### 3.     Motion to strike two portions of Dr. Dickens' third supplemental report

### a.     Two accused part numbers in footnote 2

In his third supplemental report, Dr. Dickens states the accused Vicor unregulated bus converters are set forth in the prior expert reports. Dkt. No. 386-8, third supplemental report at 4, ¶

9 (citing May 2014 report, ¶¶ 214, 286, 334; March 2015 report, ¶ 10). In a footnote, Dr. Dickens

states as follows:

> One portion of the April/May 2014 Reps. and the March 2015 Rep. inadvertently
> omitted two accused part numbers, IB050Q096T80N2-BP and IB050Q096T80N3-00
> (April 2014 Rep., paragraphs 280, 296-297 & fn. 66), whereas they were included
> elsewhere in the reports (April 2014 Rep., paragraph 323). To clarify,
> IB050Q096T80N2-BP and IB050Q096T80N3-00 are accused part numbers and
> should have been included in the list in paragraph 280 of the April 2014 Rep. and/or
> paragraph 10 of the March 2015 Rep. Based upon my review of the bills of materials
> for the bus converters and the testimony of Vicor's witnesses that all the IBCs were
> designed to have transition times of 25%, as well as other technical documents and
> deposition testimony related thereto, the IBC070Q01-01 is representative of the
> IB050Q096T80N2-BP and IB050Q096T80N3-00. Compare VC01525450
> (PTX2169) (IBC070Q01-01 schematic) and VC01525488 (PTX2208) (IBC070Q01-
> 01 BOM), with VC01522047 (IB050Q096T80N2-BP schematic), VC01522027
> (IB050Q096T80N2-BP BOM), VC01522070 (IB050Q096T80N3-00 schematic), and
> VC01522050 (IB050Q096T80N3-00 BOM). See also Vicor 17th Supp. Resps. to 1st
> Rogs, No. 1, at 33, 36 (identifying schematics and BOMs). The schematics for the
> IB050Q096T80N2-BP and IB050Q096T80N3-00 are either the same as or
> substantially the same as the IBC070Q01-01 schematic. They meet the bus converter
> limitations of the asserted claims of the '190 and '702 patents for the same reasons as
> the IBC070Q01-01.

*Id*. at 4, n. 2.

Although SynQor (and Dr. Dickens) assert the two accused products were inadvertently

omitted from one portion of Dr. Leeb's original report, Vicor asserts Dr. Dickens has no way of

confirming that assumption because he acknowledged at his deposition that he has not spoken with

Dr. Leeb. However, as pointed out by SynQor, the two products in question were specifically

identified in paragraph 323 of the original Infringement Expert Report of Steven D. Leeb, Ph.D. Dkt.

No. 414 at 11-12 (citing Dkt. 414-5, SynQor Ex. 6). According to SynQor, all Dr. Dickens did in

footnote 2 of his third supplemental report was acknowledge the two part numbers, while included

in paragraph 323 of Dr. Leeb's original report, were inadvertently omitted from another portion of

22

the original report. Dr. Dickens also identified the representative tested sample for those part numbers.

The fact that the two part numbers were referenced in Dr. Leeb's original report is an indication Dr. Leeb intended to address the products but merely omitted them from one portion of his report. Dr. Dickens, in footnote 2 of his third supplemental report, was attempting to correct an inaccuracy, which is a proper basis for supplementation. *See Diaz*, 279 F.R.D. at 421. The basic purpose of supplementary disclosures under Rule 26(e)(2) is to "prevent[] prejudice or surprise." *Id.* (quoting *Hernandez v. Swift Transp. Co., Inc.*, Civil Action No. SA-09-CV-855-XR, 2010 WL 2545597, at *1 (W.D. Tex. June 22, 2010) (citing *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir.1994))). The Court does not find Vicor will be prejudiced by the correction in footnote 2. For these reasons, this part of Vicor's alternative motion to strike is denied.

