# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, § § § § <br> *Plaintiffs,* § <br> v. § § <br> AMERICAN AIRLINES, INC., § § § <br> *Defendant.* § | Civil Action No. 4:24-cv-980 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Motion to Sever and Stay Claims Against Viasat's In-Flight Connectivity Systems by Defendant American Airlines, Inc. (Dkt. #20). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

This is a patent case in which Plaintiffs allege that Defendant infringed on six patents, including U.S. Patent Nos. 7,324,469 (the "'469 Patent") and 8,027,326 (the "'326 Patent"), by using in-flight connectivity systems provided by third-party suppliers Viasat, Inc., Panasonic, and Intelsat (Dkt. #20 at p. 6). The accused systems allegedly enable Defendant to offer internet access to passengers during flights (Dkt. #22 at p. 7). The issues before the Court are (1) whether to sever the claims related to Viasat's In-Flight Connectivity Systems; (2) whether to stay the severed claims pending resolution of Viasat's declaratory judgment action in Delaware; and (3) whether to permit Plaintiffs to conduct limited discovery (Dkt. #20 at pp. 8, 12; Dkt. #22 at p. 13).

Plaintiffs filed this lawsuit on November 2, 2024 (Dkt. #1). On the same day, they also filed a separate action in the Western District of Texas against Southwest Airlines involving the same

six patents and asserting similar claims against Viasat's in-flight connectivity systems (Dkt. #20 at p. 6). On January 14, 2025, Viasat filed a declaratory judgment action in the District of Delaware seeking a judgment that its products do not infringe the '469 and '326 Patents (Dkt. #20 at p. 7).

Defendant has moved to sever and stay the claims against it relating to Viasat's systems, invoking the customer-suit exception and arguing that Viasat's declaratory judgment action should proceed first (Dkt. #20 at pp. 8, 13–15). Defendant represents that it does not modify Viasat's systems and agrees to be bound by any final judgment in the Delaware action (Dkt. #20 at pp. 13–14). Plaintiffs oppose the motion, contending that Defendant is not a mere passive user, that Viasat is not the sole supplier of the accused functionality, and that severing the claims would fragment the litigation and reduce judicial efficiency (Dkt. #22 at pp. 4–5).

On February 14, 2025, Defendant filed its Motion to sever and stay (Dkt. #20). On February 28, 2025, Plaintiffs filed their Response (Dkt. #22). On March 10, 2025, Defendant filed its Reply (Dkt. #23). The Motion is now ripe for adjudication.

## LEGAL STANDARD

### I.     Severance of a Party

Rule 21 of the Federal Rules of Civil Procedure establishes that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," and "[t]he court may sever any claim against a party." FED. R. CIV. P. 21. Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995). Trial courts have broad discretion to sever issues to be tried before it. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). But courts will refuse to sever claims if "the court believes that it only will result in delay, inconvenience, or added expense." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014).

Severance under Rule 21 creates "two separate actions or suits where previously there was but one." *U.S. v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983). When a single claim is severed, it proceeds as a "discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting actions." *Id*.

## II. Staying Proceedings

The district court has inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "In deciding whether to exercise the discretion to stay litigation, the Court should consider the interests of each party, as well as the conservation of judicial resources." *Miller Weisbrod, LLP v. Klein Frank, PC*, No. 3:13-CV-2695-B, 2014 WL 2738231, at *2 (N.D. Tex. June 17, 2014) (citations omitted). Additionally, when a stay is premised on the resolution of another case, "the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)).

## ANALYSIS

Defendant petitions the Court to sever and stay claims concerning the '469 and '326 Patents on the ground that those claims target functionality provided by Viasat, a third-party vendor (Dkt. #20 at p. 5). Defendant argues that the Court should do so under the customer-suit exception to the first-to-file rule or, in the alternative, under the Court's inherent authority to manage its docket (Dkt. #20 at pp. 8, 12). Defendant also points to a parallel declaratory judgment action that Viasat

3

filed in the District of Delaware, in which Viasat seeks a non-infringement ruling on the same two patents (Dkt. #20 at p. 5).

To rule on Defendant's Motion, the Court must resolve two principal legal issues. First, the Court must determine whether the customer-suit exception applies. *See CyWee Grp. Ltd. v. Huawei Device Co.*, No. 17-495, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018). That inquiry requires assessing whether Defendant is merely a downstream user of Viasat's accused systems, whether Defendant agrees to be bound by the outcome of the Delaware case, and whether Viasat is the sole source of the allegedly infringing functionality. *Id.* at *5. Second, even if the customer-suit exception does not apply, the Court must assess whether a discretionary stay is appropriate under the traditional stay factors, including potential prejudice, simplification of issues, and the procedural posture of the case. *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). For the reasons below, the Court concludes that a stay is not warranted at this stage under either the customer-suit exception or traditional factors.

