# EXHIBIT 11

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2           FOR THE EASTERN DISTRICT OF TEXAS

3                    SHERMAN DIVISION

4

5    CASE NUMBER:  4:24-CV-980

6

7    INTELLECTUAL VENTURES I LLC

8    and INTELLECTUAL VENTURES II LLC,

9           Plaintiffs,

10           vs.

11    AMERICAN AIRLINES, INC.,

12           Defendant.

13

14          *  *  *  *  *  *  *  *  *  *  *  *  *

15

16                THE ORAL PROCEEDINGS

17       OF THE DEPOSITION OF MICHAEL GOODRICH

18                 AUGUST 8, 2025

19

20

21    REPORTER:  Paul Morse

22            Certified Court Reporter

23            and Notary Public

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 2

1        IT IS FURTHER STIPULATED AND AGREED
2   that the signature to and the reading of the
3   deposition by the witness is waived, the
4   deposition to have the same force and effect as
5   if full compliance had been had with all laws
6   and rules of Court relating to the taking of
7   depositions.
8        IT IS FURTHER STIPULATED AND AGREED
9   that it shall not be necessary for any
10  objections to be made by counsel to any
11  questions except as to form or leading
12  questions, and that counsel for the parties may
13  make objections and assign grounds at the time
14  of the trial, or at the time said deposition is
15  offered in evidence, or prior thereto.
16       IT IS FURTHER STIPULATED AND AGREED
17  that the notice of filing of the deposition by
18  the Commissioner is waived.
19
20
21        * * * * * * * * * * * * *
22
23

Page 4

1        IN THE UNITED STATES DISTRICT COURT
2        FOR THE EASTERN DISTRICT OF TEXAS
3               SHERMAN DIVISION
4
5
6   BEFORE:
7        Paul Morse, Commissioner.
8
9
10  APPEARANCES:
11       JONATHAN HICKS, ESQUIRE, of KASOWITZ,
12  LLP, 333 Twin Dolphin Drive, Suite 200,
13  Redwood City, California 94065, appearing on
14  behalf of the Plaintiffs.
15       JOHN DOWNING, ESQUIRE, of KASOWITZ,
16  LLP, 333 Twin Dolphin Drive, Suite 200,
17  Redwood City, California 94065, appearing on
18  behalf of the Plaintiffs.
19       JECEACA AN, ESQUIRE, of KASOWITZ, LLP,
20  1633 Broadway, New York, New York 10019,
21  appearing on behalf of the Plaintiffs.
22
23

Page 3

1                I N D E X
2
3              EXAMINATION
4                     PAGE
5   By Mr. Hicks............................ 8
6
7
8
9       EXHIBITS FOR THE DEPOSITION
10                    PAGE
11  Exhibit 1, Declaration.............. 11
12  Exhibit 2, 844 Patent............... 29
13  Exhibit 3, 469 Patent............... 48
14  Exhibit 4, 722 Patent............... 105
15  Exhibit 5, Patent Docket Sheet...... 114
16  Exhibit 6, 582 Patent............... 123
17  Exhibit 7, 785 Patent............... 148
18
19
20
21        * * * * * * * * * * * * * * *
22
23

Page 5

1        ALAN BLOCK, ESQUIRE, of McKOOL SMITH,
2   300 Grand Avenue, Suite 2900, Los Angeles,
3   California 90071, appearing on behalf of the
4   Defendant.
5        ALSO PRESENT:  Deidre Thomas, Video
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20          * * * * * *
21
22
23

2 (Pages 2 - 5)

Michael Goodrich                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 6

1        I, Paul Morse, CCR, a Court Reporter of
2  Daphne, Alabama, acting as Commissioner,
3  certify that on this date, as provided by the
4  Federal Rules of Civil Procedure and the
5  foregoing stipulation of counsel, there came
6  before me via Remote Videoconference, beginning
7  at 8:30 a.m. PST, Dr. Michael Goodrich, witness
8  in the above cause, for oral examination,
9  whereupon the following proceedings were had:
10
11        THE VIDEOGRAPHER:  Good morning.
12  We are now on the record, and the time is
13  approximately 11:36 a.m. on August 8, 2025.
14  Please note that this deposition is being
15  conducted virtually.  Quality of recording
16  depends on the quality of camera and internet
17  connection of participants.  What is seen from
18  the witness and heard on the screen is what
19  will be recorded.
20     This is the beginning of media one for the
21  video deposition of Michael Goodrich in the
22  matter of Intellectual Ventures 1, LLC, and
23  Intellectual Ventures II, LLC versus

Page 7

1  American Airlines, Inc.; filed in the
2  United States District Court for Eastern
3  Division of Texas, Sherman Division.
4     My name is Deidre Thomas, and I'm the
5  Videographer.  The Court Reporter is Paul
6  Edward Morse, and we are with Veritext.  Will
7  counsel please introduce themselves and whom
8  they represent, after which the Court Reporter
9  will swear in the witness.
10        MR. HICKS:  I work with the
11  Kasowitz, LLP firm representing the Plaintiffs.
12        MR. BLOCK:  And Alan Block and
13  Nicole Smith on behalf of Defendant
14  American Airlines.
15        THE VIDEOGRAPHER:  You may now
16  swear in the witness.
17
18
19        DR. MICHAEL GOODRICH,
20  being first duly sworn, was examined and
21  testified as follows:
22
23

Page 8

1        EXAMINATION
2  BY MR. HICKS:
3     Q.   Good morning, Dr. Goodrich.
4     A.   Good morning.
5     Q.   Could you please say and spell
6  your complete name for the record.
7     A.   Michael T. Goodrich,
8  M-i-c-h-a-e-l.  T.  G-o-o-d-r-i-c-h.
9     Q.   Thank you.  My name is Jonathan
10  Hicks, and I'm an attorney with the
11  Kasowitz LLP Law Firm.  My firm represents the
12  Intellectual Ventures Plaintiffs in a pending
13  patent litigation matter involving IV and
14  American.
15     And today if you -- if I use the acronym IV,
16  will you understand I'm referring to
17  Intellectual Ventures?
18     A.   Yes.
19     Q.   Have you taken any medication or
20  substances that would affect your truthful
21  testimony today?
22     A.   No.
23     Q.   Where are you located today?

Page 9

1     A.   I'm in Irvine, California.
2     Q.   What specific location -- or let
3  me ask a better question.  What room are you in
4  right now?
5     A.   I'm in my office in the
6  University of California Irvine, which is
7  Donald Bren Hall, Room 4091.
8     Q.   Is there anyone else at your
9  location today?
10     A.   Yes.
11     Q.   Who is that?
12     A.   Mr. Alan Block.
13     Q.   Is there anyone else in the room
14  with you today?
15     A.   No.
16     Q.   What software do you have running
17  on your computer right now?
18     A.   Right now I have Zoom running.  I
19  also have a Chrome browser running that, for
20  example, is showing the Exhibit Share website.
21     Q.   Do you have any other
22  communication software open on your computer
23  right now?

3 (Pages 6 - 9)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 10

1    A.    No.
2    Q.    Do you have any other electronic
3 devices accessible to you right now?
4    A.    I have my phone -- my iPhone.
5 It's in my pocket.  But I'm not using it.
6    Q.    So today while we're on the
7 record, I will ask you to refrain from using
8 any communication software, either on your
9 computer or on your iPhone.  Is that fair?
10    A.    Yes, I believe that is fair.
11    Q.    I'm going to introduce as the
12 first exhibit your declarations submitted in
13 this matter.
14    A.    Yes.  I have that in front of me
15 now.
16    Q.    Excellent.  Could you please open
17 that document and let me know when you can
18 access it.
19    A.    I have it in front of me now.
20    Q.    I will represent that this
21 exhibit, which has been marked as Exhibit 1, is
22 your declaration, including Appendix A to your
23 declaration submitted in this matter.  And if

Page 11

1 you could please review it and confirm that it
2 is an accurate and complete copy of the
3 declaration and your appendix that you
4 submitted in this matter.
5         (Plaintiff's Exhibit Number 1
6         is marked for identification.)
7    A.    Yes, it appears to be that
8 declaration.
9    Q.    As of today, does this declaration
10 contain the entirety of your opinions relating
11 to this matter?
12    A.    Yes, as of today.
13    Q.    Do you have any opinions relating
14 to this matter that have not been provided in
15 this declaration?
16    A.    Not that I can recall.
17    Q.    Did you finalize and sign your
18 declaration on August 4, 2025?
19    A.    Yes.
20    Q.    When did you begin working on your
21 declaration?
22    A.    I don't recall the exact date.  It
23 was certainly well before August 4.

Page 12

1    Q.    Do you have an estimate?
2    A.    I'm not recalling as I sit here
3 today when that occurred.
4    Q.    Did you begin working on your
5 declaration in the month of July?
6    A.    I'm not recalling.  It may have
7 been earlier than that.  I'm just not recalling
8 as I sit here today.
9    Q.    So you don't know whether you
10 worked on your declaration in June 2025, for
11 example?
12    A.    I'm just not recalling as I sit
13 here today.
14    Q.    How many times have you been
15 deposed?
16    A.    I've lost track.  But I'm
17 confident it is more than fifty.
18    Q.    So I'll take it that you've heard
19 the ground rules for a deposition any number of
20 times.
21    A.    Yes, I've heard them.  But it's
22 fine to go over them again.  It's your
23 deposition.

Page 13

1    Q.    I'll -- I'll highlight a few of
2 the rules that will help this deposition
3 proceed hopefully in a quick manner.  I'll ask
4 that you please wait until I've completed my
5 question before responding.  Is that fair?
6    A.    I'll do my best, yes.
7    Q.    If you need a question repeated,
8 please let me know and the Court Reporter can
9 read it back to you.  Do you understand?
10    A.    I do understand that.
11    Q.    Please let me know if you do not
12 understand a question or if you would like me
13 to rephrase it.  Is that fair?
14    A.    Yes, I agree.
15    Q.    Please let me know if you need a
16 break.  But the only caveat to that is if
17 there's a pending question, you must answer the
18 question before proceeding to a break.  Is that
19 fair?
20    A.    That seems reasonable to me.
21    Q.    Do you recall when you were
22 engaged by American for this matter?
23    A.    Yes.  So it was December 2024.

4 (Pages 10 - 13)

Michael Goodrich                                   August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 14

1    Q.   And you are basing that on the
2  contents of your declaration?
3    A.   Yes.  I have recorded that in my
4  Appendix A.  If you go to the last page, you
5  can see this listed as entry 29.
6    Q.   So your declaration offers
7  opinions relating to five patents which are
8  provided in paragraph two.  Is that correct?
9    A.   Yes.
10   Q.   And those are U.S. Patent numbers
11 8332844, 8407722, 7949785, 7324469, and
12 7257582.  Is that correct?
13   A.   Yes.  And I often refer to them by
14 the last three digits in my declaration.
15   Q.   When did you first become aware of
16 the 844 Patent?
17   A.   My recollection is when I was
18 engaged in this matter.
19   Q.   Would you provide the same answer
20 for each of the other four patents?
21   A.   Yes.
22   Q.   In preparing your declaration,
23 what documents did you review?

Page 15

1    A.   So I reviewed the patents
2  themselves.  And I also reviewed documents that
3  were included as a part of IPR proceedings that
4  have begun with respect to these five patents.
5  I also considered some dictionary definitions
6  as well.
7    Q.   So paragraph two of your
8  declaration mentions you reviewed the file
9  histories of the asserted patents.  Is that
10 correct?
11   A.   Yes.  I also reviewed the file
12 histories of the asserted patents as well.
13   Q.   So paragraph two also mentions you
14 reviewed, quote, other documents cited in this
15 declaration.
16   Do you see that?
17   A.   Yes.
18   Q.   So I want to make sure we're on
19 the same page here when we're talking about
20 what other documents you're referring to.  So
21 if I recall, earlier you mentioned IPR
22 documents and dictionary definitions?
23   A.   Correct.

Page 16

1    Q.   To your knowledge -- let me take a
2  step back.  Do you recall which IPR documents
3  you reviewed?
4    A.   My recollection is that there's
5  some IPRs that are also proceeding with respect
6  to these five patents.  And for those I recall
7  reviewing the petitions, the expert
8  declarations, the expert CVs, and some other
9  documents that were responses -- early
10 preliminary responses from the patent owner.  I
11 may have looked at some of the cited documents
12 also in those IPRs such as alleged prior art
13 references.
14   Q.   In forming the opinions provided
15 in your declaration, are you relying on any IPR
16 documents?
17   A.   No.
18   Q.   So other than the patents, the
19 file histories, IPR documents, and dictionary
20 definitions, did you review any other documents
21 in forming the opinions provided in your
22 declaration?
23   A.   The only other thing is I do cite

Page 17

1  to ex-parte re-exam documents.  I'm not an
2  attorney, so I'm not a hundred percent sure if
3  that counts as part of the file history or if
4  that's something external.  So to be clear, I
5  did review some ex-parte review documents.
6    Q.   Do you recall which patent that
7  was for or patents?
8    A.   I believe I cite to this in my
9  declaration.  Yeah.  So that -- that's
10 mentioned, for example, in my paragraph 47 when
11 I am discussing the 785 Patent.  And also
12 paragraph 43 I mention this as well.
13   Q.   Going back to the IPR documents
14 that you reviewed, you mentioned the petitions,
15 expert declarations, and CVs.  Do you recall
16 any other IPR documents that you reviewed?
17   A.   I think I may have also looked at
18 some of the prior art references.  And like I
19 said, there was some kind of -- I forget the
20 name of it.  But it was a patent owner
21 something.  Brief, something like that.  I
22 forget the name.
23   Q.   Do you recall which patents you

5 (Pages 14 - 17)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 18

1  reviewed IPR documents for?
2      A.    My recollection is I reviewed IPR
3  documents for all of the patents that I am
4  opining on in my declaration.
5      Q.    To confirm my understanding, those
6  are the five patents referred to in paragraph
7  two.  Correct?
8      A.    Yes.
9      Q.    Have you reviewed the 326 Patent?
10  And the full number is 8027326.
11      A.    I did.  But I don't have any
12  opinions about that in this declaration.
13      Q.    And sitting here today, you
14  haven't formed any opinions relating to the
15  326 Patent.  Is that correct?
16      A.    Yes.
17      Q.    How much time would you say you've
18  spent reviewing the five asserted patents and
19  their respective file histories?
20          MR. BLOCK:  Object to form.
21      A.    I don't recall just sitting here
22  today.  I don't recall breaking out my time in
23  that manner, for example.

Page 19

1      Q.    So for example, if I were to ask
2  you how much time you spent reviewing just the
3  844 Patent, would you be able to respond?
4      A.    It would be a similar answer.
5  I -- I don't recall the amount of time I've
6  spent on each patent separately.  And I didn't
7  bill my time separately based on the patent
8  numbers.
9      Q.    So paragraph two mentions you
10  reviewed the November 2, 2024 complaint.  Is
11  that correct?
12      A.    Yes.  I also reviewed that as
13  well.
14      Q.    Did you review that complaint in
15  its entirety?
16      A.    I -- I don't know if I saw all of
17  it.  I saw a complaint plus some claim charts
18  that went along with that.  That's my
19  recollection.
20      Q.    So you recall reviewing certain
21  claim charts that accompanied the complaint.
22  Is that correct?
23      A.    Yes.

Page 20

1      Q.    Do you recall which complaint --
2  excuse me.  Let me rephrase that.  Do you
3  recall which claim charts you reviewed?
4      A.    Not specifically, no.  My
5  recollection is there was at least one for each
6  patent.  But I'm not recalling the details as I
7  sit here today.
8      Q.    Do you recall reviewing any other
9  documents associated with the complaint besides
10  the complaint itself and the claim charts you
11  mentioned?
12      A.    Not that I'm recalling as I sit
13  here today.
14      Q.    If you could turn to section two
15  of your declaration, which is the person of
16  ordinary skill in the art.
17      A.    I'm there.
18      Q.    So paragraph 21, you offer your
19  definition of a person of ordinary skill in the
20  art for each of the five asserted patents.  Is
21  that correct?
22      A.    Yes.
23      Q.    It's your opinion that the same

Page 21

1  standard for a person of ordinary skill in the
2  art applies to all five patents which you have
3  offered opinions on in your declaration.
4  Correct?
5      A.    Yes, that is correct.
6      Q.    So looking at that last sentence,
7  you opine that, for example, each of the
8  Patents-in-Suit discloses inventions involving
9  computational devices and networking.
10      A.    Yes.
11      Q.    Do you see that?
12      A.    Yes, sir.  That's right.
13      Q.    If a patent involves computational
14  devices and networking, would this standard for
15  a person of ordinary skill in the art also
16  apply?
17          MR. BLOCK:  Object to form.
18      A.    Not necessarily.  I use that as an
19  exemplary umbrella statement for why I am
20  opining that a person of ordinary skill in the
21  art has this definition.  But I applied the
22  standard that is mentioned in paragraph twenty.
23  So this is just a summary sentence based on

6 (Pages 18 - 21)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 22

1 that analysis.
2     Q.   Would you agree that each of the
3 five asserted patents recites different subject
4 matter?
5     A.   I -- I would not dispute that.
6     Q.   Turning to section three, that's
7 the legal understanding section.  Do you see
8 that?
9     A.   Yes.
10    Q.   Would you agree that as a default
11 a claim should be interpreted to have its plain
12 and ordinary meaning?
13        MR. BLOCK:  Object to form.
14    A.   I don't understand your question.
15 Are you asking about a claim in its entirety or
16 claim terms within a claim?
17    Q.   Well, what's your understanding of
18 how a claim term should be construed?
19    A.   Just as I say here, that you
20 should look at a person of ordinary skill and
21 how they would understand each term in a claim,
22 that the way that they would understand each
23 term in the claim would be understood with

Page 23

1 respect to the intrinsic record, which I
2 understand includes the patent specification
3 and the file history, as well as their
4 understanding of terms in the art.
5    And based on that, then some terms would
6 indeed have their plain and ordinary meaning.
7 But others would have more specialized
8 definitions.  For example, I understand that a
9 patentee can serve as their own lexicographer.
10 And if they provide what to a person of
11 ordinary skill in the art would be a definition
12 for a term, then that should be understood as
13 the definition for that term.
14    Q.   And your paragraph 25 provides
15 your understanding that a patentee can act as a
16 lexicographer as an exception to the ordinary
17 and customary meaning for a term that might
18 otherwise apply?
19    A.   Yes.
20    Q.   And then paragraph 26 provides
21 that a disavowal of the full scope of the claim
22 term that otherwise would be given its ordinary
23 and customary meaning might also apply.  Is

Page 24

1 that -- is that right?
2        MR. BLOCK:  Object to form.
3     A.   That's more or less right.  So I
4 was told by attorneys that if a person of
5 ordinary skill in the art looking at, for
6 example, the file history would understand with
7 clear and unmistakable statements that the
8 patentee is disavowing a certain amount of
9 scope to a term, then that should be understood
10 to read into the meaning of that term.
11    Q.   And just so we're on the same
12 page, unless a lexicography or a disavowal has
13 taken place, a claim term is otherwise given
14 its ordinary and customary meaning according to
15 a person of ordinary skill in the art.  Is that
16 correct?
17        MR. BLOCK:  Object to form.  Calls
18 for a legal conclusion.
19    A.   I'm not an attorney.  So the way
20 that I would answer that question is that I've
21 been on cases in the past where a Court made a
22 determination as to the constructions for
23 certain terms.  And my understanding in those

Page 25

1 instances is that for terms that the Court did
2 not construe, those should be understood to be
3 plain and ordinary meanings.
4     Q.   And just so we're on the same
5 page, when the Court does construe a term, it
6 can provide an ordinary and customary meaning;
7 it could provide a meaning based on
8 lexicography; or it could provide a meaning
9 based on disavowal.  Is that correct?
10        MR. BLOCK:  Same objection.
11    A.   I've also seen courts give
12 constructions based on the patent
13 specification, giving the -- what would be the
14 scope of a certain claim term.  And then that
15 also would apply.
16    Q.   Is that lexicography?  I'm trying
17 to understand what's your understanding of what
18 that is.
19        MR. BLOCK:  Same objection.
20    A.   I'm not an attorney.  So when I
21 use the term lexicography, I'm referring to
22 instances where patent specification will spell
23 out a definition for a term.  And I understand

7 (Pages 22 - 25)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 26

1 that a patentee can serve as their own
2 lexicographer in that context.  But I've also
3 seen instances where courts have construed
4 terms, for example, to better explain a term to
5 a jury that maybe the term at first might seem
6 overly technical or something.  I've seen --
7 I've seen it where a court will construe a term
8 in order to provide clarity to a jury.  I don't
9 know if that counts as lexicography or not.
10 I'm not an attorney.
11     Q.    So turning to paragraph 27, you
12 opine or offer your understanding that in some
13 cases the Court may consider extrinsic
14 evidence.  And you provide examples of
15 extrinsic evidence.
16    Do you see that?
17     A.    Yes.
18     Q.    What is your understanding of some
19 cases where a Court will do that?
20     A.    I've experienced it in my own
21 work.  I've seen courts that have used what I'm
22 calling here or been told is extrinsic
23 evidence, namely technical dictionaries,

Page 27

1 treatises, and expert opinions to understand
2 the underlying technology and the way in which
3 a claim term should be understood by a person
4 of ordinary skill in the art.  And then I've
5 seen Courts even cite to such evidence in
6 forming what will be the claim construction for
7 certain terms.
8     Q.    If you could turn to your analysis
9 of the 844 Patent, which begins at paragraph 51
10 of your declaration and let me know when you're
11 there.
12     A.    I am there.
13     Q.    So in paragraph 51 you include a
14 reproduction of Claim 7 from the 844 Patent.
15 Is that correct?
16     A.    Yes.
17     Q.    And in Claim 7 in paragraph 51,
18 you underline certain language from Claim 7.
19 Correct?
20     A.    That's correct.
21     Q.    And that underlined language is
22 root image.  Correct?
23     A.    Yes.

Page 28

1     Q.    And you offer opinion or opinions
2 as to the interpretation of the term root image
3 in your declaration.  Correct?
4     A.    Yes, that is correct.
5     Q.    And to confirm, you do not offer
6 any other opinions regarding the 844 Patent in
7 your declaration besides your interpretation
8 for the term root image.  Correct?
9     A.    Yes.  That is correct as to this
10 declaration.
11     Q.    So in paragraph 54 you offer the
12 opinion that the patentee acted as a
13 lexicographer for the term root image.  Is that
14 correct?
15     A.    Yes.
16     Q.    And that the -- it's your opinion
17 that the patentee defined root image as a
18 read-only base image, parentheses, or quote,
19 root image, end parentheses, of the application
20 environment.  Is that correct?
21     A.    To be clear, this is just the
22 beginning of the definition that is offered by
23 the patentee.  The complete definition for root

Page 29

1 image is a read-only base set of data blocks
2 operating beneath the file system that provide
3 the common portion of the application
4 environment.  And I explain that further in
5 paragraphs 53 through 59.
6     Q.    So can you specifically identify
7 which disclosures in your opinion offer a
8 definition through lexicography for this claim
9 limitation?
10     A.    Yes.  Could you please upload the
11 844 Patent into the Exhibit Share?
12     Q.    Yes.  I'll withdraw the question
13 for the moment.  I've marked and introduced as
14 Exhibit 2 a copy of the 844 Patent.  Please let
15 me know when you can access it.
16         (Plaintiff's Exhibit Number 2
17          is marked for identification.)
18     A.    Yes.  I have it in front of me
19 now.
20     Q.    Is Exhibit 2 a complete copy of
21 the 844 Patent as you understand it?
22     A.    Yes, it appears to be that.
23     Q.    Going back to my question, can you

8 (Pages 26 - 29)

Michael Goodrich                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 30

1 identify which disclosures from the 844 Patent,
2 in your opinion, offer a definition through
3 lexicography for the term root image?
4       A.    Yes.  So it begins, as I mentioned
5 in my paragraph 54, in the 844 Patent at column
6 two, lines 13 to 14 where it says a read-only
7 base image or root image.
8    So a person of ordinary skill in the art
9 seeing that with the, or root image, in
10 parentheses would understand this to be -- or
11 to mean also known as.  So when it says a
12 read-only base image, then that's understood to
13 be the root image.
14    And then it says of the application
15 environment.  And then hence that is in the
16 definition that I'm offering where I'm putting
17 in the application environment at the end.  And
18 then we see further that when it's referring to
19 the root image, it's always referring to blocks
20 of the root image.  And indeed the claim
21 language itself refers to blocks of the root
22 image.
23    Hence a person of ordinary skill in the art

Page 31

1 would understand that further as lexicography
2 to say that the root image is a set of blocks.
3 And also through the specification we see that
4 the patentee is clear and consistent in a way
5 that I believe a person of ordinary skill in
6 the art would understand to be lexicography,
7 that they are saying that these blocks are
8 beneath the file system -- operating beneath
9 the file system.
10    So all of those things together would be
11 understood by a person of ordinary skill in the
12 art to be a lexicographical definition of root
13 image to mean a read-only base set of data
14 blocks operating beneath the file system that
15 provide the common portion of the application
16 environment.
17       Q.    So you've pointed to several
18 things there in the abstract from the
19 specification and the claims to conclude your
20 opinions on lexicography.  So I'd like to be a
21 little bit more precise here.  And help me
22 figure out which citations specifically from
23 the 844 Patent you were relying on for your

Page 32

1 opinions relating to lexicography.
2       A.    I disagree with the premise of
3 that question.  I do not believe that I'm
4 offering opinions in the abstract.  Instead I
5 believe I did point to specific citations from
6 the Patent to justify my opinion that this is a
7 lexicographical definition of root image.  And
8 again, to repeat the citations that would
9 inform a person of ordinary skill in the art
10 that this is the proper definition include in
11 the 844 Patent column 2, lines 13 to 14, the
12 claim language of Claim 7 itself, and also
13 column 7 from lines 59 through 62 -- excuse me.
14 58 through 62, which I cite in my paragraph 55.
15       Q.    Are there other citations that
16 you're relying on to reach your opinions
17 relating to lexicography?
18       A.    Yes.  And so my opinion is further
19 supported by some other passages that I cite in
20 my declaration, which include the 844 Patent at
21 11:37, 11:39, 11:57, 5:51 through 58.  And
22 again, these are exemplary.
23       Q.    You said they're exemplary.  Are

Page 33

1 you relying on other disclosures for your
2 opinions?
3       A.    Yes.  I'm relying on the entirety
4 of the specification and file history for the
5 844 Patent, hence these should be seen as
6 exemplary.
7       Q.    Is there a reason why you didn't
8 identify the specific portions that you believe
9 are relevant to your opinions?
10       A.    I felt that these were sufficient
11 to support my conclusions.  But I -- I read the
12 entirety of the specification and reviewed the
13 file history.  And all of that went into my
14 opinions.
15       Q.    So you'll agree with me that the
16 citations you included in your declaration that
17 relate to your opinions regarding lexicography
18 include column 2, lines 13 and 14; column 7,
19 lines 58 to 62; column 11, line 37; column 11,
20 line 39; column 11, line 57; column 5, lines 51
21 to 58.  And you said the claim language.  Is
22 that right?
23       A.    All those citations in column 11

9 (Pages 30 - 33)

Veritext Legal Solutions
800.808.4958                                              770.343.9696

Michael Goodrich                                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 34

1 are the claim language.
2     Q.   Understood.  Besides those do you
3 cite any other citations in your declaration in
4 support of your opinions relating to
5 lexicography for this term?
6     A.   No.  Those were sufficient.
7     Q.   So your interpretation for root
8 image, in your opinion, is a read-only base set
9 of data blocks operating beneath the file
10 system that provide the common portion of the
11 application environment, as you cited in
12 paragraph 52.  Is that right?
13     A.   Yes.  That's correct.
14     Q.   Can you point me to which of those
15 disclosures cited in your declaration support
16 the lexicography for the language operating
17 beneath the file system?
18     A.   Yes.  I said that already, in
19 fact.  That is at column 7, lines 58 to 62.
20 And indeed the 844 Patent further highlights
21 this as being a benefit for its invention
22 because it can be file system and operating
23 system independent.

Page 35

1     Q.   Would you admit that there's not a
2 single sentence within the 844 Patent
3 specification that provides a lexicography
4 definition for root image?
5          MR. BLOCK:  Object to form.
6     A.   I'm not following your question.
7 I'm sorry.
8     Q.   In your declaration you cite to
9 disclosures in column two, column seven, column
10 five, and column eleven to support your
11 opinions relating to lexicography.  Correct?
12     A.   Yes.  That's correct.
13     Q.   Did any one of those citations
14 reflect the entirety of -- of your
15 interpretation of root image?
16          MR. BLOCK:  Object to form.
17     A.   So to be clear, a person of
18 ordinary skill in the art would read the
19 entirety of the 844 Patent and would understand
20 that when a single sentence gives a first
21 definition to a term such as root image, that
22 that sentence itself could include terms that
23 itself then need to be further defined, in my

Page 36

1 opinion, to be well understood by either the
2 Court or the jury.
3     Hence, when a person of ordinary skill in
4 the art would see that first sentence in
5 column 2, a read-only base image or root image
6 of the application environment, the person of
7 ordinary skill in the art would see this term
8 base image and read-only, and then that would
9 be further informed by these other passages
10 that I cite to such as in column seven where it
11 explains that these are storing data at the
12 block level beneath the file system.  And
13 likewise when you even go to the claim language
14 itself, it's clear that it's storing blocks of
15 the root image.
16     Hence, to understand fully that entirety of
17 that term, I believe it's most proper to
18 include the entire definition as one enclosed
19 statement, a read-only base set of data blocks
20 operating beneath the file system that provide
21 the common portion of the application
22 environment.
23     Q.   The entire definition as one

Page 37

1 enclosed statement requires you to look at
2 these various disclosures in order to reach
3 that conclusion.  Is that right?
4     A.   I -- I did.  I felt that that was
5 the most proper so that, for example, we're
6 not -- I did my best, in fact, with all of my
7 definitions to try to avoid as much as possible
8 circular language.  And so rather than
9 repeating that phrase image again as we saw,
10 for example, in column -- in that passage in
11 column two, I expanded that out to the
12 understanding of a person of ordinary skill in
13 the art based on lexicographical disclosures of
14 what is the base image and likewise with
15 respect to the blocks because that's in the
16 claim language itself.
17     Q.   To be clear, is your
18 interpretation of root image provided in your
19 declaration based solely on lexicography?
20          MR. BLOCK:  Object to form.
21     A.   I'm not an attorney.  I understood
22 that a patentee can serve as their own
23 lexicographer.  That's why I cite first to that

10 (Pages 34 - 37)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 38

1  passage in 2 from lines 13 to 14.  But then I
2  provide the perspective of a person of ordinary
3  skill in the art to fill in, like I said, what
4  would be understood to be a base image from
5  that sentence, which is why I then cited to
6  these other portions to support my conclusions.
7       Q.   And for the record so it's clear,
8  when you're referring to claim language that
9  you relied on to reach your opinions regarding
10  the construction of root image, what specific
11  claim language are you referring to?
12       A.   The claim language for Claim 7
13  that I cite to is lines 11:29, 11:37, 11:39,
14  and 11:57.
15       Q.   Would you agree with me that
16  Claim 7 does not recite the language file
17  system?
18       A.   I agree.  That's -- that's why I
19  have this as a part of my construction.  This
20  is all happening beneath the file system, as
21  would be understood by a person of ordinary
22  skill in the art.
23       Q.   Would you agree that all file

Page 39

1  systems -- let me ask the question a better
2  way.  Would you agree that all files within a
3  file system are comprised of data blocks?
4       MR. BLOCK:  Object to form.
5       A.   That depends on the context.
6       Q.   So what context would you need in
7  order to answer that question?
8       A.   What specific system that we're
9  talking about.  I'm opining with respect to the
10  type of an architecture that is in the scope
11  for the 844 Patent.  But there's other types of
12  file systems that may not necessarily use
13  blocks.  It's just that the 844 system is
14  directed to blocks, which would be operating
15  beneath the file system.
16       Q.   Are you aware sitting here today
17  of any systems that have file -- a file system
18  layer but don't have a block layer?
19       A.   I'm not recalling as I sit here
20  today.  There's so many though.  I wouldn't
21  want to be so categorical.
22       Q.   I understand.  I'm just asking if
23  you're aware of any examples of a file -- of a

Page 40

1  system that includes a file layer that does not
2  include a block layer.
3       A.   Just sitting here today, none are
4  coming to mind.  But I wouldn't want to rule
5  that out.  I could certainly imagine a system
6  that would not be using blocks but would have
7  files.
8       Q.   But would you agree that a set of
9  data blocks can correspond to a file?
10       MR. BLOCK:  Object to form.
11       A.   It depends -- it depends what you
12  mean by a set and correspond.  So it's possible
13  that a set of data blocks could itself be the
14  data blocks for a file.  But that way of
15  viewing those blocks is not what's being
16  claimed in Claim 7.  Instead it's talking about
17  the blocks itself.
18  And indeed it's talking about the benefits
19  for when, for example, a leaf image might want
20  to change just one little block.  It doesn't
21  have to then store a whole copy of the entire
22  file because it's operating beneath the file
23  system.  So it just stores a copy of the

Page 41

1  changed block.  And it refers back to this root
2  image for all of the rest of the blocks that
3  did not change.
4       Q.   And I understand it might be
5  context dependent.  But that's why I used the
6  word can in my question.  So can a set of data
7  blocks correspond to a file?  And I believe the
8  answer was maybe, depending on the context.
9  But would you disagree with that?
10       A.   I don't necessarily disagree with
11  that.  It's that the scope of the Claim 7 in
12  the 844 Patent is directed at the block level.
13  It is then, therefore, agnostic to what would
14  be happening at the file system level.  And
15  indeed, it says that this is a major benefit
16  for its invention, that it operates beneath the
17  file system.  Hence, that's why the proper
18  definition for root image should be a set of
19  blocks and then the rest.
20       Q.   Paragraph 55, you mention the
21  invention of the 844 Patent.  Do you see that?
22       A.   Yes.
23       Q.   What is your understanding of the

11 (Pages 38 - 41)

Michael Goodrich                                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 42

1  invention of the 844 Patent?
2      A.   Here I'm speaking specifically to
3  Claim 7 because I understand that is what is at
4  issue in this case.  But the -- the
5  specification itself says this, that it
6  involves storing things below the file system,
7  that that's a major benefit for the invention.
8      Q.   As I understand your last answer,
9  are you saying both the Claim 7 and the
10 specification reflect the invention of the
11 844 Patent, or did I -- did I misunderstand?
12     A.   I'm not an attorney.  So what I'm
13 referring to here as the invention is what's
14 being claimed and disclosed.  So first what is
15 specifically being claimed in Claim 7, but also
16 generally what's being disclosed in the
17 844 Patent because it refers to embodiments,
18 plural.
19     So it says by storing data at the block
20 level, embodiments, plural, are able to operate
21 beneath the file system; and thus are designed
22 to be file system and operating system
23 independent.  That's the 844 Patent, column 7

Page 43

1  at lines 59 through 62.
2      Q.   Would you agree that the
3  844 Patent discloses various embodiments?
4      A.   I just read that.  So yes.
5  One of which is the embodiment of Claim 7.
6      Q.   You agree that the 844 Patent
7  recites inventive concepts?
8          MR. BLOCK:  Object to form.
9      A.   I don't have an opinion about that
10 at this time.
11     Q.   So you have no opinions whether
12 the 844 Patent recites inventive subject
13 matter?
14         MR. BLOCK:  Object to form and
15 outside the scope.
16     A.   I have not formed an opinion on
17 that issue as of now.
18     Q.   So in paragraph 56, you conclude
19 that a person of ordinary skill in the art
20 would have understood that a read-only base set
21 of data blocks operating beneath the file
22 system that provide the common portion of the
23 application environment would be a root image.

