# Exhibit N

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> AMERICAN AIRLINES, INC. <br><br> *Defendant*. | C.A. No. 4:24-cv-00980-ALM <br><br> **JURY TRIAL DEMANDED** |

**SUPPLEMENTAL REBUTTAL DECLARATION OF EYAL DE LARA**

I, Eyal de Lara, declare as follows:

1. My name is Eyal de Lara. I am the Chair of the Department of Computer Science at the University of Toronto where I have also been a professor since 2002.

2. If called to testify under oath in court, I could and would testify competently to the facts stated herein.

3. I have been retained by Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC ("IV") as an independent expert consultant in this proceeding. I have been asked to submit this supplemental declaration on behalf of IV.

4. I have been asked to provide rebuttal opinions regarding U.S. Patent Nos. 7,257,582 ("'582 Patent"), 7,949,785 ("'785 Patent"), 8,332,844 ("'844 Patent"), and 8,407,722 ("'722 Patent") (together, "Asserted Patents"), in response to the reply declaration of Michael T. Goodrich, Ph.D. dated September 9, 2025 ("Goodrich Reply Declaration"). My opinions are set forth below.

5. I am being compensated at a rate of $600 per hour for my work in this proceeding. My compensation is not contingent on the nature of my analyses and opinions, the presentation of my findings in testimony, or the outcome of this proceeding.

6. My opinions provided in this Declaration are based on my own personal knowledge and professional judgment. I am over 18 years of age and, if I am called upon to do so, I would be competent to testify as to the matters set forth in this declaration.

7. I previously signed a declaration providing opinions regarding claim construction of the Asserted Patents. I incorporate by reference the entirety of that declaration ("Rebuttal Declaration").

## I. QUALIFICATIONS

8. I incorporate by reference the Qualifications section provided in my Rebuttal Declaration.

## II. MATERIALS REVIEWED

9. I incorporate by reference the Materials Reviewed section provided in my Rebuttal Declaration. In forming the opinions provided in this supplemental declaration, I have reviewed the portions of the Goodrich Reply Declaration and Defendant American Airlines, Inc.'s ("American") Responsive Claim Construction Brief ("Responsive Brief") that relate to the Asserted Patents. To the extent the Goodrich Reply Declaration and Responsive Brief refer to documents regarding the Asserted Patents, I have reviewed those documents.

## III. LEGAL STANDARDS

10. I incorporate by reference the Legal Standards section provided in by Rebuttal Declaration.

### IV. PERSON OF ORDINARY SKILL IN THE ART

11. I incorporate by reference the Person of Ordinary Skill in the Art section provided in by Rebuttal Declaration.

### V. '582 PATENT

#### A. "partition" (Claim 1)

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| partition (claim 1) | Plain and ordinary meaning, no construction necessary | well-defined part of the input file |

12. In my Rebuttal Declaration at paragraphs 50-53, I explained why a POSITA would have understand that American's proposed construction of a "partition" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

13. I have reviewed the Goodrich Reply Declaration at paragraphs 41-45, and I disagree with Dr. Goodrich's opinions that a "partition" would be understood by a POSITA to mean a "well-defined part of the input file."

14. Dr. Goodrich argues that the phrase "in this context" would have been understood by the POSITA to refer to the context of the '582 Patent itself. Given that the specification discusses input as a single or multiple files (at 3:30), a POSITA would have understood this disclosure to refer to the example provided in Figure 1. For this reason and those reasons provided in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that American's proposed construction of "partition" is not the plain and ordinary meaning for this term.

3

B. **"descriptions of all of said partitions"**

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| descriptions of all of said partitions | Plain and ordinary meaning, no construction necessary | statements giving a characteristic(s) of all of the well-defined parts of the input file for use in distributing the load without a special load process, wherein such statements are distinct from the input file itself |

15. In my Rebuttal Declaration at paragraphs 54-58, I explained why a POSITA would have understand that American's proposed construction of a "descriptions of all of said partitions" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

16. I have reviewed the Goodrich Reply Declaration at paragraphs 46-49, and I disagree with Dr. Goodrich's opinion that a "descriptions of all of said partitions" would be understood by a POSITA to mean "statements giving a characteristic(s) of all of the well-defined parts of the input file for use in distributing the load without a special load process, wherein such statements are distinct from the input file itself."

