# **<u>Exhibit C</u>**

Trials@uspto.gov
571-272-7822

Paper 15
Date: November 18, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

AMERICAN AIRLINES, INC. AND
SOUTHWEST AIRLINES CO.,
Petitioner,

v.

INTELLECTUAL VENTURES II LLC,
Patent Owner.

———————

IPR2025-00782
Patent 7,324,469 B2

———————

Before KEN B. BARRETT, GEORGIANNA W. BRADEN, and
STEPHEN E. BELISLE, *Administrative Patent Judges*.

BARRETT, *Administrative Patent Judge*.

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2025-00782
Patent 7,324,469 B2

# I. INTRODUCTION

## A. Background and Summary

American Airlines, Inc. and Southwest Airlines Co. (collectively, "Petitioner")[1] filed a Petition requesting *inter partes* review of U.S. Patent No. 7,324,469 B2 ("the '469 patent," Ex. 1001). Paper 1 ("Pet."). The Petition challenges the patentability of claims 1–14 and 24–32 of the '469 patent. Intellectual Ventures II LLC ("Patent Owner")[2] filed a Preliminary Response to the Petition. Paper 10 ("Prelim. Resp.").

An *inter partes* review may not be instituted "unless . . . the information presented in the petition . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). Having considered the arguments and evidence presented by Petitioner and Patent Owner, we determine that Petitioner has not demonstrated a reasonable likelihood of prevailing on at least one of the challenged claims of the '469 patent. Accordingly, we do not institute an *inter partes* review of the challenged claims.

## B. Related Proceedings

Both parties identify, as matters involving or related to the '469 patent:

- *Intellectual Ventures I LLC et al. v. American Airlines, Inc.*, No. 4:24-cv-980 (E.D. Tex.);

---

[1] Petitioner identifies American Airlines, Inc. and Southwest Airlines Co. as real parties in interest. Pet. 3.
[2] Patent Owner identifies Intellectual Ventures II LLC as the real party in interest. Paper 3, 2.

IPR2025-00782
Patent 7,324,469 B2

- *Intellectual Ventures I LLC et al. v. Southwest Airlines Co.*, No. 7:24-cv-277 (W.D. Tex.);

- *Viasat, Inc. v. Intellectual Ventures I LLC et al.*, No. 1:25-cv-56 (D. Del.); and

- *Anuvu Corp. v. Intellectual Ventures I LLC et al.*, No. 1:25-cv-124 (D. Del.).

Pet. 3; Paper 3, 2.

### C. The '469 Patent

The '469 patent is titled "Satellite Distributed High Speed Internet Access." Ex. 1001, code (54). According to the '469 patent, "[t]he present invention provides rural 'Hotspots' (such as Wi-Fi access, for example) to enable wireless and hard-wired, satellite distributed Internet access for anyone with a PC or other web-ready device (wireless ready or cabled) and a valid credit card." *Id.* at 1:34–38.

> In the exemplary embodiment, when a client attempts to access the Internet, they are routed through the "Subscriber Access Unit." This unit, utilizing radius client, automatically forces the user to first logon via satellite through a third party commercial site that houses the radius server. Internet access is granted upon activation of a valid credit card, or existing valid account.

*Id.* at 4:1–7.

IPR2025-00782
Patent 7,324,469 B2

Figure 1 of the '469 patent is reproduced below.



**FIG.1**

Figure 1 depicts an embodiment "with a cabled router providing access to the Hotspot for cabled users." *Id.* at 3:27–29.

> The Hotspot 10 comprises all the equipment installed at the rural location that is necessary to provide Internet access via satellite 12. The equipment installed at the rural location includes a satellite dish 14 for communicating with the satellite, a subscriber access unit 16 operatively coupled to the satellite dish 14 and a router 18 operatively coupled to the subscriber access unit 18 [sic, 16].

*Id.* at 4:18–25. "User web-enabled devices, such as PC 20, laptop computer 22 and PDA 24 are directly coupled to the router via wired connections (i.e., cables)." *Id.* at 4:29–31. "The user can access the Hotspot . . . [and t]he router 18 then forwards the user access to the subscriber access unit 16." *Id.* at 4:32–36.

IPR2025-00782
Patent 7,324,469 B2

*D. Illustrative Claims*

Of the challenged claims of the '469 patent, claims 1 and 24 are independent claims. Claims 1 and 24, reproduced below with bracketed annotations inserted, are illustrative.

