# **<u>Exhibit F</u>**

Trials@uspto.gov                                                    Paper: 11
571-272-7822                                    Entered: November 21, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

AMERICAN AIRLINES, INC. and SOUTHWEST AIRLINES CO.,
Petitioner,

v.

INTELLECTUAL VENTURES I LLC,
Patent Owner.

———————

IPR2025-01055
Patent 8,027,326 B2

———————

Before KEN B. BARRETT, GEORGIANNA W. BRADEN, and
STEPHEN E. BELISLE, *Administrative Patent Judges*.

BELISLE, *Administrative Patent Judge*.

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2025-01055
Patent 8,027,326 B2

## I.    INTRODUCTION

American Airlines, Inc. and Southwest Airlines Co. (collectively, "Petitioner") filed a Petition (Paper 1, "Pet.") requesting an *inter partes* review of claims 1–18 ("Challenged Claims") of U.S. Patent No. 8,027,326 B2 (Ex. 1001, "the '326 patent"). Intellectual Ventures I LLC ("Patent Owner") filed a Preliminary Response. Paper 9 ("Prelim. Resp.").

We have authority to determine whether to institute an *inter partes* review. 35 U.S.C. § 314(b) (2024); 37 C.F.R. § 42.4(a) (2024). We may not institute an *inter partes* review "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). The "reasonable likelihood" standard is "a higher standard than mere notice pleading" but "lower than the 'preponderance' standard to prevail in a final written decision." *Hulu, LLC v. Sound View Innovations, LLC*, IPR2018-01039, Paper 29 at 13 (PTAB Dec. 20, 2019) (precedential). When instituting *inter partes* review, the Board will authorize the review to proceed on all of the challenged claims and on all grounds of unpatentability asserted for each claim. 37 C.F.R. § 42.108(a).

Applying those standards, and based on the record before us, we determine that Petitioner has not demonstrated a reasonable likelihood of success in proving that any one of the Challenged Claims is unpatentable. *See* 35 U.S.C. § 314; 37 C.F.R. § 42.4(a). Accordingly, we deny institution of an *inter partes* review of the '326 patent.

IPR2025-01055
Patent 8,027,326 B2

## II.  BACKGROUND

### A.  Real Parties in Interest

Petitioner identifies American Airlines, Inc. and Southwest Airlines Co. as real parties in interest.  Pet. 1.  Patent Owner identifies itself as a real party in interest.  Paper 5 (Patent Owner's Mandatory Notices), 2.

### B.  Related Matters

According to the parties, the '326 patent has been asserted in the following district court actions:

*Intellectual Ventures I LLC v. American Airlines, Inc.*, No. 4:24-cv-980 (E.D. Tex. filed November 2, 2024);

*Intellectual Ventures I LLC v. Southwest Airlines, Co.*, No. 7:24-cv-277 (W.D. Tex. filed November 2, 2024);

*Viasat, Inc. v. Intellectual Ventures I LLC*, No. 1:25-cv-056 (D. Del. filed January 14, 2025); and

*Anuvu Corp. v. Intellectual Ventures I LLC*, No. 1:25-cv-124 (D. Del. filed January 30, 2025).  Pet. 1–2; Paper 5, 2.

### C.  The '326 Patent

The '326 patent is titled "Method and System For High Data Rate Multi-Channel WLAN Architecture," and issued September 27, 2011, from U.S. Patent Application No. 11/033,524, filed January 12, 2005.  Ex. 1001, codes (10), (21), (22), (45), (54).  The '326 patent claims priority to U.S. Provisional Application No. 60/535,540, filed January 12, 2004.  *Id.* at code (60).

The '326 patent generally relates to "high data rate multi-channel wireless communications" that "reus[e] existing single channel radio

IPR2025-01055
Patent 8,027,326 B2

designs." Ex. 1001, 1:15–17, 3:59–61. To achieve this, the '326 patent discloses, *inter alia*, "filling the gap" in the frequency spectrum between multiple channels with extra Orthogonal Frequency Division Multiplexing (OFDM) subcarriers. *Id.* at 9:66-10:2, 8:28–31. An example of this "filling the gap" is shown in Figures 50 and 51, both of which are reproduced below.



FIGURE 50

Figure 50 is a graphical representation of signal components and processing involving two 802.11a signals with a two-channel transmitter given 25 MHz spacings. Ex. 1001, 7:19–21.

