# **Exhibit 12**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

- - - - - - - - - - - - - - - - - x

INTELLECTUAL VENTURES I, LLC, : Civil Action No.
and INTELLECTUAL VENTURES II, : 4:24-cv-00980
LLC,                           :

      Plaintiffs,             :

v.                              :

AMERICAN AIRLINES, INC.,        :

      Defendant.              :

- - - - - - - - - - - - - - - - - x

VIDEOCONFERENCED AND VIDEO-RECORDED DEPOSITION

OF

JOSEPH D. CAMP, PH.D.

DALLAS, TEXAS

Tuesday, March 17, 2026

11:00 a.m.

Job No. 625142

Pages: 1 - 140

Reported By: April L. Crites, RMR, CRR, CSR, CCR

Texas Certified Shorthand Reporter No. 12277

DEPOSITION OF JOSEPH D. CAMP, PH.D.

HELD AT THE OFFICES OF:


Southern Methodist University

Lyle School of Engineering

ECE Department, Junkins Building

6251 Airline Road, No. 340

Dallas, Texas 75205

(214) 768-3050


\*    \*    \*


Pursuant to notice, and pursuant to the

Federal Rules of Civil Procedure,

before April L. Crites, RMR, CRR, CSR, CCR,

and Certified Shorthand Reporter,

State of Texas.


\*    \*    \*

art"?

12:19:54

 BY MR. SCOTT:

12:19:56

    Q    Do you consider the phrase "time slot" to be well known in the art?

12:19:57
12:20:01

        MR. DOWNING:  I believe he asked you a question, to define the term, Counsel.

12:20:06
12:20:10

        MR. SCOTT:  I don't need to answer his questions, I'm -- I'm here to ask my own questions, so --

12:20:14
12:20:15
12:20:18

        MR. DOWNING:  I thought -- I thought you said at the beginning of the deposition, if he was unclear about terms, you would -- you would provide clarification for him.  I believe his --

12:20:18
12:20:19
12:20:21
12:20:23
12:20:25

        MR. SCOTT:  And I just provided clarification in the form of another question, Counsel.

12:20:26
12:20:26
12:20:28

 BY MR. SCOTT:

12:20:29

    Q    So here's the question that I'd like you to answer, Dr. Camp.

12:20:29
12:20:31

    A    Okay.

12:20:32

    Q    Do you understand "time slot" to be well known in the art?

12:20:34
12:20:37

        MR. DOWNING:  Objection to form.

12:20:39

        THE WITNESS:  "Time slot" is the

12:20:41

fundamental unit in a 3GPP system, so, yes.    12:20:43

 BY MR. SCOTT:    12:20:48

Q    Thank you.    12:20:48

So let's go to paragraph 40 of your    12:21:38
declaration.    12:21:43

A    Okay.    12:21:49

Q    You say in paragraph 40, In my opinion,    12:21:54
a POSITA would understand that the '000 patent    12:21:58
uses the term "time interval" to refer to a    12:22:01
defined scheduling interval within a frame, and    12:22:05
would not understand "time interval" to    12:22:09
encompass arbitrary or undefined periods of    12:22:13
time.    12:22:18

Is it your opinion that time interval    12:22:18
could be construed as a defined scheduling    12:22:21
interval within a frame?    12:22:24

A    My opinion is that "time interval"    12:22:37
should be used for its plain and ordinary    12:22:40
meaning, because the patent talks about at    12:22:42
least three different types of time intervals.    12:22:45
And so, therefore, it's being used as a general    12:22:50
term.    12:22:53

Q    Okay.    12:22:56

MR. SCOTT:  I'm going to introduce the    12:22:59
'000 patent as I think Exhibit 3.    12:23:01

(Defendant's Exhibit 3, United States Patent No. 11,032,000, June 8, 2021, was marked and presented for purposes of identification.)

BY MR. SCOTT:

Q    Is that coming up for you, Dr. Camp?

A    Yes.

