# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

INTELLECTUAL VENTURES I      )
LLC and INTELLECTUAL         )
VENTURES II LLC,             )
                             ) Case No. 4:24-CV-980
          Plaintiffs,        )
                             )
     vs.                     )
                             )
AMERICAN AIRLINES, INC.,     )
                             )
          Defendant.         )
_____ )

VIDEOTAPED DEPOSITION OF

MICHAEL SHAMOS, PhD

March 16, 2026

12:58 p.m.

Via Zoom Videoconference

Marianne R. Wharram, RPR, CRR
CCR #6121-5296-5647-5648

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 2

APPEARANCES OF COUNSEL

On behalf of the Plaintiffs:
     PAULA Y. AJUMOBI, ESQ., and
     JECEACA AN, ESQ.
     KASOWITZ, LLP
     1633 Broadway
     New York, NY  10019
     (212) 506-1700
     pajumobi@kasowitz.com
     jan@kasowitz.com

On behalf of the Defendant:
     ALAN P. BLOCK, ESQ.
     McKOOL SMITH
     300 Grand Avenue, Suite 2900
     Los Angeles, CA  90071
     (213) 694-1054
     ablock@mckoolsmith.com

Also Present:
     LIONEL MILEMAN, VIDEOGRAPHER

                              - - -

Page 3

INDEX TO EXAMINATIONS

WITNESS                                              PAGE

MICHAEL SHAMOS, PhD

Examination by Ms. Ajumobi                              5

Examination by Mr. Block                               --


INDEX TO EXHIBITS

NO.                  DESCRIPTION                     PAGE

Exhibit 1  104 pages, Markman Declaration of           8
           Michael Shamos, PhD

Exhibit 2  16 pages, United States Patent              13
           7,712,080, Systems and Methods for
           Parallel Distributed Programming

Exhibit 3  17 pages, Distributed Shared Memory:        33
           Concepts and Systems, by Protic,
           et al.

Exhibit 4  242 pages, Patent Application               43
           No. 10/850,842 Prosecution History

Exhibit 5  73 pages, Declaration of Michael            49
           Shamos, PhD, JD, American Airlines,
           Inc., et al., versus The Regents of
           the University of California


     (Original Exhibits 1 through 5 have been
attached to the original transcript.)

Page 4

P R O C E E D I N G S

VIDEOGRAPHER:  Good afternoon.
We are on the video record at 12:58 p.m. on
Monday, March 16, 2026.

Please note that this deposition is
being conducted virtually.  Quality of
recording depends on quality of the camera
and Internet connection of participants.
What is seen from the witness and heard on
screen is what will be recorded.

Audio and video recording will
continue to take place unless all parties
agree to go off the record.

This is media unit one in the
video-recorded deposition of Michael Shamos
taken by counsel for plaintiff in the
matter of Intellectual Ventures I LLC,
et al., versus American Airlines, Inc.,
filed in the US District Court, Eastern
District of Texas, Sherman Division.

The location of this deposition is
being conducted remotely using virtual
technology.  My name is Lionel Mileman,
representing Veritext.  I am the
videographer.  The court reporter is

Page 5

Marianne Wharram from the firm Veritext.

Would counsel and all present please introduce yourselves, after which the court reporter will swear in the witness.

MS. AJUMOBI:  Paula Ajumobi on behalf of plaintiff, Intellectual Ventures, from Kasowitz, LLP.

MR. BLOCK:  Alan Block of McKool Smith on behalf of the defendant, American Airlines, Inc.

COURT REPORTER:  Dr. Shamos, at this time, I'll ask you to please raise your right hand to take an oath.

THE WITNESS:  Yeah, before you do that, I want to make sure that everybody who is on has introduced themselves.

COURT REPORTER:  We also have with us Attorney An from the Kasowitz law firm.

THE WITNESS:  Okay.

MICHAEL SHAMOS, PhD, having been duly sworn by the court reporter, was deposed and testified as follows:

EXAMINATION

BY MS. AJUMOBI:

Q.    Good morning, Dr. Shamos.  How are you?

Michael Shamos , Ph.D.                     March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 6

A.    Okay.  I actually have a torn Achilles tendon, but aside from that, I'm okay.

Q.    Oh, no.  What did -- how did that happen?

A.    I just fell on the stairs in my house, and my foot got caught in the carpet and twisted, and so I'm kind of immobile.

Q.    I'm sorry to hear that.

It's nice to see you again in a different capacity.

Hopefully, this won't take too long, but can you please state and spell your name for the record?

A.    Yes.  It's Michael Shamos, S-H-A-M-O-S.

Q.    Dr. Shamos, have you taken any substances that would impact your ability to testify truthfully today?

A.    No.

Q.    Okay.  Great.

How many times have you been retained as an expert in a patent litigation case?

A.    Oh.  I can get that information for you exactly in one second.  I'm going to go look at my CV, which has it.  Hang on.  It has a current count. That would be 325.

Q.    That's a big number.

Page 7

To the best of your knowledge, in how many of those matters have you offered any claim construction opinion?

A.    Oh, I would -- probably a hundred.

Q.    So let's move on to this case.  In this case, when were you first retained for this matter?

A.    Okay.  I'm going to go look at my engagement letter and let you know from that. January 21st, 2025.

Q.    January 21st, 2025?  Okay.

A.    Yes.

Q.    Approximately how many hours have you spent on this matter, if you know?

A.    Approximately, 114.7.

Q.    In this case, what were you asked to do by counsel?

A.    Well, I initially participated in some IPRs, and I was asked to prepare a Markman declaration in connection with this litigation.

Q.    Okay.  Is any portion of your compensation contingent on the outcome of this case?

A.    No.

Q.    Have you previously taken a public position in a paper, textbook, presentation, or prior litigation on the meaning of any term at issue in

Page 8

this case?

A.    Oh, let me take a look.  What I'm doing is I'm looking at the terms, reviewing -- I never considered that before, so let me take a look.

It's conceivable that I -- that I -- there may have been a case in which the term node was used, but it wouldn't be in the same context as in this patent.

Q.    Do you know what situation that was in?

A.    No.  I mean, I could do some searches and maybe find out.

Q.    Okay, so what did you do to prepare for today's deposition?

A.    So I read -- I re-read my declaration and I re-read your expert's declaration.

Q.    Anything else?

A.    No, actually.

Q.    Okay.  I'm going to introduce Exhibit 1 in Exhibit Share.

(Exhibit 1 marked for identification.)

Q.    Please let me know when that pops up.

One moment.  Actually, before we move on, did you meet with counsel to prepare for this deposition?

A.    No.

Page 9

Q.    You had no meetings with counsel?

A.    Not with respect to the deposition. I certainly had meetings when I was preparing the Markman declaration.

Q.    Do you know how many meetings you had when you were preparing the Markman declaration?

A.    No.  Occasionally, we'd meet by Zoom, but there was information conveyed by e-mail which wasn't exactly a meeting, but it's kind of a delayed meeting.

Q.    Understood.

Sorry.  So I said I would introduce Exhibit 1.  Do you see that in front of you?

A.    Yes.

Q.    Okay.  Great.

Do you recognize this document?

A.    Let me -- well, I certainly recognize -- I recognize the face page.  Let me just take a look at the rest of it, though.  In particular, I'm going to the -- to the last page.

Unfortunately, Exhibit Share seems to be a little weird.  I don't have a slide bar that allows me to navigate easily through the document.  I think I have to type page numbers.

Q.    Oh, okay.

Page 10

MR. BLOCK:  I think if you hit download, then it downloads and you can use the slide bar.

THE WITNESS:  Aha.  There you go. Thank you.

A.    Yes, I recognize it, and it's my Markman declaration, even though the word Markman is misspelled.

Q.    (By Ms. Ajumobi)  Okay.  This declaration contains your opinions relating to claim construction of the '080 patent.  And by '080 patent, I mean US numbered patent 7,712,080.  Is that correct?

A.    Yes, it is.

Q.    Okay.  Does your declaration contain the entirety of your opinions relating to this patent?

A.    Probably not.  Oh, relating to the patent?

Q.    Yes.

A.    Certainly not.  Do you mean relating to the construction of claim terms?

Q.    That was about to be my next question, but yes, does this declaration contain the entirety of your opinions relating to claim -- the construction of claim terms?

A.    Probably not.

Q.    Well, where else would be your opinions

Michael Shamos , Ph.D.                           March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 11

for the construction of claim terms?

A.     In my head.

Q.     Okay.  Well, is there anything you can think of right now that you would want to add to your declaration?

A.     No.

Q.     Okay, so it's correct that you might have other opinions relating to claim construction that's not in this declaration?

A.     I'm sure I do.

Q.     Okay.  Do you have any other opinions relating to those patents that are not provided in your declaration?  To other patents -- excuse me --

MR. BLOCK:  Object to form.

Q.     (By Ms. Ajumobi)  -- in this case.

MR. BLOCK:  Still object to form.

A.     I haven't been asked to form any opinions.

Q.     (By Ms. Ajumobi)  Okay.  You signed this declaration on February 12th of this year, correct?

A.     Let's see.  Yes.

Q.     Okay.  Can we go to paragraph 2?  If you can scroll down to paragraph 2?

A.     I'm there.

Q.     It states that you reviewed the '080 patent, as well as -- I'm not looking at the right

Michael Shamos , Ph.D.                              March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 12

thing.  Sorry.

A.    I think there is a paragraph on materials considered.

Q.    Yes, I think I stated the wrong paragraph. One moment.

A.    I think that's 18.

Q.    Yes.  Thank you.

You state that you reviewed the '080 patent, as well as its prosecution history and other materials listed in Exhibit 2.  Is that correct?

A.    Yes.

Q.    Okay, so do you know what other documents you're referring to in this paragraph?

A.    When you say the other documents, do you mean the materials listed in Exhibit 2?

Q.    Yes.

A.    Well, we can go to Exhibit 2.

Q.    Sure.

A.    I considered those materials.

Q.    Okay.  Are there any other materials you considered for this declaration that are not on this materials considered list?

A.    Not to my knowledge.  I -- I endeavored to be complete about this.

Q.    Okay.  Great.

Page 13

Let me scroll back up.  So I'm going to introduce another exhibit so that we just have it already introduced into the record.  One moment.

(Exhibit 2 marked for identification.)

Q.    Okay.  Do you see what has now been marked as Exhibit 2?

A.    Yes.  That's the patent at issue.

Q.    Did you review this document in its entirety --

A.    Yes.

Q.    -- Dr. Shamos?

A.    Yes, I did.

Q.    Okay.  Great.

So now, we're going to go back to your declaration, which you should be able to access on Exhibit Share as well.  Let me know when you're back on your declaration.

A.    Yeah.  Hang on.  I'm there.

Q.    Okay.  Great.

Can you please scroll down to the end of page 13, where it says distributed parallel computing programming?

A.    Yes.

Q.    Okay, so is it your opinion that distributed parallel computing program should be

Michael Shamos , Ph.D.                                March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 14

construed as a program that computes using multiple

concurrent distributed sequential computing programs

configured to operate across multiple

processors/nodes and multiple memories?

A.    Yes, except I wouldn't put the word 'a' in

front of it.

Q.    Okay.  That's fine.

A.    But all the other words were correct.

Q.    Okay.  In reaching your opinions for this

term, you rely on the specification at columns five,

lines 57 through 59 of the '180 patent, and column

two, lines 10 through 12.  Is that correct?

A.    It's the '080 patent.

Q.    Sorry.  '080 patent.

A.    Yes.

Q.    My apologies.

A.    Well, that's part -- that's part of what

I rely on, yes.

Q.    Part of what you rely on.  Okay.

What else did you rely on?

A.    Well, I rely on the fact that I did a

Google search for this term to determine whether it

was a term of art having a known meaning, and I was

able to determine that it isn't.

Q.    Okay, so do you typically Google-search

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 15

the terms you're asked to construe?

A.    When I've never heard the term before,
I usually -- I usually do a Google search, but it's
often useful for terms of art to see at the time of
the patent what the art thought that the term meant.

Q.    Okay.  You said when you've never heard of
the term.  Are you saying that you didn't -- you
hadn't heard of the term distributed parallel
computing program before writing your declaration?

A.    That's right.  I never heard those
four words used in that order.  I've heard --
I've heard of all those words individually before,
and I've heard of parallel computing before, and
I know what a parallel computing program is, but the
term distributed parallel computing program has a
special meaning in this patent.

Q.    And that was -- you did hear a bit --
sorry.  Let me strike that.

You had not heard of this term before
writing this specific declaration.  Is that correct?

MR. BLOCK:  Object to form.

A.    Well, I hadn't heard of it before I read
the patent.

Q.    (By Ms. Ajumobi)  Before you read the
patent?  Okay.

Veritext Legal Solutions
800.808.4958                                              770.343.9696

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 16

A.      That's right.

I don't -- I don't know that too many other people have heard of it, either, because the Google search didn't reveal much other than this litigation.

