# EXHIBIT F



## Planet Depos

*We Make It Happen™*

# Transcript of Joseph D. Camp, Ph.D.

**Date:** March 17, 2026
**Case:** Intellectual Ventures I, LLC, et al. -v- American Airlines, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

- - - - - - - - - - - - - - - - x

INTELLECTUAL VENTURES I, LLC, : Civil Action No.
and INTELLECTUAL VENTURES II, : 4:24-cv-00980
LLC, :

     Plaintiffs, :

v. :

AMERICAN AIRLINES, INC., :

     Defendant. :

- - - - - - - - - - - - - - - - x

VIDEOCONFERENCED AND VIDEO-RECORDED DEPOSITION

OF

JOSEPH D. CAMP, PH.D.

DALLAS, TEXAS

Tuesday, March 17, 2026

11:00 a.m.

Job No. 625142

Pages: 1 - 140

Reported By: April L. Crites, RMR, CRR, CSR, CCR

Texas Certified Shorthand Reporter No. 12277

DEPOSITION OF JOSEPH D. CAMP, PH.D.

HELD AT THE OFFICES OF:


Southern Methodist University

Lyle School of Engineering

ECE Department, Junkins Building

6251 Airline Road, No. 340

Dallas, Texas 75205

(214) 768-3050


*   *   *


Pursuant to notice, and pursuant to the

Federal Rules of Civil Procedure,

before April L. Crites, RMR, CRR, CSR, CCR,

and Certified Shorthand Reporter,

State of Texas.


*   *   *

                    I  N  D  E  X


              E X A M I N A T I O N S


                                          PAGE

JOSEPH D. CAMP, Ph.D.

 Cross-Examination by Mr. Scott.........     6

 Direct Examination by Mr. Downing......   134


                  *   *   *

              E X H I B I T S

 MARKED              DESCRIPTION         PAGE


Exhibit 1  Declaration of Joseph D.        7
           Camp, February 12, 2026

Exhibit 2  Joseph D. Camp, Curriculum     17
           Vitae

Exhibit 3  United States Patent           45
           No. 11,032,000, June 8,
           2021

Exhibit 4  USPTO, before PTAB,            51
           Paper 13, December 12,
           2022, IPR2022-01130, U.S.
           Patent No. 8,811,356,
           Decision

Exhibit 5  United States Patent           58
           No. 8,811,356, August 19,
           2014

Exhibit 6  USPTO, before the PTAB,        59
           Case No. IPR2022-01130,
           U.S. Patent No. 8,811,356,
           Patent Owner's Preliminary
           Response

                  *   *   *

           A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS, INTELLECTUAL

VENTURES I, LLC, and INTELLECTUAL

VENTURES II, LLC, and JOSEPH D. CAMP, PH.D.:

     John W. Downing, Esq.

     KASOWITZ LLP

     101 California Street

     Suite 3950

     San Francisco, California 94111

     415-421-6140

     jdowning@kasowitz.com


 ON BEHALF OF THE DEFENDANT, AMERICAN

AIRLINES, INC.:

     Kenneth M. Scott, Esq.

     MCKOOL SMITH, P.C.

     303 Colorado Street

     Suite 2100

     Austin, Texas 78701

     512-692-8700

     kscott@mckoolsmith.com

 ALSO PRESENT:

     Jesse Castro, Videographer

     Planet Depos

               *   *   *

THE VIDEOGRAPHER:  Here begins media number 1 in the videotaped deposition of Dr. Joseph Camp in the matter of Intellectual Ventures I, LLC, et al. v. American Airlines, Incorporated, in the United States District Court for the Eastern District of Texas, Sherman Division, case number 4:24-cv-00980.

Today's date is March 17, 2026.  The time on the video monitor is 11:01 a.m.

The remote videographer today is Jesse Castro, representing Planet Depos.

All parties of this video deposition are attending remotely.

Would counsel please voice-identify themselves and state whom they represent?

MR. SCOTT:  Kenneth Scott with McKool Smith on behalf of American Airlines.

MR. DOWNING:  John Downing from Kasowitz on behalf of Intellectual Ventures.

THE VIDEOGRAPHER:  The court reporter today is April Crites, also representing Planet Depos.

The witness may now be sworn.

///

///

                    JOSEPH CAMP, Ph.D.

 of lawful age, Witness herein, having been

first duly cautioned and sworn, as hereinafter

certified, was examined and said as follows:

                    CROSS-EXAMINATION

 BY MR. SCOTT:

    Q    Good morning, Dr. Camp.                    11:01:56

    A    Good morning.                              11:01:57

    Q    Can you please state your name for the     11:01:58

record?                                             11:02:00

    A    Yes.  Joseph D. Camp.                      11:02:00

    Q    And where are you today?                   11:02:03

    A    I'm in Dallas, in my office at SMU.        11:02:05

    Q    Is there anyone else in the room with      11:02:08

you?                                                11:02:10

    A    There's nobody.                            11:02:10

    Q    And besides your computer that you're      11:02:12

using to attend this video deposition, do you       11:02:15

have any electronic devices with you?               11:02:17

    A    My phone is sitting here, but the --       11:02:20

it's closed, and then I have a laptop in a bag,     11:02:23

but it's clearly not on and active.                 11:02:26

    Q    Okay.  Do you agree to refrain from        11:02:29

communicating with anyone outside of this           11:02:32

deposition for -- using your electronic devices     11:02:35

or anyone who's in there with you while
we're -- while we're on the record?

A   Yes.

Q   Okay.  So I'm going to introduce your
declaration as Exhibit 1.

(Defendant's Exhibit 1, Declaration of
Joseph D. Camp, February 12, 2026, was marked
and presented for purposes of identification.)

BY MR. SCOTT:

Q   And let me know if you're able to open
that up.

MR. DOWNING:  How are we doing with
exhibits?

MR. SCOTT:  I just sent it in the chat.
Does that work for you?

MR. DOWNING:  Okay.

THE WITNESS:  Okay.  I have it.

BY MR. SCOTT:

Q   Okay.  And take a moment to look through
this and let me know if this looks like an
accurate copy of your declaration that you
submitted in this matter for the '000 patent.

A   Yes, it appears to be.

Q   And did you finalize and sign this on
February 12th?

11:02:40
11:02:42
11:02:44
11:02:44
11:02:52
11:02:52
11:02:52
11:03:03
11:03:03
11:03:03
11:03:05
11:03:09
11:03:11
11:03:12
11:03:13
11:03:15
11:03:16
11:03:23
11:03:23
11:03:25
11:03:28
11:03:30
11:03:38
11:03:40
11:03:42

A    Yes.

Q    Does this contain the entirety of your opinions relating to the '000 patent claim construction in this matter?

A    Yes.

MR. DOWNING:  Objection to form.

BY MR. SCOTT:

Q    Okay.  So have you been deposed before, Dr. Camp?

A    I have.

Q    Okay.  I'll be quick with going over the -- the ground rules, then.

You understand that the oath you've given today is the same -- has the same effect as if you were giving it in a courtroom?

A    I do.

Q    And is there any reason you can't follow that oath today?

A    There's not.

Q    And I'm going to assume that you understand any question that I ask unless you tell me otherwise.

Does that work for you?

A    Yes.

Q    And as far as breaks, I'm happy to take

11:03:44
11:03:50
11:03:53
11:03:57
11:03:58
11:03:59
11:04:02
11:04:02
11:04:07
11:04:07
11:04:09
11:04:11
11:04:13
11:04:15
11:04:17
11:04:20
11:04:21
11:04:23
11:04:24
11:04:26
11:04:29
11:04:31
11:04:32
11:04:33
11:04:35

a break whenever you need.  I assume we'll take

a break every hour or so, as long as you're

willing to finish whatever line of questions

we're on, and I'm happy to take a break then.

A    Okay.  Sounds good.

Q    Okay.  So let's talk about your
preparation today.

When were you engaged by Intellectual
Ventures, or IV?

A    For this case or for any case?

Q    For this case.

A    I recall talking to counsel midsummer,
so it's at least since the summer of 2025, but
I don't recall the exact timing of engagement.
I could probably pull that up if -- but that
would be another document.

Q    That's good enough for now.

Have you worked with IV before this
case?

A    I have on one other case.

Q    Okay.  And what was the name of the
case?

A    It's involving Tesla and IV.

Q    Ok.  When did you become aware of the
'000 patent in this case?

A    I believe it was around the -- summer
2025 that I became aware of this patent.

Q    You became aware of it because of your
involvement in the case?

A    Yes.

Q    And can you tell me your understanding
of what the '000 patent is about?

MR. DOWNING:  Objection to form.

THE WITNESS:  So whenever -- whenever
UEs need to communicate channel state
information back to the base station, there are
some assumptions that can be made, called
channel reciprocity, and that is especially
helpful if you're operating on the same
frequency down and up, so TDD, where you would
be down and up on the same frequency.

This patent, because it could use a
different frequency for down and up -- in other
words, frequency division duplex -- there could
be sufficient separation to where that
assumption of channel reciprocity would no
longer hold because the distance is far enough
to where, statistically, the channel is
different than from the downlink to the uplink.
And so this creates a mechanism by which the

UEs can communicate in the uplink direction about what they're perceiving in the downlink direction.

BY MR. SCOTT:

Q    Thank you for that.

You mentioned "sufficient separation."

Can you explain more what you mean by "sufficient separation"?

A    Sure.  So there's this notion of coherence bandwidth within wireless systems, and there could be -- if -- so if you have one channel next to another channel, then they could possibly be statistically similar, meaning that what you measure on one channel corresponds with the next channel next to it.

But if you -- you might understand that as you increase the number of channels away from each other, the likelihood of those measurements being similar, statistically, diminishes, and there's this notion of coherence bandwidth where, if you have the -- the properties of the channel are such that the distant -- it tells you the distance away where you can still be safe, statistically, from one channel to the other such that you can take a

11:08:18
11:08:22
11:08:26
11:08:30
11:08:30
11:08:33
11:08:36
11:08:39
11:08:42
11:08:47
11:08:52
11:08:58
11:09:02
11:09:05
11:09:08
11:09:14
11:09:17
11:09:20
11:09:23
11:09:26
11:09:29
11:09:36
11:09:41
11:09:44
11:09:47

measurement on one channel and it represents the other channel.

But if it's -- if the channel is greater than the coherence bandwidth, then they are statistically dissimilar; in other words, the distance is too far away for one channel to be characterized by the other channel.

Q   And what is the distance you're referring to?

A   Coherence bandwidth.

Q   Okay.  Thanks for that.

Getting back to your declaration.

Do you know about how much time you spent on your declaration that you submitted for the '000 patent?

A   Including all initial reads of all the documents, I would say tens of hours. Probably, a reasonable estimate is around 30 hours or more.

Q   Less than 40 hours?

A   I can't say that for sure because I didn't look at that before this deposition, but it's in the tens of hours.

Q   Yeah.  Just trying to get, like, a broad idea.

So would you say, like, 30 to 40 hours is a reasonable estimate?

A    I would say probably the right number for an over/under -- not saying it's capped -- would be about 40.

Q    Okay.

A    It's probably somewhere around that range.  It's either above that or below that, but I would say that's a reasonable estimate.

Q    And you said that's including the amount of time you spent reviewing documents, as well?

A    Yes.

Q    How much total time have you spent on this engagement to date, roughly?

A    Can you explain by "this engagement to date."

Q    You submitted another declaration earlier in this case that did not concern the '000 patent, correct?

A    There were other patents.

Q    And do you recall how much time you spent, including the work that you spent on those patents, as well?

A    I believe that 40 number includes all of those patents, is what I'm --

Q   Okay.                                               11:12:32

A   -- thinking --                                      11:12:32

Q   Okay.                                               11:12:33

A   -- but that might be a little low.  I --            11:12:34
I didn't look at it exactly when I looked at            11:12:37
this, but I would say that, you know, 40 to 50          11:12:39
includes all the patents in the -- asserted            11:12:42
against American.                                       11:12:47

Q   Okay.                                               11:12:47

A   But this one is the one that has the               11:12:48
greatest time, effort, because it's the                11:12:50
farthest along.                                         11:12:54

Q   Okay.  All right.  So for -- for the --            11:12:55
all the patents that have been asserted in this        11:12:59
case that you've been asked to opine on, your          11:13:01
total time estimate is 40 to 50 hours?                 11:13:04

A   I think that's a good estimate.                    11:13:07

Q   And for the '000 patent, specifically,            11:13:11
your estimate is 30 to 40 hours?                        11:13:16

A   As long as we stick to ballpark, I think          11:13:21
that's a reasonable estimate.                           11:13:24

Q   Okay.  Did you -- did you draft your              11:13:25
declaration yourself --                                 11:13:33

A   Yes.                                                11:13:35

Q   -- that you submitted for the                     11:13:35

'000 patent?

Did you -- you started from the ground up?  From a blank page, you drafted it?

A    I did.  And then there was some header information that was added by counsel.

Q    Okay.  So total ballpark number for the '000 patent, between reviewing documents and drafting your declaration, is 30 to 40 hours; that sounds right?

A    That does sound right.

Q    All right.  So turning to your declaration, specifically.  Let's start with your -- your background and qualifications. I'm looking at page 2.  I'm going to be referring specifically to what's on this page.

Have you worked with cellular networks before?

A    In terms of -- define "worked with."

Q    Has your work with SMU concerned cellular networks or cellular standards?

A    The -- the papers that I published have applicability to -- a lot of times, it has both applicability to cellular and Wi-Fi.  Sometimes they are -- one is geared more towards Wi-Fi or one is geared more towards cellular, but we

11:13:38
11:13:41
11:13:42
11:13:46
11:13:48
11:13:50
11:14:02
11:14:03
11:14:06
11:14:07
11:14:17
11:14:20
11:14:29
11:14:32
11:14:35
11:14:39
11:14:41
11:14:45
11:14:55
11:15:00
11:15:06
11:15:10
11:15:14
11:15:17
11:15:20

have papers that span -- those two are our       11:15:23

focus on -- in terms of publications.            11:15:28

        So in terms of my work, our research is   11:15:30

primarily focused on wireless systems, but       11:15:34

that -- those more focused on cellular or        11:15:37

Wi-Fi-based-type systems -- I would say 80 to    11:15:42

90 percent of our focus is on, you know,         11:15:46

terrestrial wireless networks, and those are     11:15:52

the most dominant, so that would be the most     11:15:54

papers that I've written.                        11:15:58

Q   Would you say that your work is more         11:15:59

focused on Wi-Fi than cellular?                  11:16:01

A   I feel like it's -- it's pretty even,        11:16:04

and the patent litigation that I've done is      11:16:06

maybe even more geared towards cellular.         11:16:08

Q   Have you worked with, for example, the      11:16:12

3GPP standard, UTAN -- sorry -- UTRAN- or        11:16:18

3G-based technologies?                           11:16:23

        MR. DOWNING:  Objection to form.         11:16:25

        THE WITNESS:  I've worked with those     11:16:26

technologies, yes.                               11:16:30

 BY MR. SCOTT:                                    11:16:32

Q   And your work with SMU or -- as a           11:16:33

researcher or in litigation?                     11:16:36

A   Both.                                        11:16:39

Q   And how about 4G LTE; have you worked
with that before?

A   Yes, I've worked with those -- those
standards before.

Q   Both as a researcher and as an expert in
litigation?

A   Yes.

Q   Do you recall the cases that you worked
on that involved those technologies?

A   Off the top of my head, I -- I would
have to refer to my CV to kind of look at
those -- those cases.

Q   Okay.

MR. SCOTT:  I'm going to introduce as
Exhibit 2 your CV that was submitted in this
litigation.

(Defendant's Exhibit 2, Joseph D. Camp,
Curriculum Vitae, was marked and presented for
purposes of identification.)

BY MR. SCOTT:

Q   Let me know if that pops up for you.

A   Yes.  I have it on my computer.

Q   Does this look like an accurate copy of
your CV?

A   It does.

Q   So if you could just peruse that quickly and let me know if any cases jump out at you as concerning cellular technology, specifically 3G or 4G.

A   So the -- if you go reverse chronological, the -- the ASUS case, where Alston & Bird and Lenovo are in a disagreement in an ITC case.  That -- that's specifically on innovations related to 5G.  And so that would be, you know, timing -- the timing is what I'm referring to.

And so, as you go reverse chronological, that -- the next one is a Wi-Fi case.  Sweat equity, those are more trade secrets.  And then the Huawei v. Verizon case and the Nokia v. Huawei case, those were, I believe -- I would rather just look at it to say for sure, but I can't tell if they're just 3G or 4G or Wi-Fi, off the top of my head.

But I think at least one of those -- I think the Huawei one, if I recall, is cellular-based, but I -- I would have to, you know, just Google that case and remember all the details of it.

Q   Okay.  And do you have any work as a

researcher that you'd like to highlight as
concerning cellular work?

A    The -- the one that I think about a lot
when I'm reading this case is -- so one of my
Ph.D. students, his focus of his whole
dissertation was on feedback mechanisms, and
that's really applicable to this case.  And so
his name is Shi, S-H-I, and he -- he had a
couple of journal papers, but -- with him, but
the one I'm specifically thinking about a lot
was the -- the one in 2021.  It was IEEE
transactions on vehicular technology, and from
June 2021, and it starts out, Shi, Badi, Rajan,
and Camp, Channel Reciprocity Analysis and
Feedback Mechanism Design for Mobile
Beamforming Systems.

And so that -- that is a very kind of --
so for that work, he started out doing
drone-based wireless beamforming, and then
we -- he spent the whole rest of his Ph.D.
using controlled mechanisms to really
understand the feedback mechanisms involved.

And so he talked about the impact of
various channel reciprocity and the -- the
stuff I already mentioned earlier, and then

defined the -- the positives and negatives related to different design decisions that went into the channel reciprocity assumption and whether you use it or whether you just measure again, like I talked about earlier.

So that one, it just -- it comes to mind a lot as I'm reading this because he spent his whole, you know, four to five years studying this problem, and we -- you know, we worked closely together; he was my student. So that's the one, specifically, that I think about a lot as I'm reading.

But in terms of the other one that has some -- you know, talking about coherence bandwidth, that was really another Ph.D. student of mine, Yongjiu Du, D-U. He had a lot of papers about how to measure coherence bandwidth and what design you make based upon the coherence of the channel in various forms, whether it be time or bandwidth or others.

So, for example, the Du, Huang, Shi, Rajan, Camp paper Design of Coherence-Aware Channel Indication and Prediction for Rate Adaptation. So in order --

THE COURT REPORTER: Dr. Camp. Can you

please slow down for me?

THE WITNESS:  Oh, I'm sorry.

THE COURT REPORTER:  That's okay.

So I have, "for example, the Du, Huang," and then I lost you at the names.

THE WITNESS:  Shi, S-H-I, and Rajan, R-A-J-A-N.  And it's Design of Coherence-Aware Channel Indication and Prediction for Rate Adaptation.                                               11:23:38

And so this -- I have a lot of work on        11:23:38
rate adaptation, whether it be cellular, Wi-Fi,    11:23:44
and that was one of my primary papers as a         11:23:46
Ph.D. student and continued as a professor.        11:23:51

In order to choose the right rate for a       11:23:53
wireless channel, you have to know what the        11:24:00
receiver is seeing and you have to have some       11:24:02
form of feedback, which is relevant in this        11:24:05
patent.                                            11:24:07

And so, whether it's using different          11:24:09
rates or it's doing beamforming, which is about    11:24:11
to become a major concept within 3GPP or Wi-Fi,    11:24:16
or already is, you have to do this channel         11:24:22
handshaking from downlink to uplink, and all of    11:24:25
these things are extremely relevant to both --     11:24:28
both systems.                                      11:24:30

I'll stop there.  You can ask more questions.

BY MR. SCOTT:

Q    No.  That was -- that was helpful.  I appreciate that.  Thank you, Dr. Camp.

Just for clarity, for both of those papers that you specifically mentioned, you were acting as the advisor, correct?

A    Yes.

Q    Okay.  So I'm going to turn back to your declaration now, and I am looking at paragraph 12, and here, you list some documents that you had reviewed in this matter, and you list the '000 patent, the '000 patent prosecution history, and then the parties' claim construction disclosures, and extrinsic evidence cited in those disclosures.

Is that a complete list of documents that you reviewed with respect to the '000 patent claim construction declaration that you submitted?

A    So I've looked at the patents that led up to this patent, so on the first page and on the second page of the '000 patent, it talks about the prior patents that led up to this

11:24:33
11:24:35
11:24:35
11:24:35
11:24:38
11:24:39
11:24:42
11:24:47
11:24:49
11:24:50
11:24:56
11:25:05
11:25:09
11:25:13
11:25:17
11:25:22
11:25:25
11:25:29
11:25:33
11:25:38
11:25:40
11:25:54
11:26:12
11:26:14
11:26:18

patent.  And so I've reviewed those patents.

Those would be specific other materials that I can think off the top of my head, but I'm not thinking of other things right now, but it doesn't mean I haven't reviewed other things in preparation for this.

But those specifically come to mind as I'm thinking about other materials.

Q    Those other patents that you're discussing, would one of them be the '356 patent?

A    '356 and '639, which is the other one listed on the history of this patent.

MR. SCOTT:  And so, for the record, those are U.S. Patent Nos. 8,811,356 and 8,009,639, and those are, as Dr. Camp mentions, listed on the cover of the '000 patent.

BY MR. SCOTT:

Q    Have you reviewed any 3GPP standards in preparation for this case, Dr. Camp?

A    I don't specifically recall if I did, or which documents I would have looked at.

Q    Okay.  And I think this is included in the extrinsic evidence cited in the claim construction disclosures, but you've also

reviewed the IPR proceedings relating to the '356 patent; is that correct?

A    I have reviewed them.

Q    Do you recall which specific filings from those IPR proceedings you reviewed?

A    Can you tell me what you mean by "which specific filings"?

Q    Yeah.  Do you recall which papers that were filed before the PTAB you reviewed?

A    I recall that it made reference to certain papers, but I don't remember what those papers' names were.  I did -- I do remember pulling up certain papers that it was referencing, but I don't remember what they were.

Q    Okay.  So I'm going to move to the next section of your declaration.  This is titled Legal Standards in your declaration.

A    Yeah, I'm there.

Q    In paragraph 15, you -- you say that a person of ordinary skill in the art is a hypothetical person who is presumed to have known the relevant art at the time of the invention.

A    I see that.

11:29:22
11:29:32
11:29:33
11:29:34
11:29:37
11:29:45
11:29:47
11:29:49
11:29:52
11:30:15
11:30:17
11:30:19
11:30:21
11:30:24
11:30:26
11:30:26
11:30:35
11:30:38
11:30:50
11:30:51
11:30:58
11:31:02
11:31:04
11:31:05
11:31:09

Q   Was -- sorry?

A   I see that.  I was just saying I see it.

Q   Yeah.

What's your understanding of "relevant art"?

MR. DOWNING:  Objection to form.

THE WITNESS:  My understanding of relevant art are, of course, patents that have to deal with the same concepts that would have existed, and available to this person of ordinary skill in the art.  But my understanding is that there could also be published papers that are relevant art, as well.

BY MR. SCOTT:

Q   And what would make those published papers relevant art?

MR. DOWNING:  Objection to the form.

THE WITNESS:  I would say, if they are addressing a similar problem as the patent, and have maybe even elements of similarity on solutions to those problems, they could be relevant.

BY MR. SCOTT:

Q   And is that a complete understanding of

what you deem to be relevant art?

MR. DOWNING:  Objection to form.  Vague.
Ambiguous.

THE WITNESS:  The word "complete" is
hanging me up a little bit, but I would say
that at a high level, published patents and
published papers that deal with the technical
issues of a particular patent that existed
before that patent would be what I would review
as an expert related to that particular patent.

BY MR. SCOTT:

Q    And can you name any other kinds of
relevant art that you would consider as an
expert?

MR. DOWNING:  Objection to form.

THE WITNESS:  I've looked at disclosures
to see if the inventor had a -- the word is
escaping me, but it's something like control or
possessed the -- had possession of the
knowledge of that particular thing that was
within the patent.  I've looked at, like,
PowerPoint disclosures or slides that disclose
ideas from either that particular inventor or
other inventors on the other relevant art.

BY MR. SCOTT:

Q   Anything else?

MR. DOWNING:  Objection to form.

THE WITNESS:  I would think that you could look at products and their operation and their viability in the market as a historical marker, if they've already done it in the market, then there could be some relevance there as prior art.

BY MR. SCOTT:

Q   Okay.  Moving on to paragraph 22.  You say that you understand that extrinsic evidence may also be useful in interpreting patent claims when the intrinsic evidence itself is insufficient.

When do you consider the intrinsic evidence to be insufficient?

MR. DOWNING:  Objection to form.  Vague. Ambiguous.

THE WITNESS:  I would think that the context out of which the -- the patent was intrinsically defined -- in other words, the global context of the prior art industry, what a person would know about the standards -- would all be relevant information that may not be specific -- specifically spelled out within

11:35:00
11:35:03
11:35:14
11:35:17
11:35:27
11:35:32
11:35:34
11:35:36
11:35:50
11:35:51
11:35:58
11:36:01
11:36:04
11:36:08
11:36:11
11:36:14
11:36:16
11:36:20
11:37:25
11:37:28
11:37:35
11:37:38
11:37:43
11:37:45
11:37:47

the patent claims, but would be well understood   11:37:51

by a person of ordinary skill in the art, and   11:37:56

so the context would be something that would be   11:37:58

extremely relevant about what this person   11:38:00

that's inventing the patent would know, about   11:38:04

other people who are reviewing the patent would   11:38:07

know.  There could be context that is extremely   11:38:10

relevant.   11:38:14

          For example, what feedback mechanisms   11:38:15

existed in the -- in the art whenever the   11:38:17

pertinent person was writing a patent about   11:38:22

feedback mechanisms.   11:38:25

 BY MR. SCOTT:   11:38:41

     Q   So that doesn't really help me   11:39:16

understand when the intrinsic evidence is   11:39:18

insufficient.  So I guess what I'm more   11:39:21

precisely interested in is when the intrinsic   11:39:25

evidence -- do you -- when do you consider it   11:39:30

insufficient?  When would you go to the   11:39:36

extrinsic evidence?   11:39:39

          MR. DOWNING:  Objection to form.  Vague   11:39:41

and ambiguous.   11:39:49

          THE WITNESS:  I guess I would continue   11:40:18

to go back to the context in which the patent   11:40:20

was written, the time frame that it was   11:40:22

written, what a person of ordinary skill in the
art would know.  Because if you knew something
well, you might not describe it that in depth
in your patent because you knew it like the
back of your hand.  So -- and everybody else in
the industry that's doing that would know it as
well, so -- and it would have already -- one of
those concepts had already existed within 3GPP
or Wi-Fi, and so therefore it would not make
it -- the full details of all of that might not
make it into the patent itself, because it was
so well known.

And that would be a context in which
that would -- that would be really important to
understand that patent is the -- the state of
that particular mechanism or that particular
subject at the time in the standards or other
products that existed at the time.  That would
be obvious to the authors and to those
reviewing the patent.

 BY MR. SCOTT:

    Q    So the -- the context of the patent, the
time frame it was written, and the knowledge of
a POSITA would all be relevant to determining
when the intrinsic evidence is insufficient?

MR. DOWNING:  Objection to form.

THE WITNESS:  I would -- I wouldn't say determining.  I would say they would be useful -- the extrinsic would be useful in interpreting the patent claims, because it would be the state of being whenever that claim was written.  So that's -- the word that's catching me up on your question is "determining."  Because I don't say that word here.

BY MR. SCOTT:

Q   I'm just trying to find out when you think intrinsic evidence is insufficient.

MR. DOWNING:  Objection to form.

BY MR. SCOTT:

Q   And so I assume to make a decision that intrinsic evidence is insufficient, you need to determine it.  So looking at a patent and the intrinsic evidence of that patent, what tells you that you should go to the extrinsic evidence?

MR. DOWNING:  Objection to form.  Vague and ambiguous.

THE WITNESS:  To answer it wholistically, I'm just going to answer it

based on a specific example, and it might not                11:43:40

be wholistic in answering.  But, for example,                11:43:42

if you saw in the history section of the patent              11:43:45

that it was referring to specific protocols or               11:43:50

specific mechanisms that were used, that are                 11:43:55

well known, then I would say that that patent                11:44:00

alone is not sufficient to fully describe that               11:44:05

protocol.  But you can look at extrinsic                     11:44:08

evidence to show -- like what that -- the full               11:44:16

protocol is and what the author would have                   11:44:18

known to interpret the rest of the patent.                   11:44:20

 BY MR. SCOTT:                                               11:44:40

    Q   So maybe -- maybe something that will                11:44:41

help is if we go to paragraph 25.  You say, I                11:44:42

understand that if a claim term is ambiguous or              11:44:48

unclear, the term must be construed to                       11:44:51

determine how a person of ordinary skill in the              11:44:53

art would have resolved in light of the rest of              11:44:57

the patent specification, patent claims, and                 11:45:00

the application's prosecution history.                       11:45:04

    Would you ever consider going to the                     11:45:11

extrinsic evidence if the claim's term is                    11:45:16

ambiguous or unclear?                                        11:45:20

    MR. DOWNING:  Objection to form.  Vague                  11:45:20

and ambiguous.  Incomplete hypothetical.                     11:45:22

THE WITNESS: I mean, this is agreeing with what I was saying, is that, you know, the person of ordinary skill in the art, it's very important to understand what they would know about at the time of the invention, and that would probably be referenced -- there would probably be some references to that extrinsic evidence about that particular knowledge that would be necessary.

If a person was just reading the patent word-for-word, it might not cover all that you need to get the background that you need to be a person of ordinary skill in the art that would already have. So that's where you might need to lean on -- if a person was not a person of ordinary skill in the art and they were trying to read the patent, they probably would need to look to get the same background as a person of ordinary skill in the art, so therefore they would need to understand those other things that that person of ordinary skill in the art would've known, which would be extrinsic to the patent.

BY MR. SCOTT:

Q So you would go to the extrinsic

evidence if the term is ambiguous or unclear in certain circumstances?

MR. DOWNING:  Objection to form.  Vague. Ambiguous.  Incomplete hypothetical.

THE WITNESS:  Yeah, I think that these statements are clear that if you -- you have to consider what a person of ordinary skill in the art would have known in light of these different things: The patent, the specification of the claims, the prosecution history, that's all contributing to how you would interpret the patent.

So I guess I'm not understanding that hypothetical situation.

BY MR. SCOTT:

Q   So going back to paragraph 22, earlier when I asked you when the intrinsic evidence is insufficient, and I think you mentioned the knowledge of a POSITA and the state of the art, and I'm wondering if you think that the intrinsic -- excuse me, if the intrinsic evidence is ever insufficient based on lack of clarity in claim terms?

MR. DOWNING:  Objection to form.  Vague. Ambiguous.  Incomplete hypothetical.

THE WITNESS: Can you repeat the last part of your question, if the -- something is ambiguous?

BY MR. SCOTT:

Q Yeah. Let me try and make it the -- the same as possible.

Do you ever think it's ever possible to go to extrinsic evidence if a claim term is ambiguous or unclear?

MR. DOWNING: Same objections.

THE WITNESS: I think it's the responsibility of the inventor to make the claim term unambiguous.

MR. SCOTT: So I'll object to that as nonresponsive.

BY MR. SCOTT:

Q The -- the question is: Do you ever think it's appropriate to go to extrinsic evidence when the claim term is ambiguous or unclear?

MR. DOWNING: Objection to form. Vague. Ambiguous. Incomplete hypothetical.

