**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) |
| *Plaintiffs*, | ) **C.A. No. 4:24-cv-00980-ALM** |
| | ) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| AMERICAN AIRLINES, INC. | ) |
| | ) |
| *Defendant*. | ) |

**PLAINTIFFS' SUPPLEMENTAL RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................. 1

II.    '841 PATENT / '584 PATENT ........................................................................................ 1

      A.    "operational [and/or] connectivity problems" ('841 Patent, Claim 1; '584 Patent, Claims 5, 6) / "hardware [and/or] software problems" ('841 Patent, Claim 1; '584 Patent, Claim 6)............................................................ 1

      B.    "communications [between/within] the first [HPC] and second [HPC] clusters are isolated" ('841 Patent, Claim 8; '584 Patent, Claims 1, 10)............... 3

      C.    "high performance [computing] cluster" ('841 Patent, Claim 9; '584 Patent, Claims 1, 10)............................................................................................... 3

      D.    "means ... to limit access ..." ('584 Patent, Claim 8) ............................................. 4

III.   '282 PATENT ................................................................................................................... 4

      A.    "root image" (Claims 1, 4, 5, 15, 17, 20, and 21) ................................................. 4

      B.    "appropriate persistent mapping" (Claims 1 and 15) ............................................ 5

      C.    "low-level driver" (Claim 1) .................................................................................. 5

      D.    "the modifying" (Claim 15) ................................................................................... 6

      E.    "at an operational level" (Claim 26) ...................................................................... 6

IV.   '080 PATENT ................................................................................................................... 6

      A.    "distributed parallel computing program" (Claims 1, 4, 5, 6, 9, 17, and 18) ......... 6

      B.    "distributed sequential computing program" (Claims 1 and 9) ............................. 7

      C.    "parallel processing and/or operations" (Claims 1 and 9) ..................................... 8

V.  '000 PATENT ................................................................................................................... 8

      A.    "time interval" / "time intervals" (Claims 1, 6 and 13) ......................................... 8

      B.    "a processor" / "the processor" (Claims 1, 2 and 4) "a receiver" / "the receiver" (Claims 1, 2 and 4) "a transmitter" / "the transmitter" (Claim 1).......................... 9

      C.    "in the same time interval that the uplink physical signal is sent, a plurality of UEs transmit uplink physical signals in the same time interval" (Claim 1)..... 10

VI.   CONCLUSION............................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007)........................................................................................6

*BASF Corp. v. Johnson Matthey Inc.*,
    875 F.3d 1360 (Fed. Cir. 2017)......................................................................................2

*Cheetah Omni LLC v. Alcatel-Lucent Inc.*,
    939 F. Supp. 2d 649 (E.D. Tex. 2013)............................................................................6

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006)......................................................................................2

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)......................................................................................1

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006)......................................................................................6

*Finjan LLC v. SonicWall, Inc.*,
    84 F.4th 963 (Fed. Cir. 2023) .......................................................................................9

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
    355 F.3d 1327 (Fed. Cir. 2004)......................................................................................4

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
    902 F.3d 1372 (Fed. Cir. 2018)......................................................................................1

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)......................................................................................2

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005)....................................................................................10

*Liberty Ammunition, Inc. v. United States*,
    835 F.3d 1388 (Fed. Cir. 2016)......................................................................................2

*Micro Chemical, Inc. v. Great Plains Chemical Co.*,
    194 F.3d 1250 (Fed. Cir. 1999)......................................................................................4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)........................................................................................................1

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................................................................5

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    2019 WL 3973907 (N.D. Cal. 2019) ....................................................................................8

*Salazar v. AT&T Mobility LLC*,
    64 F.4th 1311 (Fed. Cir. 2023) ............................................................................................9

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017)............................................................................................1

*Trs. of Columbia Univ. in City of New York v. NortonLifeLock, Inc.*,
    No. 3:13 CV 808, 2019 WL 7040931 (E.D. Va. Dec. 20, 2019)............................................7

