## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC AND INTELLECTUAL VENUTRES II, LLC, <br><br>     **Plaintiff,** <br><br>   **vs.** <br><br> AMERICAN AIRLINES, INC., <br><br>     **Defendant.** | **Civil Action No. 4:24-cv-00980** <br><br><br> **JURY TRIAL** |

## AMERICAN AIRLINES, INC.'S SUPPLEMENTAL CLAIM CONSTRUCTION SUR-REPLY BRIEF

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    '841 and '584 patents........................................................................................1

       A.    "operational [and/or] connectivity problems" ('841 Pat. Cl. 1; '584 Pat. Cls. 5, 6) / "hardware [and/or] software problems" ('841 Pat. Cl. 1; '584 Pat. Cl. 6)...............................................1

       B.    "high performance [computing] cluster" ('841 Pat. Cl. 9; '584 Pat. Cls. 1, 10) ........................................................................2

III.   '000 Patent ........................................................................................................4

       A.    "time interval" / "time intervals" (Claims 1, 6, and 13) ........................................4

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Datamize, LLC v. Plumtree Software, Inc.*,
 417 F.3d 1342 (Fed. Cir. 2005)................................................................................................2

*Halliburton Energy Servs. v. M-I LLC*,
 514 F.3d 1244 (Fed. Cir. 2008)................................................................................................1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 572 U.S. 898 (2014)..........................................................................................................1, 2, 4

*Seattle Box Co. v. Indus. Crating & Packaging, Inc.*,
 731 F.2d 818 (Fed. Cir. 1984)..................................................................................................2

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
 844 F.3d 1370 (Fed. Cir. 2017)................................................................................................2

**TABLE OF EXHIBITS**

| Ex. No. | Description | Dkt. No. |
|---|---|---|
| **Exhibits attached to Plaintiff's Briefing** | | |
| 1. | U.S. Patent No. 7,822,841 (the "'841 Patent") | Dkt. No. 139-2 |
| 2. | Declaration of Mahdi Eslamimehr, Ph.D. in support of Claim Construction, dated February 12, 2026 | Dkt. No. 139-3 |
| 3. | Excerpts from the Transcript of the March 12, 2026 Deposition of Michael T. Goodrich, Ph.D. | Dkt. No. 139-4 |
| 4. | Declaration of Michael T. Goodrich in support of Claim Construction, dated February 12, 2026 | Dkt. No. 139-5 |
| 5. | U.S. Patent No. 8,352,584 (the "'584 Patent") | Dkt. No. 139-6 |
| 6. | U.S. Patent No. 7,721,282 (the "'282 Patent") | Dkt. No. 139-7 |
| 7. | U.S. Patent No. 7,712,080 (the "'080 Patent") | Dkt. No. 139-8 |
| 8. | Declaration of Michael Shamos, Ph.D. (Markman Declaration), dated February 12, 2026 | Dkt. No. 139-9 |
| 9. | Excerpts from the Transcript of the March 16, 2026 Deposition of Michael Shamos, Ph.D. | Dkt. No. 139-10 |
| 10. | U.S. Patent No. 11,032,000 (the "'000 Patent") | Dkt. No. 139-11 |
| 11. | Declaration of Joseph D. Camp, dated February 12, 2026 | Dkt. No. 139-12 |
| 12. | Excerpts from the Transcript of the March 17, 2026 Deposition of Joseph D. Camp, Ph.D. | Dkt. No. 139-13 |
| 13. | Declaration of Dr. Daniel van der Weide in support of Claim Construction, dated February 12, 2026 | Dkt. No. 139-14 |
| 14. | U.S. Patent App. No. 2005/0235055 A1 | Dkt. No. 142-2 |
| 15. | IPR Declaration of Michael Ian Shamos, Ph.D., J.D. | Dkt. No. 142-3 |
| 16. | IPR 2022-01130 Patent Owner's Preliminary Response | Dkt. No. 142-4 |

| Ex. No. | Description | |
|---|---|---|
| **Exhibits attached to Defendant's Briefing** | | |
| A. | Transcript of the March 16, 2026 Deposition of Michael Shamos, Ph.D. | Dkt. 141-1 |
| B. | '080 File History — July 22, 2008 Office Action | Dkt. 141-2 |
| C. | '080 File History — January 21, 2009 Office Action Response | Dkt. 141-3 |
| D. | IPR2022-01130 Patent Owner's Preliminary Response ('356 POPR) | Dkt. 141-4 |
| E. | U.S. Patent No. 8,811,356 | Dkt. 141-5 |
| F. | Transcript of the March 17, 2026 Deposition of Joseph Camp | Dkt. 141-6 |
| G. | IPR 2022-01130 — '356 Institution Decision | |
| H. | IPR 2022-01130 — '356 Final Written Decision | |

iii

## I. INTRODUCTION

American submits this targeted sur-reply in response to newly raised arguments in IV's "Supplemental Responsive Claim Construction Brief" (hereinafter "Reply").

