# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> THE HOME DEPOT, INC., HOME DEPOT U.S.A., INC., and HOME DEPOT PRODUCT AUTHORITY, LLC, <br><br> *Defendants.* | **Civil Action No. 1:25-cv-01147** <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC ("Intellectual Ventures," "IV," or "Plaintiffs"), in their Complaint for patent infringement against Defendants The Home Depot, Inc. ("HD"), Home Depot U.S.A., Inc. ("HDUSA"), and Home Depot Product Authority, LLC ("HDPA"), (collectively, "Home Depot" or "Defendants"), hereby allege as follows:

**NATURE OF THE ACTION**

This is a civil action for the infringement of United States Patent No. 8,332,844 ("the '844 Patent"), United States Patent No. 7,721,282 ("the '282 Patent"), United States Patent No. 7,314,167 ("the '167 Patent"), United States Patent No. 7,257,582 ("the '582 Patent") United States Patent No. 7,712,080 ("the '080 Patent"), United States Patent No. 7,822,841 ("the '841 Patent"), and United States Patent No. 8,352,584 ("the '584 Patent") (collectively, the "Patents-in-Suit") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

### Intellectual Ventures

1.      Plaintiff Intellectual Ventures I LLC ("Intellectual Ventures I") is a Delaware limited liability company having its principal place of business located at 14360 SE Eastgate Way, Bellevue, WA 98007.

2.      Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures II") is a Delaware limited liability company having its principal place of business located at 14360 SE Eastgate Way, Bellevue, WA 98007.

3.      Intellectual Ventures I is the owner of all rights, title, and interest in and to the '582 Patent, and is the exclusive licensee of the '080 Patent.

4.      Intellectual Ventures II is the owner of all rights, title, and interest in and to the '167 Patent, '282 Patent, '841 Patent, '844 Patent, and '584 Patent.

### Home Depot

5.      On information and belief, Defendant The Home Depot, Inc. ("HD") is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339. HD is registered to do business in the State of Texas and may be served with process through its registered agent, Corporation Service Company at 211 E. 7th Street Suite 620, Austin, TX 78701. On information and belief, HD does business itself, or through its subsidiaries, affiliates, and agents in the State of Texas and the Western District of Texas.

6.      On information and belief, HD is the parent corporation of the Home Depot group of entities, including the other Home Depot Defendants.[1] On information and belief, HD, through

---

[1] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

2

its subsidiaries and affiliated companies, including the other Home Depot Defendants, provides home improvement products, building materials, lawn and garden products, décor products, and other products through its stores and online to individuals and businesses, including its customers in this District, and receives cash flows that are provided by its subsidiaries and affiliated companies, including the other Home Depot Defendants, and provides for sharing of information and resources between Home Depot entities, including other Home Depot Defendants.[2]

7.      On information and belief, on approximately December 2012, HD acquired BlackLocus, Inc., a company that focuses on technology for enabling pricing decisions using data analysis.[3] BlackLocus is comprised of "engineers, data scientists, data service providers, and product managers" and which Home Depot describes as "supporting our stores and distribution centers" and "e-commerce channels like HomeDepot.com, Blinds.com, and beyond …"[4] BlackLocus states that its specializes in "Pricing, Channel Compliance, Competitive Intelligence, Machine Learning, Big Data, retail, data science, engineering, and product management."[5] Several of these specialties overlap with the accused technologies, including Kubernetes, Spark, and Docker.

8.      On information and belief, HD, through its acquisition of BlackLocus, operates physical offices in this District, including at 101 W. 6th Street, Suite 700, Austin, Texas 78701. On information and belief, BlackLocus is a part of HD and conducts business for the benefit of HD and other Home Depot companies, including the other Home Depot Defendants.   On

---

[2] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).
[3] https://techcrunch.com/2012/12/17/home-depot-acquires-data-driven-pricing-analytics-startup-blacklocus/ (last accessed on July 18, 2025).
[4] https://www.linkedin.com/company/blacklocus (last accessed on July 18, 2025).
[5] https://www.linkedin.com/company/blacklocus (last accessed on July 18, 2025).

information and belief, HD conducts lobbying operations from this address or others, including through Celinda Gonzalez, the Manager, State, and Local Government Relations for The Home Depot.

9.    On information and belief, HD owns and/or subleases an Austin Technology Center, where it employs technology professionals.[6] For example, on its investor relation website ir.homedepot.com, Home Depot advertised that it was hiring approximately 1,000 new technology professionals between its Atlanta, Austin, and Dallas technology centers.[7] On information and belief, Home Depot maintains a technical workforce in at least the Austin area in this District.[8]



---

[6]

https://maps.apple.com/place?address=1300%20Park%20Center%20Dr%2C%20Austin%2C%20TX%20%2078753%2C%20United%20States&coordinate=30.3411877%2C-97.6848175&name=Home%20Depot%20Technology%20Center&place-id=IA80CD437DAF2CB24 (last accessed on July 18, 2025).

[7] https://ir.homedepot.com/news-releases/2018/04-18-2018-130228118 (last accessed on July 18, 2025).

[8] *See, e.g.*, https://www.linkedin.com/in/pattersontx; https://www.linkedin.com/in/devagram; https://www.linkedin.com/in/emilymwhite13; https://www.linkedin.com/in/donnalsmithtx (last accessed on July 22, 2025).

10.     On information and belief, Home Depot advertises that it has employees who work out of the Austin Technology Center.[9]



11.     On information and belief, HD has employees in this District who work remotely. Home Depot advertises that it offers different work locations, including "Onsite" where an associate "works in a specific Home Depot Location in order to complete their job duties," "Multisite" where an associate "works from multiple locations (e.g., Home Depot location or a customer's homes) to complete their job duties," "Hybrid" where an associate works "from a designated Home Depot location on some days and remote/virtually on others," and "Remote" or "Virtual" where an associate "does not have to be at a designated Home Depot location to complete their job duties."[10]

---

[9] https://www.instagram.com/p/DGdxeQJx6LM/?img_index=1 (last accessed on July 18, 2025).
[10] https://careers.homedepot.com/job/22057002/senior-systems-engineer-wireless-network-engineer-remote-austin-tx# (last accessed on July 18, 2025).

**Work Location**                                                                   ✖

**Onsite** – An associate in an onsite role works in a specific Home Depot location in order to complete their job duties.

**Multisite** – An associate in a multisite role works from multiple locations (e.g. Home Depot location or a customer's homes) to complete their job duties.

**Hybrid** – A hybrid role blends in-office and remote/virtual work locations. An associate will work from a designated Home Depot location on some days and remote/virtually on others.

**Remote/virtual** – An associate in a remote/virtual role does not have to be at a designated Home Depot location to complete their job duties.

12.    On information and belief, HD has technical employees who work at physical locations in this District and/or who work remotely in this District. The remote HD employees are provided with resources that enable Home Depot to conduct business in this District and offer services to Home Depot's employees and customers. The services provided are within Home Depot's conduct of business and include production, storage, transport, and exchange of Home Depot goods and services that constitute Home Depot's conduct of business. The primary operations of the remote employees are not ancillary to Home Depot's business.