### b. SynQor replacement parts (BQ55090QZB84 and BQ57090QZB84) for Vicor's IBC070 accused bus converters

The third supplemental report also identifies the corresponding SynQor replacement parts (BQ55090QZB84 and BQ57090QZB84) as adequate substitutes for Vicor parts (IBC070Q01-00, -01, -B1, -B2, and IB050Q096T80N2-BP). During the original discovery period, SynQor served a second supplemental report by Dr. Leeb identifying the IBC070 Vicor parts as infringing, but SynQor made no mention of the replacement issue. Vicor submits these SynQor parts and Vicor parts were known to SynQor long before Dr. Dickens' third supplemental report.

Specifically, Vicor identifies SynQor's interrogatory response from 2013 wherein SynQor identified BQ55090QZB84 as a purported replacement for Vicor parts IB048Q096T70 and IB048Q096T64, and it identified BQ57090QZB84 as a purported replacement for Vicor parts

IB050Q096T64, IB050Q096T70, IB054Q096T64, IB054Q096T70. Dkt. No. 386 at 7 (citing Dkt. No. 386-9 (SynQor's third supplemental response to Vicor's interrogatories, Ex. A)). According to Vicor, despite this identification, Dr. Leeb did not offer any opinions regarding the technical suitability of SynQor part BQ55090QZB84 for any accused Vicor parts. *Id.* (citing Dkt. No. 386-10 (Dr. Leeb's supplemental report), ¶¶ 403-08). Although Dr. Leeb did identify SynQor part BQ57090QZB84 as a possible replacement for some Vicor parts, Vicor states he did not do so for the Vicor parts that Dr. Dickens now claims BQ57090QZB84 can adequately replace. *Id.* Vicor states the second supplemental report "would have been the time to identify BQ55090QZB84 and BQ57090QZB84 as replacements to the IBC070 Vicor parts." *Id.* at 11, n. 3. Vicor argues it would be unfair to introduce new opinions into the case that should have been originally raised by Dr. Leeb. *Id.* at 11.

SynQor argues it would be unfair to preclude Dr. Dickens from addressing material changes to Vicor's sales during the stay. SynQor focuses on the importance of "this correction," arguing specifically as follows:

> The importance of this correction weighs against Vicor's motion to strike, as the IBC070 products at issue have become more prominent during the stay. Vicor's sales of the IBC070 products ███████████████████ units during the stay. *Compare* Tab V40 of Reed Supp. Rpt (Mar. 6, 2014), *with* Tab Cisco2 of Reed 2nd Supp Rpt (May 6, 2022). SynQor did not learn of Vicor's ██████████ in sales until Vicor produced updated sales data on January 5, 2022, after the stay was lifted. And, once learning of the increased volume (and importance) of the IBC070 bus converters, it was perfectly appropriate for Dr. Dickens to address the SynQor replacements for them in his supplemental report. The impact of this supplementation weighs against Vicor's motion to strike. *Garmin Ltd. v. Tomtom, Inc.*, No. 2:06-CV-338(LED), 2007 WL 2903843, at *7 (E.D. Tex. Oct. 3, 2007).

Dkt. No. 414 at 12.

Vicor claims the accused products and the new replacement parts were both known or should have been known to SynQor during the prior discovery period and therefore should have been included in Dr. Leeb's original reports. However, SynQor has provided an explanation for the failure to identify, pre-stay, BQ55090QZB84 and BQ57090QZB84 as replacements to the IBC070 Vicor parts identified as infringing. SynQor explains that prior to the stay, Vicor sold the IBC070 parts in only small quantities. According to SynQor, new information from the intervening six years has shown there ███████████ in Vicor's sales of those bus converters," "moving these products from the fringe of Vicor's offerings to the center." Dkt. No. 471 at 4.