**I.      Applicability of the Customer-Suit Exception**

The customer-suit exception is a narrow doctrine that allows a court to stay an action against a customer in favor of a manufacturer's parallel declaratory judgment suit, where doing so would promote judicial economy and efficiency. *See CyWee*, 2018 WL 4002776, at *4; *Lighthouse Consulting Grp., LLC v. Bank of Am., N.A.*, No. 19-250, 2020 WL 6781978, at *1 (E.D. Tex. Mar. 26, 2020). Courts in this district consider three non-exclusive factors: (1) whether the defendant is a mere reseller or end user of the accused product; (2) whether the defendant agrees to be bound by the outcome of the manufacturer's suit; and (3) whether the manufacturer is the sole source of the accused product. *CyWee*, 2018 WL 4002776, at *5. The Court assesses each of these factors in turn with a view toward conserving judicial resources. *See Lighthouse*, 2020 WL 6781978, at *1.

4

### A.  Whether Defendant is a Mere User of the Accused Product

This factor weighs against a stay. Defendant contends that it is a passive user of Viasat's in-flight connectivity systems and does not design, modify, or control any of the accused hardware or software (Dkt. #20 at p. 5). Plaintiffs respond that Defendant is more than a mere end user, pointing out that the accused systems are integrated into Defendant's aircraft and operate in conjunction with airline-specific functionality, including Defendant's web portal for passenger access (Dkt. #22 at pp. 7–8).

The Court agrees that this factor does not clearly favor Defendant. Plaintiffs' infringement allegations are not limited to generic use of off-the-shelf hardware (Dkt. #22 at pp. 7–8). For instance, Plaintiffs point to Claim 24 of the '469 Patent, which recites a system comprising "a web-ready device operatively coupled to the at least one router . . . having a browser application operating thereon" and requiring that "the user may authenticate the subscription account and access the Internet" (Dkt. #1-13 at p. 31; '469 Patent, Claim 24). According to them, this functionality implicates Defendant's own infrastructure—specifically, a passenger-facing web portal used for authentication and access—and is not addressed in Viasat's Declaratory Judgment Complaint (Dkt. #22 at pp. 7–8). That argument suggests that the asserted claims encompass the interaction between hardware supplied by third-party vendors and systems operated by Defendant itself. On this record, the Court cannot view Defendant as a mere reseller or end user.

### B.  Whether Defendant Agrees to be Bound by the Delaware Decision

This factor favors a stay in principle with little practical effect. Defendant states that it is willing to be bound by the outcome of the Delaware declaratory judgment action with respect to Viasat's accused systems (Dkt. #20 at p. 7). Courts in this district have held that such an agreement favors application of the customer-suit exception, provided it would meaningfully streamline the

issues remaining in the stayed case. *See Network Sys. Techs.*, 2023 WL 7649372, at *7 (quoting *Wapp Tech Ltd. P'ship v. Hewlett-Packard Enter. Co.*, No. 4:18-CV-00468, 2019 WL 3818761, at *4 (E.D. Tex. Aug. 14, 2019)). Here, Defendant's agreement to be bound is clear and weighs in its favor. The agreement's practical effect, however, is limited by Defendant's use of multiple third-party providers—Viasat, Intelsat, and Panasonic—for in-flight Wi-Fi services (Dkt. #20 at p. 5; Dkt. #22 at p. 6). The Delaware action addresses only Viasat products and would not resolve issues tied to the other vendors or to Defendant's system-level integration (Dkt. #22 at pp. 10–11). While Defendant's stipulation supports a stay in theory, then, it would not substantially reduce the litigation burden in this forum.

### C. Whether Viasat is the Sole Source of the Accused Functionality

This factor weighs against a stay. The record reflects that Defendant uses multiple vendors to provide in-flight connectivity services, and the Complaint identifies products from Intelsat, Panasonic, and Viasat as contributing to the allegedly infringing systems (Dkt. #22 at p. 10; *see* Dkt. #1-12 at p. 9; Dkt. #1-13 at p. 7). Defendant does not dispute this. Because Viasat is not the sole source of the accused functionality, the Delaware action will not eliminate the need for discovery and adjudication regarding the other vendors' systems.

Two of the three factors weigh against applying the customer-suit exception, and the third—Defendant's agreement to be bound—is not dispositive in light of the accused systems' multi-vendor structure. The Court therefore declines to apply the customer-suit exception and turns next to whether a discretionary stay is warranted under the traditional stay factors.