Page 44

1  Correct?
2      A.   Yes.  That is correct.
3      Q.   And is that opinion based on
4  what's recited in paragraph 55 and disclosed at
5  column 7 lines 58 to 62?
6      A.   That's part of it.  But my
7  opinion, like I said, goes also back to
8  column 2, lines 13 to 14 that I talk about, for
9  example, in paragraph 54, as well as the claim
10 language itself, which I talk about in
11 paragraph 53.
12     Q.   So which language in your
13 construction or interpretation is informed by
14 the disclosure at column 7 lines 58 to 62?
15         MR. BLOCK:  Object to form.
16     A.   The portion of the definition that
17 says operating beneath the file system.  That
18 is what -- again, in order to, as best I could,
19 avoid a circular definition to understand what
20 is base image, I then am citing to that portion
21 in column 7 from lines 58 through 62 to
22 understand what is this base image.  And namely
23 that it is operating beneath the file system.

Page 45

1          MR. HICKS:  So we've been about an
2  hour on the record.  And I think I was going to
3  change to a different patent here, so now seems
4  to be an ideal time to take a quick break.  Can
5  we go off the record?
6          THE WITNESS:  Fine with me.
7          THE VIDEOGRAPHER:  Sure.  The time
8  is 12:35 p.m.  And we are now off the record.
9          (A break was taken.)
10         THE VIDEOGRAPHER:  Okay.  The time
11 is 12:41 p.m.  And we are now back on the
12 record.
13     Q.   (Mr. Hicks) So Dr. Goodrich, let
14 me just wrap up my questioning on your opinions
15 relating to the 844 Patent.  As I understand
16 it, your interpretation of the phrase root
17 image is based on lexicography.  And it's based
18 on the six disclosures that are provided in the
19 section in your declaration, and those are --
20 I've repeated them before.  But those are
21 included in paragraphs 53 through 58 of your
22 report.  Is that correct?
23     A.   I would -- I would answer it the

12 (Pages 42 - 45)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 46

1  same way I did before, that I understand that a
2  patentee can serve as their own lexicographer.
3  Such a definition was given in column two from
4  lines 13 to 14. But to further understand what
5  is a base image in that definition, I look to
6  column 7 lines 58 to 62, as well as the claim
7  language itself, which is in those passages
8  from column 11.
9      Q.   So your lexicography definition is
10  based on identifying a definition for root
11  image and then finding a further definition for
12  a base image?
13     A.   I wouldn't call it a definition,
14  per se. It's the understanding and the full
15  context of the 844 Patent what is a base image.
16  And then I give exemplary citations to that,
17  which is conclusive of column 7 from 58 to 62,
18  as well as from column 5, lines 51 to 58. And
19  like I said, these are exemplary. I looked at
20  the entirety of the specification.
21     Q.   And I understand you looked at the
22  entirety of the specification. But to reach
23  your opinions, would you agree that you include

Page 47

1  the citations that -- that you believed allow
2  you to reach that conclusion?
3         MR. BLOCK: Object to form.
4      A.   I -- like I said, I included these
5  citations as exemplary to support my
6  conclusions. And I believe they -- they are
7  sufficient to support my conclusions. But my
8  conclusions are based on my entire reading of
9  the 844 Patent.
10     Q.   So let's turn to the 469 patent,
11  which I believe starts at paragraph 88 of your
12  declaration. And let me know when you're
13  there.
14     A.   Could you please upload that
15  patent to the Exhibit Share?
16     Q.   Sure. I'll do that now. For the
17  record I've marked as Exhibit 3 a copy of
18  U.S. Patent Number 8332844. Dr. Goodrich, let
19  me know when you can access that document or
20  exhibit.
21     A.   I'm sorry. I got confused. I
22  thought we were talking about the 469 Patent.
23  And you uploaded another copy of the

Page 48

1  844 Patent, it looks to me. Yeah.
2      Q.   Thank you for catching that. It
3  looks like I did re-upload the 844 Patent. I'm
4  going to clean that up.
5      For the record, I've introduced a new
6  Exhibit 3 that I'll represent is a copy of
7  U.S. Patent Number 7324469. Are you able to
8  access that document, Dr. Goodrich?
9         (Plaintiff's Exhibit Number 3
10        is marked for identification.)
11     A.   Yes. I have that in front of me
12  now.
13     Q.   And to the best of your
14  understanding, is that a complete -- a complete
15  copy of the 469 Patent?
16     A.   Yes, it appears to be that.
17     Q.   So turning to your declaration
18  beginning at paragraph 88, let me know when
19  you're there.
20     A.   I am there.
21     Q.   So in paragraph 88 you include a
22  copy reproduction of Claim 24 from the
23  469 Patent. Correct?

Page 49

1      A.   Yes.
2      Q.   And you've highlighted certain
3  language in Claim 24. Is that correct?
4      A.   Yes. I've underlined two phrases.
5      Q.   And -- and the phrases that are
6  underlined are remote location and separately
7  relatively high volume of transient traffic.
8  Correct?
9      A.   Yes.
10     Q.   Is it correct that you are
11  offering opinions as to the meaning of those
12  two terms that have been underlined in Claim 24
13  in paragraph 88?
14     A.   That is correct.
15     Q.   Are you offering any other
16  opinions besides those for the 469 Patent?
17     A.   Not at this time.
18     Q.   So let's start with the language
19  remote location. In paragraph 89 you provide
20  your opinion that remote location should be
21  interpreted as a fixed remote location.
22  Correct?
23     A.   That is correct.

13 (Pages 46 - 49)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 50

1    Q.   Is it your opinion that the
2 customary and ordinary meaning of remote
3 location is a fixed remote location?
4         MR. BLOCK:  Object to form.
5    A.   I don't have an opinion about what
6 is the ordinary meaning of remote location.
7 I'm not recalling that as a term of art in
8 computer science.  Instead in this case remote
9 location would be understood by a person of
10 ordinary skill in the art in light of the
11 specification of the 469 Patent, which is
12 indeed a fixed remote location.
13   Q.   Are you applying lexicography to
14 reach your opinion as it relates to remote
15 location?
16        MR. BLOCK:  Object to form.
17   A.   I'm not an attorney.  So I'm not
18 trying to say whether or not I'm using
19 lexicography in this instance.  But I did not
20 use that language, lexicography, in my
21 declaration for this term.
22   Q.   For the 844 Patent, root image,
23 you did apply lexicography, specifically that

Page 51

1 the patentee acted as lexicographer in
2 providing a definition for root image.
3 Correct?
4    A.   Yes.  That's correct.
5    Q.   The patentee for the 469 Patent as
6 a lexicographer can provide a definition for
7 remote location in your opinion?
8         MR. BLOCK:  Object to form.
9    A.   My opinion here is a little bit
10 more than that.  I'm not trying to say that
11 there was a specific definition necessarily to
12 remote location.  But instead with respect to
13 this term remote location and the way that the
14 invention is described, the embodiments are
15 described throughout the specification for the
16 469, a person of ordinary skill in the art
17 would understand that it is and only is to mean
18 a fixed remote location.
19   Q.   So what I'm trying to understand
20 is are you applying lexicography -- or are you
21 applying one of the exceptions in the
22 construction or are you construing this term
23 according to its customary and ordinary

Page 52

1 meaning?
2         MR. BLOCK:  Object to form.
3    Q.   What -- what legal principle that
4 you outlined in your legal section are you
5 applying here?
6         MR. BLOCK:  Object to form.
7    A.   I am not an attorney.  So that
8 sounds like a legal question to me.  Instead
9 what I did is take my understandings from
10 attorneys.  And based on that understanding
11 made a conclusion as to what remote location
12 means.
13   In this case I did repeat that same phrase,
14 remote location, again because that's -- would
15 be understood to a person of ordinary skill in
16 the art generally.  But more narrow than that,
17 it must be a fixed remote location as is
18 disclosed in the 469 Patent because of the way
19 that it describes its embodiment over and over
20 and over again.  It's only a fixed location.
21   Q.   Are you relying on a single
22 disclosure to reach your opinion that a remote
23 location is a fixed remote location within the

Page 53

1 contents of the 469 Patent?
2         MR. BLOCK:  Object to form.
3    A.   No.  There's so many.  That's --
4 that's why I cite to so many different portions
5 of the 469 Patent.  It's over and over and over
6 again reinforcing that when it is referring to
7 a remote location, it's referring to a fixed
8 remote location as opposed to, say, a mobile
9 remote location.
10   Q.   Are you offering any opinions that
11 the patentee disclaimed claim scope as to the
12 term remote location as recited in Claim 24 of
13 the 469 Patent?
14        MR. BLOCK:  Object to form.
15   A.   I am not recalling any opinions
16 with respect to disavowal.  Instead what I'm
17 saying is that this is the only way that a
18 person of ordinary skill in the art would
19 understand that term in the context of the
20 469 Patent.  And so this would be then to avoid
21 confusion with perhaps a future jury.
22   Q.   My question isn't do you recall
23 any opinions with regards to disavowal.  It's

14 (Pages 50 - 53)

Michael Goodrich                                August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 54

1  are you offering any opinions in regards to
2  disavowal of claim scope for the remote
3  location claim term?
4        MR. BLOCK: Object to form.
5        A.   I would answer that the same way I
6  did before. I don't recall in the file history
7  seeing anything that I would call a disavowal.
8  But that wasn't necessary for me to reach my
9  conclusion that the proper definition for
10 remote location is a fixed remote location.
11       Q.   Are you relying on any opinions
12 that the patentee acted as a lexicographer in
13 relation to your opinions for remote location?
14       MR. BLOCK: Object to form.
15       A.   Like I said, I'm not an attorney.
16 So that sounds like a legal question, whether
17 or not these disclosures rise to the level of
18 lexicography. I don't have an opinion about
19 that. Instead my opinion is that it would be
20 clear and unambiguous to a person of ordinary
21 skill in the art that when the 469 Patent
22 refers to remote location, it is referring to a
23 fixed remote location.

Page 55

1        Q.   Is it your opinion that the
2  patentee defined remote location in the
3  469 Patent specification?
4        A.   I would -- I would reply to that
5  the same way I did before. I am not an
6  attorney. I don't know if the entirety of
7  these disclosures rises to the level of
8  lexicography. But nevertheless to a person of
9  ordinary skill in the art, the entirety of the
10 specification together with all of these
11 multitude of citations that I reference would
12 understand that when the patent refers to
13 remote location, it is unambiguously referring
14 to a fixed remote location.
15       Q.   What I'm trying to understand is
16 in paragraph 54 in the context of root image
17 you say a person of ordinary skill in the art
18 would have understood that a patentee defined
19 root image in the specification followed by
20 that specific definition.
21  So would you agree with me there that you
22 seem to understand that -- or offer the opinion
23 that the patentee provided a definition of root

Page 56

1  image in the 844 Patent specification?
2        MR. BLOCK: Object to form.
3        A.   Yes. Yes, I agree. But now
4  you're asking about -- so just to be clear, in
5  the 844 Patent, the patentee offered a
6  definition for root image. I explained that
7  and what would be the fulsome interpretation of
8  that in light of the rest of the specification
9  to avoid, as I mentioned, any potential
10 circular aspects to that definition.
11  But now to my ears it sounds like you're
12 asking a legal question about what the boundary
13 in which something is or is not a
14 lexicographical disclosure by a patentee. In
15 the 844 Patent it was clear to my based on what
16 I've been told by attorneys, that is a
17 lexicographic definition.
18  But now in the context of the 469 Patent, it
19 sounds like you're asking me a legal question
20 about the boundary, when does something stop
21 becoming lexicographic and when it is something
22 else. And I have to answer as I have
23 consistently. I'm not an attorney. I don't

Page 57

1  have an opinion about that precise line between
2  lexicography and something else. Instead I'm
3  interpreting the language of the 469 Patent
4  from a person of ordinary skill in the art.
5  And from that perspective, in my opinion, a
6  person of ordinary skill in the art would
7  understand that remote location unambiguously
8  means a fixed remote location.
9        Q.   Would you agree with me that in
10 the context of your declaration in paragraphs
11 89 to 93, you don't expressly offer the opinion
12 that the patentee offered a definition for the
13 term remote location?
14       A.   I didn't use that language. Like
15 I said, I'm not an attorney. So I don't have
16 an opinion on what's the line between
17 lexicographical definition and understanding of
18 a person of ordinary skill in the art from the
19 specification generally. And so I'm not -- I'm
20 not going to use that language of
21 lexicographical definition or definition here
22 in these paragraphs because in my opinion that
23 would be trending into what would be a legal

15 (Pages 54 - 57)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 58

1  opinion. I'm not an attorney.
2      Q.   I understand. But in the context
3  of one claim term, you were able to say a
4  patentee offered a definition. But here you
5  can't seem to say either way. Is that right?
6      A.   Yes. That's what I just explained
7  to you. In one case it was clear as day that
8  that is a lexicographic definition. Here it's
9  not so clear whether or not that would be true.
10 That's what I mean, we may now be straying into
11 this line between what is lexicographical
12 definition and what is not. That, to me,
13 sounds like an opinion of the law, which I'm
14 not offering. Hence I didn't try to stray into
15 that territory.
16     Instead I gave what I believe is voluminous
17 evidence to support my conclusion that a person
18 of ordinary skill in the art, when they read
19 the term remote location in the 469 Patent,
20 they would unambiguously understand that to
21 mean a fixed remote location.
22     Q.   Is there any disclosure in the
23 469 Patent that expressly prohibits the use of

Page 59

1  the hotspot system on a moving platform?
2      A.   I'm not understanding your
3  question. What do you mean prohibits?
4      Q.   So I think you know what prohibit
5  means, to preclude, to stop, to arrest, to -- I
6  mean, just the plain and ordinary meaning of
7  prohibit. Right? Nothing fancy.
8      A.   But I'm not -- I'm not following
9  what you're asking. I'm sorry. So like for
10 example, I cite to this passage in the
11 469 Patent, column 3, lines 55 through 60 that
12 expresses that in all of its embodiments the
13 wireless hotspot is fixed and the users then
14 move to the -- the hotspot.
15     And this kind of gets into this other term,
16 which I believe is indefinite referring to this
17 relatively high volume of transient traffic.
18 It is directed to what it calls transient
19 traffic of people that are coming and going
20 from, say, a truck stop, which is a fixed
21 location. So that's what I mean by it's
22 unambiguously a fixed location.
23     Q.   I want an answer to the questions

Page 60

1  still. So my last question was, is there any
2  disclosure in the 469 Patent that expressly
3  precludes or prohibits a use of the hotspot
4  system as recited in Claim 30 on a moving
5  platform?
6          MR. BLOCK: Object to form.
7      A.   To answer your question would
8  require more time. In my opinion, I believe
9  that it's clear that that is not in scope for
10 the 469 Patent. But then to go back and look
11 to see if there's other language that prohibits
12 that would require more time.
13     Q.   Well, is it fair to say you didn't
14 offer that analysis in your declaration?
15     A.   I didn't think it was
16 sufficient -- or I'm sorry. I didn't think it
17 was necessary to do that. Already it's clear
18 to a person of ordinary skill in the art that
19 that is out of scope. But now if you're asking
20 me is there actually also language that is
21 prohibiting or precluding that, I -- that would
22 require more time.
23     I -- just sitting here today, it sounds like

Page 61

1  that language from column 3 to 55 to 60 may be
2  treading into preclusion. But to say that more
3  definitively would require more time.
4      Q.   Is there any portion of the
5  469 Patent specification that expressly limits
6  the claimed hotspot system to stationary or
7  ground-based locations?
8          MR. BLOCK: Object to form.
9      A.   I would answer that the same way I
10 did before. Every single embodiment is
11 restricted to this. And it even discloses that
12 the people come to this fixed location, often
13 times referred to as even a rural location.
14 Hence, a person of ordinary skill in the art
15 would understand that this is unambiguously a
16 fixed remote location. And I cite to multiple
17 portions from the Patent to support this
18 conclusion; for example, in my paragraph 91 and
19 paragraph 92.
20     Q.   Where in column 3 lines 55 through
21 60 does it say fixed?
22     A.   Oh, it doesn't use that word.
23 Instead this would be a word to help, for

16 (Pages 58 - 61)

Michael Goodrich                              August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 62

1  example, a future jury understand what it was
2  referring to as a remote location.
3      Q.    And what would be a word to help a
4  future jury?
5      A.    Fixed.  Maybe I didn't hear your
6  question completely.  Could you repeat it?
7      Q.    Let me ask a different question.
8  So it's your opinion that the transceiver
9  disclosed at column 3, lines 55 to 60 is -- is
10  a specific location.  Correct?
11      A.    Yes.
12      Q.    That's just one embodiment
13  disclosed in the 469 Patent.  Correct?
14      A.    Yes.  Which is then why I cite to
15  all of these other citations to show that each
16  and every embodiment is disclosing a fixed
17  remote location.  And it doesn't anticipate at
18  all and a person of ordinary skill in the art
19  would not even consider that such a remote
20  location could be anything other than a fixed
21  remote location, which is why I'm offering my
22  definition.
23      Q.    But isn't it true that to receive

Page 63

1  a signal from a transceiver, you must always
2  come to the transceiver in some sense?
3          MR. BLOCK:  Object to form.
4      A.    I'm -- I'm not following what you
5  mean by this.  What do you mean?
6      Q.    I'm meaning -- let's look at
7  column 3, lines 55 to 60.  So it says since the
8  signal is always live, all a potential wireless
9  user would have to do is move within the
10  transceiver's field --
11      A.    Yes.
12      Q.    -- and turn on his or her wireless
13  ready PC to know that service was available.
14      A.    Yes.
15      Q.    So now whether -- whether a
16  transceiver is stationary or mobile, a user
17  must come to that transceiver to be within
18  range to receive that signal.  Do you agree
19  with that or disagree?
20      A.    Yeah, I do agree.  But then we
21  have to also look at the very previous sentence
22  in the disclosure that says these hotspots
23  would be best located in areas that experience

Page 64

1  high volumes of transient traffic such as rest
2  area, restaurants, truck stops, rural hotels,
3  conference centers, motels, and state park
4  lodges.
5      So it's clear from that context it's
6  referring to fixed locations where people come
7  to the fixed location.  And hence this thing
8  about the 0.2 or 0.4 miles is further
9  amplifying on that concept.
10      Q.    So let's take a look at that
11  disclosure you just pointed out.  So that's in
12  column 3 that you're referring to the language
13  that reads these hotspots would best be located
14  in areas that experience high volume transient
15  traffic such as rest areas, restaurants, truck
16  stops, rural hotels, conference centers,
17  motels, and state park lodges.
18      Did I read that correctly?
19      A.    Yes.
20      Q.    So those specific locations are
21  examples of locations where it would make sense
22  to put a hotspot for the invention.  Correct?
23      A.    Yes.  That's right.

Page 65

1      Q.    It's not an exhaustive list.  Do
2  you agree with me on that?
3      A.    I'm not opining that this is
4  necessarily an exhaustive list.  But then I
5  look to every disclosure in the 469 Patent and
6  all of them are very clear that they're fixed
7  remote locations and that people come to them.
8  So that is then why, to avoid confusion, I
9  think the proper construction for a remote
10  location is a fixed remote location.
11      Q.    So you're not saying this is an
12  exhaustive list.  But would you agree with me
13  the signifier such as followed by the
14  subsequent locations means it's an exemplary
15  list and not necessarily an exhaustive list?
16      A.    Yeah, I'm not disputing that.
17  Which is why I cite to all of these other
18  citations to show that in the context of the
19  entirety of the 469 Patent a remote location
20  means a fixed remote location.
21      Q.    So turning to the abstract of the
22  469 Patent --
23      A.    I'm there.

17 (Pages 62 - 65)

Michael Goodrich                                        August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 66

1    Q.  -- the second sentence in the
2  abstract section reads, hotspots can be located
3  anywhere there is 120 volts of electricity
4  available or access to the sun for a solar
5  panel with enough space to house the
6  transceiver and mount a satellite dish.
7    Do you see that?
8    A.  Yes.
9    Q.  Would an aircraft meet those
10  requirements?
11    A.  That is not an analysis I was
12  asked to do.  To do that would require more
13  time.
14    Q.  Okay.  So sitting here today, you
15  have no opinions as to whether an airplane
16  would satisfy the requirements of 120 volt
17  electricity being available or access to the
18  sun for a solar panel and sufficient or enough
19  space to house a transceiver and mount the
20  satellite dish.  Is that correct?
21    A.  I was not asked to opine on that.
22  And to answer that question would require more
23  time.

Page 67

1    Q.  Have you flown on an airplane
2  recently?
3    A.  Yes.
4    Q.  Have you flown on one with
5  satellite-based internet connectivity?
6    A.  I don't know how they got their
7  internet connectivity.  There was internet
8  connectivity.  But I don't know how they got
9  it.
10    Q.  Are you aware of technology that
11  allows for satellite-based internet
12  connectivity in airplanes?
13    MR. BLOCK:  Object.  Outside the
14  scope.
15    A.  I have not studied that question.
16  I...
17    Q.  But I'm just asking in your
18  personal knowledge as a -- as a technologist,
19  as a professor of computer science related
20  technologies, are you aware of that technology
21  being out there today?
22    MR. BLOCK:  Outside of the scope.
23    A.  I -- I'm not comfortable answering

Page 68

1  questions that I have not offered opinions on
2  without further study.  And to answer your
3  question would require further study.
4    Q.  Sitting here today, you have no
5  opinions or no knowledge as to whether there
6  are airplanes that offer satellite-based
7  internet connectivity?
8    MR. BLOCK:  Objection.  Outside
9  the scope.
10    A.  I would answer that the same way I
11  did before.  I have rudimentary knowledge as a
12  layperson who has flown.  But I have not
13  studied any source code, documents, schematic
14  diagrams to be able to more accurately answer
15  that question.  Hence, to answer that question
16  will require more time.
17    Q.  Does the 469 Patent exclude
18  systems that are installed temporarily or --
19  excuse me -- relocated between uses?
20    MR. BLOCK:  Object to form.
21    A.  I'm not following your question.
22  I'm sorry.  What do you mean by temporarily?
23  This is actually getting to a second part of my

Page 69

1  opinion that I think there's language in the
2  claims of the 469 Patent that's indefinite.  It
3  sounds like your question is also indefinite.
4    Q.  It's kind of nonsensical since
5  we're talking about a question and not a legal
6  concept which you don't claim to opine on.  But
7  we'll set that aside for now.
8    Let me ask the question in a simpler way
9  here.  Does the Patent exclude hotspot systems
10  that are installed at a location temporarily
11  and then relocated elsewhere?
12    MR. BLOCK:  Object to form.
13    A.  I don't understand your question.
14  What do you mean by temporarily?
15    Q.  What part of my question do you
16  not understand?
17    A.  How long a period of time is
18  temporary in your question?
19    Q.  Any period of time.  Any period of
20  time.
21    A.  If by temporary you mean on the
22  scope of years, I'd -- I'd have to think about
23  that more.  So if a person of ordinary skill

18 (Pages 66 - 69)

Michael Goodrich                                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 70

1  would understand in that case that that remote
2  location is fixed, then yes, that would be in
3  scope; for example, for on a scope of years of
4  temporariness.
5      Q.   Does the Patent exclude relocating
6  a hotspot from one location to another
7  location?
8          MR. BLOCK:  Object to form.
9      A.   In my opinion, it doesn't
10 encompass that.  It encompasses the
11 installation at the fixed location.  If there's
12 another embodiment at another fixed location,
13 that would also be yet another embodiment.  But
14 in both cases it has to be installed in what a
15 person of ordinary skill in the art would
16 understand to be a fixed location and that it's
17 installed to be there so that other people come
18 to that location.
19     Q.   So are you saying that a hotspot
20 system as described in the Patent cannot be
21 relocated or moved from one location to another
22 location?
23         MR. BLOCK:  Object to form.

Page 71

1  Outside the scope.
2      A.   I don't have -- I don't have an
3  opinion about that.  This is -- this is now
4  going outside of the scope of the claims.  The
5  claims are about the fixed location, a specific
6  embodiment.
7      Q.   Well, that's actually going to
8  your definition.  What's your understanding of
9  precisely what fixed means?  This is your
10 definition.  So you know, I -- I need to be
11 able to explain what the scope of fixed means.
12 Right?  So a system -- a hotspot system
13 described in the Patent is moved from one
14 location to another location.  Is it a fixed
15 remote location?
16     A.   In that example, no, that is not a
17 fixed location.  So that, again, is -- if it's
18 installed in that fixed location and it stays
19 there for the period of time that it is there
20 in that fixed location, does not move, the
21 people come to it, then that is what I mean by
22 fixed location.
23     Q.   So did you review the embodiment

Page 72

1  shown in figure 3 of the 469 Patent as part of
2  your analysis?
3      A.   Yes.
4      Q.   Would you agree that figure 3 of
5  the 469 Patent shows the use of a wireless
6  transceiver extender unit to distribute signals
7  away from the main router?
8      A.   Which element are you pointing to
9  now?
10     Q.   Elements 44 and 42.
11     A.   Could you rephrase your question
12 or repeat it?
13     Q.   Sure.  Would you agree that
14 Figure 3 of the 469 Patent shows the use of
15 wireless transceiver extender units to
16 distribute signals away from the main router?
17     A.   Yes.  I agree that that is what's
18 shown in figure three.
19     Q.   Does the use of these wireless
20 transceiver extender units adjust flexibility
21 in the placement of the hotspot system?
22         MR. BLOCK:  Object to form.
23     A.   I'm not following your question.

Page 73

1  I'm sorry.
2      Q.   Well, what's your understanding of
3  what the function of a wireless transceiver
4  extender unit as described in the 469 Patent?
5      A.   Just exactly what they said about
6  it; for example, in column 5.
7      Q.   Can you point to the specific --
8      A.   Sure.  So at column 40 it says
9  wireless transceiver extender unit, 42, 44,
10 will run directly by wire to the subscriber
11 access unit 16.  The use of wireless
12 transceiver units 42, 44 allows the Ethernet
13 wireless access point 40 to be placed further
14 away, extending the effective range of the
15 hotspot.
16     Q.   Would you agree that a possible
17 function of the wireless transceiver extender
18 unit is to extend the effective range of the
19 hotspot?
20         MR. BLOCK:  Object to form.
21     A.   I -- I take it just as it's
22 written here.  It said that more or less.  It
23 said, again, the use of the wireless

19 (Pages 70 - 73)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 74

1  transceiver extender units 42, 44 allows the
2  Ethernet wireless access point 40 to be placed
3  further away, extending the effective range of
4  the hotspot. But of course these are terms
5  that do not appear, for example, in Claim 24.
6      Q.    You -- in reaching your opinions
7  as to a fixed location, you reviewed the
8  entirety of the 469 Patent specification.
9  Correct?
10     A.    Yes.
11     Q.    So are you aware that the Patent
12  allows for solar power as a source of power of
13  the hotspot?
14     A.    Yes. I'm not disputing that.
15     Q.    Would you agree that solar power
16  implies a potential portability or independence
17  from a fixed infrastructure?
18     A.    Not in the context of the
19  469 Patent, no.
20     Q.    What about outside the context of
21  the 469 Patent?
22          MR. BLOCK: Object to form.
23     A.    That's not a question I was asked

Page 75

1  to opine on. To do so would require more time.
2      Q.    So sitting here today, you don't
3  have any opinions as to whether solar power can
4  imply a potential portability or independent
5  location that's independent from a fixed
6  infrastructure?
7          MR. BLOCK: Object to form.
8      A.    No. That's an incorrect
9  characterization of what I'm saying. Instead
10  what I'm saying is that a person of ordinary
11  skill in the art reading the 469 Patent would
12  understand when it's referring to solar panel
13  installations, it's talking about installations
14  in very rural locations that are so far away
15  from electronic infrastructure that they don't
16  have access to 120 volt power, for example,
17  just to plug in. And instead they will have
18  solar power together with this satellite dish
19  to offer internet to people who then would be
20  coming to that remote location, say in a state
21  park. But this is a fixed remote location.
22     Q.    Where in the 469 Patent does it
23  talk about solar power installation?

Page 76

1      A.    There's a number of places. For
2  example, in column 3, column 4, the abstract we
3  just read, and column 1.
4      Q.    What specific language are you
5  referring to?
6      A.    Oh, sure. So we already read the
7  passage in the abstract. And then in column 1
8  it talks about how you can use solar power, for
9  example, in line 40 of column 1. And then
10  about how these could be these remote rural
11  areas and even the state park lodges.
12     Hence a person of ordinary skill in the art
13  would read that to understand this could be,
14  you know, off the beaten path, way back where
15  you have to backpack back in to get to the
16  state park lodge, for example. And then this
17  would be a way that that person could get some
18  internet because there's a solar panel
19  providing power to the hotspot at that remote
20  location, which again is a fixed remote
21  location.
22     Q.    What are -- what are you pointing
23  to that actually describes the location of the

Page 77

1  solar panel placement?
2      A.    So I'm looking at the paragraph in
3  column 1 that begins at line 34 and goes to
4  line 56. There's another one in column 3. The
5  paragraph begins at line 43 and goes to line
6  67. And then there's another one in column 4
7  beginning at line 17 going to line 38.
8      Q.    Do those locations provide
9  specific disclosure on where the solar panel is
10  being physically placed?
11     A.    Yes. In a rural location. It
12  says so, for example, in line 4 -- column 4,
13  line 19. So again, this -- this gives context
14  to a person of ordinary skill in the art to
15  understand that in such a rural location, it's
16  possible they might not have power from the
17  power company; and hence you need a solar
18  panel.
19     Q.    What's your understanding of what
20  a rural location is?
21     A.    The specification of the
22  469 Patent gives several examples. Rest areas,
23  rural hotels, state park lodges to a person of

20 (Pages 74 - 77)

Michael Goodrich                                      August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 78

1 ordinary skill in the art would be examples of
2 rural locations. And some state park lodges
3 don't have power, and so this would be a great
4 way to get internet for such a state park
5 lodge.
6        Q.   And those are examples of rural
7 locations. Correct?
8        A.   Yes.
9        Q.   Is there any claim language that
10 limits the remote location to a fixed location?
11            MR. BLOCK: Object to form.
12 Outside the scope, other than Claim 24.
13        Q.   So I'll re-ask the question in the
14 context of Claim 24. Is there any language in
15 Claim 24 that limits remote location to a fixed
16 location?
17        A.   Yes. I believe that the language
18 in column 8 beginning at line 36, wherein the
19 satellite dish, at least one router, and the
20 subscriber access unit are located in a remote
21 location experiencing a relatively high volume
22 of transient traffic.
23        Q.   What specific language there --

Page 79

1 let me -- let me ask a different question. Are
2 you pointing to the remote location claim
3 language as limiting the scope of Claim 24 to a
4 fixed location?
5        A.   Yes. But also this language,
6 experiencing a relatively high volume of
7 transient traffic, which admittedly I believe
8 is indefinite. But there are some examples
9 that are mentioned in the Patent for such
10 locations that are clearly and unambiguously
11 disclosed as being fixed locations.
12        Q.   So I'm trying to understand what
13 you're saying here. It seems like you're
14 saying that you can only experience a
15 relatively high volume of transient traffic,
16 except that term is non-definite, which I
17 understand you dispute. But that can only
18 happen in the context of a fixed location. Is
19 that what you're saying?
20        A.   In the context of the 469 Patent,
21 that is correct. In the full reading of the
22 Patent specification, that is absolutely
23 correct.

Page 80

1        Q.   Are you saying that transient
2 traffic can only happen in a fixed location?
3        A.   Well, this is starting to get into
4 my opinion that that term is indefinite, which
5 I still stand by. But nevertheless, there are
6 examples that the Patent discloses as being
7 transient traffic such as people who go to a
8 truck stop. And in every example that the
9 Patent gives, those are fixed locations
10 unambiguously.
11        Q.   Okay. So the only language you're
12 pointing to in Claim 24 that supports your
13 opinion that the remote location is a fixed
14 location is a language in column 8, lines 36 to
15 39. Is that correct?
16        A.   From the claim itself, that
17 supports my conclusion. And then I cite to a
18 number of other locations in the Patent
19 specification itself that also supports my
20 conclusion.
21        Q.   I understand that. But I'm
22 focusing just on the claim language. Is there
23 other claim language that you're relying on in

Page 81

1 Claim 24 to support your opinion that the
2 remote location is a fixed location?
3        A.   That was already sufficient for my
4 conclusion. I'm not -- I take that back. I
5 also looked to the next sentence, the claim
6 element that begins on line 40 which says,
7 wherein the user may authenticate the
8 subscription account and access the internet at
9 the remote location by establishing a data
10 connection between the web-ready device and the
11 router.
12        So this is giving -- it uses the term
13 remote location, which finds antecedent basis
14 in that previous claim element.
15        Q.   Well, are you saying that that
16 limitation provides express support that a
17 remote location is -- is a fixed location? Is
18 that what you're saying?
19        A.   To answer that question would
20 require more time. But what I'm saying at
21 least is that this is another reference to
22 remote location that would be understood by a
23 person of ordinary skill in the art as a fixed

21 (Pages 78 - 81)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 82

1 remote location based both on the claim
2 language of Claim 24 and that previous element
3 as well as the entire specification, and in
4 particular the citations that I give in my
5 declaration to the 469 Patent.
6    Q.   You agree with me that use of the
7 remote location means that there's antecedent
8 basis to an earlier reciting of a remote
9 location?
10    A.   I believe that's what I had said
11 to you earlier to answer a previous question.
12 So yes.
13    Q.   In your -- and so in your opinion
14 the remote location recited on line 41 of
15 column 8 that's referring back to remote
16 location recited in line 37 in column 8.  Is
17 that right?
18    A.   I agree.  But this is now further
19 restricting what you can do at that remote
20 location to satisfy Claim 24.
21    Q.   So let's turn to the other claim
22 language that's at issue for the 469 Patent,
23 which is a relatively high volume of transient

Page 83

1 traffic.
2    A.   I am there.
3    Q.   And so it's in your declaration.
4 I'll take it that you reviewed the disclosure
5 at column 1, lines 59 through 65.  The
6 specification provides examples of hotspot
7 locations such as rest areas, restaurants,
8 truck stops, rural hotels, conference centers,
9 motels, and state park lodges.  Correct?
10    A.   We talked about that earlier today
11 in fact, so yes.
12    Q.   Would you agree that those are
13 real-world examples where transient traffic is
14 high relative to, say, a private residence, for
15 example?
16       MR. BLOCK:  Object to form.
17    A.   I am not offering opinions about
18 what relative means because I believe that -- I
19 mean, I believe that a person of ordinary skill
20 in the art would need to know what is relative
21 and what that means.  And the patent doesn't
22 say.  Instead it just gives examples.
23    So if your question is am I disputing that

Page 84

1 those are examples of locations that are fixed
2 locations that are experiencing a relatively
3 high volume of transient traffic, I would not
4 dispute those examples.  But then in my opinion
5 a person of ordinary skill in the art would
6 have no guidance -- absolutely none -- on where
7 the boundaries are.
8    What about something else, say, the office
9 that I work in?  Is that in scope or not?  A
10 person of ordinary skill has no way of deciding
11 that or determining it.  The Patent gives no
12 guidance for that.
13    Q.   The specification itself says
14 these hotspots would best be located in areas
15 that experience high volume transient traffic
16 such as, followed by a list of exemplary
17 locations.  Correct?
18    A.   Yes.  And again, I'm not disputing
19 that those are examples that the Patent
20 enumerates.  It's just that once we go beyond
21 that list of examples, a person of ordinary
22 skill has no guidance on how to determine
23 whether or not any other location would be

Page 85

1 considered a location experiencing a relatively
2 high volume of transient traffic.
3    Q.   At least as to the locations
4 expressly provided in the specification, you
5 agree that these are specific examples of
6 locations that the Patent describes as high
7 volume transient traffic?
8    A.   I'm not disputing that.
9    Q.   It's not your position that the
10 use of the word relatively automatically
11 renders a claim term indefinite.  Correct?
12    A.   No.  That's also not true.  If a
13 patent, for example, gives guidance on what it
14 refers to when it's referring to relatively,
15 then that may be not indefinite.  For example,
16 if it says it has to be above a certain
17 threshold or if it tells you what to compare it
18 to.
19    But in this case the 469 Patent does not
20 provide a person of ordinary skill in the art
21 with any such guidance on how to determine what
22 it means by relatively.  Hence in my opinion,
23 that term is indefinite.