17. Dr. Goodrich argument is based on the following text included in the '582 Patent file history: "With the instant invention as defined in the claims there is no such special process." Dr. Goodrich proposed construction is based on assumption that the invention requires the absence of such a special process in order to function, which is incorrect. Instead, a POSITA would have understood that the invention did not proscribe the use of a special process—it simply did not make it a requirement. Thus, consistent with the opinions provided in my Rebuttal Declaration, it remains my opinion that a POSITA would have understood that American's proposed construction of "descriptions of all of said partitions" is not the plain and ordinary meaning for this term.

4

C. **"on a first-come/first-served basis"**

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| on a first-come/first-served basis | Plain and ordinary meaning, no construction necessary | selecting the earliest unprocessed partition for execution without the use of a control process that uses load information for such selection |

18. In my Rebuttal Declaration at paragraphs 59-62, I explained why a POSITA would have understand that American's proposed construction of a "on a first-come/first-served basis" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

19. I have reviewed the Goodrich Reply Declaration at paragraphs 50-55, and I disagree with Dr. Goodrich's opinion that a "on a first-come/first-served basis" would be understood by a POSITA to mean "selecting the earliest unprocessed partition for execution without the use of a control process that uses load information for such selection," where whether "a partition is the "earliest" unprocessed partition would have been determined by the ordering of the partitions determined in step (a) of claim 1."

20. Dr. Goodrich misunderstood and/or misconstrue the argument I made about the use of a scheduler of the "four-way stop example" provided in the file history. These arguments apply to how dynamic information and/or a scheduler can be used to both determine the next partition to process based on real-time information. For the reasons provided above and in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that American's proposed construction of a "on a first-come/first-served basis" is not the plain and ordinary meaning for this term.

5

### D. "simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions"

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions | Plain and ordinary meaning, no construction necessary<br><br>Not indefinite | Indefinite |

21. In my Rebuttal Declaration at paragraphs 63-66, I explained why a POSITA would have understand that American's proposed construction of a "simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions" is not indefinite. I incorporate by reference those paragraphs here.

22. I have reviewed the Goodrich Reply Declaration at paragraphs 56-60, and I disagree with Dr. Goodrich's opinion that a "simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions" is indefinite.

23. The Goodrich Reply Declaration argues: "A POSITA would understand that each iteration of the loop recited by steps (c) and (d) requires "simultaneously executing at least a respective one of the subtasks of the computer executable process in each of at least some of said processors," but that this makes no sense in the case (which is claimed) of there being only one subtask to be executing during some iteration of this loop."

6

24. This argument assumes that all processors are executing the algorithm in lockstep, which is not a requirement of the patent. The argument also ignores the fact that the POSITA would have been aware that as we approach the end of the job, the number of available tasks will drop below the number of processors to the point where only a single task may remain. Moreover, the text "at least some" would have been understood by the POSITA as one or more.

25. For these reasons and those provided in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that the term "simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions" is not indefinite.

## VI. '785 PATENT

### A. "network address"

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| network address | Plain and ordinary meaning, no construction necessary | Internet protocol or IP address |

26. In my Rebuttal Declaration at paragraphs 74-76, I explained why a POSITA would have understand that American's proposed construction of a "network address" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

27. I have reviewed the Goodrich Reply Declaration at paragraphs 18-24, and I disagree with Dr. Goodrich's opinion that the term "network address" would be understood by a POSITA to mean "Internet protocol or IP address."

28. Dr. Goodrich in his Reply Declaration at paragraphs 9-11 makes the point that the TCP/IP Reference Model consists of five layers, one of which is called the Network layer. Dr. Goodrich uses this observation to argue that the POSITA would have understood that the '785 Patent uses the term as an adjective and uses this reasoning to argue that the use of the

7

Network Address would be understood to mean Network layer Address, and more specifically IP address.