1. [1a] A method for establishing and operating an Internet Hotspot comprising the steps of:

[1b] providing a satellite dish communicating with the Internet via data link with a satellite;

[1c] providing at least one router operatively coupled to the satellite dish;

[1d] providing a subscriber access unit operatively coupled between the satellite dish and the router;

[1e] installing the satellite dish, router and subscriber access unit in a rural location, the rural location experiencing a relatively high volume of transient traffic;

[1f] connecting a web-ready device to the router;

[1g] creating by a user a subscription account, the subscription account being created on a remote server and enabling the user to access the Internet;

[1h] navigating a browser operating on the web-ready device to a subscriber access website, the subscriber access website being capable of verifying that the subscription account is valid;

[1i] verifying that the subscription account is valid via the subscriber access website to allow access to the Internet; and

[1j] allowing a user to access the Internet at the rural location.

24. [24a] An Internet Hotspot comprising:

[24b] a satellite dish communicating with the Internet via one or more data links with a satellite;

[24c] at least one router operatively coupled to the satellite dish;

5

IPR2025-00782
Patent 7,324,469 B2

[24d] a subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet; and

[24e] a web-ready device operatively coupled to the at least one router, the web-read device having a browser application operating thereon for accessing the Internet;

[24f] wherein the satellite dish, at least one router and the subscriber access unit are located in a remote location a experiencing a relatively high volume of transient traffic;

[24g] wherein the user may authenticate the subscription account and access the Internet at the remote location by establishing a data connection between the web-ready device and the router.

Ex. 1001, 6:38–61, 8:24–43.

*E. Evidence*

Petitioner relies on the following references:

| Name | Reference | Exhibit No. |
|------|-----------|-------------|
| Bruner | US 2002/0138625 A1, published Sept. 26, 2002 | 1005 |
| Clark | US 6,445,777 B1, issued Sept. 3, 2002 | 1006 |
| Wu | US 2003/0050041 A1, published March 13, 2003 | 1007 |
| Rothblatt | US 6,105,060, issued Aug. 15, 2000 | 1008 |

Petitioner also relies on the declaration of Dr. William "Chuck" Easttom (Ex. 1002) in support of its arguments. The parties also rely on other exhibits as discussed below.

IPR2025-00782
Patent 7,324,469 B2

### F. Asserted Challenges to Patentability

Petitioner asserts that the challenged claims are unpatentable on the following bases:

| Claim(s) Challenged | 35 U.S.C. §[3] | Reference(s)/Basis |
|---|---|---|
| 1, 2, 10, 11, 24–28 | 102(b) | Bruner |
| 1, 2, 10, 11, 13, 24–30 | 103(a) | Bruner, Clark |
| 1, 3–12, 14, 24–28, 31, 32 | 103(a) | Bruner, Wu |
| 3–5, 13, 29 | 103(a) | Bruner, Clark, Rothblatt |

## II.    ANALYSIS

### A. Principles of Law

Petitioner bears the burden of persuasion to prove unpatentability of the claims challenged in the Petition, and that burden never shifts to Patent Owner. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015).

"A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987); *see also Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008) (to anticipate a patent claim under 35 U.S.C. § 102, "a single prior art reference must expressly or inherently disclose each claim limitation"). Moreover, "[b]ecause the hallmark of anticipation is prior invention, the prior art reference—in order to anticipate

---

[3] The application that issued as the '469 patent was filed before the effective date of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA"), and we apply the pre-AIA versions of 35 U.S.C. §§ 102 and 103.

IPR2025-00782
Patent 7,324,469 B2

under 35 U.S.C. § 102—must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)). Whether a reference anticipates is assessed from the perspective of one of ordinary skill in the art. *See Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368–69 (Fed. Cir. 2003) ("'[T]he dispositive question regarding anticipation [i]s whether *one skilled in the art* would reasonably understand or infer from the [prior art reference's] teaching' that every claim element was disclosed in that single reference." (second and third alterations in original) (quoting *In re Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991))).

Additionally, "[u]nder the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates." *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999); *see In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349–50 (Fed. Cir. 2002).

A patent claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). The question of obviousness is resolved on the basis of underlying factual determinations including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) if present, any objective evidence of

IPR2025-00782
Patent 7,324,469 B2

obviousness or non-obviousness. *Graham v. John Deere Co.*, 383 U.S. 1,
17–18 (1966).

## B. The Level of Ordinary Skill in the Art

In determining the level of ordinary skill in the art, various factors
may be considered, including the "type of problems encountered in the art;
prior art solutions to those problems; rapidity with which innovations are
made; sophistication of the technology; and educational level of active
workers in the field." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995)
(quoting *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.*, 807 F.2d
955, 962 (Fed. Cir. 1986)).