IPR2025-01055
Patent 8,027,326 B2



FIGURE 51

Figure 51 is a graphical representation of the signal
components and processing of Figure 50 with
filled-gap OFDM technique characterized by
25 MHz spacing.  Ex. 1001, 7:22–24.

Figures 50 and 51 show a reduced frequency spectrum gap between
that shown in Figure 50 and the gap shown in Figure 51.  Ex. 1001, Figs. 50,
51.  In other words, Figure 51 shows an example of *partial* gap filling (or a
*partially*-filled gap).  *See id.* at 16:27–32; 10:29–38 (discussing dual-channel
"without gap fill" and with "OFDM filled-gap" techniques).  According to
the '326 patent, this gap-filling technique results in additional subcarriers for
data transmission and thus higher data transmission rates.  *See id.*
at 10:29–38.

### D. Illustrative Claim

The '326 patent includes eighteen claims, all of which are challenged.
Claims 1, 16, and 18 are independent.  Claim 1 is illustrative of the claimed
subject matter and is reproduced below with labels, such as "[1.1]," added to
limitations in the same manner as used by the parties.

IPR2025-01055
Patent 8,027,326 B2

1. [1.0] A method for increasing data rates and data throughput in a network, the method comprising:

[1.1] selecting at least a first channel and a second channel, wherein the first channel and the second channel are adjacent without any other channels therebetween, wherein the first channel and the second channel each have a plurality of data subcarriers, wherein the data subcarriers of the first channel and the data subcarriers of the second channel are separated by a frequency gap corresponding to one or more guard bands between the first and second channels;

[1.2] *partially* filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap such that the one or more guard bands are at least partially filled with at least some of the one or more data subcarriers using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform;

[1.3] combining the first channel and the second channel using channel bonding with orthogonal frequency division multiplexing (OFDM); and

[1.4] transmitting data subcarriers occupying the first channel, the second channel, and the frequency gap in parallel to a receiver.

Ex. 1001, 17:26–49 (emphasis added).

### E. *Evidence of Record*

Petitioner relies on the following evidence.

| Name | Patent Document | Exhibit |
|------|-----------------|---------|
| Gardner | US 7,418,050 B1, issued August 26, 2008 | 1006 |
| Mori | Japanese Patent Pub. No. 2002-319917A, published October 31, 2002 (*citations herein to* Mori *are to the certified translation thereof included in Ex. 1008*) | 1007 1008 |

6

IPR2025-01055
Patent 8,027,326 B2

| Bolinth | US 2005/0259628 A1, published November 24, 2005 | 1009 |
| Lu | US 2005/0138194 A1, published June 23, 2005 | 1010 |
| Williams | US 2003/0048462 A1, published March 13, 2003 | 1011 |

Pet. 5.

Petitioner also relies upon the Declaration of William C. Easttom II, Ph.D., D.Sc. (Ex. 1004).

Patent Owner does not rely upon its own expert testimony at this stage of the proceeding.

### F. Asserted Challenges to Patentability

Petitioner challenges the patentability of claims 1–18 of the '326 patent on the following bases (Pet. 5).

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
| --- | --- | --- |
| 1–18 | 103[1] | Gardner, Mori |
| 12, 13 | 103 | Gardner, Mori, Bolinth |
| 12, 13 | 103 | Gardner, Mori, Williams[2] |
| 1–18 | 103 | Mori, Lu, Williams |

---

[1] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 287–88 (2011), amended 35 U.S.C. § 103 effective on March 16, 2013. Because the application of the '326 patent was filed January 12, 2005, the pre-AIA version of § 103 applies.

[2] Petitioner identifies a single patentability challenge as "Gardner, Mori, and *either of* Bolinth or Williams," which we sever into two distinct bases. *See* Pet. 5 (emphasis added).

IPR2025-01055
Patent 8,027,326 B2

## III. PATENTABILITY

### A. Applicable Law

Petitioner challenges the patentability of claims 1–18 of

the '326 patent on grounds that the claims would have been obvious under

35 U.S.C. § 103 in light of various references, namely Gardner, Mori,

Bolinth, Williams, and Lu. "In an [*inter partes* review], the petitioner has

the burden from the onset to show *with particularity* why the patent it

challenges is unpatentable." *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d

1356, 1363 (Fed. Cir. 2016) (citing 35 U.S.C. § 312(a)(3) (requiring *inter

partes* review petitions to identify "with particularity . . . the evidence that

supports the grounds for the challenge to each claim")) (emphasis added).