The other two just automatically went to my downloads, and this one didn't ask me where it went, so it took me longer, sorry.

Q    No problem.

A    All right.  I've got it.

Q    Okay.  So you just said, and correct me if I'm wrong, the patent talks about at least three different types of time intervals.

So could you go ahead and lay out for me those three different types referring to the patent?

A    Sure.  So the abstract talks about a time interval that is not sending information over a physical uplink shared channel.  So that it's -- there's a definition there to deal with -- there's an aspect of it that's there that's saying it can't be over a shared channel.

And then there are different embodiments

Transcript of Joseph D. Camp, Ph.D.
Conducted on March 17, 2026          46

that figure 2 and figure 3 describe.  So in figure 2, the description has the uplink-beacon pictured as one time slot or the fundamental unit of time in 3GPP.  But then figure 3 talks about fractionation and what fractionation is, is where -- it says that there might be a concern for multiple UEs using the same time slot.  And so you basically spread that time slot over -- in figure 3 has one embodiment where you have three phases where that time slot is dedicated to three different UEs.

And then, in one -- the third aspect of that, so that there's the figure 2, which is one time slot, there's a figure 3, which is over multiple frames, there's one slot, and then there's one last aspect.

Okay.  So do you see in 635 to 37, it reads, In particular, this may also apply for the case where there are more than one uplink-beacon time slots per frame, so then there's a third embodiment where there's multiple time slots within one frame.

So you have figure 2 having one time slot, you have figure 3 having one time slot per frame, but then the fractionation could

12:24:30
12:24:37
12:24:45
12:24:49
12:24:57
12:25:05
12:25:07
12:25:13
12:25:16
12:25:23
12:25:26
12:25:32
12:25:37
12:25:41
12:25:44
12:25:49
12:26:00
12:26:06
12:26:10
12:26:12
12:26:17
12:26:21
12:26:26
12:26:30
12:26:33

Transcript of Joseph D. Camp, Ph.D.
Conducted on March 17, 2026                    47

scale to allow scalability in your system and

you have more UEs.

And then, there could be a third type of

time interval that has multiple time slots

within a given frame.

And all of this is under the context of

the abstract saying, This is not on the shared

channel.

Q   Can you show me where in figures 2, 3,

or column 6 the phrase "time interval" is

mentioned?

A   Only the abstract in the claims have

that term, "time interval," but there is three

different embodiments of how a time slot is

used in a time interval.

Q   And so you agree that only the abstract

in the claims of the '000 patent use the phrase

"time interval"?

A   Sure.  If you do a search, you don't

find it in the middle.

Q   So what indicates to you that figures 2

or 3 refer to a time interval?

A   Because if you go through claim 1, there

is the use -- I guess, you know, I had it in my

report, one in the other claims, but if you go

Transcript of Joseph D. Camp, Ph.D.
Conducted on March 17, 2026                    59

So my worry with construing time interval to be time slot is you immediately go to the fundamental time unit of 3GPP, but here, it's using that fundamental unit of time slot in three different fashions, and the intervals that -- again, it's been both the abstracts and the claims in this patent, as well, are defined according to those -- all of the embodiments, not just one embodiment.

Q    So you disagree with it?

A    I do.

MR. SCOTT:  I'm going to introduce Exhibit 6, and this is the Patent Owner's Preliminary Response in that same proceeding. So it's the IPR2022-01130 proceeding for the '356 patent.

(Defendant's Exhibit 6, USPTO, before the PTAB, Case No. IPR2022-01130, U.S. Patent No. 8,811,356, Patent Owner's Preliminary Response, was marked and presented for purposes of identification.)

BY MR. SCOTT:

Q    And on page 1, you see that Intellectual Ventures II, LLC, is listed as patent owner?

A    I see that.

Transcript of Joseph D. Camp, Ph.D.
Conducted on March 17, 2026                    66

'000 patents?

A    That's my understanding.

Q    Okay.  So let's go to -- back to your declaration.