Q.      Okay.  Let's scroll down to paragraph 55 of your declaration.

A.      I'm there.

Q.      So in that paragraph, you state, one might be lured into believing that a distributed parallel computing program is simply a parallel computing program that is distributed.  However, that interpretation is ambiguous, because it is not clear whether memory is distributed and/or whether processing is distributed.  Further, parallel programs that were distributed in some way were long known in the prior art.  Patentee's definition and defendant's proposed construction is unambiguous.

Did I read that correctly?

A.      Yeah, except you left out the introductory phrase, in the absence of patentee's lexicography, one might be lured.

Q.      Okay.  My question is do you believe -- no.  Is it your opinion that your construction of this term makes it clear whether memory or processing

Michael Shamos , Ph.D.                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 17

is distributed?

          MR. BLOCK:  Objection.

     A.     It does.

     Q.     (By Ms. Ajumobi)  Okay.

     A.     Yes.  They're both distributed, because
there are multiple processors and multiple memories.

     Q.     Can you just explain how your construction
of this term makes it clear that both processors and
memories are being distributed?

     A.     Sure.  Because it -- coming back to the
construction, it says configured to operate across
multiple processors slash nodes and multiple
memories.

     Q.     Okay.  In paragraph 53 of your
declaration -- I don't have to read every paragraph,
but can you please review paragraph 53 of your
declaration?

     A.     Sure.  I have done so.

     Q.     It's your opinion that parallel
distributed computing program and distributed
parallel computing program are synonymous, correct?

     A.     Well, I drew that conclusion.  And the
reason is because one of them appears only in the
specification, and the other one appears only in the
claims.  And so I assumed that the one in the claims

Michael Shamos , Ph.D.                                      March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 18

referred to the permutation that was in the specification.

Q.    Okay, but do you have any other reason as to why you believe they're synonymous?

A.    I don't think I need another reason. Neither -- neither of those terms is a term of art. The only place we can find out what they mean is by looking in the specification; that is, the specification and the claims.  There is no other source for that.

Q.    Okay.  In your opinion, can a distributed parallel computing program in the context of the '080 patent be deployed in a single processor environment?

A.    Well, no.

Q.    Why not?

A.    Because it has to operate across multiple processors.

Q.    Can we go back to the patent, Exhibit 2, and can you please scroll down to column five --

A.    Yeah.

Q.    -- line -- let me make it bigger.

A.    Yeah, hang on a second.  It turns out that when I download, I can only see one doc-- I can't flip back and forth between documents, so what I'm going to do is look at my copy of the patent

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 19

that's on my machine so I can switch back and forth between the patent and my dec.

Q.    That's fine.

A.    It will just take a moment.

Q.    Actually, please go to column six. Excuse me.

A.    I will in a second, when I -- when I get there.  Okay.  This is going to be much better.

Column six.  I'm in column six.

Q.    Okay.  The first line, and I'm going to read, states, furthermore -- now going into the second line -- a DPC application targeted to multiprocessor environments may be utilized on a uniprocessor and operates as a multithreaded application.

Is that paragraph an example that a DPC application can be used on a single processor?

A.    No.  What it means is you can take a DPC application and you can run it on a single processor, in which case it's no longer a DPC application.

Q.    Why is it no longer --

A.    The code may be similar and the outputs may be similar, but it says it's targeted to multiprocessor environments.  That's the whole idea of a DPC application is that it's targeted to

Page 20

multiprocessor environments.

Now, what you can do is you can contort it and you can twist it so it only runs on one processor.

Q.   So it is --

A.   You completely lose the benefit of parallelism when you do that, but you can.

Q.   So it is possible for a DPC to be run on a uniprocessor?

A.   You can run the code on a uniprocessor. It's no longer a DPC application.  It's not running in parallel and it's not distributing.  It's not a DPC application.

Q.   So in your opinion, a DPC application must always run in parallel and must always be in a multiprocessor environment?

A.   Well, that was the opinion of the patentee, if you look at the materials in my dec that I quoted from the patent.

Q.   Yes, but I'm asking in your opinion.

A.   Well, yes, that's also in my opinion.

Q.   Okay, so just to confirm, for your construction of the term distributed parallel computing program, you use two specification passages -- and you can refer to your declaration for

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 21

this -- lines -- column five, lines 57 through 59, and column two, lines 10 through 12.  Correct?

A.    Yeah, those were the specific passages that I point to.  Yes.

Q.    Okay.  Great.

So if you scroll to -- actually, let's go back to your declaration, or let me go back to your declaration.  I'm also in Exhibit Share.  Give me one moment.

Okay, so on page 15 of your declaration, you quote the patent, I believe.  Yes, you quote the patent.  And you state that generally, a parallel distributed program is configured to operate across multiple processors and nodes and multiple memories. Is that correct?

A.    Yes.

Q.    So the beginning of that sentence starts with the term generally, correct?

A.    Yes, it does.

Q.    Okay.  In your opinion, what does the term generally mean, just gen-- just generally?

A.    It means most of the time.

Q.    Okay, so most of the time, but you use the remainder of the sentence in your construction of this term, correct?

Page 22

A.    Yes.

Q.    So there are exceptions to a parallel distributed program being configured to operate across multiple processors and nodes and multiple memories, correct?

A.    I'm sorry.  Can you repeat the question?

Q.    So sure.

Because if we're going by this sentence generally, which according -- thus using your definition means most of the time, not all of the time, so would you agree with me that there are exceptions to a parallel distributed program being configured to operate across multi-- multiple processors and nodes and multiple memories?

A.    Well, there could be.  There could be exceptions, but none of them are disclosed in the patent.

Q.    Okay.  There could be exceptions, but none of them are disclosed in the patent?  Okay.

So just to confirm a few things, it is your opinion that a distributed parallel computing program must always operate on multiple processors, correct?

A.    Yes.

Q.    Okay.  It is also your opinion that a

Page 23

distributed parallel computing program must always operate across multiple nodes, correct?

A.    Well, when you say always, so the only basis I have for defining the term distributed parallel computing program is what I read in the patent.

Q.    Mm-hmm.

A.    And what I read in the patent is that in all cases in the patent, it operates across multiple processors and multiple memories.

Q.    Okay.  I asked --

Okay, so you stated multiple processors and multiple memories.  I believe in my last question, I asked about multiple nodes as well.

A.    Yeah, I think nodes, we'll get to that when we talk about multiple nodes, but basically, multiple nodes means multiple separate memories.

Q.    Yes, I -- so I understand your definition, but I'm asking is it your opinion that a distributed parallel computing program must always operate across multiple nodes.

A.    I don't know of any exception.

Q.    Okay.  You don't know of any exception, but you don't know if it must always operate across multiple nodes?

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 24

MR. BLOCK:  Object to form.

A.    My only source of information about what this term means is what is in the patent.  There are no other external sources of information about this.

Q.    (By Ms. Ajumobi)  Is it your opinion that a distributed parallel computing program must always operate across multiple memories?

MR. BLOCK:  Asked and answered.

A.    I can't imagine one that doesn't.

Q.    (By Ms. Ajumobi)  Okay.

A.    If somebody could come up with an exception and ask me the question, if I know the architecture of the exception, I might be able to answer it, but there aren't any examples in the patent.

Q.    Let's move to -- go back to -- please go back to the patent and to claim four of the patent.

A.    Okay.  Yes.

Q.    So have you reviewed claim four of the patent?

A.    Yes, I have.

Q.    So claim four in the patent reads, the method of claim one wherein the distributed parallel computing program is configured to operate across multiple processors.  My question is if your proposed

Page 25

construction is accepted, doesn't that render

claim four superfluous?

A.    It might.  If you're asking me whether the

drafter made a drafting error, that's possible.

Q.    Well, that's not the question that

I asked.  I asked if your proposed construction is

accepted, doesn't that render claim four superfluous.

A.    Well, okay, let's look at the exact

wording of the patent claim, okay?  So it's a method

of developing a distributed parallel computing

program.  Then, that term doesn't appear in the

first step.  It doesn't appear in the second step.

And what you have to do is you have to tran-- in the

third step, you transform the at least one

distributed sequential computing program into at

least one distributed parallel computing program by

spawning -- by spawning children.

Now, when you spawn children, they can run

on the same processor, in which case it's not

parallel processing, or they can run on different

processors.

If you're asking me if claim four does not

-- does or does not further limit claim one, I don't

think it does.

MS. AJUMOBI:  Let me go to my

Michael Shamos , Ph.D.                           March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 26

realtime.  Excuse me.

Q.    (By Ms. Ajumobi)  Well, that wasn't my question.  I didn't ask --

A.    That's why I said if you were asking me.

Q.    Yes, but just to have a clear answer to my question, if your proposed construction is accepted, does that make claim four superfluous?

A.    So I'm not familiar with the term superfluous in the context of patents.  What I'm willing to say is I don't believe that it further limits claim one.

Q.    Okay.  Thank you.  We can move on to the next term.  Okay.  One moment.

Okay.  Can you please scroll to paragraph 56 of your declaration?

A.    I'm there.

Q.    Thank you.

And it is your opinion that the term distributed sequential computing program should be construed as program using a single locus of computation over distributed data, correct?

A.    It's not just my opinion.  That was the opinion of the inventor also.

Q.    Dr. Shamos, I'm asking you about your opinion as it is in your declaration.

Page 27

A.    Right.

Q.    Was that your opinion?

A.    I said yes, it's not just my opinion.

Q.    Okay.

A.    But it is my opinion.

Q.    In your opinion, this term is not a term of art, correct?

A.    That's correct.

Q.    Okay.  Can you please define what a term of art is?

A.    A term of art is a term that would commonly be understood by those of skill in the art, something that's commonly used in the trade or in the particular art.  This is not one of those.

Q.    Just to confirm, you quoted the specification, the patent specification, at column three, lines 50 through 53 in paragraph 57 of your declaration, correct?

A.    Yes.

Q.    However, the term distributed sequential computing program is not in that paragraph, correct?

A.    That's true.  An analogous term, distributed sequential computing.  Of course, distributed sequential computing would be performed by a distributed sequential computing program.

Michael Shamos , Ph.D.                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 28

Q.    In paragraph 58, you stated, DSV means distributed shared variable, but it's not proper to import the phrase possibly stored in a DSV into a construction because of the word possibly.

A.    That's right.

Q.    Why is it not proper to import the phrase possibly stored in a DSV?

A.    Because I don't think it adds anything to the construction.

Q.    Can you explain more about that?

A.    Sure.  Suppose -- suppose the construction were computing using a single locus of computation over distributed data possibly stored in a DSV and possibly not stored in a DSV.  That wouldn't add anything to the construction.

Q.    But the possibly stored phrase is from the very same sentence from which you got the rest of the construction, correct?

A.    It is, but it's not definitional.

Q.    So --

A.    It's like defining a table as something that has four legs and may be colored yellow.

Q.    Okay.

A.    Whether it's colored yellow or not does not determine whether it's a table or not.  Whether

Page 29

it uses a DSV or it doesn't use a DSV does not determine whether it's a distributed sequential computing program.

Q.   So going back to what you've said previously, just to clarify, you agree that, for example, when a term in this context, when the term starts -- excuse me.  When a phrase starts with the term possibly, that means it's not definitional, correct?

A.   Well, in this partic-- I don't know.  In this particular case, it's not definitional, because whether you use a DSV or not does not change whether you have a distributed sequential computing program. Therefore, it can't be definitional.

Q.   Okay.  Let's move on to the next term.

Dr. Shamos, can you -- actually, before we move on to the next term, you state in paragraph 60 that making it clear -- that therefore, using patentee's own lexicography, distributed sequential computing program means program using a single locus of computation over distributed data, making it clear that processing is not distributed, but data is distributed.

A.   That's right.

Q.   Okay.

Michael Shamos , Ph.D.                              March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 30

A.     That's exactly what it says.  If you have a single locus of computation, you're not distributing.  You're doing all the computation in one place, whereas the data can be distributed, because it says over distributed data.  So we have one locus of computation that's accessing the data in different places.

Q.     Just to confirm, did you consider anything else when you were construing this term, any other sources?

A.     Well, I have a list in Exhibit B of the materials that I considered.  I didn't think any of them were sufficiently important to my thinking that they needed to be cited.  I didn't base my opinion on that.

Based on the definition that's in the patent, it says what distributed sequential computing is.  It says, which is computing using a single locus of computation over distributed data.  I don't know how you escape from that.

Q.     Just to confirm, that paragraph -- I think you already answered this -- does not say distributed sequential computing program, correct?

A.     The word program does not appear in that -- in that sentence.  That is true.

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 31

Q.     Okay.  So we can scroll down to paragraph -- not -- excuse me.  Not paragraph 17. Page 17.  I'm confusing my pages and paragraphs.

A.     I find that when paragraphs are numbered, it's much easier to refer to the numbered paragraphs --

Q.     Yes.

A.     -- because to find the page number, I have to go all the way down to the bottom of the page to see where it is, whereas paragraph numbers are distributed nicely all over the place.

Q.     Okay.  I will continue to refer to paragraph numbers just for both of our sakes.

Okay.  Again, starting again, the same exercise, it is your opinion that the term distributed shared memory system should be construed as system that uses a globally accessible memory space built on distributed memories.  Correct?