THE WITNESS: So in that hypothetical situation, one person's lack of clarity might be another person's clarity. So one person

with the lack of clarity, looking at extrinsic   11:51:16
evidence, might bring them to a position of a     11:51:20
person of ordinary skill in the art and clear     11:51:24
out that particular situation.                    11:51:26

So in that hypothetical, the person that          11:51:28
has a lack of clarity, in my own hypothetical     11:51:32
world, I'm making up a hypothetical from your     11:51:36
hypothetical, that this person that has a lack    11:51:40
of clarity is not a person of ordinary skill in   11:51:46
the art, so, therefore, they look at the          11:51:51
extrinsic evidence that a person of ordinary      11:51:54
skill in the art would have already known about   11:51:57
the state of the art, and, therefore, they        11:51:58
clear up their lack of clarity.                   11:52:01

BY MR. SCOTT:                                      11:52:04

Q   So you do think it's appropriate for --       11:52:04
to consider extrinsic evidence when a claim       11:52:07
term is ambiguous or unclear?                     11:52:09

A   What's your level of importance that you      11:52:16
would ascribe to that question?  Define           11:52:56
"importance" to me.                               11:53:00

Q   I'm not sure I said the word                  11:53:03
"importance."                                     11:53:05

A   You do think it's important, is what you      11:53:06
asked me?                                         11:53:08

Q   Sorry, you may not have heard me well.
I -- I apologize.

I said, do you think it's ever
appropriate to consider extrinsic evidence when
a claim term is ambiguous or unclear?

A   Oh, sorry, I heard importance, sorry.

MR. DOWNING:  Hold on.  Objection to
form.  Vague and ambiguous.  And misinterprets
the question.  Mischaracterizes the -- the last
question asked.

THE WITNESS:  So do I ever think it's
appropriate to look at extrinsic evidence when
a claim term is ambiguous is what you asked,
right?

BY MR. SCOTT:

Q   I'll just ask the question again for the
record --

A   Okay.

Q   -- and if you -- if you don't understand
me, then, you know, feel free to ask for
clarification, like I said earlier.

A   Okay.

Q   Do you ever think it's appropriate to
consider extrinsic evidence when the claim term
is ambiguous or unclear?

A    I think in that hypothetical, then there are levels of ambiguity and levels of clarity, and one person's level of ambiguity and one person's level of clarity is different from person to person.

Somebody not as a person of ordinary skill in the art would have less clarity and more ambiguity interpreting the claims than somebody with skill in the art; so, therefore, the person with less skill in the art might need to see external evidence -- or external -- yeah, extrinsic evidence from the patent to reach the level of a person of ordinary skill in the art, so therefore they could interpret the claims correctly.

Q    So this isn't really a hypothetical, because I'm asking you personally whether you think you would ever consider extrinsic evidence and whether a claim term is ambiguous or unclear.

So you're -- let me ask you this: Are you a person of ordinary skill in the art?  Do you consider yourself to be a person of ordinary skill in the art?

A    I do.

11:54:18
11:54:44
11:54:48
11:54:50
11:54:53
11:54:56
11:55:02
11:55:04
11:55:07
11:55:12
11:55:15
11:55:18
11:55:21
11:55:26
11:55:30
11:55:31
11:55:33
11:55:36
11:55:41
11:55:44
11:55:46
11:55:48
11:55:50
11:55:54
11:55:54

MR. DOWNING:  Hold -- hold on.  I'm --
I'm just going to object to the last question
as -- as vague and ambiguous.  Object to form.

MR. SCOTT:  Okay.

BY MR. SCOTT:

Q   And considering yourself as a POSITA,
would you ever consider extrinsic evidence if a
claim term is ambiguous or unclear to you?

MR. DOWNING:  Objection to form.  Vague
and ambiguous.  Incomplete hypothetical.

THE WITNESS:  As a POSITA, I wouldn't
presume to know all of the context in which the
patent was written, so I would definitely do my
homework about understanding the context in
which the patent was written before I
interpreted the claims of the patent.

BY MR. SCOTT:

Q   Let's move on.

Do you agree that the patent
specification is the best guide to the meaning
of a disputed claim term?

MR. DOWNING:  Objection to form.  Vague
and ambiguous.  Incomplete hypothetical.

THE WITNESS:  I'm struggling with the
word "best," because it's hard to say that the

specimen -- the specification is always the 11:58:14

best indicator of how to interpret the claim 11:58:19

terms.  But it's a driving indicator. 11:58:21

BY MR. SCOTT: 11:58:40

Q   In paragraph 26 you say, I understand 11:58:40

that a claim is not indefinite, as long as it 11:58:42

having been -- excuse me -- having been read in 11:58:46

light of the intrinsic evidence, informs one of 11:58:49

skill in the art at the time of the invention 11:58:53

about the scope of the invention with 11:58:55

reasonable certainty. 11:58:56

Do you only consider intrinsic evidence 11:58:59

when determining indefiniteness? 11:59:03

MR. DOWNING:  Objection to form.  Vague. 11:59:07

Ambiguous.  Incomplete hypothetical. 11:59:10

THE WITNESS:  I think 26 is just saying 11:59:51

one way that it's not indefinite.  That's the 11:59:54

way I read that line.  So jumping to the next 11:59:58

thing you said is -- I guess I would -- I would 12:00:02

think that that's a leap from -- that's not 12:00:09

what this line is saying.  It's just -- all 12:00:13

this 26 is saying is that if you inform one of 12:00:16

skill in the art, then it's not indefinite.  So 12:00:23

it's one way it's not indefinite. 12:00:26

BY MR. SCOTT: 12:00:30

Q   Okay.  So my question is based on the content of that paragraph, and I'm just wondering if you only consider intrinsic evidence when you're considering indefiniteness.

MR. DOWNING:  Same objection.

THE WITNESS:  No, I would not only consider intrinsic evidence, but one way to define the claim is through intrinsic evidence.

BY MR. SCOTT:

Q   Thank you.

Do you consider the '356 patent to be intrinsic or extrinsic evidence in relation to the '000 patent?

A   It's defined in 21 that the prosecution history is intrinsic.  The prosecution history most likely mentions the prior versions, and the patent itself would mention the prior versions.  So it's hard to say whether that's intrinsic or extrinsic, because it definitely would be mentioned multiple times in multiple versions of intrinsic evidence.  And there would be aspects that are inherent about '356 that are inherent within '000.

Q   Okay.

MR. SCOTT:  Counsel, we've been going for about an hour now.  Are you okay going off the record for a bit?

MR. DOWNING:  Yeah.

THE VIDEOGRAPHER:  We're going off the record.  The time is 12:03 p.m.

(A brief recess was taken.)

THE VIDEOGRAPHER:  We're going back on the record.  The time is 12:14 p.m.

BY MR. SCOTT:

Q   Welcome back, Dr. Camp.

A   Thank you.

Q   Let's move on to paragraph 32 of your declaration.  Let me know when you have it up.

Did you say "I'm there"?

A   Yeah.

Q   You say towards the end of this paragraph, a POSITA would have had a bachelor's degree in electrical engineering, computer science, or a similar area of study, and two or more years of industry experience in networking and distributed computing.

Can you explain why you think a POSITA in relation to the '000 patent would have had experience in distributed computing?

A   I guess I think that networking is definite and distributed computing could deal with aspects of multiple UEs and their collective behavior.  It could help you in that -- in this particular patent.

Q   So do you understand distributed computing to refer to multiple UEs acting collectively?

MR. SCOTT:  Form.  Mischaracterizes testimony.

THE WITNESS:  That -- that is the context in which it would be helpful in this case, it seems like.  I'm not saying distributed computing is only multiple UEs acting in concert.

BY MR. SCOTT:

Q   Okay.  Let's go to paragraph 38 of your declaration.

A   Okay.  I'm there.

Q   And here, I believe you reproduce the text of claim 1 of the '000 patent.

Do you understand time slot as it's used in claim 1 to be a term of art?

MR. DOWNING:  Objection to form.

THE WITNESS:  Can you define "form of

art"?

BY MR. SCOTT:

Q    Do you consider the phrase "time slot" to be well known in the art?

MR. DOWNING:  I believe he asked you a question, to define the term, Counsel.

MR. SCOTT:  I don't need to answer his questions, I'm -- I'm here to ask my own questions, so --

MR. DOWNING:  I thought -- I thought you said at the beginning of the deposition, if he was unclear about terms, you would -- you would provide clarification for him.  I believe his --

MR. SCOTT:  And I just provided clarification in the form of another question, Counsel.

BY MR. SCOTT:

Q    So here's the question that I'd like you to answer, Dr. Camp.

A    Okay.

Q    Do you understand "time slot" to be well known in the art?

MR. DOWNING:  Objection to form.

THE WITNESS:  "Time slot" is the

fundamental unit in a 3GPP system, so, yes.          12:20:43

 BY MR. SCOTT:          12:20:48

    Q   Thank you.          12:20:48

        So let's go to paragraph 40 of your          12:21:38
declaration.          12:21:43

    A   Okay.          12:21:49

    Q   You say in paragraph 40, In my opinion,          12:21:54
a POSITA would understand that the '000 patent          12:21:58
uses the term "time interval" to refer to a          12:22:01
defined scheduling interval within a frame, and          12:22:05
would not understand "time interval" to          12:22:09
encompass arbitrary or undefined periods of          12:22:13
time.          12:22:18

        Is it your opinion that time interval          12:22:18
could be construed as a defined scheduling          12:22:21
interval within a frame?          12:22:24

    A   My opinion is that "time interval"          12:22:37
should be used for its plain and ordinary          12:22:40
meaning, because the patent talks about at          12:22:42
least three different types of time intervals.          12:22:45
And so, therefore, it's being used as a general          12:22:50
term.          12:22:53

    Q   Okay.          12:22:56

        MR. SCOTT:  I'm going to introduce the          12:22:59
'000 patent as I think Exhibit 3.          12:23:01

(Defendant's Exhibit 3, United States Patent No. 11,032,000, June 8, 2021, was marked and presented for purposes of identification.)

BY MR. SCOTT:

Q   Is that coming up for you, Dr. Camp?

A   Yes.

The other two just automatically went to my downloads, and this one didn't ask me where it went, so it took me longer, sorry.

Q   No problem.

A   All right.  I've got it.

Q   Okay.  So you just said, and correct me if I'm wrong, the patent talks about at least three different types of time intervals.

So could you go ahead and lay out for me those three different types referring to the patent?

A   Sure.  So the abstract talks about a time interval that is not sending information over a physical uplink shared channel.  So that it's -- there's a definition there to deal with -- there's an aspect of it that's there that's saying it can't be over a shared channel.

And then there are different embodiments

12:23:01
12:23:01
12:23:23
12:23:23
12:23:27
12:23:27
12:23:28
12:23:31
12:23:37
12:23:37
12:23:37
12:23:37
12:23:41
12:23:43
12:23:46
12:23:49
12:23:52
12:23:53
12:23:58
12:24:02
12:24:11
12:24:16
12:24:18
12:24:24
12:24:25

that figure 2 and figure 3 describe.  So in
figure 2, the description has the uplink-beacon
pictured as one time slot or the fundamental
unit of time in 3GPP.  But then figure 3 talks
about fractionation and what fractionation is,
is where -- it says that there might be a
concern for multiple UEs using the same time
slot.  And so you basically spread that time
slot over -- in figure 3 has one embodiment
where you have three phases where that time
slot is dedicated to three different UEs.

And then, in one -- the third aspect of
that, so that there's the figure 2, which is
one time slot, there's a figure 3, which is
over multiple frames, there's one slot, and
then there's one last aspect.

Okay.  So do you see in 635 to 37, it
reads, In particular, this may also apply for
the case where there are more than one
uplink-beacon time slots per frame, so then
there's a third embodiment where there's
multiple time slots within one frame.

So you have figure 2 having one time
slot, you have figure 3 having one time slot
per frame, but then the fractionation could

12:24:30
12:24:37
12:24:45
12:24:49
12:24:57
12:25:05
12:25:07
12:25:13
12:25:16
12:25:23
12:25:26
12:25:32
12:25:37
12:25:41
12:25:44
12:25:49
12:26:00
12:26:06
12:26:10
12:26:12
12:26:17
12:26:21
12:26:26
12:26:30
12:26:33

scale to allow scalability in your system and
you have more UEs.

And then, there could be a third type of
time interval that has multiple time slots
within a given frame.

And all of this is under the context of
the abstract saying, This is not on the shared
channel.

Q   Can you show me where in figures 2, 3,
or column 6 the phrase "time interval" is
mentioned?

A   Only the abstract in the claims have
that term, "time interval," but there is three
different embodiments of how a time slot is
used in a time interval.

Q   And so you agree that only the abstract
in the claims of the '000 patent use the phrase
"time interval"?

A   Sure.  If you do a search, you don't
find it in the middle.

Q   So what indicates to you that figures 2
or 3 refer to a time interval?

A   Because if you go through claim 1, there
is the use -- I guess, you know, I had it in my
report, one in the other claims, but if you go

through claim 1, it specifically talks about a

time interval and distincts -- has distinction

from a time slot within that description.

Q   So you're using the language of claim 1

to interpret what a time interval is?

A   No.  I'm using the whole -- all the

claims, the abstract and the specimen,

classification.

Q   But you agree that the written

description does not include the phrase "time

interval"?

A   The part in between the abstract and

the -- the claims, it does not include the word

"interval."

Q   It doesn't include the phrase "time

interval," correct?

A   Correct.  You can't have a phrase "time

interval" without the word "interval."

Q   Yeah.  And I'm concerned with the phrase

"time interval" because that's what we're

constraining, not just the word "interval."

So let's go to paragraph 42 of your

declaration.  And you say, I understand

American has identified various papers from an

IPR proceeding, including papers 10, 13, 26,

and 41.

You -- did you review these papers in preparation for your deposition today?

A    I recall, as I mentioned before, when I was looking at these IPR case, I recall downloading them and reviewing -- reviewing them, but I couldn't tell you what paper 10 or 13 or 26 or 41 is off the top of my head.

Q    That's fine.

In the next sentence, you say, Consistent with this intrinsic evidence, the Patent Trial and Appeal Board, in a related proceeding involving a '356 Patent in the same family, understood the described "time interval" as a structured beacon transmission interval implemented using time-slot allocations rather than an undefined period of time.

So a couple of questions about this sentence.

When you say, "Consistent with this intrinsic evidence," what are you considering intrinsic evidence to be?

A    The context of that sentence would -- would say that I -- I'm including '356 as

intrinsic.  And I mentioned before, I was kind of, like -- you know, I'm not sure if it qualifies as extrinsic or intrinsic, because it would definitely be mentioned in the patent, and it's in the patent, the prosecution history.  So here, I'm calling it intrinsic.

Q   So you're referring to the intrinsic evidence of the '356 patent?

A   Yes.

Q   Okay.  And you say, Consistent with the intrinsic evidence of the '356 Patent, the Board -- meaning the -- the PTAB, the Patent Trial and Appeal Board, understood the described time interval as a structured beacon transmission interval implemented using time-slot allocations rather than a undefined period of time.

A   I do say that.

Q   Is that how the PTAB construed "time interval" in that proceeding?

A   My understanding is that there were differing opinions on the construction of "time interval" between the PTAB and the court -- the court case.

Q   And what were the differing opinions?

A    One -- one side was on plain and
ordinary meaning for the word "time interval,"
and one said time interval was time slot.

Q    And how do you consider the PTAB to
construe that?

A    I mean, it's in the --

Q    It might be -- to help you out, I'm
going to introduce the Exhibit 4, the
institution decision from the '356 IPR
proceeding.

        (Defendant's Exhibit 4, USPTO, before
PTAB, Paper 13, December 12, 2022,
IPR2022-01130, U.S. Patent No. 8,811,356,
Decision, was marked and presented for purposes
of identification.)

A    Okay.  Good.  That's what I was wanting
to see.

Q    And if you go to page 12 of that
document that's in the first paragraph, that's
where I'd like to direct your attention.

A    It says, As discussed below, we
interpret "time interval" to mean a "time
slot."

Q    So you understand the PTAB to construe
"time interval" as time slot, am I presuming?

A    For that -- for the PTAB version of that litigation, yes.

Q    So going back to paragraph 42 of your declaration.

A    Okay.

Q    You say you understand the PTAB described "time interval" as a structured beacon transmission interval implemented using time-slot allocations.

A    Correct.

Q    Can you explain how that aligns with what the PTAB construed "time interval" as?

MR. DOWNING:  Objection to form.

THE WITNESS:  Yes -- yeah, go ahead.

Sorry, John.

MR. DOWNING:  I'm done.

THE WITNESS:  So then, '356 also has figure 3 and describes the fractionization, which includes time slot being over multiple frames.  So you have multiple UEs using multiple time slots and multiple frames.  And that -- that figure and that description is also in the '000; it's also in '639.  And you have these multiple embodiments of how the fundamental time unit, or time slot, is used in

a structured manner that could be considered a      12:36:33

time interval.      12:36:36

 BY MR. SCOTT:      12:36:43

    Q    So you agree that the PTAB construed      12:36:43

"time interval" to mean time slot in that      12:36:46

proceeding?      12:36:52

    A    They did, yes.      12:36:53

    Q    Help me understand here.  Do you think      12:36:54

"time slot" can refer to a specific predefined      12:36:57

interval -- excuse me.  Strike that.      12:37:00

        Help me understand here.  You think that      12:37:03

time slot can refer to a structured beacon      12:37:07

transmission interval implemented using      12:37:09

time-slot allocations in paragraph 42 of your      12:37:12

declaration?      12:37:16

    A    That's how I understand the word "time      12:37:18

interval" as litigated across PTAB in the other      12:37:21

case.      12:37:25

    Q    So in the other case, you say "time      12:37:26

interval" can mean time slot -- or, sorry,      12:37:28

that's what the PTAB said in the other case,      12:37:31

right?      12:37:33

    A    The PTAB was "time slot."  The other      12:37:34

case was plain and ordinary meaning.      12:37:36

    Q    Let's be -- I'm not doing a good job of      12:37:39

being precise here.                                          12:37:42

So in the PTAB proceeding, the PTAB                          12:37:43
construed "time interval" as time slot, right?              12:37:48

A    That's correct.                                         12:37:51

Q    In paragraph 42, you say that the PTAB                  12:37:52
understood the described "time interval" as a               12:37:55
structured beacon transmission interval                     12:37:57
implemented using time-slot allocations.                    12:37:59

A    In the related proceeding.                              12:38:01

Q    Which related proceeding are you                       12:38:10
referring to?                                               12:38:12

A    I'm not really sure, because this was                   12:38:13
not, like, the case we're on.  But there was a              12:38:15
PTAB and there was a trial, a court trial, is               12:38:19
my understanding.                                           12:38:28

Q    In the sentence, you say, The PTAB                      12:38:28
understood the described "time interval" as a               12:38:31
structured beacon transmission interval                     12:38:34
implemented using time-slot allocations.                    12:38:36

You're not referring to a court.  You're                    12:38:38
referring to the PTAB.                                      12:38:40

A    Yeah.  They would also understand it as                 12:38:44
a time interval or to be a structured unit of               12:38:57
time slots.                                                 12:38:59

Q    Mm-hmm.  Can you point to where the PTAB                12:39:02

said that?

A     Yeah.  So it's on the middle of page 12:

A "time interval" is allocated as a time slot to send control signals, not data.  It is separate from time slots used to send data in a frame.  A plurality of UEs transmit on respective uplink control channels in a time interval -- in the time interval.

So it's a structured mechanism by which multiple UEs are able to communicate, such as the fractionation that we see in figure 3.

Q     Do you understand the PTAB to be construing "time interval" in that sentence or merely describing its functionality in that sentence?

A     They're using it -- they're using it synonymously in multiple places; they mention that.  But I'll -- I do mention that '356 has the word "time slot" in the claims, and '000 had "time intervals" in the claims.

Q     Is it your understanding that the '000 doesn't have "time slot" in the claims?

A     No.  It also has "time slot" in the claims, but --

Q     Okay.

A    -- the '356 did not have "time interval"
in the claim.

Q    That's your understanding, that '356 did
not have "time interval" on the claim?

A    Oh, I probably need to look at '356.

Q    Okay.  So the very first sentence on
page 12 of Exhibit 4: As discussed below, we
interpret "time interval" to mean a "time slot"
and the processor sends a signal over the
uplink physical control channel "in a time slot
that is not sending information over the
physical uplink shared channel, e.g., a time
slot separated from time slots used to send
data."

Do you agree or disagree that the PTAB
is construing "time interval" to mean time
slot?

A    Can you tell me where you read -- sorry.
I didn't hear that to the end.

Q    No problem.  I'm talking about the very
first sentence on page 12 of Exhibit 4.

A    Okay.

Q    It's the institution decision.

Do you agree or disagree that the PTAB
is construing "time interval" to mean time

slot?

A   It seems like they are construing "time interval" to mean time slot.

Q   Do you disagree with that construction?

A   For the '000 patent, based on those embodiments, I do.

Q   Do you disagree with that construction for the '356 patent?

A   I'm not the expert on that particular patent.

Q   You reviewed the '356 patent, didn't you?

A   I -- I did review it.

Q   And so do you disagree with the PTAB's construction of "time interval" for the '356 patent?

A   I would --

MR. DOWNING:  Hold on, hold on.

Objection to form.  Outside the scope.

THE WITNESS:  I would probably need to read that patent in more detail to answer that question.

BY MR. SCOTT:

Q   So you didn't review the '356 patent in enough detail to agree or disagree with the

12:43:37
12:43:37
12:43:39
12:43:49
12:43:54
12:43:57
12:43:59
12:44:01
12:44:05
12:44:09
12:44:10
12:44:12
12:44:15
12:44:18
12:44:21
12:44:25
12:44:25
12:44:27
12:44:28
12:44:33
12:44:35
12:44:38
12:44:40
12:44:40
12:44:42

PTAB's construction of time interval?

A    I read it multiple times in multiple ways, but to answer that question, I'd like to look at it right now.

Q    Okay.  I can introduce it.

MR. SCOTT:  This is Exhibit 5.  This is U.S. Patent No. 8,811,356.

(Defendant's Exhibit 5, United States Patent No. 8,811,356, August 19, 2014, was marked and presented for purposes of identification.)

BY MR. SCOTT:

Q    Let me know if that comes up for you.

A    Okay.

Q    So the question I was asking was whether you disagree or agree with the PTAB's construction of time interval to mean time slot.

A    Yeah, it has all three embodiments of what I discussed, of a single slot, multiple frames having one slot per UE, and it has the sentence about it may also apply to the case -- this may also apply for the case where there are more than one uplink-beacons time slot per frame.

So my worry with construing time
interval to be time slot is you immediately go
to the fundamental time unit of 3GPP, but here,
it's using that fundamental unit of time slot
in three different fashions, and the intervals
that -- again, it's been both the abstracts and
the claims in this patent, as well, are defined
according to those -- all of the embodiments,
not just one embodiment.

Q   So you disagree with it?

A   I do.

MR. SCOTT:  I'm going to introduce
Exhibit 6, and this is the Patent Owner's
Preliminary Response in that same proceeding.
So it's the IPR2022-01130 proceeding for the
'356 patent.

(Defendant's Exhibit 6, USPTO, before
the PTAB, Case No. IPR2022-01130, U.S. Patent
No. 8,811,356, Patent Owner's Preliminary
Response, was marked and presented for purposes
of identification.)

BY MR. SCOTT:

Q   And on page 1, you see that Intellectual
Ventures II, LLC, is listed as patent owner?

A   I see that.

Q   So if we go to page 11 -- let me know when you're there.

A   Okay.  I'm there.

Q   And do you see that the sentence that says, The terms "time interval" and "time slot" are used synonymously in the '356 patent?

A   I do see that, yeah.

Q   So you disagree with that statement?

A   Can you define the context of this document?  I just want to understand it more.

Q   Did you review this document before today's deposition?

A   Oh, yeah, this is the PTAB.  Okay, gotcha.

Q   You did review it or didn't review it?

A   I did review the PTAB.

Q   And so you understand that this is a filing from IV in that proceeding?

A   Yes.

Q   So do you disagree with the statement that IV made in that proceeding that time interval and time slot are used synonymously in the '356 patent?

A   The issue here is that there are multiple time slots in a frame, and that

sentence -- that sentence is in '356 and that sentence is in '000.  So that interval is longer than a time slot, so, therefore, they can't be synonymous.

Q   You said they cannot be synonymous?

A   Right.  So, like, time slot means something different than time interval.

Q   So you disagree with the first sentence of that paragraph on page 11 where IV says the term "time interval" and "time slot" are used synonymously in the '356 patent?

A   I have to because of that one sentence I keep referring to where there's multiple time slots in one frame.  So, therefore, there's multiple time slots in that frame that composes an interval.

Q   So time interval and time slot are not used synonymously in the '356 patent?

A   Because of that sentence and those embodiments, that's what I believe.

Q   Is it your understanding that the '356 and '000 patents share a common specification aside from the claims in the abstract paragraph?

A   The first part of that question was, is

it my what?

Q    Is it your understanding?

A    Okay.  That they -- can you just repeat the whole thing, that --

Q    Yeah, sure.

Yeah.  So is it -- do you understand that the -- excuse me.

Do you understand that the '356 and '000 patents share a common specification aside from the abstract paragraph on the cover in the claims?

A    I -- I don't know.  I haven't done a diff on the file, which is just like a comparison to show exactly where it actually differs on the specification, but I know that the thing that seemed to matter to me for time interval versus time slot are those three different embodiments and the two figures, figure 2 and figure 3, and the description thereof, plus that sentence afterward that says that multiple time slots are in one frame potentially.

So I don't -- I haven't done a diff -- to answer your question, I have not done a diff -- a diff, which is a tool in Linux to --

to distinguish between the specification in

both, so I can't -- I can't know for sure what

is different about the '356 and the '000

exactly.

Q   Okay.  But you don't have anything

specifically in mind that -- strike that.

You don't believe they differ in any

substantial way, aside from the claims in the

abstract, like I said?

MR. DOWNING:  Objection to form.  Vague

and ambiguous.

THE WITNESS:  The parts that I used to

understand time interval and time slot are both

there in both, and so those where -- that's the

extent of my -- or that's where most of my kind

of effort went on this -- on this particular

issue.  So that's what I'm -- that's what I

know about the comparison between the two.

BY MR. SCOTT:

Q   Okay.  So if I understand -- I'm not --

I'm not trying to, like, trick you or anything,

I just want to make sure you and are on the

same page.  The '356 and the '000 are

substantially the same, the specification is

substantially the same aside from the abstract

paragraph on the cover and the claims?  If you have any reason to doubt that, let me know, but I'm going to assume that you don't understand them to differ, because you haven't identified any differences in them.

Is that okay?

MR. DOWNING:  Form.  Vague and ambiguous.

THE WITNESS:  I'll pull up the '356, because there was something that caught my attention.

I mean, your statement includes what I'm worried about, which is other than the difference in the abstract.  My concern is that if you're specifically asking this question, the -- the sentence that concerns me in the abstract is data may be sent over the physical uplink shared channel in assigned time intervals, in that sentence.  But the '000 talks about time intervals being the absence of a shared channel.  So that's -- that's my concern.

And that -- in one instance it defines time intervals to include a shared channel and the other instance it defines time interval in

the absence of a shared channel, and so I'm          12:58:39
having a hard time rectifying those two on the          12:58:39
fly, because this is kind of like something I          12:58:44
just observed, like, in terms of, like, when          12:58:47
you're asking about the exact differences, and          12:58:49
that's why I'm trying to be as clear as          12:58:51
possible.          12:58:54
 BY MR. SCOTT:          12:58:54
     Q    Yeah.  I understand.  I'm not trying to,          12:58:54
you know, get you to specify the exact          12:58:57
differences.  I'm -- and to be clear, I'm          12:59:03
setting aside the abstract paragraphs --          12:59:06
     A    Okay.          12:59:08
     Q    -- for both patents, because I recognize          12:59:09
they differ.          12:59:11
     A    Okay.          12:59:12
     Q    I recognize the claims of both patents          12:59:12
differ as well.          12:59:16
     A    Mm-hmm.          12:59:16
     Q    But for the written description being,          12:59:17
you know, the figures and the, you know, the          12:59:19
columns of text that come in between the          12:59:23
figures and the claims, I just want to know, is          12:59:25
it your understanding that that is          12:59:29
substantially identical between the '356 and          12:59:33

'000 patents?                                                12:59:37

A    That's my understanding.                                12:59:38

Q    Okay.  So let's go to -- back to your                   12:59:40
declaration.                                                 13:00:00

A    Okay.                                                    13:00:01

Q    And you discuss the "time interval" and                 13:00:06
"time intervals" term on pages 9 to 10 of your               13:00:08
specification, right?                                        13:00:14

A    Nine to ten.  Yes.  Mm-hmm.                             13:00:15

Q    So take as much time as you need to                     13:00:18
review that section, but my question for you                 13:00:21
is: Do you agree that you have not cited any                 13:00:26
intrinsic evidence to support your opinion for               13:00:30
the '000 patent?                                             13:00:33

A    So let me make sure I understand the                    13:02:01
question.  So you're saying that just because I              13:02:03
don't have references to the intrinsic                       13:02:06
evidence -- you're saying there's no references              13:02:09
to the specification in this paragraph -- or                 13:02:13
these paragraphs?                                            13:02:15

Q    Correct.                                                13:02:16

A    Okay.  So what the patent would have --                 13:02:17
a person of ordinary skill in the art would                  13:02:52
understand is that when you try to stuff too                 13:02:55
many UEs into one slot, you have problems.  And              13:02:57

so a UE -- a POSITA would understand that you can't just have one slot for all UEs to send uplink information.  At some point, you start to run out of codes in the CDMA structure, and you need more slots.

So that's why the patent talks about fractionation, and it talks about multiple beacon slots -- time slots to communicate that feedback information in the uplink direction. And so that's what I was referring to here, is all of those different ways in which a POSITA would understand that you can't just do one slot, you have to do -- in some instances where there's a sufficient number of UEs trying to communicate in the uplink direction, you run out of codes in a CDMA context, so, therefore, you have to either spread it over multiple frames or put -- put it in multiple slots in one frame.

Q   Can you -- but you don't cite to anything in the '000 patent in this section, do you?

A   I do not.

Q   And with your explanation that you just offered, what were you referring to in this --

in this section with regards to the time
interval?

A   I was specifically talking about
paragraph 41 and the discussion thereof.

Q   You don't discuss fractionalization in
section A with respect to "time interval" and
"time intervals," do you?

A   I -- I do not have that word, no.

Q   Do you discuss it without referring to
that word?

A   Yes.  So -- which may include multiple
time slots assigned to different UEs.

Q   And can you show me where in the
'000 patent you understand time interval to be
referring to multiple time slots assigned to
different UEs?

A   Okay.  Okay.  So in -- the whole
description of figure 3 talks about it.  So
six -- column 6, row 7 through 19 -- or 17, and
it says that, figure 3 illustrates an
example where fractionation is employed.  The
UL-beacon and PLCCH are active in every frame
in the base station.  However, terminal 304,
terminal 306, and terminal 308 have been
assigned different fractionation bases.  Figure

3 illustrates the case where the fractionation phase is 3. For example, the fractionation phase of terminal 304 occurs in frame 0. The fractionation phase of terminal 306 occurs in frame 1, and the fractionation phase of terminal 308 occurs in frame 2. Since the fractionation phase is 3, the phase for terminal 304 occurs again in frame 3.

So the -- and it repeats that concept later in the sentence of -- I've read from both '356 and '000. As six -- column 6, 35 to 37, it says, In particular, this may also apply for the case where there are more UEs -- or, sorry -- more than one UL-beacon time slot per frame.