**TABLE OF CLAIM CONSTRUCTION POSITIONS**

| Patent / Claim(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "operational [and/or] connectivity problems" ('841 Patent, Claim 1; '584 Patent, Claims 5, 6) / "hardware [and/or] software problems" ('841 Patent, Claim 1; '584 Patent, Claim 6) | Plain and ordinary meaning, not indefinite | Indefinite |
| "communications [between/within] the first [HPC] and second [HPC] clusters are isolated" ('841 Patent, Claim 8; '584 Patent, Claims 1, 10) | Plain and ordinary meaning | network traffic within each cluster is maintained separate from other clusters by a gateway positioned between the private cluster network and the private company network that manages traffic destined for its corresponding cluster |
| "high performance [computing] cluster" ('841 Patent, Claim 9; '584 Patent, Claims 1, 10) | Plain and ordinary meaning, not indefinite | Indefinite |
| "means ... to limit access ..." (Claim 8) '584 Patent | *Function*: limit access to the first cluster to communication access from a first client associated with the first client task and limit access to the second cluster to communication access from a second client associated with the second client task. *Structure*: Firewall and authentication system/mechanism (e.g., 210), including implementations such as per-cluster firewall/authentication systems/mechanisms (e.g., 410/411/412), and associated software/hardware configured to (1) direct incoming connections to the correct cluster and (2) authenticate the user/client to ensure | *Function*: limit access to the first cluster to communication access from a first client associated with the first client task and limit access to the second cluster to communication access from a second client associated with the second client task *Structure*: firewall and authentication mechanism 210 |

iv

| Patent / Claim(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| | access only to the authorized cluster, and equivalents thereof. | |
| "root image" (Claims 1, 4, 5, 15, 17, 20, and 21) '282 Patent | Plain and ordinary meaning | a read-only base set of data blocks, operating beneath the file system, that provide the common portion of the application environment |
| "appropriate persistent mapping" (Claims 1 and 15)'282 Patent | Plain and ordinary meaning, not indefinite | Indefinite |
| "low-level driver" (Claim 1) '282 Patent | Plain and ordinary meaning | driver that operates below the file system |
| "the modifying" (Claim 15) '282 Patent | Plain and ordinary meaning, not indefinite | Indefinite |
| "at an operational level" (Claim 26) '282 Patent | Plain and ordinary meaning, not indefinite | Indefinite |
| "distributed parallel computing program" (Claims 1, 4, 5, 6, 9, 17, and 18) '080 Patent | Plain and ordinary meaning | program that computes using multiple concurrent distributed sequential computing programs configured to operate across multiple processors/nodes and multiple memories |
| "distributed sequential computing program" (Claims 1 and 9) '080 Patent | Plain and ordinary meaning | program using a single locus of computation over distributed data |
| "parallel processing and/or operations" (Claims 1 and 9) '080 Patent | Plain and ordinary meaning | system that uses a globally accessible memory space built on distributed memories |
| "time interval" / "time intervals" (Claims 1, 6 and 13) '000 Patent | Plain and ordinary meaning | "time slot" and "time slots" |
| "a processor" / "the processor" (Claims 1, 2 and 4) '000 Patent | Plain and ordinary meaning | one or more processors, at least one of which is configured to receive resource allocation information ..., send, over the physical uplink shared channel, data ..., send the uplink physical signal ..., and receive, on a physical control channel, control information ... |

| Patent / Claim(s) | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a receiver" / "the receiver" (Claims 1, 2 and 4) '000 Patent | Plain and ordinary meaning | one or more receivers, at least one of which is configured to receive resource allocation information..., and receive, on a physical control channel, control information... |
| "a transmitter" / "the transmitter" (Claim 1) '000 Patent | Plain and ordinary meaning | one or more transmitters, at least one of which is configured to send, over the physical uplink shared channel, data ..., and send the uplink physical signal ... |
| "in the same time interval that the uplink physical signal is sent, a plurality of UEs transmit uplink physical signals in the same time interval" (Claim 1) '000 Patent | Plain and ordinary meaning; not indefinite | indefinite under *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) |

vi

## I.    INTRODUCTION

Defendant ("AA") propounds constructions that improperly read limitations into the claims, are based on misinterpreting prosecution histories, or are otherwise unsupported by evidence. Plaintiffs' ("IV") constructions, based on the available evidence, should thus be adopted.