## II. '841 AND '584 PATENTS

### A. "operational [and/or] connectivity problems" ('841 Pat. Cl. 1; '584 Pat. Cls. 5, 6) / "hardware [and/or] software problems" ('841 Pat. Cl. 1; '584 Pat. Cl. 6)

| American's Construction | Plaintiffs' Position |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

IV attempts to distinguish the indefiniteness authorities cited by American (Dkt. 141 at 5) by focusing on the particular terms at issue in those cases. Dkt. 142 at 1. But a specific term is beside the point. The indefiniteness inquiry is the same: whether, "viewed in light of the specification and prosecution history, [the claim] inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Functional language, "defined by what it does rather than what it is[,]" fails to provide such objective boundaries to adequately distinguish the scope of the invention, rending the claim indefinite. *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1248, 1255-56 (Fed. Cir. 2008) (treating "fragile gel" as functional language because it purported to claim any drilling fluid exhibiting a certain performance behavior—"fragile gel behavior"—without providing objective boundaries).

Here, "operational [and/or] connectivity problems" and "hardware [and/or] software problems" describe problems to be identified by the monitoring system, yet the specifications provide no example, threshold, or metric for what qualifies as a "problem." Ex. 4 at ¶¶ 32-43, 78, 81. "Problems" is no less subjective than "aesthetically pleasing" or "significant"—two persons of ordinary skill could look at the same cluster behavior and disagree about whether it constitutes

a "problem," and nothing in the specifications resolves that disagreement. Dkt. 141 at 6; *see also Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005); *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017).

*Sonix Tech.* cuts against IV's argument. IV argues the specifications identify IPMI and SNMP as monitoring mechanisms but identifying monitoring tools does not define what is a "problem." In *Sonix Tech.*, the Federal Circuit "refused to limit the 'facially subjective claim term' to the single example in the written description because, without more information, 'a skilled artisan is still left to wonder what other forms of display are unobtrusive and non-distracting … thus leaving the skilled artisan to consult the "unpredictable vagaries of any one person's opinion."'" *Sonix Tech.*, 844 F.3d at 1378 (citing *Enzo Bicochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1373-74 (quoting *Datamize*, 417 F.3d at 1350)). So too here—a skilled artisan is left to wonder what conditions qualify as "problems" versus normal (but perhaps less than optimal) operation, which is precisely the subjective line-drawing that renders a claim indefinite.

### B.    "high performance [computing] cluster" ('841 Pat. Cl. 9; '584 Pat. Cls. 1, 10)

| American's Construction | Plaintiffs' Position |
| --- | --- |
| Indefinite | Plain and ordinary meaning |

Under *Nautilus*, a claim term is indefinite if it fails to inform those skilled in the art about the scope of the invention with "reasonable certainty." *Nautilus*, 572 U.S. at 910. Terms of degree require a "standard for measuring that degree" that gives objective boundaries. *Seattle Box Co. v. Indus. Crating & Packaging, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984).

"High" is a classic term of degree (*see* Dkt. 141 at § IV.A), yet neither the claims nor the specification identifies any threshold marking the boundary between "high" and "ordinary" (or "average" or "low") performance clusters. '841 Patent at 1:51-55; *see also* Ex. 4 at ¶¶ 61-63.

IV's definiteness argument rests on a single passage describing HPC systems as allowing "a set of computers to work together to solve a single problem." Dkt. 142 at 3 (citing '841 Patent at 1:51-55). This feature describes generic parallel computing; any parallel computing cluster fits the description. Ex. 4 at ¶¶ 61-63. The "result" IV identifies as a boundary describes the most basic function of any parallel cluster, not a performance standard. '841 Patent at 1:51-55. Moreover, this result does not measure the degree of performance required to be deemed "high" performance at all; it is a binary description of whether a system performs any parallelization, not a standard for determining the level of performance to be "high." Indeed, a set of old, slow computers could be programmed to work together on a task; this parallelization does not make the slow computer cluster a "high" performance cluster. The specifications fail to provide an objective boundary as to what constitutes a "high" vs. "average" vs. "low" (or maybe "ordinary") performance clusters.