13.    On information and belief, Home Depot compensates remote workers for expenses and utilities related to remote work, and Home Depot materials, goods, and services are stored at and/or used at the home offices of Home Depot employees.

14.    On information and belief, the BlackLocus office location and the home offices of HD's employees who work remotely in this District constitute regular and established places of business for HD in this District.  On information and belief, HD employees also work out of offices in Home Depot stores in this district.

15.    On information and belief, HD, alone or through its subsidiaries, makes, utilizes, services, tests, distributes, and/or offers in the State of Texas and the Western District of Texas products, services, and technologies ("Accused Products and Services") that infringe the Patents-

6

in-Suit, contributes to the infringement by others, and/or induces others to commit acts of patent infringement in the State of Texas and the Western District of Texas, as described below and in the exhibits accompanying this Complaint.

16.    On information and belief, Defendant Home Depot U.S.A., Inc. ("HDUSA") is a wholly owned subsidiary of HD and is a Delaware corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339. HDUSA may be served with process through its registered agent, Corporation Service Company at 211 E. 7th Street Suite 620, Austin, TX 78701. HDUSA is registered to do business in the State of Texas and has been since at least 1984. On information and belief, HDUSA does business itself, or through its subsidiaries, affiliates, and agents in the State of Texas and the Western District of Texas. On information and belief, HDUSA is a part of the Home Depot company structure and conducts business for the benefit of HD.

17.    On information and belief, HDUSA operates physical stores in this District, including at least 4009 N Midland, Midland, TX 79707; 5181 E 42nd St, Odessa, TX 79762; 1803 North I-35 Bellmead, Waco, TX 76705; 3550 S General Bruce Dr., Temple, TX 76504; 3201 E Central Texas Exp., Killeen, TX 76543; 1303 Rivery Blvd., Georgetown, TX 78628; 2551 S Interstate Hwy 35, Round Rock, TX 78664; 2700 Whitestone Blvd., Cedar Park, TX 78613; 11301 Lakeline Blvd., Austin, TX 78717; 1517 Town Center Dr., Pflugerville, TX 78660; and 600 W Hwy 79, Hutto, TX 78634. On information and belief, HDUSA also operates at least two distribution center in this District, including at 1105 Meister Ln, Pflugerville, TX 78660 and 10815 Sentinel Dr, San Antonio, TX 78217. On information and belief, the Home Depot company also utilizes distribution centers in the Western District of Texas including at 1105 Meister Ln. Pflugerville, TX 78702 and 10815 Sentinel Dr, San Antonio, TX 78217.

18.     On information and belief, HDUSA makes, utilizes, services, tests, distributes, and/or offers in the State of Texas and the Western District of Texas products, services, and technologies that infringe the Patents-in-Suit, contributes to the infringement by others, and/or induces others to commit acts of patent infringement in the State of Texas and the Western District of Texas, as described below and in the exhibits accompanying this Complaint.

19.     On information and belief, HDPA is a wholly owned subsidiary of HD and is a Georgia limited liability company with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339. HDPA may be served with process through its registered agent, Corporation Service Company at 211 E. 7th Street Suite 620, Austin, TX 78701.

20.     On information and belief, HDPA operates www.homedepot.com and other websites, and publishes information and sells products on Home Depot's websites to customers in this District, including the Accused Products and Services. On information and belief, HDPA is a part of the Home Depot company structure and conducts business for the benefit of HD. On information and belief, BlackLocus employees in this District support Home Depot's e-commerce channels, such as homedepot.com, and support HDPA's operation and/or management of homedepot.com. On information and belief, the BlackLocus office location in this District constitutes a regular and established places of business for HDPA in this District.  On information and belief, HDPA does business itself, or through its subsidiaries, affiliates, and agents in the State of Texas and the Western District of Texas.

21.     On information and belief, HDPA makes, utilizes, services, tests, distributes, and/or offers in the State of Texas and the Western District of Texas products, services, and technologies ("Accused Products and Services") that infringe the Patents-in-Suit, contributes to the

infringement by others, and/or induces others to commit acts of patent infringement in the State of Texas and the Western District of Texas.

22.    On information and belief, Home Depot maintains retail stores and distribution centers located in this District that constitute regular and established places of business, including, on information and belief, at least the following locations: (1) 4009 N Midland, Midland, TX 79707; (2) 5181 E 42nd St, Odessa, TX 79762; (3) 1803 North I-35 Bellmead, Waco, TX 76705; (4) 3550 S General Bruce Dr., Temple, TX 76504; (5) 3201 E Central Texas Exp., Killeen, TX 76543; (6) 1303 Rivery Blvd., Georgetown, TX 78628; (7) 2551 S Interstate Hwy 35, Round Rock, TX 78664; (8) 2700 Whitestone Blvd., Cedar Park, TX 78613; (9)11301 Lakeline Blvd., Austin, TX 78717; (10) 1517 Town Center Dr., Pflugerville, TX 78660; (11) 600 W Hwy 79, Hutto, TX 78634; and (12) 1105 Meister Ln, Pflugerville, TX 78660.

23.    On information and belief, Home Depot develops and operates mobile applications, available for at least iOS and Android devices, which are responsible for making, using, marketing, distributing, offering for sale, and selling Accused Products and Services to customers in this District, at least indirectly ("Home Depot Mobile App").[11]

---

[11] https://www.homedepot.com/c/mobile-app (last accessed on July 18, 2025).





24.     On information and belief, Home Depot provides the Home Depot Mobile App to its employees and customers to provide tools for accessing Home Depot services, such as product review and purchase and customer support. For example, Home Depot advertises that its mobile app supports various features such as viewing in-stock items, product lists, reviews, image search, product locator (e.g., to locate products within a store), text support, order tracking, digital workshops, rentals, project calculators, as well as other features.[12]

25.     On information and belief, Home Depot has thousands of employees working throughout the State of Texas, including in this District. On information and belief, Home Depot has hundreds of employees who work and reside in the District (collectively, "Home Depot Employees"). Home Depot advertises job postings that require performance of job responsibilities in this District.[13] On information and belief, Home Depot employs engineers in this District who

---

[12] https://www.homedepot.com/c/mobile-app (last accessed on July 18, 2025).
[13] https://careers.homedepot.com/job-search-results?location=Austin%2C%20TX%2C%20USA&latitude=30.267153&longitude=-97.7430608&radius=10 (last accessed on July 18, 2025).

perform software development including DevOps using various technologies such as Kubernetes and full-stack including application and web development.[14]

26.    On information and belief, Home Depot has derived substantial revenue from infringing acts in this District, including from the sale and use of the Accused Products and Services as described in more detail below.