The Court finds SynQor's explanation is sufficient enough for the Court to move on to the remaining good cause factors. The Court finds the supplementation important, given the ███ increase in relevant sales. Although Vicor argues it will be prejudiced if this supplementation is allowed, Vicor has not demonstrated that it will suffer undue prejudice from the timing of this supplementation.

The Court finds there is good cause to find the disclosure, in paragraphs 30-31 of Dr. Dickens' third supplemental report of SynQor replacement parts BQ55090QZB84 and BQ57090QZB84 as adequate substitutes for the IBC070 Vicor parts, is substantially justified. Therefore, the Court denies this part of Vicor's motion to strike the third supplemental report.

**4.      Motion to strike Dr. Dickens' fourth supplemental report in its entirety**

**a.      Parties' assertions**

Vicor also seeks to strike Dr. Dickens' fourth supplemental report, which was served without leave on June 10, 2022, following SynQor's receipt on June 9, 2022 of evidence produced by third-party Micron. SynQor asserts Micron's latest production of documents justifies Dr. Dickens' fourth

supplemental report addressing that late production. Dkt. No. 414 at13 (citing *Firtiva Corp. v. Funimation Global Grp, LLC*, Civil Action No. 2:21-CV-00111-JRG-RSP, 2022 WL 1792818 at *2 (E.D. Tex. June 1, 2022)). Additionally, SynQor contends the fourth supplemental report does not alter Dr. Dickens' earlier opinions, and therefore Vicor is not prejudiced.

Vicor asserts the fourth supplemental report was served five weeks too late under the scheduling order entered post-stay and less than one business day before Vicor was set to depose Dr. Dickens. Focusing on SynQor's lack of diligence in pursuing the discovery from Micron, Vicor asserts SynQor and Dr. Leeb failed to seek third-party discovery from Micron "much earlier in the litigation and, at latest, within the deadlines set by the Court for supplemental discvery." Dkt. No. 386 at 3. Specifically, Vicor asserts SynQor and its damages expert knew about these Vicor sales to Micron prior to the stay and "chose, at that time, to strategically ignore Micron's products in its damages model to focus on three other companies." Dkt. No. 386 at 7 (citing Dkt. No. 386-11 (Brett Reed's supplemental damages report) at 23-24).

**b.    Background regarding Micron**

In the March 6, 2014 supplemental expert report of Brett L. Reed on damages, Dr. Reed stated the updated Vicor data allowed him "to further investigate the ongoing accused BCM sales activity of Vicor to other larger customers like Micron." Dkt. No. 386-11 at 23-24. In a footnote, Dr. Reed noted that, as discussed with respect to IBCs, "SynQor has had a commercial relationship with Micron since 2010 and Vicor's infringement has deprived SynQor the opportunity to sell unregulated bus converters to Micron." *Id*. at 24, n. 39. As of Dr. Reed's April 2014 Report, Vicor had only produced data covering sales through September 2013. *Id*. at 24, n. 40.

At the February 2 status conference post-stay, SynQor's counsel noted that Vicor had produced updated sales data through the expiration of the patents in January of 2018. Dkt. No. 332 at 10:7-10. Counsel then noted that as part of the remaining supplemental fact discovery needed in this case, SynQor would need documents from Vicor on how the three ██████████ ██████████ use the accused part numbers and potentially seek documents from the three end customers. *Id.* at 12:7-17 (further stating "we do think we'll probably need to subpoena them for information about how they used Vicor's . . . accused bus numbers in the end products"). In a sealed portion of the February 2 transcript, SynQor's counsel states that ██████████████████ ███████████████████████████████████████████████. Dkt. No. 338 at 3:3-5.