## II. Whether a Discretionary Stay is Warranted

Even when the customer-suit exception does not apply, courts may grant a discretionary stay under their inherent power to manage their docket and promote judicial economy. *Dali*

*Wireless, Inc. v. AT&T Corp.*, No. 2:22-CV-0012-RWS-RSP, 2023 WL 2898423, at *2 (E.D. Tex. Apr. 8, 2023). Courts considering whether to exercise that discretion look to three factors:

> (1) Whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party;
>
> (2) Whether a stay will simplify the issues in question and the trial of the case; and
>
> (3) Whether discovery is complete and whether a trial date has been set.

*See Soverain*, 356 F. Supp. 2d at 662; *CyWee*, 2018 WL 4002776, at *3. Accordingly, the Court will proceed to evaluate each factor.

### A. Prejudice to the Nonmoving Party

This factor weighs against a stay. Plaintiffs argue that a stay would delay its ability to enforce its patent rights (Dkt. #22 at p. 12). A stay would also require duplicative litigation across multiple forums, particularly because it would force Plaintiffs to pursue infringement claims involving Viasat separately from those involving other vendors (Dkt. #22 at pp. 12–13). Plaintiffs also raise concerns about potential spoliation of infringement evidence and fragmentation of Plaintiffs' infringement claims between multiple forums (Dkt. #12 at pp. 12–13).

The Court agrees with Plaintiffs. A stay limited to claims involving Viasat systems would effectively split Plaintiffs' case into parallel proceedings in (at least) two different courts, despite the overlapping factual issues and the asserted claims covering system-level functionality. That fragmentation could delay resolution and increase litigation costs for both parties. Although Plaintiffs seek only monetary relief, which reduces the risk of tactical disadvantage, a stay would still delay their ability to prosecute their claims and could complicate case management. This factor therefore disfavors a stay.

### B.     Simplification of the Issues

This factor weighs slightly against a stay. Defendant contends that allowing the Delaware action to proceed would streamline this litigation by resolving claims involving Viasat products, which would narrow the scope of discovery and eliminate duplicative adjudication (Dkt. #20 at pp. 6–7, 13, 15). But that benefit is limited. The Delaware action involves only Viasat's declaratory judgment claims concerning the '469 and '326 Patents (Dkt. #20 at p. 7). It does not involve the four other asserted patents in this case, nor does it address Intelsat's or Panasonic's systems (Dkt. #20 at p. 7). *See Viasat, Inc. v. Intell. Ventures*, No. 1:25-cv-56, Dkt. #1 (D. Del. Jan. 14, 2025).

Moreover, as discussed above, Plaintiffs allege that Defendant's conduct—not only that of Viasat—is part of the infringement theory (Dkt. #22 at pp. 7–8). *See supra* at 5. If so, resolving the Delaware action would not eliminate the need for fact discovery, claim construction, or trial on those issues. In fact, any efficiency gained by a partial stay would likely be offset by the complexity and duplication involved in litigating overlapping infringement theories across separate forums. Consequently, this factor weighs slightly against a stay.

### C.     Procedural Posture of the Case

This factor favors a stay. This case is still in its early stages (Dkt. #20 at p. 15). Plaintiffs filed their Complaint in November 2024 and, at the time of this Motion's filing, the Court had not yet held a scheduling conference or set a trial date (Dkt. #20 at p. 15; *see* Dkt. #44 at p. 5). Neither had discovery begun (Dkt. #20 at p. 15). Thus, this factor weighs in favor of a stay.

Having considered the relevant factors, the Court concludes that neither the customer-suit exception nor the traditional stay analysis supports the relief Defendant seeks. Although Defendant has agreed to be bound by the Delaware court's ruling in this nascent case, such an agreement does not outweigh the fragmented litigation and inefficiencies that would result from staying only a

subset of claims involving one of several third-party vendors. A stay would not materially simplify the issues in this case or conserve judicial resources, as Viasat is not the sole provider of the accused systems and Plaintiffs' infringement allegations implicate more than mere passive use of third-party hardware. As a result, the Court will decline to exercise its discretion to stay the case and, instead, **DENY** Defendant's Motion.[1]

## CONCLUSION

It is therefore **ORDERED** that Motion to Sever and Stay Claims Against Viasat's In-Flight Connectivity Systems by Defendant American Airlines, Inc. (Dkt. #20) is hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 30th day of July, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[1] Although Plaintiffs request leave to conduct limited discovery in response to Defendant's Motion (Dkt. #22 at p. 13), the Court finds the current record sufficient to resolve the Motion. Because the relevant factual disputes—such as the existence of multiple vendors and Defendant's system-level integration—are either undisputed or not outcome-determinative under the governing law, the Court declines to defer ruling or permit targeted discovery at this time.