22 (Pages 82 - 85)

Michael Goodrich                                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 86

1       Q.   Is it your opinion that because
2   the 469 Patent Claim 24 does not provide a
3   specific threshold or quantile value for a
4   relatively high volume of transient traffic,
5   that that term is indefinite?
6           MR. BLOCK:  Object to form.
7       A.   It's not only that that doesn't
8   appear in Claim 24.  That doesn't appear
9   anywhere in the specification.  There's no
10  guidance at all in the specification or the
11  claim to give any scope to that limitation to a
12  person of ordinary skill in the art.
13      Q.   Is it your view that the language
14  relative recited in a claim must include a
15  specific threshold or quantile value to not be
16  indefinite?
17          MR. BLOCK:  Object to form.
18      A.   How is that different than the
19  question you asked earlier?  It sounds like a
20  question that you're now repeating.  If it is a
21  different question, could you please clarify
22  what is different about it?
23      Q.   Well, I'll ask the question again.

Page 87

1   Is it your view that the language relative
2   cited in a claim must give a specific value or
3   quantile value to not be indefinite?
4           MR. BLOCK:  Objection.  Outside
5   the scope.
6       A.   I'd answer that the same way I did
7   before.  Again, it depends on the context of
8   the Patent, which is the analysis that I did in
9   this case for the 469 Patent.  So in this case
10  the word relatively is indefinite because the
11  Patent gives no guidance at all, zero, to a
12  person of ordinary skill in the art as to what
13  that means.
14      Relative to what?  It doesn't say.  Relative
15  to a threshold?  Doesn't say.  There's no
16  guidance, period.  In another patent, maybe
17  there would be guidance.  But in this case,
18  there's none.
19      Q.   So the claim term at issue -- the
20  language at issue is a relatively high volume.
21  Right?
22      A.   I -- I agree.  That is the
23  language.  It is indefinite.

Page 88

1       Q.   In English the antonym of high is
2   low.  Right?
3       A.   I'm not disputing that.
4       Q.   So what might be relative to a
5   high volume, for example, would be a low
6   volume.  Is that fair?
7           MR. BLOCK:  Object to form.
8       A.   That's not helpful unfortunately
9   because the person of ordinary skill in the art
10  doesn't know any guidance to what would be a
11  relatively high value.  And it's likewise they
12  wouldn't know what is a relatively low value to
13  compare it to.
14      Q.   But you'd agree that -- that
15  locations that are described in column 1, for
16  example, are going to -- or are likely to
17  experience different amounts of traffic?  So
18  for example, a restaurant which has a set
19  occupancy of, for example, 75 people might have
20  a different internet or hotspot usage compared
21  to a conference center which might have
22  potentially thousands of people attending.  Is
23  that -- is that possible?

Page 89

1           MR. BLOCK:  Object to form.
2       A.   That seems possible.  But that
3   goes directly to this problem.  A person of
4   ordinary skill in the art has no way of
5   determining when something goes above this
6   threshold of being relatively high volume of
7   transient traffic.  There's no -- there's no
8   guidance.
9       Q.   But you seem to be saying that the
10  use of relatively in a claim, since it's not
11  some sort of quantile guidance, is by
12  definition indefinite.  Do you disagree with
13  that?
14      A.   I don't understand your question.
15      Q.   The language relatively used in a
16  claim without quantile guidance is indefinite?
17          MR. BLOCK:  Objection.
18      A.   I don't recall that being a
19  question I was asked to opine on.  Instead I am
20  opining on the phrase of relatively high
21  volume.  And that's indefinite in this context.
22      Q.   Is it your opinion -- are you
23  offering the opinion that high volume by itself

23 (Pages 86 - 89)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 90

1 is indefinite?
2       MR. BLOCK:  Object to form.
3    A.   I looked at the whole phrase,
4 relatively high volume.  That's what I studied.
5    Q.   And just to confirm, it's your
6 opinion that that phrase in its entirety is
7 indefinite, not a part of it?
8       MR. BLOCK:  Object to form.
9    A.   I didn't break it apart that way.
10 So in my opinion, relatively high volume is
11 indefinite because a person of ordinary skill
12 in the art has no way of determining based on
13 the specification and the claim itself when
14 something satisfies being in relatively high
15 volume and when it doesn't.  There is no
16 guidance, zero, for that.
17    And like you said, there's a compared to low
18 volume potentially, but it never says what that
19 is either.  So there's no way to tell to a
20 person of ordinary skill in the art.  Hence,
21 this is indefinite.
22    Q.   Do you have any general
23 understanding of each of those terms

Page 91

1 individually, relatively high volume?
2       MR. BLOCK:  Object to form.
3    A.   I'm not -- I'm not following your
4 question.  What are you asking?
5    Q.   Do you have a general
6 understanding as to each of those terms
7 independently?
8       MR. BLOCK:  Object to form.
9 Outside the scope.
10    A.   Yes, I -- I understand those terms
11 generally.  And in some context there could be
12 a way to interpret them in a definite way.
13 It's just in this context they're indefinite
14 because there's no guidance as to when
15 something would satisfy that phrase relatively
16 high volume and when it would not.
17    Q.   Okay.  As a hypothetical, if I
18 were to ask a network engineer to install a
19 WiFi hotspot and gave them a choice between a
20 rest stop and a private barn, do you have any
21 understanding or opinions that they would know
22 which one had relatively higher transient
23 traffic?

Page 92

1       MR. BLOCK:  Object to form.
2       THE COURT REPORTER:  I'm sorry.
3 That audio was kind of breaking up for me a
4 little bit.
5    Q.   Let me re-ask the question.  As a
6 hypothetical, if I were to ask a network
7 engineer where to install a Wifi hotspot as
8 cited in Claim 24, for example, and gave them a
9 choice between a rest stop and a private barn,
10 do you have an understanding or an opinion as
11 to whether they would know which location had a
12 relatively higher transient traffic?
13       MR. BLOCK:  Object to form.
14 Incomplete hypothetical.
15    A.   I think that hypothetical goes
16 directly to the reason why this phrase is
17 indefinite.  In this claim and in the
18 specification itself, there is no disclosure of
19 what to compare to, to satisfy relatively high
20 volume of transient traffic.  And so in that
21 context a person of ordinary skill in the art
22 may consider both of those locations relatively
23 high because they're comparing it to something

Page 93

1 else or both of those locations relatively low
2 because they're comparing them to something
3 else.  And there's no guidance from the Patent
4 to help the person of ordinary skill in the art
5 to determine that, which is why it's
6 indefinite.
7    Q.   Would a person of ordinary skill
8 in the art be readily able to determine the
9 relative usage of a hotspot at a given
10 location, a hotspot that is, for example,
11 claimed in 24?
12       MR. BLOCK:  Object to form.
13    A.   I'm not following your question.
14 I'm sorry.
15    Q.   Would a person of ordinary skill
16 in the art be able to determine relative usage
17 of a hotspot recited in Claim 24 at a given
18 location, for example, one of the locations
19 provided in column 1?
20       MR. BLOCK:  Object to form.
21    A.   I still don't understand your
22 question.  I'm sorry.
23    Q.   What part do you not understand?

24 (Pages 90 - 93)

Michael Goodrich                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 94

1    A.    What you mean by relative usage.
2    Q.    How the hotspot is used.
3    A.    But what are you comparing it to
4 when you say relative usage?
5    Q.    Let me get rid of that word.  Can
6 a person of ordinary skill in the art determine
7 the usage of a hotspot, for example, a hotspot
8 described in Claim 24 at a location, for
9 example, one of the locations described in
10 column 1?
11    A.    I'm -- I'm still not following.
12 What do you mean by the usage?  Are you asking
13 about a volume or be able to sniff packets?
14 I'm not sure what you mean by usage.  Like how
15 many people?  How much data is transferred?
16 What do you mean by your question?
17    Q.    Any of those metrics.
18    A.    It may be possible depending on
19 the context.  But then again in this claim,
20 they have to be able to make this determination
21 whether or not it's relatively high volume of
22 transient traffic.  There's no guidance from
23 the Patent to determine that.  They have no way

Page 95

1 of making that decision.
2    Q.    Is a person of ordinary skill in
3 the art capable of determining historical usage
4 of a hotspot that is recited in Claim 24, for
5 example, at a location described in the patent,
6 for example, in column 1?
7        MR. BLOCK:  Object to form.
8    A.    I'm not following your question.
9 What do you mean by historical?
10    Q.    Usage over time.
11    A.    Over what kind of period of time?
12    Q.    Any period of time.
13    A.    I'm not understanding then the
14 context.  Are you talking days, months, weeks,
15 minutes?
16    Q.    Any of those.
17    A.    Is it possible to determine -- and
18 again, when you're talking about volumes, are
19 you talking about people or data?
20    Q.    I didn't say the term volume.  I
21 just said usage.
22    A.    Well, then I'm not --
23    Q.    The metrics -- the metrics we

Page 96

1 discussed previously, for example, any of
2 those.
3    A.    Then I've lost track of the
4 question because I thought we were talking
5 about either people or data.  And now you said
6 we're not.  So I'm confused.
7    Q.    So with the broadest
8 interpretation of usage as a computer
9 scientist, the context is hotspot usage.  Would
10 a person of ordinary skill in the art be able
11 to determine the historical usage of a hotspot
12 at a location, for example, a location
13 described in column 1 of the 469 Patent?
14        MR. BLOCK:  Object to form.
15    A.    I'm not following your question.
16 Usage is not a term that appears in the
17 469 Patent.  What are you referring to as
18 usage?  It's not a claim term.
19    Q.    No.  But you just -- we just
20 agreed and had a discussion on usage in any
21 number of metrics, you know, for people using a
22 hotspot, volume of a particular hotspot.  I'm
23 not trying to be sneaky here.  Any metric that

Page 97

1 relates to usage of a hotspot, that's all I'm
2 talking about.  There's nothing complex here.
3 It's pretty simple.
4    A.    I -- I appreciate your intent.
5 But I still have to apologize that I don't
6 understand your question.
7    Q.    Well, going back, I think you
8 agreed that it may be possible for a person of
9 ordinary skill in the art to determine the
10 usage of a hotspot, for example, the hotspot
11 described in Claim 24 at a location, for
12 example, a location described in column 1?
13        MR. BLOCK:  Object to form.
14    A.    But again, when referring to
15 usage, maybe I need to correct my earlier
16 answer.  I'm still confused what you mean by
17 that and the relevance to this Patent.  I
18 thought we were talking before about something
19 outside the scope of the Patent, not something
20 that would be relevant to column 1.
21    So in that context it would require more
22 time for me to answer how you could determine
23 usage, whether or not that would be possible.

25 (Pages 94 - 97)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 98

1    Q.   Okay.  Let me -- let me make it
2  simpler.  Is a person of ordinary skill in the
3  art capable of determining the volume of use of
4  a hotspot, for example, a hotspot in Claim 24,
5  at a location, for example, a location provided
6  in column 1?
7        MR. BLOCK:  Object to form.
8    A.   I'm -- I'm still not understanding
9  the context of your question.  I have to
10  apologize.  Getting into these hypotheticals,
11  it's hard for me to put all of the pieces
12  together because it sounds like you're asking
13  questions that are now out of the scope of the
14  Patent to me.
15    Q.   Well, it cites a high volume.  So
16  what's your understanding of what volume means
17  in that context in Claim 24?
18    A.   It's referring to a high volume of
19  transient traffic, which is referring to
20  people.  And then you're asking questions about
21  data, and that's what's confusing me.
22    Q.   A high volume of transient traffic
23  is referring to people, is your opinion?

Page 99

1    A.   Yeah.  Of course.  That's what it
2  means by transient.  A transient is a person
3  who comes and goes.  And the problem -- I have
4  an opinion about that too.  The problem with
5  transient is that a person of ordinary skill in
6  the art doesn't know how to -- what are the
7  boundaries of when somebody is transient
8  traffic.
9        How long can they stay?  How often can they
10  come?  For example, here in my office I come
11  most days of the week that are Monday through
12  Friday.  Is that transient traffic, me coming
13  every day of the week except on the weekends?
14  A person of ordinary skill in the art has no
15  way of knowing that.
16        So the only thing that is revealed is these
17  certain other places like a rest stop, that has
18  transient traffic.  People come and go to a
19  rest stop.  That's pretty clear.  But beyond
20  that a person of ordinary skill in the art
21  doesn't know.  That's why it's confusing me
22  that you're asking about data because the claim
23  is about people.

Page 100

1    Q.   Well, your interpretation of
2  Claim 24 that a high volume of transient
3  traffic, that traffic refers to people.  Right?
4    A.   Of course.  That has no meaning in
5  computer science other than in the context of
6  the 469 Patent.  It must refer to people.
7    Q.   Is it your understanding of
8  transient, a person who is staying or working
9  in a place for only a short time?
10    A.   That's -- that's what I talk about
11  in my -- in my declaration.  So yes, that's
12  true.  But then a person of ordinary skill in
13  the art has no way of knowing what constitutes
14  a short period of time, what's too much, or if
15  you're coming back over and over again like I
16  do to my office, if that is in scope or not.
17        Again, given the context of the 469 Patent
18  and its disclosures, a person of ordinary skill
19  in the art has no way of determining that,
20  which is why it's indefinite.  That part too is
21  indefinite.  Transient traffic is also
22  indefinite.
23    Q.   Well, what's the source of your

Page 101

1  definition for transient?
2    A.   Just the ordinary meaning for
3  transient.  It's a person who comes and goes,
4  who stays for a short period of time.  I speak
5  to that in paragraph 97.
6    Q.   And you're not relying on any
7  particular intrinsic or extrinsic evidence for
8  that, are you?
9    A.   It's just my understanding based
10  on my experience and what a person of ordinary
11  skill in the art would know.  I'm sure we could
12  look up dictionary definitions too.  I would be
13  surprised if it's different than what I'm
14  saying here.
15    Q.   And would you agree with me that a
16  short time depends on the context?
17    A.   I didn't hear your question.  Can
18  you repeat it?
19    Q.   Would you agree with me that a
20  short time depends on the context?
21        MR. BLOCK:  Object to form.
22    A.   Yeah.  I'm not disputing that.
23  That's why that term is indefinite.  A person

26 (Pages 98 - 101)

Michael Goodrich                              August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 102

1 of ordinary skill in the art would not know,
2 again, given the disclosures from 69 -- for the
3 469 Patent what would be considered a transient
4 person versus somebody like me who comes and
5 goes to the office. Is that transient or not?
6 The person of ordinary skill in the art has no
7 guidance to determine that.
8      Q.   For example, is a short time at a
9 restaurant any different from a short time
10 spent at a conference center? Is that -- is
11 that fair?
12     A.   It could be different. That's --
13 that's a very good point, which is yet another
14 reason why this term is indefinite.
15     Q.   So would you agree that a person
16 of ordinary skill in the art would be unable to
17 determine what a short time qualifies for at a
18 location such as a truck stop, for example?
19          MR. BLOCK: Object to form.
20     A.   I -- I wouldn't have characterized
21 it that way. Instead what I'm saying is that a
22 person of ordinary skill in the art reading the
23 469 Patent has examples of things that would

Page 103

1 qualify. I'm not disputing that. So a rest
2 area, restaurant, truck stop, yes, those
3 qualify.
4      The problem is that what about something
5 else like an office like I work in? There's no
6 guidance to determine whether or not that
7 location would be in scope or not as a place
8 that experiences relatively high transient
9 traffic. There's no way to determine that.
10 And the Patent is silent on whether or not that
11 would be in scope. And the person of ordinary
12 skill in the art has no way to determine that.
13 And it's indefinite.
14     Q.   Is it your opinion that the
15 469 Patent has to describe every type of rural
16 location and provide guidance on -- a
17 description of that location in order to
18 determine whether it is transient or not?
19          MR. BLOCK: Object to form.
20     A.   I'm not saying that. Instead I'm
21 saying that the 469 Patent needs to give to a
22 person of ordinary skill in the art a way of
23 determining the scope of the claim. And

Page 104

1 there's no guidance. Yes, it gave some
2 examples. But there's no guidance to what else
3 would be in or out of scope for that to satisfy
4 that limitation.
5      Q.   So you don't disagree that the
6 Patent provides guidance for the locations
7 expressly identified in the 469 Patent?
8          MR. BLOCK: Object to form.
9      A.   I don't dispute that those are
10 examples that would be things that the Patent
11 does disclose as things that experience high
12 volumes of transient traffic because it says so
13 in column three. So it says, for example,
14 beginning at line 54 such as rest area,
15 restaurants, truck stops, rural hotels,
16 conference centers, motels, and state park
17 lodges.
18          MR. HICKS: Now would be a good
19 time for a break. We've been on the record for
20 a little over an hour here. Let's go off the
21 record.
22          THE WITNESS: Okay.
23          THE VIDEOGRAPHER: Sure. The time

Page 105

1 is 2:02 p.m. And we are now off the record.
2      (A break was taken.)
3          THE VIDEOGRAPHER: Okay. The time
4 is 2:11 p.m. And we are now back on the
5 record.
6      Q.   (Mr. Hicks) I've marked as
7 Exhibit 4 a copy of the 722 Patent. Please let
8 me know once you've had the chance to access it
9 and if you could please confirm your
10 understanding if this is a complete and
11 accurate copy of the 722 Patent.
12     (Plaintiff's Exhibit Number 4
13     is marked for identification.)
14     A.   Yes, I have that in front of me.
15 And it appears to be that patent.
16     Q.   So turning to paragraph 83 of your
17 declaration, let me know when you're there.
18     A.   I am there.
19     Q.   Paragraph 83 you include Claim 14
20 on the 722 Patent. Correct?
21     A.   Yes.
22     Q.   And in Claim 14 you have
23 underlined certain claim terms that are recited

27 (Pages 102 - 105)

Michael Goodrich                                      August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 106

1 in Claim 14, including input source, identify a
2 category of the update message based on the
3 input source, and node type.
4    Do you see that?
5    A.   Yes.
6    Q.   Do you offer any opinions as to
7 the meaning of node type?
8    A.   Not in this declaration, no.
9    Q.   So the -- your opinions provided
10 in your declaration as it relates to the
11 722 Patent are -- are limited to the meaning of
12 terms input source and identify a category of
13 the update message based on input source.  Is
14 that correct?
15    A.   Yes.
16    Q.   You are not offering any other
17 opinions for the 722 Patent in your
18 declaration.  Correct?
19    A.   Not at this time.  I understand
20 that there may be another expert opining on
21 claim terms on behalf of Intellectual Ventures.
22 And I would respectfully request to be able to
23 give a sur-reply if it is allowed by the Court.

Page 107

1 But at this time that is the scope of my
2 opinions, what's in my declaration.
3    Q.   At this time do you have any other
4 opinions as to the 722 Patent that are not
5 included in your declaration?
6    A.   Not at this time.  And what I just
7 said about a sur-reply applies to all of the
8 patents, by the way.
9    Q.   So let's start with the term input
10 source.  It's your opinion that the patentee
11 acted as a lexicographer for the notation.  Is
12 that correct?
13    A.   Yes.
14    Q.   And that is based on the
15 disclosures at column 3, lines 15 to 18 and
16 column 13, lines 26 to 27.  Correct?
17    A.   Yes.
18    Q.   Are there any other disclosures
19 that you're relying on to reach your opinion as
20 to the meaning of input sources?
21    A.   I'm also considering the entirety
22 of the specification of the 722 Patent.  But
23 those two were sufficient for me to reach my

Page 108

1 conclusion.
2    Q.   So a point of clarification.  Are
3 you relying on both of these disclosures to
4 reach your opinion that the patentee acted as a
5 lexicographer?
6    A.   Yes.  They're substantively
7 identical.
8    Q.   Are you relying on either one
9 independently to reach your conclusions?
10    A.   I don't understand that question.
11 I'm relying on both of them because they are
12 saying the same thing to a person of ordinary
13 skill in the art.
14    Q.   And so looking at the disclosure
15 at column 3, lines 15 to 18, that reads in part
16 instead information provider or a dynamic
17 contents provider, parentheses, generically
18 referred to as an -- the input source, end
19 quote, end parentheses.
20    A.   Yes.  That is correct.
21    Q.   So I don't think there's a dispute
22 that information provider can generically be
23 referred to as an input source.  Correct?

Page 109

1    A.   I think it's an express
2 definition, input provider or a dynamic content
3 provider is the definition of an input source.
4    Q.   And likewise, a dynamic content
5 provider can be generically referred to as an
6 input source.  There's no dispute there.
7 Right?
8    A.   I agree.  Which is why in my
9 definition I -- to be clear I said the
10 definition is information provider and/or
11 dynamic content provider for input source.
12    Q.   So you would disagree that there
13 are other sources besides an information
14 provider or a dynamic content provider that can
15 be an input source.  Is that right?
16        MR. BLOCK:  Object to form.
17    A.   I'm not quite following what your
18 question is.  What are you asking?
19    Q.   So the input source is limited to
20 one of those two -- to the sources, an
21 information provider or a dynamic content
22 provider, correct, is your opinion?
23    A.   Yes.  Or there could be one that

28 (Pages 106 - 109)

Michael Goodrich                                August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 110

1 has both, and that's why I'm using the and/or
2 language. But that would be understood from
3 the context of how the Patent is using the word
4 or here in column 3 and then that other passage
5 in column 13.
6     Actually the passage in column 13 uses that
7 and/or language precisely. So it's line 26
8 through line 28. And it uses the word -- the
9 term IE. So it says the input source, 210,
10 i.e., the information provider, 108, and/or
11 dynamic content provider, 116, can use a
12 variety of tools to generate the update
13 messages.
14    A person of ordinary skill in the art would
15 understand by the use of that phrase, i.e.,
16 that this is a lexicographical definition which
17 is completely, substantively identical to the
18 passage we just read in column 3.
19     Q.   Well, the complete disclosure at
20 column 13 is that the input source on the 210,
21 i.e., information provider, element 108, and/or
22 dynamic content provider, element 116, use a
23 variety of tools to generate the update

Page 111

1 messages. Correct? That's what the Patent
2 says?
3     A.   Yeah. We just read -- I just read
4 that to you. So yes, that's correct.
5     Q.   And elements 210, 108, and 116 can
6 be found, for example, in Figures 1 and 2 of
7 the 722 Patent. Is that correct?
8     A.   I'm not following your question.
9 What do you mean by that?
10    Q.   So elements 210 and 108 and
11 element 116 are elements referred to, described
12 in the context of Figures 1 and 2. Correct?
13    A.   Yes. Those -- those elements are
14 illustrated in those figures and then also
15 described in the specification.
16    Q.   Okay.
17    A.   And they appear also again in
18 Figure 3 as well.
19    Q.   And Figures 1, 2, and 3 are all
20 embodiments of the 722 Patent. Correct?
21    A.   Yes.
22    Q.   Okay. So let's go to the next
23 term that you offer opinions on in the

Page 112

1 722 Patent.
2     A.   I'm there. Yeah. Beginning of
3 paragraph 86 in my declaration.
4     Q.   Yep. Just for the record, this
5 says identify a category of the update message
6 based on the input source. So it's your
7 opinion that this term would have been
8 understood by a person of ordinary skill in the
9 art to mean identify the category of the update
10 message based on the information provider or
11 dynamic content provider, not on the
12 category/topic of the message content. Is that
13 correct?
14    A.   Yes.
15    Q.   Your opinion is based on, at least
16 in part, statements made during the prosecution
17 of the 722 Patent. Is that right?
18    A.   Yes. I was told by attorneys that
19 a person of ordinary skill in the art can
20 understand that there can be a disavowal of
21 claim scope based on disclosures from the
22 patentee. And in this case in my opinion,
23 there was such a disclosure in the file

Page 113

1 history.
2     Q.   And you're relying on the
3 disclosure, pages 18 and 19 of the applicant
4 reply filed on February 9, 2012. Is that
5 correct?
6     A.   Yes. As well as another document
7 called brief on appeal under 37 CFR Section
8 41.37, March 30, 2006 at 13 through 17.
9     Q.   Okay. And in your declaration,
10 you reproduced the language from the
11 February 9, 2012 reply. Is that right?
12    A.   I think that's right. Could you
13 upload that document for me to double check
14 that?
15    Q.   Give me a moment.
16    A.   Sure.
17    Q.   I'll remove the pending question.
18 The exhibit I've introduced is Exhibit 5, which
19 I'll represent is a portion of the 722 Patent
20 docket sheet. If you could pull up that
21 document. It's fairly large. Let me know if
22 you have any reasons to believe it's not a
23 portion of the 722 Patent.

29 (Pages 110 - 113)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 114

1        (Plaintiff's Exhibit Number 5
2        is marked for identification.)
3        A.   I have no reason to believe it's
4   not.
5        Q.   Great.  If you could turn to PDF
6   page 220 of that document.
7        A.   I'm there.
8        MR. BLOCK:  I have the IPR
9   document.
10        MR. HICKS:  I think if you -- if
11   you scan further on, Alan, you'll see the file
12   history actually includes the -- that IPR.
13        MR. BLOCK:  Okay.
14        Q.   So on PDF page 220, you'll see at
15   the bottom the language I believe you cite and
16   quote in your declaration?
17        A.   Yes.  That is correct.
18        Q.   Is that right?
19        A.   Yes.
20        Q.   So this is the specific content
21   that you incorporated or expressly included in
22   your declaration.  Correct?
23        A.   Yes.

Page 115

1        Q.   And you also rely on a brief on
2   appeal from March 30, 2006.  Is that correct?
3        A.   That's right.
4        Q.   Is there any reason why you didn't
5   include that specific language in your
6   declaration?
7        A.   I'm not recalling as I sit here
8   today.  This was already sufficient for me to
9   reach my conclusion, for example.  And then
10   that other language, to my recollection, also
11   backs that up.
12        Q.   So in the context of Claim 7, the
13   language recites a gateway device that's
14   configured to, in part, identify a category of
15   the update message based on the input source.
16   Would you agree with that?
17        A.   What line are you on?  I'm sorry.
18        Q.   Column 23.
19        A.   Yeah.  What line?
20        Q.   Lines 9 and 13 and 14.
21        A.   Yes, I see that.
22        Q.   Would you agree with me that the
23   category identification must at least be based

Page 116

1   on the input source?
2        A.   Yes.  That's right from the claim
3   language.  And then we have this additional
4   negative limitation from this disavowal in the
5   file history.
6        Q.   Are you offering the opinions that
7   the category identification can be also based
8   on something in addition to the input source?
9        A.   I mean, I do in the sense that it
10   cannot be based on the category/topic of the
11   message content.  But if your question is
12   beyond that, I don't have an opinion about
13   that.  It has to be based on the information
14   provider or dynamic content provider -- and/or,
15   those two.
16        Q.   Is there anything in the claim
17   itself, aside the prosecution history, that
18   precludes the category identification be based
19   on other source -- other sources of information
20   in addition to the input source?
21        MR. BLOCK:  Object to form.
22        A.   To do that analysis would require
23   more time.  I didn't do that analysis.  Instead

Page 117

1   I looked at the claim term itself, how that
2   would be understood by a person of ordinary
3   skill in the art.  In my opinion, this is the
4   definition based on this disavowal.
5        Q.   And so the language in your
6   interpretation of this term not on the
7   category/topic of the message content is based
8   solely on the two citations in paragraph 87.
9   Is that fair?
10        A.   Yeah, I wouldn't dispute that.  I
11   think these were clear and unambiguous
12   disavowals.
13        Q.   Does the Patent disclose different
14   techniques for identifying a category of an
15   update message?
16        A.   I'm sorry.  Could you repeat your
17   question?
18        Q.   Does the Patent disclose different
19   techniques for identifying a category of an
20   update message?
21        A.   I'm not quite following your
22   question.  I'm sorry.  Is there a place in the
23   Patent you'd like to point me to?  It's pretty

Michael Goodrich                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 118

1 big.
2     Q.    Sure.  If you could turn to
3 paragraph -- excuse me, column 18, line 52.
4     A.    Yep, I'm there.
5     Q.    So there are multiple ways to
6 assign the messages into categories and then
7 provides the role of those ways that can be
8 done to assign a message into categories.
9  Do you see that?
10     A.    I do.  Yes.
11     Q.    Would you agree that at least at
12 this disclosure beginning at column 18, line
13 52, the Patent describes different ways to
14 assign messages into categories?
15     A.    Yes.  It's just that the claim
16 only claims one of those, the claim we're
17 discussing.
18     Q.    And -- and that's based on your
19 opinion that the patentee disavowed the claim
20 scope.  Correct?
21     A.    Not only.  But also because the
22 claim itself says based on the input source.
23 And then there's these other ways that it talks

Page 119

1 about here that are not in the claim language
2 at all.  And then in addition we have that
3 disavowal as well.
4     Q.    Okay.  And I asked this question
5 earlier, but I think your answer kind of
6 muddies the water here.  So --
7     A.    I disagree with that
8 characterization.
9     Q.    I haven't given you the context.
10 I'm not sure how you can disagree with it.  But
11 here we go.
12     A.    You just said that my answer
13 muddies the water.  I disagree with that
14 characterization as a preamble to your
15 question.  That's all I'm saying.
16     Q.    I get it.  But I haven't given you
17 the context in order to know what I'm talking
18 about.  So here -- here is the context.  The
19 limitation is identify a category of the
20 message based on the input source.  So do you
21 agree that based on the claim language that
22 that identification of a category of the update
23 message, that it be based at least in part on

Page 120

1 the input source?
2         MR. BLOCK:  Object to form.
3     A.    I read the claim language to be
4 exactly what it is.  That it's based on the
5 input source.  And a person of ordinary skill
6 in the art would apply that exact language.  It
7 didn't say based in part or anything.  It said
8 based on the input source.  And then there's
9 the disavowal to further understand what is not
10 included in that term.
11     Q.    So that's your opinion on the
12 disavowal.  Setting aside the disavowal, can
13 the identification of a category of the update
14 message also be based on information other than
15 the input source?
16     A.    I don't recall that being a
17 question I was asked to opine on.  I -- I am
18 basing my opinions on the claim language
19 itself.
20     Q.    Okay.  So you're offering no
21 opinions as to whether the identification of
22 the category of the update message, whether
23 that identification can be based not solely on

Page 121

1 the input source but on information?
2         MR. BLOCK:  Object to form.
3     A.    If your question is does the
4 language say based only on the input source, it
5 doesn't say only on.  But it says that it has
6 to be based on.  And then from the disavowal,
7 we know what it cannot be based on.  And
8 that's -- that's the language that a person of
9 ordinary skill in the art would understand and
10 apply.
11     Q.    Looking at the disclosure at
12 column 19 beginning at line 6 of the
13 722 Patent.
14     A.    I'm there.
15     Q.    So that first sentence reads in
16 one embodiment gateway 724 uses a combination
17 of multiple techniques to determine the message
18 categories, node types, and/or mappings.
19  Do you see that?
20     A.    I do.
21     Q.    And so would you agree that this
22 disclosure provides different techniques in
23 determining a message category?

31 (Pages 118 - 121)

Michael Goodrich                                      August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 122

1    A.   It's -- that's not what it's
2 saying actually.  It's talking about this whole
3 group of things that include message
4 categories, node types, and/or mappings.  And
5 then the very next sentence reaffirms that.  It
6 says you can use a lookup table.  And that can
7 be used for categories, types, and/or mappings.
8    Q.   Just so we're clear, so the and/or
9 there means any other all of message
10 categories, node types, and/or mappings.
11 Correct?  That's how you're interpreting that
12 and/or?
13    A.   Yes.  And then it says that a
14 lookup table can be used.
15    Q.   One interpretation of this
16 sentence is one embodiment, the gateway 724
17 uses a combination of multiple techniques to
18 determine the message categories.  Is that
19 fair?
20    A.   Yeah.  I wouldn't dispute that.
21    Q.   Okay.  I am introducing what's
22 been marked as Exhibit 6 a copy of the
23 United States Patent Number 7257582.  I want

Page 123

1 you to have a chance to access that document.
2 If you could please look at it and confirm that
3 to your understanding it's a complete and
4 accurate copy of the 582 Patent.
5        (Plaintiff's Exhibit Number 6
6        is marked for identification.)
7    A.   I have it.
8    Q.   Any reason to dispute that that
9 exhibit is a complete and accurate copy of the
10 582 Patent?
11    A.   It appears to be to me.
12    Q.   And so turning to your declaration
13 beginning at column -- excuse me, paragraph 60,
14 let me know when you're there.
15    A.   I'm there.
16    Q.   So in paragraph 60 of your
17 declaration, you included a copy or a
18 reproduction of claim one of the 582 Patent.
19 Correct?
20    A.   Yes.
21    Q.   And in claim one in paragraph 60
22 of your declaration, you have highlighted four
23 distinct terms.  Correct?

Page 124

1    A.   Yes.
2    Q.   You are offering opinions as to
3 the interpretation of those four terms in your
4 declaration.  Correct?
5    A.   Yes.
6    Q.   As we sit here today, are you
7 offering any other opinions for the 582 Patent
8 besides those opinions relating to those four
9 terms?
10    A.   As of today, that is it.
11    Q.   Sitting here today, do you have
12 any other opinions relating to the 582 Patent?
13    A.   Nothing else is coming to mind as
14 I sit here today.
15    Q.   So turning to the first term,
16 partition, so it's your opinion that the term
17 partition should be interpreted to mean a well
18 defined part of the input or output.  Is that
19 correct?
20    A.   Yes.
21    Q.   Paragraph 62 you opined that the
22 patentee defined partition in the 582 Patent
23 specification.  Correct?

Page 125

1    A.   Yes.
2    Q.   And you rely on the disclosure at
3 column 3, lines 36 to 41 for that definition.
4 Correct?
5    A.   Yes.
6    Q.   Setting aside the 46 -- excuse me.
7 Too many patent numbers in my head.  Setting
8 aside the 582 Patent, in computer science as an
9 industry, does partition have a general
10 meaning?
11    A.   It can depending on the context.
12    Q.   So in the context of memory
13 structures, for example, the memory structures
14 described -- just generic memory structures
15 defined in the 582 Patent -- well, actually let
16 me take a step back there.
17     What context -- let me take that question
18 back.
19     Are there any contexts where the customary
20 and ordinary meaning of partition would be a
21 well defined part of the input or output?
22    A.   Yes.  In the 582 Patent itself, it
23 gives an expressed definition.

32 (Pages 122 - 125)

Michael Goodrich                         August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 126

1    Q.    Setting aside the lexicography of
2  the 582 Patent, my question was more specific
3  just to the customary and ordinary usage of the
4  term partition.
5    A.    There are many contexts.  For
6  example, in the context of mathematical
7  definitions of sets such as we sometimes refer
8  it to in computer science, a partition has to
9  be a collection of subsets that are disjoint.
10  But here the patentee is offering an expressed
11  definition.
12    Not only -- let me correct that.  In the
13  context of mathematics, you have a big set.
14  You can put it into what we call a partition.
15  It's a collection of subsets that are disjoint.
16  And their union equals the whole of the
17  original.
18    Q.    Put in context, would a customary
19  and ordinary interpretation of a partition
20  possibly be, for example, a part of the input
21  or output?
22    A.    Well, then one can refer to
23  sometimes a specific subset that is a part of

Page 127

1  the partition.  You might also refer to that as
2  a partition.  And that is what is happening in
3  the case of the 582 Patent.
4    So that's why it says a logical partition in
5  this context is a well defined part of the
6  input or output.  And then it gives examples
7  that can be, like, ranges to go from position 1
8  to 100, 101 to 200, and so on.
9    Q.    Does a partition have to be or
10  include parts that are well defined?
11    A.    I think you're misunderstanding
12  what I mean by well defined.  So what I mean by
13  well defined part is in the mathematical
14  definition that a person of ordinary skill in
15  the art would understand, meaning well defined,
16  that is do you have a precise way of defining
17  what each partition is.  So for example, you
18  can say it's the range from positions 1 to 100.
19  That is an example of a partition.  And it's
20  well defined.
21    Q.    That's helpful.  So one example of
22  a part that's well defined is whether there's a
23  precise way of defining what each partition is.

Page 128

1  Is that accurate, or am I mischaracterizing?
2    A.    You're -- you're very close.  It
3  just has to be precise in the sense that a
4  person of ordinary skill in the art would be
5  able to determine whether something is a
6  partition or not or would be able to even
7  distinguish different partitions from each
8  other.
9    Q.    So for the 582 Patent, the part of
10  an input or output file that makes up a
11  partition is not well defined if it's not a
12  partition like Claim 7?
13    A.    I agree.  If the -- if the person
14  of ordinary skill in the art could not tell the
15  metes and bounds of the partition, then it's
16  not a partition.  That's what well defined
17  means.
18    Q.    In your opinion does the
19  582 Patent specification place any restrictions
20  on the technique used for defining a partition?
21    A.    That's not a question that I was
22  asked to opine on.  As long as it's well
23  defined, I believe it would be in-scope.  So

Page 129

1  that's -- that's the determination.  And a
2  person of ordinary skill in the art would have
3  a good understanding of how to determine that.
4    Q.    In your view, as long as a
5  technique defines a well defined part of the
6  input file, it would -- it would -- it goes by
7  your convention or interpretation of a
8  partition term?
9    A.    It -- it depends on what you mean
10  by technique.  But if the definition is clear
11  and precise, what are the metes and bounds of
12  each partition, then that would satisfy the
13  limitation of being well defined.  And a person
14  of ordinary skill in the art would understand
15  how to determine that.  The most common
16  examples, indeed, are given in the Patent as
17  well where you give a range of indices, either
18  in memory or in array as each of the
19  partitions.
20    Q.    So let's turn to the next term in
21  your declaration, which is a description of all
22  of the partitions beginning at paragraph 65.
23    A.    I am there.

33 (Pages 126 - 129)

Michael Goodrich                                  August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 130

1    Q.   So to confirm, your opinion is
2    that a limitation of descriptions of all of
3    said partitions to be interpreted to mean
4    statements giving a
5    characteristic/characteristics of all of the
6    well defined parts of the input file for use in
7    distributing the load without a special load
8    process, wherein such statements are distinct
9    from the input file itself.  Is that correct?
10   A.   Yes.
11   Q.   Okay.  That's a mouthful.  And so
12   let's -- let's break that down into discreet
13   sections.  Let's start with the language when
14   such statements are distinct from the input
15   file itself.  Can you point me to the paragraph
16   in your declaration that you specifically point
17   to or discuss evidence that supports your
18   interpretation of this term?
19   A.   Sure.  So this is including the
20   language, for example, in paragraphs 73 and 67,
21   at least those two as I'm sitting here today.
22   Oh, and also 68.  Yeah.  Oh, and 62 too.
23   Right.  I remember that now too.  Yeah.  And

Page 131

1    63.
2    Q.   So I think there's some confusion
3    there because there might be multiple
4    paragraphs 62 in your report.
5    A.   Oh, you're right.  That's a typo.
6    Good catch.  So what's labeled as 62 should
7    have been, like, 68.5 or something.  It's in
8    between 68 and 69.
9    Q.   Right.  So that -- yeah.  So that
10   we're on the same page here --
11   A.   Likewise 64 is also a typo.  I
12   don't know.  Microsoft Word screwed up.  64
13   should really be 69.5.
14   Q.   So I was about to say -- so you
15   start with paragraph 65 and you end with
16   paragraph 74 in this section.  Then you have --
17   after paragraph 68, you have paragraph 62,
18   followed by paragraph 69 and then paragraph 64
19   followed by 70.
20   So maybe for -- so we're on the same page,
21   we can come up with a convention that we both
22   understand.  So maybe for 62 we'll say 68.1?
23   A.   I am comfortable with that.

Page 132

1    Q.   Okay.  And then for paragraph 64
2    we'll say paragraph 69.1?
3    A.   I agree.
4    Q.   Okay.  So going back to my
5    question, so just starting with -- focusing on
6    the language, wherein such statements are
7    distinct from the input file itself.  But which
8    paragraphs in this section do you discuss or
9    point to citations that support that portion of
10   your interpretation?
11   A.   Yeah.  Actually there's -- there's
12   elements of my analysis all the way through
13   here that speak to that.  So the point is that
14   the claim was originally written and did say
15   partitions.  And then they amended it to say
16   descriptions of said partitions to distinguish
17   from this possible read where you would be
18   sending the actual data of that partition to a
19   sub-task.
20   And this is saying, no, you don't want to do
21   that.  That's very inefficient to send all of
22   that data.  Instead what you want to do in the
23   context of this patent, the 582 Patent, is to

Page 133

1    just send a description of the partition.  So
2    for example, rather than sending all of the
3    data from positions 1 through 100 in a file or
4    an array, you just send the name of the file or
5    array and those two indices.  Go from 1 to 100.
6    And now -- again, because in this disclosed
7    system, there's a shared memory amongst all of
8    the sub-tasks.  They can just access that
9    memory and process it.
10   Q.   And so -- so I understand, in
11   paragraph 66 you opine that a person of
12   ordinary skill in the art would understand the
13   582 Patent distinguishes descriptions of
14   partitions from the partitions themselves.
15   That is the type of data for a partition.
16   Do you see that?
17   A.   Exactly.  That is absolutely
18   right.
19   Q.   And you're relying, as an example,
20   on the disclosure column 3, line 52 to 59.  Is
21   that right?
22   A.   Yes.  These are examples of
23   descriptions of partitions that a person of

34 (Pages 130 - 133)

Michael Goodrich                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 134

1 ordinary skill in the art would understand that
2 this is distinct from the input file itself.
3 Again, it's trying to talk about how it can be
4 more efficient. So rather than sending the
5 data, you just send this description which can
6 be much smaller than the data itself for the
7 partition.
8      Q.   And in column -- or excuse me,
9 paragraph 68.1 and 69, you have discussion of
10 the prosecution history.
11     A.   That's right.
12     Q.   So are you offering opinions
13 that -- that the applicant disclaimed scope
14 during the prosecution of the 582 Patent as to
15 this limitation?
16          MR. BLOCK:  Object to form.
17     A.   I am not an attorney.  But from
18 what I've been told by attorneys, this is
19 different than a disavowal and disclaimer
20 because rather than keep the claim language
21 unchanged and disavow its scope, they amended
22 the claim language to then be more limited.
23 And that's what happened in this case.  So

Page 135

1 rather than saying partitions of the -- just
2 partitions, it said descriptions of all of said
3 partitions.  It was amended.
4      Q.   If I understand you correctly, in
5 paragraph 68.1 and 69, you're citing to those
6 disclosures for the proposition that the claims
7 were amended to distribute the partitions
8 themselves, distribute descriptions of the
9 partitions.
10     A.   Exactly.
11     Q.   Is that right?
12     A.   Exactly.  Otherwise that claim
13 language has no meaning.
14     Q.   So if you could turn to paragraph
15 64.
16     A.   Do you mean 69.1?
17     Q.   Sorry.  Yeah.  I forgot my
18 own denomination here.  Yep, 69.1.  That's
19 correct.
20     A.   I am there.
21     Q.   So you did include or reproduce
22 language that was included in the first
23 amendment dated March 2, 2007.  Is that right?

Page 136

1      A.   Yes.
2      Q.   And you're referring -- the
3 language that you reproduced from the file
4 history, the amended claims, refer to a
5 distribution of a description of the work to be
6 done.  The sharing process can use such a
7 description to distribute the load without a
8 special load process.  Is that correct?
9      A.   Yes.  And this also brings in that
10 language that is a disavowal.
11     Q.   So looking at the first part of
12 that disclosure, the first sentence that reads
13 the amended claims refer to a distribution of a
14 description of the work to be done, is it fair
15 to say that that is referring to limitation B
16 from Claim 1 of the 582 Patent which reads
17 distributing descriptions of all said
18 partitions to each of a plurality of sub-task
19 processors?
20     A.   I agree.
21     Q.   And turning to the second of that
22 disclosure, it says the sharing process can use
23 such a description to distribute the load

Page 137

1 without a special load process.  Correct?
2      A.   Yes.  That's the part that is now
3 a disavowal.
4      Q.   So what's the significance in your
5 opinion of the use of can use in that context?
6      A.   In this case what it's saying is
7 that what it can use is the description.  But
8 what is required is that you do so without
9 distributing the load -- without a specific
10 load process.
11     Q.   Let's turn to the next claimed
12 limitation, which reads first-come/first-served
13 basis.  That's in paragraph 75.
14     A.   Okay.  I am there.
15     Q.   And it's your opinion that
16 limitation, first-come/first-served basis,
17 should be interpreted to mean selecting the
18 earliest unprocessed partition for execution
19 without the use of a control process that uses
20 load information for such selection.  A person
21 of ordinary skill in the art would have
22 understood that whether a partition is the
23 earliest unprocessed partition would have been

35 (Pages 134 - 137)

Michael Goodrich                                        August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 138

1 determined by the ordering of the partitions
2 determined in step A of claim 1. Is that
3 correct?
4     A.    Yes. That is correct.
5     Q.    And by step A of claim one, you're
6 referring to the step that recites
7 automatically determining file allocation and
8 logically subdividing records of said input
9 file into a plurality of partitions. Correct?
10    A.    That's right.
11    Q.    What do you mean by the ordering
12 of the partitions in determined step 1A --
13 excuse me, step A of claim one?
14    A.    Sure. So what I'm referring to
15 here is what a person of ordinary skill in the
16 art would understand is an inherent ordering.
17 So partitions, like we talked about earlier,
18 are well defined parts of an input or output.
19 In this case it's the input. And the most
20 common way to do that is with ranges of
21 addresses as disclosed in the 582 Patent.
22 Other ways are also possible. But certainly
23 with respect to the range of indices, there's

Page 139

1 an inherent ordering.
2     And indeed in all partitions that are
3 claimed here in the 582 Patent, there's an
4 inherent ordering. Otherwise
5 first-come/first-served basis doesn't make
6 sense. And so the only interpretation that a
7 person of ordinary skill in the art can give to
8 that understanding is the order that was
9 determined in step A.
10    Q.    When does the ordering, in your
11 interpretation of this particular claim, occur
12 in the context of claim one?
13    A.    Step A.
14    Q.    Is that during step A?
15    A.    Correct. But it says logically
16 subdividing records of said input file into a
17 plurality of partitions.
18    Q.    And just so we're on the same
19 page, is it your opinion that the ordering of
20 partitions in your interpretation must occur
21 before step B occurs?
22    A.    Yes. Because it's referring back.
23 There's antecedent basis in step B of said

Page 140

1 partitions.
2     Q.    Is it accurate to say that your
3 interpretation of first-come/first-served basis
4 is based on the portion of the prosecution
5 history that's discussed at paragraph 76 of
6 your report or declaration?
7         MR. BLOCK: Object to form.
8     A.    Yes. That -- that's informing my
9 opinion, what I'm talking about in paragraph
10 76.
11    Q.    And the language about the use of
12 a control process in your interpretation, what
13 citations either from the specification or from
14 the prosecution history are you relying on to
15 support that portion of your interpretation?
16    A.    Yeah. So I'm relying on what's
17 the first amendment, March 2, 2007 at six. And
18 then yeah, my recollection is that there's
19 language around that -- that amendment that
20 further clarified that that's what's going on
21 here. The patentee, as I recall, made an
22 analogy to a four-way stop and said this is
23 like a four-way stop where we just take turns

Page 141

1 rather than, for example, a four-way stop where
2 the biggest car gets to go. So that would be
3 an analogy that now is why there's this
4 negative limitation because of this disavowal.
5         MR. HICKS: So I think now would
6 be a good stopping time because I have enough
7 content that we're not going to end in 30
8 minutes. So unless you feel otherwise, I
9 suggest we take a quick lunch and then wrap up.
10        THE WITNESS: That's fine with me.
11 I think we can get lunch done in a half an hour
12 if that's okay with everyone else.
13        MR. HICKS: Fine with me. Can we
14 go off the record?
15        THE VIDEOGRAPHER: Sure.
16 Absolutely. The time is 3:11 p.m. And we are
17 now off the record.
18        (A break was taken.)
19        THE VIDEOGRAPHER: All right. The
20 time is 3:51 p.m. And we are now back on the
21 record.
22    Q.    (Mr. Hicks) Welcome back,
23 Dr. Goodrich.

36 (Pages 138 - 141)

Michael Goodrich                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 142

1    A.    Thank you.
2    Q.    I wanted to start with the
3  simultaneous limitation that's recited in
4  Claim 1 of the 582 Patent.
5    A.    Okay.
6    Q.    And for context I think it makes
7  sense to start it on paragraph 60 of your
8  declaration.
9    A.    Okay.  That's fine.
10    Q.    And so step C of claim one in your
11  declaration, you've highlighted part of the
12  claim language recited there.  Correct?
13    A.    Yes.
14    Q.    And so your opinion as to the
15  simultaneously limitation is limited to those
16  portions that are highlighted.  Correct?
17    A.    I agree.
18    Q.    Now, turning back to paragraph 79
19  of your declaration.
20    A.    I am there.
21    Q.    So it's your opinion that this
22  cited portion, Claim 1, is indefinite.
23  Correct?

Page 143

1    A.    Yes.  That's correct.
2    Q.    So I wanted to take a look at the
3  preamble to better understand your opinion
4  itself.  Feel free to use paragraph 60 as
5  context there.  So the preamble of claim one
6  states in part, a method of effecting on a
7  preexisting input file a computer executable
8  process apprised of a plurality of sub-tasks.
9    Do you see that?
10    A.    Yes.
11    Q.    Do you have any opinions as to
12  whether the preamble of claim one is limiting
13  or not?
14        MR. BLOCK:  Object to scope.
15    A.    As I sit here today, I don't have
16  an opinion about that.
17    Q.    So part of your opinion, the
18  portion of the simultaneously limitation that
19  we've discussed as indefinite, mentions in part
20  one of the sub-tasks.  Correct?
21    A.    Say that again.
22    Q.    So sub-task is a term that's
23  recited in the portion of the simultaneously

Page 144

1  limitation that in your opinion is indefinite.
2  Correct?
3    A.    Sub-task, yes.  That's part of the
4  phrase, yes.
5    Q.    And it's the sub-task.  Correct?
6    A.    Correct.  Yes.
7    Q.    And to my knowledge, the only
8  other sub-task recited in Claim 1 is in the
9  preamble, the plurality of sub-tasks?
10    A.    I'm not disputing that.
11    Q.    But just to confirm, you don't
12  have any opinions as to whether the preamble or
13  portions of the preamble are limiting?
14    A.    Correct.
15    Q.    You'll agree with me though that
16  the preamble of Claim 1 says -- or it cites a
17  plurality of sub-tasks?
18    A.    Yes, I agree.
19    Q.    And customary and ordinary meaning
20  of plurality means two or more.  Do you see
21  that?
22    A.    I agree that it means two or more.
23  The customary meaning of that means two or

Page 145

1  more.
2    Q.    And likewise looking at
3  limitation B which recites distributing
4  descriptions of all of said partitions to each
5  of a plurality of sub-task processors.
6    Do you see that?
7    A.    Yes.
8    Q.    So in this context a plurality of
9  sub-task processors means two or more -- at
10  least two or more sub-task processors.  Would
11  that be fair?
12    A.    I don't have a disagreement with
13  that.
14    Q.    Okay.  Now, do you have any
15  opinions that the sub-task cited in step C is
16  indefinite for lack of any basis?
17    A.    No, that part I'm not disputing.
18  The indefinite part, it's the -- one of the
19  sub-tasks.  That part is absolutely indefinite.
20  And it also has to do with step D where you're
21  repeating step C.  So that also now becomes
22  indefinite because C is indefinite.
23    Q.    Do you dispute that claim one

37 (Pages 142 - 145)

Michael Goodrich                                        August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 146

1  recites plurality of sub-tasks and a plurality
2  of sub-task processors meaning there's at least
3  two sub-tasks -- at least two sub-task
4  processors?
5        A.  No, I don't dispute that.  There's
6  no meaning to the phrasing in step C that can
7  be repeated.
8        Q.  And nothing in claim one in the
9  582 Patent specification for that matter
10  precludes a structure where there are two or
11  more sub-tasks and two or more sub-task
12  processors?
13            MR. BLOCK:  Object to form.
14        A.  I don't understand your question.
15  What do you mean by structure?
16        Q.  There is nothing that precludes
17  claim one from having two or more sub-tasks and
18  two or more sub-task processors, is there?
19            MR. BLOCK:  Object to form.
20        A.  I have no objections to that,
21  yeah.  That seems to be in scope.  There's no
22  meaning to what step C is saying.  That is
23  indefinite.  And it has to be then repeated

Page 147

1  from step D, which adds to the indefiniteness.
2        Q.  So I'd like to turn to the
3  785 Patent, and that begins at paragraph 36 of
4  your report, at least the analysis portion.
5  And let me know when you're there.
6        A.  Have you uploaded that to the
7  Exhibit Share yet?
8        Q.  I have not.  But I'm just
9  referring to your declaration.
10        A.  Oh, that's fine.  Yeah, I can go
11  in there in my declaration.  Paragraph 36.
12        Q.  Correct.  Do you need the -- if
13  you need the specification, I'm not testing
14  your memory.  So if you need it, just let me
15  know.
16        A.  I would like you to upload it,
17  please.
18        Q.  So I've marked as Exhibit 7
19  U.S. Patent Number 7949785.  Dr. Goodrich, if
20  you could please review or access that exhibit
21  and please confirm that it's, to the best of
22  your knowledge, a complete and accurate copy of
23  the 785 Patent.

Page 148

1        (Plaintiff's Exhibit Number 7
2        is marked for identification.)
3        A.  Yes.  It appears to be so, and I
4  have it in front of me.
5        Q.  Okay.  Turning to your declaration
6  at paragraph 36, let me know when you're there.
7        A.  I'm there.
8        Q.  So in Claim 36 of your
9  declaration, you include a reproduced copy of
10  Claim 30 of the 785 Patent.  Correct?
11        A.  Yes.
12        Q.  And you've highlighted two
13  specific terms in the very last limitation of
14  Claim 30, which recites network address and
15  network route director.  Is that correct?
16        A.  Yes.
17        Q.  And is it correct that you're only
18  offering opinions as to the meaning of those
19  two terms as recited in Claim 30?
20        A.  Yes, at this time.
21        Q.  And turning to network address,
22  it's your opinion that a network address as
23  recited in Claim 30 is an IP address.  Correct?

Page 149

1        A.  That's right.  Yep.  Where IP
2  stands for Internet Protocol.
3        Q.  And you beat me there to it.  But
4  in your own words, what is an IP address?
5        A.  So in the internet, there's a
6  hierarchy, what we call layers of how the
7  network is organized.  And one of those layers
8  is called the network layer.  And in the
9  internet, the protocol that dictates how
10  packets are formatted and sent with respect to
11  their layer is called the Internet Protocol or
12  IP.
13        And hence -- and this is -- we're now
14  multiple times throughout the specification of
15  the 785 Patent.  When it refers to a network
16  address, it's always referring to an IP address
17  because that's the type of addresses that exist
18  at that network layer in the protocol stack
19  that we use for the internet.
20        Q.  There are different types of IP
21  addresses.  Correct?
22        A.  There are two versions of IP that
23  a person of ordinary skill in the art would

38 (Pages 146 - 149)

Michael Goodrich                                August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 150

1  understand.  There's IP Version 4, which the
2  specification for the 785 Patent highlights in
3  multiple locations in the specification.  But a
4  person of ordinary skill in the art would also
5  understand there's an IP Version 6 as well.
6  And so just to be clear, a person of ordinary
7  skill in the art understanding that network
8  address stands for IP address could be
9  inclusive of either IP Version 4 or
10  IP Version 6.
11       Q.   An IP address is made up of
12  constituent parts.  Correct?
13       A.   Say that again.
14       Q.   An IP address is made up of
15  constituent parts.  Correct?
16       A.   I disagree with that
17  characterization.
18       Q.   How would you characterize the
19  parts of an IP address?
20       A.   I disagree with the way you even
21  asked the question.  So to be clear, an
22  IP address is a number.  It's either a 32-bit
23  number under IP Version 4, or I think it's 128

Page 151

1  bits with IP Version 6.  In both cases, it's
2  just a number.  The way that we display it on
3  the screen or to a user has a certain
4  traditional format.  But its definition is that
5  it's just a number of a specific length of
6  bits.
7       Q.   And do the bits represent anything
8  in particular?
9       A.   I'm not sure I'm following your
10  question.  I'm not sure what you mean by that.
11       Q.   Well, an IPv4 address, the
12  IP address can include 32 bits.  Correct?
13       A.   No.  It is exactly 32 bits.
14       Q.   Okay.
15       A.   Every time, exactly 32 bits.
16       Q.   What do those 32 bits represent?
17       A.   They represent a network address
18  that is the address with respect to the
19  internet for a specific host.  And again,
20  there's a format for how we often will display
21  that as four smaller numbers with periods
22  between them.  But this is just the way that we
23  show it to people.  In reality it's just a

Page 152

1  32-bit number.
2       Q.   Do you agree that IP addresses
3  generally include a network ID and a host ID?
4       A.   No.  Again, it's just a number.
5  It's not an ID.  It's just a number.  A 32-bit
6  number for IP Version 4.  And we display it in
7  different ways, like I said.  And indeed in the
8  specification I think there is some examples of
9  that tradition.  But it's just a number.  A
10  person of ordinary skill in the art would
11  understand that.
12       Q.   It's your opinion that the
13  patentee acted as a lexicographer defining the
14  term network address.  Correct?
15       A.   Yes.
16       Q.   What specific citations or
17  intrinsic items are you relying on for that
18  opinion?
19       A.   There's many.  The fact that it's
20  using network address exclusively to refer to
21  IP addresses over and over again.  So I cite to
22  many.  I could list them again now if you'd
23  like.  For example, as I'm talking in

Page 153

1  paragraphs 39 and 40.  We see it also in the
2  intrinsic record mentioned in paragraph 43 that
3  I cite to.
4       Well, actually I'm not a lawyer, so I don't
5  know if ex-parte re-exams count as intrinsic or
6  extrinsic.  But it's from the patentees saying
7  this, that a network address is an IP address.
8       Q.   And just so we're on the same
9  page, so you're referring to the citations in
10  paragraphs 39 and 40 and the ex-parte
11  reexamination in paragraph 43 for your opinion
12  that a network address is an IP address.
13  Correct?
14       A.   That's part of it.  But then I
15  also went with a dictionary definition in
16  paragraph 44 as well.
17       Q.   So does your interpretation of
18  network address apply to the other instances of
19  a network address cited in Claim 30, for
20  example, a public -- a public network address?
21       MR. BLOCK:  Object to form.
22       A.   Which place are you referring to
23  now?

39 (Pages 150 - 153)

Michael Goodrich                                        August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 154

1    Q.   For example -- sure.  For example,
2  Claim 30 recites a public network address in
3  the first limitation of Claim 30.
4        A.   Yeah.  I'd need more time to think
5  about that.  I'm referring to when it says a
6  network address at the end, which I underlined
7  in my paragraph 36.
8        Q.   So to the extent the language,
9  network address, is recited elsewhere in
10  Claim 30, for example, public network address,
11  a virtual network address, and a private
12  network address, you don't have any opinions as
13  to whether network address of those limitations
14  is an IP address?
15       A.   Not at this time.  I'm just
16  opining on that phrase that begins a network
17  address as -- as the recited language.
18       Q.   So outside the scope of the
19  785 Patent, is a network address the same thing
20  as an IP address?
21       A.   I'm sorry.  You cut out there for
22  a second.  Could you repeat your question?
23       Q.   Sure.  Aside the scope of the

Page 155

1  785 Patent, is a network address the same thing
2  as an IP address?
3            MR. BLOCK:  Object to form.
4        A.   That depends on the scope.  Yeah.
5        Q.   Outside the scope of the
6  785 Patent, what is your understanding of what
7  a network address is?
8        A.   There are different contexts where
9  that term could be used.  There's other
10  protocols besides just the internet protocol
11  which admittedly now is very popular.  But in
12  the past there was many others that were also
13  proposed.
14    And nevertheless we still typically would
15  classify things using something called an OSI
16  model for the layers of the network that we're
17  talking about.  And one of those layers is
18  called the network layer.  So another context
19  of what you could have is in a different
20  network than the internet, you would have
21  addresses that exist at that network layer that
22  would be referred to as network addresses.
23       Q.   Used in the context of the

Page 156

1  785 Patent, it's your opinion that whenever the
2  Patent talks about a network address
3  preferring -- or analogous or similar in scope
4  as an IP address.  Is that correct?
5        A.   It's for the ones that I cite to.
6  So all of the citations that I cite to here
7  give support that it's using the word network
8  address to mean IP address in those contexts.
9  So then when it refers to network address
10  without a further qualifier like public network
11  address, virtual network address, or private
12  network address, if it's just a network
13  address, it's referring to an IP address.
14       Q.   All right.  So if I understand you
15  correctly, since the specification mentions a
16  private network address or a public network
17  address, you're not opining on whether those
18  disclosures mean that they're referring to an
19  IP address?
20       A.   That's correct.  Not at this time.
21  There are some other places in the Patent I,
22  for example, cite in paragraph 41 where it
23  specifically mentions private IP address or

Page 157

1  virtual IP address or public IP address.  But
2  I'm opining on the phrase a network address
3  just as its full language.
4        Q.   In your declaration in paragraph
5  39, you provide citations to a disclosure
6  relating to Figure 7 from the 785 Patent.
7  Correct?
8        A.   Yes.
9        Q.   To confirm, Figure 7 is one of
10  perhaps many, many embodiments described in the
11  785 Patent.  Correct?
12       A.   I would not dispute that.  It's a
13  flowchart for doing a certain method in the
14  patented -- it discloses other methods too.
15       Q.   I believe in Figure -- excuse me,
16  paragraph 41, you refer to a step 2406 which
17  is described, for example, in the context of
18  paragraph -- excuse me, Figure 24.  Do you
19  agree with that?
20       A.   Yes.  So I'm highlighting here
21  this step 2406 which is illustrated in
22  Figure 24.
23       Q.   And as with Figure 7, Figure 24 is

40 (Pages 154 - 157)

Michael Goodrich                                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 158

1 one of many embodiments described in the
2 785 Patent. Correct?
3      A.   I do not dispute that. This is
4 another method that's disclosed in the
5 785 Patent.
6      Q.   Claim 30 does not expressly recite
7 the language IP address. Correct?
8      A.   Correct. That's why I believe it
9 should be construed because that is the
10 understanding of a person of ordinary skill in
11 the art.
12      Q.   Turning to paragraph 34, you cite
13 an entry from ComputerDictionaryOnline.org for
14 a network address.
15      A.   Yes.
16      Q.   And that definition for that entry
17 is a network portion of an IP address.
18 Correct?
19      A.   That's correct.
20      Q.   So I take it you understand this
21 definition. Correct?
22      A.   Yes.
23      Q.   In other words, what's the network

Page 159

1 portion of an IP address?
2      A.   It's the portion that is to --
3 focusing on the functionality of the network
4 layer that we talked about with respect to the
5 protocol stack. So just to be clear, this
6 definition is referring to just the address
7 part -- the IP address part, not the port
8 number. Port numbers come in at the next layer
9 up from that, the transaction layer that occurs
10 above the network layer.
11      So to the degree that people sometimes would
12 outside of the context of the 785 Patent refer
13 to an IP address to include a port number, this
14 definition is saying, no, that doesn't belong
15 at the network part, which is, for example,
16 with IP address Version 4, just the 32-bit
17 number.
18      Q.   So let's turn to the network route
19 director beginning with paragraph 46.
20      A.   I'm there.
21      Q.   Okay. And in your opinion, this
22 term should be not interpreted to mean a
23 network route -- I mean it should be

Page 160

1 interpreted to mean a publicly addressable
2 device configured to route encapsulated packets
3 to and from entities located in a private
4 network portion of a virtual network. Correct?
5      A.   Yes.
6      Q.   Are you offering any opinions that
7 the patentee defined or disclaimed claim scope
8 as to this term?
9      A.   I'm not an attorney, so I can't
10 say whether or not this is on one side or the
11 other of what we would call a disavowal or a
12 disclaimer. But I do talk about how in
13 paragraph 47 the patentee did unequivocally
14 state statements that support the definition
15 that I am offering; namely that a network route
16 director must route packets to a virtual
17 address.
18      Q.   So looking at the context in which
19 a network route director is recited in
20 Claim 30 -- and feel free to use your copy in
21 paragraph 36 as a guide -- would you agree that
22 Claim 30 cites a DNS server that is configured
23 to return each of network addresses associated

Page 161

1 with the network route director, private
2 network addresses associated with the second
3 device in the virtual network, and a virtual
4 network address associated with the second
5 device?
6      A.   Yes, I agree.
7      Q.   So a portion of your
8 interpretation of this limitation recites
9 encapsulated packets?
10      A.   Correct.
11      Q.   Can you point me to the specific
12 disclosures that support that language of your
13 construction?
14      A.   Yes. It's used throughout the
15 Patent. So for example, it appears in
16 Figure 5B, all over the place in Figure 7,
17 again in Figure 24. These are figures that I
18 cite to, as well as then in the patent
19 specification when it's describing the
20 functionality that is illustrated in those
21 figures. And I cite to some of them in my
22 paragraphs 49 and 50.
23      Q.   Is there a difference between

41 (Pages 158 - 161)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 162

1 routing encapsulated packets as opposed to
2 packets?
3      A.   Yes.
4      Q.   What is the difference?
5      A.   When you are routing an
6 encapsulated packet, that has another packet
7 inside of it.  That's what encapsulated means.
8      Q.   So in your declaration you
9 answered at a high level.  But the last
10 question going back about two questions ago was
11 specific citations, column and line numbers
12 that support your interpretation that the route
13 director must be a publicly addressable device
14 configured to route encapsulated packets.  So
15 can you point me to precise disclosures of the
16 785 Patent that will narrow it to your
17 declaration?
18      A.   Oh yes.  So I also give some
19 exemplary citations in my declaration itself,
20 which are mentioned in paragraph 49, namely
21 column 13 from 51 to 59; 13 from 67; 27, 13 to
22 25; 28, 26 to 27; and 32, 53 to 59.
23      Q.   Are you -- in your declaration are

Page 163

1 you relying on other intrinsic evidence besides
2 what's included in paragraph 49 to support the
3 opinion that this term should be construed in
4 part to route encapsulated packets?
5      A.   I'm also -- these are just
6 exemplary, so I'm also looking at the entirety
7 of the specification for the 785 Patent.  We've
8 already mentioned how I cite to Figures 7 and
9 24.  Those are also inclusive of this
10 understanding to a person of ordinary skill in
11 the art.  And then I also cite to this ex-parte
12 reexamination non-final action dated January 8,
13 2025.
14      Q.   I'm a little confused there
15 because that doesn't -- where does that
16 disclosure in paragraph 47 discuss encapsulated
17 packet?
18      A.   Could you please upload ex-parte
19 reexamination non-final action dated January 8,
20 2025 if you haven't already?
21      Q.   Well, let's start with the
22 language you chose to include in your
23 declaration.  So there's no disclosure or

Page 164

1 reference to packets in the language that you
2 included in paragraph 47.  Correct?
3      A.   Could you please upload the
4 ex-parte reexamination non-final action dated
5 January 8, 2025 for me to answer that question?
6      Q.   You can't answer whether paragraph
7 47 includes or doesn't include a reference to
8 packets?
9      A.   It does have reference to the word
10 packets.  But I've been told by attorneys that
11 a deposition is not a memory test.  So to more
12 fully answer your question, could you please
13 upload ex-parte reexamination non-final action
14 dated January 8, 2025?
15      Q.   Well, that's not my question.  My
16 question is in paragraph 47 in the portion that
17 you included in this paragraph, there's no
18 reference to the language packet or
19 encapsulated packet.  Is that correct?
20           MR. BLOCK:  Object to form.
21      A.   I disagree.  I do mention the word
22 packets in paragraph 47.  So if you're
23 referring to something else, then please upload

Page 165

1 it, the ex-parte reexamination non-final action
2 dated January 8, 2025.
3      Q.   The language that you reproduced
4 from the ex-parte reexamination is, quote, the
5 problem of the current invention, how to route
6 through a route director to the virtual
7 address.  Correct?
8      A.   Yes, I quoted that.  But then I'm
9 citing to this document for an entire page.  I
10 cite to other pages as well.  And then I say
11 one of skill in the art would understand this
12 explanation, referring back to the citation.
13 And then I summarize that it does have the word
14 packets in my summary of that, which is why I'm
15 respectively -- respectfully requesting that
16 you upload the document, ex-parte reexamination
17 non-final action dated January 8, 2025, for me
18 to fully answer your question.
19      Q.   I think you've already answered my
20 question, so we can move along here.  So in
21 your declaration you cite to two dictionary
22 sources, one of which we discussed previously
23 which was the ComputerDictionaryOnline.org

42 (Pages 162 - 165)

Michael Goodrich                              August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 166

1 definition.  Do you recall that?
2     A.   I do recall that.
3     Q.   Do you use that resource regularly
4 in your consulting work?
5         MR. BLOCK:  Object to form.
6     A.   I'm not recalling as I sit here
7 today.
8     Q.   When did you first become aware of
9 ComputerDictionaryOnline.org, the website?
10     A.   I'm not recalling as I sit here
11 today.
12     Q.   Have you ever used that resource
13 before in any declaration or report?
14     A.   I'm not recalling as I sit here
15 today.
16     Q.   And so in your position as a
17 professor of computer-related technologies,
18 when you need to reference a technical
19 dictionary resource, what resources do you tend
20 to access or use?
21         MR. BLOCK:  Object to form.
22     A.   I'm not following your question.
23 I'm sorry.

Page 167

1     Q.   When you need to look up a
2 technical term or understanding context,
3 whatever the purpose may be, in the context of
4 your role as a professor of computer science,
5 what resources do you typically use?
6     A.   I often will use Google and do a
7 keyword search for a term and then look at its
8 responses, which may include this website
9 ComputerDictionaryOnline.org.  I'm just not
10 recalling as I sit here today.
11     Q.   Would you agree that to the extent
12 that you identified intrinsic evidence in your
13 declaration, that you believe that it supported
14 your ultimate opinion?
15         MR. BLOCK:  Object to form.
16     A.   Yes.  I believe every citation
17 that I gave did support my conclusions.  That's
18 how I do my analysis.  I look at the evidence,
19 and then I come to my conclusions.
20     Q.   If you did not cite to intrinsic
21 evidence in your declaration, is it fair to say
22 that you did not expressly rely on that
23 disclosure to support your opinions provided in

Page 168

1 your declaration?
2         MR. BLOCK:  Object to form.
3     A.   No, that's incorrect.  For
4 example, for each of the patents where I'm
5 opining on meaning of various terms, I am
6 including my reading of the entirety of the
7 specification for those patents, as well as my
8 review of their file histories in order to come
9 to my conclusions.  And then I cite to specific
10 things that are exemplary support for the
11 conclusions that I reach.
12     Q.   Are you saying the entirety of
13 each of these specifications is just relevant
14 to or supports, in fact, each of your opinions?
15     A.   Yes, I agree.
16     Q.   Even if, for example, it doesn't
17 relate to a specific claim term?
18     A.   It provides context, nevertheless,
19 even -- even in that instance.  Which is why I
20 don't cite to the entirety of every
21 specification.  When I'm talking about support
22 for my conclusions, I try to focus in on
23 specific passages more tightly.

Page 169

1     Q.   So in your report you recite to a
2 few -- or cite to a few extrinsic evidence
3 sources.  Is it fair to say that you believe
4 those sources support your opinions as to at
5 least when you used or cited those extrinsic
6 sources for a claim term?
7         MR. BLOCK:  Object to form.
8     A.   Yes, I believe they did support my
9 conclusions.  Typically when I talk about, for
10 example, citing to dictionary definitions, I'm
11 also applying my own understanding of those
12 terms based on my experience in the field.  And
13 then with respect to ex-parte reexamination,
14 whether or not that counts as intrinsic or
15 extrinsic, I also am citing to those specific
16 pages.  But I look at those references more
17 broadly.
18     Q.   And to be clear, do you consider
19 any other extrinsic evidence sources besides
20 what you have expressly identified in your
21 declaration?
22         MR. BLOCK:  Object to form.
23     A.   Like I just mentioned, I'm also

43 (Pages 166 - 169)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 170

1 basing my opinions on my experience in the
2 field. My understanding is that is something
3 that experts bring to the table. And I have
4 been consistent in applying my experience as
5 well as the evidence that I cite to.
6      Q.   Is there any specific extrinsic
7 documents that you considered in forming your
8 opinions that are not cited in your
9 declaration?
10     A.   Nothing is coming to mind as I'm
11 sitting here today. I hope I didn't overlook
12 something. But I did my best to list
13 everything.
14     Q.   So have you received any
15 compensation in connection with your work on
16 this case?
17     A.   I don't recall if I've received it
18 yet sitting here today. I've -- I've had
19 billings for previous months. I'm just not
20 recalling if I've received it yet or not as I
21 sit here today.
22     Q.   How much have you been paid to
23 date for your work on this matter?

Page 171

1      A.   I don't recall as I sit here
2 today.
3      Q.   And you charge, according to your
4 declaration, $800 per hour for your work on
5 this matter. Is that correct?
6      A.   Yes.
7      Q.   That's been consistent for the
8 entirety of your work on this matter?
9      A.   Yes, for this matter.
10     Q.   How do you keep track of your
11 time?
12     A.   I use a spreadsheet. And then I
13 record it into my invoices.
14     Q.   Did you do anything to prepare or
15 in preparation for today's deposition?
16     A.   Yes.
17     Q.   What did you do?
18     A.   I met yesterday with Mr. Alan
19 Block, for example.
20     Q.   Okay. You met yesterday. Did you
21 meet any other times?
22     A.   Not for preparation, no.
23     Q.   Was anyone else besides yourself

Page 172

1 and Mr. Block present at yesterday's meeting?
2      A.   No.
3      Q.   Do you recall how long you met
4 with Mr. Block yesterday?
5      A.   My recollection is it was
6 approximately three or four hours.
7      Q.   Did you take any notes during
8 yesterday's meeting?
9      A.   No.
10     Q.   How much time would you estimate
11 that you spent working on your declaration?
12     A.   I don't know. Just sitting here
13 today, I don't recall how long that's been.
14     Q.   Like a ballpark figure?
15     A.   I hesitate to speculate. I took
16 an oath today to tell the truth. And I'm just
17 not recalling as I sit here today how long it's
18 been.
19     Q.   And did you write the entirety of
20 your declaration?
21     A.   If by write you mean did I type in
22 every sentence, no. For example, the section
23 that starts with legal understanding in

Page 173

1 paragraphs 23 to 28, my recollection is that
2 first draft was typed by attorneys.
3    My recollection is that I typed most of the
4 other portions of this declaration. But there
5 were drafts that went back and forth as
6 attorney draft work product so that ultimately
7 this final declaration comprises my opinions in
8 this matter as of the date I signed it. And I
9 am the author of this declaration.
10     Q.   If you had to estimate what
11 percentage of this declaration you wrote
12 yourself, could you provide an estimate?
13          MR. BLOCK: Object to form.
14     A.   You mean like a percentage?
15     Q.   Uh-huh.
16     A.   I have not done that analysis.
17 That would take some additional time to do.
18          MR. HICKS: Alan, I don't have any
19 further questions but reserve the right to do
20 recross if you're going to ask any.
21          MR. BLOCK: I do not have any
22 questions.
23          MR. HICKS: I have no further

44 (Pages 170 - 173)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 174

1  questions, Dr. Goodrich.
2          THE WITNESS:  Thank you.
3          MR. HICKS:  Let's go off the
4  record.
5          THE VIDEOGRAPHER:  Sure.  This is
6  the end of disc four and concludes the
7  deposition of Michael Goodrich.  The time is
8  4:40 p.m.  And we are now off the record.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 175

1          REPORTER'S CERTIFICATE
2  STATE OF ALABAMA,
3  BALDWIN COUNTY,
4          I, Paul Morse, Certified Court Reporter
5  and Commissioner for the State of Alabama at
6  Large, do hereby certify that the above and
7  foregoing proceedings was taken down by me by
8  stenographic means, and that the content herein
9  was produced in transcript form by computer aid
10  under my supervision, and that the foregoing
11  represents, to the best of my ability, a true
12  and correct transcript of the proceedings
13  occurring on said date and at said time.
14          I further certify that I am neither of
15  kin nor of counsel to the parties to the action
16  nor in any manner interested in the result of
17  said case.
18
19
20          /s/ Paul Morse
21
22          Paul Morse, CCR
23          ACCR #588 Expires 9/30/25

45 (Pages 174 - 175)

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[0.2 - 3]                                                          Page 1

| 0 | | | |
|---|---|---|---|
| **0.2**  64:8 | **11:39**  32:21 38:13 | **1a**  138:12 | 82:2,20 86:2,8 92:8 93:11,17 |
| **0.4**  64:8 | **11:57**  32:21 38:14 | **2** | 94:8 95:4 97:11 98:4,17 |

| 1 |
|---|
| **1**  3:11 6:22 10:21 11:5 76:3,7,9 77:3 83:5 88:15 93:19 94:10 95:6 96:13 97:12,20 98:6 111:6,12,19 127:7,18 133:3 133:5 136:16 138:2 142:4,22 144:8,16 |
| **100**  127:8,18 133:3,5 |
| **10019**  4:20 |
| **101**  127:8 |
| **105**  3:14 |
| **108**  110:10,21 111:5,10 |
| **11**  3:11 33:19 33:19,20,23 46:8 |
| **114**  3:15 |
| **116**  110:11,22 111:5,11 |
| **11:29**  38:13 |
| **11:36**  6:13 |
| **11:37**  32:21 38:13 |

**120**  66:3,16 75:16
**123**  3:16
**128**  150:23
**12:35**  45:8
**12:41**  45:11
**13**  30:6 32:11 33:18 38:1 44:8 46:4 107:16 110:5,6 110:20 113:8 115:20 162:21 162:21,21
**14**  30:6 32:11 33:18 38:1 44:8 46:4 105:19,22 106:1 115:20
**148**  3:17
**15**  107:15 108:15
**16**  73:11
**1633**  4:20
**17**  77:7 113:8
**18**  107:15 108:15 113:3 118:3,12
**18378**  175:19
**19**  77:13 113:3 121:12

| 2 |
|---|
| **2**  3:12 19:10 29:14,16,20 32:11 33:18 36:5 38:1 44:8 111:6,12,19 135:23 140:17 |
| **200**  4:12,16 127:8 |
| **2006**  113:8 115:2 |
| **2007**  135:23 140:17 |
| **2012**  113:4,11 |
| **2024**  13:23 19:10 |
| **2025**  1:18 6:13 11:18 12:10 163:13,20 164:5,14 165:2 165:17 |
| **21**  20:18 |
| **210**  110:9,20 111:5,10 |
| **220**  114:6,14 |
| **23**  115:18 173:1 |
| **24**  48:22 49:3 49:12 53:12 74:5 78:12,14 78:15 79:3 80:12 81:1 |

100:2 157:18 157:22,23 161:17 163:9
**2406**  157:16,21
**25**  23:14 162:22
**26**  23:20 107:16 110:7 162:22
**27**  26:11 107:16 162:21 162:22
**28**  110:8 162:22 173:1
**29**  3:12 14:5
**2900**  5:2
**2:02**  105:1
**2:11**  105:4

| 3 |
|---|
| **3**  3:13 47:17 48:6,9 59:11 61:1,20 62:9 63:7 64:12 72:1,4,14 76:2 77:4 107:15 108:15 110:4 110:18 111:18 111:19 125:3 133:20 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[30 - 62]**                                                    Page 2

**30** 60:4 113:8
115:2 141:7
148:10,14,19
148:23 153:19
154:2,3,10
158:6 160:20
160:22
**300** 5:2
**32** 150:22
151:12,13,15
151:16 152:1,5
159:16 162:22
**326** 18:9,15
**333** 4:12,16
**34** 77:3 158:12
**36** 78:18 80:14
125:3 147:3,11
148:6,8 154:7
160:21
**37** 33:19 82:16
113:7
**38** 77:7
**39** 33:20 80:15
153:1,10 157:5
**3:11** 141:16
**3:51** 141:20

**4**

**4** 3:14 11:18,23
76:2 77:6,12
77:12 105:7,12
150:1,9,23
152:6 159:16

**40** 73:8,13 74:2
76:9 81:6
153:1,10
**4091** 9:7
**41** 82:14 125:3
156:22 157:16
**41.37** 113:8
**42** 72:10 73:9
73:12 74:1
**43** 17:12 77:5
153:2,11
**44** 72:10 73:9
73:12 74:1
153:16
**46** 125:6
159:19
**469** 3:13 47:10
47:22 48:15,23
49:16 50:11
51:5,16 52:18
53:1,5,13,20
54:21 55:3
56:18 57:3
58:19,23 59:11
60:2,10 61:5
62:13 65:5,19
65:22 68:17
69:2 72:1,5,14
73:4 74:8,19
74:21 75:11,22
77:22 79:20
82:5,22 85:19
86:2 87:9
96:13,17 100:6

100:17 102:3
102:23 103:15
103:21 104:7
**47** 17:10
160:13 163:16
164:2,7,16,22
**48** 3:13
**49** 161:22
162:20 163:2
**4:24** 1:5
**4:40** 174:8

**5**

**5** 3:15 33:20
46:18 73:6
113:18 114:1
**50** 161:22
**51** 27:9,13,17
33:20 46:18
162:21
**52** 34:12 118:3
118:13 133:20
**53** 29:5 44:11
45:21 162:22
**54** 28:11 30:5
44:9 55:16
104:14
**55** 32:14 41:20
44:4 59:11
61:1,20 62:9
63:7
**56** 43:18 77:4
**57** 33:20

**58** 32:14,21
33:19,21 34:19
44:5,14,21
45:21 46:6,17
46:18
**582** 3:16 123:4
123:10,18
124:7,12,22
125:8,15,22
126:2 127:3
128:9,19
132:23 133:13
134:14 136:16
138:21 139:3
142:4 146:9
**588** 175:23
**59** 29:5 32:13
43:1 83:5
133:20 162:21
162:22
**5:51** 32:21
**5b** 161:16

**6**

**6** 3:16 121:12
122:22 123:5
150:5,10 151:1
**60** 59:11 61:1
61:21 62:9
63:7 123:13,16
123:21 142:7
143:4
**62** 32:13,14
33:19 34:19

Michael Goodrich                              August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[62 - access]**                                         Page 3

| | | **8** | **8:30**   6:7 |
|---|---|---|---|
| | | | **9** |

43:1 44:5,14
44:21 46:6,17
124:21 130:22
131:4,6,17,22
**63**   131:1
**64**   131:11,12,18
132:1 135:15
**65**   83:5 129:22
131:15
**66**   133:11
**67**   77:6 130:20
162:21
**68**   130:22
131:8,17
**68.1**   131:22
134:9 135:5
**68.5**   131:7
**69**   102:2 131:8
131:18 134:9
135:5
**69.1**   132:2
135:16
**69.1.**   135:18
**69.5.**   131:13

**7**

**7**   3:17 27:14,17
27:18 32:12,13
33:18 34:19
38:12,16 40:16
41:11 42:3,9
42:15,23 43:5
44:5,14,21
46:6,17 115:12

128:12 147:18
148:1 157:6,9
157:23 161:16
163:8
**70**   131:19
**722**   3:14 105:7
105:11,20
106:11,17
107:4,22 111:7
111:20 112:1
112:17 113:19
113:23 121:13
**724**   121:16
122:16
**7257582**   14:12
122:23
**73**   130:20
**7324469**   14:11
48:7
**74**   131:16
**75**   88:19
137:13
**76**   140:5,10
**785**   3:17 17:11
147:3,23
148:10 149:15
150:2 154:19
155:1,6 156:1
157:6,11 158:2
158:5 159:12
162:16 163:7
**79**   142:18
**7949785**   14:11
147:19

**8**   1:18 3:5 6:13
78:18 80:14
82:15,16
163:12,19
164:5,14 165:2
165:17
**800**   171:4
**8027326**   18:10
**83**   105:16,19
**8332844**   14:11
47:18
**8407722**   14:11
**844**   3:12 14:16
19:3 27:9,14
28:6 29:11,14
29:21 30:1,5
31:23 32:11,20
33:5 34:20
35:2,19 39:11
39:13 41:12,21
42:1,11,17,23
43:3,6,12
45:15 46:15
47:9 48:1,3
50:22 56:1,5
56:15
**86**   112:3
**87**   117:8
**88**   47:11 48:18
48:21 49:13
**89**   49:19 57:11

**8:30**   6:7

**9**

**9**   113:4,11
115:20
**9/30/25**   175:23
**90071**   5:3
**91**   61:18
**92**   61:19
**93**   57:11
**94065**   4:13,17
**97**   101:5
**980**   1:5

**a**

**a.m.**   6:7,13
**ability**   175:11
**able**   19:3 42:20
48:7 58:3
68:14 71:11
93:8,16 94:13
94:20 96:10
106:22 128:5,6
**above**   6:8
85:16 89:5
159:10 175:6
**absolutely**
79:22 84:6
133:17 141:16
145:19
**abstract**   31:18
32:4 65:21
66:2 76:2,7
**access**   10:18
29:15 47:19

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[access - amount]**                                    Page 4

48:8 66:4,17
73:11,13 74:2
75:16 78:20
81:8 105:8
123:1 133:8
147:20 166:20
**accessible**  10:3
**accompanied**
19:21
**account**  81:8
**accr**  175:23
**accurate**  11:2
105:11 123:4,9
128:1 140:2
147:22
**accurately**
68:14
**acronym**  8:15
**act**  23:15
**acted**  28:12
51:1 54:12
107:11 108:4
152:13
**acting**  6:2
**action**  163:12
163:19 164:4
164:13 165:1
165:17 175:15
**actual**  132:18
**actually**  60:20
68:23 71:7
76:23 110:6
114:12 122:2
125:15 132:11

153:4
**addition**  116:8
116:20 119:2
**additional**
116:3 173:17
**address**  148:14
148:21,22,23
149:4,16,16
150:8,8,11,14
150:19,22
151:11,12,17
151:18 152:14
152:20 153:7,7
153:12,12,18
153:19,20
154:2,6,9,10,11
154:12,13,14
154:17,19,20
155:1,2,7
156:2,4,8,8,9
156:11,11,12
156:13,13,16
156:17,19,23
157:1,1,2
158:7,14,17
159:1,6,7,13,16
160:17 161:4
165:7
**addressable**
160:1 162:13
**addresses**
138:21 149:17
149:21 152:2
152:21 155:21

155:22 160:23
161:2
**adds**  147:1
**adjust**  72:20
**admit**  35:1
**admittedly**
79:7 155:11
**affect**  8:20
**agnostic**  41:13
**ago**  162:10
**agree**  13:14
22:2,10 33:15
38:15,18,23
39:2 40:8 43:2
43:6 46:23
55:21 56:3
57:9 63:18,20
65:2,12 72:4
72:13,17 73:16
74:15 82:6,18
83:12 85:5
87:22 88:14
101:15,19
102:15 109:8
115:16,22
118:11 119:21
121:21 128:13
132:3 136:20
142:17 144:15
144:18,22
152:2 157:19
160:21 161:6
167:11 168:15

**agreed**  2:1,8,16
96:20 97:8
**aid**  175:9
**aircraft**  66:9
**airlines**  1:11
7:1,14
**airplane**  66:15
67:1
**airplanes**  67:12
68:6
**alabama**  6:2
175:2,5
**alan**  5:1 7:12
9:12 114:11
171:18 173:18
**alleged**  16:12
**allocation**
138:7
**allow**  47:1
**allowed**  106:23
**allows**  67:11
73:12 74:1,12
**amended**
132:15 134:21
135:3,7 136:4
136:13
**amendment**
135:23 140:17
140:19
**american**  1:11
7:1,14 8:14
13:22
**amount**  19:5
24:8

Michael Goodrich                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[amounts - asked]**                                      Page 5

| | | | |
|---|---|---|---|
| **amounts** 88:17 | **anticipate** | 121:10 153:18 | 75:11 76:12 |
| **amplifying** | 62:17 | **applying** 50:13 | 77:14 78:1 |
| 64:9 | **antonym** 88:1 | 51:20,21 52:5 | 81:23 83:20 |
| **analogous** | **apart** 90:9 | 169:11 170:4 | 84:5 85:20 |
| 156:3 | **apologize** 97:5 | **appreciate** 97:4 | 86:12 87:12 |
| **analogy** 140:22 | 98:10 | **apprised** 143:8 | 88:9 89:4 |
| 141:3 | **appeal** 113:7 | **approximately** | 90:12,20 92:21 |
| **analysis** 22:1 | 115:2 | 6:13 172:6 | 93:4,8,16 94:6 |
| 27:8 60:14 | **appear** 74:5 | **architecture** | 95:3 96:10 |
| 66:11 72:2 | 86:8,8 111:17 | 39:10 | 97:9 98:3 99:6 |
| 87:8 116:22,23 | **appearances** | **area** 64:2 103:2 | 99:14,20 |
| 132:12 147:4 | 4:10 | 104:14 | 100:13,19 |
| 167:18 173:16 | **appearing** 4:13 | **areas** 63:23 | 101:11 102:1,6 |
| **angeles** 5:2 | 4:17,21 5:3 | 64:14,15 76:11 | 102:16,22 |
| **answer** 13:17 | **appears** 11:7 | 77:22 83:7 | 103:12,22 |
| 14:19 19:4 | 29:22 48:16 | 84:14 | 108:13 110:14 |
| 24:20 39:7 | 96:16 105:15 | **array** 129:18 | 112:9,19 117:3 |
| 41:8 42:8 | 123:11 148:3 | 133:4,5 | 120:6 121:9 |
| 45:23 54:5 | 161:15 | **arrest** 59:5 | 127:15 128:4 |
| 56:22 59:23 | **appendix** 10:22 | **art** 16:12 17:18 | 128:14 129:2 |
| 60:7 61:9 | 11:3 14:4 | 20:16,20 21:2 | 129:14 133:12 |
| 66:22 68:2,10 | **applicant** 113:3 | 21:15,21 23:4 | 134:1 137:21 |
| 68:14,15 81:19 | 134:13 | 23:11 24:5,15 | 138:16 139:7 |
| 82:11 87:6 | **application** | 27:4 30:8,23 | 149:23 150:4,7 |
| 97:16,22 119:5 | 28:19 29:3 | 31:6,12 32:9 | 152:10 158:11 |
| 119:12 164:5,6 | 30:14,17 31:15 | 35:18 36:4,7 | 163:11 165:11 |
| 164:12 165:18 | 34:11 36:6,21 | 37:13 38:3,22 | **aside** 69:7 |
| **answered** | 43:23 | 43:19 50:7,10 | 116:17 120:12 |
| 162:9 165:19 | **applied** 21:21 | 51:16 52:16 | 125:6,8 126:1 |
| **answering** | **applies** 21:2 | 53:18 54:21 | 154:23 |
| 67:23 | 107:7 | 55:9,17 57:4,6 | **asked** 66:12,21 |
| **antecedent** | **apply** 21:16 | 57:18 58:18 | 74:23 86:19 |
| 81:13 82:7 | 23:18,23 25:15 | 60:18 61:14 | 89:19 119:4 |
| 139:23 | 50:23 120:6 | 62:18 70:15 | 120:17 128:22 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[asked - believe]                                                    Page 6

150:21

**asking** 22:15
39:22 56:4,12
56:19 59:9
60:19 67:17
91:4 94:12
98:12,20 99:22
109:18

**aspects** 56:10

**asserted** 15:9
15:12 18:18
20:20 22:3

**assign** 2:13
118:6,8,14

**associated** 20:9
160:23 161:2,4

**attending**
88:22

**attorney** 8:10
17:2 24:19
25:20 26:10
37:21 42:12
50:17 52:7
54:15 55:6
56:23 57:15
58:1 134:17
160:9 173:6

**attorneys** 24:4
52:10 56:16
112:18 134:18
164:10 173:2

**audio** 92:3

**august** 1:18
6:13 11:18,23

**authenticate**
81:7

**author** 173:9

**automatically**
85:10 138:7

**available** 63:13
66:4,17

**avenue** 5:2

**avoid** 37:7
44:19 53:20
56:9 65:8

**aware** 14:15
39:16,23 67:10
67:20 74:11
166:8

|  **b**  |

**b** 136:15
139:21,23
145:3

**back** 13:9 16:2
17:13 29:23
41:1 44:7
45:11 60:10
76:14,15 81:4
82:15 97:7
100:15 105:4
125:16,18
132:4 139:22
141:20,22
142:18 162:10
165:12 173:5

**backpack**
76:15

**backs** 115:11

**baldwin** 175:3

**ballpark**
172:14

**barn** 91:20
92:9

**base** 28:18 29:1
30:7,12 31:13
34:8 36:5,8,19
37:14 38:4
43:20 44:20,22
46:5,12,15

**based** 19:7
21:23 23:5
25:7,9,12
37:13,19 44:3
45:17,17 46:10
47:8 52:10
56:15 61:7
67:5,11 68:6
82:1 90:12
101:9 106:2,13
107:14 112:6
112:10,15,21
115:15,23
116:7,10,13,18
117:4,7 118:18
118:22 119:20
119:21,23
120:4,7,8,14,23
121:4,6,7
140:4 169:12

**basing** 14:1
120:18 170:1

**basis** 81:13
82:8 137:13,16
139:5,23 140:3
145:16

**beat** 149:3

**beaten** 76:14

**becoming**
56:21

**beginning** 6:6
6:20 28:22
48:18 77:7
78:18 104:14
112:2 118:12
121:12 123:13
129:22 159:19

**begins** 27:9
30:4 77:3,5
81:6 147:3
154:16

**begun** 15:4

**behalf** 4:14,18
4:21 5:3 7:13
106:21

**believe** 10:10
17:8 31:5 32:3
32:5 33:8
36:17 41:7
47:6,11 58:16
59:16 60:8
78:17 79:7
82:10 83:18,19
113:22 114:3
114:15 128:23
157:15 158:8

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[believe - cases]**                                              Page 7

| | | | |
|---|---|---|---|
| 167:13,16 169:3,8 | **block** 5:1 7:12 7:12 9:12 | 153:21 155:3 164:20 166:5 | **broadly** 169:17 **broadway** 4:20 |
| **believed** 47:1 | 18:20 21:17 | 166:21 167:15 | **browser** 9:19 |
| **belong** 159:14 | 22:13 24:2,17 | 168:2 169:7,22 | |
| **beneath** 29:2 | 25:10,19 35:5 | 171:19 172:1,4 | **c** |
| 31:8,8,14 34:9 | 35:16 36:12 | 173:13,21 | **c** 8:8,8 142:10 |
| 34:17 36:12,20 | 37:20 39:4,18 | **blocks** 29:1 | 145:15,21,22 |
| 38:20 39:15 | 40:2,10,20 | 30:19,21 31:2 | 146:6,22 |
| 40:22 41:16 | 41:1,12 42:19 | 31:7,14 34:9 | **california** 4:13 |
| 42:21 43:21 | 43:8,14 44:15 | 36:14,19 37:15 | 4:17 5:3 9:1,6 |
| 44:17,23 | 47:3 50:4,16 | 39:3,13,14 | **call** 46:13 54:7 |
| **benefit** 34:21 | 51:8 52:2,6 | 40:6,9,13,14,15 | 126:14 149:6 |
| 41:15 42:7 | 53:2,14 54:4 | 40:17 41:2,7 | 160:11 |
| **benefits** 40:18 | 54:14 56:2 | 41:19 43:21 | **called** 113:7 |
| **best** 13:6 37:6 | 60:6 61:8 63:3 | **bottom** 114:15 | 149:8,11 |
| 44:18 48:13 | 67:13,22 68:8 | **boundaries** | 155:15,18 |
| 63:23 64:13 | 68:20 69:12 | 84:7 99:7 | **calling** 26:22 |
| 84:14 147:21 | 70:8,23 72:22 | **boundary** | **calls** 24:17 |
| 170:12 175:11 | 73:20 74:22 | 56:12,20 | 59:18 |
| **better** 9:3 26:4 | 75:7 78:11 | **bounds** 128:15 | **camera** 6:16 |
| 39:1 143:3 | 83:16 86:6,17 | 129:11 | **capable** 95:3 |
| **beyond** 84:20 | 87:4 88:7 89:1 | **break** 13:16,18 | 98:3 |
| 99:19 116:12 | 89:17 90:2,8 | 45:4,9 90:9 | **car** 141:2 |
| **big** 118:1 | 91:2,8 92:1,13 | 104:19 105:2 | **case** 1:5 42:4 |
| 126:13 | 93:12,20 95:7 | 130:12 141:18 | 50:8 52:13 |
| **biggest** 141:2 | 96:14 97:13 | **breaking** 18:22 | 58:7 70:1 |
| **bill** 19:7 | 98:7 101:21 | 92:3 | 85:19 87:9,9 |
| **billings** 170:19 | 102:19 103:19 | **bren** 9:7 | 87:17 112:22 |
| **bit** 31:21 51:9 | 104:8 109:16 | **brief** 17:21 | 127:3 134:23 |
| 92:4 150:22 | 114:8,13 | 113:7 115:1 | 137:6 138:19 |
| 152:1,5 159:16 | 116:21 120:2 | **bring** 170:3 | 170:16 175:17 |
| **bits** 151:1,6,7 | 121:2 134:16 | **brings** 136:9 | **cases** 24:21 |
| 151:12,13,15 | 140:7 143:14 | **broadest** 96:7 | 26:13,19 70:14 |
| 151:16 | 146:13,19 | | 151:1 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[catch - claim]**                                                 Page 8

| | | | |
|---|---|---|---|
| **catch** 131:6 | **certified** 1:22 | **citations** 31:22 | **cites** 98:15 |
| **catching** 48:2 | 175:4 | 32:5,8,15 | 144:16 160:22 |
| **categorical** | **certify** 6:3 | 33:16,23 34:3 | **citing** 44:20 |
| 39:21 | 175:6,14 | 35:13 46:16 | 135:5 165:9 |
| **categories** | **cfr** 113:7 | 47:1,5 55:11 | 169:10,15 |
| 118:6,8,14 | **chance** 105:8 | 62:15 65:18 | **city** 4:13,17 |
| 121:18 122:4,7 | 123:1 | 82:4 117:8 | **civil** 6:4 |
| 122:10,18 | **change** 40:20 | 132:9 140:13 | **claim** 19:17,21 |
| **category** 106:2 | 41:3 45:3 | 152:16 153:9 | 20:3,10 22:11 |
| 106:12 112:5,9 | **changed** 41:1 | 156:6 157:5 | 22:15,16,16,18 |
| 112:12 115:14 | **characteristic** | 162:11,19 | 22:21,23 23:21 |
| 115:23 116:7 | 130:5 | **cite** 16:23 17:8 | 24:13 25:14 |
| 116:10,18 | **characteristics** | 27:5 32:14,19 | 27:3,6,14,17,18 |
| 117:7,14,19 | 130:5 | 34:3 35:8 | 29:8 30:20 |
| 119:19,22 | **characterizati...** | 36:10 37:23 | 32:12,12 33:21 |
| 120:13,22 | 75:9 119:8,14 | 38:13 53:4 | 34:1 36:13 |
| 121:23 | 150:17 | 59:10 61:16 | 37:16 38:8,11 |
| **cause** 6:8 | **characterize** | 62:14 65:17 | 38:12,12,16 |
| **caveat** 13:16 | 150:18 | 80:17 114:15 | 40:16 41:11 |
| **ccr** 6:1 175:22 | **characterized** | 152:21 153:3 | 42:3,9,15 43:5 |
| **center** 88:21 | 102:20 | 156:5,6,22 | 44:9 46:6 |
| 102:10 | **charge** 171:3 | 158:12 161:18 | 48:22 49:3,12 |
| **centers** 64:3,16 | **charts** 19:17,21 | 161:21 163:8 | 53:11,12 54:2 |
| 83:8 104:16 | 20:3,10 | 163:11 165:10 | 54:3 58:3 60:4 |
| **certain** 19:20 | **check** 113:13 | 165:21 167:20 | 69:6 74:5 78:9 |
| 24:8,23 25:14 | **choice** 91:19 | 168:9,20 169:2 | 78:12,14,15 |
| 27:7,18 49:2 | 92:9 | 170:5 | 79:2,3 80:12 |
| 85:16 99:17 | **chose** 163:22 | **cited** 15:14 | 80:16,22,23 |
| 105:23 151:3 | **chrome** 9:19 | 16:11 34:11,15 | 81:1,5,14 82:1 |
| 157:13 | **circular** 37:8 | 38:5 87:2 92:8 | 82:2,20,21 |
| **certainly** 11:23 | 44:19 56:10 | 142:22 145:15 | 85:11 86:2,8 |
| 40:5 138:22 | **citation** 165:12 | 153:19 169:5 | 86:11,14 87:2 |
| **certificate** | 167:16 | 170:8 | 87:19 89:10,16 |
| 175:1 | | | 90:13 92:8,17 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[claim - complete]**                                    Page 9

93:17 94:8,19
95:4 96:18
97:11 98:4,17
99:22 100:2
103:23 105:19
105:22,23
106:1,21
112:21 115:12
116:2,16 117:1
118:15,16,19
118:22 119:1
119:21 120:3
120:18 123:18
123:21 128:12
132:14 134:20
134:22 135:12
136:16 138:2,5
138:13 139:11
139:12 142:4
142:10,12,22
143:5,12 144:8
144:16 145:23
146:8,17 148:8
148:10,14,19
148:23 153:19
154:2,3,10
158:6 160:7,20
160:22 168:17
169:6
**claimed**  40:16
42:14,15 61:6
93:11 137:11
139:3

**claims**  31:19
69:2 71:4,5
118:16 135:6
136:4,13
**clarification**
108:2
**clarified**
140:20
**clarify**  86:21
**clarity**  26:8
**classify**  155:15
**clean**  48:4
**clear**  17:4 24:7
28:21 31:4
35:17 36:14
37:17 38:7
54:20 56:4,15
58:7,9 60:9,17
64:5 65:6
99:19 109:9
117:11 122:8
129:10 150:6
150:21 159:5
169:18
**clearly**  79:10
**close**  128:2
**code**  68:13
**collection**
126:9,15
**column**  30:5
32:11,13 33:18
33:18,19,19,20
33:20,23 34:19
35:9,9,9,10

36:5,10 37:10
37:11 42:23
44:5,8,14,21
46:3,6,8,17,18
59:11 61:1,20
62:9 63:7
64:12 73:6,8
76:2,2,3,7,9
77:3,4,6,12
78:18 80:14
82:15,16 83:5
88:15 93:19
94:10 95:6
96:13 97:12,20
98:6 104:13
107:15,16
108:15 110:4,5
110:6,18,20
115:18 118:3
118:12 121:12
123:13 125:3
133:20 134:8
162:11,21
**combination**
121:16 122:17
**come**  61:12
63:2,17 64:6
65:7 70:17
71:21 99:10,10
99:18 131:21
137:12,16
139:5 140:3
159:8 167:19
168:8

**comes**  99:3
101:3 102:4
**comfortable**
67:23 131:23
**coming**  40:4
59:19 75:20
99:12 100:15
124:13 170:10
**commissioner**
2:18 4:7 6:2
175:5
**common**  29:3
31:15 34:10
36:21 43:22
129:15 138:20
**communication**
9:22 10:8
**company**  77:17
**compare**  85:17
88:13 92:19
**compared**
88:20 90:17
**comparing**
92:23 93:2
94:3
**compensation**
170:15
**complaint**
19:10,14,17,21
20:1,9,10
**complete**  8:6
11:2 28:23
29:20 48:14,14
105:10 110:19

Michael Goodrich                                     August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[complete - context]**                                    Page 10

| | | | |
|---|---|---|---|
| 123:3,9 147:22 | 61:18 80:17,20 | **connection** | **construing** |
| **completed**  13:4 | 81:4 108:1 | 6:17 81:10 | 51:22 |
| **completely** | 115:9 | 170:15 | **consulting** |
| 62:6 110:17 | **conclusions** | **connectivity** | 166:4 |
| **complex**  97:2 | 33:11 38:6 | 67:5,7,8,12 | **contain**  11:10 |
| **compliance**  2:5 | 47:6,7,8 108:9 | 68:7 | **content**  109:2,4 |
| **comprised**  39:3 | 167:17,19 | **consider**  26:13 | 109:11,14,21 |
| **comprises** | 168:9,11,22 | 62:19 92:22 | 110:11,22 |
| 173:7 | 169:9 | 169:18 | 112:11,12 |
| **computational** | **conclusive** | **considered** | 114:20 116:11 |
| 21:9,13 | 46:17 | 15:5 85:1 | 116:14 117:7 |
| **computer**  9:17 | **conducted**  6:15 | 102:3 170:7 | 141:7 175:8 |
| 9:22 10:9 50:8 | **conference** | **considering** | **contents**  14:2 |
| 67:19 96:8 | 64:3,16 83:8 | 107:21 | 53:1 108:17 |
| 100:5 125:8 | 88:21 102:10 | **consistent**  31:4 | **context**  26:2 |
| 126:8 143:7 | 104:16 | 170:4 171:7 | 39:5,6 41:5,8 |
| 166:17 167:4 | **confident**  12:17 | **consistently** | 46:15 53:19 |
| 175:9 | **configured** | 56:23 | 55:16 56:18 |
| **computerdict...** | 115:14 160:2 | **constituent** | 57:10 58:2 |
| 158:13 165:23 | 160:22 162:14 | 150:12,15 | 64:5 65:18 |
| 166:9 | **confirm**  11:1 | **constitutes** | 74:18,20 77:13 |
| **computerdict...** | 18:5 28:5 90:5 | 100:13 | 78:14 79:18,20 |
| 167:9 | 105:9 123:2 | **construction** | 87:7 89:21 |
| **concept**  64:9 | 130:1 144:11 | 27:6 38:10,19 | 91:11,13 92:21 |
| 69:6 | 147:21 157:9 | 44:13 51:22 | 94:19 95:14 |
| **concepts**  43:7 | **confused**  47:21 | 65:9 161:13 | 96:9 97:21 |
| **conclude**  31:19 | 96:6 97:16 | **constructions** | 98:9,17 100:5 |
| 43:18 | 163:14 | 24:22 25:12 | 100:17 101:16 |
| **concludes** | **confusing** | **construe**  25:2,5 | 101:20 110:3 |
| 174:6 | 98:21 99:21 | 26:7 | 111:12 115:12 |
| **conclusion** | **confusion** | **construed** | 119:9,17,18 |
| 24:18 37:3 | 53:21 65:8 | 22:18 26:3 | 125:11,12,17 |
| 47:2 52:11 | 131:2 | 158:9 163:3 | 126:6,13,18 |
| 54:9 58:17 | | | 127:5 132:23 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[context - declaration]                                    Page 11

| | | | d |
|---|---|---|---|

137:5 139:12
142:6 143:5
145:8 155:18
155:23 157:17
159:12 160:18
167:2,3 168:18
**contexts** 125:19
126:5 155:8
156:8
**control** 137:19
140:12
**convention**
129:7 131:21
**copy** 11:2
29:14,20 40:21
40:23 47:17,23
48:6,15,22
105:7,11
122:22 123:4,9
123:17 147:22
148:9 160:20
**correct** 14:8,12
15:10,23 18:7
18:15 19:11,22
20:21 21:4,5
24:16 25:9
27:15,19,20,22
28:3,4,8,9,14
28:20 34:13
35:11,12 44:1
44:2 45:22
48:23 49:3,8
49:10,14,22,23
51:3,4 62:10

62:13 64:22
66:20 74:9
78:7 79:21,23
80:15 83:9
84:17 85:11
97:15 105:20
106:14,18
107:12,16
108:20,23
109:22 111:1,4
111:7,12,20
112:13 113:5
114:17,22
115:2 118:20
122:11 123:19
123:23 124:4
124:19,23
125:4 126:12
130:9 135:19
136:8 137:1
138:3,4,9
139:15 142:12
142:16,23
143:1,20 144:2
144:5,6,14
147:12 148:10
148:15,17,23
149:21 150:12
150:15 151:12
152:14 153:13
156:4,20 157:7
157:11 158:2,7
158:8,18,19,21
160:4 161:10

164:2,19 165:7
171:5 175:12
**correctly** 64:18
135:4 156:15
**correspond**
40:9,12 41:7
**counsel** 2:10,12
6:5 7:7 175:15
**count** 153:5
**counts** 17:3
26:9 169:14
**county** 175:3
**course** 74:4
99:1 100:4
**court** 1:1,22
2:6 4:1 6:1 7:2
7:5,8 13:8
24:21 25:1,5
26:7,13,19
36:2 92:2
106:23 175:4
**courts** 25:11
26:3,21 27:5
**current** 165:5
**customary**
23:17,23 24:14
25:6 50:2
51:23 125:19
126:3,18
144:19,23
**cut** 154:21
**cv** 1:5
**cvs** 16:8 17:15

**d** 3:1 8:8
145:20 147:1
**daphne** 6:2
**data** 29:1 31:13
34:9 36:11,19
39:3 40:9,13
40:14 41:6
42:19 43:21
81:9 94:15
95:19 96:5
98:21 99:22
132:18,22
133:3,15 134:5
134:6
**date** 6:3 11:22
170:23 173:8
175:13
**dated** 135:23
163:12,19
164:4,14 165:2
165:17
**day** 58:7 99:13
**days** 95:14
99:11
**december**
13:23
**deciding** 84:10
**decision** 95:1
**declaration**
3:11 10:22,23
11:3,8,9,15,18
11:21 12:5,10

Case 4:24-cv-00980-ALM    Document 82-11    Filed 09/09/25    Page 58 of 92 PageID #: 4451

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[declaration - determination]                                    Page 12

14:2,6,14,22
15:8,15 16:15
16:22 17:9
18:4,12 20:15
21:3 27:10
28:3,7,10
32:20 33:16
34:3,15 35:8
37:19 45:19
47:12 48:17
50:21 57:10
60:14 82:5
83:3 100:11
105:17 106:8
106:10,18
107:2,5 112:3
113:9 114:16
114:22 115:6
123:12,17,22
124:4 129:21
130:16 140:6
142:8,11,19
147:9,11 148:5
148:9 157:4
162:8,17,19,23
163:23 165:21
166:13 167:13
167:21 168:1
169:21 170:9
171:4 172:11
172:20 173:4,7
173:9,11
**declarations**
10:12 16:8

17:15
**default**  22:10
**defendant**  1:12
5:4 7:13
**defined**  28:17
35:23 55:2,18
124:18,22
125:15,21
127:5,10,12,13
127:15,20,22
128:11,16,23
129:5,13 130:6
138:18 160:7
**defines**  129:5
**defining**  127:16
127:23 128:20
152:13
**definite**  79:16
91:12
**definition**
20:19 21:21
23:11,13 25:23
28:22,23 29:8
30:2,16 31:12
32:7,10 35:4
35:21 36:18,23
41:18 44:16,19
46:3,5,9,10,11
46:13 51:2,6
51:11 54:9
55:20,23 56:6
56:10,17 57:12
57:17,21,21
58:4,8,12

62:22 71:8,10
89:12 101:1
109:2,3,9,10
110:16 117:4
125:3,23
126:11 127:14
129:10 151:4
153:15 158:16
158:21 159:6
159:14 160:14
166:1
**definitions**  15:5
15:22 16:20
23:8 37:7
101:12 126:7
169:10
**definitively**
61:3
**degree**  159:11
**deidre**  5:5 7:4
**denomination**
135:18
**dependent**  41:5
**depending**  41:8
94:18 125:11
**depends**  6:16
39:5 40:11,11
87:7 101:16,20
129:9 155:4
**deposed**  12:15
**deposition**  1:17
2:3,4,14,17 3:9
6:14,21 12:19
12:23 13:2

164:11 171:15
174:7
**depositions**  2:7
**describe**
103:15
**described**
51:14,15 70:20
71:13 73:4
88:15 94:8,9
95:5 96:13
97:11,12
111:11,15
125:14 157:10
157:17 158:1
**describes**  52:19
76:23 85:6
118:13
**describing**
161:19
**description**
103:17 129:21
133:1 134:5
136:5,7,14,23
137:7
**descriptions**
130:2 132:16
133:13,23
135:2,8 136:17
145:4
**designed**  42:21
**details**  20:6
**determination**
24:22 94:20
129:1

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[determine - disjoint]**                                    Page 13

| | | | |
|---|---|---|---|
| **determine** | **different**  22:3 | 119:3 120:9,12 | 77:9 83:4 |
| 84:22 85:21 | 45:3 53:4 62:7 | 120:12 121:6 | 92:18 108:14 |
| 93:5,8,16 94:6 | 79:1 86:18,21 | 134:19 136:10 | 110:19 112:23 |
| 94:23 95:17 | 86:22 88:17,20 | 137:3 141:4 | 113:3 118:12 |
| 96:11 97:9,22 | 101:13 102:9 | 160:11 | 121:11,22 |
| 102:7,17 103:6 | 102:12 117:13 | **disavowals** | 125:2 133:20 |
| 103:9,12,18 | 117:18 118:13 | 117:12 | 136:12,22 |
| 121:17 122:18 | 121:22 128:7 | **disavowed** | 157:5 163:16 |
| 128:5 129:3,15 | 134:19 149:20 | 118:19 | 163:23 167:23 |
| **determined** | 152:7 155:8,19 | **disavowing** | **disclosures** |
| 138:1,2,12 | **digits**  14:14 | 24:8 | 29:7 30:1 33:1 |
| 139:9 | **directed**  39:14 | **disc**  174:6 | 34:15 35:9 |
| **determining** | 41:12 59:18 | **disclaimed** | 37:2,13 45:18 |
| 84:11 89:5 | **directly**  73:10 | 53:11 134:13 | 54:17 55:7 |
| 90:12 95:3 | 89:3 92:16 | 160:7 | 100:18 102:2 |
| 98:3 100:19 | **director**  148:15 | **disclaimer** | 107:15,18 |
| 103:23 121:23 | 159:19 160:16 | 134:19 160:12 | 108:3 112:21 |
| 138:7 | 160:19 161:1 | **disclose**  104:11 | 135:6 156:18 |
| **device**  81:10 | 162:13 165:6 | 117:13,18 | 161:12 162:15 |
| 115:13 160:2 | **disagree**  32:2 | **disclosed**  42:14 | **discreet**  130:12 |
| 161:3,5 162:13 | 41:9,10 63:19 | 42:16 44:4 | **discuss**  130:17 |
| **devices**  10:3 | 89:12 104:5 | 52:18 62:9,13 | 132:8 163:16 |
| 21:9,14 | 109:12 119:7 | 79:11 133:6 | **discussed**  96:1 |
| **diagrams**  68:14 | 119:10,13 | 138:21 158:4 | 140:5 143:19 |
| **dictates**  149:9 | 150:16,20 | **discloses**  21:8 | 165:22 |
| **dictionaries** | 164:21 | 43:3 61:11 | **discussing** |
| 26:23 | **disagreement** | 80:6 157:14 | 17:11 118:17 |
| **dictionary**  15:5 | 145:12 | **disclosing** | **discussion** |
| 15:22 16:19 | **disavow**  134:21 | 62:16 | 96:20 134:9 |
| 101:12 153:15 | **disavowal** | **disclosure** | **dish**  66:6,20 |
| 165:21 166:19 | 23:21 24:12 | 44:14 52:22 | 75:18 78:19 |
| 169:10 | 25:9 53:16,23 | 56:14 58:22 | **disjoint**  126:9 |
| **difference** | 54:2,7 112:20 | 60:2 63:22 | 126:15 |
| 161:23 162:4 | 116:4 117:4 | 64:11 65:5 | |

Michael Goodrich                                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[display - entire]                                                       Page 14

display   151:2
  151:20 152:6
dispute   22:5
  79:17 84:4
  104:9 108:21
  109:6 117:10
  122:20 123:8
  145:23 146:5
  157:12 158:3
disputing   65:16
  74:14 83:23
  84:18 85:8
  88:3 101:22
  103:1 144:10
  145:17
distinct   123:23
  130:8,14 132:7
  134:2
distinguish
  128:7 132:16
distinguishes
  133:13
distribute   72:6
  72:16 135:7,8
  136:7,23
distributing
  130:7 136:17
  137:9 145:3
distribution
  136:5,13
district   1:1,2
  4:1,2 7:2
division   1:3 4:3
  7:3,3

dns   160:22
docket   3:15
  113:20
document
  10:17 47:19
  48:8 113:6,13
  113:21 114:6,9
  123:1 165:9,16
documents
  14:23 15:2,14
  15:20,22 16:2
  16:9,11,16,19
  16:20 17:1,5
  17:13,16 18:1
  18:3 20:9
  68:13 170:7
doing   157:13
dolphin   4:12
  4:16
donald   9:7
double   113:13
downing   4:15
dr   6:7 7:19 8:3
  45:13 47:18
  48:8 141:23
  147:19 174:1
draft   173:2,6
drafts   173:5
drive   4:12,16
duly   7:20
dynamic
  108:16 109:2,4
  109:11,14,21
  110:11,22

112:11 116:14

e

e   3:1 8:8
earlier   12:7
  15:21 82:8,11
  83:10 86:19
  97:15 119:5
  138:17
earliest   137:18
  137:23
early   16:9
ears   56:11
eastern   1:2 4:2
  7:2
edward   7:6
effect   2:4
effecting   143:6
effective   73:14
  73:18 74:3
efficient   134:4
either   10:8 36:1
  58:5 90:19
  96:5 108:8
  129:17 140:13
  150:9,22
electricity   66:3
  66:17
electronic   10:2
  75:15
element   72:8
  81:6,14 82:2
  110:21,22
  111:11

elements   72:10
  111:5,10,11,13
  132:12
eleven   35:10
embodiment
  43:5 52:19
  61:10 62:12,16
  70:12,13 71:6
  71:23 121:16
  122:16
embodiments
  42:17,20 43:3
  51:14 59:12
  111:20 157:10
  158:1
encapsulated
  160:2 161:9
  162:1,6,7,14
  163:4,16
  164:19
enclosed   36:18
  37:1
encompass
  70:10
encompasses
  70:10
engaged   13:22
  14:18
engineer   91:18
  92:7
english   88:1
entire   36:18,23
  40:21 47:8
  82:3 165:9

Michael Goodrich                                                          August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[entirety - exhibit]**                                                         Page 15

| | | | |
|---|---|---|---|
| **entirety** 11:10 | 163:1 167:12 | 96:1,12 97:10 | **exclude** 68:17 |
| 19:15 22:15 | 167:18,21 | 97:12 98:4,5 | 69:9 70:5 |
| 33:3,12 35:14 | 169:2,19 170:5 | 99:10 102:8,18 | **exclusively** |
| 35:19 36:16 | **ex** 17:1,5 153:5 | 104:13 111:6 | 152:20 |
| 46:20,22 55:6 | 153:10 163:11 | 115:9 125:13 | **excuse** 20:2 |
| 55:9 65:19 | 163:18 164:4 | 126:6,20 | 32:13 68:19 |
| 74:8 90:6 | 164:13 165:1,4 | 127:17,19,21 | 118:3 123:13 |
| 107:21 163:6 | 165:16 169:13 | 130:20 133:2 | 125:6 134:8 |
| 168:6,12,20 | **exact** 11:22 | 133:19 141:1 | 138:13 157:15 |
| 171:8 172:19 | 120:6 | 152:23 153:20 | 157:18 |
| **entities** 160:3 | **exactly** 73:5 | 154:1,1,10 | **executable** |
| **entry** 14:5 | 120:4 133:17 | 156:22 157:17 | 143:7 |
| 158:13,16 | 135:10,12 | 159:15 161:15 | **execution** |
| **enumerates** | 151:13,15 | 168:4,16 | 137:18 |
| 84:20 | **exam** 17:1 | 169:10 171:19 | **exemplary** |
| **environment** | **examination** | 172:22 | 21:19 32:22,23 |
| 28:20 29:4 | 3:3 6:8 8:1 | **examples** 26:14 | 33:6 46:16,19 |
| 30:15,17 31:16 | **examined** 7:20 | 39:23 64:21 | 47:5 65:14 |
| 34:11 36:6,22 | **example** 9:20 | 77:22 78:1,6 | 84:16 162:19 |
| 43:23 | 12:11 17:10 | 79:8 80:6 83:6 | 163:6 168:10 |
| **equals** 126:16 | 18:23 19:1 | 83:13,22 84:1 | **exhaustive** 65:1 |
| **esquire** 4:11,15 | 21:7 23:8 24:6 | 84:4,19,21 | 65:4,12,15 |
| 4:19 5:1 | 26:4 37:5,10 | 85:5 102:23 | **exhibit** 3:11,12 |
| **establishing** | 40:19 44:9 | 104:2,10 127:6 | 3:13,14,15,16 |
| 81:9 | 59:10 61:18 | 129:16 133:22 | 3:17 9:20 |
| **estimate** 12:1 | 62:1 70:3 | 152:8 | 10:12,21,21 |
| 172:10 173:10 | 71:16 73:6 | **exams** 153:5 | 11:5 29:11,14 |
| 173:12 | 74:5 75:16 | **excellent** 10:16 | 29:16,20 47:15 |
| **ethernet** 73:12 | 76:2,9,16 | **except** 2:11 | 47:17,20 48:6 |
| 74:2 | 77:12 80:8 | 79:16 99:13 | 48:9 105:7,12 |
| **evidence** 2:15 | 83:15 85:13,15 | **exception** | 113:18,18 |
| 26:14,15,23 | 88:5,16,18,19 | 23:16 | 114:1 122:22 |
| 27:5 58:17 | 92:8 93:10,18 | **exceptions** | 123:5,9 147:7 |
| 101:7 130:17 | 94:7,9 95:5,6 | 51:21 | 147:18,20 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[exhibit - first]                                           Page 16

148:1
**exhibits** 3:9
**exist** 149:17
155:21
**expanded**
37:11
**experience**
63:23 64:14
79:14 84:15
88:17 101:10
104:11 169:12
170:1,4
**experienced**
26:20
**experiences**
103:8
**experiencing**
78:21 79:6
84:2 85:1
**expert** 16:7,8
17:15 27:1
106:20
**experts** 170:3
**expires** 175:23
**explain** 26:4
29:4 71:11
**explained** 56:6
58:6
**explains** 36:11
**explanation**
165:12
**express** 81:16
109:1

**expressed**
125:23 126:10
**expresses** 59:12
**expressly** 57:11
58:23 60:2
61:5 85:4
104:7 114:21
158:6 167:22
169:20
**extend** 73:18
**extender** 72:6
72:15,20 73:4
73:9,17 74:1
**extending**
73:14 74:3
**extent** 154:8
167:11
**external** 17:4
**extrinsic** 26:13
26:15,22 101:7
153:6 169:2,5
169:15,19
170:6

**f**

**fact** 34:19 37:6
83:11 152:19
168:14
**fair** 10:9,10
13:5,13,19
60:13 88:6
102:11 117:9
122:19 136:14
145:11 167:21

169:3
**fairly** 113:21
**fancy** 59:7
**far** 75:14
**february** 113:4
113:11
**federal** 6:4
**feel** 141:8 143:4
160:20
**felt** 33:10 37:4
**field** 63:10
169:12 170:2
**fifty** 12:17
**figure** 31:22
72:1,4,14,18
111:18 157:6,9
157:15,18,22
157:23,23
161:16,16,17
172:14
**figures** 111:6
111:12,14,19
161:17,21
163:8
**file** 15:8,11
16:19 17:3
18:19 23:3
24:6 29:2 31:8
31:9,14 33:4
33:13 34:9,17
34:22 36:12,20
38:16,20,23
39:3,12,15,17
39:17,23 40:1

40:9,14,22,22
41:7,14,17
42:6,21,22
43:21 44:17,23
54:6 112:23
114:11 116:5
128:10 129:6
130:6,9,15
132:7 133:3,4
134:2 136:3
138:7,9 139:16
143:7 168:8
**filed** 7:1 113:4
**files** 39:2 40:7
**filing** 2:17
**fill** 38:3
**final** 163:12,19
164:4,13 165:1
165:17 173:7
**finalize** 11:17
**finding** 46:11
**finds** 81:13
**fine** 12:22 45:6
141:10,13
142:9 147:10
**firm** 7:11 8:11
8:11
**first** 7:20 10:12
14:15 26:5
35:20 36:4
37:23 42:14
121:15 124:15
135:22 136:11
136:12 137:12

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[first - future]                                            Page 17

| | | | |
|---|---|---|---|
| 137:12,16,16 | **focus** 168:22 | 75:7 78:11 | 172:6 174:6 |
| 139:5,5 140:3 | **focusing** 80:22 | 83:16 86:6,17 | **free** 143:4 |
| 140:3,17 154:3 | 132:5 159:3 | 88:7 89:1 90:2 | 160:20 |
| 166:8 173:2 | **followed** 55:19 | 90:8 91:2,8 | **friday** 99:12 |
| **five** 14:7 15:4 | 65:13 84:16 | 92:1,13 93:12 | **front** 10:14,19 |
| 16:6 18:6,18 | 131:18,19 | 93:20 95:7 | 29:18 48:11 |
| 20:20 21:2 | **following** 6:9 | 96:14 97:13 | 105:14 148:4 |
| 22:3 35:10 | 35:6 59:8 63:4 | 98:7 101:21 | **full** 2:5 18:10 |
| **fixed** 49:21 | 68:21 72:23 | 102:19 103:19 | 23:21 46:14 |
| 50:3,12 51:18 | 91:3 93:13 | 104:8 109:16 | 79:21 157:3 |
| 52:17,20,23 | 94:11 95:8 | 116:21 120:2 | **fully** 36:16 |
| 53:7 54:10,23 | 96:15 109:17 | 121:2 134:16 | 164:12 165:18 |
| 55:14 57:8 | 111:8 117:21 | 140:7 146:13 | **fulsome** 56:7 |
| 58:21 59:13,20 | 151:9 166:22 | 146:19 153:21 | **function** 73:3 |
| 59:22 61:12,16 | **follows** 7:21 | 155:3 164:20 | 73:17 |
| 61:21 62:5,16 | **force** 2:4 | 166:5,21 | **functionality** |
| 62:20 64:6,7 | **foregoing** 6:5 | 167:15 168:2 | 159:3 161:20 |
| 65:6,10,20 | 175:7,10 | 169:7,22 | **further** 2:1,8 |
| 70:2,11,12,16 | **forget** 17:19,22 | 173:13 175:9 | 2:16 29:4 |
| 71:5,9,11,14,17 | **forgot** 135:17 | **format** 151:4 | 30:18 31:1 |
| 71:18,20,22 | **form** 2:11 | 151:20 | 32:18 34:20 |
| 74:7,17 75:5 | 18:20 21:17 | **formatted** | 35:23 36:9 |
| 75:21 76:20 | 22:13 24:2,17 | 149:10 | 46:4,11 64:8 |
| 78:10,15 79:4 | 35:5,16 37:20 | **formed** 18:14 | 68:2,3 73:13 |
| 79:11,18 80:2 | 39:4 40:10 | 43:16 | 74:3 82:18 |
| 80:9,13 81:2 | 43:8,14 44:15 | **forming** 16:14 | 114:11 120:9 |
| 81:17,23 84:1 | 47:3 50:4,16 | 16:21 27:6 | 140:20 156:10 |
| **flexibility** | 51:8 52:2,6 | 170:7 | 173:19,23 |
| 72:20 | 53:2,14 54:4 | **forth** 173:5 | 175:14 |
| **flowchart** | 54:14 56:2 | **found** 111:6 | **future** 53:21 |
| 157:13 | 60:6 61:8 63:3 | **four** 14:20 | 62:1,4 |
| **flown** 67:1,4 | 68:20 69:12 | 123:22 124:3,8 | |
| 68:12 | 70:8,23 72:22 | 140:22,23 | |
| | 73:20 74:22 | 141:1 151:21 | |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[g - high]                                              Page 18

| g | | | |
|---|---|---|---|

**g** 8:8
**gateway** 115:13
  121:16 122:16
**general** 90:22
  91:5 125:9
**generally** 42:16
  52:16 57:19
  91:11 152:3
**generate**
  110:12,23
**generic** 125:14
**generically**
  108:17,22
  109:5
**getting** 68:23
  98:10
**give** 25:11
  46:16 82:4
  86:11 87:2
  103:21 106:23
  113:15 129:17
  139:7 156:7
  162:18
**given** 23:22
  24:13 46:3
  93:9,17 100:17
  102:2 119:9,16
  129:16
**gives** 35:20
  77:13,22 80:9
  83:22 84:11
  85:13 87:11

125:23 127:6
**giving** 25:13
  81:12 130:4
**go** 12:22 14:4
  36:13 45:5
  60:10 80:7
  84:20 99:18
  104:20 111:22
  119:11 127:7
  133:5 141:2,14
  147:10 174:3
**goes** 44:7 77:3
  77:5 89:3,5
  92:15 99:3
  101:3 102:5
  129:6
**going** 10:11
  17:13 29:23
  45:2 48:4
  57:20 59:19
  71:4,7 77:7
  88:16 97:7
  132:4 140:20
  141:7 162:10
  173:20
**good** 6:11 8:3,4
  102:13 104:18
  129:3 131:6
  141:6
**goodrich** 1:17
  6:7,21 7:19 8:3
  8:7 45:13
  47:18 48:8
  141:23 147:19

174:1,7
**google** 167:6
**grand** 5:2
**great** 78:3
  114:5
**ground** 12:19
  61:7
**grounds** 2:13
**group** 122:3
**guidance** 84:6
  84:12,22 85:13
  85:21 86:10
  87:11,16,17
  88:10 89:8,11
  89:16 90:16
  91:14 93:3
  94:22 102:7
  103:6,16 104:1
  104:2,6
**guide** 160:21

| h | | | |
|---|---|---|---|

**h** 8:8,8
**half** 141:11
**hall** 9:7
**happen** 79:18
  80:2
**happened**
  134:23
**happening**
  38:20 41:14
  127:2
**hard** 98:11

**head** 125:7
**hear** 62:5
  101:17
**heard** 6:18
  12:18,21
**help** 13:2 31:21
  61:23 62:3
  93:4
**helpful** 88:8
  127:21
**hesitate** 172:15
**hicks** 3:5 4:11
  7:10 8:2,10
  45:1,13 104:18
  105:6 114:10
  141:5,13,22
  173:18,23
  174:3
**hierarchy**
  149:6
**high** 49:7 59:17
  64:1,14 78:21
  79:6,15 82:23
  83:14 84:3,15
  85:2,6 86:4
  87:20 88:1,5
  88:11 89:6,20
  89:23 90:4,10
  90:14 91:1,16
  92:19,23 94:21
  98:15,18,22
  100:2 103:8
  104:11 162:9

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**higher** 91:22
   92:12
**highlight** 13:1
**highlighted**
   49:2 123:22
   142:11,16
   148:12
**highlighting**
   157:20
**highlights**
   34:20 150:2
**historical** 95:3
   95:9 96:11
**histories** 15:9
   15:12 16:19
   18:19 168:8
**history** 17:3
   23:3 24:6 33:4
   33:13 54:6
   113:1 114:12
   116:5,17
   134:10 136:4
   140:5,14
**hope** 170:11
**hopefully** 13:3
**host** 151:19
   152:3
**hotels** 64:2,16
   77:23 83:8
   104:15
**hotspot** 59:1,13
   59:14 60:3
   61:6 64:22
   69:9 70:6,19

71:12 72:21
73:15,19 74:4
74:13 76:19
83:6 88:20
91:19 92:7
93:9,10,17
94:2,7,7 95:4
96:9,11,22,22
97:1,10,10
98:4,4
**hotspots** 63:22
   64:13 66:2
   84:14
**hour** 45:2
   104:20 141:11
   171:4
**hours** 172:6
**house** 66:5,19
**huh** 173:15
**hundred** 17:2
**hypothetical**
   91:17 92:6,14
   92:15
**hypotheticals**
   98:10

**i**

**i.e.** 110:10,15
   110:21
**ideal** 45:4
**identical** 108:7
   110:17
**identification**
   11:6 29:17

48:10 105:13
114:2 115:23
116:7,18
119:22 120:13
120:21,23
123:6 148:2
**identified**
   104:7 167:12
   169:20
**identify** 29:6
   30:1 33:8
   106:1,12 112:5
   112:9 115:14
   119:19
**identifying**
   46:10 117:14
   117:19
**ii** 1:8 6:23
**illustrated**
   111:14 157:21
   161:20
**image** 27:22
   28:2,8,13,17,18
   28:19 29:1
   30:3,7,7,9,12
   30:13,19,20,22
   31:2,13 32:7
   34:8 35:4,15
   35:21 36:5,5,8
   36:15 37:9,14
   37:18 38:4,10
   40:19 41:2,18
   43:23 44:20,22
   45:17 46:5,11

46:12,15 50:22
51:2 55:16,19
56:1,6
**imagine** 40:5
**implies** 74:16
**imply** 75:4
**include** 27:13
   32:10,20 33:18
   35:22 36:18
   40:2 46:23
   48:21 86:14
   105:19 115:5
   122:3 127:10
   135:21 148:9
   151:12 152:3
   159:13 163:22
   164:7 167:8
**included** 15:3
   33:16 45:21
   47:4 107:5
   114:21 120:10
   123:17 135:22
   163:2 164:2,17
**includes** 23:2
   40:1 114:12
   164:7
**including** 10:22
   106:1 130:19
   168:6
**inclusive** 150:9
   163:9
**incomplete**
   92:14

Michael Goodrich                                August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[incorporated - introducing]                                Page 20

| incorporated | industry 125:9 | 130:14 132:7 | interpret 91:12 |
|---|---|---|---|
| 114:21 | inefficient | 134:2 138:8,18 | interpretation |
| incorrect 75:8 | 132:21 | 138:19 139:16 | 28:2,7 34:7 |
| 168:3 | inform 32:9 | 143:7 | 35:15 37:18 |
| indefinite | information | inside 162:7 | 44:13 45:16 |
| 59:16 69:2,3 | 108:16,22 | install 91:18 | 56:7 96:8 |
| 79:8 80:4 | 109:10,13,21 | 92:7 | 100:1 117:6 |
| 85:11,15,23 | 110:10,21 | installation | 122:15 124:3 |
| 86:5,16 87:3 | 112:10 116:13 | 70:11 75:23 | 126:19 129:7 |
| 87:10,23 89:12 | 116:19 120:14 | installations | 130:18 132:10 |
| 89:16,21 90:1 | 121:1 137:20 | 75:13,13 | 139:6,11,20 |
| 90:7,11,21 | informed 36:9 | installed 68:18 | 140:3,12,15 |
| 91:13 92:17 | 44:13 | 69:10 70:14,17 | 153:17 161:8 |
| 93:6 100:20,21 | informing | 71:18 | 162:12 |
| 100:22 101:23 | 140:8 | instance 50:19 | interpreted |
| 102:14 103:13 | infrastructure | 168:19 | 22:11 49:21 |
| 142:22 143:19 | 74:17 75:6,15 | instances 25:1 | 124:17 130:3 |
| 144:1 145:16 | inherent | 25:22 26:3 | 137:17 159:22 |
| 145:18,19,22 | 138:16 139:1,4 | 153:18 | 160:1 |
| 145:22 146:23 | input 106:1,3 | intellectual 1:7 | interpreting |
| indefiniteness | 106:12,13 | 1:8 6:22,23 | 57:3 122:11 |
| 147:1 | 107:9,20 | 8:12,17 106:21 | intrinsic 23:1 |
| independence | 108:18,23 | intent 97:4 | 101:7 152:17 |
| 74:16 | 109:2,3,6,11,15 | interested | 153:2,5 163:1 |
| independent | 109:19 110:9 | 175:16 | 167:12,20 |
| 34:23 42:23 | 110:20 112:6 | internet 6:16 | 169:14 |
| 75:4,5 | 115:15 116:1,8 | 67:5,7,7,11 | introduce 7:7 |
| independently | 116:20 118:22 | 68:7 75:19 | 10:11 |
| 91:7 108:9 | 119:20 120:1,5 | 76:18 78:4 | introduced |
| indices 129:17 | 120:8,15 121:1 | 81:8 88:20 | 29:13 48:5 |
| 133:5 138:23 | 121:4 124:18 | 149:2,5,9,11,19 | 113:18 |
| individually | 125:21 126:20 | 151:19 155:10 | introducing |
| 91:1 | 127:6 128:10 | 155:20 | 122:21 |
|  | 129:6 130:6,9 |  |  |

Michael Goodrich                                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[invention - large]                                                      Page 21

| | | | |
|---|---|---|---|
| **invention** 34:21 | **ipv4** 151:11 | 119:5 | 34:1,16 36:13 |
| 41:16,21 42:1 | **irvine** 9:1,6 | **know** 10:17 | 37:8,16 38:8 |
| 42:7,10,13 | **issue** 42:4 | 12:9 13:8,11 | 38:11,12,16 |
| 51:14 64:22 | 43:17 82:22 | 13:15 19:16 | 44:10,12 46:7 |
| 165:5 | 87:19,20 | 26:9 27:10 | 49:3,18 50:20 |
| **inventions** 21:8 | **items** 152:17 | 29:15 47:12,19 | 57:3,14,20 |
| **inventive** 43:7 | **iv** 8:13,15 | 48:18 55:6 | 60:11,20 61:1 |
| 43:12 | | 59:4 63:13 | 64:12 69:1 |
| **invoices** 171:13 | **j** | 67:6,8 71:10 | 76:4 78:9,14 |
| **involves** 21:13 | | 76:14 83:20 | 78:17,23 79:3 |
| 42:6 | **january** 163:12 | 88:10,12 91:21 | 79:5 80:11,14 |
| **involving** 8:13 | 163:19 164:5 | 92:11 96:21 | 80:22,23 82:2 |
| 21:8 | 164:14 165:2 | 99:6,21 101:11 | 82:22 86:13 |
| **ip** 148:23 149:1 | 165:17 | 102:1 105:8,17 | 87:1,20,23 |
| 149:4,12,16,20 | **jeceaca** 4:19 | 113:21 119:17 | 89:15 110:2,7 |
| 149:22 150:1,5 | **john** 4:15 | 121:7 123:14 | 113:10 114:15 |
| 150:8,9,10,11 | **jonathan** 4:11 | 131:12 147:5 | 115:5,10,13 |
| 150:14,19,22 | 8:9 | 147:15 148:6 | 116:3 117:5 |
| 150:23 151:1 | **july** 12:5 | 153:5 172:12 | 119:1,21 120:3 |
| 151:12 152:2,6 | **june** 12:10 | **knowing** 99:15 | 120:6,18 121:4 |
| 152:21 153:7 | **jury** 26:5,8 | 100:13 | 121:8 130:13 |
| 153:12 154:14 | 36:2 53:21 | **knowledge** | 130:20 132:6 |
| 154:20 155:2 | 62:1,4 | 16:1 67:18 | 134:20,22 |
| 156:4,8,13,19 | **justify** 32:6 | 68:5,11 144:7 | 135:13,22 |
| 156:23 157:1,1 | | 147:22 | 136:3,10 |
| 158:7,17 159:1 | **k** | **known** 30:11 | 140:11,19 |
| 159:7,13,16 | | | 142:12 154:8 |
| **iphone** 10:4,9 | **kasowitz** 4:11 | **l** | 154:17 157:3 |
| **ipr** 15:3,21 | 4:15,19 7:11 | | 158:7 161:12 |
| 16:2,15,19 | 8:11 | **l** 8:8 | 163:22 164:1 |
| 17:13,16 18:1 | **keep** 134:20 | **labeled** 131:6 | 164:18 165:3 |
| 18:2 114:8,12 | 171:10 | **lack** 145:16 | **large** 113:21 |
| **iprs** 16:5,12 | **keyword** 167:7 | **language** 27:18 | 175:6 |
| | **kin** 175:15 | 27:21 30:21 | |
| | **kind** 17:19 | 32:12 33:21 | |
| | 59:15 69:4 | | |
| | 92:3 95:11 | | |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[law - location]**                                            Page 22

| | | | |
|---|---|---|---|
| **law** 8:11 58:13 | 37:13 56:14 | **limitations** | 170:12 |
| **laws** 2:5 | 57:17,21 58:11 | 154:13 | **listed** 14:5 |
| **lawyer** 153:4 | 110:16 | **limited** 106:11 | **litigation** 8:13 |
| **layer** 39:18,18 | **lexicography** | 109:19 134:22 | **little** 31:21 |
| 40:1,2 149:8 | 24:12 25:8,16 | 142:15 | 40:20 51:9 |
| 149:11,18 | 25:21 26:9 | **limiting** 79:3 | 92:4 104:20 |
| 155:18,21 | 29:8 30:3 31:1 | 143:12 144:13 | 163:14 |
| 159:4,8,9,10 | 31:6,20 32:1 | **limits** 61:5 | **live** 63:8 |
| **layers** 149:6,7 | 32:17 33:17 | 78:10,15 | **llc** 1:7,8 6:22,23 |
| 155:16,17 | 34:5,16 35:3 | **line** 33:19,20 | **llp** 4:12,16,19 |
| **layperson** | 35:11 37:19 | 33:20 57:1,16 | 7:11 8:11 |
| 68:12 | 45:17 46:9 | 58:11 76:9 | **load** 130:7,7 |
| **leading** 2:11 | 50:13,19,20,23 | 77:3,4,5,5,7,7 | 136:7,8,23 |
| **leaf** 40:19 | 51:20 54:18 | 77:12,13 78:18 | 137:1,9,10,20 |
| **legal** 22:7 | 55:8 57:2 | 81:6 82:14,16 | **located** 8:23 |
| 24:18 52:3,4,8 | 126:1 | 104:14 110:7,8 | 63:23 64:13 |
| 54:16 56:12,19 | **light** 50:10 56:8 | 115:17,19 | 66:2 78:20 |
| 57:23 69:5 | **likely** 88:16 | 118:3 121:12 | 84:14 160:3 |
| 172:23 | **likewise** 36:13 | 133:20 162:11 | **location** 9:2,9 |
| **length** 151:5 | 37:14 88:11 | **lines** 30:6 32:11 | 49:6,19,20,21 |
| **level** 36:12 | 109:4 131:11 | 32:13 33:18,19 | 50:3,3,6,9,12 |
| 41:12,14 42:20 | 145:2 | 33:20 34:19 | 50:15 51:7,12 |
| 54:17 55:7 | **limitation** 29:9 | 38:1,13 43:1 | 51:13,18 52:11 |
| 162:9 | 81:16 86:11 | 44:5,8,14,21 | 52:14,17,20,23 |
| **lexicographer** | 104:4 116:4 | 46:4,6,18 | 52:23 53:7,8,9 |
| 23:9,16 26:2 | 119:19 129:13 | 59:11 61:20 | 53:12 54:3,10 |
| 28:13 37:23 | 130:2 134:15 | 62:9 63:7 | 54:10,13,22,23 |
| 46:2 51:1,6 | 136:15 137:12 | 80:14 83:5 | 55:2,13,14 |
| 54:12 107:11 | 137:16 141:4 | 107:15,16 | 57:7,8,13 |
| 108:5 152:13 | 142:3,15 | 108:15 115:20 | 58:19,21 59:21 |
| **lexicographic** | 143:18 144:1 | 118:12 125:3 | 59:22 61:12,13 |
| 56:17,21 58:8 | 145:3 148:13 | **list** 65:1,4,12 | 61:16 62:2,10 |
| **lexicographical** | 154:3 161:8 | 65:15,15 84:16 | 62:17,20,21 |
| 31:12 32:7 | | 84:21 152:22 | 64:7 65:10,10 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[location - meaning]                                      Page 23

| | | | |
|---|---|---|---|
| 65:19,20 69:10 70:2,6,7,11,12 70:16,18,21,22 71:5,14,14,15 71:17,18,20,22 74:7 75:5,20 75:21 76:20,21 76:23 77:11,15 77:20 78:10,10 78:15,16,21 79:2,4,18 80:2 80:13,14 81:2 81:2,9,13,17,17 81:22 82:1,7,9 82:14,16,20 84:23 85:1 92:11 93:10,18 94:8 95:5 96:12,12 97:11 97:12 98:5,5 102:18 103:7 103:16,17 **locations** 61:7 64:6,20,21 65:7,14 75:14 77:8 78:2,7 79:10,11 80:9 80:18 83:7 84:1,2,17 85:3 85:6 88:15 92:22 93:1,18 94:9 104:6 150:3 | **lodge** 76:16 78:5 **lodges** 64:4,17 76:11 77:23 78:2 83:9 104:17 **logical** 127:4 **logically** 138:8 139:15 **long** 69:17 99:9 128:22 129:4 172:3,13,17 **look** 22:20 37:1 46:5 60:10 63:6,21 64:10 65:5 101:12 123:2 143:2 167:1,7,18 169:16 **looked** 16:11 17:17 46:19,21 81:5 90:3 117:1 **looking** 21:6 24:5 77:2 108:14 121:11 136:11 145:2 160:18 163:6 **looks** 48:1,3 **lookup** 122:6 122:14 **los** 5:2 **lost** 12:16 96:3 | **low** 88:2,5,12 90:17 93:1 **lunch** 141:9,11 | | **mathematical** 126:6 127:13 **mathematics** 126:13 **matter** 6:22 8:13 10:13,23 11:4,11,14 13:22 14:18 22:4 43:13 146:9 170:23 171:5,8,9 173:8 **mckool** 5:1 **mean** 30:11 31:13 40:12 51:17 58:10,21 59:3,6,21 63:5 63:5 68:22 69:14,21 71:21 83:19 94:1,12 94:14,16 95:9 97:16 111:9 112:9 116:9 124:17 127:12 127:12 129:9 130:3 135:16 137:17 138:11 146:15 151:10 156:8,18 159:22,23 160:1 172:21 173:14 **meaning** 22:12 23:6,17,23 |
| | | **m** | |
| | | **m** 8:8 **made** 2:10 24:21 52:11 112:16 140:21 150:11,14 **main** 72:7,16 **major** 41:15 42:7 **make** 2:13 15:18 64:21 94:20 98:1 139:5 **makes** 128:10 142:6 **making** 95:1 **manner** 13:3 18:23 175:16 **mappings** 121:18 122:4,7 122:10 **march** 113:8 115:2 135:23 140:17 **marked** 10:21 11:6 29:13,17 47:17 48:10 105:6,13 114:2 122:22 123:6 147:18 148:2 | |

Michael Goodrich                                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[meaning - necessary]                                                    Page 24

24:10,14 25:6
25:7,8 49:11
50:2,6 52:1
59:6 63:6
100:4 101:2
106:7,11
107:20 125:10
125:20 127:15
135:13 144:19
144:23 146:2,6
146:22 148:18
168:5
**meanings** 25:3
**means** 52:12
57:8 59:5
65:14,20 71:9
71:11 82:7
83:18,21 85:22
87:13 98:16
99:2 122:9
128:17 144:20
144:22,23
145:9 162:7
175:8
**media** 6:20
**medication**
8:19
**meet** 66:9
171:21
**meeting** 172:1
172:8
**memory** 125:12
125:13,14
129:18 133:7,9

147:14 164:11
**mention** 17:12
41:20 164:21
**mentioned**
15:21 17:10,14
20:11 21:22
30:4 56:9 79:9
153:2 162:20
163:8 169:23
**mentions** 15:8
15:13 19:9
143:19 156:15
156:23
**message** 106:2
106:13 112:5
112:10,12
115:15 116:11
117:7,15,20
118:8 119:20
119:23 120:14
120:22 121:17
121:23 122:3,9
122:18
**messages**
110:13 111:1
118:6,14
**met** 171:18,20
172:3
**metes** 128:15
129:11
**method** 143:6
157:13 158:4
**methods**
157:14

**metric** 96:23
**metrics** 94:17
95:23,23 96:21
**michael** 1:17
6:7,21 7:19 8:7
174:7
**microsoft**
131:12
**miles** 64:8
**mind** 40:4
124:13 170:10
**minutes** 95:15
141:8
**mischaracteri...**
128:1
**misunderstand**
42:11
**misunderstan...**
127:11
**mobile** 53:8
63:16
**model** 155:16
**moment** 29:13
113:15
**monday** 99:11
**month** 12:5
**months** 95:14
170:19
**morning** 6:11
8:3,4
**morse** 1:21 4:7
6:1 7:6 175:4
175:20,22

**motels** 64:3,17
83:9 104:16
**mount** 66:6,19
**mouthful**
130:11
**move** 59:14
63:9 71:20
165:20
**moved** 70:21
71:13
**moving** 59:1
60:4
**muddies** 119:6
119:13
**multiple** 61:16
118:5 121:17
122:17 131:3
149:14 150:3
**multitude**
55:11

**n**

**n** 3:1
**name** 7:4 8:6,9
17:20,22 133:4
**narrow** 52:16
162:16
**necessarily**
21:18 39:12
41:10 51:11
65:4,15
**necessary** 2:9
54:8 60:17

Michael Goodrich                                   August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**need**  13:7,15
  35:23 39:6
  71:10 77:17
  83:20 97:15
  147:12,13,14
  154:4 166:18
  167:1
**needs**  103:21
**negative**  116:4
  141:4
**neither**  175:14
**network**  91:18
  92:6 148:14,15
  148:21,22
  149:7,8,15,18
  150:7 151:17
  152:3,14,20
  153:7,12,18,19
  153:20 154:2,6
  154:9,10,11,12
  154:13,16,19
  155:1,7,16,18
  155:20,21,22
  156:2,7,9,10,11
  156:12,12,16
  156:16 157:2
  158:14,17,23
  159:3,10,15,18
  159:23 160:4,4
  160:15,19,23
  161:1,2,3,4
**networking**
  21:9,14

**never**  90:18
**nevertheless**
  55:8 80:5
  155:14 168:18
**new**  4:20,20
  48:5
**nicole**  7:13
**node**  106:3,7
  121:18 122:4
  122:10
**non**  79:16
  163:12,19
  164:4,13 165:1
  165:17
**nonsensical**
  69:4
**notary**  1:23
**notation**
  107:11
**note**  6:14
**notes**  172:7
**notice**  2:17
**november**
  19:10
**number**  1:5
  11:5 12:19
  18:10 29:16
  47:18 48:7,9
  76:1 80:18
  96:21 105:12
  114:1 122:23
  123:5 147:19
  148:1 150:22
  150:23 151:2,5

152:1,4,5,6,9
159:8,13,17
**numbers**  14:10
  19:8 125:7
  151:21 159:8
  162:11

**o**

**o**  8:8,8
**oath**  172:16
**object**  18:20
  21:17 22:13
  24:2,17 35:5
  35:16 37:20
  39:4 40:10
  43:8,14 44:15
  47:3 50:4,16
  51:8 52:2,6
  53:2,14 54:4
  54:14 56:2
  60:6 61:8 63:3
  67:13 68:20
  69:12 70:8,23
  72:22 73:20
  74:22 75:7
  78:11 83:16
  86:6,17 88:7
  89:1 90:2,8
  91:2,8 92:1,13
  93:12,20 95:7
  96:14 97:13
  98:7 101:21
  102:19 103:19
  104:8 109:16

116:21 120:2
121:2 134:16
140:7 143:14
146:13,19
153:21 155:3
164:20 166:5
166:21 167:15
168:2 169:7,22
173:13
**objection**  25:10
  25:19 68:8
  87:4 89:17
**objections**  2:10
  2:13 146:20
**occupancy**
  88:19
**occur**  139:11
  139:20
**occurred**  12:3
**occurring**
  175:13
**occurs**  139:21
  159:9
**offer**  20:18
  26:12 28:1,5
  28:11 29:7
  30:2 55:22
  57:11 60:14
  68:6 75:19
  106:6 111:23
**offered**  2:15
  21:3 28:22
  56:5 57:12
  58:4 68:1

Michael Goodrich                                                August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[offering - ordinary]                                                    Page 26

| | | | |
|---|---|---|---|
| **offering** 30:16 | **ones** 156:5 | 58:1,13 60:8 | 46:23 49:11,16 |
| 32:4 49:11,15 | **open** 9:22 | 62:8 69:1 70:9 | 53:10,15,23 |
| 53:10 54:1 | 10:16 | 71:3 80:4,13 | 54:1,11,13 |
| 58:14 62:21 | **operate** 42:20 | 81:1 82:13 | 66:15 68:1,5 |
| 83:17 89:23 | **operates** 41:16 | 84:4 85:22 | 74:6 75:3 |
| 106:16 116:6 | **operating** 29:2 | 86:1 89:22,23 | 83:17 91:21 |
| 120:20 124:2,7 | 31:8,14 34:9 | 90:6,10 92:10 | 106:6,9,17 |
| 126:10 134:12 | 34:16,22 36:20 | 98:23 99:4 | 107:2,4 111:23 |
| 148:18 160:6 | 39:14 40:22 | 103:14 107:10 | 116:6 120:18 |
| 160:15 | 42:22 43:21 | 107:19 108:4 | 120:21 124:2,7 |
| **offers** 14:6 | 44:17,23 | 109:22 112:7 | 124:8,12 |
| **office** 9:5 84:8 | **opine** 21:7 | 112:15,22 | 134:12 143:11 |
| 99:10 100:16 | 26:12 66:21 | 116:12 117:3 | 144:12 145:15 |
| 102:5 103:5 | 69:6 75:1 | 118:19 120:11 | 148:18 154:12 |
| **oh** 61:22 76:6 | 89:19 120:17 | 124:16 128:18 | 160:6 167:23 |
| 130:22,22 | 128:22 133:11 | 130:1 137:5,15 | 168:14 169:4 |
| 131:5 147:10 | **opined** 124:21 | 139:19 140:9 | 170:1,8 173:7 |
| 162:18 | **opining** 18:4 | 142:14,21 | **opposed** 53:8 |
| **okay** 45:10 | 21:20 39:9 | 143:3,16,17 | 162:1 |
| 66:14 80:11 | 65:3 89:20 | 144:1 148:22 | **oral** 1:16 6:8 |
| 91:17 98:1 | 106:20 154:16 | 152:12,18 | **order** 26:8 37:2 |
| 104:22 105:3 | 156:17 157:2 | 153:11 156:1 | 39:7 44:18 |
| 111:16,22 | 168:5 | 159:21 163:3 | 103:17 119:17 |
| 113:9 114:13 | **opinion** 20:23 | 167:14 | 139:8 168:8 |
| 119:4 120:20 | 28:1,12,16 | **opinions** 11:10 | **ordering** 138:1 |
| 122:21 130:11 | 29:7 30:2 32:6 | 11:13 14:7 | 138:11,16 |
| 132:1,4 137:14 | 32:18 34:8 | 16:14,21 18:12 | 139:1,4,10,19 |
| 141:12 142:5,9 | 36:1 43:9,16 | 18:14 21:3 | **ordinary** 20:16 |
| 145:14 148:5 | 44:3,7 49:20 | 27:1 28:1,6 | 20:19 21:1,15 |
| 151:14 159:21 | 50:1,5,14 51:7 | 31:20 32:1,4 | 21:20 22:12,20 |
| 171:20 | 51:9 52:22 | 32:16 33:2,9 | 23:6,11,16,22 |
| **once** 84:20 | 54:18,19 55:1 | 33:14,17 34:4 | 24:5,14,15 |
| 105:8 | 55:22 57:1,5 | 35:11 38:9 | 25:3,6 27:4 |
| | 57:11,16,22 | 43:11 45:14 | 30:8,23 31:5 |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[ordinary - paragraphs]**                                    Page 27

| | | | |
|---|---|---|---|
| 31:11 32:9 | 134:1 137:21 | **p** | 27:17 28:11 |
| 35:18 36:3,7 | 138:15 139:7 | | 30:5 32:14 |
| 37:12 38:2,21 | 144:19 149:23 | **p.m.** 45:8,11 | 34:12 41:20 |
| 43:19 50:2,6 | 150:4,6 152:10 | 105:1,4 141:16 | 43:18 44:4,9 |
| 50:10 51:16,23 | 158:10 163:10 | 141:20 174:8 | 44:11 47:11 |
| 52:15 53:18 | **organized** | **packet** 162:6,6 | 48:18,21 49:13 |
| 54:20 55:9,17 | 149:7 | 163:17 164:18 | 49:19 55:16 |
| 57:4,6,18 | **original** 126:17 | 164:19 | 61:18,19 77:2 |
| 58:18 59:6 | **originally** | **packets** 94:13 | 77:5 101:5 |
| 60:18 61:14 | 132:14 | 149:10 160:2 | 105:16,19 |
| 62:18 69:23 | **osi** 155:15 | 160:16 161:9 | 112:3 117:8 |
| 70:15 75:10 | **outlined** 52:4 | 162:1,2,14 | 118:3 123:13 |
| 76:12 77:14 | **output** 124:18 | 163:4 164:1,8 | 123:16,21 |
| 78:1 81:23 | 125:21 126:21 | 164:10,22 | 124:21 129:22 |
| 83:19 84:5,10 | 127:6 128:10 | 165:14 | 130:15 131:15 |
| 84:21 85:20 | 138:18 | **page** 3:4,10 | 131:16,17,17 |
| 86:12 87:12 | **outside** 43:15 | 14:4 15:19 | 131:18,18 |
| 88:9 89:4 | 67:13,22 68:8 | 24:12 25:5 | 132:1,2 133:11 |
| 90:11,20 92:21 | 71:1,4 74:20 | 114:6,14 | 134:9 135:5,14 |
| 93:4,7,15 94:6 | 78:12 87:4 | 131:10,20 | 137:13 140:5,9 |
| 95:2 96:10 | 91:9 97:19 | 139:19 153:9 | 142:7,18 143:4 |
| 97:9 98:2 99:5 | 154:18 155:5 | 165:9 | 147:3,11 148:6 |
| 99:14,20 | 159:12 | **pages** 113:3 | 153:2,11,16 |
| 100:12,18 | **overlook** | 165:10 169:16 | 154:7 156:22 |
| 101:2,10 102:1 | 170:11 | **paid** 170:22 | 157:4,16,18 |
| 102:6,16,22 | **overly** 26:6 | **panel** 66:5,18 | 158:12 159:19 |
| 103:11,22 | **own** 23:9 26:1 | 75:12 76:18 | 160:13,21 |
| 108:12 110:14 | 26:20 37:22 | 77:1,9,18 | 162:20 163:2 |
| 112:8,19 117:2 | 46:2 135:18 | **paragraph** | 163:16 164:2,6 |
| 120:5 121:9 | 149:4 169:11 | 14:8 15:7,13 | 164:16,17,22 |
| 125:20 126:3 | **owner** 16:10 | 17:10,12 18:6 | **paragraphs** |
| 126:19 127:14 | 17:20 | 19:9 20:18 | 29:5 45:21 |
| 128:4,14 129:2 | | 21:22 23:14,20 | 57:10,22 |
| 129:14 133:12 | | 26:11 27:9,13 | 130:20 131:4 |

Michael Goodrich                                      August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[paragraphs - patent]**                                      Page 28

132:8 153:1,10
161:22 173:1
**parentheses**
28:18,19 30:10
108:17,19
**park**  64:3,17
75:21 76:11,16
77:23 78:2,4
83:9 104:16
**part**  15:3 17:3
38:19 44:6
68:23 69:15
72:1 90:7
93:23 100:20
108:15 112:16
115:14 119:23
120:7 124:18
125:21 126:20
126:23 127:5
127:13,22
128:9 129:5
136:11 137:2
142:11 143:6
143:17,19
144:3 145:17
145:18,19
153:14 159:7,7
159:15 163:4
**parte**  17:1,5
153:5,10
163:11,18
164:4,13 165:1
165:4,16
169:13

**participants**
6:17
**particular**  82:4
96:22 101:7
139:11 151:8
**parties**  2:12
175:15
**partition**
124:16,17,22
125:9,20 126:4
126:8,14,19
127:1,2,4,9,17
127:19,23
128:6,11,12,15
128:16,20
129:8,12
132:18 133:1
133:15 134:7
137:18,22,23
**partitions**
128:7 129:19
129:22 130:3
132:15,16
133:14,14,23
135:1,2,3,7,9
136:18 138:1,9
138:12,17
139:2,17,20
140:1 145:4
**parts**  127:10
130:6 138:18
150:12,15,19
**passage**  37:10
38:1 59:10

76:7 110:4,6
110:18
**passages**  32:19
36:9 46:7
168:23
**past**  24:21
155:12
**patent**  3:12,13
3:14,15,16,17
8:13 14:10,16
16:10 17:6,11
17:20 18:9,15
19:3,6,7 20:6
21:13 23:2
25:12,22 27:9
27:14 28:6
29:11,14,21
30:1,5 31:23
32:6,11,20
33:5 34:20
35:2,19 39:11
41:12,21 42:1
42:11,17,23
43:3,6,12 45:3
45:15 46:15
47:9,10,15,18
47:22 48:1,3,7
48:15,23 49:16
50:11,22 51:5
52:18 53:1,5
53:13,20 54:21
55:3,12 56:1,5
56:15,18 57:3
58:19,23 59:11

60:2,10 61:5
61:17 62:13
65:5,19,22
68:17 69:2,9
70:5,20 71:13
72:1,5,14 73:4
74:8,11,19,21
75:11,22 77:22
79:9,20,22
80:6,9,18 82:5
82:22 83:21
84:11,19 85:6
85:13,19 86:2
87:8,9,11,16
93:3 94:23
95:5 96:13,17
97:17,19 98:14
100:6,17 102:3
102:23 103:10
103:15,21
104:6,7,10
105:7,11,15,20
106:11,17
107:4,22 110:3
111:1,7,20
112:1,17
113:19,23
117:13,18,23
118:13 121:13
122:23 123:4
123:10,18
124:7,12,22
125:7,8,15,22
126:2 127:3

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

| | | | |
|---|---|---|---|
| 128:9,19 | 16:6,18 17:7 | 23:10 24:4,15 | 133:23 137:20 |
| 129:16 132:23 | 17:23 18:3,6 | 27:3 30:8,23 | 138:15 139:7 |
| 132:23 133:13 | 18:18 20:20 | 31:5,11 32:9 | 149:23 150:4,6 |
| 134:14 136:16 | 21:2,8 22:3 | 35:17 36:3,6 | 152:10 158:10 |
| 138:21 139:3 | 107:8 168:4,7 | 37:12 38:2,21 | 163:10 |
| 142:4 146:9 | **path** 76:14 | 43:19 50:9 | **personal** 67:18 |
| 147:3,19,23 | **paul** 1:21 4:7 | 51:16 52:15 | **perspective** |
| 148:10 149:15 | 6:1 7:5 175:4 | 53:18 54:20 | 38:2 57:5 |
| 150:2 154:19 | 175:20,22 | 55:8,17 57:4,6 | **petitions** 16:7 |
| 155:1,6 156:1 | **pc** 63:13 | 57:18 58:17 | 17:14 |
| 156:2,21 157:6 | **pdf** 114:5,14 | 60:18 61:14 | **phone** 10:4 |
| 157:11 158:2,5 | **pending** 8:12 | 62:18 69:23 | **phrase** 37:9 |
| 159:12 161:15 | 13:17 113:17 | 70:15 75:10 | 45:16 52:13 |
| 161:18 162:16 | **people** 59:19 | 76:12,17 77:14 | 89:20 90:3,6 |
| 163:7 | 61:12 64:6 | 77:23 81:23 | 91:15 92:16 |
| **patented** | 65:7 70:17 | 83:19 84:5,10 | 110:15 144:4 |
| 157:14 | 71:21 75:19 | 84:21 85:20 | 154:16 157:2 |
| **patentee** 23:9 | 80:7 88:19,22 | 86:12 87:12 | **phrases** 49:4,5 |
| 23:15 24:8 | 94:15 95:19 | 88:9 89:3 | **phrasing** 146:6 |
| 26:1 28:12,17 | 96:5,21 98:20 | 90:11,20 92:21 | **physically** |
| 28:23 31:4 | 98:23 99:18,23 | 93:4,7,15 94:6 | 77:10 |
| 37:22 46:2 | 100:3,6 151:23 | 95:2 96:10 | **pieces** 98:11 |
| 51:1,5 53:11 | 159:11 | 97:8 98:2 99:2 | **place** 24:13 |
| 54:12 55:2,18 | **percent** 17:2 | 99:5,14,20 | 100:9 103:7 |
| 55:23 56:5,14 | **percentage** | 100:8,12,18 | 117:22 128:19 |
| 57:12 58:4 | 173:11,14 | 101:3,10,23 | 153:22 161:16 |
| 107:10 108:4 | **period** 69:17,19 | 102:4,6,15,22 | **placed** 73:13 |
| 112:22 118:19 | 69:19 71:19 | 103:11,22 | 74:2 77:10 |
| 124:22 126:10 | 87:16 95:11,12 | 108:12 110:14 | **placement** |
| 140:21 152:13 | 100:14 101:4 | 112:8,19 117:2 | 72:21 77:1 |
| 160:7,13 | **periods** 151:21 | 120:5 121:8 | **places** 76:1 |
| **patentees** 153:6 | **person** 20:15 | 127:14 128:4 | 99:17 156:21 |
| **patents** 14:7,20 | 20:19 21:1,15 | 128:13 129:2 | **plain** 22:11 |
| 15:1,4,9,12 | 21:20 22:20 | 129:13 133:11 | 23:6 25:3 59:6 |

Michael Goodrich                                        August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[plaintiff's - proceedings]**                                   Page 30

| | | | |
|---|---|---|---|
| **plaintiff's** 11:5 | 161:11 162:15 | 132:17 138:22 | **preliminary** |
| 29:16 48:9 | **pointed** 31:17 | **possibly** 126:20 | 16:10 |
| 105:12 114:1 | 64:11 | **potential** 56:9 | **premise** 32:2 |
| 123:5 148:1 | **pointing** 72:8 | 63:8 74:16 | **preparation** |
| **plaintiffs** 1:9 | 76:22 79:2 | 75:4 | 171:15,22 |
| 4:14,18,21 | 80:12 | **potentially** | **prepare** 171:14 |
| 7:11 8:12 | **popular** 155:11 | 88:22 90:18 | **preparing** |
| **platform** 59:1 | **port** 159:7,8,13 | **power** 74:12,12 | 14:22 |
| 60:5 | **portability** | 74:15 75:3,16 | **present** 5:5 |
| **please** 6:14 7:7 | 74:16 75:4 | 75:18,23 76:8 | 172:1 |
| 8:5 10:16 11:1 | **portion** 29:3 | 76:19 77:16,17 | **pretty** 97:3 |
| 13:4,8,11,15 | 31:15 34:10 | 78:3 | 99:19 117:23 |
| 29:10,14 47:14 | 36:21 43:22 | **preamble** | **previous** 63:21 |
| 86:21 105:7,9 | 44:16,20 61:4 | 119:14 143:3,5 | 81:14 82:2,11 |
| 123:2 147:17 | 113:19,23 | 143:12 144:9 | 170:19 |
| 147:20,21 | 132:9 140:4,15 | 144:12,13,16 | **previously** 96:1 |
| 163:18 164:3 | 142:22 143:18 | **precise** 31:21 | 165:22 |
| 164:12,23 | 143:23 147:4 | 57:1 127:16,23 | **principle** 52:3 |
| **plug** 75:17 | 158:17 159:1,2 | 128:3 129:11 | **prior** 2:15 |
| **plural** 42:18,20 | 160:4 161:7 | 162:15 | 16:12 17:18 |
| **plurality** | 164:16 | **precisely** 71:9 | **private** 83:14 |
| 136:18 138:9 | **portions** 33:8 | 110:7 | 91:20 92:9 |
| 139:17 143:8 | 38:6 53:4 | **preclude** 59:5 | 154:11 156:11 |
| 144:9,17,20 | 61:17 142:16 | **precludes** 60:3 | 156:16,23 |
| 145:5,8 146:1 | 144:13 173:4 | 116:18 146:10 | 160:3 161:1 |
| 146:1 | **position** 85:9 | 146:16 | **problem** 89:3 |
| **plus** 19:17 | 127:7 166:16 | **precluding** | 99:3,4 103:4 |
| **pocket** 10:5 | **positions** | 60:21 | 165:5 |
| **point** 32:5 | 127:18 133:3 | **preclusion** 61:2 | **procedure** 6:4 |
| 34:14 73:7,13 | **possible** 37:7 | **preexisting** | **proceed** 13:3 |
| 74:2 102:13 | 40:12 73:16 | 143:7 | **proceeding** |
| 108:2 117:23 | 77:16 88:23 | **preferring** | 13:18 16:5 |
| 130:15,16 | 89:2 94:18 | 156:3 | **proceedings** |
| 132:9,13 | 95:17 97:8,23 | | 1:16 6:9 15:3 |

Michael Goodrich                                                      August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[proceedings - questions]**                                        Page 31

175:7,12

**process** 130:8
133:9 136:6,8
136:22 137:1
137:10,19
140:12 143:8

**processors**
136:19 145:5,9
145:10 146:2,4
146:12,18

**produced**
175:9

**product** 173:6

**professor** 67:19
166:17 167:4

**prohibit** 59:4,7

**prohibiting**
60:21

**prohibits** 58:23
59:3 60:3,11

**proper** 32:10
36:17 37:5
41:17 54:9
65:9

**proposed**
155:13

**proposition**
135:6

**prosecution**
112:16 116:17
134:10,14
140:4,14

**protocol** 149:2
149:9,11,18

155:10 159:5

**protocols**
155:10

**provide** 14:19
23:10 25:6,7,8
26:8,14 29:2
31:15 34:10
36:20 38:2
43:22 49:19
51:6 77:8
85:20 86:2
103:16 157:5
173:12

**provided** 6:3
11:14 14:8
16:14,21 37:18
45:18 55:23
85:4 93:19
98:5 106:9
167:23

**provider**
108:16,17,22
109:2,3,5,10,11
109:14,14,21
109:22 110:10
110:11,21,22
112:10,11
116:14,14

**provides** 23:14
23:20 35:3
81:16 83:6
104:6 118:7
121:22 168:18

**providing** 51:2
76:19

**pst** 6:7

**public** 1:23
153:20,20
154:2,10
156:10,16
157:1

**publicly** 160:1
162:13

**pull** 113:20

**purpose** 167:3

**put** 64:22 98:11
126:14,18

**putting** 30:16

**q**

**qualifier**
156:10

**qualifies**
102:17

**qualify** 103:1,3

**quality** 6:15,16

**quantile** 86:3
86:15 87:3
89:11,16

**question** 9:3
13:5,7,12,17,18
22:14 24:20
29:12,23 32:3
35:6 39:1,7
41:6 52:8
53:22 54:16
56:12,19 59:3

60:1,7 62:6,7
66:22 67:15
68:3,15,15,21
69:3,5,8,13,15
69:18 72:11,23
74:23 78:13
79:1 81:19
82:11 83:23
86:19,20,21,23
89:14,19 91:4
92:5 93:13,22
94:16 95:8
96:4,15 97:6
98:9 101:17
108:10 109:18
111:8 113:17
116:11 117:17
117:22 119:4
119:15 120:17
121:3 125:17
126:2 128:21
132:5 146:14
150:21 151:10
154:22 162:10
164:5,12,15,16
165:18,20
166:22

**questioning**
45:14

**questions** 2:11
2:12 59:23
68:1 98:13,20
162:10 173:19
173:22 174:1

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**quick**  13:3 45:4
  141:9
**quite**  109:17
  117:21
**quote**  15:14
  28:18 108:19
  114:16 165:4
**quoted**  165:8

**r**

**r**  8:8
**range**  63:18
  73:14,18 74:3
  127:18 129:17
  138:23
**ranges**  127:7
  138:20
**rather**  37:8
  133:2 134:4,20
  135:1 141:1
**reach**  32:16
  37:2 38:9
  46:22 47:2
  50:14 52:22
  54:8 107:19,23
  108:4,9 115:9
  168:11
**reaching**  74:6
**read**  13:9 24:10
  28:18 29:1
  30:6,12 31:13
  33:11 34:8
  35:18 36:5,8
  36:19 43:4,20

58:18 64:18
  76:3,6,13
  110:18 111:3,3
  120:3 132:17
**readily**  93:8
**reading**  2:2
  47:8 75:11
  79:21 102:22
  168:6
**reads**  64:13
  66:2 108:15
  121:15 136:12
  136:16 137:12
**ready**  63:13
  81:10
**reaffirms**  122:5
**real**  83:13
**reality**  151:23
**really**  131:13
**reason**  33:7
  92:16 102:14
  114:3 115:4
  123:8
**reasonable**
  13:20
**reasons**  113:22
**recall**  11:16,22
  13:21 15:21
  16:2,6 17:6,15
  17:23 18:21,22
  19:5,20 20:1,3
  20:8 53:22
  54:6 89:18
  120:16 140:21

166:1,2 170:17
  171:1 172:3,13
**recalling**  12:2,6
  12:7,12 20:6
  20:12 39:19
  50:7 53:15
  115:7 166:6,10
  166:14 167:10
  170:20 172:17
**receive**  62:23
  63:18
**received**
  170:14,17,20
**recently**  67:2
**recite**  38:16
  158:6 169:1
**recited**  44:4
  53:12 60:4
  82:14,16 86:14
  93:17 95:4
  105:23 142:3
  142:12 143:23
  144:8 148:19
  148:23 154:9
  154:17 160:19
**recites**  22:3
  43:7,12 115:13
  138:6 145:3
  146:1 148:14
  154:2 161:8
**reciting**  82:8
**recollection**
  14:17 16:4
  18:2 19:19

20:5 115:10
  140:18 172:5
  173:1,3
**record**  6:12 8:6
  10:7 23:1 38:7
  45:2,5,8,12
  47:17 48:5
  104:19,21
  105:1,5 112:4
  141:14,17,21
  153:2 171:13
  174:4,8
**recorded**  6:19
  14:3
**recording**  6:15
**records**  138:8
  139:16
**recross**  173:20
**redwood**  4:13
  4:17
**reexamination**
  153:11 163:12
  163:19 164:4
  164:13 165:1,4
  165:16 169:13
**refer**  14:13
  100:6 126:7,22
  127:1 136:4,13
  152:20 157:16
  159:12
**reference**  55:11
  81:21 164:1,7
  164:9,18
  166:18

Michael Goodrich                                      August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[references - reporter]**                                    Page 33

| | | | |
|---|---|---|---|
| **references** | **regarding** 28:6 | 91:15,22 92:12 | 57:8,13 58:19 |
| 16:13 17:18 | 33:17 38:9 | 92:19,22 93:1 | 58:21 61:16 |
| 169:16 | **regards** 53:23 | 94:21 103:8 | 62:2,17,19,21 |
| **referred** 18:6 | 54:1 | **relevance** | 65:7,9,10,19,20 |
| 61:13 108:18 | **regularly** 166:3 | 97:17 | 70:1 71:15 |
| 108:23 109:5 | **reinforcing** | **relevant** 33:9 | 75:20,21 76:10 |
| 111:11 155:22 | 53:6 | 97:20 168:13 | 76:19,20 78:10 |
| **referring** 8:16 | **relate** 33:17 | **relied** 38:9 | 78:15,20 79:2 |
| 15:20 25:21 | 168:17 | **relocated** 68:19 | 80:13 81:2,9 |
| 30:18,19 38:8 | **related** 67:19 | 69:11 70:21 | 81:13,17,22 |
| 38:11 42:13 | 166:17 | **relocating** 70:5 | 82:1,7,8,14,15 |
| 53:6,7 54:22 | **relates** 50:14 | **rely** 115:1 | 82:19 |
| 55:13 59:16 | 97:1 106:10 | 125:2 167:22 | **remove** 113:17 |
| 62:2 64:6,12 | **relating** 2:6 | **relying** 16:15 | **renders** 85:11 |
| 75:12 76:5 | 11:10,13 14:7 | 31:23 32:16 | **repeat** 32:8 |
| 82:15 85:14 | 18:14 32:1,17 | 33:1,3 52:21 | 52:13 62:6 |
| 96:17 97:14 | 34:4 35:11 | 54:11 80:23 | 72:12 101:18 |
| 98:18,19,23 | 45:15 124:8,12 | 101:6 107:19 | 117:16 154:22 |
| 136:2,15 138:6 | 157:6 | 108:3,8,11 | **repeated** 13:7 |
| 138:14 139:22 | **relation** 54:13 | 113:2 133:19 | 45:20 146:7,23 |
| 147:9 149:16 | **relative** 83:14 | 140:14,16 | **repeating** 37:9 |
| 153:9,22 154:5 | 83:18,20 86:14 | 152:17 163:1 | 86:20 145:21 |
| 156:13,18 | 87:1,14,14 | **remember** | **rephrase** 13:13 |
| 159:6 164:23 | 88:4 93:9,16 | 130:23 | 20:2 72:11 |
| 165:12 | 94:1,4 | **remote** 6:6 49:6 | **reply** 55:4 |
| **refers** 30:21 | **relatively** 49:7 | 49:19,20,21 | 106:23 107:7 |
| 41:1 42:17 | 59:17 78:21 | 50:2,3,6,8,12 | 113:4,11 |
| 54:22 55:12 | 79:6,15 82:23 | 50:14 51:7,12 | **report** 45:22 |
| 85:14 100:3 | 84:2 85:1,10 | 51:13,18 52:11 | 131:4 140:6 |
| 149:15 156:9 | 85:14,22 86:4 | 52:14,17,22,23 | 147:4 166:13 |
| **reflect** 35:14 | 87:10,20 88:11 | 53:7,8,9,12 | 169:1 |
| 42:10 | 88:12 89:6,10 | 54:2,10,10,13 | **reporter** 1:21 |
| **refrain** 10:7 | 89:15,20 90:4 | 54:22,23 55:2 | 1:22 6:1 7:5,8 |
| | 90:10,14 91:1 | 55:13,14 57:7 | 13:8 92:2 |

Michael Goodrich                                August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

| | | | |
|---|---|---|---|
| 175:4 | residence 83:14 | 104:15 | 109:7,15 |
| **reporter's** | **resource** 166:3 | **restricted** | 112:17 113:11 |
| 175:1 | 166:12,19 | 61:11 | 113:12 114:18 |
| **represent** 7:8 | **resources** | **restricting** | 115:3 116:2 |
| 10:20 48:6 | 166:19 167:5 | 82:19 | 130:23 131:5,9 |
| 113:19 151:7 | **respect** 15:4 | **restrictions** | 133:18,21 |
| 151:16,17 | 16:5 23:1 | 128:19 | 134:11 135:11 |
| **representing** | 37:15 39:9 | **result** 175:16 | 135:23 138:10 |
| 7:11 | 51:12 53:16 | **return** 160:23 | 141:19 149:1 |
| **represents** 8:11 | 138:23 149:10 | **revealed** 99:16 | 156:14 173:19 |
| 175:11 | 151:18 159:4 | **review** 11:1 | **rise** 54:17 |
| **reproduce** | 169:13 | 14:23 16:20 | **rises** 55:7 |
| 135:21 | **respectfully** | 17:5,5 19:14 | **role** 118:7 |
| **reproduced** | 165:15 | 71:23 147:20 | 167:4 |
| 113:10 136:3 | **respective** | 168:8 | **room** 9:3,7,13 |
| 148:9 165:3 | 18:19 | **reviewed** 15:1 | **root** 27:22 28:2 |
| **reproduction** | **respectively** | 15:2,8,11,14 | 28:8,13,17,19 |
| 27:14 48:22 | 106:22 165:15 | 16:3 17:14,16 | 28:23 30:3,7,9 |
| 123:18 | **respond** 19:3 | 18:1,2,9 19:10 | 30:13,19,20,21 |
| **request** 106:22 | **responding** | 19:12 20:3 | 31:2,12 32:7 |
| **requesting** | 13:5 | 33:12 74:7 | 34:7 35:4,15 |
| 165:15 | **responses** 16:9 | 83:4 | 35:21 36:5,15 |
| **require** 60:8,12 | 16:10 167:8 | **reviewing** 16:7 | 37:18 38:10 |
| 60:22 61:3 | **rest** 41:2,19 | 18:18 19:2,20 | 41:1,18 43:23 |
| 66:12,22 68:3 | 56:8 64:1,15 | 20:8 | 45:16 46:10 |
| 68:16 75:1 | 77:22 83:7 | **rid** 94:5 | 50:22 51:2 |
| 81:20 97:21 | 91:20 92:9 | **right** 9:4,17,18 | 55:16,19,23 |
| 116:22 | 99:17,19 103:1 | 9:23 10:3 | 56:6 |
| **required** 137:8 | 104:14 | 21:12 24:1,3 | **route** 148:15 |
| **requirements** | **restaurant** | 33:22 34:12 | 159:18,23 |
| 66:10,16 | 88:18 102:9 | 37:3 58:5 59:7 | 160:2,15,16,19 |
| **requires** 37:1 | 103:2 | 64:23 71:12 | 161:1 162:12 |
| **reserve** 173:19 | **restaurants** | 82:17 87:21 | 162:14 163:4 |
| | 64:2,15 83:7 | 88:2 100:3 | 165:5,6 |

Michael Goodrich                                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[router - sent]**                                                   Page 35

| | | | |
|---|---|---|---|
| **router** 72:7,16 | 79:14,19 80:1 | 43:15 53:11 | 26:16 30:18 |
| 78:19 81:11 | 81:15,18,20 | 54:2 60:9,19 | 31:3 36:4,7 |
| **routing** 162:1,5 | 89:9 101:14 | 67:14,22 68:9 | 41:21 60:11 |
| **rudimentary** | 102:21 103:20 | 69:22 70:3,3 | 66:7 106:4 |
| 68:11 | 103:21 108:12 | 71:1,4,11 | 114:11,14 |
| **rule** 40:4 | 119:15 122:2 | 78:12 79:3 | 115:21 118:9 |
| **rules** 2:6 6:4 | 132:20 135:1 | 84:9 86:11 | 121:19 133:16 |
| 12:19 13:2 | 137:6 146:22 | 87:5 91:9 | 143:9 144:20 |
| **run** 73:10 | 153:6 159:14 | 97:19 98:13 | 145:6 153:1 |
| **running** 9:16 | 168:12 | 100:16 103:7 | **seeing** 30:9 |
| 9:18,19 | **says** 30:6,11,14 | 103:11,23 | 54:7 |
| **rural** 61:13 | 41:15 42:5,19 | 104:3 107:1 | **seem** 26:5 |
| 64:2,16 75:14 | 44:17 63:7,22 | 112:21 118:20 | 55:22 58:5 |
| 76:10 77:11,15 | 73:8 77:12 | 128:23 134:13 | 89:9 |
| 77:20,23 78:2 | 81:6 84:13 | 134:21 143:14 | **seems** 13:20 |
| 78:6 83:8 | 85:16 90:18 | 146:21 154:18 | 45:3 79:13 |
| 103:15 104:15 | 104:12,13 | 154:23 155:4,5 | 89:2 146:21 |
| | 110:9 111:2 | 156:3 160:7 | **seen** 6:17 25:11 |
| **s** | 112:5 118:22 | **screen** 6:18 | 26:3,6,7,21 |
| **s** 175:20 | 121:5 122:6,13 | 151:3 | 27:5 33:5 |
| **satellite** 66:6,20 | 127:4 136:22 | **screwed** 131:12 | **selecting** |
| 67:5,11 68:6 | 139:15 144:16 | **se** 46:14 | 137:17 |
| 75:18 78:19 | 154:5 | **search** 167:7 | **selection** |
| **satisfies** 90:14 | **scan** 114:11 | **second** 66:1 | 137:20 |
| **satisfy** 66:16 | **schematic** | 68:23 136:21 | **send** 132:21 |
| 82:20 91:15 | 68:13 | 154:22 161:2,4 | 133:1,4 134:5 |
| 92:19 104:3 | **science** 50:8 | **section** 20:14 | **sending** 132:18 |
| 129:12 | 67:19 100:5 | 22:6,7 45:19 | 133:2 134:4 |
| **saw** 19:16,17 | 125:8 126:8 | 52:4 66:2 | **sense** 63:2 |
| 37:9 | 167:4 | 113:7 131:16 | 64:21 116:9 |
| **saying** 31:7 | **scientist** 96:9 | 132:8 172:22 | 128:3 139:6 |
| 42:9 53:17 | **scope** 23:21 | **sections** 130:13 | 142:7 |
| 65:11 70:19 | 24:9 25:14 | **see** 14:5 15:16 | **sent** 149:10 |
| 75:9,10 79:13 | 39:10 41:11 | 21:11 22:7 | |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[sentence - smith]**                                        Page 36

| | | | |
|---|---|---|---|
| **sentence** 21:6 | **shared** 133:7 | **simultaneously** | 57:18 58:18 |
| 21:23 35:2,20 | **sharing** 136:6 | 142:15 143:18 | 60:18 61:14 |
| 35:22 36:4 | 136:22 | 143:23 | 62:18 69:23 |
| 38:5 63:21 | **sheet** 3:15 | **single** 35:2,20 | 70:15 75:11 |
| 66:1 81:5 | 113:20 | 52:21 61:10 | 76:12 77:14 |
| 121:15 122:5 | **sherman** 1:3 | **sir** 21:12 | 78:1 81:23 |
| 122:16 136:12 | 4:3 7:3 | **sit** 12:2,8,12 | 83:19 84:5,10 |
| 172:22 | **short** 100:9,14 | 20:7,12 39:19 | 84:22 85:20 |
| **separately** 19:6 | 101:4,16,20 | 115:7 124:6,14 | 86:12 87:12 |
| 19:7 49:6 | 102:8,9,17 | 143:15 166:6 | 88:9 89:4 |
| **serve** 23:9 26:1 | **show** 62:15 | 166:10,14 | 90:11,20 92:21 |
| 37:22 46:2 | 65:18 151:23 | 167:10 170:21 | 93:4,7,15 94:6 |
| **served** 137:12 | **showing** 9:20 | 171:1 172:17 | 95:2 96:10 |
| 137:16 139:5 | **shown** 72:1,18 | **sitting** 18:13,21 | 97:9 98:2 99:5 |
| 140:3 | **shows** 72:5,14 | 39:16 40:3 | 99:14,20 |
| **server** 160:22 | **side** 160:10 | 60:23 66:14 | 100:12,18 |
| **service** 63:13 | **sign** 11:17 | 68:4 75:2 | 101:11 102:1,6 |
| **set** 29:1 31:2,13 | **signal** 63:1,8,18 | 124:11 130:21 | 102:16,22 |
| 34:8 36:19 | **signals** 72:6,16 | 170:11,18 | 103:12,22 |
| 40:8,12,13 | **signature** 2:2 | 172:12 | 108:13 110:14 |
| 41:6,18 43:20 | 175:19 | **six** 45:18 | 112:8,19 117:3 |
| 69:7 88:18 | **signed** 173:8 | 140:17 | 120:5 121:9 |
| 126:13 | **significance** | **skill** 20:16,19 | 127:14 128:4 |
| **sets** 126:7 | 137:4 | 21:1,15,20 | 128:14 129:2 |
| **setting** 120:12 | **signifier** 65:13 | 22:20 23:11 | 129:14 133:12 |
| 125:6,7 126:1 | **silent** 103:10 | 24:5,15 27:4 | 134:1 137:21 |
| **seven** 35:9 | **similar** 19:4 | 30:8,23 31:5 | 138:15 139:7 |
| 36:10 | 156:3 | 31:11 32:9 | 149:23 150:4,7 |
| **several** 31:17 | **simple** 97:3 | 35:18 36:3,7 | 152:10 158:10 |
| 77:22 | **simpler** 69:8 | 37:12 38:3,22 | 163:10 165:11 |
| **share** 9:20 | 98:2 | 43:19 50:10 | **smaller** 134:6 |
| 29:11 47:15 | **simultaneous** | 51:16 52:15 | 151:21 |
| 147:7 | 142:3 | 53:18 54:21 | **smith** 5:1 7:13 |
| | | 55:9,17 57:4,6 | |

Michael Goodrich                                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[sneaky - states]**                                                    Page 37

sneaky  96:23
sniff  94:13
software  9:16
  9:22 10:8
solar  66:4,18
  74:12,15 75:3
  75:12,18,23
  76:8,18 77:1,9
  77:17
solely  37:19
  117:8 120:23
somebody  99:7
  102:4
sorry  35:7
  47:21 59:9
  60:16 68:22
  73:1 92:2
  93:14,22
  115:17 117:16
  117:22 135:17
  154:21 166:23
sort  89:11
sounds  52:8
  54:16 56:11,19
  58:13 60:23
  69:3 86:19
  98:12
source  68:13
  74:12 100:23
  106:1,3,12,13
  107:10 108:18
  108:23 109:3,6
  109:11,15,19
  110:9,20 112:6

115:15 116:1,8
116:19,20
118:22 119:20
120:1,5,8,15
121:1,4
sources  107:20
  109:13,20
  116:19 165:22
  169:3,4,6,19
space  66:5,19
speak  101:4
  132:13
speaking  42:2
special  130:7
  136:8 137:1
specialized
  23:7
specific  9:2
  32:5 33:8
  38:10 39:8
  51:11 55:20
  62:10 64:20
  71:5 73:7 76:4
  77:9 78:23
  85:5 86:3,15
  87:2 114:20
  115:5 126:2,23
  137:9 148:13
  151:5,19
  152:16 161:11
  162:11 168:9
  168:17,23
  169:15 170:6

specifically  20:4 29:6
  31:22 42:2,15
  50:23 130:16
  156:23
specification
  23:2 25:13,22
  31:3,19 33:4
  33:12 35:3
  42:5,10 46:20
  46:22 50:11
  51:15 55:3,10
  55:19 56:1,8
  57:19 61:5
  74:8 77:21
  79:22 80:19
  82:3 83:6
  84:13 85:4
  86:9,10 90:13
  92:18 107:22
  111:15 124:23
  128:19 140:13
  146:9 147:13
  149:14 150:2,3
  152:8 156:15
  161:19 163:7
  168:7,21
specifications
  168:13
speculate
  172:15
spell  8:5 25:22
spent  18:18
  19:2,6 102:10

172:11
spreadsheet
  171:12
stack  149:18
  159:5
stand  80:5
standard  21:1
  21:14,22
stands  149:2
  150:8
start  49:18
  107:9 130:13
  131:15 142:2,7
  163:21
starting  80:3
  132:5
starts  47:11
  172:23
state  64:3,17
  75:20 76:11,16
  77:23 78:2,4
  83:9 104:16
  160:14 175:2,5
statement
  21:19 36:19
  37:1
statements
  24:7 112:16
  130:4,8,14
  132:6 160:14
states  1:1 4:1
  7:2 122:23
  143:6

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[stationary - systems]**                                    Page 38

| | | | |
|---|---|---|---|
| **stationary** 61:6 | **stray** 58:14 | **substantively** | **sur** 106:23 |
| 63:16 | **straying** 58:10 | 108:6 110:17 | 107:7 |
| **stay** 99:9 | **structure** | **sufficient** 33:10 | **sure** 15:18 17:2 |
| **staying** 100:8 | 146:10,15 | 34:6 47:7 | 45:7 47:16 |
| **stays** 71:18 | **structures** | 60:16 66:18 | 72:13 73:8 |
| 101:4 | 125:13,13,14 | 81:3 107:23 | 76:6 94:14 |
| **stenographic** | **studied** 67:15 | 115:8 | 101:11 104:23 |
| 175:8 | 68:13 90:4 | **suggest** 141:9 | 113:16 118:2 |
| **step** 16:2 | **study** 68:2,3 | **suit** 21:8 | 119:10 130:19 |
| 125:16 138:2,5 | **sub** 132:19 | **suite** 4:12,16 | 138:14 141:15 |
| 138:6,12,13 | 133:8 136:18 | 5:2 | 151:9,10 154:1 |
| 139:9,13,14,21 | 143:8,20,22 | **summarize** | 154:23 174:5 |
| 139:23 142:10 | 144:3,5,8,9,17 | 165:13 | **surprised** |
| 145:15,20,21 | 145:5,9,10,15 | **summary** 21:23 | 101:13 |
| 146:6,22 147:1 | 145:19 146:1,2 | 165:14 | **swear** 7:9,16 |
| 157:16,21 | 146:3,3,11,11 | **sun** 66:4,18 | **sworn** 7:20 |
| **stipulated** 2:1,8 | 146:17,18 | **supervision** | **system** 29:2 |
| 2:16 | **subdividing** | 175:10 | 31:8,9,14 |
| **stipulation** 6:5 | 138:8 139:16 | **support** 33:11 | 34:10,17,22,23 |
| **stop** 56:20 59:5 | **subject** 22:3 | 34:4,15 35:10 | 36:12,20 38:17 |
| 59:20 80:8 | 43:12 | 38:6 47:5,7 | 38:20 39:3,8 |
| 91:20 92:9 | **submitted** | 58:17 61:17 | 39:13,15,17 |
| 99:17,19 | 10:12,23 11:4 | 81:1,16 132:9 | 40:1,5,23 |
| 102:18 103:2 | **subscriber** | 140:15 156:7 | 41:14,17 42:6 |
| 140:22,23 | 73:10 78:20 | 160:14 161:12 | 42:21,22,22 |
| 141:1 | **subscription** | 162:12 163:2 | 43:22 44:17,23 |
| **stopping** 141:6 | 81:8 | 167:17,23 | 59:1 60:4 61:6 |
| **stops** 64:2,16 | **subsequent** | 168:10,21 | 70:20 71:12,12 |
| 83:8 104:15 | 65:14 | 169:4,8 | 72:21 133:7 |
| **store** 40:21 | **subset** 126:23 | **supported** | **systems** 39:1,12 |
| **stores** 40:23 | **subsets** 126:9 | 32:19 167:13 | 39:17 68:18 |
| **storing** 36:11 | 126:15 | **supports** 80:12 | 69:9 |
| 36:14 42:6,19 | **substances** | 80:17,19 | |
| | 8:20 | 130:17 168:14 | |

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[t - think]**                                                    Page 39

| t |
|---|

**t**  8:7,8
**table**  122:6,14
   170:3
**take**  12:18 16:1
   45:4 52:9
   64:10 73:21
   81:4 83:4
   125:16,17
   140:23 141:9
   143:2 158:20
   172:7 173:17
**taken**  8:19
   24:13 45:9
   105:2 141:18
   175:7
**talk**  44:8,10
   75:23 100:10
   134:3 160:12
   169:9
**talked**  83:10
   138:17 159:4
**talking**  15:19
   39:9 40:16,18
   47:22 69:5
   75:13 95:14,18
   95:19 96:4
   97:2,18 119:17
   122:2 140:9
   152:23 155:17
   168:21
**talks**  76:8
   118:23 156:2

**task**  132:19
   136:18 143:22
   144:3,5,8
   145:5,9,10,15
   146:2,3,11,18
**tasks**  133:8
   143:8,20 144:9
   144:17 145:19
   146:1,3,11,17
**technical**  26:6
   26:23 166:18
   167:2
**technique**
   128:20 129:5
   129:10
**techniques**
   117:14,19
   121:17,22
   122:17
**technologies**
   67:20 166:17
**technologist**
   67:18
**technology**
   27:2 67:10,20
**tell**  90:19
   128:14 172:16
**tells**  85:17
**temporarily**
   68:18,22 69:10
   69:14
**temporariness**
   70:4

**temporary**
   69:18,21
**tend**  166:19
**term**  22:18,21
   22:23 23:12,13
   23:17,22 24:9
   24:10,13 25:5
   25:14,21,23
   26:4,5,7 27:3
   28:2,8,13 30:3
   34:5 35:21
   36:7,17 50:7
   50:21 51:13,22
   53:12,19 54:3
   57:13 58:3,19
   59:15 79:16
   80:4 81:12
   85:11,23 86:5
   87:19 95:20
   96:16,18
   101:23 102:14
   107:9 110:9
   111:23 112:7
   117:1,6 120:10
   124:15,16
   126:4 129:8,20
   130:18 143:22
   152:14 155:9
   159:22 160:8
   163:3 167:2,7
   168:17 169:6
**terms**  22:16
   23:4,5 24:23
   25:1 26:4 27:7

   35:22 49:12
   74:4 90:23
   91:6,10 105:23
   106:12,21
   123:23 124:3,9
   148:13,19
   168:5 169:12
**territory**  58:15
**test**  164:11
**testified**  7:21
**testimony**  8:21
**testing**  147:13
**texas**  1:2 4:2
   7:3
**thank**  8:9 48:2
   142:1 174:2
**thereto**  2:15
**thing**  16:23
   64:7 99:16
   108:12 154:19
   155:1
**things**  31:10,18
   42:6 102:23
   104:10,11
   122:3 155:15
   168:10
**think**  17:17
   45:2 59:4
   60:15,16 65:9
   69:1,22 92:15
   97:7 108:21
   109:1 113:12
   114:10 117:11
   119:5 127:11

Michael Goodrich                                        August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[think - trying]**                                              Page 40

| | | | |
|---|---|---|---|
| 131:2 141:5,11 | 141:16,20 | **took** 172:15 | **transferred** |
| 142:6 150:23 | 148:20 151:15 | **tools** 110:12,23 | 94:15 |
| 152:8 154:4 | 154:4,15 | **topic** 112:12 | **transient** 49:7 |
| 165:19 | 156:20 171:11 | 116:10 117:7 | 59:17,18 64:1 |
| **thomas** 5:5 7:4 | 172:10 173:17 | **track** 12:16 | 64:14 78:22 |
| **thought** 47:22 | 174:7 175:13 | 96:3 171:10 | 79:7,15 80:1,7 |
| 96:4 97:18 | **times** 12:14,20 | **tradition** 152:9 | 82:23 83:13 |
| **thousands** | 61:13 149:14 | **traditional** | 84:3,15 85:2,7 |
| 88:22 | 171:21 | 151:4 | 86:4 89:7 |
| **three** 14:14 | **today** 8:15,21 | **traffic** 49:7 | 91:22 92:12,20 |
| 22:6 72:18 | 8:23 9:9,14 | 59:17,19 64:1 | 94:22 98:19,22 |
| 104:13 172:6 | 10:6 11:9,12 | 64:15 78:22 | 99:2,2,5,7,12 |
| **threshold** | 12:3,8,13 | 79:7,15 80:2,7 | 99:18 100:2,8 |
| 85:17 86:3,15 | 18:13,22 20:7 | 83:1,13 84:3 | 100:21 101:1,3 |
| 87:15 89:6 | 20:13 39:16,20 | 84:15 85:2,7 | 102:3,5 103:8 |
| **tightly** 168:23 | 40:3 60:23 | 86:4 88:17 | 103:18 104:12 |
| **time** 2:13,14 | 66:14 67:21 | 89:7 91:23 | **treading** 61:2 |
| 6:12 18:17,22 | 68:4 75:2 | 92:12,20 94:22 | **treatises** 27:1 |
| 19:2,5,7 43:10 | 83:10 115:8 | 98:19,22 99:8 | **trending** 57:23 |
| 45:4,7,10 | 124:6,10,11,14 | 99:12,18 100:3 | **trial** 2:14 |
| 49:17 60:8,12 | 130:21 143:15 | 100:3,21 103:9 | **truck** 59:20 |
| 60:22 61:3 | 166:7,11,15 | 104:12 | 64:2,15 80:8 |
| 66:13,23 68:16 | 167:10 170:11 | **transaction** | 83:8 102:18 |
| 69:17,19,20 | 170:18,21 | 159:9 | 103:2 104:15 |
| 71:19 75:1 | 171:2 172:13 | **transceiver** | **true** 58:9 62:23 |
| 81:20 95:10,11 | 172:16,17 | 62:8 63:1,2,16 | 85:12 100:12 |
| 95:12 97:22 | **today's** 171:15 | 63:17 66:6,19 | 175:11 |
| 100:9,14 101:4 | **together** 31:10 | 72:6,15,20 | **truth** 172:16 |
| 101:16,20 | 55:10 75:18 | 73:3,9,12,17 | **truthful** 8:20 |
| 102:8,9,17 | 98:12 | 74:1 | **try** 37:7 58:14 |
| 104:19,23 | **told** 24:4 26:22 | **transceiver's** | 168:22 |
| 105:3 106:19 | 56:16 112:18 | 63:10 | **trying** 25:16 |
| 107:1,3,6 | 134:18 164:10 | **transcript** | 50:18 51:10,19 |
| 116:23 141:6 | | 175:9,12 | 55:15 79:12 |

Case 4:24-cv-00980-ALM    Document 82-11    Filed 09/09/25    Page 87 of 92 PageID #: 4480

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

[trying - understood]                                           Page 41

96:23 134:3
**turn**   20:14 27:8
47:10 63:12
82:21 114:5
118:2 129:20
135:14 137:11
147:2 159:18
**turning**   22:6
26:11 48:17
65:21 105:16
123:12 124:15
136:21 142:18
148:5,21
158:12
**turns**   140:23
**twenty**   21:22
**twin**   4:12,16
**two**   14:8 15:7
15:13 18:7
19:9 20:14
30:6 35:9
37:11 46:3
49:4,12 107:23
109:20 116:15
117:8 130:21
133:5 144:20
144:22,23
145:9,10 146:3
146:3,10,11,17
146:18 148:12
148:19 149:22
162:10 165:21
**type**   39:10
103:15 106:3,7

133:15 149:17
172:21
**typed**   173:2,3
**types**   39:11
121:18 122:4,7
122:10 149:20
**typically**
155:14 167:5
169:9
**typo**   131:5,11

**u**

**u.s.**   14:10 47:18
48:7 147:19
**uh**   173:15
**ultimate**
167:14
**ultimately**
173:6
**umbrella**   21:19
**unable**   102:16
**unambiguous**
54:20 117:11
**unambiguously**
55:13 57:7
58:20 59:22
61:15 79:10
80:10
**unchanged**
134:21
**under**   113:7
150:23 175:10
**underline**
27:18

**underlined**
27:21 49:4,6
49:12 105:23
154:6
**underlying**
27:2
**understand**
8:16 13:9,10
13:12 22:14,21
22:22 23:2,8
24:6 25:17,23
27:1 29:21
30:10 31:1,6
35:19 36:16
39:22 41:4
42:3,8 44:19
44:22 45:15
46:1,4,21
51:17,19 53:19
55:12,15,22
57:7 58:2,20
61:15 62:1
69:13,16 70:1
70:16 75:12
76:13 77:15
79:12,17 80:21
89:14 91:10
93:21,23 97:6
106:19 108:10
110:15 112:20
120:9 121:9
127:15 129:14
131:22 133:10
133:12 134:1

135:4 138:16
143:3 146:14
150:1,5 152:11
156:14 158:20
165:11
**understanding**
18:5 22:7,17
23:4,15 24:23
25:17 26:12,18
37:12 41:23
46:14 48:14
52:10 57:17
59:2 71:8 73:2
77:19 90:23
91:6,21 92:10
95:13 98:8,16
100:7 101:9
105:10 123:3
129:3 139:8
150:7 155:6
158:10 163:10
167:2 169:11
170:2 172:23
**understandings**
52:9
**understood**
22:23 23:12
24:9 25:2 27:3
30:12 31:11
34:2 36:1
37:21 38:4,21
43:20 50:9
52:15 55:18
81:22 110:2

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[understood - waived]**                                    Page 42

112:8 117:2
137:22
**unequivocally**
160:13
**unfortunately**
88:8
**union** 126:16
**unit** 72:6 73:4,9
73:11,18 78:20
**united** 1:1 4:1
7:2 122:23
**units** 72:15,20
73:12 74:1
**university** 9:6
**unmistakable**
24:7
**unprocessed**
137:18,23
**update** 106:2
106:13 110:12
110:23 112:5,9
115:15 117:15
117:20 119:22
120:13,22
**upload** 29:10
47:14 48:3
113:13 147:16
163:18 164:3
164:13,23
165:16
**uploaded** 47:23
147:6
**usage** 88:20
93:9,16 94:1,4

94:7,12,14
95:3,10,21
96:8,9,11,16,18
96:20 97:1,10
97:15,23 126:3
**use** 8:15 21:18
25:21 39:12
50:20 57:14,20
58:23 60:3
61:22 72:5,14
72:19 73:11,23
76:8 82:6
85:10 89:10
98:3 110:11,15
110:22 122:6
130:6 136:6,22
137:5,5,7,19
140:11 143:4
149:19 160:20
166:3,20 167:5
167:6 171:12
**used** 26:21 41:5
89:15 94:2
122:7,14
128:20 155:9
155:23 161:14
166:12 169:5
**user** 63:9,16
81:7 151:3
**users** 59:13
**uses** 68:19
81:12 110:6,8
121:16 122:17
137:19

**using** 10:5,7
40:6 50:18
96:21 110:1,3
152:20 155:15
156:7

**v**

**value** 86:3,15
87:2,3 88:11
88:12
**variety** 110:12
110:23
**various** 37:2
43:3 168:5
**ventures** 1:7,8
6:22,23 8:12
8:17 106:21
**veritext** 7:6
**version** 150:1,5
150:9,10,23
151:1 152:6
159:16
**versions** 149:22
**versus** 6:23
102:4
**video** 5:5 6:21
**videoconfere...**
6:6
**videographer**
6:11 7:5,15
45:7,10 104:23
105:3 141:15
141:19 174:5

**view** 86:13 87:1
129:4
**viewing** 40:15
**virtual** 154:11
156:11 157:1
160:4,16 161:3
161:3 165:6
**virtually** 6:15
**volt** 66:16
75:16
**volts** 66:3
**volume** 49:7
59:17 64:14
78:21 79:6,15
82:23 84:3,15
85:2,7 86:4
87:20 88:5,6
89:6,21,23
90:4,10,15,18
91:1,16 92:20
94:13,21 95:20
96:22 98:3,15
98:16,18,22
100:2
**volumes** 64:1
95:18 104:12
**voluminous**
58:16
**vs** 1:10

**w**

**wait** 13:4
**waived** 2:3,18

Michael Goodrich                                    August 8, 2025
Intellectual Ventures I LLC v. American Airlines, Inc.

**[want - zoom]**                                              Page 43

| | | | |
|---|---|---|---|
| **want** 15:18 | 163:7 | **words** 149:4 | **years** 69:22 |
| 39:21 40:4,19 | **web** 81:10 | 158:23 | 70:3 |
| 59:23 122:23 | **website** 9:20 | **work** 7:10 | **yep** 112:4 |
| 132:20,22 | 166:9 167:8 | 26:21 84:9 | 118:4 135:18 |
| **wanted** 142:2 | **week** 99:11,13 | 103:5 136:5,14 | 149:1 |
| 143:2 | **weekends** | 166:4 170:15 | **yesterday** |
| **water** 119:6,13 | 99:13 | 170:23 171:4,8 | 171:18,20 |
| **way** 22:22 | **weeks** 95:14 | 173:6 | 172:4 |
| 24:19 27:2 | **welcome** | **worked** 12:10 | **yesterday's** |
| 31:4 39:2 | 141:22 | **working** 11:20 | 172:1,8 |
| 40:14 46:1 | **went** 19:18 | 12:4 100:8 | **york** 4:20,20 |
| 51:13 52:18 | 33:13 153:15 | 172:11 | |
| 53:17 54:5 | 173:5 | **world** 83:13 | **z** |
| 55:5 58:5 61:9 | **wifi** 91:19 92:7 | **wrap** 45:14 | **zero** 87:11 |
| 68:10 69:8 | **wire** 73:10 | 141:9 | 90:16 |
| 76:14,17 78:4 | **wireless** 59:13 | **write** 172:19,21 | **zoom** 9:18 |
| 84:10 87:6 | 63:8,12 72:5 | **written** 73:22 | |
| 89:4 90:9,12 | 72:15,19 73:3 | 132:14 | |
| 90:19 91:12,12 | 73:9,11,13,17 | **wrote** 173:11 | |
| 94:23 99:15 | 73:23 74:2 | **x** | |
| 100:13,19 | **withdraw** | **x** 3:1 | |
| 102:21 103:9 | 29:12 | **y** | |
| 103:12,22 | **witness** 2:3 6:7 | **yeah** 17:9 48:1 | |
| 107:8 127:16 | 6:18 7:9,16 | 63:20 65:16 | |
| 127:23 132:12 | 45:6 104:22 | 99:1 101:22 | |
| 138:20 140:22 | 141:10 174:2 | 111:3 112:2 | |
| 140:23 141:1 | **word** 41:6 | 115:19 117:10 | |
| 150:20 151:2 | 61:22,23 62:3 | 122:20 130:22 | |
| 151:22 | 85:10 87:10 | 130:23 131:9 | |
| **ways** 118:5,7 | 94:5 110:3,8 | 132:11 135:17 | |
| 118:13,23 | 131:12 156:7 | 140:16,18 | |
| 138:22 152:7 | 164:9,21 | 146:21 147:10 | |
| **we've** 45:1 | 165:13 | 154:4 155:4 | |
| 104:19 143:19 | | | |

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.