29. I disagree that the use of the term in the patent is limited exclusively to IP addresses. As Dr. Goodrich Reply Declaration points out, the TCP/IP Reference Model represents an instantiation of the more general OSI Model. As such, a POSITA would have understood that while the '785 discusses embodiments based on TCP/IP, these are exemplary of other possible implementations that follow the OSI Model.

30. Dr. Goodrich in his Reply Declaration excerpts a definition of the "network address" from the Newton's Telecom Dictionary. It is notable that this definition makes it clear that "Every node – computer, PDA, iPhone – on an Ethernet network has **at least two** addresses associate with it." The excerpt goes on to explain that one of these network addresses corresponds to the physical layer of the TCP/IP Reference Model, while the second network address correspond to the network layer of the TCP/IP Reference Model. Thus, the POSITA would have been aware that even for specific networking technology such as Ethernet, there are multiple network addresses.

31. For the reasons provided above and in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that American's proposed construction of a "network address" is not the plain and ordinary meaning for this term.

B. **"network route director"**

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| network route director | Plain and ordinary meaning, no construction necessary | a publicly addressable device configured to route encapsulated packets to and from entities located in a private network portion of a virtual network |

8

32. In my Rebuttal Declaration at paragraphs 77-80, I explained why a POSITA would have understand that American's proposed construction of a "network route director" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

33. I have reviewed the Goodrich Reply Declaration at paragraphs 25-28, and I disagree with Dr. Goodrich's opinion that the term "network route director" would be understood by a POSITA to mean "a publicly addressable device configured to route encapsulated packets to and from entities located in a private network portion of a virtual network."

34. Dr. Goodrich's proposed construction does not appear in the specification which describes that Route Director route communication to Member Agents (see 11:22). The Networks Route Director is further described as enabling Member Agents and Group Agents to be reached inside a private network (see 11:9-13).

35. The specification explains the role of the Group Agent (see 27:51-64):

> *For some devices, member client software cannot be installed on the device or it is not desirable to install member client software on the device. For example, a printer or other networked devices may not be able to load software. For various reasons, some entities may not desire to add network Software onto their machines. Additionally, some devices may use operating systems that do not Support running the member agent Software. For those devices that cannot or choose not to use member agent Software, a Group Agent can be used. The Group Agent acts as a proxy for one or more members of a VCN without requiring installation of member agent software on the client devices. Thus, a device can become a member of a VCN without changing any of the Software on the device by using the Group Agent.*

36. The specification includes multiple instances of communication between the Network Route Director and the Group Agent. For example 32:53-63

> *If the destination member participates in a VCN using a Network Route Director (e.g., device M using NRD 520), then the encapsulated packet is sent to the Network Route Director in step 2418. The Network Route Director will communicate the shim and*

9

> *virtual IP packet to the Group Agent (e.g., Group Agent 2212) via a persistent connection as described above in FIG. 7, steps 673-675, 677, except that the packet is forwarded to the Group Agent rather than the NAT device. The Group Agent will then perform steps 2424-2434. as described above.*

37. For the reasons provided above and in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that American's proposed construction of a "network route director" is not the plain and ordinary meaning for this term.

## VII. '844 PATENT

### A. "root image"

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| root image | Plain and ordinary meaning, no construction necessary | a read-only base set of data blocks, operating beneath the file system, that provide the common portion of the application environment |

38. In my Rebuttal Declaration at paragraphs 88-91, I explained why a POSITA would have understand that American's proposed construction of a "root image" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

39. I have reviewed the Goodrich Reply Declaration at paragraphs 30-39, and I disagree with Dr. Goodrich's opinion that the term "root image" would be understood by a POSITA to mean "a read-only base set of data blocks, operating beneath the file system, that provide the common portion of the application environment."

40. The specification describes how it is possible to update the operating system by modifying the root image. See 2:49-62

> *Thus, embodiments of the present disclosure provide an operating system-independent system and method for distributing an application environment to a compute node. By utilizing a root-leaf system of application environment Storage, embodiments of the present disclosure allow creation of boot images on the fly without*

10

> *significantly diminishing bring-up time. This is due to the fact that creating a new boot image does not require copying the contents of the root image. Rather it involves registering a new UBD with the system, which occurs very quickly. Bring up time, and access time in general, can be further improved by caching commonly accessed the portions of the root image. Moreover, updating the boot image for the entire cluster simply involves updating the root image.*

41. Since in order to be updated, the root image most be mounted in write mode, and for the reasons provided in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that American's proposed construction of a "root image" is not the plain and ordinary meaning for this term.

## VIII. '722 PATENT

### A. "input source"

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| input source | Plain and ordinary meaning, no construction necessary | information provider and/or dynamic content provider |

42. In my Rebuttal Declaration at paragraphs 99-100, I explained why a POSITA would have understand that American's proposed construction of a "input source" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

43. I have reviewed the Goodrich Reply Declaration at paragraphs 62-66, and I disagree with Dr. Goodrich's opinion that the term "input source" would be understood by a POSITA to mean "information provider and/or dynamic content provider."

44. The specification includes the following explanation of Fig 7.:

> *FIG. 7 is a block diagram illustrating a lower-level view of the routing network 110 according to one embodiment of the present invention. FIG. 7 illustrates multiple input sources (labeled 710A-D) representative of sources providing messages to the routing network 110. Such as an information provider 710A and a dynamic content provider 710B.*

11

45. The specification expressly discloses that 710A is an example of an information provider, while 710B exemplifies a dynamic content provider. Thus, the specification explicitly identifies two of the four different input sources and labels two of them as the information provider and the dynamic content provider, making it clear that other types of input sources are contemplated.

46. For the reasons provided above and in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that American's proposed construction of a "input source" is not the plain and ordinary meaning for this term.

**B.** **"identify a category of the update message based on the input source"**

| Claim Term | IV's Proposed Construction | American's Proposed Construction |
|---|---|---|
| identify a category of the update message based on the input source | Plain and ordinary meaning, no construction necessary | identify a category of the update message based on the information provider or dynamic content provider but not on the category/topic of the message content |

47. In my Rebuttal Declaration at paragraphs 101-103, I explained why a POSITA would have understand that American's proposed construction of a "input source" is not the plain and ordinary meaning for this term. I incorporate by reference those paragraphs here.

48. I have reviewed the Goodrich Reply Declaration at paragraphs 67-70, and I disagree with Dr. Goodrich's opinion that the term "identify a category of the update message based on the input source" would be understood by a POSITA to mean "identify a category of the update message based on the information provider or dynamic content provider but not on the category/topic of the message content."

49. Dr. Goodrich Reply includes the following excerpt from the '722 Patent file history:

> This section of Chandra, relied on by the Examiner, discloses that if the ***data content of the message*** matches the specified values of the subscription, then the message is delivered to the one or more subscribers (or clients) of that subscription. This is not the same as "identify a category of the update message based on the input source," as recited in claims 26, 33, 39, 45, 51, and 57, using their respective language.
>
> The Examiner, for example, on page 3 of the Office Action, relies on the above sections of Chandra to allegedly show "identifying each category based on the category/topic of the message content." By this statement, the Examiner appears to agree that Chandra teaches identifying categories **based on category/topic of the message content**. In contrast, claims 26, 33, 39, 45, 51, and 57 recite, *inter* alia,
>
> Atty. Dkt. No. 2222.775000E

50.     Dr. Goodrich mischaracterizes this argument by providing meaning that is not in the text. The text makes the argument that two methods for determining message category, "input source" and "category/topic of the message content", are materially different. I agree with this reading. Dr. Goodrich, however argues that the use of the language "is not the same as," would have led the POSITA to conclude that a method that uses both "input source" and "category/topic of the message content" is not different, i.e., it is the equivalent, to a method that is only based on "category/topic of the message content." More formally, the text encodes the inequality $A \neq B$, whereas Dr. Goodrich misreads it to also imply $A = (A \text{ and } B)$, which is has not basis.

51.     For the reasons provided above and in my Rebuttal Declaration, it remains my opinions that a POSITA would have understood that American's proposed construction of a "identify a category of the update message based on the input source" is not the plain and ordinary meaning for this term.

13

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief, formed after reasonable inquiry under the circumstances.

Executed on the 16th day of September, 2025, in Toronto, Canada.

_____
Eyal de Lara