Petitioner contends that:

[A] POSITA would have had at least a bachelor's degree in
computer science, computer engineering, business information
systems, software engineering, or systems engineering and at
least two years of experience in computer networking or
telecommunications. Ex.1002 ¶21; *see also* Ex.1001 (1:14-31).
Additional education could substitute for professional
experience. Ex.1002 ¶21. Significant work experience could
substitute for formal education. Ex.1002 ¶21.

Pet. 7–8. Patent Owner, at this stage, does not disagree or propose a
different definition of the person of ordinary skill in the art.

Petitioner's definition is consistent with the level of ordinary skill
reflected in the prior art references of record. *See Okajima v. Bourdeau*, 261
F.3d 1350, 1355 (Fed. Cir. 2001) (recognizing that the prior art itself may
reflect an appropriate level of skill in the art). For purposes of this decision,
we apply Petitioner's definition of the person of ordinary skill in the art.

## C. Claim Construction

We apply the same claim construction standard used in district court
actions under 35 U.S.C. § 282(b), namely that articulated in *Phillips v. AWH*

IPR2025-00782
Patent 7,324,469 B2

*Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). *See* 37 C.F.R. § 42.100(b). In applying that standard, claim terms generally are given their ordinary and customary meaning as would have been understood by a person of ordinary skill in the art at the time of the invention and in the context of the entire patent disclosure. *Phillips*, 415 F.3d at 1312–13. "In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312–17). "[W]hile extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (internal quotation marks omitted).

Petitioner states that it "do[es] not believe explicit construction is required to resolve this Petition." Pet. 7. Patent Owner proposes constructions for "Internet," "access the Internet," "subscriber access website." Prelim. Resp. 12–15.

On this record and for purposes of this decision, we determine that no claim terms require express construction.

### D. Alleged Anticipation of Claims 1, 2, 10, 11, and 24–28 by Bruner and Alleged Obviousness of Claims 1, 2, 10, 11, 13, and 24–30 over Bruner and Clark (Grounds 1 and 2)

Petitioner alleges that claims 1, 2, 10, 11, and 24–28 are anticipated by Bruner and that claims 1, 2, 10, 11, 13, and 24–30 would have been obvious over Bruner in view of Clark. *See* Pet. 13–30; *id.* at 13 ("Bruner anticipates several claims of the '469 Patent, including at least Claims 1, 2, 10, 11, and 24–28. To the extent Bruner does not anticipate these claims,

10

IPR2025-00782
Patent 7,324,469 B2

Bruner in view of Clark renders claims 1, 2, 10–11, 13, and 24–30 obvious."). Of those challenged claims, claims 1 and 24 are independent. Petitioner states that claim 24 is the sole independent claim asserted in the complaint filed in the parallel district court action, and addresses that independent claim first. Pet. 13.

Patent Owner argues, for the anticipation challenge, that Petitioner has failed to show that Bruner discloses, *inter alia*:  1) a subscriber access unit coupled *between* the satellite dish and the router as recited in independent claim 24, and 2) certain equipment located at a site experiencing "a relatively high volume of *transient* traffic" as recited in both independent claims 1 and 24. *See* Prelim. Resp. 23, 37. Patent Owner argues, for the obviousness challenge, that Petitioner has failed to explain why it would have been obvious to combine Clark with Bruner, and that Petitioner has failed to show that the combination discloses the claimed aspects just mentioned. *See id.* at 42–49.

Based on our review of the record before us, we determine that Petitioner has not established a reasonable likelihood that it would prevail in showing that either of the challenged independent claims (and thus any challenged claim) are anticipated by Bruner or would have been unpatentable as obvious over the combination of Bruner and Clark, as discussed below.

### 1. Bruner (Ex. 1005)

Bruner is titled "Method and Apparatus for Inflight Electronic Commerce." Ex. 1005, code (54). According to Bruner, it describes a "[m]ethod and apparatus for remote users to access the world wide web without requiring large bandwidth connections." *Id.*, code (57) (Abstract). Mobile users connect to a remote server, which is in wireless

11

IPR2025-00782
Patent 7,324,469 B2

communication with a central, land-based server. *Id.* "The central server communicates with a telecommunication network, such as the internet," and "[t]he remote server communicates with the central server to periodically update the website information on the remote server." *Id.* "Because the remote server periodically receives updated website information from the central server, which may be limited to partner websites as well, the bandwidth required for the transmittal of such information is minimized." *Id.*

Bruner discloses an embodiment of the system that "allows airline passengers to scan the Internet, including accessing informational resources, viewing entertainment, shopping on-line through electronic commerce, purchasing products and accessing e-mail while in flight." *Id.* ¶ 22. "The ADS [Airborne Data Server] is the inflight remote server 19 that preferably serves content to inflight users of the system and also acts as a gateway to the ground based servers . . . for additional content." *Id.* ¶ 23. The inflight passenger connects to the ADS using, for example, a laptop or a screen and keyboard provided at the passenger's seat. *Id.*

### 2. *Clark (Ex. 1006)*

Clark discloses a telecomputer network that "includes a wireless voice and data wide area network (WAN) [that] comprises a digital satellite communications system with a network operations center that controls voice and data traffic." Ex. 1006, 2:8–12. "The network also comprises at least one mobile communication hub and a wireless local area network (LAN)." *Id.* at 2:12–14.

IPR2025-00782
Patent 7,324,469 B2

### 3. Discussion

#### a. A subscriber access unit between the satellite dish and the router

Independent apparatus claim 24 recites, "a subscriber access unit operatively coupled *between* the satellite dish and the at least one router." Ex. 1001, 8:28–29 (limitation 24d) (emphasis added).

In addressing independent claim 24, Petitioner contends that Bruner's system uses "the remote ADS server as a router." Pet. 17 (quoting Ex. 1005 ¶ 25; citing Ex. 1002 ¶¶ 175–176); *see also id.* (Petitioner, at the end of the discussion of the limitation, clearly mapping the recited router to Bruner's ADS). For the subscriber access unit, Petitioner contends that:

> Bruner teaches that "[a]ccess to ground based internet content, whether e-commerce or e-mail, is preferably via an application layered gateway or proxy, present on the [ADS]." Ex. 1005 ¶ 26. Bruner also teaches that the ADS "acts as a gateway to the ground based servers" of the system. Ex. 1005 ¶ 21. Bruner's ADS is connected to its satellite network. Ex. 1005 ¶ 25.

*Id.* at 18 (citing Ex. 1002 ¶¶ 183–187) (alterations in original). Petitioner maps the claim language as follows: "Bruner discloses each limitation of claim 24d, including a **subscriber access unit operatively coupled between the satellite dish and the at least one router** (Bruner's ADS provides proxy or gateway services, operates as a router, and facilitates communication using the satellite communication system)." *Id.* at 19. Thus, Petitioner contends that the recited subscriber access unit is Bruner's ADS.

Patent Owner argues:

> Given the requirement in Element [24d] that the subscriber access unit be positioned *between* the satellite dish and the at least one router, the Petition fails to explain how Bruner's ADS can be *both* the "at least one router" and "the subscriber access unit" recited in claim 24. Put another way,

IPR2025-00782
Patent 7,324,469 B2

> the Petition fails to explain how Bruner's ADS can be both *the router itself and*, at the same time, *be positioned between the router and the satellite dish*.

Prelim. Resp. 38 (bracketed limitation designation in original). Patent Owner also argues that Petitioner fails to explain how the combination of Bruner and Clark discloses the "between" requirement. *Id.* at 47–48.

We find Patent Owner's argument to be persuasive. Petitioner does not explain adequately how Bruner discloses the positional requirement of a subscriber access unit being coupled between the satellite dish and the router. Accordingly, Petitioner has not shown sufficiently for purposes of institution that Bruner anticipates independent claim 24.

Although, for the obviousness challenge, Petitioner contends that Clark discloses a wireless router (for limitation 24c), Petitioner relies solely on Bruner for the "between" limitation. *See* Pet. 17 ("Bruner and/or Bruner in view of Clark both disclose each limitation of claim 24c, including a **router** (e.g., Bruner's 'ADS' and Clark's 'wireless router')"); *id.* at 18–19 (the discussion of the "between" limitation 24d asserting that "Bruner discloses claim 24d," with no mention of Clark). Furthermore, Petitioner merely asserts that both Bruner and Clark disclose a router. *See id.* at 17–18. Petitioner, however, does not indicate clearly which is used in the proposed combination, does not describe the configuration of a proposed combination or a proposed modification of Bruner's system, and fails to set forth an adequate and persuasive reason with rational underpinning as to why a person of ordinary skill in the art would have modified Bruner's system to arrive at the positional requirement of the subscription access unit being coupled between the satellite dish and a router. *See id.* at 13–14 (motivation section for this ground); *id.* at 18–19 (addressing the "between" limitation

IPR2025-00782
Patent 7,324,469 B2

24d). Accordingly, Petitioner has not shown a reasonable likelihood of prevailing on its challenge to independent claim 24 as obvious over Bruner in view of Clark.

Independent method claim 1 recites the step of "providing a subscriber access unit operatively coupled between the satellite dish and the router." Ex. 1001, 6:44–45 (limitation 1d). For this limitation, Petitioner contends that "Bruner and/or Bruner in view of Clark discloses claim 1d for substantially similar reasons as those already discussed for claim 24d." Pet. 26 (citing Ex. 1002 ¶¶ 74–80[4]). For the reasons given above, we do not find Petitioner's positions regarding 24d persuasive and, therefore, also determine that Petitioner has failed to meet its burden with respect to the similar limitation in independent claim 1.

### b. Transient Traffic

Independent method claim 1 recites, "installing the satellite dish, router and subscriber access unit in a rural location, the rural location experiencing a relatively high volume of *transient* traffic." Ex. 1001, 6:46–48 (limitation 1e) (emphasis added). Independent apparatus claim 24 similarly recites, "wherein the satellite dish, at least one router and the subscriber access unit are located in a remote location a [sic] experiencing a relatively high volume of *transient* traffic." *Id.* at 8:36–39 (limitation 24f) (emphasis added). Thus, both independent claims recite "transient" traffic.

Patent Owner argues that, in the Petition:

---

[4] The cited paragraphs 74 through 77 of Dr. Easttom's declaration discuss Bruner, and cited paragraphs 78 and 29 discuss Wu (*not* Clark) and the combination of Bruner and Wu. Cited paragraph 80 states, "See also claim 24[c]."

IPR2025-00782
Patent 7,324,469 B2

> The requirement that the traffic be _transient_ is simply _skipped_, and not mentioned at all in Petitioner's analysis [of limitation 24f]. Thus, the Petition fails to _even allege_—let alone demonstrate—that "Bruner and/or Bruner in view of Clark" positions equipment in a location experiencing a relatively high volume of _transient_ traffic.

Prelim. Resp. 36.

We find Patent Owner's argument persuasive. Except for the section heading quoting the entire limitation, Petitioner's analysis of the "transient" limitation 24f does not mention or discuss "transient." _See_ Pet. 20.

Petitioner argues that "Bruner discloses claim 24f," and quotes Bruner as follows: "For example, Bruner discloses that the 'remote internet system of the present invention [] allow[s] remote users, such as airline passengers, to conduct electronic commerce . . . from a remote location, such as during the course of an airline flight.'" Pet. 20 (quoting Ex. 1005 ¶ 21 (Petitioner's alterations); citing Ex. 1002 ¶¶ 200–201). After presenting this quoted passage, Petitioner concludes:

> Thus, Bruner discloses each limitation of claim 24f, including the **satellite dish, router, and subscriber access unit** (discussed under claims 24b, 24c, and 24d, respectively) and their location in a **remote location experiencing a relatively high volume of traffic** (the remote internet system . . . allow[ing] remote users, such as airline passengers, to conduct electronic commerce."). Ex. 1002 ¶ 201.

_Id._ (alteration in original). The bolded claim language omits the word "transient." Even if we were to treat that omission as a mere oversight (which we decline to do), we still would determine that Petitioner has not met its burden. Petitioner presents the quotes from Bruner without explaining how or _why_ (or even explicitly alleging) those passages disclose

16

IPR2025-00782
Patent 7,324,469 B2

"transient" traffic. As such, Petitioner has not demonstrated adequately that Bruner discloses the limitation.

Additionally, Petitioner has failed to set forth how the claim term "transient" in the phrase "a relatively high volume of transient traffic" should be interpreted, either by way of an explicit proposed construction or impliedly through a clear mapping of the phrase to Bruner's disclosure. *See* Prelim. Resp. 36 (Patent Owner arguing that "Petitioners had the burden of explaining how the challenged claims were to be interpreted . . . . With respect to the 'transient traffic' limitation in claim 1, Petitioners clearly failed to meet this burden, because Ground 1 completely fails to address this limitation."); *see also* 37 C.F.R. § 42.104(b)(3) (The requirement that a petition identify "How the challenged claim is to be construed."). If an *inter partes* review were to be instituted, the meaning of "transient" likely would be at issue during the trial, and Petitioner has not placed either Patent Owner or the Board on notice of Petitioner's proposed construction.

Regarding the obviousness challenge, Petitioner does not rely on Clark for the "transient" feature or otherwise allege that it would have been obvious. *See* Pet. 13–14 (motivation section for this ground); *id.* at 20 (addressing the "transient" limitation 24d); *see also* Prelim. Resp. 46–47 (Patent Owner arguing that, "[a]s was the case with Ground 1, Ground 2 fails to address this requirement entirely.").

For independent claim 1, Petitioner relies on the same unpersuasive arguments for independent claim 24. *See* Pet. 26.

### 4. Conclusion Regarding the Bruner Anticipation Challenge and the Bruner-Clark Obviousness Challenge

Based on our review of the record before us, we determine that Petitioner has not established a reasonable likelihood that it would prevail in

17

IPR2025-00782
Patent 7,324,469 B2

showing that the independent claims (and thus any challenged claim) would have been unpatentable as anticipated by Bruner or as obvious over the combination of Bruner and Clark.

### E. Claims 1, 3–12, 14, 24–28, 31, and 32—Alleged Obviousness over Bruner and Wu (Ground 3)

Petitioner alleges that claims 1, 3–12, 14, 24–28, 31, and 32 would have been obvious over Bruner in view of Wu. Pet. 31–51. Patent Owner presents arguments similar to those discussed above for the Bruner and Bruner/Clark grounds, including arguments regarding the "between" and "transient" limitations. *See* Prelim. Resp. 49–60.

#### 1. Wu (Ex. 1007)

Wu is "generally directed to a network system capable of providing prepaid wireless remote access services." Ex. 1007 ¶ 6. According to Wu, "people have become increasingly dependent on data and network access for both home and work," and "[w]hen away from home or office, people often take their portable electronic devices with them." *Id.* ¶ 3. "Accordingly, there is a need for a network system to provide customers in public areas with prepaid wireless access to communications networks," and "[t]he prepaid wireless access [of Wu] allows the customers to maintain connection at any location within a wireless coverage area." *Id.* ¶ 5.

IPR2025-00782
Patent 7,324,469 B2

Figure 1 of Wu is reproduced below.



FIG. 1

Figure 1 is "a schematic diagram of one embodiment of a prepaid wireless
Internet access network 10." *Id.* ¶ 37. "The wireless access network 10
generally includes a base station server or base station 12, a wireless access
point 26 for connecting with one or more wireless stations 20, 22 and 24 . . .
the global communications network 16." *Id.* ¶ 37. "[T]he base station 12 is
connected to the global communications networks 16 (i.e., the Internet)
through a router 14." *Id.* ¶ 58. Wu's claim 6 recites, "the base station is
connected to the global communications network through a communications
channel selected from the group consisting of . . . satellite links . . . [and]
satellite feed lines." *Id.*, pg. 7 (claim 6).

19

IPR2025-00782
Patent 7,324,469 B2

### 2. Discussion

#### a. A subscriber access unit between the satellite dish and the router

As mentioned, independent claims 1 and 24 call for the subscriber access unit to be operably coupled between the satellite dish and the router. *See* Ex. 1001, 6:44–45, 8:28–29. Also as discussed above, Petitioner has not adequately shown that Bruner discloses this positional limitation. *See supra* Section II.D.3.a.

In this Bruner-Wu challenge, Petitioner, for the "router" limitations of the independent claims, first maps the recited router to Wu's disclosure as follows: "Wu teaches that its base station 'is connected to the global communications networks (i.e., the Internet) through a router.'" Pet. 33 (addressing limitation 24c; citing Ex. 1007 ¶ 58); *id.* at 42 (relying on "substantially similar reasons" for limitation 1c). The cited paragraph describes Wu's router 14 depicted in Figure 1. *See* Ex. 1007 ¶ 58. For the "between" limitation, Petitioner, however, does not contend that a subscriber access unit is operatively coupled *between* a satellite dish and this router 14. *See* Pet. 34–35 (addressing limitation 24d); *id.* at 42 (addressing limitation 1d). This presumably is because, as shown in Figure 1 above, the component mapped to the subscriber access unit (Universal Internet Box 12) is *not* located between router 14 and the internet-side of that router. *See* Prelim. Resp. 57–58 (Patent Owner asserting that "Wu's base station 12 (mapped to the 'subscriber access unit') . . . is positioned on one side of the router [14] . . ., and the satellite link/feed . . . which presumably is alleged to include a dish on one or both ends is positioned on the other side of the router," and arguing that Petitioner has failed to explain how this arrangement satisfies the claimed positional limitation.); Ex. 1007 ¶ 58

IPR2025-00782
Patent 7,324,469 B2

(Wu explaining that, "[w]ith reference again to FIG. 1, the base station 12 is connected to the global communications networks 16 (i.e., the Internet) through a router 14.").

For the "router" limitations, Petitioner also maps the recited router to Wu's wireless access point. *See* Pet. 33–34 (addressing limitation 24c); *id.* at 42 (limitation 1c). In that regard, Petitioner contends that "Wu teaches that its wireless access point (which connects multiple portable wireless devices to the network by acting as a **router**) may connect to the base station via **satellite** link or feed line." *Id.* at 34. Petitioner, for the "between" limitations, contends that "the base station [mapped to the subscriber access unit] is **coupled between a satellite dish and router** because, in one embodiment taught by Wu, the base station is simultaneously coupled to a wireless access station acting as a router and to the internet via satellite." *Id.* at 35 (addressing limitation 24d); *id.* at 42 (addressing limitation 1d); *see also id.* at 34 (citing Ex. 1002 ¶¶ 188–190 for the proposition that "Bruner in view of Wu discloses each element of claim 24d."); *id.* at 42 (citing Ex. 1002 ¶¶ 78–80 for the "between" limitation 1d).

Patent Owner argues:

[T]he Petition purports to map Wu's wireless access point 26 to the "at least one router," based on the unsupported and conclusory assertion that Wu's wireless access point 26 "act[s] as a router." Petition, 34. This allegation is *completely unsupported*. The allegation that Wu's wireless access point 26 "act[s] as a router" is *not followed by any citation to Wu* (which nowhere states that its wireless account 26 acts as router), or to any authority (including Petitioners' expert). That is because an access point simply allows a user of a wireless device to connect with a wireless network. Completely absent from the Petition is *any* reasoning explaining why Wu's wireless access point 26 "act[s] as a router." Thus, the Petition's alternative

21

IPR2025-00782
Patent 7,324,469 B2

> mapping fails because it fails to establish that Wu's wireless
> access point "act[s] as a router."

Prelim. Resp. 58–59 (alterations in original).

We find Patent Owner's argument persuasive and we agree that
Petitioner's assertion that Wu's access point is a router is conclusory and
unsupported. Petitioner's declarant, in the paragraphs cited generally as
support for the "between" limitations, only uses the term "router" in
conclusory assertions that Wu discloses a subscriber access unit operatively
coupled between the satellite dish and the router, and does not explicitly
assert that a person of ordinary skill in the art would have understood Wu's
access point to be a router nor does he adequately explain why that would
have been the understanding. *See* Ex. 1002 ¶¶ 78, 188, 190.

In light of the above, we determine that Petitioner has not shown
adequately that either Bruner or Wu discloses the "between" feature of the
independent claims. Petitioner also does not identify a proposed
combination that results in a subscriber access unit operatively coupled
between the satellite dish and the router, and fails to set forth an adequate
and persuasive reason with rational underpinning as to why a person of
ordinary skill in the art would have modified Bruner's system to arrive at
that positional requirement. *See id.* at 31–32 (motivation section for this
ground); *id.* at 34–35 (addressing the "between" limitation 24d); *id.* at 42
(addressing the "between" limitation 1d). Accordingly, Petitioner has not
shown a reasonable likelihood of prevailing on its challenge to independent
claims 1 and 24 as obvious over Bruner in view of Clark.

### b. *Transient Traffic*

As mentioned above, the challenged independent claims refer to
"transient" traffic in reciting that the satellite dish, a router, and the

IPR2025-00782
Patent 7,324,469 B2

subscriber access unit are in a rural/remote location "experiencing a relatively high volume of transient traffic." Ex. 1001, 6:46–48 (limitation 1e); *id.* at 8:36–39 (limitation 24f). Also, as discussed above, Petitioner has not adequately shown that Bruner discloses this "transient" limitation. *See supra* Section II.D.3.b.

For this Bruner-Wu challenge, Petitioner first asserts that Wu discloses certain features including "prepaid wireless remote access services" and connection to "a remote server," possibly referring to the "remote location" recited in limitation 24f. Pet. 36 (citing Ex. 1002 ¶¶ 202–204; Ex. 1007 ¶ 6, Fig. 1); *see* Ex. 1002 ¶ 202 (Dr. Easttom opining that "Wu is also focused on accessing internet from a remote location."). Petitioner then contends:

> A POSITA would thus have found claim 24f obvious over Bruner in view of Wu. Ex.1002 ¶204. Wu teaches a **satellite dish, a router, and a subscriber access unit** (respectively disclosed in claims 24b, 24c, and 24d). Wu further teaches that all three are **located in a remote location experiencing a relatively high volume of transient traffic** in teaching that its network system provides prepaid wireless remote access services.

Pet. 37.

> Patent Owner argues that:

> The statement . . . that Wu teaches the location of equipment in 'a remote location experiencing a relatively high volume of *transient* traffic' is *completely unsupported*. The statement is *not followed by any citation to Wu* (which nowhere mentions the term 'transient'), or to any authority (including Petitioners' expert). Absent from the Petition is *any* explanation how Wu discloses the 'transient traffic' limitation.

Prelim. Resp. 56.

IPR2025-00782
Patent 7,324,469 B2

We find Patent Owner's argument persuasive and we agree that Petitioner's assertion that Wu discloses the "transient" aspect is conclusory and unsupported. Additionally, like the Bruner and Bruner-Clark challenges discussed above, we cannot infer from Petitioner's contentions how Petitioner construes the claim term "transient." *See* 37 C.F.R. § 42.104(b)(3) (a petition must identify how a challenged claim is to be construed).

As Patent Owner notes (Prelim. Resp. 56–57), Petitioner's declarant does not, in the paragraphs cited generally in support for limitations 1e and 24f, opine that Wu discloses the "transient traffic" limitation. *See* Ex. 1002 ¶¶ 83–86, 202–204 (cited at Pet. 42 & 36–37); *but see* Ex. 1002 ¶¶ 85, 204 (Dr. Easttom using the term "transient" in the conclusory assertions that Bruner in view of Wu discloses the overall limitations). Rather, Dr. Easttom opines that Wu discloses a location with a relatively high volume of *internet* traffic, not *transient* traffic. Ex. 1002 ¶ 203 ("Wu discloses the satellite dish, router, and subscriber access unit located in a remote location experiencing a relatively high volume of *internet* traffic of claim 24[e]." (emphasis added); *id.* ¶ 84 (similarly opining that "Wu discloses . . . a rural location experiencing a relatively high volume of *internet* traffic of claim 1[d]." (emphasis added)). Dr. Easttom's conclusory testimony is entitled to little or no weight, particularly the opinions using a term different than the challenged claims. *See, e.g.*, 37 C.F.R. § 42.65(a) ("Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight."); *Xerox Corp. v. Bytemark, Inc.*, IPR2022-00624, Paper 9, 15 (PTAB Aug. 24, 2022) (precedential).

IPR2025-00782
Patent 7,324,469 B2

We determine that Petitioner has not shown adequately that Bruner or Wu or their combination discloses or suggests "transient" traffic.

### 3. Conclusion Regarding the Bruner-Wu Obviousness Challenge

Based on our review of the record before us, we determine that Petitioner has not established a reasonable likelihood that it would prevail in showing that the independent claims (and thus any challenged claim) would have been unpatentable as obvious over the combination of Bruner and Wu.

### F. Claims 3–5, 13, and 29—Alleged Obviousness over Bruner, Clark, and Rothblatt (Ground 4)

Petitioner alleges that claims 3–5, 13, and 29 would have been obvious over Bruner in view of Clark and Rothblatt. Pet. 51–54. Petitioner does not contend that Rothblatt cures the deficiencies noted above with respect to the underlying Bruner-Clark challenge to independent claims 1 and 24. *See id.* Therefore, for the same reasons discussed above, we determine that the information presented in the Petition fails to establish a reasonable likelihood that Petitioner would prevail in showing that dependent claims 3–5, 13, and 29 are unpatentable over Bruner in view of Clark and Rothblatt.

### III.    CONCLUSION

Petitioner has not demonstrated that there is a reasonable likelihood of establishing the unpatentability of any of claims 1–14 and 24–32 of the '469 patent.

### IV.    ORDER

For the foregoing reasons, it is

ORDERED that the Petition is *denied* and no trial is instituted.

25

IPR2025-00782
Patent 7,324,469 B2

PETITIONER:

John Campbell
Alan Block
Casey Shomaker
Emily Tannenbaum
Kenneth Scott
MCKOOL SMITH, P.C.
jcampbell@mckoolsmith.com
ablock@mckoolsmith.com
cshomaker@mckoolsmith.com
etannenbaum@mckoolsmith.com
kscott@mckoolsmith.com

Keith Harden
MUNCK WILSON MANDALA, LLP
kharden@munckwilson.com

PATENT OWNER:

Brandon Theiss
Daniel Golub
Ryan O'Donnell
Dawn Kerner
VOLPE KOENIG
btheiss@vklaw.com
dgolub@vklaw.com
rodonnell@vklaw.com
dkerner@vklaw.com

Russell Rigby
INTELLECTUAL VENTURES II LLC
rrigby@intven.com