This burden never shifts to Patent Owner. *See Dynamic Drinkware, LLC v.

Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015).

A claim is unpatentable under 35 U.S.C. § 103 if "the differences

between the subject matter sought to be patented and the prior art are such

that the subject matter as a whole would have been obvious at the time the

invention was made to a person having ordinary skill in the art to which said

subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406

(2007). The question of obviousness is resolved on the basis of underlying

factual determinations, including (1) the scope and content of the prior art;

(2) any differences between the claimed subject matter and the prior art;

(3) the level of skill in the art; and (4) when of record, objective evidence of

obviousness or non-obviousness, i.e., secondary considerations. *Graham v.

John Deere Co.*, 383 U.S. 1, 17–18 (1966). Secondary considerations may

include the following: "commercial success, long felt but unsolved needs,

IPR2025-01055
Patent 8,027,326 B2

failure of others, etc."[3]  *Id.*  The totality of the evidence submitted may show that the challenged claims would not have been obvious to one of ordinary skill in the art.  *In re Piasecki*, 745 F.2d 1468, 1471–72 (Fed. Cir. 1984).  When evaluating a combination of teachings, we must also "determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue."  *KSR*, 550 U.S. at 418 (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)).

The Supreme Court has made clear that we apply "an expansive and flexible approach" to the question of obviousness.  *Id.* at 415.  Whether a patent claiming a combination of prior art elements would have been obvious is determined by whether the improvement is more than the predictable use of prior art elements according to their established functions.  *Id.* at 417.  To reach this conclusion, however, requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination.  *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011).  Rather, obviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention.  *Id.*  "To satisfy its burden of proving obviousness, a petitioner cannot employ mere conclusory statements.  The petitioner must instead articulate specific reasoning, based on evidence of record, to support the legal conclusion of obviousness."  *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016).

---

[3] Patent Owner has not presented objective evidence of non-obviousness.

9

IPR2025-01055
Patent 8,027,326 B2

We analyze the challenges presented in the Petition in accordance with the above-stated principles.

### B. Level of Ordinary Skill in the Art

Petitioner contends that a person of ordinary skill in the art, at the time of the invention of the '326 patent:

> would have had a bachelor's degree in an academic area emphasizing computer networking (i.e. computer science, computer information systems, computer engineering, etc.), and approximately two years of experience working with wireless network traffic. Additional experience might substitute for less education and vice versa.

Pet. 10 (citing Ex. 1004 ¶ 22–23).

Patent Owner does not submit its own definition of the skilled artisan at this stage of the proceeding. *See generally* Prelim. Resp.

In determining the level of ordinary skill in the art, various factors may be considered, including the "type of problems encountered in the art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (citation omitted). The level of ordinary skill in the art also may be reflected by the prior art of record. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001).

Neither party argues that the outcome of this case would differ based on our adoption of any particular definition of the level of ordinary skill in the art. Considering the subject matter of the '326 patent, the background technical field, the prior art, and Petitioner's unopposed definition of the

IPR2025-01055
Patent 8,027,326 B2

skilled artisan, which is supported with testimony of Dr. Easttom (Ex. 1004
¶ 22–23), we apply the level of skill set forth above.

### C. Claim Construction

We construe claims "using the same claim construction standard that
would be used to construe the claim in a civil action under 35 U.S.C. 282(b),
including construing the claim in accordance with the ordinary and
customary meaning of such claim as understood by one of ordinary skill in
the art and the prosecution history pertaining to the patent."  37 C.F.R.
§ 42.100(b); *see also Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)
(en banc).

In this context, claim terms "are generally given their ordinary and
customary meaning" as understood by a person of ordinary skill in the art in
question at the time of the invention.  *Phillips*, 415 F.3d at 1312–13;
*see CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir.
2002) (noting "a 'heavy presumption' that a claim term carries its ordinary
and customary meaning").  "In determining the meaning of the disputed
claim limitation, we look principally to the intrinsic evidence of record,
examining the claim language itself, the written description, and the
prosecution history, if in evidence."  *DePuy Spine, Inc. v. Medtronic
Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*,
415 F.3d at 1312–17).  Extrinsic evidence is "less significant than the
intrinsic record in determining 'the legally operative meaning of claim
language.'"  *Phillips*, 415 F.3d at 1317.

Only those claim terms that are in controversy need to be construed,
and only to the extent necessary to resolve the controversy.  *See Nidec*

IPR2025-01055
Patent 8,027,326 B2

*Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017
(Fed. Cir. 2017) (stating that "we need only construe terms 'that are in
controversy, and only to the extent necessary to resolve the controversy'"
(quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803
(Fed. Cir. 1999))).

### 1. Petitioner's Different Claim Construction Positions

In this case, Petitioner states that "[c]laim terms are construed
according to the *Phillips* standard in an IPR," and argues that its analysis
"establishes the challenged claims are obvious *under any reasonable
interpretation* under the *Phillips* standard, and thus Petitioners submit the
Board need not resolve any express constructions." Pet. 10–11 (emphasis
added). Petitioner's position on claim construction plainly states (or at
minimum implies) that there is at least one *Phillips*-based "reasonable
interpretation" for each limitation in the Challenged Claims, such as
independent claim 1. Yet Petitioner does not proffer in the Petition any
proposed constructions (i.e., reasonable interpretations) for limitations in
claim 1, particularly "*partially* filling the frequency gap," discussed below.

Contrary to its position in this case, in district court, Petitioner argues
that several limitations in the Challenged Claims, particularly claim 1, are
indefinite, and *not* subject to reasonable interpretation. *See* Prelim. Resp. 24
n.1 (Patent Owner explaining that, "[i]n the district court, [Petitioner] alleges
that 'partially filling the frequency gap' between the first and second
channels in independent claim 1 is indefinite because '[t]he specification
does not provide an explanation of what constitutes "*partially" filling/filled*
in a way that *distinguishes it from fully filling/filled*.'" (citing Ex. 2014,
194)); *see also* Ex. 2014, 192–195 (Petitioner alleging that the following

12

IPR2025-01055
Patent 8,027,326 B2

exemplary terms are indefinite: "partially filling the frequency gap";
"partially fill the frequency gap"; "plurality of data subcarriers"; "one or
more guard bands"; "combining the first channel and the second channel
using channel bonding with orthogonal frequency division multiplexing
(OFDM)"); Ex. 2013, 36–38 (same).

Under 37 C.F.R. § 42.104(b)(3), *petitioners* must clearly articulate
*in the petition* "[h]ow the challenged claim is to be construed." If, according
to Petitioner, many limitations in claim 1 (and other claims) are indefinite,
then how does Petitioner propose that the Board construe such limitations to
assess Petitioner's invalidity challenges—*Petitioner is silent*. Indeed,
Petitioner provides no explanation for its different claim construction
positions in the two forums. This alone favors denial of institution.
*See Revvo Technologies, Inc. v. Cerebrum Sensor Technologies, Inc.*,
IPR2025-00632, Paper 20 (Squires November 3, 2025) (precedential)
(a petitioner must explain why it takes different claim construction positions
in the petition and in district court); *Tesla, Inc. v. Intellectual Ventures II
LLC*, IPR2025-00340, Paper 18 (Squires November 5, 2025) (informative)
(a petitioner's explanation that it could not argue indefiniteness in an IPR is
insufficient to show why different claim construction positions are
warranted).

We also remind Petitioner's counsel of their duty of candor and good
faith to the Office during the course of a proceeding pursuant to 37 C.F.R.
§ 42.11. Patent Owner should not have been the first party to inform the
Board as to Petitioner's different claim construction positions in the two
forums.

IPR2025-01055
Patent 8,027,326 B2

To be clear, we do not opine in this Decision on whether the Challenged Claims satisfy the requirements of 35 U.S.C. § 112.

### 2. *"Partially Filling" Versus "Completely Filling" the Frequency Gap*

Claim 1 recites, in part, "*partially* filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap" ("Partially Filling Limitation"). Ex. 1001, 17:37–39 (emphasis added).  In district court, *before* filing its Petition here, Petitioner argued that "[t]he specification does not provide an explanation of what constitutes 'partially' filling/filled in a way that distinguishes it from fully filling/filled": "What percentage of the frequency gap must be filled for it to be considered 'partial'?  Does 'partially' refer to uniformly distributed subcarriers or only some regions being filled?" Ex. 2014, 194 (arguing indefiniteness and lack of written description).  This shows that Petitioner recognizes the importance of the meaning of "*partially*" to its patentability challenges given its choice of asserted art, which involves "fully" or "completely" filling that gap (discussed below in Section III.D); *see* Prelim. Resp. 24 n.1 (Patent Owner arguing, "Petitioner's indefiniteness position is necessarily predicated on an understanding that the claims cover *partially filling* the gap by not *fully* filling the gap.").  Yet, in the Petition, Petitioner does not proffer an explicit construction for "partially" as used in this claim 1 limitation.  This too favors denial of institution.  *See* 37 C.F.R. § 42.104(b)(3) (*Petitioners* must clearly articulate *in the petition* "[h]ow the challenged claim is to be construed.").

Nonetheless, for completeness and for purposes of addressing Petitioner's patentability challenges, we construe below the meaning of

14

IPR2025-01055
Patent 8,027,326 B2

"partially" as used in the subject limitation, but only to the extent necessary
to resolve whether to institute *inter partes* review in this case. We turn first
to the claim language itself. We are mindful of Judge Rich's guidance from
over thirty years ago: in all aspects of claim construction, "the name of the
game is the claim." *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)
(quoting Giles Sutherland Rich, *Extent of Protection and Interpretation of
Claims–American Perspectives*, 21 Int'l Rev. Indus. Prop. & Copyright L.
497, 499 (1990)).

Claim 1 explicitly recites "partially," not "fully" or "completely." On
its face, "partially" appears to have its plain and ordinary meaning, i.e., *not*
completely. The use of "partially" in the subject limitation shows or at least
strongly suggests that the claimed invention contemplates at least some
frequency gap to remain between the first channel and the second channel.
In addition, as argued persuasively by Patent Owner, this interpretation is
further supported by claim 1's requirement of "transmitting data subcarriers
occupying the first channel, the second channel, *and the frequency gap in
parallel* to a receiver":

> [T]he "transmitting" step in claim 1 requires that the *frequency
> gap be included in the transmitted signal*. Inclusion of the
> frequency gap in the transmitted signal necessarily requires that
> the frequency gap be *only partially filled* -- but *not fully filled* --
> with added data subcarriers at the time of transmission, because
> if the frequency gap were *fully filled it would no longer exist* at
> the time of signal transmission.

Prelim. Resp. 23. Petitioner offers no explanation for how the language of
claim 1 itself would allow for "partially" to encompass "completely."

During prosecution of the application underlying the '326 patent, the
Applicant argued repeatedly that systems where the guard bands are entirely

15

IPR2025-01055
Patent 8,027,326 B2

removed and adjacent channels are connected (without any gap) along the frequency axis are outside the scope of the claims, and introduced the term "partially" to provide for this. *See, e.g.*, Ex. 1002, 201 ("*Okada describes removing all guard bands* between the channels. *In contrast*, amended claim 1 recites '*partially filling the frequency gap* between the first channel and the second channel with a plurality of data subcarriers.'" (emphasis altered)); 162–163 ("*Okada discloses use of connected transmission groups* that are made up of channels. . . . [A]s argued in the previous response, at most, Okada merely describes *removing all guard bands between the channels* (Okada, ¶ 0009), *not* '*partially* filling the frequency gap between the first channel and the second channel with a plurality of data subcarriers.'" (emphases added)); 105 ("*Okada teaches removing the guard bands and combining the channels in such a way to fully use the guard band*, *i.e.*, connect the channels in the sense of frequency axis. . . . However, *merely removing guard bands as disclosed by Okada is not the same as* '*partially filling the frequency gap* between the first channel and the second channel by adding one or more data subcarriers into the frequency gap,' as claimed." (emphases added)).

Patent Owner, in its Preliminary Response, analyzed in detail the substantial prosecution history concerning the term "partially" (Prelim. Resp. 6–22), such as cited above, and argues persuasively:

> [N]umerous statements made by the Applicant during the prosecution history make clear a system where the *guard bands are **fully** used to connect channels* along the frequency axis is *outside the scope of the claims*, which are limited to "***partially*** filling the frequency gap."

IPR2025-01055
Patent 8,027,326 B2

Prelim. Resp. 6; *see id.* at 23 (Patent Owner arguing, "Both the language in the 'transmitting' step in claim 1, as well as the prosecution history, make clear that systems where the <u>*guard bands are fully filled*</u> and the frequency gap is <u>*totally eliminated*</u>, are outside the scope of the claims."). Petitioner offers no explanation for how the prosecution history would support "partially" encompassing "completely." We find the prosecution history supports interpreting "partially" to have its plain and ordinary meaning, i.e., *not* completely.

Accordingly, for purposes of determining whether to institute *inter partes* review in this case and based on the record before us, we determine that "partially," as recited in the claim 1 limitation "*partially* filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap," *excludes* "completely" or "fully" filling the frequency gap.

### D. *Alleged Obviousness of Claims 1–18 over the Combinations of (1) Gardner and Mori and (2) Mori, Lu, and Williams*

Petitioner contends claims 1–18 would have been unpatentable under 35 U.S.C. § 103 as obvious over the combinations of (1) Gardner (Ex. 1006) and Mori (Ex. 1008) and (2) Mori, Lu (Ex. 1010), and Williams (Ex. 1011). Pet. 20–54, 59–78. Patent Owner opposes Petitioner's contentions. Prelim. Resp. 25–45. Based on our review of the record before us, we determine that Petitioner has not established a reasonable likelihood that it would prevail in showing that any of independent claims 1, 16, and 18 (and thus any Challenged Claim) would have been unpatentable as obvious over either of these two combinations.

IPR2025-01055
Patent 8,027,326 B2

For all but one sentence of Petitioner's arguments for how each of the subject combinations allegedly would have taught the Partially Filling Limitation as variously recited in claims 1, 16, and 18, Petitioner relies (implicitly) on a construction of "partially" that allows for *completely* filling the frequency gap between the first channel and the second channel, and alleges that the asserted combinations teach *completely* filling such gap. *See* Pet. 26–28 (Gardner and Mori), 64–67 (Mori, Lu, and Williams); Prelim. Resp. 25–29, 38–40 (Patent Owner agreeing that the asserted combinations teach only *completely* or *fully* filling the frequency gap.). We reject such a construction of "partially" as discussed above in Section III.C.2, and thus find Petitioner's arguments unpersuasive.

For its remaining one sentence, Petitioner argues:

> Moreover, *to the extent the claim requires partially* (as opposed to completely) filling the frequency gap, it would be obvious to [the skilled artisan] *to modify* the teachings of Gardner and Mori [or of Mori, Lu, and Williams] *to the extent necessary to satisfy the claim limitation*.

Pet. 28 (Gardner and Mori), 67 (Mori, Lu, and Williams) (emphases added). We find this to be a peculiar statement, given that claim 1 explicitly recites "partially" and not "completely," and find the argument unpersuasive for many reasons.

First, Petitioner's only cited support for this conclusory statement is testimony of its own declarant, Dr. Easttom, which merely repeats the conclusory statement verbatim, without any explanation or additional citations to evidence. *See* Ex. 1004 ¶¶ 156, 359. We give such conclusory, unsupported assertions by Petitioner's declarant little or no weight. *See In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1368 (Fed. Cir. 2004)

18

IPR2025-01055
Patent 8,027,326 B2

("[T]he Board is entitled to weigh the declarations and conclude that the lack of factual corroboration warrants discounting the opinions expressed in the declarations."); *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (noting that a fact finder is not required to "credit the unsupported assertions of an expert witness"); 37 C.F.R. § 42.65(a) ("Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight.").

Second, Petitioner does not identify specifically which teachings of Gardner and Mori or of Mori, Lu, and Williams would need to be modified to achieve the Partially Filling Limitation. Petitioner merely proffers the vague statement that the asserted art would need to be modified "to the extent necessary to satisfy the claim limitation" (Pet. 28, 67).

Third, Petitioner does not explain *why* the skilled artisan would have made such modifications to the teachings of Gardner and Mori or of Mori, Lu, and Williams specifically *to achieve the Partially Filling Limitation*. *See* Prelim. Resp. 29–30 ("Completely absent from the Petition is *any* reasoning explaining *why* such a modification would have been obvious. The expert declaration discloses a similar sentence making the same allegation, but also fails to provide *any* reasoning explaining *why* such a modification would have been obvious."); *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1360 (Fed. Cir. 2019) ("We rejected [the expert's] testimony because it 'fail[ed] to explain why a person of ordinary skill in the art would have combined elements from specific references *in the way the claimed invention does*.' We explained that '[k]nowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references.'" (citations omitted)).

IPR2025-01055
Patent 8,027,326 B2

In sum, we have considered Petitioner's arguments and cited evidence concerning whether the combinations of Gardner and Mori or of Mori, Lu, and Williams would have taught or suggested to the ordinarily skilled artisan the features of the Partially Filling Limitation, and do not find them sufficiently persuasive on the record before us.  Rather, we agree with Patent Owner's arguments and cited evidence outlined above and find them sufficiently persuasive to demonstrate Petitioner failed to meet its burden of proof in this case.  Accordingly, for the reasons expressed above and based on the record before us, we determine that Petitioner has not established a reasonable likelihood that it would prevail in showing that any one of independent claims 1, 16, and 18 is unpatentable as obvious over the combinations of Gardner and Mori or of Mori, Lu, and Williams.

Claims 2–15 and 17 depend, directly or indirectly, from independent claims 1, 16, or 18.  Ex. 1001, 17:50–18:52.  Based on the record before us, we determine that Petitioner's analysis for claims 2–15 and 17 does not remedy the deficiencies identified above with respect to independent claims 1, 16, and 18.  *See* Pet. 33–54, 71–78.  Thus, for the same reasons discussed in connection with the challenges to independent claims 1, 16, and 18, we determine that Petitioner has not established a reasonable likelihood that it would prevail in showing that any of claims 2–15 and 17 is unpatentable as obvious over the combinations of Gardner and Mori or of Mori, Lu, and Williams.

IPR2025-01055
Patent 8,027,326 B2

> ### E. Alleged Obviousness of Dependent Claims 12 and 13 over the Combinations of (1) Gardner, Mori, and Bolinth and (2) Gardner, Mori, and Williams

Petitioner contends claims 12 and 13 would have been unpatentable under 35 U.S.C. § 103 as obvious over the combinations of (1) Gardner (Ex. 1006), Mori (Ex. 1008), and Bolinth (Ex. 1009) and (2) Gardner, Mori, and Williams (Ex. 1011).  Pet. 54–59.  Patent Owner opposes Petitioner's contentions.  Prelim. Resp. 38.  Claims 12 and 13 both depend indirectly from independent claim 1.  Ex. 1001, 18:10–20.  Based on the record before us, we determine that Petitioner's analysis for claims 12 and 13 does not remedy the deficiencies identified above with respect to independent claim 1.  *See* Pet. 54–59.  Thus, for the same reasons discussed in connection with the challenges to independent claim 1, we determine that Petitioner has not established a reasonable likelihood that it would prevail in showing that either of claims 12 and 13 is unpatentable as obvious over the combinations of Gardner, Mori, and Bolinth or of Gardner, Mori, and Williams.

## IV.  CONCLUSION

Petitioner has not demonstrated a reasonable likelihood of prevailing with respect to any of claims 1–18 of the '326 patent under any of its proffered challenges.

## V.  ORDER

For the reasons given, it is hereby

ORDERED that the Petition is *denied*, and an *inter partes* review of U.S. Patent No. 8,027,326 B2 is not instituted.

IPR2025-01055
Patent 8,027,326 B2


For PETITIONER:

Keith D. Harden
Daniel E. Venglarik
MUNCK WILSON MANDALA, LLP
kharden@munckwilson.com
dvenglarik@munckwilson.com

John B. Campbell
Casey Shomaker
MCKOOL SMITH, P.C.
jcampbell@McKoolSmith.com
cshomaker@mckoolsmith.com


For PATENT OWNER:

Brandon R. Theiss
Daniel H. Golub
Ryan W. O'Donnell
Dawn C. Kerner
VOLPE KOENIG
BTheiss@vklaw.com
DGolub@vklaw.com
RODonnell@vklaw.com
DKerner@vklaw.com

Russell J. Rigby
INTELLECTUAL VENTURES I LLC
rrigby@intven.com