A    Okay.

Q    And you discuss the "time interval" and "time intervals" term on pages 9 to 10 of your specification, right?

A    Nine to ten.  Yes.  Mm-hmm.

Q    So take as much time as you need to review that section, but my question for you is: Do you agree that you have not cited any intrinsic evidence to support your opinion for the '000 patent?

A    So let me make sure I understand the question.  So you're saying that just because I don't have references to the intrinsic evidence -- you're saying there's no references to the specification in this paragraph -- or these paragraphs?

Q    Correct.

A    Okay.  So what the patent would have -- a person of ordinary skill in the art would understand is that when you try to stuff too many UEs into one slot, you have problems.  And

12:59:37
12:59:38
12:59:40
13:00:00
13:00:01
13:00:06
13:00:08
13:00:14
13:00:15
13:00:18
13:00:21
13:00:26
13:00:30
13:00:33
13:02:01
13:02:03
13:02:06
13:02:09
13:02:13
13:02:15
13:02:16
13:02:17
13:02:52
13:02:55
13:02:57

so a UE -- a POSITA would understand that you can't just have one slot for all UEs to send uplink information.  At some point, you start to run out of codes in the CDMA structure, and you need more slots.

So that's why the patent talks about fractionation, and it talks about multiple beacon slots -- time slots to communicate that feedback information in the uplink direction. And so that's what I was referring to here, is all of those different ways in which a POSITA would understand that you can't just do one slot, you have to do -- in some instances where there's a sufficient number of UEs trying to communicate in the uplink direction, you run out of codes in a CDMA context, so, therefore, you have to either spread it over multiple frames or put -- put it in multiple slots in one frame.

Q    Can you -- but you don't cite to anything in the '000 patent in this section, do you?

A    I do not.

Q    And with your explanation that you just offered, what were you referring to in this --

Transcript of Joseph D. Camp, Ph.D.
Conducted on March 17, 2026                    106

Let's move on to the next section on your report, and this is going to be with reference to a plurality of UEs transmitting.

MR. SCOTT:  You know, we've been going about an hour, we can forge on to the next section or -- I'll leave it up to you, Dr. Camp.

THE WITNESS:  I'm okay to keep going.

MR. SCOTT:  Okay.

BY MR. SCOTT:

Q   Okay.  So let's refer to the claim element in claim 1 of the '000 patent, and I understand that you do not believe claim 1 claims an apparatus in the method step; is that correct?

A   That's right.  I view it as an apparatus, not a method step.

Q   So you think there are no method steps claimed in claim 1, correct?

A   I think claim 1 is defining a configuration configured to a situation where the UE has the capability to do those things.

Q   Okay.  And you see in the second-to-last -- well, let me -- let me just draw your attention to column 10, lines 3

STATE OF OHIO                    )
                                 ) : CERTIFICATE
COUNTY OF CLERMONT               )


        I, April L. Crites, RPR, RMR, CRR, a

Notary Public within and for the state of Ohio,

and a Texas Certified Shorthand Reporter, duly

commissioned and qualified,

        DO HEREBY CERTIFY that the above-named

JOSEPH D. CAMP, Ph.D., was by me first duly sworn

to testify the truth, the whole truth, and nothing

but the truth;

        Said testimony was reduced to writing by

me stenographically in the presence of the witness

and thereafter reduced to typewriting;

        I FURTHER CERTIFY that I am not a relative

or attorney of either party, in any manner

interested in the event of this action, nor am I,

or the court reporting firm with which I am

affiliated, interested in the disposition of this

matter.

IN WITNESS WHEREOF, I have hereunto set my

hand and seal of office at Amelia, Ohio, on this

18th day of March, 2026.

_____
APRIL L. CRITES, RPR, RMR, CRR
NOTARY PUBLIC, STATE OF OHIO
My commission expires 10-3-2027

Texas Certified Shorthand Reporter 14422
My certification expires June 30, 2026

                        *   *   *