A.     Yes.

Q.     Just to confirm, the term distributed shared memory system is used in Claims 17 and 18, correct?

A.     Yes.

Q.     Okay.  And in reaching your opinion for this term, you relied on the specification at

Michael Shamos , Ph.D.                                 March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 32

column one, lines 53 through 58, correct?

A.    Yes.

Q.    So is it your opinion that a person of ordinary skill in the art would not have understood what distributed shared memory system meant?

A.    I think they might have had some clue. Clearly, a distributed shared memory system is a memory system, and there is some sharing going on, and there is some distribution going on, but one might be able to contort that into many different possible architectures.

Fortunately, we were saved from the difficulty of that exercise by the very lexicography in the patent, which says exactly what a distributed shared memory system is.

Q.    Okay, so it is -- it's your opinion -- let me ask -- let me strike that.

Would you agree that distributed shared memory system was a term of art at the time of the invention?

A.    No.

Q.    Okay.  I am going to introduce another exhibit.  One moment.

A.    And by the way, it doesn't matter whether it was a term of art or not, because it's given a

Page 33

specific definition in the specification.

Q.   One moment.  Sorry.  One moment.
My computer is being a little slow right now.

Dr. Shamos, one quick question.  Did you
Google the term distributed shared memory system?

A.   I don't have a recollection of having done
so, and the reason I didn't is because of this
express definition in the spec.  It doesn't -- it
wouldn't matter how it was used outside the patent.
Once the patentee gives his own definition, nothing
else matters.  I could define yellow as green and
green as blue if I want to in a patent.

Q.   Okay, but you -- in your declaration, you
did Google at least two of the terms we've covered,
correct?

A.   Yes, I did.

Q.   Okay.  I'm going to introduce Exhibit 3.

(Exhibit 3 marked for identification.)

Q.   Dr. Shamos, do you recognize Exhibit 3?

A.   Hang on a second.  Yes.

Q.   What is Exhibit 3?

A.   It's an article called Distributed Shared
Memory:  Concepts and Systems, by Protic.  I believe
it's cited in my Exhibit B.

Q.   Yes, I will represent to you that this

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 34

article was cited in your materials considered list.

Did you review this article?

A.    Yes.

Q.    Okay.  One quick question.  Can you scroll down to page 79?

A.    Seventy-nine?  Hang on.  Getting there.

Q.    Okay.

A.    Not there yet.

Q.    Oh, not there yet.  I'm sorry.

A.    I'm there now.

Q.    Okay.  Great.

Can you scroll to where it says references?

A.    Yes.

Q.    Can you look at reference number three and review reference number three, please?

A.    Yes.

Q.    Okay.  The title of that reference is A Survey of Distributed Shared Memory Systems.  Is that correct?

A.    Yes.

Q.    Okay.  Can we also go to -- one moment. Let me find it.  And then, look -- can you please look at number 12 on this same page?

A.    Yes.

Michael Shamos , Ph.D.                March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 35

Q.    It says -- the title of this article is also A Survey of Distributed Shared Memory Concepts and Systems.  Is that correct?

A.    Yes.  I think they're basically all the same work, published in different form.

Q.    Yes.  There is one more work that I noted.

A.    Maybe 13.

Q.    No.

One moment.  Don't know where that went. That's fine.

Dr. Shamos, did you happen to review those two references?

A.    No, because I -- I probably believed they were essentially the same as this article.

Q.    They were the -- okay.  Well, why would you believe that?

A.    Well, they have the same authors and they have nearly the same titles, and I can see what happens, something starts out as a technical report; then, it gets put in a conference; and then, it gets published in a journal.

Q.    Okay.  Would you agree that the term distributed shared memory systems was a term that was being used before the priority date of the '080 patent?

Michael Shamos , Ph.D.                                March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 36

A.    I haven't formed that opinion.
It wouldn't surprise me.

Q.    What would enable you to inform that -- form that opinion?

A.    Well, I'd search -- I would search around to see if anybody other than Protic and his coauthors used it.

Q.    Okay.  Did you search around to see if anyone used it before you were writing your opinion in this declaration?

A.    No, because it's irrelevant.

Q.    And, then, why is it irrelevant?

A.    It's irrelevant because the patentee was his own lexicographer and gave an express definition of what the term meant as used in the patent as opposed to as used in the art.

Q.    Let's move to the next term in your declaration.

A.    I'm there.

Q.    Okay.  Parallel processing.

A.    Oh, that wasn't the next term.  The next term was multiple nodes.

Q.    Let's actually -- yeah, multiple nodes. Sorry.  Multiple nodes is the next term.  Let's review that one first.

Michael Shamos , Ph.D.                      March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 37

Dr. Shamos, again, is it your opinion that the term multiple nodes should be construed as multiple memory areas associated with separate processors?

A.    As that term is used in this patent, yes.

Q.    Did you Google this term before you wrote your declaration like you did the other terms?

A.    No.  I didn't have to.  I thought I knew what a node was.  I was wrong.

Q.    Okay.

A.    So the common use of the word node means network node.  So it's a place -- it's a place that's accessible with a network address.  So it could include a processor.  It could include memory.  It could include a router.  It could include all kinds of things.  That's not what node means in this patent.  Therefore, multiple nodes would not have the same meaning in this patent that multiple nodes would mean in the art.

Q.    Can you review paragraph 65 of your declaration?

A.    Yes.

Q.    You state that I note that the passage at column four, lines three through ten, uses e.g. instead of i.e., suggesting that the phrase

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 38

multiple memory areas associated with separate

processors is exemplary rather than definitional.

However, I have examined all 28 occurrences of node

in the specification proper, and in each case, the

term is used to refer to a memory having a processor,

and no two nodes ever share the same processor.

I would like to refer you back to that

first line.  So --

A.    Before you do, if you don't read something

correctly, do you want me to correct you?

Q.    Sure.  Go ahead.  It's your declaration.

I want to make sure it's on the record correctly.

A.    Sure.  You said thirty -- you said

28 occurrences, whereas in the declaration, it's

38 occurrences.

Q.    My apologies.  Thirty-eight occurrences.

Let's go back to the first sentence, where

you say that multiple memory areas associated with

separate processors is exemplary rather than

definitional.

A.    Yes.

Q.    You still use that phrase in your

construction, correct?

A.    Yes, because I examined all 38 occurrences

of node in the specification, and in every case, it's

Veritext Legal Solutions
800.808.4958                                              770.343.9696

Michael Shamos , Ph.D.                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 39

a memory that has a processor, but no two nodes ever share the same processor.

Q.    Yes, but in your -- in your own declaration, you state that the term e.g. instead of i.e. suggests that it is exemplary rather than definitional, correct?

A.    Yes, and to verify whether it was exemplary rather than definitional, I looked at the entire rest of the patent.

Q.    Yes, but that was your opinion after looking at the examples of nodes in the patent, correct?

MR. BLOCK:  Counsel, let him finish his answer.  He wasn't finished.

MS. AJUMOBI:  Sorry.  That was my fault.  I did not mean to do that.

A.    Yeah.  So I looked at all 38 occurrences. I looked at -- I looked at all 38 occurrences of node in the specification, and there were no exceptions. Every node had a memory with a processor and no two nodes ever shared the same processor, so therefore, the phrase multiple memory as associated with separate processors is correct.

Q.    (By Ms. Ajumobi)  Is correct in what instance?

Page 40

A.    It's correct in that it's a proper construction of the term as used in this patent.

Q.    A proper construction, though, in your opinion, correct?

A.    Well, of course.  This is all about my opinion.

Q.    Just -- just clarifying for the record.

Another question.  In your opinion -- or, no, not in your opinion.  Excuse me.

Is it -- is it your understanding that a person of ordinary skill in the art in 2003 would have understood the term node to be limited to exclusively a memory area associated with a processor?

A.    A person of ordinary skill reading the patent would understand it that way, that's true.  But if I went into the hall and asked one of my colleagues, well, what does multiple nodes mean, they may come up with something totally different.

As I explained before, a node is usually something that's accessible through a network address.  It's a device on a network normally.  That's not the way it's used in this patent, though.

MS. AJUMOBI:  I actually think right now would be a great time to take a quick

Michael Shamos , Ph.D.                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 41

five-minute break, if that's okay with everyone.

THE WITNESS:  It's fine with me.

MR. BLOCK:  Yes, no problem.

VIDEOGRAPHER:  Off the video record at 1:48 p.m.

(Off the record.)

(Recess taken from 1:48 to 1:57.)

VIDEOGRAPHER:  Back on the video record at 1:57 p.m.

Q.   (By Ms. Ajumobi)  Okay.  Let's move to the very last term in your declaration, Dr. Shamos.

A.   I'm there.

Q.   The term is parallel processing and/or operations.

A.   Yes.

Q.   It is your opinion that the term parallel processing and/or operations should be construed as handling multiple threads concurrently without terminating and resuming thread processes, correct?

A.   Yes.

Q.   Okay.  And you also do state that, in paragraph 66, that the term parallel operations does not appear anywhere in the specification, correct?

A.   That's correct.  It doesn't.

Michael Shamos , Ph.D.                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 42

Q.    Okay.  And in paragraph 67, you state, the term parallel processing is literally not used in the specification at all, correct?

A.    It's correct that I say that and it's correct that it's true.

Q.    Okay, so just to clarify something before we move on, you did not use the specification or the claim language of the '080 patent to construe this term, correct?

A.    I couldn't, because it didn't appear.

Q.    Okay.  I'm going to introduce -- okay, so, actually, in -- let's scroll down to paragraph 69.

A.    Yes.

Q.    Here, you're quoting the patentee response in the file history, the patentee response as of January 21st, 2009.  Is that correct?

A.    Yes.

Q.    And that is the language that you used to construe this term in the patent, parallel processing and/or operations.  Is that correct?

A.    Well, not just that.

Q.    Well, what else do you use?

A.    The cita-- there is a citation back in paragraph 68.

Q.    Paragraph 68?  Okay, but the language in

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 43

that paragraph is not the direct language you're
using in your construction of this term, correct?

A.    Oh, correct.  It informs it, but it's
not -- you're right.

Q.    Okay.  Okay, so now, I'm going to pull up
the file history.  One moment.

(Exhibit 4 marked for identification.)

Q.    Okay, so you see the document, Dr. Shamos?

A.    Yes.  I do, yes.

Q.    I'll give you time to scroll through the
document, but do you recognize this document?

A.    Yes.

Q.    Okay.  What is this document?

A.    It's the prosecution history of the
patent.

Q.    I'm going to point you to paragraph -- oh,
not paragraph.  Excuse me.  Page 89.

A.    Hang on a second.  So is that the remarks
page?

Q.    Yes.  So, actually, page 90.

A.    Okay.

Q.    So you -- in paragraph 71 of your
declaration, you state that the patentee voluntarily
disclaimed the scope of the claim to include only
parallel processing that enables many calculations to

Page 44

be carried out simultaneously; i.e., without terminating and resuming thread processes.  Can you point me to the specific statement, the specific applicant statement where the disclaimer was stated?

A.    Yeah.  It's in -- it's what I cite in paragraph 69, and it is the first full paragraph on this page 90.

Q.    Okay, so that full paragraph says, nothing in Suzuki discloses a parallel system.  One of ordinary skill in the art would readily recognize that parallel processing enables many calculations to be carried out simultaneously; i.e., without terminating and resuming thread processes.  Due to the wholesale absence of an express limitation of an independent claim one, Suzuki is incapable of curing the deficiency of Pan, and thus, the combination of Pan and Suzuki and Fukuda cannot establish a prima facie case of obviousness.

Did I read that correctly?

A.    Yes.

Q.    Okay, so it is your opinion that based on this paragraph, the patentee -- the patentee was disclaiming the term parallel processing and/or operations?

A.    Well, it was narrowing the term parallel

Michael Shamos , Ph.D.                                March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 45

processing.  It wasn't disclaiming it completely.
It's a partial disclaimer.

Q.    You -- okay, so just going back to
paragraph 71 of your declaration, you say that --
I'm quoting a phrase -- the patentee voluntarily
disclaimed the scope of the claim.

A.    Well, not the entire scope.  It disclaimed
part of the scope of the terms.

Q.    Okay, so I guess it's not clear to me.
You're stating that the disclaimer only disclaimed
part of the scope of the term?

A.    Yeah.  It limits it.  It doesn't say --
it doesn't say parallel processing means nothing and
we disclaim all parallel processing.  It narrows it
to a particular kind of parallel processing.

Q.    A particular kind of parallel processing?

A.    Yes.  Handling multiple threads
concurrently without terminating and resuming thread
processes.  That's what it said, and that's the basis
on which it obtained allowance of the claim.

Q.    Okay.  Can you point me to where the term
parallel processing existed in the claims at the time
of this response?  The term parallel processing.

A.    Well, let's see.

Q.    I think if you scroll up, you'll probably

Michael Shamos , Ph.D.                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 46

see the claims.

A.    Let me do that.  I don't see the term parallel processing.  I see -- I do see the term parallel distributed application.

Q.    Okay.  Do you -- is it your opinion that the term parallel processing and parallel -- sorry.

A.    And there's more.  There is also the term distributed parallel program.  One presumes that a parallel program is supposed to do parallel processing.

Q.    Yes, but that wasn't stated in your declaration, correct?

A.    Now it is.

Q.    Now it is?  You're now adding that opinion?

A.    No, I'm not.  You asked me the question in my deposition and I gave you the answer.

Q.    Okay, but just to clarify, the term parallel processing and/or operations was not a term in the patent at the time of this alleged disclaimer, correct?

A.    That's -- that's correct.  And you make an interesting point.  I don't know what the legal implication of it is, but it's completely clear from the applicant's response that it was defining the

Page 47

term parallel processing.

Q.    Just to make it clear for the record, the term parallel processing was not in the patent at the time?

A.    Was not in the claims.

Q.    Was not in the claims at the time, correct?

A.    That's right.  The literal term parallel processing was not there.  There are other terms that I just listed that were there.

Q.    Yes, actually, let's go back to that.

A.    Okay.

Q.    So is it your opinion that the terms -- is it your opinion that the term parallel distributed application and parallel processing are synonymous?

A.    No.  So parallel distributed application refers to a program.  An application is a program.

Q.    Mm-hmm.

A.    I haven't formed an opinion about what the meaning of parallel distributed application is, because it was not used in the claims as eventually issued.  But when I read it, I say parallel distributed application, oh, that's a parallel application that's distributed.  There is parallel processing going on there.  Even though the term

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 48

parallel processing does not literally appear, obviously, it's doing parallel processing, because it's a parallel distributed application.

Then, we have the term distributed parallel program.  Well, the parallel program has got to be doing parallel processing, because that's what the meaning of parallel program is.  It's a program that processes it in parallel.

Q.    But they are not synonymous, correct?

A.    When you say they --

Q.    The term --

A.    The parallel distributed application and distributed parallel program?  They probably are synonymous.

Q.    No, excuse me.  Distributed parallel program and parallel processing are not synonymous, correct?

A.    No.  Parallel processing is a general term that -- outside of the context of the patent, parallel processing involves all kinds of ideas.  Parallel processing came to be used as a claim term, and parallel processing was explained by the patentee in the prosecution history.

Q.    I'm going to introduce -- let me just make a note of something.

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 49

A.    Are we done with the -- with the file history?

Q.    I believe so.  You can close out of it.

A.    Okay.

Q.    Just to clarify, did you use -- did you use any other resources besides the file history to construe the term parallel processing and/or operations?

A.    No.  Well, the file history and the patent itself.

Q.    Okay, but your only citations are to the patent and the -- actually, no.  Your only citations are actually only to the file history, correct?

A.    Well, the citations are only to the prosecution history, but I comment on what is and what is not in the specification.

Q.    So if you'll close out of that, let's go back to -- I'm going to introduce another exhibit, actually.

A.    Okay.

      (Exhibit 5 marked for identification.)

Q.    Okay.  Please let me know when you see the next document.

A.    I do see that.

Q.    Do you recognize this document?

Page 50

A.    Yes.

Q.    What is this document?

A.    It's a declaration I made in an IPR.

Q.    The IPR was for the 7,712,080 patent, correct?

A.    Yes, the same patent we've been talking about.

Q.    Okay.  You signed this IPR declaration on September 22nd, 2025, correct?

A.    Yes.

Q.    And just correct me if I'm wrong. You were hired by American Airlines in January 1st of 2025, correct?

A.    I don't think I said January 1st, but it was in January.

Q.    Sorry.  January --

A.    It was in January of 2025.  Yes, that's right.

Q.    -- 2025.  Okay.

Can you scroll down to paragraph 14?

A.    I am there.

Q.    So is it correct that you are aware of contemporaneous litigation involving petitioners and the patent in cases styled Intellectual Ventures I LLC, et al., versus American Airlines,

Michael Shamos , Ph.D.                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 51

Incorporated -- I'm not going through this, but yes, you see the rest of the paragraph?

A.    The statement in paragraph 14 is true.

Q.    Okay.  Thank you.

And very basic question, but you reviewed the '080 patent before you wrote this declaration, correct?

A.    Yes.  Quite clearly, yes.

Q.    Yes, of course.  Okay, so let's scroll down to paragraph 42 of your declaration.

A.    The IPR declaration?

Q.    Yes.  Sorry.  When I say your declaration, right now, I mean the IPR declaration.

A.    Okay.

Q.    Can you please review those paragraphs?

A.    Do you mean 42 and 43?

Q.    Yes.

A.    Yes.

Q.    Okay, so in paragraph 42, it states, I understand that patent owner does not believe any claim construction is necessary in this proceeding, and I concur; and paragraph 43, I have accorded all of the claim terms their plain and ordinary meaning to a POSITA.  Is that correct?

A.    Yes.

Page 52

Q.    Okay, so you did not construe any terms for the '080 patent during the IPR proceedings, correct?

A.    That's right.

Q.    And just to clarify, did you offer any express interpretation of the plain and ordinary meaning of any terms in your declaration?

A.    I am looking.  I don't -- it doesn't appear that I ever actually state what the plain and ordinary meaning of any term is.

Q.    But the -- all the terms, according to paragraph 43, have been accorded their plain and ordinary meanings to a POSITA.  Is that correct?

A.    Yes.

Q.    Just to clarify, though, we were -- we have been talking about a different declaration, your Markman declaration.  In that Markman declaration, you have now submitted constructions for five patent -- five of the patent terms, correct?

A.    Yes.

Q.    Okay, so the opinion that you stated in your IPR declaration has now changed?  Is that correct?

A.    Which opinion is that?

Q.    That you have accorded all the claim terms

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 53

their plain and ordinary meaning.

A.    Well, during the IPR, I accorded the claim terms their plain and ordinary meaning as I understood them at the time, without having gone through the detailed study that I did to do the Markman declaration.

Q.    Okay, but did anything change in between the -- your submission of the IPR declaration and the Markman declaration?

A.    When you say did anything change, yeah. What changed is my research.  I was specifically asked to look at and to state in words what the plain and ordinary meanings of these terms were.  And I did -- had not done that at the time of the IPR declaration, because --

Q.    But don't you -- sorry.

A.    -- no claim construction was necessary.

Q.    So no claim construction was necessary at the time of the IPR declaration?

A.    Not at -- it has nothing to do with the time.  It has to do with the nature of the proceeding; is the PTAB going to be able to invalidate the claims without doing claim construction, and my opinion was yes.

Q.    But, Dr. Shamos, isn't the same -- isn't

Page 54

the standard the same in front of the district court and the PTAB for claim construction?

A.    If you do claim construction, the standard is the same.

Q.    But you did not do claim construction in this declaration, correct?

A.    That's right, for the reason that I just stated, which is that it was not necessary to do it to make an argument for invalidity of the claims.

Q.    I guess I'm just -- I'm just a bit confused. If it was not necessary to do it to make an argument for the invalidity of the claims, why is it now necessary to do it, to construe the terms?

A.    It's now necessary because we have litigation that may go to a jury. The jury has to be able to understand what the claim terms mean, which means construction is necessary.

Q.    So --

A.    Also, claim construction may affect infringement.

Q.    So you agree with me that your -- you have now construed terms based on the audience of your declaration. Is that correct?

A.    The decision whether to construe or not is based on the audience for the declaration.

Page 55

The meaning of the terms is not based on the audi-- on the identity of the audience.

Q.    But I guess I'm still confused.  You -- but the meaning of the terms did change in between your two declarations, correct?

A.    Let's put it this way.  They were clarified.

Q.    They were clarified, yet in your IPR declaration, you stated plain and ordinary meaning, and in the other declaration, excuse me, your Markman declaration, you construed five terms based on the specification, claim language, and patent file history.  Is that correct?

A.    Oh, well, that is the plain and ordinary meaning, according to a POSITA, reading the intrinsic record.  It's not the plain and ordinary meaning to those in the art.  It's not the plain and ordinary meaning to the layperson.  The plain and ordinary meaning is what you -- is what you get from the intrinsic evidence.

Q.    Dr. Shamos, the patent itself, the specification, the claims, and the file history were all there when you submitted this IPR declaration, correct?

A.    Yes, they were.

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 56

Q.    Yet you did not construe those terms for this IPR declaration.  Is that correct?

A.    That's correct.  It was not believed necessary for the PTAB to do its job.  It will be necessary for the jury to do its job.

Q.    Again, why do you not believe it was necessary for the PTAB to do its job?  Can we clarify that?

A.    Why did I not believe it?  For a couple of reasons.  One is that even when the PTAB is asked to do claim construction, it very often eschews the task.  It doesn't bother to do claim construction.  Also, claim construction has two audiences.  It has two uses.  One is for infringement and one is for invalidity.

Q.    But the standard for claim construction is the same in front of the district court and in front of the PTAB, correct?

A.    Totally.  I agree with that.  Yes.

Q.    Okay.

MS. AJUMOBI:  Let's take a quick five-minute break, and I will come back with any remaining questions I have left.  Thank you.

THE WITNESS:  Okay.  Sure.

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 57

VIDEOGRAPHER:  Off the video record at 2:19 p.m.

(Off the record.)

(Recess taken from 2:19 to 2:26.)

VIDEOGRAPHER:  Back on the video record at 2:26 p.m.

MS. AJUMOBI:  Well, welcome back, Dr. Shamos.

THE WITNESS:  Thank you.

MS. AJUMOBI:  Even though we had a break, I don't think I have any more questions for you as of right now, so I will pass the witness.

MR. BLOCK:  And I do not have any questions for you, Dr. Shamos.

MS. AJUMOBI:  Okay.

THE WITNESS:  Okay.  It's good to see you again, Paula.

MS. AJUMOBI:  It's good to see you, too.

VIDEOGRAPHER:  This is the end of the deposition.  Off the record at 2:26 p.m.

[End of video record.]

COURT REPORTER:  Counsel, I just need to go back on the stenographic record and

Page 58

ask you to please state your orders.  And we will start with Ms. Ajumobi, please, and if you could let me know if you need a rough draft or an expedite, too?

MS. AJUMOBI:  Sure.  Can we get -- is it next day or same day rough draft, and then, five days for the final?

COURT REPORTER:  Okay.  Perfect. Thank you.

And Mr. Block?

MR. BLOCK:  Yeah, we'll just take the same order that Paula asked for.

COURT REPORTER:  Okay.  Thank you very much.

(Off the record.)

(Deposition concluded at 2:27 p.m.)

Michael Shamos , Ph.D.                                March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 59

DISCLOSURE
DEPONENT: MICHAEL SHAMOS, PhD

STATE OF GEORGIA

COUNTY OF RICHMOND

Pursuant to Article 10.B. of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia, I make the following disclosure:

I am a Georgia Certified Court Reporter.  I am here as a representative of Veritext Legal Solutions. Veritext Legal Solutions was contacted by the offices of Kasowitz, LLP, to provide court reporting services for this deposition.  Veritext Legal Solutions will not be taking this deposition under any contract that is prohibited by O.C.G.A. Sec. 15-14-37(a) and (b).

Veritext Legal Solutions has no contract/agreement to provide reporting services with any party to the case, any counsel in the case, or any reporter or reporting agency from whom a referral might have been made to cover this deposition. Veritext Legal Solutions will charge its usual and customary rates to all parties in the case, and a financial discount will not be given to any party to this litigation.

Dated:  3/16/2026
Marianne R. Wharram, RPR, CRR,
CCR #6121-5296-5647-5648

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

Page 60

                        C E R T I F I C A T E

STATE OF GEORGIA:

COUNTY OF RICHMOND:

       I hereby certify that the foregoing transcript

was taken down, as stated in the caption, and the

colloquy, questions, and answers thereto were reduced

to typewriting under my direction; that the foregoing

pages 1 through 58 represent a true, complete, and

correct transcript of the evidence given.

       The above certification is expressly withdrawn

and denied upon the disassembly or photocopying of

the foregoing transcript, unless said disassembly or

photocopying is done under the auspices of Veritext

Legal Solutions, and the signature and original seal

is attached thereto.

       I further certify that I am not related to or

are of counsel to the parties in the case; am not in

the regular employ of counsel for any of said

parties; nor am I in any way interested in the result

of said case.

       This, the 18th day of March, 2026.




       _____

       MARIANNE R. WHARRAM, RPR, CRR,

       CCR #6121-5296-5647-5648

800.808.4958                                              770.343.9696

Michael Shamos , Ph.D.

March 16, 2026

Intellectual Ventures I LLC v. American Airlines, Inc.

**[080 - access]**

Page 1

| 0 |
|---|
| **080** 10:11,11 11:24 12:8 14:13,14 18:12 35:24 42:8 51:6 52:2 |

| 1 |
|---|
| **1** 3:9,22 8:18 8:20 9:13 60:8 |
| **10** 14:12 21:2 |
| **10.b.** 59:5 |
| **10/850,842** 3:15 |
| **10019** 2:6 |
| **104** 3:9 |
| **114.7.** 7:14 |
| **12** 14:12 21:2 34:24 |
| **12:58** 1:16 4:3 |
| **12th** 11:19 |
| **13** 3:10 13:21 35:7 |
| **14** 50:20 51:3 |
| **15** 21:10 |
| **15-14-37** 59:11 |
| **16** 1:15 3:10 4:4 |
| **1633** 2:5 |
| **17** 3:12 31:2,3 31:21 |
| **18** 12:6 31:21 |
| **180** 14:11 |

| 18th 60:21 |
|---|
| **1:48** 41:6,8 |
| **1:57** 41:8,10 |
| **1st** 50:12,14 |

| 2 |
|---|
| **2** 3:10 11:21,22 12:10,15,17 13:4,6 18:18 |
| **2003** 40:11 |
| **2009** 42:16 |
| **2025** 7:9,10 50:9,13,17,19 |
| **2026** 1:15 4:4 60:21 |
| **212** 2:6 |
| **213** 2:12 |
| **21st** 7:9,10 42:16 |
| **22nd** 50:9 |
| **242** 3:14 |
| **28** 38:3,14 |
| **2900** 2:11 |
| **2:19** 57:2,4 |
| **2:26** 57:4,6,22 |
| **2:27** 58:16 |

| 3 |
|---|
| **3** 3:12 33:17,18 33:19,21 |
| **3/16/2026** 59:19 |
| **300** 2:11 |
| **30454** 60:24 |

| 325 6:24 |
|---|
| **33** 3:12 |
| **38** 38:15,24 39:17,18 |

| 4 |
|---|
| **4** 3:14 43:7 |
| **42** 51:10,16,19 |
| **43** 3:14 51:16 51:22 52:12 |
| **49** 3:16 |
| **4:24** 1:5 |

| 5 |
|---|
| **5** 3:4,16,22 49:21 |
| **50** 27:17 |
| **506-1700** 2:6 |
| **53** 17:14,16 27:17 32:1 |
| **55** 16:6 |
| **56** 26:15 |
| **57** 14:11 21:1 27:17 |
| **58** 28:1 32:1 60:8 |
| **59** 14:11 21:1 |

| 6 |
|---|
| **60** 29:17 |
| **6121-5296-5...** 1:25 59:20 60:25 |
| **65** 37:20 |

| 66 41:23 |
|---|
| **67** 42:1 |
| **68** 42:24,25 |
| **69** 42:12 44:6 |
| **694-1054** 2:12 |

| 7 |
|---|
| **7,712,080** 3:11 10:12 50:4 |
| **71** 43:22 45:4 |
| **73** 3:16 |
| **79** 34:5 |

| 8 |
|---|
| **8** 3:9 |
| **89** 43:17 |

| 9 |
|---|
| **90** 43:20 44:7 |
| **90071** 2:11 |
| **980** 1:5 |

| a |
|---|
| **ability** 6:15 |
| **able** 13:15 14:24 24:13 32:10 53:22 54:16 |
| **ablock** 2:12 |
| **above** 60:10 |
| **absence** 16:21 44:14 |
| **accepted** 25:1,7 26:7 |
| **access** 13:15 |

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[accessible - aware]**                                                     Page 2

| | | | |
|---|---|---|---|
| **accessible** 31:17 37:13 40:21 | **ajumobi** 2:4 3:4 5:5,5,24 10:9 11:15,18 15:24 17:4 24:5,10 25:25 26:2 39:15,24 40:24 41:11 56:21 57:7,10 57:16,19 58:2 58:5 | **appear** 25:11 25:12 30:24 41:24 42:10 48:1 52:9 | 36:16 37:19 40:11 44:10 55:17 |
| **accessing** 30:6 | | **appearances** 2:1 | **article** 33:22 34:1,2 35:1,14 59:5 |
| **accorded** 51:22 52:12,25 53:2 | | **appears** 17:23 17:24 | **aside** 6:2 |
| **achilles** 6:1 | | **applicant** 44:4 | **asked** 7:15,18 11:17 15:1 23:11,14 24:8 25:6,6 40:17 46:16 53:12 56:10 58:12 |
| **actually** 6:1 8:17,22 19:5 21:6 29:16 36:23 40:24 42:12 43:20 47:11 49:12,13 49:19 52:9 | **al** 3:13,17 4:18 50:25 | **applicant's** 46:25 | |
| | **alan** 2:10 5:8 | **application** 3:14 19:12,15 19:17,19,20,25 20:11,13,14 46:4 47:15,16 47:17,20,23,24 48:3,12 | |
| | **alleged** 46:20 | | **asking** 20:20 23:19 25:3,22 26:4,24 |
| **add** 11:4 28:14 | **allowance** 45:20 | | |
| **adding** 46:14 | **allows** 9:22 | | **associated** 37:3 38:1,18 39:22 40:13 |
| **address** 37:13 40:22 | **ambiguous** 16:13 | **approximately** 7:12,14 | |
| **adds** 28:8 | **american** 1:7 3:16 4:18 5:9 50:12,25 | **architecture** 24:13 | **assumed** 17:25 |
| **affect** 54:19 | | | **attached** 3:22 60:15 |
| **afternoon** 4:2 | | **architectures** 32:11 | |
| **agency** 59:14 | **analogous** 27:22 | **area** 40:13 | **attorney** 5:18 |
| **agree** 4:13 22:11 29:5 32:18 35:22 54:21 56:19 | **angeles** 2:11 | **areas** 37:3 38:1 38:18 | **audi** 55:1 |
| | **answer** 24:14 26:5 39:14 46:17 | | **audience** 54:22 54:25 55:2 |
| **agreement** 59:13 | **answered** 24:8 30:22 | **argument** 54:9 54:12 | **audiences** 56:13 |
| **aha** 10:4 | | **art** 14:23 15:4 15:5 16:17 18:6 27:7,10 27:11,12,14 32:4,19,25 | **audio** 4:11 |
| **ahead** 38:11 | **answers** 60:6 | | **auspices** 60:13 |
| **airlines** 1:7 3:16 4:18 5:10 50:12,25 | **anybody** 36:6 | | **authors** 35:17 |
| | **apologies** 14:16 38:16 | | **avenue** 2:11 |
| | | | **aware** 50:22 |

Michael Shamos , Ph.D.                                          March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[b - clearly]**                                                      Page 3

| b | | | |
|---|---|---|---|
| **b** 30:11 33:24 59:11 | **believed** 35:13 56:3 | **caption** 60:5 | **cited** 30:14 33:24 34:1 |
| **back** 13:1,14 13:16 17:10 18:18,24 19:1 21:7,7 24:16 24:17 29:4 38:7,17 41:9 42:23 45:3 47:11 49:18 56:22 57:5,7 57:25 | **believing** 16:10 | **carpet** 6:5 | **claim** 7:2 10:10 10:19,22,23 11:1,8 24:17 24:19,22,23 25:2,7,9,22,23 26:7,11 42:8 43:24 44:15 45:6,20 48:21 51:21,23 52:25 53:2,17,18,23 54:2,3,5,16,19 55:12 56:11,12 56:13,16 |
| | **benefit** 20:6 | **carried** 44:1,12 | |
| | **best** 7:1 | **case** 1:5 6:20 7:5,6,15,21 8:1 8:6 11:15 19:20 25:19 29:11 38:4,25 44:18 59:13,13 59:15 60:17,20 | |
| | **better** 19:8 | | |
| | **big** 6:25 | | |
| | **bigger** 18:21 | | |
| | **bit** 15:17 54:10 | | |
| | **block** 2:10 3:5 5:8,8 10:1 11:14,16 15:21 17:2 24:1,8 39:13 41:4 57:14 58:10,11 | **cases** 23:9 50:24 | |
| **bar** 9:22 10:3 | | **caught** 6:5 | |
| **base** 30:14 | | **ccr** 1:25 59:20 60:25 | |
| **based** 30:16 44:21 54:22,25 55:1,11 | | **certainly** 9:3,17 10:18 | **claims** 17:25,25 18:9 31:21 45:22 46:1 47:5,6,21 53:23 54:9,12 55:22 |
| | **blue** 33:12 | | |
| | **board** 59:5 | **certification** 60:10 | |
| **basic** 51:5 | **bother** 56:12 | | |
| **basically** 23:16 35:4 | **bottom** 31:9 | **certified** 59:7 | |
| | **break** 41:1 56:22 57:11 | **certify** 60:4,16 | **clarified** 55:7,8 |
| **basis** 23:4 45:19 | **broadway** 2:5 | **change** 29:12 53:7,10 55:4 | **clarify** 29:5 42:6 46:18 49:5 52:5,15 56:7 |
| | **built** 31:18 | | |
| **beginning** 21:17 | c | **changed** 52:22 53:11 | |
| | | | |
| **behalf** 2:3,9 5:5 5:9 | **c** 4:1 60:1,1 | **charge** 59:15 | **clarifying** 40:7 |
| | **ca** 2:11 | **children** 25:17 25:18 | **clear** 16:13,25 17:8 26:5 29:18,21 45:9 46:24 47:2 |
| **believe** 16:23 18:4 21:11 23:13 26:10 33:23 35:16 49:3 51:20 56:6,9 | **calculations** 43:25 44:11 | | |
| | **california** 3:17 | **cita** 42:23 | |
| | **called** 33:22 | **citation** 42:23 | |
| | **camera** 4:7 | **citations** 49:11 49:12,14 | **clearly** 32:7 51:8 |
| | **capacity** 6:9 | **cite** 44:5 | |

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[close - correct]**                    Page 4

close  49:3,17
clue  32:6
coauthors  36:6
code  19:22
  20:10
colleagues
  40:18
colloquy  60:6
colored  28:22
  28:24
column  14:11
  18:19 19:5,9,9
  21:1,2 27:17
  32:1 37:24
columns  14:10
combination
  44:16
come  24:11
  40:19 56:22
coming  17:10
comment  49:15
common  37:11
commonly
  27:12,13
compensation
  7:20
complete  12:24
  60:8
completely
  20:6 45:1
  46:24
computation
  26:21 28:12
  29:21 30:2,3,6

30:19
computer  33:3
computes  14:1
computing
  13:21,25 14:2
  15:9,13,14,15
  16:11,11 17:20
  17:21 18:12
  20:24 22:21
  23:1,5,20 24:6
  24:24 25:10,15
  25:16 26:19
  27:21,23,24,25
  28:12 29:3,13
  29:20 30:17,18
  30:23
conceivable  8:5
concepts  3:13
  33:23 35:2
concluded
  58:16
conclusion
  17:22
concur  51:22
concurrent
  14:2
concurrently
  41:19 45:18
conducted  4:6
  4:22
conference
  35:20
configured
  14:3 17:11

21:13 22:3,13
  24:24
confirm  20:22
  22:20 27:15
  30:8,21 31:20
confused  54:11
  55:3
confusing  31:3
connection  4:8
  7:19
consider  30:8
considered  8:4
  12:3,19,21,22
  30:12 34:1
construction
  7:3 10:10,19
  10:23 11:1,8
  16:18,24 17:7
  17:11 20:23
  21:24 25:1,6
  26:6 28:4,9,11
  28:15,18 38:23
  40:2,3 43:2
  51:21 53:17,18
  53:24 54:2,3,5
  54:17,19 56:11
  56:12,13,16
constructions
  52:18
construe  15:1
  42:8,19 49:7
  52:1 54:13,24
  56:1

construed  14:1
  26:20 31:16
  37:2 41:18
  54:22 55:11
construing
  30:9
contacted  59:9
contain  10:14
  10:21
contains  10:10
contemporan...
  50:23
context  8:7
  18:12 26:9
  29:6 48:19
contingent  7:21
continue  4:12
  31:12
contort  20:2
  32:10
contract  59:11
  59:13
conveyed  9:8
copy  18:25
correct  10:12
  11:7,19 12:10
  14:8,12 15:20
  17:21 21:2,15
  21:18,25 22:5
  22:23 23:2
  26:21 27:7,8
  27:18,21 28:18
  29:9 30:23
  31:18,22 32:1

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[correct - disclaimer]**                                    Page 5

33:15 34:20 35:3 38:10,23 39:6,12,23,24 40:1,4 41:20 41:24,25 42:3 42:4,5,9,16,20 43:2,3 46:12 46:21,22 47:7 48:9,17 49:13 50:5,9,11,13,22 51:7,24 52:3 52:13,19,23 54:6,23 55:5 55:13,24 56:2 56:3,18 60:9

**correctly** 16:19 38:10,12 44:19

**council** 59:6

**counsel** 2:1 4:16 5:2 7:16 8:23 9:1 39:13 57:24 59:13 60:17,18

**count** 6:23

**county** 59:4 60:3

**couple** 56:9

**course** 27:23 40:5 51:9

**court** 1:1 4:19 4:25 5:3,11,17 5:21 54:1 56:17 57:24 58:8,13 59:5,7

59:9

**cover** 59:14

**covered** 33:14

**crr** 1:24 59:20 60:25

**curing** 44:15

**current** 6:23

**customary** 59:15

**cv** 1:5 6:23

**d**

**d** 4:1

**data** 26:21 28:13 29:21,22 30:4,5,6,19

**date** 35:24

**dated** 59:19

**day** 58:6,6 60:21

**days** 58:7

**dec** 19:2 20:18

**decision** 54:24

**declaration** 3:9 3:16 7:19 8:14 8:15 9:4,6 10:7 10:9,14,21 11:5,9,13,19 12:21 13:15,17 15:9,20 16:7 17:15,17 20:25 21:7,8,10 26:15,25 27:18 33:13 36:10,18

37:7,21 38:11 38:14 39:4 41:12 43:23 45:4 46:12 50:3,8 51:6,10 51:11,12,13 52:7,16,17,18 52:22 53:6,8,9 53:15,19 54:6 54:23,25 55:9 55:10,11,23 56:2

**declarations** 55:5

**defendant** 1:8 2:9 5:9

**defendant's** 16:18

**deficiency** 44:16

**define** 27:9 33:11

**defining** 23:4 28:21 46:25

**definition** 16:17 22:10 23:18 30:16 33:1,8,10 36:14

**definitional** 28:19 29:8,11 29:14 38:2,20 39:6,8

**delayed** 9:9

**denied** 60:11

**depends** 4:7

**deployed** 18:13

**deponent** 59:2

**deposed** 5:22

**deposition** 1:12 4:5,15,21 8:13 8:24 9:2 46:17 57:22 58:16 59:10,10,14

**description** 3:8

**detailed** 53:5

**determine** 14:22,24 28:25 29:2

**developing** 25:10

**device** 40:22

**different** 6:8 25:20 30:7 32:10 35:5 40:19 52:16

**difficulty** 32:13

**direct** 43:1

**direction** 60:7

**disassembly** 60:11,12

**disclaim** 45:14

**disclaimed** 43:24 45:6,7 45:10

**disclaimer** 44:4 45:2,10 46:20

Michael Shamos , Ph.D.                     March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[disclaiming - exceptions]**                     Page 6

| | | | |
|---|---|---|---|
| **disclaiming** 44:23 45:1 | **distribution** 32:9 | **drew** 17:22 | **escape** 30:20 |
| **disclosed** 22:16 22:19 | **district** 1:1,1 4:19,20 54:1 56:17 | **dsv** 28:1,3,7,13 28:14 29:1,1 29:12 | **eschews** 56:11 |
| **discloses** 44:9 | **division** 1:2 4:20 | **due** 44:13 | **esq** 2:4,4,10 |
| **disclosure** 59:1 59:6 | **doc** 18:23 | **duly** 5:21 | **essentially** 35:14 |
| **discount** 59:16 | **document** 9:16 9:23 13:8 43:8 43:11,11,13 49:23,25 50:2 | **e** | **establish** 44:17 |
| **distributed** 3:11,12 13:21 13:25 14:2 15:8,15 16:10 16:12,14,15,16 17:1,5,9,20,20 18:11 20:23 21:13 22:3,12 22:21 23:1,4 23:19 24:6,23 25:10,15,16 26:19,21 27:20 27:23,24,25 28:2,13 29:2 29:13,19,21,22 29:23 30:4,5 30:17,19,22 31:11,16,18,20 32:5,7,14,18 33:5,22 34:19 35:2,23 46:4,8 47:14,16,20,23 47:24 48:3,4 48:12,13,15 | **documents** 12:12,14 18:24 | **e** 4:1,1 9:8 60:1 60:1 | **et** 3:13,17 4:18 50:25 |
| | **doing** 8:2 30:3 48:2,6 53:23 | **e.g.** 37:25 39:4 | **eventually** 47:21 |
| | **download** 10:2 18:23 | **easier** 31:5 | **everybody** 5:15 |
| | **downloads** 10:2 | **easily** 9:23 | **evidence** 55:20 60:9 |
| | **dpc** 19:12,16 19:18,20,25 20:8,11,13,14 | **eastern** 1:1 4:19 | **exact** 25:8 |
| | **dr** 5:11,25 6:14 13:11 26:24 29:16 33:4,19 35:11 37:1 41:12 43:8 53:25 55:21 57:8,15 | **eight** 38:16 | **exactly** 6:22 9:9 30:1 32:14 |
| | | **either** 16:3 | **examination** 3:4,5 5:23 |
| | | **employ** 60:18 | **examinations** 3:1 |
| | | **enable** 36:3 | **examined** 38:3 38:24 |
| | | **enables** 43:25 44:11 | **example** 19:16 29:6 |
| | | **endeavored** 12:23 | **examples** 24:14 39:11 |
| | | **engagement** 7:8 | **except** 14:5 16:20 |
| | | **entire** 39:9 45:7 | **exception** 23:22,23 24:12 24:13 |
| | **draft** 58:4,6 | **entirety** 10:15 10:21 13:9 | **exceptions** 22:2 22:12,16,18 39:19 |
| **distributing** 20:12 30:3 | **drafter** 25:4 | **environment** 18:13 20:16 | |
| | **drafting** 25:4 | **environments** 19:13,24 20:1 | |
| | | **error** 25:4 | |

Michael Shamos , Ph.D.
Intellectual Ventures I LLC v. American Airlines, Inc.

March 16, 2026

**[exclusively - good]**

Page 7

| | | | |
|---|---|---|---|
| **exclusively** 40:13 | **expressly** 60:10 | **flip** 18:24 | **generally** 21:12 |
| **excuse** 11:13 19:6 26:1 29:7 31:2 40:9 43:17 48:15 55:10 | **external** 24:4 | **following** 59:6 | 21:18,21,21 22:9 |
| | **f** | **follows** 5:22 | **georgia** 59:3,6 59:7 60:2 |
| **exemplary** 38:2 38:19 39:5,8 | **f** 60:1 | **foot** 6:5 | **getting** 34:6 |
| **exercise** 31:15 32:13 | **face** 9:18 | **foregoing** 60:4 60:7,12 | **give** 21:8 43:10 |
| **exhibit** 3:9,10 3:12,14,16 8:18,19,20 9:13,21 12:10 12:15,17 13:2 13:4,6,16 18:18 21:8 30:11 32:23 33:17,18,19,21 33:24 43:7 49:18,21 | **facie** 44:18 | **form** 11:14,16 11:17 15:21 24:1 35:5 36:4 | **given** 32:25 59:16 60:9 |
| | **fact** 14:21 | **formed** 36:1 47:19 | **gives** 33:10 |
| | **familiar** 26:8 | **forth** 18:24 19:1 | **globally** 31:17 |
| | **fault** 39:16 | **fortunately** 32:12 | **go** 4:13 6:22 7:7 10:4 11:21 12:17 13:14 18:18 19:5 21:6,7 24:16 24:16 25:25 31:9 34:22 38:11,17 47:11 49:17 54:15 57:25 |
| | **february** 11:19 | **four** 15:11 24:17,19,22 25:2,7,22 26:7 28:22 37:24 | |
| | **fell** 6:4 | **front** 9:13 14:6 54:1 56:17,17 | |
| | **file** 42:15 43:6 49:1,6,9,13 55:12,22 | **fukuda** 44:17 | |
| | **filed** 4:19 | **full** 44:6,8 | |
| | **final** 58:7 | **further** 16:15 25:23 26:10 60:16 | |
| **exhibits** 3:7,22 | **financial** 59:16 | | **going** 6:22 7:7 8:18 9:19 13:1 13:14 18:25 19:8,10,11 22:8 29:4 32:8 32:9,22 33:17 42:11 43:5,16 45:3 47:25 48:24 49:18 51:1 53:22 |
| **existed** 45:22 | **find** 8:11 18:7 31:4,8 34:23 | **furthermore** 19:11 | |
| **expedite** 58:4 | **fine** 14:7 19:3 35:10 41:3 | **g** | |
| **expert** 6:20 | **finish** 39:13 | **g** 4:1 | |
| **expert's** 8:15 | **finished** 39:14 | **gen** 21:21 | |
| **explain** 17:7 28:10 | **firm** 5:1,18 | **general** 48:18 | |
| **explained** 40:20 48:22 | **first** 7:6 19:10 25:12 36:25 38:8,17 44:6 | | **good** 4:2 5:25 57:17,19 |
| **express** 33:8 36:14 44:14 52:6 | **five** 14:10 18:19 21:1 41:1 52:19,19 55:11 56:22 58:7 | | |

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[google - judicial]**                              Page 8

google  14:22,25
  15:3 16:4 33:5
  33:14 37:6
grand  2:11
great  6:18 9:15
  12:25 13:13,19
  21:5 34:11
  40:25
green  33:11,12
guess  45:9
  54:10 55:3

**h**

h  6:13
hall  40:17
hand  5:13
handling  41:19
  45:17
hang  6:23
  13:18 18:22
  33:20 34:6
  43:18
happen  6:3
  35:11
happens  35:19
head  11:2
hear  6:7 15:17
heard  4:9 15:2
  15:6,8,10,11,12
  15:13,19,22
  16:3
hired  50:12
history  3:15
  12:9 42:15

43:6,14 48:23
49:2,6,9,13,15
55:13,22
hit  10:1
hmm  23:7
  47:18
hopefully  6:10
hours  7:12
house  6:4
hundred  7:4

**i**

i.e.  37:25 39:5
  44:1,12
idea  19:24
ideas  48:20
identification
  8:20 13:4
  33:18 43:7
  49:21
identity  55:2
ii  1:4
imagine  24:9
immobile  6:6
impact  6:15
implication
  46:24
import  28:3,6
important
  30:13
incapable
  44:15
include  37:14
  37:14,15,15

43:24
incorporated
  51:1
independent
  44:15
index  3:1,7
individually
  15:12
inform  36:3
information
  6:21 9:8 24:2,4
informs  43:3
infringement
  54:20 56:14
initially  7:17
instance  39:25
intellectual  1:3
  1:4 4:17 5:6
  50:24
interested
  60:19
interesting
  46:23
internet  4:8
interpretation
  16:13 52:6
intrinsic  55:15
  55:20
introduce  5:3
  8:18 9:12 13:2
  32:22 33:17
  42:11 48:24
  49:18

introduced
  5:16 13:3
introductory
  16:20
invalidate
  53:23
invalidity  54:9
  54:12 56:15
invention  32:20
inventor  26:23
involves  48:20
involving  50:23
ipr  50:3,4,8
  51:11,13 52:2
  52:22 53:2,8
  53:14,19 55:8
  55:23 56:2
iprs  7:18
irrelevant
  36:11,12,13
issue  7:25 13:7
issued  47:22

**j**

jan  2:7
january  7:9,10
  42:16 50:12,14
  50:15,16,17
jd  3:16
jeceaca  2:4
job  56:4,5,7
journal  35:21
judicial  59:6

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[jury - mean]**                                    Page 9

**jury** 54:15,15 56:5

**k**

**kasowitz** 2:5 5:7,18 59:9
**kasowitz.com** 2:7,7
**kind** 6:6 9:9 45:15,16
**kinds** 37:15 48:20
**knew** 37:8
**know** 7:8,13 8:9,21 9:5 12:12 13:16 15:14 16:2 23:22,23,24 24:12 29:10 30:19 35:9 46:23 49:22 58:3
**knowledge** 7:1 12:23
**known** 14:23 16:17

**l**

**language** 42:8 42:18,25 43:1 55:12
**law** 5:18
**layperson** 55:18

**left** 16:20 56:23
**legal** 46:23 59:8,9,10,12,15 60:14
**legs** 28:22
**letter** 7:8
**lexicographer** 36:14
**lexicography** 16:21 29:19 32:13
**limit** 25:23
**limitation** 44:14
**limited** 40:12
**limits** 26:11 45:12
**line** 18:21 19:10,12 38:8
**lines** 14:11,12 21:1,1,2 27:17 32:1 37:24
**lionel** 2:15 4:23
**list** 12:22 30:11 34:1
**listed** 12:10,15 47:10
**literal** 47:8
**literally** 42:2 48:1
**litigation** 6:20 7:19,25 16:5 50:23 54:15 59:16

**little** 9:22 33:3
**llc** 1:4,4 4:17 50:25
**llp** 2:5 5:7 59:9
**location** 4:21
**locus** 26:20 28:12 29:20 30:2,6,18
**long** 6:10 16:16
**longer** 19:20,21 20:11
**look** 6:22 7:7 8:2,4 9:18 18:25 20:18 25:8 34:15,23 34:24 53:12
**looked** 39:8,17 39:18,18
**looking** 8:3 11:25 18:8 39:11 52:8
**los** 2:11
**lose** 20:6
**lured** 16:10,22

**m**

**m** 6:13
**machine** 19:1
**made** 25:4 50:3 59:14
**mail** 9:8
**make** 5:15 18:21 26:7 38:12 46:22

47:2 48:24 54:9,11 59:6
**makes** 16:25 17:8
**making** 29:18 29:21
**march** 1:15 4:4 60:21
**marianne** 1:24 5:1 59:20 60:25
**marked** 8:20 13:4,5 33:18 43:7 49:21
**markman** 3:9 7:18 9:4,6 10:6 10:7 52:17,17 53:6,9 55:10
**materials** 12:2 12:10,15,19,20 12:22 20:18 30:12 34:1
**matter** 4:17 7:6 7:13 32:24 33:9
**matters** 7:2 33:11
**mckool** 2:10 5:8
**mckoolsmith....** 2:12
**mean** 8:10 10:11,18 12:15 18:7 21:21

Veritext Legal Solutions

800.808.4958                                    770.343.9696

Michael Shamos , Ph.D.                                            March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

[mean - ny]                                                        Page 10

37:19 39:16
40:18 51:13,16
54:16
**meaning** 7:25
14:23 15:16
37:18 47:20
48:7 51:23
52:7,10 53:1,3
55:1,4,9,15,16
55:18,19
**meanings**
52:13 53:13
**means** 19:18
21:22 22:10
23:17 24:3
28:1 29:8,20
37:11,16 45:13
54:17
**meant** 15:5
32:5 36:15
**media** 4:14
**meet** 8:23 9:7
**meeting** 9:9,10
**meetings** 9:1,3
9:5
**memories** 14:4
17:6,9,13
21:14 22:5,14
23:10,13,17
24:7 31:18
**memory** 3:12
16:14,25 31:16
31:17,21 32:5
32:7,8,15,19

33:5,23 34:19
35:2,23 37:3
37:14 38:1,5
38:18 39:1,20
39:22 40:13
**method** 24:23
25:9
**methods** 3:11
**michael** 1:14
3:3,9,16 4:15
5:20 6:13 59:2
**mileman** 2:15
4:23
**minute** 41:1
56:22
**misspelled** 10:8
**mm** 23:7 47:18
**moment** 8:22
12:5 13:3 19:4
21:9 26:13
32:23 33:2,2
34:22 35:9
43:6
**monday** 4:4
**morning** 5:25
**move** 7:5 8:22
24:16 26:12
29:15,17 36:17
41:11 42:7
**multi** 22:13
**multiple** 14:1,3
14:4 17:6,6,12
17:12 18:16
21:14,14 22:4

22:4,13,14,22
23:2,9,10,12,13
23:14,16,17,17
23:21,25 24:7
24:25 36:22,23
36:24 37:2,3
37:17,18 38:1
38:18 39:22
40:18 41:19
45:17
**multiprocessor**
19:13,24 20:1
20:16
**multithreaded**
19:14

**n**

**n** 4:1
**name** 4:23 6:11
**narrowing**
44:25
**narrows** 45:14
**nature** 53:21
**navigate** 9:23
**nearly** 35:18
**necessary**
51:21 53:17,18
54:8,11,13,14
54:17 56:4,5,7
**need** 18:5 57:24
58:3
**needed** 30:14
**neither** 18:6,6

**network** 37:12
37:13 40:21,22
**never** 8:3 15:2
15:6,10
**new** 2:6
**nice** 6:8
**nicely** 31:11
**nine** 34:6
**node** 8:6 37:9
37:11,12,16
38:3,25 39:18
39:20 40:12,20
**nodes** 14:4
17:12 21:14
22:4,14 23:2
23:14,15,16,17
23:21,25 36:22
36:23,24 37:2
37:17,18 38:6
39:1,11,21
40:18
**normally** 40:22
**note** 4:5 37:23
48:25
**noted** 35:6
**number** 6:25
31:8 34:15,16
34:24
**numbered**
10:12 31:4,5
**numbers** 9:24
31:10,13
**ny** 2:6

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[o - paragraph]**                                        Page 11

**o**

**o** 4:1 6:13
**o.c.g.a.** 59:11
**oath** 5:13
**object** 11:14,16
  15:21 24:1
**objection** 17:2
**obtained** 45:20
**obviously** 48:2
**obviousness**
  44:18
**occasionally**
  9:7
**occurrences**
  38:3,14,15,16
  38:24 39:17,18
**offer** 52:5
**offered** 7:2
**offices** 59:9
**oh** 6:3,21 7:4
  8:2 9:25 10:16
  34:9 36:21
  43:3,16 47:23
  55:14
**okay** 5:19 6:1,2
  6:18 7:7,10,20
  8:12,18 9:15
  9:25 10:9,14
  11:3,7,11,18,21
  12:12,20,25
  13:5,13,19,24
  14:7,9,19,25
  15:6,25 16:6

16:23 17:4,14
18:3,11 19:8
19:10 20:22
21:5,10,20,23
22:18,19,25
23:11,12,23
24:10,18 25:8
25:9 26:12,13
26:14 27:4,9
28:23 29:15,25
31:1,12,14,24
32:16,22 33:13
33:17 34:4,7
34:11,18,22
35:15,22 36:8
36:20 37:10
41:1,11,22
42:1,6,11,11,25
43:5,5,8,13,21
44:8,21 45:3,9
45:21 46:5,18
47:12 49:4,11
49:20,22 50:8
50:19 51:4,9
51:14,19 52:1
52:21 53:7
56:20,25 57:16
57:17 58:8,13
**once** 33:10
**operate** 14:3
  17:11 18:16
  21:13 22:3,13
  22:22 23:2,20
  23:24 24:7,24

**operates** 19:14
  23:9
**operations**
  41:15,18,23
  42:20 44:24
  46:19 49:8
**opinion** 7:3
  13:24 16:24
  17:19 18:11
  20:14,17,20,21
  21:20 22:21,25
  23:19 24:5
  26:18,22,23,25
  27:2,3,5,6
  30:14 31:15,24
  32:3,16 36:1,4
  36:9 37:1
  39:10 40:4,6,8
  40:9 41:17
  44:21 46:5,15
  47:13,14,19
  52:21,24 53:24
**opinions** 10:10
  10:15,22,25
  11:8,11,17
  14:9
**opposed** 36:16
**order** 15:11
  58:12
**orders** 58:1
**ordinary** 32:4
  40:11,15 44:10
  51:23 52:6,10
  52:13 53:1,3

53:13 55:9,14
55:16,17,18
**original** 3:22
  3:22 60:14
**outcome** 7:21
**outputs** 19:22
**outside** 33:9
  48:19
**own** 29:19
  33:10 36:14
  39:3
**owner** 51:20

**p**

**p** 2:10 4:1
**p.m.** 1:16 4:3
  41:6,10 57:2,6
  57:22 58:16
**page** 3:2,8 9:18
  9:20,24 13:21
  21:10 31:3,8,9
  34:5,24 43:17
  43:19,20 44:7
**pages** 3:9,10,12
  3:14,16 31:3
  60:8
**pajumobi** 2:7
**pan** 44:16,17
**paper** 7:24
**paragraph**
  11:21,22 12:2
  12:4,13 16:6,9
  17:14,15,16
  19:16 26:15

Veritext Legal Solutions

800.808.4958                                              770.343.9696

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[paragraph - portion]**                                          Page 12

27:17,21 28:1
29:17 30:21
31:2,2,10,13
37:20 41:23
42:1,12,24,25
43:1,16,17,22
44:6,6,8,22
45:4 50:20
51:2,3,10,19,22
52:12
**paragraphs**
31:3,4,6 51:15
**parallel** 3:11
13:21,25 15:8
15:13,14,15
16:10,11,15
17:19,21 18:12
20:12,15,23
21:12 22:2,12
22:21 23:1,5
23:20 24:6,23
25:10,16,20
36:20 41:14,17
41:23 42:2,19
43:25 44:9,11
44:23,25 45:13
45:14,15,16,22
45:23 46:3,4,6
46:6,8,9,9,19
47:1,3,8,14,15
47:16,20,22,23
47:24 48:1,2,3
48:5,5,6,7,8,12
48:13,15,16,18

48:20,21,22
49:7
**parallelism**
20:7
**part** 14:17,17
14:19 45:8,11
**partial** 45:2
**partic** 29:10
**participants**
4:8
**participated**
7:17
**particular** 9:19
27:14 29:11
45:15,16
**parties** 4:12
59:15 60:17,19
**party** 59:13,16
**pass** 57:13
**passage** 37:23
**passages** 20:25
21:3
**patent** 3:10,14
6:20 8:8 10:11
10:11,12,15,16
11:25 12:9
13:7 14:11,13
14:14 15:5,16
15:23,25 18:13
18:18,25 19:2
20:19 21:11,12
22:17,19 23:6
23:8,9 24:3,15
24:17,17,20,22

25:9 27:16
30:17 32:14
33:9,12 35:25
36:15 37:5,17
37:18 39:9,11
40:2,16,23
42:8,19 43:15
46:20 47:3
48:19 49:9,12
50:4,6,24 51:6
51:20 52:2,19
52:19 55:12,21
**patentee** 20:18
33:10 36:13
42:14,15 43:23
44:22,22 45:5
48:22
**patentee's**
16:17,21 29:19
**patents** 11:12
11:13 26:9
**paula** 2:4 5:5
57:18 58:12
**people** 16:3
**perfect** 58:8
**performed**
27:24
**permutation**
18:1
**person** 32:3
40:11,15
**petitioners**
50:23

**phd** 1:14 3:3,9
3:16 5:20 59:2
**photocopying**
60:11,13
**phrase** 16:21
28:3,6,16 29:7
37:25 38:22
39:22 45:5
**place** 4:12 18:7
30:4 31:11
37:12,12
**places** 30:7
**plain** 51:23
52:6,9,12 53:1
53:3,12 55:9
55:14,16,17,18
**plaintiff** 4:16
5:6
**plaintiffs** 1:5
2:3
**please** 4:5 5:2
5:12 6:11 8:21
13:20 17:16
18:19 19:5
24:16 26:14
27:9 34:16,23
49:22 51:15
58:1,2
**point** 21:4
43:16 44:3
45:21 46:23
**pops** 8:21
**portion** 7:20

Michael Shamos , Ph.D.

March 16, 2026

Intellectual Ventures I LLC v. American Airlines, Inc.

**[posita - read]**

Page 13

| | | | |
|---|---|---|---|
| **posita** 51:24 52:13 55:15 | **processing** 16:15,25 25:20 29:22 36:20 41:14,18 42:2 42:19 43:25 44:11,23 45:1 45:13,14,15,16 45:22,23 46:3 46:6,10,19 47:1,3,9,15,25 48:1,2,6,16,18 48:20,21,22 49:7 | 25:16 26:19,20 27:21,25 29:3 29:13,20,20 30:23,24 46:8 46:9 47:17,17 48:5,5,7,7,13 48:16 | **put** 14:5 35:20 55:6 |
| **position** 7:24 | | | **q** |
| **possible** 20:8 25:4 32:11 | | | **quality** 4:6,7 |
| **possibly** 28:3,4 28:7,13,14,16 29:8 | | **programming** 3:11 13:22 | **question** 10:20 16:23 22:6 23:14 24:12,25 25:5 26:3,6 33:4 34:4 40:8 46:16 51:5 |
| **prepare** 7:18 8:12,23 | | **programs** 14:2 16:16 | |
| **preparing** 9:3,6 | | **prohibited** 59:11 | **questions** 56:23 57:12,15 60:6 |
| **present** 2:14 5:2 | | **proper** 28:2,6 38:4 40:1,3 | **quick** 33:4 34:4 40:25 56:21 |
| **presentation** 7:24 | **processor** 18:13 19:17,19 20:4 25:19 37:14 38:5,6 39:1,2,20,21 40:14 | **proposed** 16:18 24:25 25:6 26:6 | **quite** 51:8 |
| **presumes** 46:8 | | | **quote** 21:11,11 |
| **previously** 7:23 29:5 | | **prosecution** 3:15 12:9 43:14 48:23 49:15 | **quoted** 20:19 27:15 |
| **prima** 44:18 | | | **quoting** 42:14 45:5 |
| **prior** 7:24 16:17 | **processors** 14:4 17:6,8,12 18:17 21:14 22:4,14,22 23:10,12 24:25 25:21 37:4 38:2,19 39:23 | **protic** 3:13 33:23 36:6 | |
| **priority** 35:24 | | | **r** |
| **probably** 7:4 10:16,24 35:13 45:25 48:13 | | **provide** 59:9,13 | **r** 1:24 4:1 59:20 60:1,25 |
| **problem** 41:4 | | **provided** 11:12 | **raise** 5:12 |
| | **program** 13:25 14:1 15:9,14 15:15 16:11,12 17:20,21 18:12 20:24 21:13 22:3,12,22 23:1,5,20 24:6 24:24 25:11,15 | **ptab** 53:22 54:2 56:4,7,10,18 | **rates** 59:15 |
| **proceeding** 51:21 53:22 | | | **rather** 38:2,19 39:5,8 |
| **proceedings** 52:2 | | **public** 7:23 | |
| **processes** 41:20 44:2,13 45:19 48:8 | | **published** 35:5 35:21 | **reaching** 14:9 31:24 |
| | | **pull** 43:5 | **read** 8:14,14,15 15:22,24 16:19 17:15 19:11 23:5,8 38:9 |
| | | **pursuant** 59:5 | |

Michael Shamos , Ph.D.                                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

[read - scroll]                                              Page 14

44:19 47:22
**readily** 44:10
**reading** 40:15
  55:15
**reads** 24:22
**realtime** 26:1
**reason** 17:23
  18:3,5 33:7
  54:7
**reasons** 56:10
**recess** 41:8
  57:4
**recognize** 9:16
  9:17,18 10:6
  33:19 43:11
  44:10 49:25
**recollection**
  33:6
**record** 4:3,13
  6:12 13:3
  38:12 40:7
  41:5,7,10 47:2
  55:16 57:1,3,6
  57:22,23,25
  58:15
**recorded** 4:10
  4:15
**recording** 4:7
  4:11
**reduced** 60:6
**refer** 20:25
  31:5,12 38:5,7
**reference** 34:15
  34:16,18

**references**
  34:13 35:12
**referral** 59:14
**referred** 18:1
**referring** 12:13
**refers** 47:17
**regents** 3:17
**regular** 60:18
**regulations**
  59:5
**related** 60:16
**relating** 10:10
  10:15,16,18,22
  11:8,12
**relied** 31:25
**rely** 14:10,18
  14:19,20,21
**remainder**
  21:24
**remaining**
  56:23
**remarks** 43:18
**remotely** 4:22
**render** 25:1,7
**repeat** 22:6
**report** 35:19
**reporter** 4:25
  5:4,11,17,21
  57:24 58:8,13
  59:7,14
**reporting** 59:5
  59:9,13,14
**represent**
  33:25 60:8

**representative**
  59:8
**representing**
  4:24
**research** 53:11
**resources** 49:6
**respect** 9:2
**response** 42:14
  42:15 45:23
  46:25
**rest** 9:19 28:17
  39:9 51:2
**result** 60:19
**resuming** 41:20
  44:2,13 45:18
**retained** 6:19
  7:6
**reveal** 16:4
**review** 13:8
  17:16 34:2,16
  35:11 36:25
  37:20 51:15
**reviewed** 11:24
  12:8 24:19
  51:5
**reviewing** 8:3
**richmond** 59:4
  60:3
**right** 5:13 11:4
  11:25 15:10
  16:1 27:1 28:5
  29:24 33:3
  40:24 43:4
  47:8 50:18

51:13 52:4
  54:7 57:12
**rough** 58:4,6
**router** 37:15
**rpr** 1:24 59:20
  60:25
**rules** 59:5
**run** 19:19 20:8
  20:10,15 25:18
  25:20
**running** 20:11
**runs** 20:3

**s**

**s** 4:1 6:13,13
**sakes** 31:13
**saved** 32:12
**saying** 15:7
**says** 13:21
  17:11 19:23
  30:1,5,17,18
  32:14 34:12
  35:1 44:8
**scope** 43:24
  45:6,7,8,11
**screen** 4:10
**scroll** 11:22
  13:1,20 16:6
  18:19 21:6
  26:14 31:1
  34:4,12 42:12
  43:10 45:25
  50:20 51:9

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[seal - stated]**                                          Page 15

seal   60:14
search   14:22,25
  15:3 16:4 36:5
  36:5,8
searches   8:10
sec   59:11
second   6:22
  18:22 19:7,12
  25:12 33:20
  43:18
see   6:8 9:13
  11:20 13:5
  15:4 18:23
  31:10 35:18
  36:6,8 43:8
  45:24 46:1,2,3
  46:3 49:22,24
  51:2 57:17,19
seems   9:21
seen   4:9
sentence   21:17
  21:24 22:8
  28:17 30:25
  38:17
separate   23:17
  37:3 38:1,19
  39:23
september   50:9
sequential   14:2
  25:15 26:19
  27:20,23,24,25
  29:2,13,19
  30:17,23

services   59:10
  59:13
seventy   34:6
shamos   1:14
  3:3,9,16 4:15
  5:11,20,25
  6:13,14 13:11
  26:24 29:16
  33:4,19 35:11
  37:1 41:12
  43:8 53:25
  55:21 57:8,15
  59:2
share   8:19 9:21
  13:16 21:8
  38:6 39:2
shared   3:12
  28:2 31:16,21
  32:5,7,15,18
  33:5,22 34:19
  35:2,23 39:21
sharing   32:8
sherman   1:2
  4:20
signature   60:14
  60:24
signed   11:18
  50:8
similar   19:22
  19:23
simply   16:11
simultaneously
  44:1,12

single   18:13
  19:17,19 26:20
  28:12 29:20
  30:2,18
situation   8:9
six   19:5,9,9
skill   27:12 32:4
  40:11,15 44:10
slash   17:12
slide   9:22 10:3
slow   33:3
smith   2:10 5:9
solutions   59:8
  59:9,10,12,15
  60:14
somebody
  24:11
sorry   6:7 9:12
  12:1 14:14
  15:18 22:6
  33:2 34:9
  36:24 39:15
  46:6 50:16
  51:12 53:16
source   18:10
  24:2
sources   24:4
  30:10
space   31:18
spawn   25:18
spawning
  25:17,17
spec   33:8

special   15:16
specific   15:20
  21:3 33:1 44:3
  44:3
specifically
  53:11
specification
  14:10 17:24
  18:2,8,9 20:24
  27:16,16 31:25
  33:1 38:4,25
  39:19 41:24
  42:3,7 49:16
  55:12,22
spell   6:11
spent   7:13
stairs   6:4
standard   54:1
  54:3 56:16
start   58:2
starting   31:14
starts   21:17
  29:7,7 35:19
state   6:11 12:8
  16:9 21:12
  29:17 37:23
  39:4 41:22
  42:1 43:23
  52:9 53:12
  58:1 59:3 60:2
stated   12:4
  23:12 28:1
  44:4 46:11
  52:21 54:8

Case 4:24-cv-00980-ALM    Document 141-1    Filed 04/13/26    Page 77 of 79 PageID #: 8213

Michael Shamos , Ph.D.                                March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

[stated - think]                                         Page 16

55:9 60:5

**statement** 44:3 44:4 51:3

**states** 1:1 3:10 11:24 19:11 51:19

**stating** 45:10

**stenographic** 57:25

**step** 25:12,12 25:14

**stored** 28:3,7 28:13,14,16

**strike** 15:18 32:17

**study** 53:5

**styled** 50:24

**submission** 53:8

**submitted** 52:18 55:23

**substances** 6:14

**sufficiently** 30:13

**suggesting** 37:25

**suggests** 39:5

**suite** 2:11

**superfluous** 25:2,7 26:7,9

**suppose** 28:11 28:11

**supposed** 46:9

**sure** 5:15 11:10 12:18 17:10,18 22:7 28:11 38:11,12,13 56:25 58:5

**surprise** 36:2

**survey** 34:19 35:2

**suzuki** 44:9,15 44:17

**swear** 5:4

**switch** 19:1

**sworn** 5:21

**synonymous** 17:21 18:4 47:15 48:9,14 48:16

**system** 31:16 31:17,21 32:5 32:7,8,15,19 33:5 44:9

**systems** 3:11,13 33:23 34:19 35:3,23

**t**

**t** 60:1,1

**table** 28:21,25

**take** 4:12 5:13 6:10 8:2,4 9:18 19:4,18 40:25 56:21 58:11

**taken** 4:16 6:14 7:23 41:8 57:4 60:5

**talk** 23:16

**talking** 50:6 52:16

**targeted** 19:12 19:23,25

**task** 56:12

**technical** 35:19

**technology** 4:23

**ten** 37:24

**tendon** 6:2

**term** 7:25 8:6 14:10,22,23 15:2,5,7,8,15 15:19 16:25 17:8 18:6 20:23 21:18,20 21:25 23:4 24:3 25:11 26:8,13,18 27:6,6,9,11,11 27:20,22 29:6 29:7,8,15,17 30:9 31:15,20 31:25 32:19,25 33:5 35:22,23 36:15,17,21,22 36:24 37:2,5,6 38:5 39:4 40:2 40:12 41:12,14 41:17,23 42:2

42:9,19 43:2 44:23,25 45:11 45:21,23 46:2 46:3,6,7,18,19 47:1,3,8,14,25 48:4,11,18,21 49:7 52:10

**terminating** 41:20 44:2,13 45:18

**terms** 8:3 10:19 10:23 11:1 15:1,4 18:6 33:14 37:7 45:8 47:9,13 51:23 52:1,7 52:11,19,25 53:3,13 54:13 54:16,22 55:1 55:4,11 56:1

**testified** 5:22

**testify** 6:15

**texas** 1:1 4:20

**textbook** 7:24

**thank** 10:5 12:7 26:12,17 51:4 56:24 57:9 58:9,13

**thereto** 60:6,15

**thing** 12:1

**things** 22:20 37:16

**think** 9:23 10:1 11:4 12:2,4,6

Michael Shamos , Ph.D.                                  March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[think - way]**                                        Page 17

18:5 23:15
25:24 28:8
30:12,21 32:6
35:4 40:24
45:25 50:14
57:11
**thinking** 30:13
**third** 25:14
**thirty** 38:13,16
**thought** 15:5
37:8
**thread** 41:20
44:2,13 45:18
**threads** 41:19
45:17
**three** 27:17
34:15,16 37:24
**time** 5:12 15:4
21:22,23 22:10
22:11 32:19
40:25 43:10
45:22 46:20
47:4,6 53:4,14
53:19,21
**times** 6:19
**title** 34:18 35:1
**titles** 35:18
**today** 6:16
**today's** 8:13
**torn** 6:1
**totally** 40:19
56:19
**trade** 27:13

**tran** 25:13
**transcript** 3:22
60:4,9,12
**transform**
25:14
**true** 27:22
30:25 40:16
42:5 51:3 60:8
**truthfully** 6:15
**turns** 18:22
**twist** 20:3
**twisted** 6:5
**two** 14:12
20:24 21:2
33:14 35:12
38:6 39:1,21
55:5 56:13,14
**type** 9:24
**typewriting**
60:7
**typically** 14:25

**u**

**unambiguous**
16:18
**under** 59:10
60:7,13
**understand**
23:18 40:16
51:20 54:16
**understanding**
40:10
**understood**
9:11 27:12

32:4 40:12
53:4
**unfortunately**
9:21
**uniprocessor**
19:14 20:9,10
**unit** 4:14
**united** 1:1 3:10
**university** 3:17
**use** 10:2 20:24
21:23 29:1,12
37:11 38:22
42:7,22 49:5,6
**used** 8:6 15:11
19:17 27:13
31:21 33:9
35:24 36:7,9
36:15,16 37:5
38:5 40:2,23
42:2,18 47:21
48:21
**useful** 15:4
**uses** 29:1 31:17
37:24 56:14
**using** 4:22 14:1
22:9 26:20
28:12 29:18,20
30:18 43:2
**usual** 59:15
**usually** 15:3,3
40:20
**utilized** 19:13

**v**

**variable** 28:2
**ventures** 1:3,4
4:17 5:6 50:24
**verify** 39:7
**veritext** 4:24
5:1 59:8,9,10
59:12,15 60:13
**versus** 3:17
4:18 50:25
**video** 4:3,11,15
41:5,9 57:1,5
57:23
**videoconfere...**
1:18
**videographer**
2:15 4:2,25
41:5,9 57:1,5
57:21
**videotaped**
1:12
**virtual** 4:22
**virtually** 4:6
**voluntarily**
43:23 45:5
**vs** 1:6

**w**

**want** 5:15 11:4
33:12 38:10,12
**way** 16:16 31:9
32:24 40:16,23
55:6 60:19

Michael Shamos , Ph.D.                    March 16, 2026
Intellectual Ventures I LLC v. American Airlines, Inc.

**[we've - zoom]**                                                    Page 18

| | |
|---|---|
| **we've**  33:14 | **yeah**  5:14 |
| 50:6 | 13:18 16:20 |
| **weird**  9:22 | 18:20,22 21:3 |
| **welcome**  57:7 | 23:15 36:23 |
| **went**  35:9 | 39:17 44:5 |
| 40:17 | 45:12 53:10 |
| **wharram**  1:24 | 58:11 |
| 5:1 59:20 | **year**  11:19 |
| 60:25 | **yellow**  28:22,24 |
| **wholesale** | 33:11 |
| 44:14 | **york**  2:6 |
| **willing**  26:10 | **z** |
| **withdrawn** | |
| 60:10 | **zoom**  1:18 9:7 |
| **witness**  3:2 4:9 | |
| 5:4,14,19 10:4 | |
| 41:3 56:25 | |
| 57:9,13,17 | |
| **word**  10:7 14:5 | |
| 28:4 30:24 | |
| 37:11 | |
| **wording**  25:9 | |
| **words**  14:8 | |
| 15:11,12 53:12 | |
| **work**  35:5,6 | |
| **writing**  15:9,20 | |
| 36:9 | |
| **wrong**  12:4 | |
| 37:9 50:11 | |
| **wrote**  37:6 51:6 | |
| **y** | |
| **y**  2:4 | |

Veritext Legal Solutions
800.808.4958                                                       770.343.9696