And it says this is because you don't want to prevent -- the previous sentence is important to say that: To prevent blocking of time slots -- in other words, you run out of resources -- a person of ordinary skill in the art would understand that to mean that you run out of code resources, or whatever resource you're trying to use to use the same slot. You need some degree of orthogonality, which means that when you have the same degree of

orthogonality, you can use the same spectral resource.  Whether that's massive MIMO, CDMA, or frequency, you have some unit that you're allocating to that one slot.

At some point, you can have -- you can have a few of those UEs using different codes and it not have collision, but at some point, you run out of codes.  And so, to prevent the blocking of time slots -- that's what that means -- half-duplex terminals may be operated with a fractionation cycle of greater than 1, which means that, yes, you can stuff more UEs into one slot, but you also may, in the next sentence, have the case where you're doing multiple slots within one frame.

So both cases, you're kind of managing all of these UEs to send uplink information, and you can -- you can start off with figure 2, which is one UE per -- per beacon time interval.  You can start to put more and more UEs on that one slot, but eventually, you're going to run out of resources.

And you have to lead to figure 3, which is fractionation, or within that fractionation, you can do it a couple of different ways: You

can have just one allocated per -- one UE
allocated per frame or you can have multiple
UEs allocated per frame and you can also have
multiple slots within a given frame so that you
can have multiple UEs and multiple groups of
UEs within one frame, if you want to do it
quicker.

So that's what a person of ordinary
skill in the art would understand from the --
the -- kind of the progression of figure 2,
then figure 3, and then the discussion after
figure 3.

Q   And you agree that the phrase "time
interval" is not mentioned in -- you know, in
figures 2, 3, or the description of figures 2
or 3, right?

A   Hold on one second.

Yes, I understand that, because on
column 5, 30, it says, the uplink -- let me
just start from the beginning -- it says, For
example, for air interface technologies with
TDMA element -- with a TDMA element, it is
possible to adapt the TDMA frame structure to
provide separation between the UL-beacon --

THE COURT REPORTER:  Dr. Camp.

THE WITNESS:  Oh.

MR. SCOTT:  Yeah, Dr. Camp --

THE WITNESS:  Yeah, reading too fast.
Sorry.

MR. SCOTT:  When you're reading, it's
easy to go fast, but --

THE WITNESS:  Yeah.

MR. SCOTT:  -- for the sake of the court
reporter, you're going to have to take it a
little slower.

THE WITNESS:  Yeah.  Okay.

For example, for air interface
technologies with a TDMA element, it is
possible to adapt the TDMA frame structure to
provide separation between the UL-beacon and
the normal physical channels by dedicating at
least one uplink time slot per frame (or at
least one time slot per multi-frame) to carry
UL-beacon signals.

 BY MR. SCOTT:

    Q   So just to get back to my -- I'm not
sure the -- my question came across correctly.

        I am just wanting to confirm that you
agree with me that the phrase "time interval"
is not used in the -- in figures 2 or figure 3

or the descriptions of figures 2 and 3 that you've just discussed in columns 5 and 6 or anywhere else in the -- in the description.

Is that right?

A    Right.  "Time interval" is not -- that term is not used in the -- the columns.

Q    Okay.  And so within the '000 patent, you're relying on figures 2 and 3 in that description and the -- strike that.

Within the '000 patent, you're referring to figures 2 and 3 and those portions of the written description that you just discussed to inform your construction of time interval, correct?

A    I agree with using it to inform, yes.

Q    Okay.  Is there any other part of the '000 patent that you're looking to to inform your understanding of "time interval"?

A    Let me read through these.

So 6 says -- claim 6 says, The UE of claim 1, wherein the time interval that the uplink physical signal is sent by the UE, a plurality of UEs each transmit on respective uplink physical control channels in the time interval.

So there's -- to me, this means that there's a number of UEs, there's a number of respective channels, and so there -- you know, it's -- it's more general than saying all of them are going to collapse into a -- one, single time slot, and we've seen that that doesn't happen across all embodiments.  We see there's a -- a diversity of how UEs use time slots, and I would say that -- that the term "time interval" captures that.

So I'd say claim 6 also kind of agrees with that, that you're saying a group of UEs and a group of control channels in the time interval.

Q   So you're saying that claim 6 -- the use of "time interval" in claim 6 confirms your understanding of "time interval" as informed by the written description in figures 2 and 3?

A   Yes.  It's one -- another component of it, yes.

Q   Okay.  So let's go back to your declaration.

A   Okay.

Q   If you can -- can you -- well, strike that.

Can you -- you can -- strike that.

Can you confirm for me that you're contending that "time interval" should be given as plain and ordinary meaning?

A    I am.

Q    So in paragraph 40, where you say, a POSITA would understand that the '000 Patent uses the term "time interval" to refer to a defined schedule interval within a frame, and would not understand "time interval" to encompass arbitrary or undefined periods of time, you can -- do you consider that definition of "time interval" to align with the plain and ordinary meaning?

A    I think that aligns, yes, with the plain and ordinary meaning.

Q    And in paragraph 41, just beneath that, where you say that the intrinsic evidence shows that the claimed "time interval" is a defined temporal allocation within the frame during which uplink physical signals are transmitted, is that also in line with the plain and ordinary meaning of "time interval"?

A    Yes, and the paragraph goes on to say more about that, my understanding of a plain

13:18:36
13:18:36
13:18:42
13:18:46
13:18:49
13:18:51
13:19:00
13:19:03
13:19:06
13:19:09
13:19:11
13:19:14
13:19:17
13:19:20
13:19:28
13:19:46
13:19:48
13:19:52
13:19:56
13:19:59
13:20:02
13:20:07
13:20:11
13:20:43
13:20:46

and ordinary meaning.

So it -- it provides -- like, across those three different sections, it defines how I think a plain and ordinary meaning of "time interval" would be perceived by a person of ordinary skill in the art.

Q    Okay.  And I'm just trying to, you know, paint the broader picture of "time interval," based on what you said in relation to it. So --

MR. DOWNING:  Can we take a break when you -- when you get to a good stopping point?

MR. SCOTT:  Yeah.  Sounds good.

BY MR. SCOTT:

Q    Is it your contention that uplink physical signals are transmitted during a time interval?

A    Yeah.  That comes from the first sentence of the abstract, so that's what I'm referring to.  It says -- the first sentence, it says, In a time interval that is not sending information -- meaning data -- over a physical uplink shared channel, send an uplink physical signal based on received resource allocation information.

So that's what that's referring to: the abstract.

Q   And correct me if I'm wrong, but based on the first sentence in the abstract, it's your contention that the time interval does not include a time slot in which a UE is transmitting over a physical uplink shared channel?

A   I don't think so, because claim 1 says -- I guess the second clause says, A transmitter and the processor are configured to send, over the physical uplink shared channel, data in assigned time intervals.

So if you read the abstract's first sentence, it says, The UE may, in a time interval that is not sending over a physical uplink shared channel, send an uplink physical signal based on received resource allocation information.

So it's just saying the -- the UE may do that in a time interval, but the claim 1 also talks about data being sent in assigned time interval.

So "time interval" is -- is a -- is a term that's being used for a period of time.

Q    And is it a defined period of time?

A    It is a defined period of time.

Q    And can you explain how that's different from a time slot?

A    Sure.

The "time slot" is a well-known 3GPP term that is the fundamental unit of time within a cellular system.

And so it was a conscious effort upon the -- the author, in my opinion, to use the word "time interval," because "time slot" had a specific and reserved definition already, and they -- they meant something different.

Q    Okay.

MR. SCOTT:  I think now is a good time for a break, Counsel, if that works for you.

MR. DOWNING:  Okay.  Thank you.

THE VIDEOGRAPHER:  We are going off the record.  The time is 1:27 p.m.

(Thereupon, a luncheon recess was taken.)

THE VIDEOGRAPHER:  We're going back on the record.  The time is 1:47 p.m.

BY MR. SCOTT:

Q    Welcome back, Mr. Camp.  I hope you had

time to get a bite to eat in those 15 minutes.

We're going to stay on the time interval
for a little bit.

You say, in paragraph 41 of your
declaration, Nothing -- this is the last
sentence in that paragraph: Nothing in the
intrinsic record requires that all UEs transmit
uplink signals in the same single time slot.

A    I see that.

Q    Then I'm going to direct your attention
to claim 1 of the '000 patent, which says --
this is near the top of column 10.  It says
and, in the same time interval that the uplink
physical signal is sent, a plurality of UEs
transmit uplink physical signals in the same
time interval.

A    I see that.

Q    So can you just explain how the
statement in your declaration comports with
that claim element?

A    Okay.  So the -- the time interval
composing either multiple frames or multiple
slots within one frame on, you know, the
embodiment that is discussed in figure 3 -- or
pictured in picture 3 and described for the

13:47:06
13:47:19
13:47:22
13:47:24
13:47:27
13:47:34
13:47:36
13:47:41
13:47:49
13:47:53
13:47:57
13:48:17
13:48:22
13:48:25
13:48:29
13:48:33
13:48:35
13:48:36
13:48:46
13:48:48
13:48:50
13:48:57
13:49:03
13:49:07
13:49:11

description of figure 3.  And the statement after the discussion of figure 2 and figure 3, where it says, One -- one frame could have multiple time slots for uplink-beacons, then the only way I can rectify that is that time interval is more general than one slot, or time interval is not synonymous with slot, because -- time slot -- because it is inherently having multiple slots in those two different embodiments, and then multiple UEs are transmitting those different slots, but it's all the same interval.

Q   So a time interval might comprise multiple time slots?

A   Yes.

Q   Is it your opinion that the time slots need to be adjacent to each other?

A   The time slots?

Q   If a time interval comprises multiple time slots, is it your opinion that they need to be adjacent time slots?

A   They do not, as per the figure 3 and description therein.

Q   So it could be multiple time slots that are not adjacent to each other?

A   Yes.

Q   And how would a POSITA know which time slots comprise a time interval according to the language of claim 1?

A   It's all about resources.  So as I described earlier, you know, you can have figure 2 using one slot if the CDMA code support it, but if you have more UEs than CDMA codes, then you have to either do fractionation -- fractionation, or you have to have multiple uplink-beacons in the same frame.

So a -- a person of ordinary skill would understand the limitation of the resources and that at some point you're going to run out of CDMA codes and it would lead to the other two embodiments.

Q   Is there a disclosure in claim 1, specifically, that would inform a POSITA along those lines of which time slots comprise a time interval, or is that just based on the written description (inaudible)?

A   You're asking just claim 1, or other claims?  I can't remember what your question was.  Was it claim 1 only?

Q   We can work through it claim by claim,

if you like.  But let's -- let's start with
claim 1.

A    I mean, the closest that comes is 6
which depends on claim 1, and says, on
respective uplink physical control channels in
a time interval.

Q    Okay.  And is there anywhere else in the
claims that you would identify -- in the
asserted claims that you -- or strike that.

Is there anywhere else in the claims of
the '000 patent that you would identify as
providing that support?

A    Twelve is plural when it talks about the
uplink physical control channels in the time
interval.  So multiple channels are in use in
the time interval from the -- from a plurality
of UEs.  I'm -- now I'm continuing on through
13.  18 says respective uplink physical control
channels in the time interval.

Q    You're still reading?

A    Yeah, I'm still reading.  And then 24
says, signals are received on other uplink
physical control channels in the time interval
from a plurality of UEs.

Q    And so those are the disclosures that

you're relying on for informing a person of
ordinary skill as to which time slots may
comprise a time interval?

A    All of those statements refer to
multiple UEs relying on multiple resources.
And there's a progression of figure 2 through
figure 3 that talks about when you need more
resources, this is what you do.  And so the
person of ordinary skill in the art would
understand the mapping of these UEs to
resources as described in the claims would have
gone through this progression as more resources
were needed.

Q    Yeah, and -- okay.  Then I -- I guess my
question is: Are there any other aspects of the
claims that contribute to that understanding
besides the ones that you just explained?

A    I guess there's like a -- like a -- a --
a proof in the other direction that if you
strictly adhere to time slot being time
interval, the -- the -- the claim language
would just not make sense, right?  Like, you
can't -- for example, I guess one of the heart
of the claims is in -- you know, what -- what
you pointed to, which was column 10, 4 to 5,

says, a plurality of UEs transmit uplink physical signals in the same time interval. But we've already seen that there are multiple ways in which UEs can send over a set of resources, and it clearly maps that out.

So the -- if you just strictly said time slot there, it doesn't make sense and contradicts the specification.

Q   Why does it not make sense?

A   Because it contradicts the progression of resources allocated to multiple UEs to send uplink information.

Q   So it's your understanding that multiple UEs can transmit in the same time slot?

A   I didn't say that.

Q   Okay.  I'm -- I'm just asking for clarification here.

A   No --

Q   So in your opinion, it is possible for multiple UEs to transmit in the same time slot?

A   Of course.

So if you look at the background section, column 1, 20 through 25, it talks about the context of this -- I guess that whole first paragraph, which is 18 through 28, which

14:01:59
14:02:03
14:02:05
14:02:07
14:02:11
14:02:16
14:02:22
14:02:25
14:02:27
14:02:29
14:02:32
14:02:38
14:02:39
14:02:44
14:02:47
14:02:48
14:02:50
14:02:50
14:02:52
14:02:55
14:02:58
14:02:59
14:03:02
14:03:10
14:03:14

talks about the context of all of this is CDMA, and so the way CDMA works, is that it's -- if -- if like -- if you're at a party and a bunch of people are speaking different languages, they can all understand each other, because they're just tuned in to their language.

So you can have different codes that use the same spectral resource by multiple different UEs, but there's a limit to how many different codes you have based on the channel condition, because you basically need orthogonality and -- kind of spacing between those codes to make them distinct.

And if the channel's not good, then you can't have many codes.  If the channel is very good, you can have a ton of codes.  So based on channel conditions, you're going to have a differing level of codes that are available to you at any point in time.

And then, so you can -- if the channel conditions are poor, for example, you might not be able to do multiple UEs in one slot.  If the channel conditions are very good, you might be able to stuff a ton of UEs sending uplink

information in one slot.  It's all based on the

channel condition at the time.

Q   Okay.

A   So -- yeah, so going further, figure 2

can describe this perfect scenario where

everybody's in euphoria and channel potentials

are awesome, and everybody can use a different

code, and they can all listen in on the same

slot.

But it's also realistic and says, Well,

that's not going to always happen.  You're

going to run out of codes.  So you have to have

a couple of different situations: One is you

could allow multiple frames to have multiple

different uplink transmissions where each frame

gets its own -- like, each UE gets its own

beacon in the worst-case scenario.  Or if you

don't have enough time to go through all those

frames, you can actually just have those -- all

of those uplink-beacons right in a row and

contiguous with each other, and then you do

the -- the data after that.

So it's saying -- I understand that, you

know, figure 2 is possible that it's -- it's

very possible, and it could potentially happen

a lot, but you're going to have situations where you run out of codes based on number of users and channel conditions, and here are the ways in which you do that.

Q   So it is possible for multiple UEs to send an uplink physical signal in the same time slot, correct?

A   Yes, via CDMA, as described -- or as referenced -- see, this is like a situation where maybe somebody wouldn't understand what that context of CDMA is, and they would have to understand what that meant for this whole patent, right?

And so if you understand CDMA, you understand, yes, many UEs could use one slot and be done, end of story.

Q   Okay.  Going back to your declaration, this is paragraph 41.

A   41?

Q   On page 10, near the top.

A   Okay.

Q   In the middle of the sentence, you say, uplink physical signals, including uplink-beacon signals, are transmitted during designated beacon transmission opportunities

(e.g., time slots).                                    14:07:18

Do you -- do you see that?                          14:07:18

A    I know you're at the top of the page,          14:07:20
but I couldn't find which sentence you're on.          14:07:22

Q    Yeah.  So it's just the first two lines        14:07:24
of --                                                  14:07:27

A    Okay.                                           14:07:27

Q    -- the incomplete paragraph at the top.        14:07:28

A    Yeah, okay.  I see that.                        14:07:41

Q    I just want to confirm, you're not             14:07:42
redefining time slots in the sense that's             14:07:45
different from whether POSITA would understand         14:07:50
time slots to mean in this part, correct?              14:07:53

A    My opinion, you can't change the               14:07:56
definition of time slot.  It's a fundamental --        14:07:57
it's like the -- the atom.  You know?                  14:08:01

Q    Sure.                                           14:08:01

A    It's like the atom of 3GPP, right?             14:08:03

Q    Okay.                                           14:08:07

A    It's like the fundamental unit -- the          14:08:07
fundamental time unit of 3GPP.                         14:08:09

Q    Yeah, I -- I'd agree with you there, I'm       14:08:12
just, you know, making sure we that don't have         14:08:15
a different understanding of the term.                 14:08:16

I don't want to speak for you, so I'll           14:08:26

allow you to explain.  But just -- I mean, just referring back to what you said earlier, it's your opinion that a POSITA would understand the number of time slots in a time interval according to the resource limitations of a particular system; is that correct?

Or feel free to elaborate on that if you like.

A    Yeah, I guess I would maybe change it to a person of ordinary skill in the art would understand that each given channel condition and spectral resource allocation that's available for the system would require a certain amount of time slots to make all this work.

Q    And so the way a POSITA would understand the number of time slots that comprise a time interval would vary according to channel conditions?

A    And available spectral resources and coding techniques and all sorts of different things, yes.

Q    Okay.  As -- as -- so referring to channel conditions, spectral resources, coding techniques, those are -- is there anything else

beyond those elements that -- that a POSITA would rely on?

A    I mean, if you want to -- there's many more, but one that -- one that comes to mind is MIMO, because, on the same spectral resources, you can use orthogonal antenna arrays and beamforming techniques to where it's sort of like coding; it's the same idea: that you have complete orthogonality because of math, essentially, and space, spatial dimensions, and the direction in which you're transmitting.

So I would say spatial streams is a dimension that, you know, that would depend on how many time slots you have.  Spatial stream just is a -- kind of like one fundamental element of MIMO, you know, where you say, like, if you have two spatial teams, two users can communicate at the same time over the same spectral resources.

So there are many different techniques that allow a spectrum to be reused, and based on the plethora of spectral-reuse protocols and techniques, that -- and channel conditions and number of users and their spacing and physical environment, all of that contributes to how

long it takes you to communicate that uplink
feedback.

Q   Okay.  Let's go back to the '000 patent.
Column 2 is what I'm going to refer to.  This
is lines 37 through 39.  There's a sentence,
and the sentence says, In one embodiment, a UE
allocates a time slot for a beacon signal
separated from the time slots for data in a
frame.

A   Sure.  Figure 2.

Q   Well, yeah.

So it's your opinion that a time
interval can be a single time slot, as
described there, or it can be multiple, as
shown in figure 3?

A   Yes.

Q   Okay.  And it's your opinion, right,
based on the specification -- based on --
strike that.

Is it your opinion that "time interval"
should be construed the same in the '000 patent
as it should be in the '356 patent?

A   And '639, because they all include the
multiple embodiments of the same type.

Q   And for the record, you're referring to

the '639 patent, which is referred to on the

cover of the '000 patent?

A   Correct.

Q   So it -- in your opinion, it should be
construed in all three?

A   My opinion, yeah.

Q   Okay.  Okay.  I think we can finally
move on from this.  Now, we're going to talk
about the next section of your declaration,
section B, which is "a processor" and "the
processor."  It's page 10 of your declaration.
I'll let you review this and refamiliarize
yourself with it.  Let me know when you're
ready.

A   Okay.

Q   You said you're ready?

A   I read the section.  Yeah.

Q   Okay.  Great.

So referring to the -- the cited text in
paragraph 46 of your declaration --

A   Mm-hmm.

Q   -- is it one processor or multiple
processors that is performing the relevant
actions in that disclosure?

MR. DOWNING:  Objection to form.

THE WITNESS:  Just the first sentence, it says it could be one or it could be many.

BY MR. SCOTT:

Q   So in the first sentence, it says it can include one or more processors such as a processor 504.

And then does the rest of the specification -- sorry.

Does the rest of that cited text -- does it refer just to processor 504 or does it refer to multiple processors?

MR. DOWNING:  Objection to form.

THE WITNESS:  So it's describing figure 5, and figure 5, the computing system that's pictured -- the whole picture of figure 5 is the computing system -- could have one or more processors.

And so your question was -- say your question now.

BY MR. SCOTT:

Q   Yeah.

Is the cited text in your declaration referring to a single processor 504?

MR. DOWNING:  Objection to form.

THE WITNESS:  The processor -- so this

computing system is describing what could be in a desktop, laptop, notebook computer, handheld computing device, mainframe, server, client, or any other type of special- or general-purpose computing device.

So that computing system could have one or more processors that fit the plain and ordinary meaning of the term "processor," which I'm happy to define more. I teach microprocessors; you know, I have for 16, 17 years. I can define for you what a general-purpose meaning of "processor" would be.

And what would happen in the context where you have multiple processors, like, if you had -- if you have an iPhone, then, most likely, you have multiple cores, which would be multiple processors, but you're probably going to have a leading processor that could kind of take the lead and negotiate among all the processors, and then carry out the execution of that. So just, like, understanding how processors work.

One or more processors could carry out what you're doing within this patent as a

general computing device, but you probably have
a leader that will kind of send out -- like,
schedule things to happen, if you have multiple
processors that are carrying out this -- these
tasks.

BY MR. SCOTT:

Q    Okay.  I take your point.

However, just limiting ourselves to the
cited text in your declaration, is it referring
to a single processor or multiple processors
performing the actions in that cited text?

MR. DOWNING:  Objection to form.

THE WITNESS:  So any one processor is
being described as -- excuse me.

Any one processor is being described
here as carrying out 504, but the system could
have multiple processors or multiple 504s, as
it said in the first paragraph -- or, first
sentence.  So any one of these tasks could be
carried out by any one of those given 504s.

BY MR. SCOTT:

Q    Where does it say that there could be
multiple processors 504?

A    Because it says, figure 5: Computing
system can include one or more processors.

Q   Such as a processor 504, correct?

A   Right.

Q   It doesn't say multiple processor 504s, does it?

MR. DOWNING:  Objection to form.

THE WITNESS:  I guess it's a grammar issue or something, but it's clear that in that diagram, figure 5, that it says that they could have multiple processors.

BY MR. SCOTT:

Q   But does it refer to multiple processors 504?

MR. DOWNING:  Form.

THE WITNESS:  I mean, it says, Computing system can include one or more processors.  So in the 504, if you look at that diagram, you could just draw multiple processors behind it, and it would be completely in line with what it's saying there as that sentence.

BY MR. SCOTT:

Q   I agree with you that one could do that, but if you look at figure 5, there's only one processor 504, right?

MR. DOWNING:  Objection to form.

THE WITNESS:  That's right, but it says

that you could have one or more.

BY MR. SCOTT:

Q    It says, one or more processors, such as a processor 504, doesn't it?

A    It says that as a sentence.

Q    And does it refer to multiple processors 504; yes or no?

MR. DOWNING:  Objection to form.

THE WITNESS:  I would venture to guess that all these computing systems, by and large, have multiple cores or multiple processors in them today: desktop, laptop, notebook computer, handheld computing device, mainframe, server, any other.

So it says that in the previous sentence, and then it says, Computing system 500 can include one or more processors.

BY MR. SCOTT:

Q    I agree that it says it can include one or more processors, but my question to you is specifically about processor 504 and whether that statement refers to multiple processors 504 or a single processor 504.

A    It's talking about the functionality of a given processor.

Q   Of a single processor 504, right?

A   Correct.

Q   Thank you.

I'm going to go back to paragraph 44 of your declarations, on page 10.

A   Okay.

Q   Is it your opinion that the claimed processor, such as that in claim 1 of the '000 patent, can be multiple processors, each of which is configured to perform distinct functions, such as receive resource allocation information; send, over the uplink physical shared channel, data; send the uplink physical signal; and receive, on a physical control channel, control information?

MR. DOWNING:  Objection to form.

THE WITNESS:  One, two, and -- oh. Yeah, 1, 2, and 4 use a singular processor.

What was the question?

BY MR. SCOTT:

Q   Yeah.

So is it your opinion that the claimed processor can be multiple processors, each of which performs one of the claimed processor functions in claim 1?

MR. DOWNING:  Objection to form.     14:32:32

BY MR. SCOTT:     14:32:34

Q   And just to be precise, I'm referring --     14:32:34
when I say "processor functions," I'm referring     14:32:36
to the -- the functions that you describe in     14:32:39
paragraph 44, so receiving resource allocation     14:32:41
information, sending data, sending the signal,     14:32:47
and receiving control information.     14:32:51

MR. DOWNING:  Same objection.     14:32:57

THE WITNESS:  I don't think that -- so     14:32:58
it's saying that -- let me get my bearings.     14:33:04

So in each one of those, it's coupled     14:33:11
with receiver or transmitter and the processor.     14:33:14

So the way this works is, when something     14:33:19
is sent over the air, it's an analog domain,     14:33:23
and a processor operates in the digital domain,     14:33:26
so you need an A-to-D or D-to-A converter to     14:33:29
get from the analog to digital domain.  So the     14:33:36
processor, by itself, cannot do all of these     14:33:38
things that you're talking about, right?     14:33:39

BY MR. SCOTT:     14:33:42

Q   Yeah, I understand that, Dr. Camp.  I'm     14:33:42
not trying to say the processor would do the --     14:33:45

A   Okay.     14:33:45

Q   -- you know, the receiving function.     14:33:47

Like, I understand it works in conjunction with the receiving --

MR. DOWNING: Wait. Hold on.

Were you done answering the question, Dr. Camp?

THE WITNESS: Yeah, mm-hmm.

MR. SCOTT: Is there something else?

MR. DOWNING: Well, I just -- I thought you cut him off. I just wanted him to finish his answer, but it sounds like he was finished.

THE WITNESS: Yes, I was. Thank you.

BY MR. SCOTT:

Q   Okay. So just for clarity, I'm not, you know, trying to say what the processor performs a receiver function, or anything like that. What I'm trying to get at is do you think a single processor is performing in conjunction with the receivers and transmitters, or is it your opinion that multiple processors would be performing -- performing each of those distinct functions? That's the question I'm asking.

MR. DOWNING: Objection to form.

THE WITNESS: I mean, it's really hard to say, because when you have a multicore system -- first of all, I think even the people

14:33:48
14:33:51
14:33:52
14:33:53
14:33:55
14:33:55
14:34:00
14:34:02
14:34:03
14:34:05
14:34:08
14:34:11
14:34:11
14:34:15
14:34:16
14:34:18
14:34:23
14:34:27
14:34:30
14:34:33
14:34:34
14:34:39
14:34:40
14:34:52
14:34:57

who designed that multicore system might call that multicore system a processor, so it's kind of -- it's a little bit like -- are you calling a single-core system and a multicore system both a processor?  I'm not sure.  Like, in that case that the processor has multiple cores, and that processor alone might be used to -- in conjunction with the receiver and the transmitter to do these tasks.  And even in a multiprocessor situation, you're probably going to have, like, a leading core that's responsible, and then maybe it delegates to other cores to do some of this.

So I think -- I think it could be either way; that you have a single core, single processor system that's doing all this on, like, a low-end device, but on an upper-end device, that's where I'm struggling, because you, A, might have multiple types of processors to begin with, but, B, you might have multiple cores within each one of those multiple processors, and are we calling each core a processor?  I'm not sure.

That's what I'm struggling with, because in that situation where you're calling a

14:34:59
14:35:02
14:35:06
14:35:11
14:35:15
14:35:19
14:35:23
14:35:27
14:35:29
14:35:34
14:35:37
14:35:40
14:35:42
14:35:44
14:35:46
14:35:51
14:35:53
14:35:57
14:35:59
14:36:04
14:36:07
14:36:09
14:36:11
14:36:12
14:36:14

multicore processor a single processor, then
you're having multiple cores operate on all of
these tasks in conjunction with the transmitter
and receiver.

BY MR. SCOTT:

Q    So is it your opinion that the claim
processor could be either one processor or
multiple processors that are each performing
the different functions?

A    Yes.  And most likely, you're operating
on a multicore system these days.

Q    Referring to figure 5 of the '000 patent
in Exhibit 3.

A    I'm there.

Q    You agree that there's only a single
processor in that figure, correct?

MR. DOWNING:  Objection to form.

THE WITNESS:  The picture shows one
processor.  The first line of the description
describes 500 says there could be one or more
processors.

BY MR. SCOTT:

Q    But not multiple processors 504, right?

MR. DOWNING:  Objection to form.

THE WITNESS:  I guess the language there

escapes me.  It -- it seems like it's saying that there could be multiple processors in the computing system, and I think that's very clear.  And then the way I would interpret that to go on to say that each one of those processors could be called 504.  And one of -- out of those, then there will be families of tasks to do out of those processing units.

BY MR. SCOTT:

Q    And where in your declaration do you cite that explanation of the functionality of processor 504?

MR. DOWNING:  Objection to form.

THE WITNESS:  It's only when I quoted the text that said computing system 500 can include one or more processors.

BY MR. SCOTT:

Q    Okay.  So we're going to move on to the next section of your declaration which is Exhibit -- sorry, it's section C, where you talk about "a receiver" and "the receiver."

Do you have an opinion as to whether claim 1 of the '000 patent can be practiced by UE with two receivers, one of which is configured to receive resource allocation

information and the second of which is

configured to receive, on a physical control

channel, control information?

MR. DOWNING:  Object to form.

THE WITNESS:  I think that could happen,

just having two instances of two different

receivers and one -- you could even be on a

different channel or you could be on the same

channel and you could be doing what you said.

BY MR. SCOTT:

Q   You think that one receiver could be

receiving resource allocation information and

another receiver could be configured to receive

on a physical control channel control

information?

A   Definitely.

Q   And can you identify where in the patent

it says that a receiver can comprise

multiple receivers?

A   I'm reading through 524 -- description

of 524, and it seems to just refer to a -- a

single interface or radio.

Q   You're talking about the community --

excuse me.

You're talking about the communications

interface 524?

A    Yes.

Q    Does it refer to multiple receivers there?

A    It does not.

Q    Is there anywhere else in the patent you see it referring to multiple receivers?

A    Not that I can find right now.

Q    Okay.  And moving on to "a transmitter�/�the transmitter," this is section D of your declaration.  And, you know, take your time and familiarize yourself with -- as much you need with your -- your report here, but I'll -- you know, I'll spoil the ending and say the -- the question I'm about to ask you about the transmitter is similar to what I just asked you with receiver, so --

A    I think the same answer.  I can't find discussions of multiple radios or transmitters or receivers.  It would -- you know, if there are -- the way I would interpret that would be that if there are multiple of those, they're operating independently as multiple instances for both.

Q    Okay.  So, thank you, Dr. Camp.

Let's move on to the next section on your report, and this is going to be with reference to a plurality of UEs transmitting.

MR. SCOTT:  You know, we've been going about an hour, we can forge on to the next section or -- I'll leave it up to you, Dr. Camp.

THE WITNESS:  I'm okay to keep going.

MR. SCOTT:  Okay.

BY MR. SCOTT:

Q   Okay.  So let's refer to the claim element in claim 1 of the '000 patent, and I understand that you do not believe claim 1 claims an apparatus in the method step; is that correct?

A   That's right.  I view it as an apparatus, not a method step.

Q   So you think there are no method steps claimed in claim 1, correct?

A   I think claim 1 is defining a configuration configured to a situation where the UE has the capability to do those things.

Q   Okay.  And you see in the second-to-last -- well, let me -- let me just draw your attention to column 10, lines 3

14:48:10
14:48:12
14:48:15
14:48:24
14:48:25
14:48:28
14:48:30
14:48:33
14:48:40
14:49:50
14:49:51
14:49:58
14:50:13
14:50:19
14:50:36
14:50:52
14:50:55
14:51:05
14:51:08
14:51:16
14:51:19
14:51:23
14:51:30
14:51:39
14:51:42

through 5.  And it says, and in the same time interval that the uplink physical signal is sent, a plurality of UEs transmit uplink physical signals in the same time interval.

Do you see that?

A    Mm-hmm.  Yes.

Q    Doesn't that require a plurality of UEs to transmit uplink physical signals in the same time interval as the uplink physical signal?

A    It's correct that the -- the device, the UE -- multiple UEs are configured to send as those -- in that same time interval when the uplink physical signal is sent, but the user would not have any awareness of this happening.

Q    So it's your opinion -- strike that.

So you think that other UEs need to be configured to transmit uplink physical signals in the same time interval to practice the invention?

MR. DOWNING:  Objection to form.

THE WITNESS:  To be, what?  What word did you use?  I just want to make sure I understood the word.

BY MR. SCOTT:

Q    You -- is it your understanding that

other UEs need to be configured to send uplink physical signals in the same time interval as the claimed UE to practice the invention?

MR. DOWNING:  Same objection.

THE WITNESS:  The one device by itself, in isolation, in the beginning of time can practice the invention based on the series of different embodiments, and it would start from figure 2.

As the system grows in scales, you're going to -- you know, first, figure 2 holds still, you have codes to support it.  Other users, if practicing the invention, would join in on that slot.  At some level, the slot becomes overloaded.  And so you need to start -- you have -- you have no more codes left.  You need to spill over into other frames that does fractionation, or you could do it another way, which is multiple time slots.

So at the beginning of time, when that one user was by itself, yes, you could practice the invention, with probably figure 2 makes the most sense.  But as you scale users to do it efficiently, you would start to co-locate those uplinks at first in one slot, and then as it

scales further, you'd run out of resources,

you'd have to scale it to multiple frames and

to multiple slots.

 BY MR. SCOTT:

     Q   So even though the claim

requires that -- column 10, lines 3 through 5,

in the same time interval that the uplink

physical signal is sent, a plurality of UEs

transmit uplink physical signals in the same

time interval --

          THE COURT REPORTER:  Mr. Scott, can you

repeat that?  I can't hear you.

          MR. SCOTT:  I'm sorry, Madam Court

Reporter.

          THE COURT REPORTER:  That's okay.

          MR. SCOTT:  So I'll repeat myself.

 BY MR. SCOTT:

     Q   So even though the claim requires at

column 10, lines 3 through 5, and in the same

time interval that the uplink physical signal

is sent, a plurality of UEs transmit uplink

physical signals in the same time interval,

it's your opinion that a single UE without

other UEs can practice the invention?

          MR. DOWNING:  Objection to form.

THE WITNESS: I guess at the beginning of time, the user could not infringe for that one instance until other users joined, to -- based -- based on the claim language here.

BY MR. SCOTT:

Q So you agree that to practice the invention, other users must transmit uplink physical signals in the same time interval, right?

A Other devices, not users.

MR. DOWNING: Objection to form.

BY MR. SCOTT:

Q Yeah, sorry. Other -- you agree that other devices or UEs must transmit uplink physical signals in the same time interval, right?

MR. DOWNING: Objection to form.

THE WITNESS: I guess it depends on if a plurality can include one or not. I'm not an expert in English.

BY MR. SCOTT:

Q Okay. So we can be more precise. We can say, you agree that it requires a plurality of UEs to transmit an uplink physical signal in the same time interval, correct?

MR. DOWNING:  Objection to form.

THE WITNESS:  It seems like the claim language needs a plurality of UEs, and I'm not sure whether a plurality can include one or not.

BY MR. SCOTT:

Q   Okay.  So whether or not it includes one or not, it requires a plurality of UEs to transmit uplink physical signals in the same time interval, correct?

A   Correct.

Q   Okay.  Going back to your -- your declaration.  This is section F with respect to a claim term from claim 13.

Are you there?

A   Yes.

Q   In your understanding of downlink frames in a cellular system, which entity determines the structure of a downlink?

A   I'd say that the best answer is 3GPP because that's agreed upon in the standard, what this is going to look like.  Maybe there's options to select from, but they're all choices that have already been decided ahead of time, that it -- that the base station and UE is

negotiating, based on the capabilities of the UE and based on the channel conditions, and that it -- yeah, it's based on all of that contextual information on what choice that you're selecting from from a group of downlink channel structures that have already been decided ahead of time by 3GPP.

So it's a negotiation between the base station and the UE.

Q   Okay.  Is the UE predetermining which slots of the downlink frame include, for example, a physical control channel?

MR. DOWNING:  Objection to form.

THE WITNESS:  You're asking who predetermines the time-slot structure?  Is that the essence of your question?  I don't remember the exact question.

BY MR. SCOTT:

Q   Yeah.  I'll repeat myself.

Is the UE predetermining which of the -- strike that.

Is the UE predetermining which slots of the downlink frame include, for example, a physical control channel?

MR. DOWNING:  Form.

THE WITNESS:  No.  All it says is it has been predetermined.

BY MR. SCOTT:

Q  Well, which entity does the predetermination?

A  So the process --

MR. DOWNING:  Objection to form.

THE WITNESS:  -- is such that the -- I mean, this is the whole patent, right?  Like, it's going to get information from the UE. That's going to tell it the -- the current channel conditions, which is what that first part of that clause is, right, based on the determined channel conditions, which is going to be based on the feedback that you get within these uplink-beacon slots, and that's going to be the responsibility of the UE, to send that back.

And then after that, then the base station could then decide how it wants to determine the -- the time slots, based on all possible existing configurations that are acceptable within the 3GPP standard.

BY MR. SCOTT:

Q  So the base station determines the time

slots of the physical control channel?                15:10:12

MR. DOWNING:  Objection to form.              15:10:15

THE WITNESS:  To the extent that 3GPP         15:10:22

will allow, yes.                                      15:10:24

BY MR. SCOTT:                                         15:11:16

Q   So do you agree that the structure of         15:11:16

the downlink frame, as determined by the base         15:11:24

station within 3GPP --                                15:11:27

A   Agree what?                                    15:11:36

Q   So --                                          15:11:36

A   I thought you were continuing your             15:11:37

question or --                                        15:11:38

Q   I am.                                          15:11:39

A   Okay.                                          15:11:40

Q   I'm thinking about it for a sec.              15:11:40

A   Okay.                                          15:11:44

Q   Do you agree that whether time slots of       15:11:50

a downlink frame do or do not include a               15:11:58

physical control channel is determined by a           15:12:00

base station?                                         15:12:05

MR. DOWNING:  Objection to form.              15:12:07

THE WITNESS:  No, because there's always      15:12:08

control information.  So there's always a             15:12:11

control channel.  And 3GPP has made that very         15:12:13

clear.                                                15:12:16

BY MR. SCOTT:

Q   It's -- the base station determines whether a time slot includes a physical control channel and why -- or, control information passed through it by the UE?

A   Yes.

MR. DOWNING:  Objection to form.

BY MR. SCOTT:

Q   Can one practice the patent if the base station did not so structure a downlink frame in light of control information from the UE?

MR. DOWNING:  Objection to form.

THE WITNESS:  You have to understand that this is going to happen.  Like, you have to understand that there's going to be a control channel and a shared channel always. Like, maybe not this time slot, but the next time slot.

I agree that the UE -- or, sorry -- the base station is determining which time slot is used for what purpose, but those -- the shared -- the 3GPP is promising that you're going to have a shared channel and you're going to have a control channel, and they have specific acronyms for those.  So those are

going to happen.

So that's why I was saying it's -- yes, the responsibility of the time slot might rest, to the extent it can from 3GPP allowance, on the base-station decision, but those channels are going to come, whether it be the control channel or the shared channel, as promised by 3GPP.

So a UE is going to practice this based upon whatever the base station decides about when the shared channel comes and when the control channel comes. When and where.

BY MR. SCOTT:

Q  Okay. Isn't it true that if other time slots of the downlink frame do not include a physical control channel, that that "wherein" condition in claim 13 --

A  The last clause of claim 13, right: Receiving, on a physical control channel, control information?

Q  Yeah.

A  Okay.

Q  So isn't it true that that claim element requires other time slots of the downlink frame to not include the physical control channel?

MR. DOWNING:  Objection to form.

THE WITNESS:  Which it will.  You know, you have resource blocks that are dedicated to control and dedicated to data.

BY MR. SCOTT:

Q   It will as defined by --

A   3GPP.

Q   -- the base station, right?

MR. DOWNING:  Objection to form.

THE WITNESS:  The mapping of channel -- of control and data is decided maybe at go time kind of thing for -- from the base station, but the resource blocks are going to include control channels and shared channels; in other words, overhead and data.  Some combination of some resource blocks will have some mixture of both.

BY MR. SCOTT:

Q   Right.

But whether time slots of a downlink frame include physical control channels or not is determined by the base station in light of that control information, right?

A   Will some -- any given slot probabilistically have both, honestly, because

you're talking about, like, thousands of resources of spectrum that are in little compartments. So any one given time slot is -- there's a resource block that includes a lot of resources, so -- but the determination of that, which resource is used and which time slot is the base station's.

But if that's not communicated to the UE, then the UE doesn't know whether it's control or -- or data, so that's why you have to have the control channel: to tell the UE what is control information and what is actual information -- data information that I'm sharing with -- with you right now.

So that's why there always has to be control information, because you have to say -- even when there's data, you have to say, like, you know, This is where you can expect the data, and then, the others are control information that I'm telling you about, how to deal with this.

Q   Yeah.

But sorry to -- if I'm beating a dead horse here, but in the context of the claim, right, it says, wherein other time slots in the

downlink frame do not include a physical

control channel.

Right?

A    Mm-hmm.

Q    And whether a given time slot in a
downlink frame does or does not include a
physical control channel is determined at
transmission of the downlink frame --

A    Before transmission --

Q    -- from the base station, right?

A    -- of the downlink frame.

From the base station, before
transmission of the downlink frame.

Q    Okay.  Going back to your declaration,
in paragraph 78, what are you referring to as a
conventional framing of wireless protocol
behavior?  And this is in the sentence at the
top of page 20, in paragraph 78.

A    So that clause is basically saying
it needs -- when it needs to send control
information, it's going to, and the remainder
is going to be data that it's using.

Because the goal of these systems is to
send data.  So what I mean by that is, a person
of ordinary skill in the art would understand

that when you're not having to send control

information, you get to send data.

Q   Okay.  My question is a little more

specific, I guess.

For paragraph 78, and where you say, at

the -- in that sentence near the top of

page 20, a POSITA would understand this as a

conventional framing of wireless protocol

behavior, not an ambiguous or indefinite

requirement, are you referring to the claim

limitation as a whole or something more

specific?

A   "Claim limitation as a whole," is that

what you said?

Q   Yes.

A   I'm referring to this -- a plurality of

predetermined time slots in a downlink frame or

in other time slots of the downlink frame do

not include an actual physical control channel.

So I'm talking about -- what I mean by

that is, you know, you're -- you -- it's like,

you know, eating your veggies.  You have to

send control information just for the network

to operate, but you want to send data, and

that's what you get paid for.  So you're going

to try to push as much data as the control will

allow, and that's what a POSITA would

understand.

Q   You're saying a POSITA would understand

that claim limitation is conventional framing

of wireless protocol behavior, just to

(inaudible)?

MR. DOWNING:  Form.

THE WITNESS:  I'm saying that they would

understand why that you would use other time

slots for not -- not to send control, because

you don't -- you don't want to overwhelm your

system with control when you don't have to.

You want to send data.

 BY MR. SCOTT:

Q   Yeah, but -- sorry, my question is more

specific, right?

You're saying a POSITA would understand

this as a conventional framing of wireless

protocol behavior, and I just want to know what

precisely "this" refers to.  I want you to know

what -- what you think is conventional, not in

general with respect to how 3GPP systems

operate, but more so within the language of the

claim.

So are you referring to the claim limitation as reproduced in the section F heading, or something else?

MR. DOWNING:  Objection.

THE WITNESS:  I tell you what I'm referring to by the conventional framing is described from 1131 through 40, which basically says, you know -- you know, the last thing it says is that, wherein a number of bits sent over the physical control channel is based on the number of fields of control information to be sent by the -- to the UE.

So you have like -- you have something you need to say and establish to the UE with control.  Other than that, you're not sending control information.  I don't know how else to say it.

BY MR. SCOTT:

Q   Yeah, I'm just --

A   I feel like I'm saying the same thing over and over, but I -- I feel like that's what I'm reading into this.

Q   Yeah, I'm not -- I'm not trying to make you say the same thing over and over, but what I do want to know is when you say "this" in

your declaration, the word "this," is                     15:28:15
conventional, I want to know what you consider            15:28:21
as conventional.                                          15:28:24

And so if you -- I mean, do you -- like,                  15:28:25
you're saying that a plurality of predetermined           15:28:30
time slots in the downlink frame or other time            15:28:35
slots in the downlink frame do not include a              15:28:37
physical control channel, are you saying that's           15:28:41
conventional?  Is that a yes?                             15:28:43

A    Yes.                                                 15:28:47

Q    Okay.  Conventional, like, that would               15:28:47
have been conventional at the time of                     15:29:19
invention, right?  Like, that's -- is that what           15:29:21
you mean, or do you mean, like, as of today?              15:29:23

MR. DOWNING:  Objection to form.                          15:29:26

THE WITNESS:  At the time of the                          15:29:28
invention.                                                15:29:28

THE COURT REPORTER:  I'm -- I'm sorry, I                  15:29:28
missed your answer, Dr. Camp.                             15:29:34

THE WITNESS:  Oh, yeah.  At the time of                   15:29:34
the invention.                                            15:29:35

BY MR. SCOTT:                                             15:30:11

Q    All right.  And then paragraph 79 of                 15:30:11
your declaration, Dr. Camp --                             15:30:13

A    Mm-hmm.  Yes?                                        15:30:15

Q    -- where it -- there's a sentence near the middle of the paragraph where it says, This limitation places a condition on the ⬦same time slot,⬦ where physical control channels are received by the UE and where ⬦other time slots⬦ of the downlink frame received by the UE do not include a ⬦physical control channel.⬦

Do you see that sentence?

A    Yes.

Q    Is the condition you're referring to -- well, why don't you tell me in your own words the condition you're referring to.

A    So the -- the condition is whether that particular slot contains control information or not.

Q    Okay.  Is that as determined by the base station?

MR. DOWNING:  Objection to form. Kenneth, it looks like we're kind of getting off the claim construction issues, and you just asked him a question about what if something was conventional at the time of the convention, and now you're taking his declaration and asking a bunch of questions related to infringement issues in this case.

And my understanding is that this --
this deposition is to focus on the claim terms
and not -- that's what this deposition is
authorized for and it's not like a -- like a
free-for-all to ask him, you know, hypothetical
questions about what could or what could not be
a part of future infringement cases -- or a
future infringement case.

So I'll -- I'll just place an objection
on the record about that, but I would like you
to focus this on the -- the actual claim
construction piece, because that's all we have
authorization from the Court to take discovery
on today.

MR. SCOTT:  Okay.  I -- I dispute
your characterization of the question.  I think
this is all limited to the claim
construction and --

MR. DOWNING:  What issue?

MR. SCOTT:  -- to the extent that you --
to the extent that you object to it, that can
be sorted out after the deposition.  But as I
understand it --

MR. DOWNING:  What -- what issue are the
questions that you're asking right now?  Like,

for example --

MR. SCOTT:  As I understand it, your objections, according to the local rules, should be limited to objection, form, or objection as to privilege.  And you waive that objection --

(Overlapping speakers.)

MR. SCOTT:  -- that way.

MR. DOWNING:  Hold -- hold on.

(Overlapping speakers.)

MR. SCOTT:  -- go ahead and repeat your speaking objection, Counsel.

MR. DOWNING:  I'd like to finish --

(Overlapping speakers.)

MR. SCOTT:  But I would say that --

MR. DOWNING:  I have a dispute with you about -- about what's going on at the deposition, and I just wanted to be on the record.  But I don't want to talk over you, so -- so I'll let you finish, and then -- and then I want to get my objection on the record.

MR. SCOTT:  Okay.  And just so you know, you've waived your objection by not stating objection to form in case you don't know.

MR. DOWNING:  I just want to -- want to

put my -- my objection on the record.

MR. SCOTT: Okay. Thank you, Counsel.

MR. DOWNING: So -- so I -- I -- I object to what's going on here. I specifically asked you about, you know, questions about what's conventional at the time. That goes to issues related to the validity. I don't know of a single issue or -- or a claim construction suit that that would go to, and it sounds like a number of your other questions are directed at -- at giving our expert's opinions related to issues like infringement.

And our understanding of this proceeding, and I -- I hope that you guys share the same understanding, is that these -- this is restricted and focused on issue of claim construction, and that the question should be geared towards -- towards that issue and -- and that issue alone.

So my issue is that -- that you seem to be going outside of it, and I'd like -- I'd like to -- to state that objection for the record. And, also, I'd like to ask you to -- to focus your questions on those issues that the parties are disputing. As you know this --

this jurisdiction requires the -- the parallel,                15:36:26

the declarations, you got our expert's                         15:36:29

declarations, we got your expert's                             15:36:30

declarations, but we only have the ability and                15:36:36

the authority to take -- take depositions                     15:36:37

that's based on that -- that -- those focused                 15:36:39

issues.                                                        15:36:41

     And so with that, I'll -- I'll just stop       15:36:42

and you can -- you can say whatever you're                    15:36:43

going to say.                                                  15:36:46

     MR. SCOTT:  Okay.  I'll continue to say       15:36:47

the same then.  Thank you, Counsel.                           15:36:49

 BY MR. SCOTT:                                               15:36:54

   Q  Back to the question I was asking,            15:36:55

Mr. Camp -- Dr. Camp.  Excuse me.                             15:36:59

     So the question I was asking before that     15:37:25

exchange, Dr. Camp, the limitation is whether                 15:37:28

or not the time slots of the downlink frame                   15:37:34

include control information.  Is that -- sorry,               15:37:42

strike that.                                                  15:37:46

     The condition is whether or not the time     15:37:46

slots of the downlink frame include control                   15:37:49

information.                                                  15:37:51

     Is that -- is that the correct              15:37:52

understanding, Dr. Camp?                                       15:37:53

MR. DOWNING:  What limitation does that go to?  What claim construction does this go to, to the terms?

MR. SCOTT:  I'm not sure that this is a deposition of myself, Counsel.

MR. DOWNING:  No, no, I just want to note for the record -- I want to note for the record, because there's -- there's specific terms that we all -- we -- we -- we have our joint claim construction statement, right?  We have all these disclosures.  The question you just asked, what does it -- what does it go to?  Which one of the disputes does it go to?  If it doesn't, then you're just asking him questions about infringement and validity, and we're going to have a issue with that.

MR. SCOTT:  Counsel, I'm reading verbatim from paragraph 79 of Dr. Camp's claim construction declaration.

Are you aware of that?

MR. DOWNING:  Yeah, I understand that.  But we have specific issues that -- that -- that we're focused on.  It doesn't seem to me -- you know, maybe I'm wrong and if -- if I am I apologize, but it doesn't seem to me like

15:37:54
15:37:56
15:38:00
15:38:01
15:38:03
15:38:04
15:38:06
15:38:08
15:38:09
15:38:12
15:38:14
15:38:17
15:38:19
15:38:22
15:38:25
15:38:27
15:38:31
15:38:33
15:38:37
15:38:37
15:38:38
15:38:38
15:38:39
15:38:41
15:38:42

you're focusing your questions on the claim --     15:38:44
the claim issues and disputes that are in front     15:38:47
of the court.                                        15:38:49

MR. SCOTT:  Okay.                                    15:38:49

MR. DOWNING:  And it seems like you're              15:38:49
taking this declaration and you're probing at        15:38:50
issues that you may want to have answered at         15:38:52
some future point in time, but I'm just saying       15:38:55
it's not appropriate for -- for -- for this          15:38:57
deposition.                                          15:38:59

MR. SCOTT:  Okay.  So I'll be the -- the            15:39:00
person who asks the questions in this                15:39:05
deposition, Counsel.  And I'm limiting my            15:39:08
questions to Dr. Camp's claim construction           15:39:10
declaration.                                         15:39:15

MR. DOWNING:  But it's not --                        15:39:15

MR. SCOTT:  And you are not going to                15:39:16
determine whether the questions that I ask in        15:39:17
this deposition are appropriate or not.              15:39:20

MR. DOWNING:  Right.  And I can't                    15:39:23
control that.  And I can't control that.  I          15:39:24
can't control the questions you ask.  The only       15:39:26
thing I can do at this point is to say, it           15:39:28
seems, from my perspective, that you've gone         15:39:30
way outside of that.  And if not, and -- and         15:39:33

there's something -- there's a point to it, I        15:39:35
apologize completely.  But it seems to me            15:39:37
there's -- there's a very limited set of issues      15:39:40
at stake, and that you are taking this               15:39:42
declaration and you are taking it, and you're        15:39:44
using it for issues that are outside of this,        15:39:46
which -- which -- which is not appropriate.          15:39:48
And if I'm wrong, I'm wrong.                          15:39:50

        But I'm just going to ask you to focus       15:39:51
on the questions that -- that we have and the        15:39:54
issues that parties have exchanged, and -- and       15:39:55
you can disagree with me, but I -- I want to         15:39:58
state for the record that I think that's going       15:40:00
on, and I'm going to ask you to focus your           15:40:02
questions to -- to the claim construction            15:40:05
issues.                                              15:40:06

        MR. SCOTT:  Okay.  I think your              15:40:07
objection is noted on the record, Counsel.  We       15:40:08
can dispute it later.  Okay?  But I'm going to       15:40:12
ask my questions, and we can dispute later           15:40:14
whether they're relevant to the claim               15:40:17
construction or not.  Is that okay?                  15:40:19

        MR. DOWNING:  No, it's -- it's --            15:40:21
it's -- it needs to be focused on the claim          15:40:23
construction issues.  That's all that you have       15:40:26

authority to do.                                              15:40:28

MR. SCOTT:  I agree.  And so I'm going                 15:40:29
to ask Dr. Camp questions about his claim                     15:40:30
construction declaration that he submitted on                 15:40:34
this issue, and I'm going to quote verbatim                    15:40:36
from his declaration.  And if you want to                     15:40:39
dispute whether that's related to claim                       15:40:42
construction, you can, but it doesn't need to                 15:40:44
be right now on the record in this deposition,                15:40:46
because you have noted your objection.  Okay?                 15:40:49

MR. DOWNING:  And I'll -- I'll keep                    15:40:54
making the -- I'll keep making it, and then,                  15:40:55
you know, obviously, if this gets out of hand,                15:40:58
you know, we'll -- we'll have to -- we'll have                15:41:00
to figure that out.  But I -- I hope that you                 15:41:01
just focus on the issues that we have, because                15:41:04
that's all that the parties have authority to                 15:41:06
do.                                                           15:41:08

MR. SCOTT:  I understand.  I think your                15:41:08
objection is lodged very well.  Okay?                         15:41:10
 BY MR. SCOTT:                                                15:41:13
   Q   So, Dr. Camp, we're nearing the end of                15:41:14
this deposition.  I'd like to ask you just a                  15:41:17
few more questions about your declaration that                15:41:19
you submitted with respect to claim                           15:41:21

construction.

The specific sentence that I am referring to from your declaration, for the benefit of everyone who's listening, is, This limitation places a condition on the "same time slot," where physical control channels are received by the UE and where "other time slots" of the downlink frame received by the UE do not include a "physical control channel."  That's on page 20 of your declaration, paragraph 79.

The condition that you have described earlier -- you described that condition earlier as being whether or not certain time slots include control information; is that correct, Dr. Camp?

A    That's correct.

Q    And that's the structure of the downlink frame, correct?

A    It is.

Q    Okay.

MR. SCOTT:  Counsel, I'm ready to go off the record.

MR. DOWNING:  Are you passing the witness?

MR. SCOTT:  No.  I'm ready to go off the

15:41:24
15:41:25
15:41:27
15:41:30
15:41:33
15:41:36
15:41:39
15:41:42
15:41:46
15:41:49
15:41:57
15:42:02
15:42:04
15:42:07
15:42:12
15:42:12
15:42:17
15:42:20
15:42:21
15:42:27
15:42:31
15:42:33
15:42:33
15:42:34
15:42:35

record.

Are you ready to go off the record?

MR. DOWNING:  Are you -- did you want a break?

MR. SCOTT:  Yes.

MR. DOWNING:  Okay.  Yeah, we can take a break.

THE VIDEOGRAPHER:  Okay.  We're going off the record.  The time is 3:42 p.m.

(A brief recess was taken.)

THE VIDEOGRAPHER:  We are going back on the record.  The time is 3:53 p.m.

BY MR. SCOTT:

Q   Okay.  Dr. Camp, thank you for your time today.

Is there anything that you would like to change about your earlier testimony?

THE COURT REPORTER:  I'm sorry.  I didn't hear you, Dr. Camp.

THE WITNESS:  I do not.

MR. SCOTT:  Okay.  Thank you.

Pass the witness.

DIRECT EXAMINATION

BY MR. DOWNING:

Q   Dr. Camp, this is John Downing from

15:42:36
15:42:37
15:42:39
15:42:40
15:42:41
15:42:42
15:42:44
15:42:44
15:42:46
15:42:50
15:53:25
15:53:32
15:53:32
15:53:38
15:53:41
15:53:42
15:53:43
15:53:43
15:53:43
15:53:53
15:53:56
15:53:57
15:53:57
15:53:57
15:53:59

Kasowitz.  I just have a couple of questions
for you.  I won't take up too -- too much of
your time.

Do you understand, earlier, you were
discussing, you know, what a method claim is
and what a system claim is?

A  Yes.

Q  And whether -- I believe it's claim 1
is -- is -- you know, has any method steps to
it?

Dr. Camp, is it your understanding that
a method claim requires performance of the
recited method steps?

A  Yes.

Q  And that a system claim, by contrast, is
directed to the system itself, correct?

A  Correct.

Q  And do you understand, earlier, you
talked about the language "configure to"?

A  I remember that, yes.

Q  And is it your understanding that when a
system claim recites the -- the language in
figure 2, it refers to how the system is
designed, programmed, or configured?

A  Yes.

Q   And that means that it describes the system's configuration, not whether any particular function is actually performed, correct?

A   That's right.

Q   And a system that's designed to perform a function, that means it can perform that function, correct?

A   It can, yes.

Q   And that's what "configure to" refers to, correct?

A   That's my understanding.

Q   So is it your understanding that the -- the system claims of the '000 patent at issue, that recite "configure to" require only that the system be designed or programmed to perform the recited functionality, and not that they require that any steps actually be performed?

A   That's my understanding.

Q   Okay.  And that means that the claims are satisfied by capability, not actual execution, correct?

A   Correct.

MR. DOWNING:  I have no more questions.

Thank you, Dr. Camp.                                    15:56:17

THE WITNESS:  You're welcome.                           15:56:18

THE VIDEOGRAPHER:  Okay.  This marks the                15:56:20
end of the deposition of Dr. Joseph Camp.  The          15:56:21
time on the monitor is 3:56 p.m.                        15:56:24

(The deposition was concluded at
3:56 p.m.)

* * *

I, JOSEPH D. CAMP, Ph.D., do hereby certify that the foregoing is a true and accurate transcription of my testimony.

_____

Dated_____

STATE OF OHIO                )
                             ) : CERTIFICATE
COUNTY OF CLERMONT           )


        I, April L. Crites, RPR, RMR, CRR, a
Notary Public within and for the state of Ohio,
and a Texas Certified Shorthand Reporter, duly
commissioned and qualified,
        DO HEREBY CERTIFY that the above-named
JOSEPH D. CAMP, Ph.D., was by me first duly sworn
to testify the truth, the whole truth, and nothing
but the truth;
        Said testimony was reduced to writing by
me stenographically in the presence of the witness
and thereafter reduced to typewriting;
        I FURTHER CERTIFY that I am not a relative
or attorney of either party, in any manner
interested in the event of this action, nor am I,
or the court reporting firm with which I am
affiliated, interested in the disposition of this
matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office at Amelia, Ohio, on this 18th day of March, 2026.

_____
APRIL L. CRITES, RPR, RMR, CRR
NOTARY PUBLIC, STATE OF OHIO
My commission expires 10-3-2027

Texas Certified Shorthand Reporter 14422
My certification expires June 30, 2026

* * *

| A |
|---|

**a-to-d**
99:17
**ability**
128:4
**able**
7:10, 55:10,
85:23, 85:25
**about**
9:6, 10:7,
11:2, 12:13,
13:5, 17:1,
19:3, 19:10,
19:23, 20:5,
20:11, 20:14,
20:17, 21:20,
22:25, 23:8,
27:23, 28:4,
28:5, 28:11,
32:5, 32:8,
35:12, 38:14,
39:10, 40:23,
41:2, 43:12,
44:19, 45:13,
45:18, 46:5,
48:1, 49:19,
56:20, 58:22,
63:3, 63:18,
64:13, 64:20,
65:5, 67:6,
67:7, 68:3,
68:18, 75:25,
77:22, 81:5,
82:13, 83:7,
84:24, 85:1,
92:9, 97:21,
97:24, 99:20,
103:21, 104:23,
104:25, 105:15,
105:16, 106:5,
114:15, 116:10,
118:1, 118:20,
120:20, 124:21,
125:6, 125:10,
126:17, 127:5,
129:15, 132:3,
132:24, 134:17,

135:19
**above**
13:8
**above-named**
139:9
**absence**
64:20, 65:1
**abstract**
45:18, 47:7,
47:12, 47:16,
48:7, 48:12,
61:23, 62:10,
63:9, 63:25,
64:14, 64:17,
65:12, 76:19,
77:2, 77:4
**abstract's**
77:14
**abstracts**
59:6
**acceptable**
113:23
**according**
59:8, 81:3,
89:5, 89:18,
126:3
**accurate**
7:21, 17:23,
138:2
**acronyms**
115:25
**across**
53:17, 72:22,
74:7, 76:2
**acting**
22:8, 42:7,
42:15
**action**
1:5, 139:18
**actions**
92:24, 95:11
**active**
6:22, 68:22
**actual**
118:12, 120:19,
125:11, 136:22
**actually**
62:14, 86:19,

136:3, 136:18
**adapt**
71:23, 72:14
**adaptation**
20:24, 21:9,
21:11
**added**
15:5
**addressing**
25:20
**adhere**
83:20
**adjacent**
80:17, 80:21,
80:25
**advisor**
22:8
**affiliated**
139:20
**after**
71:11, 80:2,
86:22, 113:19,
125:22
**afterward**
62:20
**again**
20:5, 36:16,
59:6, 69:8
**against**
14:8
**age**
6:2
**agree**
6:23, 38:19,
47:16, 48:9,
53:4, 56:15,
56:24, 57:25,
58:16, 66:12,
71:13, 72:24,
73:15, 88:22,
96:21, 97:19,
102:15, 110:6,
110:13, 110:23,
114:6, 114:9,
114:17, 115:19,
132:2
**agreed**
111:21

**agreeing**
32:1
**agrees**
74:11
**ahead**
45:15, 52:14,
111:24, 112:7,
126:11
**air**
71:21, 72:12,
99:15
**airline**
2:7
**airlines**
1:10, 4:14,
5:4, 5:17
**al**
5:4
**align**
75:13
**aligns**
52:11, 75:15
**all**
5:12, 12:16,
13:24, 14:7,
14:13, 14:14,
15:11, 18:23,
21:23, 27:24,
29:10, 29:24,
32:11, 33:11,
38:12, 39:21,
45:11, 47:6,
48:6, 58:19,
59:8, 67:2,
67:11, 70:17,
74:4, 74:7,
79:7, 80:12,
81:5, 83:4,
85:1, 85:5,
86:1, 86:8,
86:18, 86:19,
89:14, 89:21,
90:25, 91:23,
92:5, 94:20,
97:10, 99:19,
100:25, 101:16,
102:2, 111:23,
112:3, 113:1,

113:21, 123:23, 125:12, 125:17, 129:9, 129:11, 131:25, 132:17

**allocated**
55:3, 71:1, 71:2, 71:3, 84:11

**allocates**
91:7

**allocating**
70:4

**allocation**
75:20, 76:24, 77:18, 89:12, 98:11, 99:6, 103:25, 104:12

**allocations**
49:17, 50:16, 52:9, 53:14, 54:8, 54:19

**allow**
47:1, 86:14, 89:1, 90:21, 114:4, 121:2

**allowance**
116:4

**alone**
31:7, 101:7, 127:19

**along**
14:12, 81:18

**already**
19:25, 21:22, 27:6, 29:7, 29:8, 32:14, 35:12, 78:12, 84:3, 111:24, 112:6

**also**
4:22, 5:21, 23:25, 25:12, 27:12, 46:18, 52:17, 52:23, 54:22, 55:23, 58:22, 58:23, 69:12, 70:13, 71:3, 74:11,

75:22, 77:21, 86:10, 127:23

**alston**
18:7

**always**
39:1, 86:11, 114:22, 114:23, 115:16, 118:15

**ambiguity**
37:2, 37:3, 37:8

**ambiguous**
26:3, 27:18, 28:22, 30:23, 31:15, 31:23, 31:25, 33:1, 33:4, 33:25, 34:3, 34:9, 34:19, 34:22, 35:18, 36:5, 36:8, 36:13, 36:25, 37:19, 38:3, 38:8, 38:10, 38:23, 39:15, 63:11, 64:8, 120:9

**amelia**
140:2

**american**
1:10, 4:13, 5:4, 5:17, 14:8, 48:24

**among**
94:20

**amount**
13:10, 89:14

**analog**
99:15, 99:18

**analysis**
19:14

**another**
9:16, 11:12, 13:17, 20:15, 34:25, 43:16, 74:19, 104:13, 108:19

**answer**
30:24, 30:25,

43:7, 43:20, 57:21, 58:3, 62:24, 100:10, 105:18, 111:20, 123:19

**answered**
130:7

**answering**
31:2, 100:4

**antenna**
90:6

**any**
6:19, 8:17, 8:21, 9:10, 18:2, 18:25, 23:19, 26:12, 63:7, 64:2, 64:5, 66:12, 73:16, 83:15, 85:20, 94:4, 95:13, 95:15, 95:19, 95:20, 97:14, 107:14, 117:24, 118:3, 135:9, 136:2, 136:18, 139:17

**anyone**
6:14, 6:24, 7:1

**anything**
27:1, 63:5, 63:21, 67:21, 89:25, 100:15, 134:16

**anywhere**
73:3, 82:7, 82:10, 105:6

**apologize**
36:2, 129:25, 131:2

**apparatus**
106:14, 106:17

**appeal**
49:12, 50:13

**appears**
7:23

**applicability**
15:22, 15:23

**applicable**
19:7

**application's**
31:20

**apply**
46:18, 58:22, 58:23, 69:12

**appreciate**
22:5

**appropriate**
34:18, 35:16, 36:4, 36:12, 36:23, 130:9, 130:19, 131:7

**april**
1:26, 2:15, 5:21, 139:5, 140:8

**arbitrary**
44:12, 75:11

**area**
41:20

**around**
10:1, 12:18, 13:7

**arrays**
90:6

**art**
24:21, 24:23, 25:5, 25:8, 25:11, 25:13, 25:17, 26:1, 26:13, 26:24, 27:8, 27:22, 28:2, 28:10, 29:2, 31:18, 32:3, 32:13, 32:16, 32:19, 32:22, 33:8, 33:19, 35:3, 35:10, 35:12, 35:13, 37:7, 37:9, 37:10, 37:14, 37:22, 37:24, 39:9, 39:23, 42:23, 43:1, 43:4, 43:23, 66:23, 69:21, 71:9, 76:6, 83:9,

89:10, 119:25
**ascribe**
35:20
**aside**
61:23, 62:9,
63:8, 63:25,
65:12
**asked**
14:15, 33:17,
35:25, 36:10,
36:13, 43:5,
105:17, 124:21,
127:5, 129:12
**asking**
37:17, 58:15,
64:15, 65:5,
81:22, 84:16,
100:21, 112:14,
124:24, 125:25,
128:14, 128:16,
129:14
**asks**
130:12
**aspect**
45:22, 46:12,
46:16
**aspects**
40:23, 42:3,
83:15
**asserted**
14:7, 14:14,
82:9
**assigned**
64:18, 68:12,
68:15, 68:25,
77:13, 77:22
**assume**
8:20, 9:1,
30:16, 64:3
**assumption**
10:21, 20:3
**assumptions**
10:12
**asus**
18:6
**atom**
88:16, 88:18
**attend**
6:18

**attending**
5:13
**attention**
51:20, 64:11,
79:10, 106:25
**attorney**
139:17
**august**
3:30, 58:9
**austin**
4:19
**author**
31:10, 78:10
**authority**
128:5, 132:1,
132:17
**authorization**
125:13
**authorized**
125:4
**authors**
29:19
**automatically**
45:7
**available**
25:10, 85:19,
89:13, 89:20
**aware**
9:24, 10:2,
10:3, 129:20
**awareness**
107:14
**away**
11:17, 11:23,
12:6
**awesome**
86:7

**B**

**bachelor's**
41:18
**back**
10:11, 12:12,
22:10, 28:24,
29:5, 33:16,
41:8, 41:11,
52:3, 66:3,
72:21, 74:21,

78:22, 78:25,
87:17, 89:2,
91:3, 98:4,
111:12, 113:18,
119:14, 128:14,
134:11
**background**
15:13, 32:12,
32:18, 84:22
**badi**
19:13
**bag**
6:21
**ballpark**
14:20, 15:6
**bandwidth**
11:10, 11:21,
12:4, 12:10,
20:15, 20:18,
20:20
**base**
10:11, 68:23,
111:25, 112:8,
113:19, 113:25,
114:7, 114:20,
115:2, 115:9,
115:20, 116:10,
117:8, 117:12,
117:22, 118:7,
119:10, 119:12,
124:16
**base-station**
116:5
**based**
20:18, 31:1,
33:22, 40:1,
57:5, 76:9,
76:24, 77:3,
77:18, 81:20,
85:11, 85:17,
86:1, 87:2,
90:21, 91:18,
108:7, 110:4,
112:1, 112:2,
112:3, 113:13,
113:15, 113:21,
116:9, 122:10,
128:6

**bases**
68:25
**basically**
46:8, 85:12,
119:19, 122:7
**beacon**
49:15, 50:15,
52:8, 53:12,
54:7, 54:18,
67:8, 70:19,
86:17, 87:25,
91:7
**beamforming**
19:16, 19:19,
21:20, 90:7
**bearings**
99:11
**beating**
118:23
**became**
10:2, 10:3
**because**
10:3, 10:17,
10:22, 12:21,
14:11, 20:7,
29:2, 29:4,
29:11, 30:5,
30:9, 37:17,
38:25, 40:20,
44:19, 47:23,
48:20, 50:3,
54:12, 61:12,
61:19, 64:4,
64:10, 65:3,
65:14, 66:16,
69:16, 71:18,
77:9, 78:11,
80:8, 84:10,
85:6, 85:12,
90:5, 90:9,
91:23, 95:24,
100:24, 101:18,
101:24, 111:21,
114:22, 117:25,
118:16, 119:23,
121:11, 125:12,
129:8, 132:10,
132:16

| | | | |
|---|---|---|---|
| **become** 9:24, 21:21 | **believe** 10:1, 13:24, 18:16, 42:20, 43:5, 43:13, 61:20, 63:7, 106:13, 135:8 | **both** 15:22, 16:25, 17:5, 21:24, 21:25, 22:6, 59:6, 63:2, 63:13, 63:14, 65:14, 65:17, 69:10, 70:16, 101:5, 105:24, 117:17, 117:25 | 22:5, 23:16, 23:20, 41:11, 43:20, 45:5, 71:25, 72:2, 78:25, 99:22, 100:5, 105:25, 106:7, 123:19, 123:24, 128:15, 128:17, 128:25, 132:3, 132:22, 133:15, 134:14, 134:19, 134:25, 135:11, 137:1, 137:4, 138:1, 139:10 |
| **becomes** 108:15 | **below** 13:8, 51:21, 56:7 | **break** 9:1, 9:2, 9:4, 76:11, 78:16, 134:4, 134:7 | **camp's** 129:18, 130:14 |
| **been** 6:2, 8:8, 14:14, 14:15, 39:7, 41:1, 59:6, 68:24, 106:4, 111:24, 112:6, 113:2, 123:12 | **beneath** 75:17 | **breaks** 8:25 | **can't** 8:17, 12:21, 18:18, 45:23, 48:17, 61:4, 63:2, 67:2, 67:12, 81:23, 83:23, 85:16, 88:14, 105:18, 109:12, 130:20, 130:21, 130:22 |
| | **benefit** 133:4 | **brief** 41:7, 134:10 | |
| **before** 2:15, 3:23, 3:33, 8:8, 9:18, 12:22, 15:17, 17:2, 17:4, 24:9, 26:9, 38:15, 49:4, 50:1, 51:11, 59:17, 60:11, 119:9, 119:12, 128:16 | **besides** 6:17, 83:17 | **bring** 35:2 | |
| | **best** 38:20, 38:25, 39:2, 111:20 | **broad** 12:24 | |
| | **between** 15:7, 48:12, 50:23, 63:1, 63:18, 65:22, 65:25, 71:24, 72:15, 85:13, 112:8 | **broader** 76:8 | **cannot** 61:5, 99:19 |
| **begin** 101:20 | | **building** 2:6 | **capabilities** 112:1 |
| **beginning** 43:11, 71:20, 108:6, 108:20, 110:1 | **beyond** 90:1 | **bunch** 85:4, 124:24 | **capability** 106:22, 136:22 |
| | **bird** 18:7 | **C** | **capped** 13:4 |
| **begins** 5:1 | **bit** 26:5, 41:3, 79:3, 101:3 | **california** 4:7, 4:9 | **captures** 74:10 |
| **behalf** 4:2, 4:13, 5:17, 5:19 | **bite** 79:1 | **call** 101:1 | **carried** 95:20 |
| **behavior** 42:4, 119:17, 120:9, 121:6, 121:20 | **bits** 122:9 | **called** 10:12, 103:6 | **carry** 72:18, 94:21, 94:24 |
| | **blank** 15:3 | **calling** 50:6, 101:3, 101:22, 101:25 | **carrying** 95:4, 95:16 |
| **behind** 96:17 | **block** 118:4 | **came** 72:22 | **case** 3:34, 5:7, 9:10, 9:11, 9:19, 9:20, |
| **being** 11:19, 30:6, 44:21, 52:19, 54:1, 64:20, 65:20, 77:22, 77:25, 83:20, 95:14, 95:15, 133:13 | **blocking** 69:18, 70:9 | **camp** 1:16, 2:1, 3:6, 3:15, 3:16, 4:4, 5:3, 6:1, 6:7, 6:11, 7:7, 8:9, 17:17, 19:14, 20:22, 20:25, | |
| | **blocks** 117:3, 117:13, 117:16 | | |
| | **board** 49:12, 50:12, 50:13 | | |

9:22, 9:25, 10:4, 13:18, 14:15, 18:6, 18:8, 18:13, 18:15, 18:16, 18:23, 19:4, 19:7, 23:20, 42:13, 46:19, 49:5, 50:24, 53:18, 53:19, 53:21, 53:24, 54:13, 58:22, 58:23, 59:18, 69:1, 69:13, 70:14, 101:6, 124:25, 125:8, 126:24

**cases**
17:8, 17:12, 18:2, 70:16, 125:7

**castro**
4:23, 5:11

**catching**
30:8

**caught**
64:10

**cautioned**
6:3

**ccr**
1:26, 2:15

**cdma**
67:4, 67:16, 70:2, 81:7, 81:8, 81:15, 85:1, 85:2, 87:8, 87:11, 87:14

**cellular**
15:16, 15:20, 15:23, 15:25, 16:5, 16:12, 16:15, 18:3, 19:2, 21:11, 78:8, 111:18

**cellular-based**
18:22

**certain**
24:11, 24:13,

33:2, 89:14, 133:13

**certainty**
39:11

**certificate**
139:2

**certification**
140:12

**certified**
1:27, 2:16, 6:4, 139:7, 140:11

**certify**
138:2, 139:9, 139:16

**change**
88:14, 89:9, 134:17

**channel**
10:10, 10:13, 10:21, 10:23, 11:12, 11:14, 11:15, 11:22, 11:25, 12:1, 12:2, 12:3, 12:6, 12:7, 19:14, 19:24, 20:3, 20:19, 20:23, 21:8, 21:15, 21:22, 45:20, 45:24, 47:8, 56:10, 56:12, 64:18, 64:21, 64:24, 65:1, 76:23, 77:8, 77:12, 77:17, 85:11, 85:16, 85:18, 85:21, 85:24, 86:2, 86:6, 87:3, 89:11, 89:18, 89:24, 90:23, 98:13, 98:15, 104:3, 104:8, 104:9, 104:14, 112:2, 112:6, 112:12, 112:24, 113:12,

113:14, 114:1, 114:19, 114:24, 115:4, 115:16, 115:23, 115:24, 116:7, 116:11, 116:12, 116:16, 116:19, 116:25, 117:10, 118:11, 119:2, 119:7, 120:19, 122:10, 123:8, 124:7, 133:9

**channel's**
85:15

**channels**
11:17, 55:7, 72:16, 73:24, 74:3, 74:13, 82:5, 82:14, 82:15, 82:19, 82:23, 116:5, 117:14, 117:21, 124:4, 133:6

**characterization**
125:16

**characterized**
12:7

**chat**
7:14

**choice**
112:4

**choices**
111:23

**choose**
21:14

**chronological**
18:6, 18:12

**circumstances**
33:2

**cite**
67:20, 103:11

**cited**
22:17, 23:24, 66:12, 92:19, 93:9, 93:22, 95:9, 95:11

**civil**
1:5, 2:14

**claim**
8:3, 22:16, 22:20, 23:24, 30:6, 31:15, 33:23, 34:8, 34:13, 34:19, 35:17, 36:5, 36:13, 36:24, 37:19, 38:8, 38:21, 39:2, 39:6, 40:9, 42:21, 42:23, 47:23, 48:1, 48:4, 56:2, 56:4, 73:20, 73:21, 74:11, 74:15, 74:16, 77:9, 77:21, 79:11, 79:20, 81:4, 81:17, 81:22, 81:24, 81:25, 82:2, 82:4, 83:21, 98:8, 98:25, 102:6, 103:23, 106:11, 106:12, 106:13, 106:19, 106:20, 109:5, 109:18, 110:4, 111:2, 111:14, 116:17, 116:18, 116:23, 118:24, 120:10, 120:13, 121:5, 121:25, 122:1, 124:20, 125:2, 125:11, 125:17, 127:8, 127:16, 129:2, 129:10, 129:18, 130:1, 130:2, 130:14, 131:15, 131:21, 131:24, 132:3, 132:7, 132:25, 135:5, 135:6, 135:8, 135:12, 135:15, 135:22

**claim's**
31:22

claimed
75:19, 98:7,
98:22, 98:24,
106:19, 108:3
claims
27:13, 28:1,
30:5, 31:19,
33:10, 37:8,
37:15, 38:16,
47:12, 47:17,
47:25, 48:7,
48:13, 55:19,
55:20, 55:22,
55:24, 59:7,
61:23, 62:11,
63:8, 64:1,
65:17, 65:23,
81:23, 82:8,
82:9, 82:10,
83:11, 83:16,
83:24, 106:14,
136:14, 136:21
clarification
36:21, 43:13,
43:16, 84:17
clarity
22:6, 33:23,
34:24, 34:25,
35:1, 35:6,
35:9, 35:14,
37:2, 37:4,
37:7, 100:13
classification
48:8
clause
77:10, 113:13,
116:18, 119:19
clear
33:6, 35:3,
35:14, 65:6,
65:11, 96:7,
103:4, 114:25
clearly
6:22, 84:5
clermont
139:3
client
94:3

closed
6:21
closely
20:10
closest
82:3
co-locate
108:24
code
69:22, 81:7,
86:8
codes
67:4, 67:16,
70:6, 70:8,
81:9, 81:15,
85:8, 85:11,
85:14, 85:16,
85:17, 85:19,
86:12, 87:2,
108:12, 108:16
coding
89:21, 89:24,
90:8
coherence
11:10, 11:21,
12:4, 12:10,
20:14, 20:17,
20:19
coherence-aware
20:22, 21:7
collapse
74:5
collective
42:4
collectively
42:8
collision
70:7
colorado
4:17
column
47:10, 68:19,
69:11, 71:19,
79:12, 83:25,
84:23, 91:4,
106:25, 109:6,
109:19
columns
65:22, 73:2,

73:6
com
4:11, 4:21
combination
117:15
come
23:7, 65:22,
116:6
comes
20:6, 58:13,
76:18, 82:3,
90:4, 116:11,
116:12
coming
45:5
commission
140:10
commissioned
139:8
common
61:22, 62:9
communicate
10:10, 11:1,
55:10, 67:8,
67:15, 90:18,
91:1
communicated
118:8
communicating
6:24
communications
104:25
community
104:23
comparison
62:14, 63:18
compartments
118:3
complete
22:18, 25:25,
26:4, 90:9
completely
96:18, 131:2
component
74:19
comports
79:19
composes
61:15

composing
79:22
comprise
80:13, 81:3,
81:19, 83:3,
89:17, 104:18
comprises
80:19
computer
6:17, 17:22,
41:19, 94:2,
97:12
computing
41:22, 41:25,
42:2, 42:7,
42:14, 93:14,
93:16, 94:1,
94:3, 94:5,
94:6, 95:1,
95:24, 96:14,
97:10, 97:13,
97:16, 103:3,
103:15
concept
21:21, 69:9
concepts
25:9, 29:8
concern
13:18, 46:7,
64:14, 64:22
concerned
15:19, 48:19
concerning
18:3, 19:2
concerns
64:16
concert
42:15
concluded
137:6
condition
85:12, 86:2,
89:11, 116:17,
124:3, 124:10,
124:12, 124:13,
128:21, 133:5,
133:11, 133:12
conditions
85:18, 85:22,

85:24, 87:3, 89:19, 89:24, 90:23, 112:2, 113:12, 113:14

**configuration**
106:21, 136:2

**configurations**
113:22

**configure**
135:19, 136:10, 136:15

**configured**
77:11, 98:10, 103:25, 104:2, 104:13, 106:21, 107:11, 107:17, 108:1, 135:24

**confirm**
72:23, 75:2, 88:10

**confirms**
74:16

**conjunction**
100:1, 100:17, 101:8, 102:3

**conscious**
78:9

**consider**
26:13, 27:15, 28:18, 31:21, 33:7, 35:17, 36:4, 36:24, 37:18, 37:23, 38:7, 39:12, 40:3, 40:8, 40:12, 43:3, 51:4, 75:12, 123:2

**considered**
53:1

**considering**
38:6, 40:4, 49:22

**consistent**
49:11, 49:21, 50:10

**constraining**
48:21

**construction**
8:4, 22:16, 22:20, 23:25, 50:22, 57:4, 57:7, 57:15, 58:1, 58:17, 73:13, 124:20, 125:12, 125:18, 127:8, 127:17, 129:2, 129:10, 129:19, 130:14, 131:15, 131:22, 131:25, 132:4, 132:8, 133:1

**construe**
51:5, 51:24

**construed**
31:16, 44:15, 50:19, 52:12, 53:4, 54:3, 91:21, 92:5

**construing**
55:13, 56:16, 56:25, 57:2, 59:1

**contain**
8:2

**contains**
124:14

**contending**
75:3

**content**
40:2

**contention**
76:15, 77:5

**context**
27:20, 27:22, 28:3, 28:7, 28:24, 29:13, 29:22, 38:12, 38:14, 42:12, 47:6, 49:24, 60:9, 67:16, 84:24, 85:1, 87:11, 94:14, 118:24

**contextual**
112:4

**contiguous**
86:21

**continue**
28:23, 128:11

**continued**
21:13

**continuing**
82:17, 114:11

**contradicts**
84:8, 84:10

**contrast**
135:15

**contribute**
83:16

**contributes**
90:25

**contributing**
33:11

**control**
26:18, 55:4, 55:7, 56:10, 73:24, 74:13, 82:5, 82:14, 82:18, 82:23, 98:14, 98:15, 99:8, 104:2, 104:3, 104:14, 112:12, 112:24, 114:1, 114:19, 114:23, 114:24, 115:3, 115:4, 115:11, 115:16, 115:24, 116:6, 116:12, 116:16, 116:19, 116:20, 116:25, 117:4, 117:11, 117:14, 117:21, 117:23, 118:10, 118:11, 118:12, 118:16, 118:19, 119:2, 119:7, 119:20, 120:1, 120:19, 120:23, 121:1, 121:11, 121:13, 122:10, 122:11, 122:15, 122:16, 123:8, 124:4,

124:7, 124:14, 128:19, 128:22, 130:21, 130:22, 133:6, 133:9, 133:14

**controlled**
19:21

**convention**
124:22

**conventional**
119:16, 120:8, 121:5, 121:19, 121:22, 122:6, 123:2, 123:3, 123:9, 123:11, 123:12, 124:22, 127:6

**converter**
99:17

**copy**
7:21, 17:23

**core**
101:11, 101:15, 101:22

**cores**
94:17, 97:11, 101:6, 101:13, 101:21, 102:2

**correct**
13:19, 22:8, 24:2, 45:12, 48:16, 48:17, 52:10, 54:4, 66:21, 73:14, 77:3, 87:7, 88:13, 89:6, 92:3, 96:1, 98:2, 102:16, 106:15, 106:19, 107:10, 110:25, 111:10, 111:11, 128:24, 133:14, 133:16, 133:18, 135:16, 135:17, 136:4, 136:8, 136:11, 136:23, 136:24

**correctly**
37:15, 72:22

| | | | |
|---|---|---|---|
| **corresponds** | **course** | **dallas** | 12:14, 13:17, |
| 11:15 | 25:8, 84:21 | 1:18, 2:8, 6:13 | 14:23, 15:8, |
| **could** | **court** | **data** | 15:12, 22:11, |
| 9:15, 10:17, | 1:1, 5:6, 5:20, | 55:4, 55:5, | 22:20, 24:17, |
| 10:19, 11:11, | 20:25, 21:3, | 56:14, 64:17, | 24:18, 41:14, |
| 11:13, 18:1, | 50:23, 50:24, | 76:22, 77:13, | 42:18, 44:5, |
| 25:12, 25:22, | 54:14, 54:20, | 77:22, 86:22, | 48:23, 52:4, |
| 27:4, 27:7, | 71:25, 72:8, | 91:8, 98:13, | 53:15, 66:4, |
| 28:7, 37:14, | 109:11, 109:13, | 99:7, 117:4, | 74:22, 79:5, |
| 42:2, 42:4, | 109:15, 123:18, | 117:11, 117:15, | 79:19, 87:17, |
| 44:15, 45:15, | 125:13, 130:3, | 118:10, 118:13, | 92:9, 92:11, |
| 46:25, 47:3, | 134:18, 139:19 | 118:17, 118:19, | 92:20, 93:22, |
| 53:1, 80:3, | **courtroom** | 119:22, 119:24, | 95:9, 103:10, |
| 80:24, 86:14, | 8:15 | 120:2, 120:24, | 103:19, 105:11, |
| 86:25, 87:15, | **cover** | 121:1, 121:14 | 111:13, 119:14, |
| 93:2, 93:16, | 23:17, 32:11, | **date** | 123:1, 123:24, |
| 94:1, 94:6, | 62:10, 64:1, | 5:8, 13:14, | 124:23, 129:19, |
| 94:19, 94:24, | 92:2 | 13:16 | 130:6, 130:15, |
| 95:16, 95:19, | **creates** | **dated** | 131:5, 132:4, |
| 95:22, 96:8, | 10:25 | 138:7 | 132:6, 132:24, |
| 96:17, 96:21, | **crites** | **day** | 133:3, 133:10 |
| 97:1, 101:14, | 1:26, 2:15, | 140:3 | **declarations** |
| 102:7, 102:20, | 5:21, 139:5, | **days** | 98:5, 128:2, |
| 103:2, 103:6, | 140:8 | 102:11 | 128:3, 128:4 |
| 104:5, 104:7, | **cross-examination** | **dead** | **dedicated** |
| 104:8, 104:9, | 3:7, 6:5 | 118:23 | 46:11, 117:3, |
| 104:11, 104:13, | **crr** | **deal** | 117:4 |
| 108:18, 108:21, | 1:26, 2:15, | 25:9, 26:7, | **dedicating** |
| 110:2, 113:20, | 139:5, 140:8 | 42:2, 45:21, | 72:16 |
| 125:6 | **csr** | 118:21 | **deem** |
| **couldn't** | 1:26, 2:15 | **december** | 26:1 |
| 49:7, 88:4 | **current** | 3:24, 51:12 | **defendant** |
| **counsel** | 113:11 | **decide** | 1:11, 4:13 |
| 5:14, 9:12, | **curriculum** | 113:20 | **defendant's** |
| 15:5, 41:1, | 3:16, 17:18 | **decided** | 7:6, 17:17, |
| 43:6, 43:17, | **cut** | 111:24, 112:7, | 45:1, 51:11, |
| 78:16, 126:12, | 100:9 | 117:11 | 58:8, 59:17 |
| 127:2, 128:12, | **cv** | **decides** | **define** |
| 129:5, 129:17, | 17:11, 17:15, | 116:10 | 15:18, 35:20, |
| 130:13, 131:18, | 17:24 | **decision** | 40:9, 42:25, |
| 133:21 | **cycle** | 3:27, 30:16, | 43:6, 60:9, |
| **county** | 70:11 | 51:9, 51:14, | 94:9, 94:11 |
| 139:3 | **D** | 56:23, 116:5 | **defined** |
| **couple** | **d-to-a** | **decisions** | 20:1, 27:21, |
| 19:9, 49:19, | 99:17 | 20:2 | 40:15, 44:10, |
| 70:25, 86:13, | **d-u** | **declaration** | 44:15, 59:7, |
| 135:1 | 20:16 | 3:14, 7:5, 7:6, | 75:9, 75:19, |
| **coupled** | | 7:21, 12:12, | 78:1, 78:2, |
| 99:12 | | | |

117:6
**defines**
64:23, 64:25,
76:3
**defining**
106:20
**definite**
42:2
**definitely**
38:13, 40:20,
50:4, 104:16
**definition**
45:21, 75:13,
78:12, 88:15
**degree**
41:19, 69:24,
69:25
**delegates**
101:12
**department**
2:6
**depend**
90:13
**depends**
82:4, 110:18
**depos**
4:24, 5:11,
5:22
**deposed**
8:8
**deposition**
1:13, 2:1, 5:2,
5:12, 6:18,
6:25, 12:22,
43:11, 49:3,
60:12, 125:2,
125:3, 125:22,
126:18, 129:5,
130:10, 130:13,
130:19, 132:9,
132:23, 137:4,
137:6
**depositions**
128:5
**depth**
29:3
**describe**
29:3, 31:7,

46:1, 86:5, 99:5
**described**
49:14, 50:14,
52:7, 54:6,
54:17, 79:25,
81:6, 83:11,
87:8, 91:14,
95:14, 95:15,
122:7, 133:11,
133:12
**describes**
52:18, 102:20,
136:1
**describing**
55:14, 93:13,
94:1
**description**
3:12, 46:2,
48:3, 48:10,
52:22, 62:19,
65:20, 68:18,
71:15, 73:3,
73:9, 73:12,
74:18, 80:1,
80:23, 81:21,
102:19, 104:20
**descriptions**
73:1
**design**
19:15, 20:2,
20:18, 20:22,
21:7
**designated**
87:25
**designed**
101:1, 135:24,
136:6, 136:16
**desktop**
94:2, 97:12
**detail**
57:21, 57:25
**details**
18:24, 29:10
**determination**
118:5
**determine**
30:18, 31:17,
113:21, 130:18

**determined**
113:14, 114:7,
114:19, 117:22,
119:7, 124:16
**determines**
111:18, 113:25,
115:2
**determining**
29:24, 30:3,
30:9, 39:13,
115:20
**device**
94:3, 94:5,
95:1, 97:13,
101:17, 101:18,
107:10, 108:5
**devices**
6:19, 6:25,
110:10, 110:14
**diagram**
96:8, 96:16
**diff**
62:13, 62:23,
62:25
**differ**
63:7, 64:4,
65:15, 65:18
**difference**
64:14
**differences**
64:5, 65:5,
65:11
**different**
10:18, 10:24,
20:2, 21:19,
33:9, 37:4,
44:20, 45:14,
45:16, 45:25,
46:11, 47:14,
59:5, 61:7,
62:18, 63:3,
67:11, 68:12,
68:16, 68:25,
70:6, 70:25,
76:3, 78:3,
78:13, 80:10,
80:11, 85:4,
85:8, 85:10,

85:11, 86:7,
86:13, 86:15,
88:12, 88:24,
89:21, 90:20,
102:9, 104:6,
104:8, 108:8
**differing**
50:22, 50:25,
85:19
**differs**
62:15
**digital**
99:16, 99:18
**dimension**
90:13
**dimensions**
90:10
**diminishes**
11:20
**direct**
3:8, 51:20,
79:10, 134:23
**directed**
127:10, 135:16
**direction**
11:1, 11:3,
67:9, 67:15,
83:19, 90:11
**disagree**
56:15, 56:24,
57:4, 57:7,
57:14, 57:25,
58:16, 59:10,
60:8, 60:20,
61:8, 131:12
**disagreement**
18:7
**disclose**
26:22
**disclosure**
81:17, 92:24
**disclosures**
22:16, 22:17,
23:25, 26:16,
26:22, 82:25,
129:11
**discovery**
125:13

**discuss**
66:6, 68:5,
68:9
**discussed**
51:21, 56:7,
58:20, 73:2,
73:12, 79:24
**discussing**
23:10, 135:5
**discussion**
68:4, 71:11,
80:2
**discussions**
105:19
**disposition**
139:20
**dispute**
125:15, 126:16,
131:19, 131:20,
132:7
**disputed**
38:21
**disputes**
129:13, 130:2
**disputing**
127:25
**dissertation**
19:6
**dissimilar**
12:5
**distance**
10:22, 11:23,
12:6, 12:8
**distant**
11:23
**distinct**
85:14, 98:10,
100:20
**distinction**
48:2
**distincts**
48:2
**distinguish**
63:1
**distributed**
41:22, 41:25,
42:2, 42:6,
42:14

**district**
1:1, 1:2, 5:5,
5:6
**diversity**
74:8
**division**
1:3, 5:7, 10:19
**document**
9:16, 51:19,
60:10, 60:11
**documents**
12:17, 13:11,
15:7, 22:12,
22:18, 23:22
**doing**
7:12, 19:18,
21:20, 29:6,
53:25, 70:14,
94:25, 101:16,
104:9
**domain**
99:15, 99:16,
99:18
**dominant**
16:9
**done**
16:14, 27:6,
52:16, 62:12,
62:23, 62:24,
87:16, 100:4
**doubt**
64:2
**down**
10:15, 10:16,
10:18, 21:1
**downing**
3:8, 4:5, 5:18,
7:12, 7:16, 8:6,
10:8, 16:19,
25:6, 25:18,
26:2, 26:15,
27:2, 27:17,
28:21, 30:1,
30:14, 30:22,
31:24, 33:3,
33:24, 34:10,
34:21, 36:7,
38:1, 38:9,

38:22, 39:14,
40:6, 41:4,
42:24, 43:5,
43:10, 43:24,
52:13, 52:16,
57:18, 63:10,
64:7, 76:11,
78:17, 92:25,
93:12, 93:24,
95:12, 96:5,
96:13, 96:24,
97:8, 98:16,
99:1, 99:9,
100:3, 100:8,
100:22, 102:17,
102:24, 103:13,
104:4, 107:20,
108:4, 109:25,
110:11, 110:17,
111:1, 112:13,
112:25, 113:7,
114:2, 114:21,
115:7, 115:12,
117:1, 117:9,
121:8, 122:4,
123:15, 124:18,
125:19, 125:24,
126:9, 126:13,
126:16, 126:25,
127:3, 129:1,
129:6, 129:21,
130:5, 130:16,
130:20, 131:23,
132:11, 133:23,
134:3, 134:6,
134:24, 134:25,
136:25
**downlink**
10:24, 11:2,
21:23, 111:17,
111:19, 112:5,
112:11, 112:23,
114:7, 114:18,
115:10, 116:15,
116:24, 117:20,
119:1, 119:6,
119:8, 119:11,
119:13, 120:17,

120:18, 123:6,
123:7, 124:6,
128:18, 128:22,
133:8, 133:17
**downloading**
49:6
**downloads**
45:8
**dr**
5:3, 6:7, 8:9,
20:25, 22:5,
23:16, 23:20,
41:11, 43:20,
45:5, 71:25,
72:2, 99:22,
100:5, 105:25,
106:7, 123:19,
123:24, 128:15,
128:17, 128:25,
129:18, 130:14,
132:3, 132:22,
133:15, 134:14,
134:19, 134:25,
135:11, 137:1,
137:4
**draft**
14:22
**drafted**
15:3
**drafting**
15:8
**draw**
96:17, 106:25
**driving**
39:3
**drone-based**
19:19
**du**
20:16, 20:21,
21:4
**duly**
6:3, 139:7,
139:10
**duplex**
10:19
**during**
75:20, 76:16,
87:24

**E**

**e**
88:1

**each**
11:18, 73:23,
80:17, 80:25,
85:5, 86:15,
86:16, 86:21,
89:11, 98:9,
98:23, 99:12,
100:20, 101:21,
101:22, 102:8,
103:5

**earlier**
13:18, 19:25,
20:5, 33:16,
36:21, 81:6,
89:2, 133:12,
134:17, 135:4,
135:18

**eastern**
1:2, 5:6

**easy**
72:6

**eat**
79:1

**eating**
120:22

**ece**
2:6

**effect**
8:14

**efficiently**
108:24

**effort**
14:11, 63:16,
78:9

**either**
13:8, 26:23,
67:17, 79:22,
81:9, 101:14,
102:7, 139:17

**elaborate**
89:7

**electrical**
41:19

**electronic**
6:19, 6:25

**element**
71:22, 72:13,
79:20, 90:16,
106:12, 116:23

**elements**
25:21, 90:1

**else**
6:14, 27:1,
29:5, 73:3,
82:7, 82:10,
89:25, 100:7,
105:6, 122:3,
122:16

**embodiment**
46:9, 46:21,
59:9, 79:24,
91:6

**embodiments**
45:25, 47:14,
52:24, 57:6,
58:19, 59:8,
61:20, 62:18,
74:7, 80:10,
81:16, 91:24,
108:8

**employed**
68:21

**encompass**
44:12, 75:11

**end**
41:17, 56:19,
87:16, 132:22,
137:4

**ending**
105:14

**engaged**
9:8

**engagement**
9:14, 13:14,
13:15

**engineering**
2:5, 41:19

**english**
110:20

**enough**
9:17, 10:22,
57:25, 86:18

**entirety**
8:2

**entity**
111:18, 113:4

**environment**
90:25

**equity**
18:14

**escapes**
103:1

**escaping**
26:18

**especially**
10:13

**esq**
4:5, 4:15

**essence**
112:16

**essentially**
90:10

**establish**
122:14

**estimate**
12:18, 13:2,
13:9, 14:16,
14:17, 14:19,
14:21

**et**
5:4

**euphoria**
86:6

**even**
16:13, 16:15,
25:21, 100:25,
101:9, 104:7,
109:5, 109:18,
118:17

**event**
139:18

**eventually**
70:21

**ever**
31:21, 33:22,
34:7, 34:17,
36:3, 36:11,
36:23, 37:18,
38:7

**every**
9:2, 68:22

**everybody**
29:5, 86:7

**everybody's**
86:6

**everyone**
133:4

**evidence**
22:17, 23:24,
27:11, 27:13,
27:16, 28:15,
28:18, 28:20,
29:25, 30:13,
30:17, 30:19,
30:21, 31:9,
31:22, 32:8,
33:1, 33:17,
33:22, 34:8,
34:19, 35:2,
35:11, 35:17,
36:4, 36:12,
36:24, 37:11,
37:12, 37:19,
38:7, 39:8,
39:12, 40:4,
40:8, 40:9,
40:13, 40:22,
49:11, 49:22,
49:23, 50:8,
50:11, 66:13,
66:18, 75:18

**exact**
9:14, 65:5,
65:10, 112:17

**exactly**
14:5, 62:14,
63:4

**examination**
3:8, 134:23

**examined**
6:4

**example**
16:16, 20:21,
21:4, 28:9,
31:1, 31:2,
68:21, 69:2,
71:21, 72:12,
83:23, 85:22,
112:12, 112:23,
126:1

**exchange**
128:17

**exchanged**
131:11
**excuse**
33:21, 39:7,
53:10, 62:7,
95:14, 104:24,
128:15
**execution**
94:21, 136:23
**exhibit**
3:14, 3:16,
3:19, 3:23,
3:29, 3:33, 7:5,
7:6, 17:15,
17:17, 44:25,
45:1, 51:8,
51:11, 56:7,
56:21, 58:6,
58:8, 59:13,
59:17, 102:13,
103:20
**exhibits**
7:13
**existed**
25:10, 26:8,
28:10, 29:8,
29:18
**existing**
113:22
**expect**
118:18
**experience**
41:21, 41:25
**expert**
17:5, 26:10,
26:14, 57:9,
110:20
**expert's**
127:11, 128:2,
128:3
**expires**
140:10, 140:12
**explain**
11:7, 13:15,
41:23, 52:11,
78:3, 79:18,
89:1
**explained**
83:17

**explanation**
67:24, 103:11
**extent**
63:15, 114:3,
116:4, 125:20,
125:21
**external**
37:11
**extremely**
21:24, 28:4,
28:7
**extrinsic**
22:16, 23:24,
27:11, 28:20,
30:4, 30:20,
31:8, 31:22,
32:7, 32:23,
32:25, 34:8,
34:18, 35:1,
35:11, 35:17,
36:4, 36:12,
36:24, 37:12,
37:18, 38:7,
40:13, 40:20,
50:3

**F**

**familiarize**
105:12
**families**
103:7
**family**
49:14
**far**
8:25, 10:22,
12:6
**farthest**
14:12
**fashions**
59:5
**fast**
72:3, 72:6
**february**
3:15, 7:7, 7:25
**federal**
2:14
**feedback**
19:6, 19:15,

19:22, 21:17,
28:9, 28:12,
67:9, 91:2,
113:15
**feel**
16:13, 36:20,
89:7, 122:20,
122:21
**few**
70:6, 132:24
**fields**
122:11
**figure**
46:1, 46:2,
46:4, 46:9,
46:13, 46:14,
46:23, 46:24,
52:18, 52:22,
55:11, 62:19,
68:18, 68:20,
68:25, 70:18,
70:23, 71:10,
71:11, 71:12,
72:25, 79:24,
80:1, 80:2,
80:22, 81:7,
83:6, 83:7,
86:4, 86:24,
91:10, 91:15,
93:13, 93:14,
93:15, 95:24,
96:8, 96:22,
102:12, 102:16,
108:9, 108:11,
108:22, 132:15,
135:23
**figures**
47:9, 47:21,
62:18, 65:21,
65:23, 71:15,
72:25, 73:1,
73:8, 73:11,
74:18
**file**
62:13
**filed**
24:9
**filing**
60:18

**filings**
24:4, 24:7
**finalize**
7:24
**finally**
92:7
**find**
30:12, 47:20,
88:4, 105:8,
105:18
**fine**
49:9
**finish**
9:3, 100:9,
126:13, 126:20
**finished**
100:10
**firm**
139:19
**first**
6:3, 22:23,
51:19, 56:6,
56:21, 61:8,
61:25, 76:18,
76:20, 77:4,
77:14, 84:25,
88:5, 93:1,
93:4, 95:18,
100:25, 102:19,
108:11, 108:25,
113:12, 139:10
**fit**
94:7
**five**
20:8
**fly**
65:3
**focus**
16:2, 16:7,
19:5, 125:2,
125:11, 127:24,
131:9, 131:14,
132:16
**focused**
16:4, 16:5,
16:12, 127:16,
128:6, 129:23,
131:24

focusing
130:1
follow
8:17
follows
6:4
foregoing
138:2
forge
106:5
form
8:6, 10:8,
16:19, 21:17,
25:6, 25:18,
26:2, 26:15,
27:2, 27:17,
28:21, 30:1,
30:14, 30:22,
31:24, 33:3,
33:24, 34:21,
36:8, 38:3,
38:9, 38:22,
39:14, 42:9,
42:24, 42:25,
43:16, 43:24,
52:13, 57:19,
63:10, 64:7,
92:25, 93:12,
93:24, 95:12,
96:5, 96:13,
96:24, 97:8,
98:16, 99:1,
100:22, 102:17,
102:24, 103:13,
104:4, 107:20,
109:25, 110:11,
110:17, 111:1,
112:13, 112:25,
113:7, 114:2,
114:21, 115:7,
115:12, 117:1,
117:9, 121:8,
123:15, 124:18,
126:4, 126:24
forms
20:19
four
20:8

fractionalization
68:5
fractionation
46:5, 46:25,
55:11, 67:7,
68:21, 68:25,
69:1, 69:2,
69:4, 69:5,
69:7, 70:11,
70:24, 81:10,
108:18
fractionization
52:18
frame
28:25, 29:23,
44:10, 44:16,
46:20, 46:22,
46:25, 47:5,
55:6, 58:25,
60:25, 61:14,
61:15, 62:21,
67:19, 68:22,
69:3, 69:5,
69:6, 69:8,
69:15, 70:15,
71:2, 71:3,
71:4, 71:6,
71:23, 72:14,
72:17, 75:9,
75:20, 79:23,
80:3, 81:11,
86:15, 91:9,
112:11, 112:23,
114:7, 114:18,
115:10, 116:15,
116:24, 117:21,
119:1, 119:6,
119:8, 119:11,
119:13, 120:17,
120:18, 123:6,
123:7, 124:6,
128:18, 128:22,
133:8, 133:18
frames
46:15, 52:20,
52:21, 58:21,
67:18, 79:22,
86:14, 86:19,

108:17, 109:2,
111:17
framing
119:16, 120:8,
121:5, 121:19,
122:6
francisco
4:9
free
36:20, 89:7
free-for-all
125:5
frequency
10:15, 10:16,
10:18, 10:19,
70:3
front
130:2
full
29:10, 31:9
fully
31:7
function
99:25, 100:15,
136:3, 136:7,
136:8
functionality
55:14, 97:24,
103:11, 136:17
functions
98:11, 98:25,
99:4, 99:5,
100:21, 102:9
fundamental
44:1, 46:3,
52:25, 59:3,
59:4, 78:7,
88:15, 88:20,
88:21, 90:15
further
86:4, 109:1,
139:16
future
125:7, 125:8,
130:8

---
G
---

geared
15:24, 15:25,

16:15, 127:18
general
44:21, 74:4,
80:6, 95:1,
121:23
general-purpose
94:4, 94:12
getting
12:12, 124:19
given
8:14, 47:5,
71:4, 75:3,
89:11, 95:20,
97:25, 117:24,
118:3, 119:5
giving
8:15, 127:11
global
27:22
go
18:5, 18:12,
28:19, 28:24,
30:20, 31:14,
32:25, 34:8,
34:18, 42:17,
44:4, 45:15,
47:23, 47:25,
48:22, 51:18,
52:14, 59:2,
60:1, 66:3,
72:6, 74:21,
86:18, 91:3,
98:4, 103:5,
117:11, 126:11,
127:9, 129:2,
129:12, 129:13,
133:21, 133:25,
134:2
goal
119:23
goes
75:24, 127:6
going
7:4, 8:11,
8:20, 15:14,
17:14, 22:10,
24:16, 30:25,
31:21, 33:16,

38:2, 41:1, 41:2, 41:5, 41:8, 44:24, 51:8, 52:3, 59:12, 64:3, 70:22, 72:9, 74:5, 78:18, 78:22, 79:2, 79:10, 81:14, 85:18, 86:4, 86:11, 86:12, 87:1, 87:17, 91:4, 92:8, 94:18, 98:4, 101:10, 103:18, 106:2, 106:4, 106:8, 108:11, 111:12, 111:22, 113:10, 113:11, 113:14, 113:16, 115:14, 115:15, 115:23, 116:1, 116:6, 116:9, 117:13, 119:14, 119:21, 119:22, 120:25, 126:17, 127:4, 127:21, 128:10, 129:16, 130:17, 131:9, 131:13, 131:14, 131:19, 132:2, 132:5, 134:8, 134:11

**gone**
83:12, 130:24

**good**
6:7, 6:8, 9:5, 9:17, 14:17, 51:16, 53:25, 76:12, 76:13, 78:15, 85:15, 85:17, 85:24

**google**
18:23

**gotcha**
60:14

**grammar**
96:6

**great**
92:18

**greater**
12:3, 70:11

**greatest**
14:11

**ground**
8:12, 15:2

**group**
74:12, 74:13, 112:5

**groups**
71:5

**grows**
108:10

**guess**
28:16, 28:23, 33:13, 39:19, 42:1, 47:24, 77:10, 83:14, 83:18, 83:23, 84:24, 89:9, 96:6, 97:9, 102:25, 110:1, 110:18, 120:4

**guide**
38:20

**guys**
127:14

**H**

**half-duplex**
70:10

**hand**
29:5, 132:13, 140:2

**handheld**
94:2, 97:13

**handshaking**
21:23

**hanging**
26:5

**happen**
74:7, 86:11, 86:25, 94:14, 95:3, 104:5, 115:14, 116:1

**happening**
107:14

**happy**
8:25, 9:4, 94:9

**hard**
38:25, 40:19, 65:2, 100:23

**head**
17:10, 18:19, 23:3, 49:8

**header**
15:4

**heading**
122:3

**hear**
56:19, 109:12, 134:19

**heard**
36:1, 36:6

**heart**
83:23

**held**
2:2

**help**
28:14, 31:14, 42:4, 51:7, 53:8, 53:11

**helpful**
10:14, 22:4, 42:12

**here**
5:1, 6:20, 22:12, 30:10, 42:20, 43:8, 50:6, 53:8, 53:11, 54:1, 59:3, 60:24, 67:10, 84:17, 87:3, 95:16, 105:13, 110:4, 118:24, 127:4

**here's**
43:19

**hereby**
138:1, 139:9

**herein**
6:2

**hereinafter**
6:3

**hereunto**
140:1

**high**
26:6

**highlight**
19:1

**historical**
27:5

**history**
22:15, 23:13, 31:3, 31:20, 33:10, 40:16, 50:6

**hold**
10:22, 36:7, 38:1, 57:18, 71:17, 100:3, 126:9

**holds**
108:11

**homework**
38:14

**honestly**
117:25

**hope**
78:25, 127:14, 132:15

**horse**
118:24

**hour**
9:2, 41:2, 106:5

**hours**
12:17, 12:19, 12:20, 12:23, 13:1, 14:16, 14:19, 15:8

**however**
68:23, 95:8

**huang**
20:21, 21:4

**huawei**
18:15, 18:16, 18:21

**hypothetical**
24:22, 31:25, 33:4, 33:14, 33:25, 34:22, 34:23, 35:5, 35:6, 35:7,

35:8, 37:1,
37:16, 38:10,
38:23, 39:15,
125:5

**I**

**idea**
12:25, 90:8
**ideas**
26:23
**identical**
65:25
**identification**
7:8, 17:19,
45:3, 51:15,
58:11, 59:21
**identified**
48:24, 64:4
**identify**
82:8, 82:11,
104:17
**ieee**
19:11
**ii**
1:6, 4:4, 59:24
**illustrates**
68:20, 69:1
**immediately**
59:2
**impact**
19:23
**implemented**
49:16, 50:15,
52:8, 53:13,
54:8, 54:19
**importance**
35:19, 35:21,
35:23, 36:6
**important**
29:14, 32:4,
35:24, 69:18
**inc**
1:10, 4:14
**include**
48:10, 48:13,
48:15, 64:24,
68:11, 77:6,
91:23, 93:5,

95:25, 96:15,
97:17, 97:19,
103:16, 110:19,
111:4, 112:11,
112:23, 114:18,
116:15, 116:25,
117:13, 117:21,
119:1, 119:6,
120:19, 123:7,
124:7, 128:19,
128:22, 133:9,
133:14
**included**
23:23
**includes**
13:24, 14:7,
52:19, 64:12,
111:7, 115:3,
118:4
**including**
12:16, 13:10,
13:22, 48:25,
49:25, 87:23
**incomplete**
31:25, 33:4,
33:25, 34:22,
38:10, 38:23,
39:15, 88:8
**incorporated**
5:5
**increase**
11:17
**indefinite**
39:6, 39:17,
39:23, 39:24,
120:9
**indefiniteness**
39:13, 40:5
**independently**
105:23
**indicates**
47:21
**indication**
20:23, 21:8
**indicator**
39:2, 39:3
**industry**
27:22, 29:6,

41:21
**inform**
39:22, 73:13,
73:15, 73:17,
81:18
**information**
10:11, 15:5,
27:24, 45:19,
56:11, 67:3,
67:9, 70:17,
76:22, 76:25,
77:19, 84:12,
86:1, 98:12,
98:15, 99:7,
99:8, 104:1,
104:3, 104:12,
104:15, 112:4,
113:10, 114:23,
115:4, 115:11,
116:20, 117:23,
118:12, 118:13,
118:16, 118:20,
119:21, 120:2,
120:23, 122:11,
122:16, 124:14,
128:19, 128:23,
133:14
**informed**
74:17
**informing**
83:1
**informs**
39:8
**infringe**
110:2
**infringement**
124:25, 125:7,
125:8, 127:12,
129:15
**inherent**
40:23, 40:24
**inherently**
80:9
**initial**
12:16
**innovations**
18:9
**instance**
64:23, 64:25,

110:3
**instances**
67:13, 104:6,
105:23
**institution**
51:9, 56:23
**insufficient**
27:14, 27:16,
28:16, 28:19,
29:25, 30:13,
30:17, 33:18,
33:22
**intellectual**
1:5, 1:6, 4:2,
4:3, 5:3, 5:19,
9:8, 59:23
**interested**
28:17, 139:18,
139:20
**interface**
71:21, 72:12,
104:22, 105:1
**interpret**
31:11, 33:11,
37:14, 39:2,
48:5, 51:22,
56:8, 103:4,
105:21
**interpreted**
38:16
**interpreting**
27:12, 30:5,
37:8
**intervals**
44:20, 45:14,
55:20, 59:5,
64:19, 64:20,
64:24, 66:7,
68:7, 77:13
**intrinsic**
27:13, 27:15,
28:15, 28:17,
29:25, 30:13,
30:17, 30:19,
33:17, 33:21,
39:8, 39:12,
40:3, 40:8,
40:9, 40:13,

40:16, 40:20,
40:22, 49:11,
49:22, 49:23,
50:1, 50:3,
50:6, 50:7,
50:11, 66:13,
66:17, 75:18,
79:7
**intrinsically**
27:21
**introduce**
7:4, 17:14,
44:24, 51:8,
58:5, 59:12
**inventing**
28:5
**invention**
24:24, 32:5,
39:9, 39:10,
107:19, 108:3,
108:7, 108:13,
108:22, 109:24,
110:7, 123:13,
123:17, 123:21
**inventor**
26:17, 26:23,
34:12
**inventors**
26:24
**involved**
17:9, 19:22
**involvement**
10:4
**involving**
9:23, 49:13
**iphone**
94:16
**ipr**
3:25, 3:34,
24:1, 24:5,
48:25, 49:5,
51:9, 51:13,
59:15, 59:18
**isolation**
108:6
**issue**
60:24, 63:17,
96:7, 125:19,

125:24, 127:8,
127:16, 127:18,
127:19, 127:20,
129:16, 132:5,
136:14
**issues**
26:8, 124:20,
124:25, 127:7,
127:12, 127:24,
128:7, 129:22,
130:2, 130:7,
131:3, 131:6,
131:11, 131:16,
131:25, 132:16
**itc**
18:8
**itself**
27:13, 29:11,
40:18, 99:19,
108:5, 108:21,
135:16
**iv**
9:9, 9:18,
9:23, 60:18,
60:21, 61:9

### J

**jdowning@kasowitz**
4:11
**jesse**
4:23, 5:10
**job**
1:24, 53:25
**john**
4:5, 5:18,
52:15, 134:25
**join**
108:13
**joined**
110:3
**joint**
129:10
**joseph**
1:16, 2:1, 3:6,
3:14, 3:16, 4:4,
5:3, 6:1, 6:11,
7:7, 17:17,
137:4, 138:1,

139:10
**journal**
19:9
**jump**
18:2
**jumping**
39:18
**june**
3:20, 19:13,
45:2, 140:12
**junkins**
2:6
**jurisdiction**
128:1

### K

**kasowitz**
4:6, 5:18,
135:1
**keep**
61:13, 106:8,
132:11, 132:12
**kenneth**
4:15, 5:16,
124:19
**kind**
17:11, 19:17,
50:1, 63:15,
65:3, 70:16,
71:10, 74:11,
85:13, 90:15,
94:19, 95:2,
101:2, 117:12,
124:19
**kinds**
26:12
**knew**
29:2, 29:4
**know**
7:10, 7:20,
12:13, 14:6,
16:7, 17:21,
18:2, 18:10,
18:23, 20:8,
20:9, 20:14,
21:15, 27:23,
28:5, 28:7,
29:2, 29:6,

32:2, 32:4,
36:20, 38:12,
41:14, 47:24,
50:2, 58:13,
60:1, 62:12,
62:15, 63:2,
63:18, 64:2,
65:10, 65:21,
65:23, 71:14,
74:3, 76:7,
79:23, 81:2,
81:6, 83:24,
86:24, 88:3,
88:16, 88:23,
90:13, 90:16,
92:13, 94:10,
99:25, 100:14,
105:11, 105:14,
105:20, 106:4,
108:11, 117:2,
118:9, 118:18,
120:21, 120:22,
121:20, 121:21,
122:8, 122:16,
122:25, 123:2,
125:5, 126:22,
126:24, 127:5,
127:7, 127:25,
129:24, 132:13,
132:14, 135:5,
135:9
**knowledge**
26:20, 29:23,
32:8, 33:19
**known**
24:23, 29:12,
31:6, 31:11,
32:22, 33:8,
35:12, 43:4,
43:23
**kscott@mckoolsmi-**
**th**
4:21

### L

**lack**
33:22, 34:24,
35:1, 35:6,

35:8, 35:14
**language**
48:4, 81:4,
83:21, 85:7,
102:25, 110:4,
111:3, 121:24,
135:19, 135:22
**languages**
85:5
**laptop**
6:21, 94:2,
97:12
**large**
97:10
**last**
34:1, 36:9,
38:2, 46:16,
79:5, 116:18,
122:8
**later**
69:10, 131:19,
131:20
**lawful**
6:2
**lay**
45:15
**lead**
70:23, 81:15,
94:20
**leader**
95:2
**leading**
94:19, 101:11
**lean**
32:15
**leap**
39:20
**least**
9:13, 18:20,
44:20, 45:13,
72:17, 72:18
**leave**
106:6
**led**
22:22, 22:25
**left**
108:17
**legal**
24:18

**lenovo**
18:7
**less**
12:20, 37:7,
37:10
**let's**
9:6, 15:12,
38:18, 41:13,
42:17, 44:4,
48:22, 53:25,
66:3, 74:21,
82:1, 91:3,
106:1, 106:11
**level**
26:6, 35:19,
37:3, 37:4,
37:13, 85:19,
108:14
**levels**
37:2
**light**
31:18, 33:8,
39:8, 115:11,
117:22
**likelihood**
11:18
**likely**
40:17, 94:17,
102:10
**limit**
85:10
**limitation**
81:13, 120:11,
120:13, 121:5,
122:2, 124:3,
128:17, 129:1,
133:5
**limitations**
89:5
**limited**
125:17, 126:4,
131:3
**limiting**
95:8, 130:13
**line**
9:3, 39:18,
39:21, 75:22,
96:18, 102:19

**lines**
81:19, 88:5,
91:5, 106:25,
109:6, 109:19
**linux**
62:25
**list**
22:12, 22:14,
22:18
**listed**
23:13, 23:17,
59:24
**listen**
86:8
**listening**
133:4
**litigated**
53:17
**litigation**
16:14, 16:24,
17:6, 17:16,
52:2
**little**
14:4, 26:5,
72:10, 79:3,
101:3, 118:2,
120:3
**llc**
1:5, 1:7, 4:3,
4:4, 5:4, 59:24
**llp**
4:6
**local**
126:3
**lodged**
132:20
**long**
9:2, 14:20,
39:6, 91:1
**longer**
10:22, 45:9,
61:3
**look**
7:19, 12:22,
14:5, 17:11,
17:23, 18:17,
27:4, 31:8,
32:18, 35:10,

36:12, 56:5,
58:4, 84:22,
96:16, 96:22,
111:22
**looked**
14:5, 22:22,
23:22, 26:16,
26:21
**looking**
15:14, 22:11,
30:18, 35:1,
49:5, 73:17
**looks**
7:20, 124:19
**lost**
21:5
**lot**
15:22, 19:3,
19:10, 20:7,
20:11, 20:16,
21:10, 87:1,
118:4
**low**
14:4
**low-end**
101:17
**lte**
17:1
**luncheon**
78:20
**lyle**
2:5

**M**

**madam**
109:13
**made**
10:12, 24:10,
60:21, 114:24
**mainframe**
94:3, 97:13
**major**
21:21
**make**
20:18, 25:16,
29:9, 29:11,
30:16, 34:5,
34:12, 63:22,

| | | | |
|---|---|---|---|
| 66:15, 83:22, 84:7, 84:9, 85:14, 89:14, 107:22, 122:23 | 31:13, 87:10, 89:9, 101:12, 111:22, 115:17, 117:11, 129:24 | 19:22, 28:9, 28:12, 31:5 | **mine** 20:16 |

**makes**
108:22

**making**
35:7, 88:23, 132:12

**managing**
70:16

**manner**
53:1, 139:17

**many**
66:25, 85:10, 85:16, 87:15, 90:3, 90:14, 90:20, 93:2

**mapping**
83:10, 117:10

**maps**
84:5

**march**
1:20, 5:8, 140:3

**marked**
3:12, 7:7, 17:18, 45:2, 51:14, 58:10, 59:20

**marker**
27:6

**market**
27:5, 27:7

**marks**
137:3

**massive**
70:2

**materials**
23:2, 23:8

**math**
90:9

**matter**
5:3, 7:22, 8:4, 22:13, 62:16, 139:21

**maybe**
16:15, 25:21,

**mckool**
4:16, 5:16

**mean**
11:7, 23:5, 24:6, 32:1, 51:6, 51:22, 53:5, 53:20, 56:8, 56:16, 56:25, 57:3, 58:17, 64:12, 69:21, 82:3, 88:13, 89:1, 90:3, 96:14, 100:23, 113:9, 119:24, 120:20, 123:4, 123:14

**meaning**
11:14, 38:20, 44:19, 50:12, 51:2, 53:24, 75:4, 75:14, 75:16, 75:23, 76:1, 76:4, 76:22, 94:8, 94:12

**means**
61:6, 69:24, 70:10, 70:12, 74:1, 136:1, 136:7, 136:21

**meant**
78:13, 87:12

**measure**
11:14, 20:4, 20:17

**measurement**
12:1

**measurements**
11:19

**mechanism**
10:25, 19:15, 29:16, 55:9

**mechanisms**
19:6, 19:21,

**media**
5:1

**mention**
40:18, 55:17, 55:18

**mentioned**
11:6, 19:25, 22:7, 33:18, 40:21, 47:11, 49:4, 50:1, 50:4, 71:14

**mentions**
23:16, 40:17

**merely**
55:14

**method**
106:14, 106:17, 106:18, 135:5, 135:9, 135:12, 135:13

**methodist**
2:4

**microprocessors**
94:10

**middle**
47:20, 55:2, 87:22, 124:2

**midsummer**
9:12

**might**
11:16, 14:4, 29:3, 29:10, 31:1, 32:11, 32:14, 34:24, 35:2, 37:10, 46:6, 51:7, 80:13, 85:22, 85:24, 101:1, 101:7, 101:19, 101:20, 116:3

**mimo**
70:2, 90:5, 90:16

**mind**
20:6, 23:7, 63:6, 90:4

**minutes**
79:1

**mischaracterizes**
36:9, 42:9

**misinterprets**
36:8

**missed**
123:19

**mixture**
117:16

**mm-hmm**
54:25, 65:19, 66:9, 92:21, 100:6, 107:6, 119:4, 123:25

**mobile**
19:15

**moment**
7:19

**monitor**
5:9, 137:5

**more**
11:7, 12:19, 15:24, 15:25, 16:5, 16:11, 16:15, 18:14, 22:1, 28:16, 37:8, 41:21, 46:19, 47:2, 57:21, 58:24, 60:10, 67:5, 69:13, 69:14, 70:12, 70:20, 74:4, 75:25, 80:6, 81:8, 83:7, 83:12, 90:4, 93:5, 93:16, 94:7, 94:9, 94:24, 95:25, 96:15, 97:1, 97:3, 97:17, 97:20, 102:20, 103:16, 108:16, 110:22, 120:3, 120:11, 121:16, 121:24,

132:24, 136:25
**morning**
6:7, 6:8
**most**
16:9, 40:17,
63:15, 94:16,
102:10, 108:23
**move**
24:16, 38:18,
41:13, 92:8,
103:18, 106:1
**moving**
27:10, 105:9
**much**
12:13, 13:13,
13:21, 66:10,
105:13, 121:1,
135:2
**multi-frame**
72:18
**multicore**
100:24, 101:1,
101:2, 101:4,
102:1, 102:11
**multiple**
40:21, 42:3,
42:7, 42:14,
46:7, 46:15,
46:22, 47:4,
52:19, 52:20,
52:21, 52:24,
55:10, 55:17,
58:2, 58:20,
60:25, 61:13,
61:15, 62:21,
67:7, 67:17,
67:18, 68:11,
68:15, 70:15,
71:2, 71:4,
71:5, 79:22,
80:4, 80:9,
80:10, 80:14,
80:19, 80:24,
81:11, 82:15,
83:5, 84:3,
84:11, 84:13,
84:20, 85:9,
85:23, 86:14,

87:5, 91:14,
91:24, 92:22,
93:11, 94:15,
94:17, 94:18,
95:3, 95:10,
95:17, 95:23,
96:3, 96:9,
96:11, 96:17,
97:6, 97:11,
97:22, 98:9,
98:23, 100:19,
101:6, 101:19,
101:20, 101:21,
102:2, 102:8,
102:23, 103:2,
104:19, 105:3,
105:7, 105:19,
105:22, 105:23,
107:11, 108:19,
109:2, 109:3
**multiprocessor**
101:10
**must**
31:16, 110:7,
110:14
**myself**
109:16, 112:19,
129:5

**N**

**name**
6:9, 9:21,
19:8, 26:12
**names**
21:5, 24:12
**near**
79:12, 87:20,
120:6, 124:1
**nearing**
132:22
**necessary**
32:9
**need**
9:1, 10:10,
30:17, 32:12,
32:15, 32:18,
32:20, 37:11,
43:7, 56:5,

57:20, 66:10,
67:5, 69:24,
80:17, 80:20,
83:7, 85:12,
99:17, 105:13,
107:16, 108:1,
108:15, 108:17,
122:14, 132:8
**needed**
83:13
**needs**
111:3, 119:20,
131:24
**negatives**
20:1
**negotiate**
94:20
**negotiating**
112:1
**negotiation**
112:8
**network**
120:23
**networking**
41:21, 42:1
**networks**
15:16, 15:20,
16:8
**next**
11:12, 11:15,
18:13, 24:16,
39:18, 49:10,
70:13, 92:9,
103:19, 106:1,
106:5, 115:17
**nine**
66:9
**nobody**
6:16
**nokia**
18:15
**nonresponsive**
34:15
**normal**
72:16
**nos**
23:15
**notary**
139:6, 140:9

**note**
129:7
**notebook**
94:2, 97:12
**noted**
131:18, 132:10
**nothing**
79:5, 79:6,
139:11
**notice**
2:13
**notion**
11:9, 11:20
**number**
5:2, 5:7,
11:17, 13:3,
13:24, 15:6,
67:14, 74:2,
87:2, 89:4,
89:17, 90:24,
122:9, 122:11,
127:10

**O**

**oath**
8:13, 8:18
**object**
34:14, 38:2,
38:3, 104:4,
125:21, 127:4
**objection**
8:6, 10:8,
16:19, 25:6,
25:18, 26:2,
26:15, 27:2,
27:17, 28:21,
30:1, 30:14,
30:22, 31:24,
33:3, 33:24,
34:21, 36:7,
38:9, 38:22,
39:14, 40:6,
42:24, 43:24,
52:13, 57:19,
63:10, 92:25,
93:12, 93:24,
95:12, 96:5,
96:24, 97:8,

98:16, 99:1, 99:9, 100:22, 102:17, 102:24, 103:13, 107:20, 108:4, 109:25, 110:11, 110:17, 111:1, 112:13, 113:7, 114:2, 114:21, 115:7, 115:12, 117:1, 117:9, 122:4, 123:15, 124:18, 125:9, 126:4, 126:5, 126:6, 126:12, 126:21, 126:23, 126:24, 127:1, 127:22, 131:18, 132:10, 132:20

**objections**
34:10, 126:3

**observed**
65:4

**obvious**
29:19

**obviously**
132:13

**occurs**
69:3, 69:4, 69:6, 69:8

**offered**
67:25

**office**
6:13, 140:2

**offices**
2:2

**oh**
21:2, 36:6, 56:5, 60:13, 72:1, 98:17, 123:20

**ohio**
139:1, 139:6, 140:2, 140:9

**ok**
9:24

**ones**
83:17

**only**
39:12, 40:3, 40:7, 42:14, 47:12, 47:16, 80:5, 81:24, 96:22, 102:15, 103:14, 128:4, 130:22, 136:15

**open**
7:10

**operate**
102:2, 120:24, 121:24

**operated**
70:10

**operates**
99:16

**operating**
10:14, 102:10, 105:23

**operation**
27:4

**opine**
14:15

**opinion**
44:7, 44:14, 44:17, 66:13, 78:10, 80:16, 80:20, 84:19, 88:14, 89:3, 91:12, 91:17, 91:20, 92:4, 92:6, 98:7, 98:22, 100:19, 102:6, 103:22, 107:15, 109:23

**opinions**
8:3, 50:22, 50:25, 127:11

**opportunities**
87:25

**options**
111:23

**order**
20:24, 21:14

**ordinary**
24:21, 25:11, 28:2, 29:1,

31:17, 32:3, 32:13, 32:16, 32:19, 32:21, 33:7, 35:3, 35:9, 35:11, 37:6, 37:13, 37:22, 37:24, 44:18, 51:2, 53:24, 66:23, 69:20, 71:8, 75:4, 75:14, 75:16, 75:23, 76:1, 76:4, 76:6, 81:12, 83:2, 83:9, 89:10, 94:8, 119:25

**orthogonal**
90:6

**orthogonality**
69:24, 70:1, 85:13, 90:9

**other**
9:20, 10:18, 11:18, 11:25, 12:2, 12:5, 12:7, 13:20, 20:13, 23:2, 23:4, 23:5, 23:8, 23:9, 23:12, 26:12, 26:24, 27:21, 28:6, 29:17, 32:21, 45:7, 47:25, 53:17, 53:19, 53:21, 53:23, 64:13, 64:25, 69:19, 73:16, 80:17, 80:25, 81:15, 81:22, 82:22, 83:15, 83:19, 85:5, 86:21, 94:4, 97:14, 101:13, 107:16, 108:1, 108:12, 108:17, 109:24, 110:3, 110:7,

110:10, 110:13, 110:14, 116:14, 116:24, 117:14, 118:25, 120:18, 121:10, 122:15, 123:6, 127:10, 133:7

**others**
20:20, 118:19

**otherwise**
8:22

**ourselves**
95:8

**out**
18:2, 19:13, 19:18, 27:20, 27:25, 30:12, 35:4, 45:15, 51:7, 67:4, 67:16, 69:19, 69:22, 70:8, 70:22, 81:14, 84:5, 86:12, 87:2, 94:21, 94:24, 95:2, 95:4, 95:16, 95:20, 103:7, 103:8, 109:1, 125:22, 132:13, 132:15

**outside**
6:24, 57:19, 127:21, 130:25, 131:6

**over**
8:11, 13:4, 45:20, 45:23, 46:9, 46:15, 52:19, 56:9, 56:11, 64:17, 67:17, 76:22, 77:7, 77:12, 77:16, 84:4, 90:18, 98:12, 99:15, 108:17, 122:10, 122:21, 122:24, 126:19

**overhead**
117:15

**overlapping**
126:7, 126:10, 126:14
**overloaded**
108:15
**overwhelm**
121:12
**own**
35:6, 43:8, 86:16, 124:11
**owner**
59:24
**owner's**
3:36, 59:13, 59:19

**P**

**page**
3:5, 3:12, 15:3, 15:14, 15:15, 22:23, 22:24, 51:18, 55:2, 56:7, 56:21, 59:23, 60:1, 61:9, 63:23, 87:20, 88:3, 92:11, 98:5, 119:18, 120:7, 133:10
**pages**
1:25, 66:7
**paid**
120:25
**paint**
76:8
**paper**
3:24, 20:22, 49:7, 51:12
**papers**
15:21, 16:1, 16:10, 19:9, 20:17, 21:12, 22:7, 24:8, 24:11, 24:12, 24:13, 25:13, 25:17, 26:7, 48:24, 48:25, 49:2

**paragraph**
22:12, 24:20, 27:10, 31:14, 33:16, 39:5, 40:2, 41:13, 41:18, 42:17, 44:4, 44:7, 48:22, 51:19, 52:3, 53:14, 54:5, 61:9, 61:24, 62:10, 64:1, 66:19, 68:4, 75:6, 75:17, 75:24, 79:4, 79:6, 84:25, 87:18, 88:8, 92:20, 95:18, 98:4, 99:6, 119:15, 119:18, 120:5, 123:23, 124:2, 129:18, 133:10
**paragraphs**
65:12, 66:20
**parallel**
128:1
**part**
34:2, 48:12, 61:25, 73:16, 88:13, 113:13, 125:7
**particular**
26:8, 26:10, 26:20, 26:23, 29:16, 32:8, 35:4, 42:5, 46:18, 57:9, 63:16, 69:12, 89:6, 124:14, 136:3
**parties**
5:12, 22:15, 127:25, 131:11, 132:17
**parts**
63:12
**party**
85:3, 139:17

**pass**
134:22
**passed**
115:5
**passing**
133:23
**patents**
13:20, 13:23, 13:25, 14:7, 14:14, 22:22, 22:25, 23:1, 23:9, 25:8, 26:6, 61:22, 62:9, 65:14, 65:17, 66:1
**people**
28:6, 85:4, 100:25
**perceived**
76:5
**perceiving**
11:2
**percent**
16:7
**perfect**
86:5
**perform**
98:10, 136:6, 136:7, 136:17
**performance**
135:12
**performed**
136:3, 136:19
**performing**
92:23, 95:11, 100:17, 100:20, 102:8
**performs**
98:24, 100:14
**period**
49:17, 50:17, 77:25, 78:1, 78:2
**periods**
44:12, 75:11
**person**
24:21, 24:22, 25:10, 27:23,

28:2, 28:4, 28:11, 29:1, 31:17, 32:3, 32:10, 32:13, 32:15, 32:19, 32:21, 33:7, 34:25, 35:3, 35:5, 35:8, 35:9, 35:11, 37:5, 37:6, 37:10, 37:13, 37:22, 37:23, 66:23, 69:20, 71:8, 76:5, 81:12, 83:1, 83:9, 89:10, 119:24, 130:12
**person's**
34:24, 34:25, 37:3, 37:4
**personally**
37:17
**perspective**
130:24
**pertinent**
28:11
**peruse**
18:1
**ph**
1:16, 2:1, 3:6, 4:4, 6:1, 19:5, 19:20, 20:15, 21:13, 138:1, 139:10
**phase**
69:2, 69:3, 69:4, 69:5, 69:7
**phases**
46:10
**phone**
6:20
**phrase**
43:3, 47:10, 47:17, 48:10, 48:15, 48:17, 48:19, 71:13, 72:24
**physical**
45:20, 56:10,

| | | | |
|---|---|---|---|
| 56:12, 64:17, 72:16, 73:22, 73:24, 75:21, 76:16, 76:22, 76:23, 77:7, 77:12, 77:16, 77:17, 79:14, 79:15, 82:5, 82:14, 82:18, 82:23, 84:2, 87:6, 87:23, 90:24, 98:12, 98:13, 98:14, 104:2, 104:14, 107:2, 107:4, 107:8, 107:9, 107:13, 107:17, 108:2, 109:8, 109:9, 109:20, 109:22, 110:8, 110:15, 110:24, 111:9, 112:12, 112:24, 114:1, 114:19, 115:3, 116:16, 116:19, 116:25, 117:21, 119:1, 119:7, 120:19, 122:10, 123:8, 124:4, 133:6, 133:9 | 76:4, 94:7 | 88:12, 89:3, 89:16, 90:1, 120:7, 121:2, 121:4, 121:18 | **predetermining** 112:10, 112:20, 112:22 |
| **picture** 76:8, 79:25, 93:15, 102:18 | **plaintiffs** 1:8, 4:2 | **position** 35:2 | **prediction** 20:23, 21:8 |
| **pictured** 46:3, 79:25, 93:15 | **planet** 4:24, 5:11, 5:21 | **positives** 20:1 | **preliminary** 3:36, 59:14, 59:19 |
| **piece** 125:12 | **plcch** 68:22 | **possessed** 26:19 | **preparation** 9:7, 23:6, 23:20, 49:3 |
| **place** 125:9 | **please** 5:14, 6:9, 21:1 | **possession** 26:19 | **presence** 139:14 |
| **places** 55:17, 124:3, 133:5 | **plethora** 90:22 | **possible** 34:6, 34:7, 65:7, 71:23, 72:14, 84:19, 86:24, 86:25, 87:5, 113:22 | **present** 4:22 |
| **plain** 44:18, 51:1, 53:24, 75:4, 75:14, 75:15, 75:22, 75:25, | **plural** 82:13 | **possibly** 11:13 | **presented** 7:8, 17:18, 45:3, 51:14, 58:10, 59:20 |
| | **plurality** 55:6, 73:23, 79:14, 82:16, 82:24, 84:1, 106:3, 107:3, 107:7, 109:8, 109:21, 110:19, 110:23, 111:3, 111:4, 111:8, 120:16, 123:5 | **potentially** 62:22, 86:25 | **presume** 38:12 |
| | **plus** 62:20 | **potentials** 86:6 | **presumed** 24:22 |
| | **point** 54:25, 67:3, 70:5, 70:7, 76:12, 81:14, 85:20, 95:7, 130:8, 130:23, 131:1 | **powerpoint** 26:22 | **presuming** 51:25 |
| | **pointed** 83:25 | **practice** 107:18, 108:3, 108:7, 108:21, 109:24, 110:6, 115:9, 116:9 | **pretty** 16:13 |
| | **poor** 85:22 | **practiced** 103:23 | **prevent** 69:17, 69:18, 70:8 |
| | **pops** 17:21 | **practicing** 108:13 | **previous** 69:17, 97:15 |
| | **portions** 73:11 | **precise** 54:1, 99:3, 110:22 | **primarily** 16:4 |
| | **posita** 29:24, 33:19, 38:6, 38:11, 41:18, 41:23, 44:8, 67:1, 67:11, 75:7, 81:2, 81:18, | **precisely** 28:17, 121:21 | **primary** 21:12 |
| | | **predefined** 53:9 | **prior** 22:25, 27:8, 27:22, 40:17, 40:18 |
| | | **predetermination** 113:5 | **privilege** 126:5 |
| | | **predetermined** 113:2, 120:17, 123:5 | **probabilistically** 117:25 |
| | | **predetermines** 112:15 | **probably** 9:15, 12:18, 13:3, 13:7, 32:6, 32:7, |

32:17, 56:5,
57:20, 94:18,
95:1, 101:10,
108:22
**probing**
130:6
**problem**
20:9, 25:20,
45:10, 56:20
**problems**
25:22, 66:25
**procedure**
2:14
**proceeding**
48:25, 49:13,
50:20, 51:10,
53:6, 54:2,
54:9, 54:10,
59:14, 59:15,
60:18, 60:21,
127:14
**proceedings**
24:1, 24:5
**process**
113:6
**processing**
103:8
**processor**
56:9, 77:11,
92:10, 92:11,
92:22, 93:6,
93:10, 93:23,
93:25, 94:8,
94:12, 94:19,
95:10, 95:13,
95:15, 96:1,
96:3, 96:23,
97:4, 97:21,
97:23, 97:25,
98:1, 98:8,
98:18, 98:23,
98:24, 99:4,
99:13, 99:16,
99:19, 99:23,
100:14, 100:17,
101:2, 101:5,
101:6, 101:7,
101:16, 101:23,

102:1, 102:7,
102:16, 102:19,
103:12
**processors**
92:23, 93:5,
93:11, 93:17,
94:7, 94:15,
94:18, 94:21,
94:23, 94:24,
95:4, 95:10,
95:17, 95:23,
95:25, 96:9,
96:12, 96:15,
96:17, 97:3,
97:7, 97:11,
97:17, 97:20,
97:23, 98:9,
98:23, 100:19,
101:19, 101:22,
102:8, 102:21,
102:23, 103:2,
103:6, 103:16
**products**
27:4, 29:18
**professor**
21:13
**programmed**
135:24, 136:16
**progression**
71:10, 83:6,
83:12, 84:10
**promised**
116:7
**promising**
115:22
**proof**
83:19
**properties**
11:22
**prosecution**
22:15, 31:20,
33:10, 40:15,
40:16, 50:5
**protocol**
31:8, 31:10,
119:16, 120:8,
121:6, 121:20
**protocols**
31:4, 90:22

**provide**
43:13, 71:24,
72:15
**provided**
43:15
**provides**
76:2
**providing**
82:12
**ptab**
3:23, 3:33,
24:9, 50:12,
50:19, 50:23,
51:4, 51:12,
51:24, 52:1,
52:6, 52:12,
53:4, 53:17,
53:21, 53:23,
54:2, 54:5,
54:14, 54:16,
54:21, 54:25,
55:12, 56:15,
56:24, 59:18,
60:13, 60:16
**ptab's**
57:14, 58:1,
58:16
**public**
139:6, 140:9
**publications**
16:2
**published**
15:21, 25:13,
25:16, 26:6,
26:7
**pull**
9:15, 64:9
**pulling**
24:13
**purpose**
115:21
**purposes**
7:8, 17:19,
45:3, 51:14,
58:10, 59:20
**pursuant**
2:13
**push**
121:1

**put**
67:18, 70:20,
127:1

---

**Q**

**qualifications**
15:13
**qualified**
139:8
**qualifies**
50:3
**question**
8:21, 30:8,
34:2, 34:17,
35:20, 36:9,
36:10, 36:16,
38:2, 40:1,
43:6, 43:16,
43:19, 57:22,
58:3, 58:15,
61:25, 62:24,
64:15, 66:11,
66:16, 72:22,
81:23, 83:15,
93:18, 93:19,
97:20, 98:19,
100:4, 100:21,
105:15, 112:16,
112:17, 114:12,
120:3, 121:16,
124:21, 125:16,
127:17, 128:14,
128:16, 129:11
**questions**
9:3, 22:2,
43:8, 43:9,
49:19, 124:24,
125:6, 125:25,
127:5, 127:10,
127:24, 129:14,
130:1, 130:12,
130:14, 130:18,
130:22, 131:10,
131:15, 131:20,
132:3, 132:24,
135:1, 136:25
**quick**
8:11

| | | | |
|---|---|---|---|
| **quicker** 71:7 | 133:21, 133:25, 134:2 | 134:10 | **referenced** 32:6, 87:9 |
| **quickly** 18:1 | **realistic** 86:10 | **reciprocity** 10:13, 10:21, 19:14, 19:24, 20:3 | **references** 32:7, 66:17, 66:18 |
| **quote** 132:5 | **really** 19:7, 19:21, 20:15, 28:14, | **recite** 136:15 | **referencing** 24:14 |
| **quoted** 103:14 | 29:14, 37:16, 54:12, 100:23 | **recited** 135:13, 136:17 | **referred** 92:1 |
| **R** | **reason** 8:17, 64:2 | **recites** 135:22 | **referring** 12:9, 15:15, |
| **r-a-j-a-n** 21:7 | **reasonable** 12:18, 13:2, | **recognize** 65:14, 65:17 | 18:11, 31:4, 45:16, 50:7, |
| **radio** 104:22 | 13:9, 14:21, 39:11 | **record** 6:10, 7:2, | 54:11, 54:20, 54:21, 61:13, |
| **radios** 105:19 | **recall** 9:12, 9:14, | 23:14, 36:17, 41:3, 41:6, | 67:10, 67:25, 68:9, 68:15, |
| **rajan** 19:13, 20:22, 21:6 | 13:21, 17:8, 18:21, 23:21, | 41:9, 78:19, 78:23, 79:7, | 73:10, 76:20, 77:1, 89:2, |
| **range** 13:8 | 24:4, 24:8, 24:10, 49:4, | 91:25, 125:10, 126:19, 126:21, | 89:23, 91:25, 92:19, 93:23, |
| **rate** 20:23, 21:8, | 49:5 | 127:1, 127:23, 129:7, 129:8, | 95:9, 99:3, 99:4, 102:12, |
| 21:11, 21:14 | **receive** 98:11, 98:14, | 131:13, 131:18, 132:9, 133:22, | 105:7, 119:15, 120:10, 120:16, |
| **rates** 21:20 | 103:25, 104:2, 104:13 | 134:1, 134:2, 134:9, 134:12 | 122:1, 122:6, 124:10, 124:12, |
| **rather** 18:17, 49:17, | **received** 76:24, 77:18, | **rectify** 80:5 | 133:3 |
| 50:16 | 82:22, 124:5, 124:6, 133:7, | **rectifying** 65:2 | **refers** 97:22, 121:21, |
| **reach** 37:13 | 133:8 | **redefining** 88:11 | 135:23, 136:10 |
| **read** 32:17, 39:7, | **receiver** 21:16, 99:13, | **reduced** 139:13, 139:15 | **refrain** 6:23 |
| 39:18, 56:18, 57:21, 58:2, | 100:15, 101:8, 102:4, 103:21, | **refamiliarize** 92:12 | **regards** 68:1 |
| 69:10, 73:19, 77:14, 92:17 | 104:11, 104:13, 104:18, 105:17 | **refer** 17:11, 42:7, | **related** 18:9, 20:2, |
| **reading** 19:4, 20:7, | **receivers** 100:18, 103:24, | 44:9, 47:22, 53:9, 53:12, | 26:10, 49:12, 54:9, 54:10, |
| 20:12, 32:10, 72:3, 72:5, | 104:7, 104:19, 105:3, 105:7, | 75:8, 83:4, 91:4, 93:10, | 124:24, 127:7, 127:11, 132:7 |
| 82:20, 82:21, 104:20, 122:22, | 105:20 | 96:11, 97:6, 104:21, 105:3, | **relating** 8:3, 24:1 |
| 129:17 | **receiving** 99:6, 99:8, | 106:11 | **relation** 40:13, 41:24, |
| **reads** 12:16, 46:18 | 99:25, 100:2, 104:12, 116:19 | **reference** 24:10, 106:3 | 76:9 |
| **ready** 92:14, 92:16, | **recess** 41:7, 78:20, | | **relative** 139:16 |

relevance
27:7
relevant
21:17, 21:24,
24:23, 25:4,
25:8, 25:13,
25:17, 25:23,
26:1, 26:13,
26:24, 27:24,
28:4, 28:8,
29:24, 92:23,
131:21
rely
90:2
relying
73:8, 83:1,
83:5
remainder
119:21
remember
18:23, 24:11,
24:12, 24:14,
81:23, 112:16,
135:20
remote
5:10
remotely
5:13
repeat
34:1, 62:3,
109:12, 109:16,
112:19, 126:11
repeats
69:9
report
47:25, 105:13,
106:2
reported
1:26
reporter
1:27, 2:16,
5:20, 20:25,
21:3, 71:25,
72:9, 109:11,
109:14, 109:15,
123:18, 134:18,
139:7, 140:11
reporting
139:19

represent
5:15
representing
5:11, 5:21
represents
12:1
reproduce
42:20
reproduced
122:2
require
89:13, 107:7,
136:15, 136:18
requirement
120:10
requires
79:7, 109:6,
109:18, 110:23,
111:8, 116:24,
128:1, 135:12
research
16:3
researcher
16:24, 17:5,
19:1
reserved
78:12
resolved
31:18
resource
69:22, 70:2,
76:24, 77:18,
85:9, 89:5,
89:12, 98:11,
99:6, 103:25,
104:12, 117:3,
117:13, 117:16,
118:4, 118:6
resources
69:20, 69:22,
70:22, 81:5,
81:13, 83:5,
83:8, 83:11,
83:12, 84:5,
84:11, 89:20,
89:24, 90:5,
90:19, 109:1,
118:2, 118:5

respect
22:19, 68:6,
111:13, 121:23,
132:25
respective
55:7, 73:23,
74:3, 82:5,
82:18
response
3:37, 59:14,
59:20
responsibility
34:12, 113:17,
116:3
responsible
101:12
rest
19:20, 31:11,
31:18, 93:7,
93:9, 116:3
restricted
127:16
reused
90:21
reverse
18:5, 18:12
review
26:9, 49:2,
57:13, 57:24,
60:11, 60:15,
60:16, 66:11,
92:12
reviewed
22:13, 22:19,
23:1, 23:5,
23:19, 24:1,
24:3, 24:5,
24:9, 57:11
reviewing
13:11, 15:7,
28:6, 29:20,
49:6
right
13:3, 14:13,
15:9, 15:10,
15:11, 21:14,
23:4, 36:14,
45:11, 53:22,

54:3, 58:4,
61:6, 66:8,
71:16, 73:4,
73:5, 83:22,
86:20, 87:13,
88:18, 91:17,
96:2, 96:23,
96:25, 98:1,
99:20, 102:23,
105:8, 106:16,
110:9, 110:16,
113:9, 113:13,
116:18, 117:8,
117:19, 117:23,
118:14, 118:25,
119:3, 119:10,
121:17, 123:13,
123:23, 125:25,
129:10, 130:20,
132:9, 136:5
rmr
1:26, 2:15,
139:5, 140:8
road
2:7
room
6:14
roughly
13:14
row
68:19, 86:20
rpr
139:5, 140:8
rules
2:14, 8:12,
126:3
run
67:4, 67:15,
69:19, 69:21,
70:8, 70:22,
81:14, 86:12,
87:2, 109:1

**S**

s-h-i
19:8, 21:6
safe
11:24

**said**
6:4, 13:10,
35:22, 36:3,
36:21, 39:19,
43:11, 45:12,
51:3, 53:21,
55:1, 61:5,
63:9, 76:9,
84:6, 89:2,
92:16, 95:18,
103:15, 104:9,
120:14, 139:13
**sake**
72:8
**same**
8:14, 10:14,
10:16, 25:9,
32:18, 34:6,
34:10, 40:6,
46:7, 49:13,
59:14, 63:23,
63:24, 63:25,
69:23, 69:25,
70:1, 79:8,
79:13, 79:15,
80:12, 81:11,
84:2, 84:14,
84:20, 85:9,
86:8, 87:6,
90:5, 90:8,
90:18, 91:21,
91:24, 99:9,
104:8, 105:18,
107:1, 107:4,
107:8, 107:12,
107:18, 108:2,
108:4, 109:7,
109:9, 109:19,
109:22, 110:8,
110:15, 110:25,
111:9, 122:20,
122:24, 127:15,
128:12, 133:5
**san**
4:9
**satisfied**
136:22
**saw**
31:3

**say**
12:17, 12:21,
13:1, 13:3,
13:9, 14:6,
16:6, 16:11,
18:17, 24:20,
25:19, 26:5,
27:11, 30:2,
30:3, 30:9,
31:6, 31:14,
38:25, 39:5,
40:19, 41:15,
41:17, 44:7,
48:23, 49:10,
49:21, 49:25,
50:10, 50:18,
52:6, 53:19,
54:5, 54:16,
69:18, 74:9,
74:11, 75:6,
75:18, 75:24,
79:4, 84:15,
87:22, 90:12,
90:16, 93:18,
95:22, 96:3,
99:4, 99:23,
100:14, 100:24,
103:5, 105:15,
110:23, 111:20,
118:16, 118:17,
120:5, 122:14,
122:17, 122:24,
122:25, 126:15,
128:9, 128:10,
128:11, 130:23
**saying**
13:4, 25:2,
32:2, 39:16,
39:21, 39:22,
42:13, 45:23,
47:7, 66:16,
66:18, 74:4,
74:12, 74:15,
77:20, 86:23,
96:19, 99:11,
103:1, 116:2,
119:19, 121:4,
121:9, 121:18,

122:20, 123:5,
123:8, 130:8
**says**
46:6, 51:21,
60:5, 61:9,
62:20, 68:20,
69:12, 69:16,
71:19, 71:20,
73:20, 76:20,
76:21, 77:10,
77:15, 79:11,
79:12, 80:3,
82:4, 82:18,
82:22, 84:1,
86:10, 91:6,
93:2, 93:4,
95:24, 96:8,
96:14, 96:25,
97:3, 97:5,
97:15, 97:16,
97:19, 102:20,
104:18, 107:1,
113:1, 118:25,
122:8, 122:9,
124:2
**scalability**
47:1
**scale**
47:1, 108:23,
109:2
**scales**
108:10, 109:1
**scenario**
86:5, 86:17
**schedule**
75:9, 95:3
**scheduling**
44:10, 44:15
**school**
2:5
**science**
41:20
**scope**
39:10, 57:19
**seal**
140:2
**search**
47:19

**sec**
114:15
**second**
22:24, 71:17,
77:10, 104:1
**second-to-last**
106:24
**secrets**
18:14
**section**
24:17, 31:3,
66:11, 67:21,
68:1, 68:6,
84:23, 92:9,
92:10, 92:17,
103:19, 103:20,
105:11, 106:1,
106:6, 111:13,
122:2
**sections**
76:3
**see**
24:25, 25:2,
26:17, 37:11,
46:17, 51:17,
55:11, 59:23,
59:25, 60:4,
60:7, 74:7,
79:9, 79:17,
87:9, 88:2,
88:9, 105:7,
106:23, 107:5,
124:8
**seeing**
21:16
**seem**
127:20, 129:23,
129:25
**seemed**
62:16
**seems**
42:13, 57:2,
103:1, 104:21,
111:2, 130:5,
130:24, 131:2
**seen**
74:6, 84:3
**select**
111:23

**selecting**
112:5
**send**
55:4, 55:5,
56:13, 67:2,
70:17, 76:23,
77:12, 77:17,
84:4, 84:11,
87:6, 95:2,
98:12, 98:13,
107:11, 108:1,
113:17, 119:20,
119:24, 120:1,
120:2, 120:23,
120:24, 121:11,
121:14
**sending**
45:19, 56:11,
76:21, 77:16,
85:25, 99:7,
122:15
**sends**
56:9
**sense**
83:22, 84:7,
84:9, 88:11,
108:23
**sent**
7:14, 64:17,
73:22, 77:22,
79:14, 99:15,
107:3, 107:13,
109:8, 109:21,
122:9, 122:12
**sentence**
49:10, 49:20,
49:24, 54:16,
55:13, 55:15,
56:6, 56:21,
58:22, 60:4,
61:1, 61:2,
61:8, 61:12,
61:19, 62:20,
64:16, 64:19,
69:10, 69:17,
70:14, 76:19,
76:20, 77:4,
77:15, 79:6,

87:22, 88:4,
91:5, 91:6,
93:1, 93:4,
95:19, 96:19,
97:5, 97:16,
119:17, 120:6,
124:1, 124:8,
133:2
**separate**
55:5
**separated**
56:13, 91:8
**separation**
10:20, 11:6,
11:8, 71:24,
72:15
**series**
108:7
**server**
94:3, 97:13
**set**
84:4, 131:3,
140:1
**setting**
65:12
**share**
61:22, 62:9,
127:14
**shared**
45:20, 45:23,
47:7, 56:12,
64:18, 64:21,
64:24, 65:1,
76:23, 77:7,
77:12, 77:17,
98:13, 115:16,
115:22, 115:23,
116:7, 116:11,
117:14
**sharing**
118:14
**sherman**
1:3, 5:7
**shi**
19:8, 19:13,
20:21, 21:6
**shorthand**
1:27, 2:16,

139:7, 140:11
**should**
30:20, 44:18,
75:3, 91:21,
91:22, 92:4,
126:4, 127:17
**show**
31:9, 47:9,
62:14, 68:13
**shown**
91:15
**shows**
75:18, 102:18
**side**
51:1
**sign**
7:24
**signal**
56:9, 73:22,
76:24, 77:18,
79:14, 87:6,
91:7, 98:14,
99:7, 107:2,
107:9, 107:13,
109:8, 109:20,
110:24
**signals**
55:4, 72:19,
75:21, 76:16,
79:8, 79:15,
82:22, 84:2,
87:23, 87:24,
107:4, 107:8,
107:17, 108:2,
109:9, 109:22,
110:8, 110:15,
111:9
**signature-p1kal**
140:4
**similar**
11:13, 11:19,
25:20, 41:20,
105:16
**similarity**
25:21
**since**
9:13, 69:6
**single**
58:20, 74:6,

79:8, 91:13,
93:23, 95:10,
97:23, 98:1,
100:17, 101:15,
102:1, 102:15,
104:22, 109:23,
127:8
**single-core**
101:4
**singular**
98:18
**sitting**
6:20
**situation**
33:14, 34:24,
35:4, 87:9,
101:10, 101:25,
106:21
**situations**
86:13, 87:1
**six**
68:19, 69:11
**skill**
24:21, 25:11,
28:2, 29:1,
31:17, 32:3,
32:13, 32:16,
32:19, 32:21,
33:7, 35:3,
35:9, 35:12,
37:7, 37:9,
37:10, 37:13,
37:22, 37:24,
39:9, 39:23,
66:23, 69:20,
71:9, 76:6,
81:12, 83:2,
83:9, 89:10,
119:25
**slides**
26:22
**slot**
42:22, 43:3,
43:22, 43:25,
46:3, 46:8,
46:9, 46:11,
46:14, 46:15,
46:24, 47:14,

48:3, 51:3,
51:23, 51:25,
52:19, 52:25,
53:5, 53:9,
53:12, 53:20,
53:23, 54:3,
55:4, 55:19,
55:22, 55:23,
56:8, 56:10,
56:13, 56:17,
57:1, 57:3,
58:18, 58:20,
58:21, 58:24,
59:2, 59:4,
60:5, 60:22,
61:3, 61:6,
61:10, 61:17,
62:17, 63:13,
66:25, 67:2,
67:13, 69:14,
69:23, 70:4,
70:13, 70:21,
72:17, 72:18,
74:6, 77:6,
78:4, 78:6,
78:11, 79:8,
80:6, 80:7,
80:8, 81:7,
83:20, 84:7,
84:14, 84:20,
85:23, 86:1,
86:9, 87:7,
87:15, 88:15,
91:7, 91:13,
108:14, 108:25,
115:3, 115:17,
115:18, 115:20,
116:3, 117:24,
118:3, 118:6,
119:5, 124:4,
124:14, 133:6

**slots**
46:20, 46:22,
47:4, 52:21,
54:24, 55:5,
56:13, 60:25,
61:14, 61:15,
62:21, 67:5,

67:8, 67:18,
68:12, 68:15,
69:19, 70:9,
70:15, 71:4,
74:9, 79:23,
80:4, 80:9,
80:11, 80:14,
80:16, 80:18,
80:20, 80:21,
80:24, 81:3,
81:19, 83:2,
88:1, 88:11,
88:13, 89:4,
89:14, 89:17,
90:14, 91:8,
108:19, 109:3,
112:11, 112:22,
113:16, 113:21,
114:1, 114:17,
116:15, 116:24,
117:20, 118:25,
120:17, 120:18,
121:11, 123:6,
123:7, 128:18,
128:22, 133:7,
133:13

**slots�**
124:5

**slow**
21:1

**slower**
72:10

**smith**
4:16, 5:17

**smu**
6:13, 15:19,
16:23

**solutions**
25:22

**some**
10:12, 15:4,
20:14, 21:16,
22:12, 27:7,
32:7, 67:3,
67:13, 69:24,
70:3, 70:5,
70:7, 81:14,
101:13, 108:14,

117:15, 117:16,
117:24, 130:8

**somebody**
37:6, 37:9,
87:10

**something**
26:18, 28:3,
29:2, 31:13,
34:2, 61:7,
64:10, 65:3,
78:13, 96:7,
99:14, 100:7,
120:11, 122:3,
122:13, 124:21,
131:1

**sometimes**
15:23

**somewhere**
13:7

**sorry**
16:17, 21:2,
25:1, 36:1,
36:6, 45:9,
52:15, 53:20,
56:18, 69:14,
72:4, 93:8,
103:20, 109:13,
110:13, 115:19,
118:23, 121:16,
123:18, 128:19,
134:18

**sort**
90:7

**sorted**
125:22

**sorts**
89:21

**sound**
15:10

**sounds**
9:5, 15:9,
76:13, 100:10,
127:9

**southern**
2:4

**space**
90:10

**spacing**
85:13, 90:24

**span**
16:1

**spatial**
90:10, 90:12,
90:14, 90:17

**speak**
88:25

**speakers**
126:7, 126:10,
126:14

**speaking**
85:4, 126:12

**special**
94:4

**specific**
23:2, 24:4,
24:7, 27:25,
31:1, 31:4,
31:5, 53:9,
78:12, 115:25,
120:4, 120:12,
121:17, 129:8,
129:22, 133:2

**specifically**
14:18, 15:12,
15:15, 18:3,
18:8, 19:10,
20:11, 22:7,
23:7, 23:21,
27:25, 48:1,
63:6, 64:15,
68:3, 81:18,
97:21, 127:4

**specification**
31:19, 33:9,
38:20, 39:1,
61:22, 62:9,
62:15, 63:1,
63:24, 66:8,
66:19, 84:8,
91:18, 93:8

**specify**
65:10

**specimen**
39:1, 48:7

**spectral**
70:1, 85:9,
89:12, 89:20,

89:24, 90:5, 90:19
**spectral-reuse** 90:22
**spectrum** 90:21, 118:2
**spelled** 27:25
**spent** 12:14, 13:11, 13:13, 13:22, 19:20, 20:7
**spill** 108:17
**spoil** 105:14
**spread** 46:8, 67:17
**stake** 131:4
**standard** 16:17, 111:21, 113:23
**standards** 15:20, 17:4, 23:19, 24:18, 27:23, 29:17
**start** 15:12, 67:3, 70:18, 70:20, 71:20, 82:1, 108:8, 108:16, 108:24
**started** 15:2, 19:18
**starts** 19:13
**state** 2:17, 5:15, 6:9, 10:10, 29:15, 30:6, 33:19, 35:13, 127:22, 131:13, 139:1, 139:6, 140:9
**statement** 60:8, 60:20, 64:12, 79:19,

80:1, 97:22, 129:10
**statements** 33:6, 83:4
**states** 1:1, 3:19, 3:29, 5:5, 45:1, 58:8
**stating** 126:23
**station** 10:11, 68:23, 111:25, 112:9, 113:20, 113:25, 114:8, 114:20, 115:2, 115:10, 115:20, 116:10, 117:8, 117:12, 117:22, 119:10, 119:12, 124:17
**station's** 118:7
**statistically** 10:23, 11:13, 11:19, 11:24, 12:5
**stay** 79:2
**stenographically** 139:14
**step** 106:14, 106:17
**steps** 106:18, 135:9, 135:13, 136:18
**stick** 14:20
**still** 11:24, 82:20, 82:21, 108:12
**stop** 22:1, 128:8
**stopping** 76:12
**story** 87:16
**stream** 90:14

**streams** 90:12
**street** 4:7, 4:17
**strictly** 83:20, 84:6
**strike** 53:10, 63:6, 73:9, 74:24, 75:1, 82:9, 91:19, 107:15, 112:21, 128:20
**structure** 67:4, 71:23, 72:14, 111:19, 112:15, 114:6, 115:10, 133:17
**structured** 49:15, 50:14, 52:7, 53:1, 53:12, 54:7, 54:18, 54:23, 55:9
**structures** 112:6
**struggling** 38:24, 101:18, 101:24
**student** 20:10, 20:16, 21:13
**students** 19:5
**study** 41:20
**studying** 20:8
**stuff** 19:25, 66:24, 70:12, 85:25
**subject** 29:17
**submitted** 7:22, 12:14, 13:17, 14:25, 17:15, 22:21, 132:4, 132:25
**substantial** 63:8

**substantially** 63:24, 63:25, 65:25
**sufficient** 10:20, 11:6, 11:8, 31:7, 67:14
**suit** 127:9
**suite** 4:8, 4:18
**summer** 9:13, 10:1
**support** 66:13, 81:8, 82:12, 108:12
**sure** 11:9, 12:21, 18:17, 35:22, 45:18, 47:19, 50:2, 54:12, 62:5, 63:2, 63:22, 66:15, 72:22, 78:5, 88:17, 88:23, 91:10, 101:5, 101:23, 107:22, 111:4, 129:4
**sweat** 18:13
**sworn** 5:23, 6:3, 139:10
**synonymous** 61:4, 61:5, 80:7
**synonymously** 55:17, 60:6, 60:22, 61:11, 61:18
**system** 44:1, 47:1, 78:8, 89:6, 89:13, 93:14, 93:16, 94:1, 94:6, 95:16, 95:25, 96:15, 97:16, 100:25,

101:1, 101:2,
101:4, 101:16,
102:11, 103:3,
103:15, 108:10,
111:18, 121:13,
135:6, 135:15,
135:16, 135:22,
135:23, 136:6,
136:14, 136:16
**system's**
136:2
**systems**
11:10, 16:4,
16:6, 19:16,
21:25, 97:10,
119:23, 121:23

**T**

**take**
7:19, 8:25,
9:1, 9:4, 11:25,
66:10, 72:9,
76:11, 94:20,
95:7, 105:12,
125:13, 128:5,
134:6, 135:2
**taken**
41:7, 78:21,
134:10
**takes**
91:1
**taking**
124:23, 130:6,
131:4, 131:5
**talk**
9:6, 92:8,
103:21, 126:19
**talked**
19:23, 20:5,
135:19
**talking**
9:12, 20:14,
56:20, 68:3,
97:24, 99:20,
104:23, 104:25,
118:1, 120:20
**talks**
22:24, 44:19,

45:13, 45:18,
46:4, 48:1,
64:20, 67:6,
67:7, 68:18,
77:22, 82:13,
83:7, 84:23,
85:1
**tasks**
95:5, 95:19,
101:9, 102:3,
103:8
**tdd**
10:15
**tdma**
71:22, 71:23,
72:13, 72:14
**teach**
94:9
**teams**
90:17
**technical**
26:7
**techniques**
89:21, 89:25,
90:7, 90:20,
90:23
**technologies**
16:18, 16:21,
17:9, 71:21,
72:13
**technology**
18:3, 19:12
**tell**
8:22, 10:6,
18:18, 24:6,
49:7, 56:18,
113:11, 118:11,
122:5, 124:11
**telling**
118:20
**tells**
11:23, 30:19
**temporal**
75:20
**ten**
66:9
**tens**
12:17, 12:23

**term**
31:15, 31:16,
31:22, 33:1,
34:8, 34:13,
34:19, 35:18,
36:5, 36:13,
36:24, 37:19,
38:8, 38:21,
42:23, 43:6,
44:9, 44:22,
47:13, 61:10,
66:7, 73:6,
74:9, 75:8,
77:25, 78:7,
88:24, 94:8,
111:14
**terminal**
68:23, 68:24,
69:3, 69:4,
69:6, 69:8
**terminals**
70:10
**terms**
15:18, 16:2,
16:3, 20:13,
33:23, 39:3,
43:12, 60:5,
65:4, 125:2,
129:3, 129:9
**terrestrial**
16:8
**tesla**
9:23
**testify**
139:11
**testimony**
42:10, 134:17,
138:3, 139:13
**texas**
1:2, 1:18,
1:27, 2:8, 2:17,
4:19, 5:6,
139:7, 140:11
**text**
42:21, 65:22,
92:19, 93:9,
93:22, 95:9,
95:11, 103:15

**th**
7:25, 140:3
**thank**
11:5, 22:5,
40:11, 41:12,
44:3, 78:17,
98:3, 100:11,
105:25, 127:2,
128:12, 134:14,
134:21, 137:1
**thanks**
12:11
**themselves**
5:15
**thereafter**
139:15
**therefore**
29:9, 32:20,
35:10, 35:13,
37:9, 37:14,
44:21, 61:3,
61:14, 67:16
**therein**
80:23
**thereof**
62:20, 68:4
**thereupon**
78:20
**thing**
26:20, 39:19,
62:4, 62:16,
117:12, 122:8,
122:20, 122:24,
130:23
**things**
21:24, 23:4,
23:5, 32:21,
33:9, 89:22,
95:3, 99:20,
106:22
**think**
14:17, 14:20,
18:20, 18:21,
19:3, 20:11,
23:3, 23:23,
27:3, 27:19,
30:13, 33:5,
33:18, 33:20,

34:7, 34:11,
34:18, 35:16,
35:24, 36:3,
36:11, 36:23,
37:1, 37:18,
39:16, 39:20,
41:23, 42:1,
44:25, 53:8,
53:11, 75:15,
76:4, 77:9,
78:15, 92:7,
99:10, 100:16,
100:25, 101:14,
103:3, 104:5,
104:11, 105:18,
106:18, 106:20,
107:16, 121:22,
125:16, 131:13,
131:17, 132:19
**thinking**
14:2, 19:10,
23:4, 23:8,
114:15
**third**
46:12, 46:21,
47:3
**thought**
43:10, 100:8,
114:11
**thousands**
118:1
**three**
44:20, 45:14,
45:16, 46:10,
46:11, 47:13,
58:19, 59:5,
62:17, 76:3,
92:5
**through**
7:19, 40:9,
47:23, 48:1,
68:19, 73:19,
81:25, 82:17,
83:6, 83:12,
84:23, 84:25,
86:18, 91:5,
104:20, 107:1,
109:6, 109:19,

115:5, 122:7
**time-slot**
49:16, 50:16,
52:9, 53:14,
54:8, 54:19,
112:15
**times**
15:22, 40:21,
58:2
**timing**
9:14, 18:10
**titled**
24:17
**today**
5:10, 5:21,
6:12, 8:14,
8:18, 9:7, 49:3,
97:12, 123:14,
125:14, 134:15
**today's**
5:8, 60:12
**together**
20:10
**ton**
85:17, 85:25
**took**
45:9
**tool**
62:25
**top**
17:10, 18:19,
23:3, 49:8,
79:12, 87:20,
88:3, 88:8,
119:18, 120:6
**total**
13:13, 14:16,
15:6
**towards**
15:24, 15:25,
16:15, 41:17,
127:18
**trade**
18:14
**transactions**
19:12
**transcription**
138:3

**transmission**
49:15, 50:15,
52:8, 53:13,
54:7, 54:18,
87:25, 119:8,
119:9, 119:13
**transmissions**
86:15
**transmit**
55:6, 73:23,
79:7, 79:15,
84:1, 84:14,
84:20, 107:3,
107:8, 107:17,
109:9, 109:21,
110:7, 110:14,
110:24, 111:9
**transmitted**
75:21, 76:16,
87:24
**transmitter**
77:11, 99:13,
101:9, 102:3,
105:10, 105:16
**transmitters**
100:18, 105:19
**transmitter�**
105:10
**transmitting**
77:7, 80:11,
90:11, 106:3
**trial**
49:12, 50:13,
54:14
**trick**
63:21
**true**
116:14, 116:23,
138:2
**truth**
139:11, 139:12
**try**
34:5, 66:24,
121:1
**trying**
12:24, 30:12,
32:17, 63:21,
65:6, 65:9,

67:14, 69:23,
76:7, 99:23,
100:14, 100:16,
122:23
**tuesday**
1:20
**tuned**
85:6
**turn**
22:10
**turning**
15:11
**twelve**
82:13
**two**
16:1, 41:20,
45:7, 62:18,
63:18, 65:2,
80:9, 81:15,
88:5, 90:17,
98:17, 103:24,
104:6
**type**
47:3, 91:24,
94:4
**types**
44:20, 45:14,
45:16, 101:19
**typewriting**
139:15

| U |
| --- |

**ue**
58:21, 67:1,
70:19, 71:1,
73:20, 73:22,
77:6, 77:15,
77:20, 86:16,
91:6, 103:24,
106:22, 107:11,
108:3, 109:23,
111:25, 112:2,
112:9, 112:10,
112:20, 112:22,
113:10, 113:17,
115:5, 115:11,
115:19, 116:9,
118:9, 118:11,

122:12, 122:14,
124:5, 124:6,
133:7, 133:8
**ues**
10:10, 11:1,
42:3, 42:7,
42:14, 46:7,
46:11, 47:2,
52:20, 55:6,
55:10, 66:25,
67:2, 67:14,
68:12, 68:16,
69:13, 70:6,
70:12, 70:17,
70:21, 71:3,
71:5, 71:6,
73:23, 74:2,
74:8, 74:12,
79:7, 79:14,
80:10, 81:8,
82:17, 82:24,
83:5, 83:10,
84:1, 84:4,
84:11, 84:14,
84:20, 85:10,
85:23, 85:25,
87:5, 87:15,
106:3, 107:3,
107:7, 107:11,
107:16, 108:1,
109:8, 109:21,
109:24, 110:14,
110:24, 111:3,
111:8
**ul-beacon**
68:22, 69:14,
71:24, 72:15,
72:19
**unambiguous**
34:13
**unclear**
31:16, 31:23,
33:1, 34:9,
34:20, 35:18,
36:5, 36:25,
37:20, 38:8,
43:12
**undefined**
44:12, 49:17,

50:16, 75:11
**under**
13:4, 47:6
**understand**
8:13, 8:21,
11:16, 19:22,
27:11, 28:15,
29:15, 31:15,
32:4, 32:20,
36:19, 39:5,
42:6, 42:22,
43:22, 44:8,
44:11, 48:23,
51:24, 52:6,
53:8, 53:11,
53:16, 54:22,
55:12, 60:10,
60:17, 62:6,
62:8, 63:13,
63:20, 64:3,
65:9, 66:15,
66:24, 67:1,
67:12, 68:14,
69:21, 71:9,
71:18, 75:7,
75:10, 81:13,
83:10, 85:5,
86:23, 87:10,
87:12, 87:14,
87:15, 88:12,
89:3, 89:11,
89:16, 99:22,
100:1, 106:13,
115:13, 115:15,
119:25, 120:7,
121:3, 121:4,
121:10, 121:18,
125:23, 126:2,
129:21, 132:19,
135:4, 135:18
**understanding**
10:6, 25:4,
25:7, 25:12,
25:25, 33:13,
38:14, 50:21,
54:15, 55:21,
56:3, 61:21,
62:2, 65:24,

66:2, 73:18,
74:17, 75:25,
83:16, 84:13,
88:24, 94:22,
107:25, 111:17,
125:1, 127:13,
127:15, 128:25,
135:11, 135:21,
136:12, 136:13,
136:20
**understood**
28:1, 49:14,
50:13, 54:6,
54:17, 107:23
**unit**
44:1, 46:4,
52:25, 54:23,
59:3, 59:4,
70:3, 78:7,
88:20, 88:21
**united**
1:1, 3:19,
3:29, 5:5, 45:1,
58:8
**units**
103:8
**university**
2:4
**unless**
8:21
**until**
110:3
**uplink**
10:24, 11:1,
21:23, 45:20,
55:7, 56:10,
56:12, 64:18,
67:3, 67:9,
67:15, 70:17,
71:19, 72:17,
73:22, 73:24,
75:21, 76:15,
76:23, 77:7,
77:12, 77:17,
79:8, 79:13,
79:15, 82:5,
82:14, 82:18,
82:22, 84:1,

84:12, 85:25,
86:15, 87:6,
87:23, 91:1,
98:12, 98:13,
107:2, 107:3,
107:8, 107:9,
107:13, 107:17,
108:1, 109:7,
109:9, 109:20,
109:21, 110:7,
110:14, 110:24,
111:9
**uplink-beacon**
46:2, 46:20,
87:24, 113:16
**uplink-beacons**
58:24, 80:4,
81:11, 86:20
**uplinks**
108:25
**upper-end**
101:17
**use**
10:17, 20:4,
47:17, 47:24,
69:23, 70:1,
74:8, 74:15,
78:10, 82:15,
85:8, 86:7,
87:15, 90:6,
98:18, 107:22,
121:10
**useful**
27:12, 30:4
**user**
107:13, 108:21,
110:2
**users**
87:3, 90:17,
90:24, 108:13,
108:23, 110:3,
110:7, 110:10
**uses**
44:9, 75:8
**using**
6:18, 6:25,
19:21, 21:19,
46:7, 48:4,

48:6, 49:16,
50:15, 52:8,
52:20, 53:13,
54:8, 54:19,
55:16, 59:4,
70:6, 73:15,
81:7, 119:22,
131:6
**uspto**
3:23, 3:33,
51:11, 59:17
**utan**
16:17
**utran**
16:17

**V**

**vague**
26:2, 27:17,
28:21, 30:22,
31:24, 33:3,
33:24, 34:21,
36:8, 38:3,
38:9, 38:22,
39:14, 63:10,
64:7
**validity**
127:7, 129:15
**various**
19:24, 20:19,
48:24
**vary**
89:18
**veggies**
120:22
**vehicular**
19:12
**venture**
97:9
**ventures**
1:5, 1:6, 4:3,
4:4, 5:4, 5:19,
9:9, 59:24
**verbatim**
129:18, 132:5
**verizon**
18:15
**version**
52:1

**versions**
40:17, 40:19,
40:22
**versus**
62:17
**via**
87:8
**viability**
27:5
**video**
5:9, 5:12, 6:18
**video-recorded**
1:13
**videoconferenced**
1:13
**videographer**
4:23, 5:1,
5:10, 5:20,
41:5, 41:8,
78:18, 78:22,
134:8, 134:11,
137:3
**videotaped**
5:2
**view**
106:16
**vitae**
3:17, 17:18
**voice-identify**
5:14

**W**

**wait**
100:3
**waive**
126:5
**waived**
126:23
**want**
60:10, 63:22,
65:23, 69:17,
71:6, 88:10,
88:25, 90:3,
107:22, 120:24,
121:12, 121:14,
121:20, 121:21,
122:25, 123:2,
126:19, 126:21,

126:25, 129:6,
129:7, 130:7,
131:12, 132:6,
134:3
**wanted**
100:9, 126:18
**wanting**
51:16, 72:23
**wants**
113:20
**way**
39:17, 39:18,
39:24, 40:8,
63:8, 80:5,
85:2, 89:16,
99:14, 101:15,
103:4, 105:21,
108:19, 126:8,
130:25
**ways**
58:3, 67:11,
70:25, 84:4,
87:4
**we'll**
9:1, 132:14
**we're**
7:2, 9:4, 41:5,
41:8, 48:20,
54:13, 78:22,
79:2, 92:8,
103:18, 124:19,
129:15, 129:23,
132:22, 134:8
**we've**
41:1, 74:6,
84:3, 106:4
**welcome**
41:11, 78:25,
137:2
**well-known**
78:6
**went**
20:2, 45:7,
45:9, 63:16
**whatever**
9:3, 69:22,
116:10, 128:9
**whenever**
9:1, 10:9,

28:10, 30:6
**wherein**
73:21, 116:16,
118:25, 122:9
**whereof**
140:1
**whether**
20:4, 20:20,
21:11, 21:19,
37:17, 37:19,
40:19, 58:15,
70:2, 88:12,
97:21, 103:22,
111:4, 111:7,
114:17, 115:3,
116:6, 117:20,
118:9, 119:5,
124:13, 128:17,
128:21, 130:18,
131:21, 132:7,
133:13, 135:8,
136:2
**whole**
19:5, 19:20,
20:8, 48:6,
62:4, 68:17,
84:24, 87:12,
93:15, 113:9,
120:11, 120:13,
139:11
**wholistic**
31:2
**wholistically**
30:25
**wi-fi**
15:23, 15:24,
16:12, 18:13,
18:18, 21:11,
21:21, 29:9
**wi-fi-based-type**
16:6
**willing**
9:3
**wireless**
11:10, 16:4,
16:8, 19:19,
21:15, 119:16,
120:8, 121:6,

121:19

**within**
11:10, 21:21,
26:21, 27:25,
29:8, 40:24,
44:10, 44:16,
46:22, 47:5,
48:3, 70:15,
70:24, 71:4,
71:6, 73:7,
73:10, 75:9,
75:20, 78:8,
79:23, 94:25,
101:21, 113:15,
113:23, 114:8,
121:24, 139:6

**without**
48:18, 68:9,
109:23

**witness**
5:23, 6:2,
7:17, 10:9,
16:20, 21:2,
21:6, 25:7,
25:19, 26:4,
26:16, 27:3,
27:19, 28:23,
30:2, 30:24,
32:1, 33:5,
34:1, 34:11,
34:23, 36:11,
38:11, 38:24,
39:16, 40:7,
42:11, 42:25,
43:25, 52:14,
52:17, 57:20,
63:12, 64:9,
72:1, 72:3,
72:7, 72:11,
93:1, 93:13,
93:25, 95:13,
96:6, 96:14,
96:25, 97:9,
98:17, 99:10,
100:6, 100:11,
100:23, 102:18,
102:25, 103:14,
104:5, 106:8,

107:21, 108:5,
110:1, 110:18,
111:2, 112:14,
113:1, 113:8,
114:3, 114:22,
115:13, 117:2,
117:10, 121:9,
122:5, 123:16,
123:20, 133:24,
134:20, 134:22,
137:2, 139:14,
140:1

**wondering**
33:20, 40:3

**word**
26:4, 26:17,
30:7, 30:9,
35:22, 38:25,
48:13, 48:18,
48:21, 51:2,
53:16, 55:19,
68:8, 68:10,
78:11, 107:21,
107:23, 123:1

**word-for-word**
32:11

**words**
10:19, 12:5,
27:21, 69:19,
117:15, 124:11

**work**
7:15, 8:23,
13:22, 15:19,
16:3, 16:11,
16:23, 18:25,
19:2, 19:18,
21:10, 81:25,
89:15, 94:23

**worked**
9:18, 15:16,
15:18, 16:16,
16:20, 17:1,
17:3, 17:8, 20:9

**works**
78:16, 85:2,
99:14, 100:1

**world**
35:7

**worried**
64:13

**worry**
59:1

**worst-case**
86:17

**would've**
32:22

**wouldn't**
30:2, 38:11,
87:10

**writing**
28:11, 139:13

**written**
16:10, 28:25,
29:1, 29:23,
30:7, 38:13,
38:15, 48:9,
65:20, 73:12,
74:18, 81:20

**wrong**
45:13, 77:3,
129:24, 131:8

**Y**

**yeah**
12:24, 24:8,
24:19, 25:3,
33:5, 34:5,
37:12, 41:4,
41:16, 48:19,
52:14, 54:22,
55:2, 58:19,
60:7, 60:13,
62:5, 62:6,
65:9, 72:2,
72:3, 72:7,
72:11, 76:13,
76:18, 82:21,
83:14, 86:4,
88:5, 88:9,
88:22, 89:9,
91:11, 92:6,
92:17, 93:21,
98:18, 98:21,
99:22, 100:6,
110:13, 112:3,
112:19, 116:21,

118:22, 121:16,
122:19, 122:23,
123:20, 129:21,
134:6

**years**
20:8, 41:21,
94:11

**yongjiu**
20:16

**yourself**
14:23, 37:23,
38:6, 92:13,
105:12

**0**

**00**
1:21

**000**
7:22, 8:3,
9:25, 10:7,
12:15, 13:19,
14:18, 15:1,
15:7, 22:14,
22:20, 22:24,
23:17, 40:14,
40:24, 41:24,
42:21, 44:8,
44:25, 47:17,
52:23, 55:19,
55:21, 57:5,
61:2, 61:22,
62:8, 63:3,
63:23, 64:19,
66:1, 66:14,
67:21, 68:14,
69:11, 73:7,
73:10, 73:17,
75:7, 79:11,
82:11, 91:3,
91:21, 92:2,
98:9, 102:12,
103:23, 106:12,
136:14

**00980**
1:6, 5:7

**01**
5:9

**01130**
3:25, 3:34,

51:13, 59:15, 59:18

**03**
41:6

---
**1**
---

**1**
78:19, 78:23
**10**
48:25, 49:7, 66:7, 79:12, 83:25, 87:20, 92:11, 98:5, 106:25, 109:6, 109:19, 140:10
**101**
4:7
**11**
1:21, 5:9, 60:1, 61:9
**11,032,000**
3:20, 45:2
**1131**
122:7
**12**
3:15, 3:24, 7:7, 7:25, 22:12, 41:6, 41:9, 51:12, 51:18, 55:2, 56:7, 56:21
**12277**
1:27
**13**
3:24, 48:25, 49:8, 51:12, 82:18, 111:14, 116:17, 116:18
**134**
3:8
**14**
41:9
**140**
1:25
**14422**
140:11
**15**
24:20, 79:1

**16**
94:10
**17**
1:20, 3:16, 5:8, 68:19, 94:10
**18**
82:18, 84:25, 140:3
**19**
3:30, 58:9, 68:19

---
**2**
---

**20**
84:23, 119:18, 120:7, 133:10
**2014**
3:31, 58:9
**2021**
3:21, 19:11, 19:13, 45:2
**2022**
3:25, 3:34, 51:12, 51:13, 59:15, 59:18
**2025**
9:13, 10:2
**2026**
1:20, 3:15, 5:8, 7:7, 140:3, 140:12
**2027**
140:10
**21**
40:15
**2100**
4:18
**214**
2:9
**22**
27:10, 33:16
**24**
1:6, 5:7, 82:21
**25**
31:14, 84:23
**26**
39:5, 39:16,

39:22, 48:25, 49:8
**27**
78:19
**28**
84:25

---
**3**
---

**3**
134:9, 134:12, 137:5, 137:7, 140:10
**30**
12:19, 13:1, 14:19, 15:8, 71:19, 140:12
**303**
4:17
**304**
68:23, 69:3, 69:8
**3050**
2:9
**306**
68:24, 69:4
**308**
68:24, 69:6
**32**
41:13
**340**
2:7
**35**
69:11
**356**
23:11, 23:12, 24:2, 40:12, 40:23, 49:13, 49:25, 50:8, 50:11, 51:9, 52:17, 55:18, 56:1, 56:3, 56:5, 57:8, 57:11, 57:16, 57:24, 59:16, 60:6, 60:23, 61:1, 61:11, 61:18, 61:21, 62:8, 63:3,

63:23, 64:9, 65:25, 69:11, 91:22
**37**
46:17, 69:11, 91:5
**38**
42:17
**39**
91:5
**3950**
4:8
**3g**
18:3, 18:18
**3g-based**
16:18
**3gpp**
16:17, 21:21, 23:19, 29:8, 44:1, 46:4, 59:3, 78:6, 88:18, 88:21, 111:20, 112:7, 113:23, 114:3, 114:8, 114:24, 115:22, 116:4, 116:8, 117:7, 121:23

---
**4**
---

**4**
56:7
**40**
12:20, 13:1, 13:5, 13:24, 14:6, 14:16, 14:19, 15:8, 44:4, 44:7, 75:6, 122:7
**41**
49:1, 49:8, 68:4, 75:17, 79:4, 87:18, 87:19
**415**
4:10
**42**
48:22, 52:3,

53:14, 54:5,
134:9
**421**
4:10
**44**
98:4, 99:6
**45**
3:19
**46**
92:20
**47**
78:23
**4:-cv**
1:6, 5:7
**4g**
17:1, 18:4,
18:18

**5**

**5**
95:24
**50**
14:6, 14:16
**500**
97:17, 102:20,
103:15
**504**
93:6, 93:10,
93:23, 95:16,
95:17, 95:20,
95:23, 96:1,
96:3, 96:12,
96:16, 96:23,
97:4, 97:7,
97:21, 97:23,
98:1, 102:23,
103:6, 103:12
**51**
3:23
**512**
4:20
**524**
104:20, 104:21,
105:1
**53**
134:12
**56**
137:5, 137:7

**58**
3:29
**59**
3:33
**5g**
18:9

**6**

**6140**
4:10
**6251**
2:7
**625142**
1:24
**635**
46:17
**639**
23:12, 52:23,
91:23, 92:1
**692**
4:20

**7**

**75205**
2:8
**768**
2:9
**78**
119:15, 119:18,
120:5
**78701**
4:19
**79**
123:23, 129:18,
133:10

**8**

**8,009,639**
23:16
**8,811,356**
3:26, 3:30,
3:35, 23:15,
51:13, 58:7,
58:9, 59:19
**80**
16:6
**8700**
4:20

**9**

**90**
16:7
**94111**
4:9

**�**

**�other**
124:5
**�physical**
124:7
**�same**
124:3
**�the**
105:10