## II.    '841 PATENT / '584 PATENT[1]

### A.    "operational [and/or] connectivity problems" ('841 Patent, Claim 1; '584 Patent, Claims 5, 6) / "hardware [and/or] software problems" ('841 Patent, Claim 1; '584 Patent, Claim 6)

AA's indefiniteness challenge rests on a fundamental misapplication of governing law. The test under *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014), is not whether a claim term resolves every conceivable edge case, but whether the claims, read in light of the specification and prosecution history, "inform those skilled in the art about the scope of the invention with reasonable certainty." The terms "operational and/or connectivity problems" and "hardware and/or software problems" are neither purely subjective nor dependent on personal opinion. They are instead well-understood technical terms.

AA invokes *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) and *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372 (Fed. Cir. 2018), for the proposition that purely subjective terms are indefinite. But those cases involved terms that were genuinely aesthetic or preference-dependent. *Datamize* concerned an "aesthetically pleasing" interface, and *T-Mobile* involved a "significant" connection characteristic evaluated from the perspective of an unanchored human observer. Neither resembles the terms at issue here. Further, the Federal Circuit has consistently distinguished between claims that require some degree of judgment (permissible) and claims that provide no objective anchor (impermissible). *See Sonix*

---

[1] AA does not address the "wherein the first configuration differs from the second configuration ('841 Patent, claim 1; '584 Patent, claims 1, 10) argument in its briefing.

*Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377-78 (Fed. Cir. 2017) ("That some claim language may not be precise does not automatically render a claim invalid."); *see also Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370–71 (Fed. Cir. 2014). AA misreads *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1395–96 (Fed. Cir. 2016), where the term "reduced ricochet tendency" had no objective reference in the intrinsic record.

AA contends that the specifications fail to provide an "example, threshold, or metric" for what qualifies as a "problem," but the specifications do not need to do so because they anchor the claim terms to specific, well-understood industry protocols. *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1366 (Fed. Cir. 2017). For example, the specifications identify IPMI as the per-node monitoring mechanism that "monitors the hardware and software components" and SNMP as the mechanism by which nodes "report status back to the main monitoring system." Dkt. 139-2, 7:37–46; 8:35–38. AA's three examples do not alter this understanding. Movie streaming reducing bandwidth is an expected consequence of normal network usage, not a "connectivity problem" in the context of computing clusters. Repeated failed login attempts arising from forgotten passwords are an access/authentication event and do not constitute "operational or connectivity problems." And a long-running computational task is the normal and desired mode of HPC operations. AA's argument that "hardware/software problems" may also constitute "operational problems" renders these terms indefinite fails because claim differentiation does not require that claim terms be mutually exclusive. It is entirely consistent with patent law for hardware failures to constitute a subset of operational problems—a species can overlap with a genus. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006).

**B.** **"communications [between/within] the first [HPC] and second [HPC] clusters are isolated" ('841 Patent, Claim 8; '584 Patent, Claims 1, 10)**

AA's one-size-fits-all proposed construction fails for multiple reasons, not least because (1) the claim language in '841 Patent, claim 8 ("between") differs in scope from the claim language in '584 Patent, claims 1 and 10 ("within"); (2) the claims do not limit the "isolat[ion]" function to be performed by specific structure and the specification does not preclude other possible structure for isolating communications; and (3) the '841 Patent, claim 8 recites a "gateway *mechanism*," while the '584 Patent, claims 1 and 10 recite a "gateway." *See* Dkt. 139, 5-6. The specifications describe that gateway "mechanisms" may operate to "isolate each cluster such that communications within a cluster" or "on a private cluster communications network are maintained separate." Dkt. 139-2, Abstract; *see also id.*, 3:43-47. These disclosures describe a "mechanism" that includes gateway functionality, *not* a gateway itself. AA's arguments improperly conflates gateway and gateway functionality. AA's proposed construction is further wrong because it attempts to inject the language "private company network" into this term.

**C.** **"high performance [computing] cluster" ('841 Patent, Claim 9; '584 Patent, Claims 1, 10)**

AA's sole argument for this term fails because it is not a term of degree. Rather, the specifications describe that a HPC cluster is one that is configured to "allow a set of computers to work together to solve a single problem" by breaking down the large problem "into smaller independent tasks that are assigned to individual computers in the cluster allowing the large problem to be solved faster." *E.g.*, Dkt. 139-2, 1:51-55. AA's brief tellingly glosses over this disclosure, characterizing it as "undefined rhetoric" without addressing the language itself. Also, the specification and claim 9 refers to a "high" availability cluster, yet AA does not argue that this same language renders that element indefinite as a term of degree. Further, cited art on the face of

the patents confirms the "HPC" terminology was sufficiently definite. *See, e.g.*, Ex. 14[2] (patent publication titled "Graphical user interface for managing **_HPC_** clusters") (emphasis added). Finally, AA's "same [cluster] architecture" argument ignores the patent disclosures that enable distinction between different cluster types. Dkt. 139-3, ¶ 96.

### D.    "means ... to limit access ..." ('584 Patent, Claim 8)

AA's rebuttal improperly narrows the corresponding structure to "firewall and authentication mechanism 210," ignoring the specification's disclosure of the per-cluster systems 410/411/412 shown in Figure 4. *See* Dkt. 139-6, 9:17–38; Fig. 4. The specification expressly states that each of systems 410/411/412 are "configured to only allow a particular client … to access the corresponding cluster." *Id.*, 9:24–27. That language ties 410/411/412 directly to the same claimed function of claim 8. *See Micro Chemical, Inc. v. Great Plains Chemical Co.*, 194 F.3d 1250, 1258–59 (Fed. Cir. 1999) (when multiple embodiments in the specification correspond to the claimed function, the structure properly embraces each of those embodiments). AA's "added functionality" argument misconstrues IV's construction. IV's structural description of the two-step authentication process describes *how* the disclosed structure performs the agreed-upon access-limitation function. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1334 (Fed. Cir. 2004).

## III.    '282 PATENT[3]

### A.    "root image" (Claims 1, 4, 5, 15, 17, 20, and 21)

This Court previously construed "root image" in a related patent in this family as "a common set of data blocks that are unchanged by the plurality of compute nodes." Dkt. 127, 18. That construction reflects in part the patent family's core teaching that the root image is the shared _base_ image from which compute nodes derive their individual application environments. AA

---

[2] Submitted herewith is the declaration of Jonathan K. Waldrop, with exhibits ("Ex. __").

[3] AA does not address the "new data blocks" (claims 1 and 15) argument in its briefing.

4

(again) asks this Court to add "read-only" and "operating beneath the file system" limitations, but offers no compelling reason why the construction should be narrowed. Dependent claims 13 and 29 already recite a "read only" storage unit. Dkt. 139-7, 7:58–59, 8:58-59. AA's "read-only" limitation also cannot be squared with the reconciliation disclosures. *See* Dkt. 139-7, 6:31–37. Further, AA's argument that the root image must be characterized as operating beneath the file system because of the UBD improperly conflates two distinct elements: the UBD (a driver/interface component) and the root image (a set of data blocks stored on a first storage unit).

**B.   "appropriate persistent mapping" (Claims 1 and 15)**

AA argument that this term is indefinite because the specification "never supplies the degree" for what makes a mapping "appropriate" fails because the specification provides an objectively bounded description of exactly when a mapping is "appropriate." *See* Dkt. 139-7, 5:3–11. A POSITA would understand with complete clarity that "appropriate persistent mapping" describes a state-dependent operation: if sector X is not yet recorded in the leaf image, the UBD creates a new mapping redirecting that sector's writes to the second storage unit; if sector X already exists in the leaf image, no new mapping is needed because the persistent mapping already exists. "Appropriate" in this context is bounded by "persistent," which has a well-understood meaning.

**C.   "low-level driver" (Claim 1)**

AA argument that the specification's statement that UBDs "operate below the file system" must be read into the claims is classic claim-construction error. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). The specification's relevant passage uses the phrase "operate below the file system" as a *functional explanation* of why the system is file system and operating system independent—it is not a definitional restriction. *See* Dkt. 139-7, 4:42–51. The specification calling UBDs "effectively" low-level drivers signals description by analogy, not lexicography.

### D.    "the modifying" (Claim 15)

AA argues that "the modifying" in claim 15 lacks antecedent basis because no prior limitation in the claim is expressly labeled "modifying." But claim 15 describes a method that includes receiving a write request for sector X and writing sector X on the second storage unit. The natural, technically coherent reading is that "the modifying" refers to the modification of the second storage unit. *See* Dkt. 139-7, 5:1–11; *see also Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006); *Cheetah Omni LLC v. Alcatel-Lucent Inc.*, 939 F. Supp. 2d 649 (E.D. Tex. 2013).

### E.    "at an operational level" (Claim 26)

AA argument that "operational level" is indefinite because it does not appear in the specification fails, but claims may use language that conveys a clear meaning to a POSITA, even without an explicit specification definition. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007). The key phrase in claim 26 is "at an operational level between the first and second storage units and [the] file system of the compute node." This distinguishes dynamic merging in accessing application environment from static, pre-computed merges. *See* Dkt. 139-7, 6:44–50.

## IV.    '080 PATENT

### A.    "distributed parallel computing program" (Claims 1, 4, 5, 6, 9, 17, and 18)

AA's attempt to construe "distributed parallel computing program" as a "program that computes using multiple concurrent distributed sequential computing programs configured to operate across multiple processors/nodes" fails because it attempts to equate descriptive statements in the summary of the invention section and specification to mandatory claim limitations. AA's argument that IV's construction of the term "distributed parallel computing program" fails to align with a POSITA's perspective, is conclusory because AA never actually defines what a POSITA's perspective would be and only concludes that IV's construction is wrong. As to AA's argument

6

regarding a uni-processor, AA also fails to acknowledge that the specification of the '080 Patent expressly teaches that the execution environment of a DPC application may vary: "a DPC application targeted to multi-processor environments may be utilized on a uni-processor and operates as a multi-threaded application." Dkt. 139-8, 6:1-4. AA's use of expert testimony as this juncture conflicts with the specification of the '080 Patent. [4]

### B.    "distributed sequential computing program" (Claims 1 and 9)

AA's argument that "distributed sequential computing program" should be construed as "program using a single locus of computation over distributed data" is wrong because it makes a description of the term into a rigid definitional limitation. AA discusses the perspective of a POSITA yet does not describe what it believes the perspective of a POSITA to be, making its argument speculative and conclusory. Contrary to AA's argument that there is "no support" for IV's construction, IV's expert stated that "[t]he specification further explains that a self-migrating thread may be utilized to perform distributed sequential computing. In the example provided, a single thread migrates between processors to access distributed data and then continues computation." *See* Dkt. 139-8, 3:55-69. IV's expert explained a distributed sequential computing program may execute across multiple processors or memory locations. Dkt. 139-3, ¶ 241.

---

[4] AA repeatedly states that when an "expert testimony … conflicts with the specification … It should be given no weight." Dkt. 141, 21. However, Dr. Shamos' testimony contradicts the specification of the '080 Patent in multiple instances. Dr. Shamos' testimony is further unreliable because Dr. Shamos previously submitted a declaration to the PTAB concerning the validity of the '080 Patent ("PTAB Declaration") and offered differing constructions. For example, he stated that "I understand that Patent Owner does not believe any claim construction is necessary in this proceeding, and I concur. I have accorded all of the claim terms their plain and ordinary meaning to a POSITA." Ex. 15 at ¶¶ 42-43. However, Dr. Shamos now construes five terms, some of which are not construe according to their plain and ordinary meaning—this is improper. *Trs. of Columbia Univ. in City of New York v. NortonLifeLock, Inc.,* No. 3:13 CV 808, 2019 WL 7040931, at *6 (E.D. Va. Dec. 20, 2019). Dr. Shamos also stated that his construction of the terms changed "based on the audience for the declaration." Dkt. 139-10, 54:24-25.

C.    **"parallel processing and/or operations" (Claims 1 and 9)**

Contrary to AA's argument, the alleged disclaimer of "parallel processing and/or operations," is not clear nor unmistakable. AA does not address the fact that the alleged disclaimer did not actually pertain to parallel processing and/or operations. Instead, AA tries to equate parallel processing and/or operations with a "parallel distributed application" or a "parallel distributed system," without justification. AA's proposed construction would also improperly exclude commonplace and well-understood forms of parallel and concurrent execution that a POSITA would consider to fall squarely within the ordinary meaning of "parallel processing." *Id.*, ¶ 257.

V.    <u>'000 PATENT</u>

A.    **"time interval" / "time intervals" (Claims 1, 6 and 13)**

AA argues that the term time interval should be construed to mean time slot because of prosecution disclaimer (Dkt. 141, 25). That argument fails because AA misapplies the IPR record. The alleged statement arises from an IPR involving a different patent and dispute. The IPR in question involved the related '356 Patent did not seek a construction of the term "time interval." The patent owner addressed a larger, different limitation. Ex. 16, 10. The Patent Owner's construction focused on the temporal relationship between transmissions, not on redefining "time interval" as a rigid "time slot" and the Patent Owner's construction was not adopted. *Power Integrations, Inc. v. ON Semiconductor Corp.*, 2019 WL 3973907, *8-*9 (N.D. Cal. 2019) (refusing to find a prosecution disclaimer where the PTO rejected the patentee's proposed construction).

AA's argument depends on extracting a single sentence from that discussion and treating it as a definitional statement. But when read in context, the IPR makes clear that Patent Owner was not defining "time interval," much less disclaiming scope. To the contrary, the same sections relied upon by AA in the IPR, expressly discussed the embodiments involving fractionation across

8

frames and multiple UL-Beacon time slots per frame as argued in IV's opening brief. Ex. 16, 11-12. Even if the terms are used interchangeably in certain contexts, such usage does not amount to a definitional statement or a surrender of claim scope. As IV explained in its Supplemental Opening Brief, those embodiments are incompatible with AA's proposed construction. Accordingly, there is no "clear and unmistakable" disclaimer. Dkt. 139, 24-25. At most, the IPR reflects contextual usage in addressing a different issue, not a deliberate narrowing of claim scope.

B.    **"a processor" / "the processor" (Claims 1, 2 and 4) "a receiver" / "the receiver" (Claims 1, 2 and 4) "a transmitter" / "the transmitter" (Claim 1)**

AA's proposed constructions for "a processor," "receiver," and "transmitter" should be rejected because they do not reflect any genuine claim construction dispute. Instead, AA attempts to impose an unsupported requirement that a single component must perform all recited functions. As IV explained in its Supplemental Opening Brief, these terms are well understood and require no construction beyond their plain and ordinary meaning. AA does not identify any ambiguity in the claim language or any intrinsic evidence warranting departure from that meaning. Moreover, American's reference to *Finjan LLC v. SonicWall, Inc.,* 84 F.4th 963, 975 (Fed. Cir. 2023) and *Salazar v. AT&T Mobility LLC,* 64 F.4th 1311, 1315, 1318 (Fed. Cir. 2023) is unavailing. In *Salazar* the Court referenced the *Varma* decision for the proposition that "for a dog owner to have a dog that rolls over and fetches sticks, it does not suffice that he has two dogs, each able to perform just one of the tasks." *Salazar*, 64 F.4th at 1318. However, as explained in IV's opening brief, the specification explains that "the invention" contemplates multiple processors, receivers, and transmitters in the context of the invention. *See* Dkt. 139, 26. Nothing in the claims requires that all recited functions be performed by the same processor or prohibits implementation across multiple processors or processing elements. The same defect applies to AA's constructions of "receiver" and "transmitter," which are recited in the same manner and do not impose any

9

requirement that a single component perform all receiving/transmitting functions. These are standard components in wireless systems, and the claims do not require that a single receiver or transmitter perform all receiving or transmitting functions. A POSITA would readily understand that such functionality may be implemented across multiple components, modules, or layers, including combinations of hardware and software. Dkt. 139-12, ¶ 50 ("A POSITA would understand that modern user equipment commonly distributes these functions across multiple cooperating hardware and software components.").

C. **"in the same time interval that the uplink physical signal is sent, a plurality of UEs transmit uplink physical signals in the same time interval" (Claim 1)**

AA contends that this limitation is indefinite under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005), which courts have recognized as a narrow doctrine (Dkt. 139, 29), on the theory that it is unclear when infringement occurs.[5] That argument fails. The claim is directed to a system in which the UE is "configured to" operate in a particular manner. The "configured to" language focuses on whether the UE includes the claimed receiver, transmitter, and processor arranged to perform the recited functions—not on a user or third party. Dkt. 139-12, ¶ 71. This case is unlike *IPXL*, a recognized narrow decision, which involved a claim that improperly required both a system and a user to perform a step where the dependent claim specified claim elements and required also that "the user uses the input means," creating ambiguity as to infringement. *IPXL*, 430 F.3d at 1384. Here, claim 1 does not require any user-performed action and does not mix apparatus and method requirements in a way that creates uncertainty.

VI. **CONCLUSION**

For the reasons provided above and in Dkt. 139, IV's constructions should be adopted.

---

[5] AA does not address the second *IPXL* argument in its briefing.

Dated: April 20, 2026

Respectfully submitted,

By: */s/ Jonathan K. Waldrop*

    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    ThucMinh Nguyen (CA Bar No. 304382)
    (Admitted in this District)
    tnguyen@kasowitz.com
    Jonathan Hicks (CA Bar No. 274634)
    (Admitted *pro hac vice*)
    jhicks@kasowitz.com
    **KASOWITZ LLP**
    101 California Street, Suite 3950
    San Francisco, California 94111
    Telephone: (415) 421-6140
    Facsimile: (415) 358-4408

    Paul G. Williams (GA Bar No. 764925)
    (Admitted in this District)
    pwilliams@kasowitz.com
    **KASOWITZ LLP**
    1230 Peachtree Street N.E., Suite 2445
    Atlanta, Georgia 30309
    Telephone: (404) 260-6080
    Facsimile: (404) 260-6081

    Jeceaca An (NY Bar No. 5849898)
    (Admitted *pro hac vice*)
    jan@kasowitz.com
    Binta A. Watkins (NY Bar No. 5482492)
    (Admitted *pro hac vice*)
    bwatkins@kasowitz.com
    Kristine Abrenica (NY Bar No. 5781489)
    (Admitted *pro hac vice*)
    kabrenica@kasowitz.com

11

Paula Ajumobi (NY Bar No. 6056097)
(Admitted *pro hac vice*)
pajumobi@kasowitz.com
**KASOWITZ LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1800
Facsimile: (212) 506-1700

Allen F. Gardner (TX Bar No. 24043679)
allen@allengardnerlaw.com
**ALLEN GARDNER LAW, PLLC**
609 S. Fannin
Tyler, Texas 75701
Telephone: (903) 944-7537
Facsimile: (903) 944-7856

**Attorneys for Plaintiffs
INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC**

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record on this 20th day of April, 2026, via the Court's CM/ECF system.

/s/ *Jonathan K. Waldrop*
Jonathan K. Waldrop