IV offers two further responses, neither of which cures the lack of objective boundaries. First, IV notes the specifications also refer to a "high availability cluster" that American has not challenged. Dkt. 142 at 3. Parties are limited in their claim construction briefing and are routinely advised to limit the number of arguments the Court is required to resolve. That American did not use its limited pages to challenge a different term is not evidence that the specifications provide an objective performance metric to determine if a cluster is operating at a "high" performance level. Second, IV cites a reference on the face of the patents using the acronym "HPC." Dkt. 142 at 3-4 (citing Ex. 14). But the mere existence of a document using the marketing term of degree "HPC" does not cure the intrinsic record's failure to provide a standard for the degree of performance required to meet the claim's "high" requirement.

Since "high performance computing cluster" uses a term of degree without any intrinsic objective boundary, a POSITA has no way to determine where "high performance" begins. This is precisely the "zone of uncertainty" *Nautilus* warns against. 572 U.S. at 909-10. The term "high performance [computing] cluster" is indefinite.

## III.    '000 PATENT

### A.    "time interval" / "time intervals" (Claims 1, 6, and 13)

| American's Construction | Plaintiffs' Position |
|---|---|
| "time slot" and "time slots" | Plain and ordinary meaning |

IV claims that in the related '356 patent's IPR, IV "did not seek a construction of the term 'time interval,'" and that American "extract[ed] a single sentence from that discussion and treat[ed] it as a definitional statement." Reply at 8. IV is incorrect. IV's interpretation of "time interval" as "time slot" was clear and unmistakable, as the following passage shows:

> The term "time interval" and "time slot" are used synonymously in the '356 Patent. In *every* instance, the term refers to *a time slot within a frame*, e.g., a TD-CDMA frame, where *data* is sent by a UE "over the physical uplink shared channel in *assigned time intervals within a frame*," while *another time interval between the data slots* – i.e., "a time interval that it is not sending information over the physical uplink shared channel" – is used by the UE to send control information over the uplink physical control channel. The specification is replete with statements that the timeslot used by the UE for the UL-Beacon is interposed in a frame structure between data time slots:

Ex. D at 11 (emphasis in original). IV followed the above with citations to the '356 patent's specification (which is identical to the '000 patent's). Ex. D. at 11-13. Notably, the purported embodiments that IV now contends are incompatible with "time interval" meaning "time slot", Reply at 9, are the same embodiments that it once relied on to support the exact opposite argument in the above passage. *Compare* Dkt. 139 at 24 *with* Ex. D at 12-13 (both citing Fig. 3's "example where fractionation is employed" and "the case where there are more than one UL_Beacon timeslot per frame.").

4

IV also claims that its "construction was not adopted," Reply at 8, but this too is incorrect. The PTAB explicitly adopted IV's interpretation of timeslot as synonymous with time interval *twice* during the '356 IPR. Ex. G at 17 ("We give more weight to Patent Owner's and Dr. Lomp's contention that a time interval is used in the '356 Patent to mean a timeslot than to a nontechnical dictionary definition of "interval."); Ex. H at 20 ("According to Patent Owner's own interpretation of a timeslot as synonymous with time interval, the processor sends a signal over the uplink physical control channel 'in a timeslot that is not sending information over the physical uplink shared channel.'").

In short, IV cannot maintain that "AA misapplies the IPR record." IV disclaimed the scope of the '000 patent when it argued to a tribunal that "time interval" means "time slot."

5

Dated: April 27, 2026

**MCKOOL SMITH, P.C.**

*/s/ John B. Campbell*
John B. Campbell
Texas State Bar No. 24036314
jcampbell@McKoolSmith.com
Kenneth M. Scott
Texas State Bar No. 24137497
kscott@McKoolSmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Emily Tannenbaum
New York State Bar No. 5928130
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
Telecopier: (212) 402-9444

Casey L. Shomaker
Texas State Bar No. 24110359
cshomaker@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Alan P. Block
California State Bar No. 143783
ablock@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1054
Telecopier: (213) 694-1234

ATTORNEYS FOR AMERICAN
AMERICAN AIRLINES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 27, 2026.

*/s/ John B. Campbell*
John B. Campbell