27.    On information and belief, HD is the alter ego of its subsidiaries, including the other Home Depot Defendants, because Home Depot is setup to conduct business through its subsidiaries.[15] The Home Depot entities are also designed to collaborate and share business departments and technology, including back-end servers and platforms and office space. Further, on information and belief, HD's subsidiaries are agents of Home Depot and act on behalf of HD.[16] On information and belief, HD has a direct financial interest in the infringing activity and has the right and ability to supervise its subsidiaries, which is evidenced by a continuing connection between HD and its subsidiaries in regard to the infringing activity.[17]

28.    On information and belief, the HD entities have common stock ownership. For example, Home Depot and its subsidiaries are primarily owned by institutional investors.[18]

---

[14] https://www.linkedin.com/in/kguggulotu; https://www.linkedin.com/in/anujkumar7000; https://www.linkedin.com/in/sean-otto-developing; https://www.linkedin.com/in/smitha-thomas-840b3b1aa/; https://www.linkedin.com/in/sagarghimire699/; https://www.linkedin.com/in/waqar-sadiq-421376/ (last accessed on July 22, 2025).

[15]   https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf ("[W]hen we refer to 'The Home Depot,' 'Home Depot,' the 'Company,' 'we,' 'us' or 'our' in this report, we are referring to The Home Depot, Inc. and its consolidated subsidiaries.") (last accessed on July 18, 2025); https://www.homedepot.com/ (stating copyright "2000-2025 Home Depot") (last accessed on July 18, 2025).

[16]   https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

[17]   https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025); *see also* https://ir.homedepot.com/news-releases/2018/04-18-2018-130228118.

[18] https://finance.yahoo.com/quote/HD/holders/ (last accessed on July 18, 2025).

29.    On information and belief, the HD entities have complete or partial overlap of common directors or officers. For example, on information and belief, Edward Decker, Anne-Marie Campbell, John Deaton, Timothy Hourigan, Richard McPhail, Hector Padilla, and Teresa Wynn Roseborough are officers and/or leadership for both HD and one or more of its subsidiaries, including at least HDUSA.[19]

30.    On information and belief, the HD entities share common business departments.[20] For example, Home Depot "maintain[s] a network of distribution and fulfillment centers, as well as a number of e-commerce websites in the U.S., Canada, and Mexico" to support its services, including "building materials, home improvement products, lawn and garden products, décor products, and facilities MRO products," as well as "home improvement installation services" and "tool and equipment rental."[21] Home Depot states that it has a "merchandising organization" that "leverages technology and works closely with our inventory and supply chain systems, as well as our suppliers, to manage our assortments, drive innovation, manage the cost environment, and adjust inventory levels to respond to fluctuations in demand."[22]

---

[19]

https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=HOMEDEPOTUSA%20P259530&aggregateId=forp-p25953-a3a42dd6-02a3-487e-9f97-0d428a29b0c5&searchTerm=HOME%20DEPOT%20USA%20INC&listNameOrder=HOMEDEPOTUSA%20P259530 (last accessed on July 18, 2025); https://corporate.homedepot.com/page/home-depot-leadership-0?field_bio_type_target_id=30 (last accessed on July 18, 2025).

[20] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

[21] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

[22] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

31.    On information and belief, the HD entities file consolidated financial statements.[23] For example, on information and belief, HD stated in its Form 10-Q filed for the quarterly period ending on May 4, 2025, "consolidated financial statements of The Home Depot, Inc., together with its subsidiaries (the 'Company,' 'The Home Depot,' 'Home Depot,' 'we,' 'our' or 'us') …." On information and belief, Home Depot prepares consolidated financial statements for HD, including entities over which Home Depot exercises control including majority and its wholly owned subsidiaries, including the Home Depot Defendants.[24]

32.    On information and belief, Home Depot causes incorporation of its subsidiaries. For example, Home Depot states that it manages "integration" of its acquisitions "into our corporate structure."[25]

33.    On information and belief, HD receives cash flows that are provided by its subsidiaries and affiliated companies, including the other Home Depot Defendants, and provides for sharing of information and resources between Home Depot entities, including other Home Depot Defendants, and as a result, on information and belief HD's subsidiaries operate with inadequate capital because the capital is held by the parent.[26]

34.    On information and belief, HD uses its subsidiaries' property as its own. For example, Home Depot's financial statements include consolidated balance sheets that consolidate

---

[23] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/reports-and-presentations/quarterly-earnings/2025/hd-q1-2025-10q.pdf (last accessed on July 18, 2025).

[24] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/reports-and-presentations/quarterly-earnings/2025/hd-q1-2025-10q.pdf (last accessed on July 18, 2025).

[25] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf ("For each of our acquisitions, we need to determine the appropriate level of integration of the target company's products, services, associates, and information technology, financial, human resources, compliance, and other systems and processes, and then successfully manage that integration into our corporate structure.") (last accessed on July 18, 2025).

[26] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

assets across Home Depot, including the Home Depot Defendants.[27] On information and belief, the HD entities are designed to collaborate and share business departments, and HD conducts substantially all of its business through its business units.[28] For example, Home Depot states that it manages "integration" of its acquisitions "into our corporate structure" where its "products, services, associates, and information technology, financial, human resources, compliance, and other systems and processes" can be utilized by Home Depot.[29]

## JURISDICTION AND VENUE

35.    Paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36.    This is an action for patent infringement arising under the patent laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

37.    This Court has personal jurisdiction over Home Depot because Home Depot conducts business in and has committed acts of patent infringement, contributed to infringement by others, and/or induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States, and has established minimum contacts with this forum state such that the exercise of jurisdiction over Home Depot would not offend the traditional notions of fair play and substantial justice. On information and belief, Home Depot transacts substantial business with entities and individuals in the State of Texas and the Western District of Texas, by, among other things, making, utilizing, servicing, testing, distributing, selling, offering,

---

[27] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

[28] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf (last accessed on July 18, 2025).

[29] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2024_AR_IRsite_v2.pdf ("For each of our acquisitions, we need to determine the appropriate level of integration of the target company's products, services, associates, and information technology, financial, human resources, compliance, and other systems and processes, and then successfully manage that integration into our corporate structure.") (last accessed on July 18, 2025).

and/or offering for sale the Accused Products and Services that infringe the Patents-in-Suit, as well as by providing service and support to its customers in this District. Home Depot also places certain of the Accused Products and Services into the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas, including this District. For example, Home Depot provides service through its Home Depot Mobile App and website for its customers and/or employees within this District.

38.    Home Depot is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Home Depot's substantial business in the State of Texas and this District, including maintaining several retail stores and distribution centers located, through its past and present infringing activities, because Home Depot regularly does and solicits business herein, and/or because Home Depot has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided to customers in the State of Texas and this District.

39.    On information and belief Home Depot transacts substantial business with entities and individuals in the State of Texas and the Western District of Texas, by, among other things, making, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the Patents-in-Suit, as well as by providing service and support to its customers in this District through its retail stores and distribution centers. On information and belief, Home Depot employs individuals in the district that use the Accused Products and Services by putting the Accused Products and Services into service and/or controlling

15

the Accused Products and Services, for example, when such individuals test, service, and/or maintain the Accused Products and Services.[30]

40.     On information and belief, Home Depot employees use the Accused Products and Services by using Home Depot systems and services in this District that use the Accused Products and Services and putting the Accused Products and Services into service and/or controlling the Accused Products and Services and obtaining a benefit from the use of the Home Depot systems and services in this District that use the Accused Products and Services. On information and belief, Home Depot employs individuals in this District that make the Accused Products and Services for example by making, servicing, and/or maintaining source code that is used in the Accused Products and Services.[31] On information and belief, Home Depot offers to its customers Home depot systems and services in this District that use the Accused Products and Services.

41.     On information and belief, Home Depot does business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and the Western District of Texas.

42.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Home Depot has both established places of business in this judicial district and has committed acts of infringement in this judicial district.

43.     On information and belief, Home Depot maintains regular and established places of business via retail stores and distribution centers located in this District. Home Depot also

---

[30] https://careers.homedepot.com/job-search-results?location=Austin%2C%20TX%2C%20USA&parent_category=Corporate&category[]=Technology&latitude=30.267153&longitude=-97.7430608&radius=10 (last accessed on July 18, 2025).

[31] https://careers.homedepot.com/job-search-results?location=Austin%2C%20TX%2C%20USA&parent_category=Corporate&category[]=Technology&latitude=30.267153&longitude=-97.7430608&radius=10 (last accessed on July 18, 2025).

maintains the Home Depot Mobile App and Home Depot websites, which are offered to its employees and customers located in this District. Home Depot has regular and established places of business at which it has committed acts of infringement and placed the Accused Products and Services into the stream of commerce, throughout the State of Texas and the Western District of Texas. For example, Home Depot operates retail stores and distribution centers throughout this District, including at least: (1) 4009 N Midland, Midland, TX 79707; (2) 5181 E 42nd St, Odessa, TX 79762; (3) 1803 North I-35 Bellmead, Waco, TX 76705; (4) 3550 S General Bruce Dr., Temple, TX 76504; (5) 3201 E Central Texas Exp., Killeen, TX 76543; (6) 1303 Rivery Blvd., Georgetown, TX 78628; (7) 2551 S Interstate Hwy 35, Round Rock, TX 78664; (8) 2700 Whitestone Blvd., Cedar Park, TX 78613; (9)11301 Lakeline Blvd., Austin, TX 78717; (10) 1517 Town Center Dr., Pflugerville, TX 78660; (11) 600 W Hwy 79, Hutto, TX 78634; and (12) 1105 Meister Ln, Pflugerville, TX 78660 (collectively "Home Depot Locations").

44.    On information and belief, Home Depot holds its Home Depot Locations to be regular and established places of business of Home Depot in this District by making, utilizing, servicing, testing, distributing, offering and/or offering for sale the Accused Products and Services at these locations.

45.    On information and belief, the Home Depot Locations in this District are regular, continuous, and established physical places of business of Home Depot, being established, ratified, and/or controlled by Home Depot as authorized locations, which are places of business at which Home Depot makes, utilizes, services, tests, distributes, offers and/or offers for sale the Accused Products and Services.

17

46.     On information and belief, Home Depot ratifies and holds its Home Depot Locations out as regular and established places of business of Home Depot in this District by listing them on Home Depot's website.

47.     On information and belief, Home Depot has established, ratified, and holds these Home Depot Locations out as regular and established places of business of Home Depot by directing and controlling these Home Depot Location's actions and services in the foregoing manner, and has consented to these Home Depot Locations acting on Home Depot's behalf and being Home Depot's places of business whereby the Accused Products and Services are utilized, serviced, tested, distributed, offered and/or offered for sale and placed into the stream of commerce in this District, and these Home Depot Locations have consented to act on Home Depot's behalf pursuant to the foregoing terms of control and direction in order to, among other things, be able to offer services that utilize the Accused Products and Services.

48.     On information and belief, Defendants hold themselves out as a single business enterprise under the trademark "The Home Depot" in connection with the infringing actions and Home Depot Locations without any apparent distinction regarding which Defendant is performing those actions.

49.     On information and belief, HDUSA and HDPA are controlled and managed by HD in connection with Home Depot's infringement by the Accused Products and Services. Home Depot functions as an integrated organization and a single business enterprise in connection with those activities. The Home Depot Defendants hold themselves out as a single business enterprise in their advertising and in connection with the trademark "The Home Depot" in promoting the sale of products through Home Depot retail stores and homedepot.com, without any apparent distinction regarding which Home Depot Defendant is offering or would deliver those products

18

and services. For example, Defendants' stores are branded as "The Home Depot" with no distinction over whether the store is operated by HD, HDUSA, or HDPA. In its annual filings, Home Depot promotes the importance of its brand name "The Home Depot®": "Our business has one of the most recognized brands in North America. As a result, we believe that The Home Depot® trademark has significant value and is an important factor in the marketing of our products, e-commerce, stores and business."[32] In its annual report, Home Depot states that the term "The Home Depot" refers "to The Home Depot, Inc. and its consolidated subsidiaries," including HDUSA and HDPA.[33] In an investor presentation presented on May 22, 2025, Home Depot defined the "Company" as "The Home Depot, Inc. and its consolidated subsidiaries."[34] These Home Depot Locations are physical places in the district where Defendants exercise control over the activities and hold out to the public that the services and products are from Home Depot.

50.     On information and belief, the Home Depot Locations in this District are regular, continuous, and established physical places of business of Defendants, being established, ratified, and/or controlled by Home Depot as authorized locations, which are the places of business at which Home Depot makes, utilizes, services, tests, distributes, and/or offers the Accused Products and Services.

51.     On information and belief, Defendants provide a mobile application to its employees and customers to provide tools for accessing Home Depot services, such as product

---

[32] https://otp.tools.investis.com/clients/us/home_depot/SEC/sec-show.aspx?Type=html&FilingId=18302429&CIK=0000354950&Index=10000 (last accessed on July 18, 2025).

[33] https://otp.tools.investis.com/clients/us/home_depot/SEC/sec-show.aspx?Type=html&FilingId=18302429&CIK=0000354950&Index=10000 (last accessed on July 18, 2025).

[34] https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2025/HD_2025_Proxy_Statement.pdf (last accessed on July 18, 2025).

19

review and purchase and customer support. For example, Home Depot advertises that its mobile app supports various features such as viewing in-stock items, product lists, reviews, image search, product locator (e.g., to locate products within a store), text support, order tracking, digital workshops, rentals, project calculators, as well as other features.[35]

52.    On information and belief, Defendants provide and control a "dedicated online employee portal," accessible at www.mythdhr.net," that provides various services including viewing and managing schedules, accessing payroll information, and staying updated on company news, as well as accessing employee discounts, training and development resources, and updating personal information.[36] On information and belief, this control is continuing and is required as long as there is access to Home Depot's network and services.

53.    On information and belief, Home Depot's Accused Products and Services infringe the Patents-in-Suit through at least using the accused technologies in its various systems and offerings. For example, on information and belief, Home Depot uses the accused technologies for various applications, and Home Depot infringes the Patents-in-Suit via testing its various systems and offerings. On information and belief, Home Depot also infringes the Patents-in-Suit through inducement and contributes to the infringement through its vendors and other third parties' uses of Home Depot's Systems and Services that utilize the accused technologies by providing components relating to the accused technologies that have no substantial non-infringing uses. On information and belief, Home Depot supplies its customers, employees, and other third parties with access to its systems and services through various client and/or internal services that allows its customers, employees, and other third parties to use the claimed methods and systems. On

---

[35] https://www.homedepot.com/c/mobile-app (last accessed on July 18, 2025).
[36] https://www.mythdhr.com/ESS.html (last accessed on July 18, 2025).

information and belief, Home Depot servers, or servers that are run on behalf of Home Depot are involved and are involved in the infringement of the Patents-in-Suit. On information and belief, Home Depot provides instructions on how to use its various systems and offerings, the use of which results in infringement of the Patents-in-Suit through performance of the claimed methods and use of the claimed systems are controlled and beneficial use is derived in this District.

54.    On information and belief, Home Depot's servers located in this District and/or backend servers controlled by Home Depot located in this District and elsewhere in Texas process information about products in this District so they can be delivered to customers in this District, all of which constitutes material conduct that is part of, and helps establish, Home Depot's infringement of the patented systems and techniques relating to barcode scanner feature and Big Data analysis.

55.    On information and belief, Home Depot's Products and Services infringe the asserted claims of one or more of the Patents-in-Suit in this District through at least its development, offering, and use of the Home Depot Mobile App including its barcode scanner feature. Home Depot further infringes one or more of the Patents-in-Suit in this District by its employees using and testing of the Home Depot Mobile App barcode scanner feature. Infringement in the district is further through at least making, offering for sale, and use of one or more of the Patents-in-Suit and controlling the systems as a whole and deriving beneficial use in the District.

**FACTUAL BACKGROUND**

56.    Intellectual Ventures Management, LLC ("Intellectual Ventures Management") was founded in 2000. Since then, Intellectual Ventures Management has been involved in the business of inventing. Intellectual Ventures Management facilitates invention by inventors and the

21

filing of patent applications for those inventions, collaboration with others to develop and patent inventions, and the acquisition and licensing of patents from individual inventors, universities, corporations, and other institutions. A significant aspect of Intellectual Ventures Management's business is managing the Plaintiffs in this case, Intellectual Ventures I and Intellectual Ventures II.

57.     One of the founders of Intellectual Ventures Management is Nathan Myhrvold, who worked at Microsoft from 1986 until 2000 in a variety of executive positions, culminating in his appointment as the company's first Chief Technology Officer ("CTO") in 1996. While at Microsoft, Dr. Myhrvold founded Microsoft Research in 1991 and was one of the world's foremost software experts. Between 1986 and 2000, Microsoft became the world's largest technology company.

58.     Under Dr. Myhrvold's leadership, Intellectual Ventures acquired more than 70,000 patents covering many important inventions used in the retail industries.

59.     Home Depot offers various types of services and technologies to its customers, partners, vendors, and/or third parties. Home Depot's products and services utilize and/or support various technologies, including but not limited to Kubernetes, Docker, Spark, and Secure Transactions. Certain of these products and services are offered to Home Depot's customers and/or employees and use secure transaction technologies, managed by Home Depot, to enable Home Depot products and services that it further offers to its customers and/or employees. Certain of these products and services, such as Kubernetes, Docker, Spark, and Secure Transactions, are technologies used and managed by Home Depot to enable the various products and services that Home Depot offers to its customers. Home Depot makes, utilizes, services, tests, distributes,

22

offers, and/or offers for sale these products and services throughout the world, including in the United States and Texas.

## THE PATENTS-IN-SUIT

### U.S. Patent No. 8,332,844

60. On December 11, 2012, the PTO issued the '844 Patent, titled "Root image caching and indexing for block-level distributed application management." The '844 Patent is valid and enforceable. A copy of the '844 Patent is attached as Exhibit 1.

61. Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '844 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover damages for infringement of the '844 Patent.

### U.S. Patent No. 7,721,282

62. On May 18, 2010, the PTO issued the '282 Patent, titled "Block-Level I/O Subsystem for Distributed Application Environment Management." The '282 Patent is valid and enforceable. A copy of the '282 Patent is attached as Exhibit 2.

63. Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '282 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover damages for infringement of the '282 Patent.

### U.S. Patent No. 7,314,167

64. On January 1, 2008, the PTO issued the '167 Patent, titled "Method and apparatus for providing secure identification, verification and authorization." The '167 Patent is valid and enforceable. A copy of the '167 Patent is attached as Exhibit 3.

65. Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '167 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover damages for infringement of the '167 Patent.

**U.S. Patent No. 7,257,582**

66. On August 14, 2007, the PTO issued the '582 Patent, titled "Load Balancing with Shared Data." The '582 Patent is valid and enforceable. A copy of the '582 Patent is attached as Exhibit 4.

67. Intellectual Ventures I LLC is the owner of all rights, title, and interest in and to the '582 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover damages for infringement of the '582 Patent.

**U.S. Patent No. 7,712,080**

68. On May 4, 2010, the PTO issued the '080 Patent, titled "Systems and Methods for Parallel Distributed Programming." The '080 Patent is valid and enforceable. A copy of the '080 Patent is attached as Exhibit 5.

69. Intellectual Ventures I LLC, as an exclusive licensee, holds all substantial rights to the '080 Patent, including the right to enforce and recover damages for infringement of the '080 Patent.

**U.S. Patent No. 7,822,841**

70. On October 26, 2010, the PTO issued the '841 Patent, titled "Method and System for Hosting Multiple, Customized Computing Clusters." The '841 Patent is valid and enforceable. A copy of the '841 Patent is attached as Exhibit 6.

71.     Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '841 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover damages for infringement of the '841 Patent.

***U.S. Patent No. 8,352,584***

72.     On January 8, 2013, the PTO issued the '584 Patent, titled "System for Hosting Customized Computing Clusters." The '584 Patent is valid and enforceable. A copy of the '584 Patent is attached as Exhibit 7.

73.     Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '584 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover damages for infringement of the '584 Patent.

## COUNT I

(Home Depot's Infringement of U.S. Patent No. 8,332,844)

74.     Paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

75.     **Direct Infringement**. Home Depot, without authorization or license from IV, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '844 Patent, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '844 Patent, including but not limited to at least the Accused Products and Services identified in the example charts incorporated below, into this Count (collectively, "Example Home Depot Count I Products and Services") that infringe at least the example claims of the '844 Patent identified in the charts incorporated into this Count (the "Example '844 Patent Claims") literally or by the doctrine of equivalents.

25

76.    On information and belief, Home Depot has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '844 Patent Claims, by internal testing and use of the Example Home Depot Count I Products and Services.

77.    Each claim of the '844 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '844 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '844 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. The '844 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims. Additionally, the claims of the '844 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

78.    Each claim of the '844 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '844 Patent.

79.    Home Depot has known that its infringing products and services, such as the Example Home Depot Count I Products and Services, cannot be used without infringing the technology claimed in the '844 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

80.    **Willful Blindness.** Home Depot knew of the '844 Patent, or should have known of the '844 Patent, but was willfully blind to its existence. Home Depot has had actual knowledge of the '844 Patent through receipt of a notice letter dated December 23, 2024, and no later than July 22, 2025. By the time of trial, Home Depot will have known and intended that its continued actions

26

would infringe and actively induce and contribute to the infringement of one or more claims of the '844 Patent. *See* Exhibit 8 (December 23, 2024, Notice Letter), Exhibit 9 (July 22, 2025, Notice Letter).

81. **Induced Infringement.** Home Depot has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '844 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example Home Depot Count I Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '844 Patent. For example, on information and belief, Home Depot offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example Home Depot Count I Products and Services. Home Depot has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '844 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example Home Depot Count I Products and Services.

82. Home Depot therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '844 Patent with knowledge of the '844 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '844 Patent. Home Depot has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example Home Depot Count I Products and Services to infringe the '844 Patent, literally and/or by the doctrine of equivalents, throughout the United

27

States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example Home Depot Count I Products and Services.

83. **Contributory Infringement.** Home Depot actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '844 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '844 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

84. Home Depot therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '844 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example Home Depot Count I Products and Services for use in a manner that infringes one or more claims of the '844 Patent. Example Home Depot Count I Products and Services are especially made or adapted for infringing the '844 Patent and have no substantial non-infringing use.

85. Exhibit 10 (claim chart) includes the Example Home Depot Count I Products and Services and Example '844 Patent Claims. As set forth in these charts, the Example Home Depot Count I Products and Services practice the technology claimed by the '844 Patent. Accordingly, the Example Home Depot Count I Products and Services incorporated in these charts satisfy all elements of the Example '844 Patent Claims.

28

86. Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 10.

87. Intellectual Ventures is entitled to recover damages adequate to compensate for Defendants' infringement of the '844 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from Defendants to compensate them for Defendants' infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

88. Further, Home Depot's infringement of Intellectual Ventures' rights under the '844 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

89. As a result of Defendants' acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## **COUNT II**

(Home Depot's Infringement of U.S. Patent No. 7,721,282)

90. Paragraphs 1 through 89 are incorporated by reference as if fully set forth herein.

91. **Direct Infringement**. Home Depot, without authorization or license from IV, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '282 Patent, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '282 Patent, including but not limited to at least the Accused Products and Services identified in the example charts incorporated below, into this Count (collectively, "Example Home Depot Count II Products and Services") that infringe at least the example claims of the '282 Patent identified in the charts

29

incorporated into this Count (the "Example '282 Patent Claims") literally or by the doctrine of equivalents.

92.    On information and belief, Home Depot has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '282 Patent Claims, by internal testing and use of the Example Home Depot Count II Products and Services.

93.    Each claim of the '282 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '282 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '282 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. The '282 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims. Additionally, the claims of the '282 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

94.    Each claim of the '282 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '282 Patent.

95.    Home Depot has known that its infringing products and services, such as the Example Home Depot Count II Products and Services, cannot be used without infringing the technology claimed in the '282 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

96.    **Willful Blindness.** Home Depot knew of the '282 Patent, or should have known of the '282 Patent, but was willfully blind to its existence. Home Depot has had actual knowledge of

30

the '282 Patent not later than receipt of a notice letter dated July 22, 2025. By the time of trial, Home Depot will have known and intended that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '282 Patent. *See* Exhibit 9 (July 22, 2025, Notice Letter).

97.    **Induced Infringement.** Home Depot has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '282 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example Home Depot Count II Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '282 Patent. For example, on information and belief, Home Depot offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example Home Depot Count II Products and Services. Home Depot has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '282 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example Home Depot Count II  Products and Services.

98.    Home Depot therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '282 Patent with knowledge of the '282 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '282 Patent. Home Depot has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example Home Depot Count II Products and Services

31

to infringe the '282 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example Home Depot Count II Products and Services.

99.    **Contributory Infringement.** Home Depot actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '282 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '282 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

100.    Home Depot therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '282 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example Home Depot Count II Products and Services for use in a manner that infringes one or more claims of the '282 Patent. Example Home Depot Count II Products and Services are especially made or adapted for infringing the '282 Patent and have no substantial non-infringing use.

101.    Exhibit 11 (claim chart) includes the Example Home Depot Count II Products and Services and Example '282 Patent Claims. As set forth in these charts, the Example Home Depot Count II Products and Services practice the technology claimed by the '282 Patent. Accordingly, the Example Home Depot Count II Products and Services incorporated in these charts satisfy all elements of the Example '282 Patent Claims.

102.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 11.

103.    Intellectual Ventures is entitled to recover damages adequate to compensate for Defendants' infringement of the '282 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from Defendants to compensate them for Defendants' infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

104.    Further, Home Depot's infringement of Intellectual Ventures' rights under the '282 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

105.    As a result of Defendants' acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT III

(Home Depot's Infringement of U.S. Patent No. 7,314,167)

106.    Paragraphs 1 through 105 are incorporated by reference as if fully set forth herein.

107.    **Direct Infringement**. Home Depot, without authorization or license from IV, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '167 Patent, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '167 Patent, including but not limited to at least the Accused Products and Services identified in the example charts incorporated below, into this Count (collectively, "Example Home Depot Count III Products and Services") that infringe at least the example claims of the '167 Patent identified in the charts

incorporated into this Count (the "Example '167 Patent Claims") literally or by the doctrine of equivalents.

108.    On information and belief, Home Depot has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '167 Patent Claims, by internal testing and use of the Example Home Depot Count III Products and Services.

109.    Each claim of the '167 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '167 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '167 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. The '167 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims. Additionally, the claims of the '167 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

110.    Each claim of the '167 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '167 Patent.

111.    Home Depot has known that its infringing products and services, such as the Example Home Depot Count III Products and Services, cannot be used without infringing the technology claimed in the '167 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

112.    **Willful Blindness.** Home Depot knew of the '167 Patent, or should have known of the '167 Patent, but was willfully blind to its existence. Home Depot has had actual knowledge of

34

the '167 Patent not later than receipt of a notice letter dated July 22, 2025. By the time of trial, Home Depot will have known and intended that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '167 Patent. *See* Exhibit 9 (July 22, 2025, Notice Letter).

113.    **Induced Infringement.** Home Depot has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '167 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example Home Depot Count III Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '167 Patent. For example, on information and belief, Home Depot offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example Home Depot Count III Products and Services. Home Depot has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '167 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example Home Depot Count III Products and Services.

114.    Home Depot therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '167 Patent with knowledge of the '167 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '167 Patent. Home Depot has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example Home Depot Count III Products and Services

35

to infringe the '167 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example Home Depot Count III Products and Services.

115. **Contributory Infringement.** Home Depot actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '167 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '167 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

116. Home Depot therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '167 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example Home Depot Count III Products and Services for use in a manner that infringes one or more claims of the '167 Patent. Example Home Depot Count III Products and Services are especially made or adapted for infringing the '167 Patent and have no substantial non-infringing use.

117. Exhibit 12 (claim chart) includes the Example Home Depot Count III Products and Services and Example '167 Patent Claims. As set forth in these charts, the Example Home Depot Count III Products and Services practice the technology claimed by the '167 Patent. Accordingly, the Example Home Depot Count III Products and Services incorporated in these charts satisfy all elements of the Example '167 Patent Claims.

118.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 12.

119.    Intellectual Ventures is entitled to recover damages adequate to compensate for Defendants' infringement of the '167 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from Defendants to compensate them for Defendants' infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

120.    Further, Home Depot's infringement of Intellectual Ventures' rights under the '167 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

121.    As a result of Defendants' acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

### COUNT IV

(Home Depot's Infringement of U.S. Patent No. 7,257,582)

122.    Paragraphs 1 through 121 are incorporated by reference as if fully set forth herein.

123.    **Direct Infringement**. Home Depot, without authorization or license from IV, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '582 Patent, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '582 Patent, including but not limited to at least the Accused Products and Services identified in the example charts incorporated below, into this Count (collectively, "Example Home Depot Count IV Products and Services") that infringe at least the example claims of the '582 Patent identified in the charts

37

incorporated into this Count (the "Example '582 Patent Claims") literally or by the doctrine of equivalents.

124.    On information and belief, Home Depot has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '582 Patent Claims, by internal testing and use of the Example Home Depot Count IV Products and Services.

125.    Each claim of the '582 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '582 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '582 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. The '582 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims. Additionally, the claims of the '582 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

126.    Each claim of the '582 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '582 Patent.

127.    Home Depot has known that its infringing products and services, such as the Example Home Depot Count IV Products and Services, cannot be used without infringing the technology claimed in the '582 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

128.    **Willful Blindness.** Home Depot knew of the '582 Patent, or should have known of the '582 Patent, but was willfully blind to its existence. Home Depot has had actual knowledge of

38

the '582 Patent through receipt of a notice letter dated December 23, 2024, and no later than July 22, 2025. By the time of trial, Home Depot will have known and intended that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '582 Patent. *See* Exhibit 8 (December 23, 2024, Notice Letter), Exhibit 9 (July 22, 2025, Notice Letter).

129.    **Induced Infringement.** Home Depot has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '582 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example Home Depot Count IV Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '582 Patent. For example, on information and belief, Home Depot offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example Home Depot Count IV Products and Services. Home Depot has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '582 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example Home Depot Count IV Products and Services.

130.    Home Depot therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '582 Patent with knowledge of the '582 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '582 Patent. Home Depot has actively induced others, including, but not limited to, partners, vendors,

39

customers, and/or third parties who use the Example Home Depot Count IV  Products and Services to infringe the '582 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example Home Depot Count IV Products and Services.

131.    **Contributory Infringement.** Home Depot actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '582 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '582 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

132.    Home Depot therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '582 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example Home Depot Count IV Products and Services for use in a manner that infringes one or more claims of the '582 Patent. Example Home Depot Count IV Products and Services are especially made or adapted for infringing the '582 Patent and have no substantial non-infringing use.

133.    Exhibit 13 (claim chart) includes the Example Home Depot Count IV Products and Services and Example '582 Patent Claims. As set forth in these charts, the Example Home Depot Count IV Products and Services practice the technology claimed by the '582 Patent. Accordingly,

the Example Home Depot Count IV Products and Services incorporated in these charts satisfy all elements of the Example '582 Patent Claims.

134.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 13.

135.    Intellectual Ventures is entitled to recover damages adequate to compensate for Defendants' infringement of the '582 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from Defendants to compensate them for Defendants' infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

136.    Further, Home Depot's infringement of Intellectual Ventures' rights under the '582 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

137.    As a result of Defendants' acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT V

(Home Depot's Infringement of U.S. Patent No. 7,712,080)

138.    Paragraphs 1 through 137 are incorporated by reference as if fully set forth herein.

139.    **Direct Infringement**. Home Depot, without authorization or license from IV, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '080 Patent, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '080 Patent, including but not limited to at least the Accused Products and Services identified in the example charts incorporated below, into this Count (collectively, "Example Home Depot Count V Products

41

and Services") that infringe at least the example claims of the '080 Patent identified in the charts incorporated into this Count (the "Example '080 Patent Claims") literally or by the doctrine of equivalents.

140. On information and belief, Home Depot has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '080 Patent Claims, by internal testing and use of the Example Home Depot Count V Products and Services.

141. Each claim of the '080 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '080 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '080 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. The '080 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims. Additionally, the claims of the '080 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

142. Each claim of the '080 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '080 Patent.

143. Home Depot has known that its infringing products and services, such as the Example Home Depot Count V Products and Services, cannot be used without infringing the technology claimed in the '080 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

144.    **Willful Blindness.** Home Depot knew of the '080 Patent, or should have known of the '080 Patent, but was willfully blind to its existence. Home Depot has had actual knowledge of the '080 Patent not later than receipt of a notice letter dated July 22, 2025. By the time of trial, Home Depot will have known and intended that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '080 Patent. *See* Exhibit 9 (July 22, 2025, Notice Letter).

145.    **Induced Infringement.** Home Depot has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '080 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example Home Depot Count V Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '080 Patent. For example, on information and belief, Home Depot offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example Home Depot Count V Products and Services. Home Depot has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '080 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example Home Depot Count V  Products and Services.

146.    Home Depot therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '080 Patent with knowledge of the '080 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '080 Patent.

43

Home Depot has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example Home Depot Count V Products and Services to infringe the '080 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example Home Depot Count V Products and Services.

147.    **Contributory Infringement.** Home Depot actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '080 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '080 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

148.    Home Depot therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '080 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example Home Depot Count V Products and Services for use in a manner that infringes one or more claims of the '080 Patent. Example Home Depot Count V Products and Services are especially made or adapted for infringing the '080 Patent and have no substantial non-infringing use.

149.    Exhibit 14 (claim chart) includes the Example Home Depot Count V Products and Services and Example '080 Patent Claims. As set forth in these charts, the Example Home Depot Count V  Products and Services practice the technology claimed by the '080 Patent. Accordingly,

the Example Home Depot Count V Products and Services incorporated in these charts satisfy all elements of the Example '080 Patent Claims.

150.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 14.

151.    Intellectual Ventures is entitled to recover damages adequate to compensate for Defendants' infringement of the '080 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from Defendants to compensate them for Defendants' infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

152.    Further, Home Depot's infringement of Intellectual Ventures' rights under the '080 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

153.    As a result of Defendants' acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VI

(Home Depot's Infringement of U.S. Patent No. 7,822,841)

154.    Paragraphs 1 through 153 are incorporated by reference as if fully set forth herein.

155.    **Direct Infringement**. Home Depot, without authorization or license from IV, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '841 Patent, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '841 Patent, including but not limited to at least the Accused Products and Services identified in the example charts incorporated below, into this Count (collectively, "Example Home Depot Count VI Products

45

and Services") that infringe at least the example claims of the '841 Patent identified in the charts incorporated into this Count (the "Example '841 Patent Claims") literally or by the doctrine of equivalents.

156.    On information and belief, Home Depot has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '841 Patent Claims, by internal testing and use of the Example Home Depot Count VI Products and Services.

157.    Each claim of the '841 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '841 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '841 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. The '841 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims. Additionally, the claims of the '841 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

158.    Each claim of the '841 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '841 Patent.

159.    Home Depot has known that its infringing products and services, such as the Example Home Depot Count VI Products and Services, cannot be used without infringing the technology claimed in the '841 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

160.    **Willful Blindness.** Home Depot knew of the '841 Patent, or should have known of the '841 Patent, but was willfully blind to its existence. Home Depot has had actual knowledge of the '841 Patent not later than receipt of a notice letter dated July 22, 2025. By the time of trial, Home Depot will have known and intended that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '841 Patent. *See* Exhibit 9 (July 22, 2025, Notice Letter).

161.    **Induced Infringement.** Home Depot has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '841 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example Home Depot Count VI Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '841 Patent. For example, on information and belief, Home Depot offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example Home Depot Count VI Products and Services. Home Depot has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '841 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example Home Depot Count VI Products and Services.

162.    Home Depot therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '841 Patent with knowledge of the '841 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '841 Patent.

47

Home Depot has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example Home Depot Count VI Products and Services to infringe the '841 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example Home Depot Count VI Products and Services.

163.    **Contributory Infringement.** Home Depot actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '841 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '841 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

164.    Home Depot therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '841 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example Home Depot Count VI Products and Services for use in a manner that infringes one or more claims of the '841 Patent. Example Home Depot Count VI  Products and Services are especially made or adapted for infringing the '841 Patent and have no substantial non-infringing use.

165.    Exhibit 15 (claim chart) includes the Example Home Depot Count VI Products and Services and Example '841 Patent Claims. As set forth in these charts, the Example Home Depot Count VI  Products and Services practice the technology claimed by the '841 Patent. Accordingly,

the Example Home Depot Count VI Products and Services incorporated in these charts satisfy all elements of the Example '841 Patent Claims.

166.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 15.

167.    Intellectual Ventures is entitled to recover damages adequate to compensate for Defendants' infringement of the '841 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from Defendants to compensate them for Defendants' infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

168.    Further, Home Depot's infringement of Intellectual Ventures' rights under the '841 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

169.    As a result of Defendants' acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VII

(Home Depot's Infringement of U.S. Patent No. 8,352,584)

170.    Paragraphs 1 through 169 are incorporated by reference as if fully set forth herein.

171.    **Direct Infringement**. Home Depot, without authorization or license from IV, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '584 Patent, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '584 Patent, including but not limited to at least the Accused Products and Services identified in the example charts incorporated below, into this Count (collectively, "Example Home Depot Count VII

49

Products and Services") that infringe at least the example claims of the '584 Patent identified in the charts incorporated into this Count (the "Example '584 Patent Claims") literally or by the doctrine of equivalents.

172.    On information and belief, Home Depot has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '584 Patent Claims, by internal testing and use of the Example Home Depot Count VII Products and Services.

173.    Each claim of the '584 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '584 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '584 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. The '584 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims. Additionally, the claims of the '584 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

174.    Each claim of the '584 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '584 Patent.

175.    Home Depot has known that its infringing products and services, such as the Example Home Depot Count VII Products and Services, cannot be used without infringing the technology claimed in the '584 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

50

176.    **Willful Blindness.** Home Depot knew of the '584 Patent, or should have known of the '584 Patent, but was willfully blind to its existence. Home Depot has had actual knowledge of the '584 Patent not later than receipt of a notice letter dated July 22, 2025. By the time of trial, Home Depot will have known and intended that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '584 Patent. *See* Exhibit 9 (July 22, 2025, Notice Letter).

177.    **Induced Infringement.** Home Depot has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '584 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example Home Depot Count VII Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '584 Patent. For example, on information and belief, Home Depot offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example Home Depot Count VII Products and Services. Home Depot has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '584 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example Home Depot Count VII Products and Services.

178.    Home Depot therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '584 Patent with knowledge of the '584 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '584 Patent.

Home Depot has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example Home Depot Count VII Products and Services to infringe the '584 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example Home Depot Count VII Products and Services.

179. **Contributory Infringement.** Home Depot actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '584 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '584 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

180. Home Depot therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '584 Patent, literally and/or by the doctrine of equivalents, by making, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example Home Depot Count VII Products and Services for use in a manner that infringes one or more claims of the '584 Patent. Example Home Depot Count VII Products and Services are especially made or adapted for infringing the '584 Patent and have no substantial non-infringing use.

181. Exhibit 16 (claim chart) includes the Example Home Depot Count VII Products and Services and Example '584 Patent Claims. As set forth in these charts, the Example Home Depot Count VII Products and Services practice the technology claimed by the '584 Patent.

52

Accordingly, the Example Home Depot Count VII Products and Services incorporated in these charts satisfy all elements of the Example '584 Patent Claims.

182.    Intellectual Ventures therefore incorporates by reference in its allegations herein the claim chart of Exhibit 16.

183.    Intellectual Ventures is entitled to recover damages adequate to compensate for Defendants' infringement of the '584 Patent and will continue to be damaged by such infringement. Intellectual Ventures is entitled to recover damages from Defendants to compensate them for Defendants' infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

184.    Further, Home Depot's infringement of Intellectual Ventures' rights under the '584 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

185.    As a result of Defendants' acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

186.    Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment that the Patents-in-Suit is valid and enforceable;

B.    A judgment that Defendants directly infringe, contributorily infringe, and/or actively induces infringement of one or more claims of the Patents-in-Suit;

53

C.      A judgment that awards Plaintiffs all damages adequate to compensate them for Defendants' direct infringement, willful infringement, contributory infringement, and/or induced infringement of the Patents-in-Suit, including all pre- judgment and post- judgment interest at the maximum rate permitted by law;

D.      A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendant's past infringement with respect to the Patents-in-Suit;

E.      A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendant's infringement of the Patents-in-Suit, which continue to damage Plaintiffs' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court;

F.      A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendants' continuing or future infringement, up until the date such judgment is entered with respect to the Patents-in-Suit, including ongoing royalties, pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

G.      A judgment that this case is exceptional under 35 U.S.C. § 285;

H.      An accounting of all damages not presented at trial; and

I.      A judgment that awards Plaintiffs their costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by the Court.

54

Dated: July 22, 2025            RESPECTFULLY SUBMITTED,

By: */s/ Gregory P. Love*
Greg Love
**STECKLER WAYNE & LOVE, PLLC**
107 East Main Street
Henderson, Texas 75652
Telephone: (903) 212-4444
Facsimile: (903) 392-2267
greg@stecklerlaw.com
TX Bar No. 24013060

Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(Admitted in this District)
tnguyen@kasowitz.com
Jonathan H. Hicks (CA Bar No. 274634)
(Admitted in this District)
jhicks@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
101 California Street, Suite 3950
San Francisco, CA 94111
Telephone: (415) 421-6140
Facsimile: (415) 358-4408

Paul G. Williams (GA Bar No. 764925)
(Admitted in this District)
pwilliams@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1230 Peachtree Street N.E., Suite 2445
Atlanta, Georgia 30309
Telephone: (404) 260-6102
Facsimile: (404) 393-9752

55

Jeceaca An (NY Bar No. 5849898)
(Admitted in this District)
jan@kasowitz.com
KASOWITZ LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

**Attorneys for Plaintiffs**
**INTELLECTUAL VENTURES I LLC**
**INTELLECTUAL VENTURES II LLC**