In its motion, Vicor provides the following assertions regarding SynQor's post-stay efforts to secure documents from Micron:

> Micron has been under subpoena from SynQor since February 11, 2022, and Micron made its document productions in late March and in late April. SynQor then unilaterally obtained a Declaration from Micron dated April 27, *see* Ex. 14, and demanded that Vicor consent to admissibility. But Vicor objected and advised that it believed a deposition was appropriate to place the Micron documents and testimony into proper context. Rather than timely seeking a deposition to fully explore the Micron issues, SynQor delayed over a month before finally obtaining a new declaration and a further document production from Micron on June 10. SynQor then served its fourth supplemental report from Dr. Dickens on the same day. This timing does not demonstrate diligence on the part of SynQor—if SynQor wanted to rely on evidence from Micron, it should have diligently pursued admissible evidence through normal discovery channels rather than trying to cherry-pick evidence through artfully drafted, one-sided declarations. The Court should not reward SynQor for its lack of diligence and gamesmanship[.]

Dkt. No. 386 at 13-14 (internal footnote omitted).

27

SynQor, on the other hand, asserts as follows. Dr. Dickens' third supplemental report addressed the documents and declaration that Micron had produced at that time (May 6, 2022), including the schematic for ████████████████████████████████████████

████████████████████████████████. Dkt. No. 386-8, third supplemental report, ¶¶ 11, 17–22. Micron's declaration at that time said ████████████████████████████████████████

████████████████████████████████. *Id.*, ¶ 17. Dr. Dickens thus reviewed the produced schematic, ████████████████████████████████████████████████████████

████████████████████████████████████████████████. *Id.*, ¶¶ 17–19.

According to SynQor, Dr. Dickens did not introduce any new theories in his fourth supplemental report, but instead confirmed his previously served opinion in his third supplemental report. Specifically, after Vicor objected to the admissibility of Micron's declaration attesting to the fact the schematic it produced ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████. Dkt. No. 386-6, fourth supplemental report, ¶¶ 2–5. SynQor states Dr. Dickens' fourth supplemental report is limited to reviewing those ████

████████████████████████████████████████████████████████████

████████████████████████████████e. Dkt. No. 414 at 13.

c.     **Analysis**

In moving to strike Dr. Dickens' fourth supplemental report, Vicor primarily argues SynQor was not diligent in seeking the discovery from Micron, first before the stay and then afterward. The Court is unpersuaded. Although SynQor may have known about Vicor's sales to Micron during the original discovery period, at the February 2 status conference, SynQor stated one remaining area of

supplemental fact discovery was to subpoena documents from Micron. SynQor did so on February 11, 2022, and Micron made its document productions in late March and in late April. Those productions were addressed in Dr. Dickens' third supplemental report. Vicor has not moved, in this motion, to strike those portions of Dr. Dickens' third supplemental report.

The Court does not find, as urged by Vicor, that "SynQor took additional time trying to cherry-pick third-party evidence." Dkt. No. 426 at 5. Rather, SynQor has explained that after Vicor objected to the admissibility of Micron's declaration attesting to the fact the schematic it produced

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████. The Court finds this explanation sufficient.

The Court also finds the supplementation is important. There is minimal prejudice to Vicor with respect to the timing of Dr. Dickens' fourth supplemental report. It was provided just one day after Micron produced the documents on June 9, and it supplements opinions already contained in Dr. Dickens' third supplemental report, which Vicor has not moved to strike. The Court concludes there is good cause to find the disclosure contained in the fourth supplemental report is substantially justified. *See Firtiva Corp*., 2022 WL 1792818, at *2.

For all these reasons, the Court denies Vicor's motion to strike Dr. Dickens' fourth supplemental report.[4]

---

[4] The Court is not addressing herein Vicor's evidentiary objections to SynQor's reliance on Micron's declarations. *See, e.g.*, Dkt. No. 386 at 14, n. 4.

## V. CONCLUSION

Based on the foregoing, it is

**ORDERED** that Defendant Vicor Corporation's Motion to Strike Dr. Dickens as a Substitute Expert (Dkt. No. 386) is **DENIED**.

SIGNED this the 2nd day of September, 2022.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE