# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC, | ) ) ) | |
| *Plaintiffs*, | ) ) | C.A. No. 1:26-cv-00425 |
| v. | ) ) | JURY TRIAL DEMANDED |
| DEERE & COMPANY, | ) ) | |
| *Defendant*. | ) ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures," "IV," or "Plaintiffs"), in their Complaint for patent infringement against Defendant Deere & Company, hereby allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for the infringement of United States Patent Nos. 7,712,080 ("the '080 Patent"), 8,027,326 ("the '326 Patent"), 8,332,844 ("the '844 Patent"), 8,352,584 ("the '584 Patent"), 10,136,416 ("the '416 Patent"), 7,822,841 ("the '841 Patent"), 11,032,000 ("the '000 Patent"), and 11,206,670 ("the '670 Patent") (collectively, the "Patents-in-Suit") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

1

## THE PARTIES

### Intellectual Ventures

2.      Plaintiff Intellectual Ventures I LLC ("Intellectual Ventures I") is a Delaware limited liability company having its principal place of business located at 14360 SE Eastgate Way, Bellevue, WA 98007.

3.      Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures II") is a Delaware limited liability company having its principal place of business located at 14360 SE Eastgate Way, Bellevue, WA 98007.

4.      Intellectual Ventures I is the owner of all rights, title, and interest in and to the '326 Patent, and is the exclusive licensee of the '080 Patent.

5.      Intellectual Ventures II is the owner of all rights, title, and interest in and to the '844, '584, '416, '000, '841, and '670 Patents.

### Deere & Company

6.      On information and belief, Defendant Deere & Company ("John Deere" or "Defendant") is a Delaware corporation with a place of business at 1333 South Congress Avenue, Austin, Texas, 78704. John Deere is registered to do business in the State of Texas and may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, John Deere does business itself, or through its wholly owned subsidiaries, affiliates, and agents in the State of Texas and the Western District of Texas.

7.      On information and belief, John Deere, through its wholly-owned subsidiaries and affiliate companies, makes, manufactures, utilizes, services, tests, distributes, sells, offers, and/or offers for sale in the State of Texas and the Western District of Texas products, services, and

2

technologies ("Accused Products and Services") that infringe the Patents-in-Suit, contributes to the infringement by others, and/or induces others to commit acts of patent infringement in the State of Texas and the Western District of Texas.

8.      On information and belief, John Deere has derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of the Accused Products and Services as described in more detail below.

## JURISDICTION AND VENUE

9.      This is an action for patent infringement arising under the patent laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.      This Court has personal jurisdiction over John Deere because John Deere conducts business in and has committed acts of patent infringement, contributed to infringement by others, and/or induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States, and has established minimum contacts with this forum state such that the exercise of jurisdiction over John Deere would not offend the traditional notions of fair play and substantial justice. On information and belief, John Deere transacts substantial business with entities and individuals in the State of Texas and the Western District of Texas, by, among other things, making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the Patents-in-Suit, as well as by providing service and support to its customers in this District. John Deere also places certain of the Accused Products and Services into the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas, including this District. For example, John Deere manufactures agricultural machinery and equipment, and also provides financial services and other products and services.

11.    John Deere is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to John Deere's substantial business in the State of Texas and this District, including maintaining its John Deere Austin Research & Development Center located at 1333 South Congress Avenue, Austin, Texas, 78704, through its past infringing activities, because John Deere regularly does and solicits business herein, and/or because John Deere has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided to customers in the State of Texas and this District.

12.    On information and belief, John Deere does business itself, or through its wholly owned subsidiaries, affiliates, and agents, in the State of Texas and the Western District of Texas.

13.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because John Deere maintains numerous regular and established places of business in this District, and has committed and continues to commit acts of infringement in this District giving rise to this Action.

14.    For example, John Deere maintains its John Deere Austin Research & Development Center at 1333 South Congress Avenue, Austin, Texas, 78704 ("R&D Location").

15.    On information and belief, John Deere holds its R&D Location to be a regular and established place of business of John Deere in this District and also maintains that it is called the "John Deere Intelligent Solutions Group"[1].

---

[1] https://about.deere.com/en-us/locations/us-locations (last accessed February 20, 2026).

4



16.    On information and belief, the R&D Location in this District is a regular, continuous, and established physical place of business of John Deere, having been established, ratified, and/or controlled by John Deere as an authorized location, which is a place of business at which John Deere makes, manufactures, utilizes, services, tests, distributes, sells, and/or offers for sale the Accused Products and Services.

17.    On information and belief, John Deere ratifies and holds out this R&D Location as a regular and established place of business of John Deere in this District by identifying it on John Deere's website and on social media platforms, for example as shown below.[2]

---

[2] https://www.deere.com/en/stories/featured/research-dev-center/ (last accessed February 20, 2026); https://www.linkedin.com/posts/john-deere_welcome-to-our-austin-texas-test-site-activity-7371558069467496448-Ex82 (last accessed February 20, 2026).



# John Deere Launches Innovation Hub in Austin, Texas

- Austin office will serve as a collaboration hub for new hires including data scientists, data engineers, embedded software engineers, systems engineers, and computer vision and machine learning operations engineers.
- Deere's expanded technology team will rapidly deploy innovations to help farmers be more profitable and sustainable.
- Austin presence enables Deere to connect and collaborate with regional universities, startups, incubators, and the technology community.

**Welcome to our Austin, Texas Test Site**

**John Deere**
1,685,912 followers
3w · Edited

· · ·

It's official — We have a new test site in Austin, Texas!

"It all started with a laptop, a few business cards, and a bold idea—plus a napkin sketch over some BBQ," explained Kyle Leinaar, test site manager.

Back in early 2022, the vision for the John Deere Austin Research & Development Center began with a 40-acre leased field, two machines, and a trailer.

Fast forward to today: it's now a 285-acre hub for innovation, collaboration, and year-round testing.

"The site brings teams together with thoughtfully designed office spaces and expansive crop trial fields, bridging the gap between fieldwork and strategy," explained Kyle.

"It's where boots-on-the-ground insights meet enterprise-wide innovation!"

1,330 · 35 Comments

&#x1F44D; Like     &#x1F4AC; Comment     &#x2708; Share

6

18.    On information and belief, John Deere has expanded its R&D Location to 285-acres: "[i]n early 2022, a 40-acre leased field in Austin, Texas, became the proving ground for a vision that's now reality. With just two pieces of equipment and a trailer, the groundwork was laid—literally—for what would become the John Deere Austin Research & Development Center. Today, that bold beginning has grown into a 285-acre hub for innovation, collaboration, and year-round testing. The site brings teams together with thoughtfully designed office spaces and expansive crop trial fields, bridging the gap between fieldwork and strategy. 'It's where boots-on-the-ground insights meet enterprise-wide innovation,' explained Kyle Leinaar, test site manager."[3]



19.    On information and belief, John Deere has established, ratified, and holds this R&D Location out as a regular and established place of business of John Deere by at least (1) directing and controlling this R&D Location's actions and services in the foregoing manner, and (2) consenting to this R&D Location acting on John Deere's behalf and being John Deere's place of

---

[3] https://www.deere.com/en/stories/featured/research-dev-center/ (last accessed February 20, 2026).

business whereby the Accused Products and Services are designed, utilized, serviced, tested, distributed, offered, and/or offered for sale and placed into the stream of commerce in this District. Additionally, this R&D Location has consented to act on John Deere's behalf pursuant to the foregoing terms of control and direction in order to, among other things, be able to offer products and services that utilize the Accused Products and Services in this District.

20.     On information and belief, John Deere has thousands of employees working throughout the State of Texas, including in this District. On information and belief, John Deere has hundreds of employees who work and reside in the District (collectively, "John Deere Employees"). John Deere advertises job postings that require performance of job responsibilities in this District.[4] On information and belief, John Deere employs engineers in this District who perform software and product development including using various Accused Products and Services.[5]

21.     On information and belief, John Deere employs at least dozens of employees in this District who work remotely. John Deere also advertises at least thirty-two engineering and product

---

[4] https://us.bebee.com/job/876f42adab12cd00a52d96cd9cec320a (last accessed October 22, 2025); https://www.deere.com/en/stories/featured/research-dev-center/ (last accessed February 20, 2026).

[5] https://www.linkedin.com/in/carl-wiedemeier-29327819/; https://www.linkedin.com/in/matt-kelly-65b1b5102/; https://www.linkedin.com/in/chevy-robertson-a909a4183/; https://www.linkedin.com/in/sang-pham-2069ab177/; https://www.linkedin.com/in/datascientistnimit/; https://www.linkedin.com/in/deekshith-podila/; https://www.linkedin.com/in/srinadhmeruva/; https://www.linkedin.com/in/axel-castaneda-785358205/; https://www.linkedin.com/in/brycesandry/; https://www.linkedin.com/in/justinryanrose/; https://www.linkedin.com/in/mehawesh-alkhalil-84662934/; https://www.linkedin.com/in/innocent-nortey/; https://www.linkedin.com/in/sarah-wurden/; https://www.linkedin.com/in/karthik-reddy-775b19186/; https://www.linkedin.com/in/jarron/; https://www.linkedin.com/in/shelbydonner/; https://www.linkedin.com/in/itskevtrinh/; https://www.linkedin.com/in/john-knowlton/; https://www.linkedin.com/in/alex-overstreet/; https://www.linkedin.com/in/reuben-meyer/; https://www.linkedin.com/in/jasoncoffmanwebdev/ (last accessed February 20, 2026)

8

positions that allow remote work, including positions described as "onsite" with the option to work "up to 30% remote."[6]

22.    On information and belief, John Deere also maintains the John Deere websites, for example, shop.deere.com and deere.com, which are offered to its employees and customers in this District. John Deere has regular and established places of business at which it has committed acts of infringement and placed the Accused Products and Services into the stream of commerce, throughout the State of Texas and the Western District of Texas.

23.    On information and belief, John Deere develops and operates mobile applications, available for at least iOS and Android devices, which are responsible for making, manufacturing, using, marketing, distributing, offering for sale, and selling Accused Products and Services to customers in this District, at least indirectly ("John Deere Mobile Apps")[7]



---

[6] https://us.bebee.com/job/876f42adab12cd00a52d96cd9cec320a (last accessed October 22, 2025).

[7] Examples of mobile applications that John Deere develop and operate, available at: lhttps://www.deere.com/en/technology-products/equipment-mobile/; https://www.deere.com/en/technology-products/precision-ag-technology/data-management/connect-mobile/ (last accessed February 20, 2026)

9



24.     On information and belief, John Deere provides the John Deere Mobile Apps to its employees and customers to provide tools for accessing John Deere services, such as product research, operation, purchase, and customer support. For example, John Deere advertises that its mobile app supports various features such as viewing in-stock items, product lists, operator's manuals, maximize performance, detailed machine information, as well as other features.

25.     On information and belief, John Deere's Accused Products and Services infringe the Patents-in-Suit through at least using the accused technologies in its various systems and offerings. For example, on information and belief, John Deere uses the accused technologies for various applications, and John Deere infringes the Patents-in-Suit via testing its various systems and offerings. On information and belief, John Deere also infringes the Patents-in-Suit through inducement and contributes to the infringement through its vendors and other third parties' uses of John Deere's systems and services that utilize the accused technologies by providing components relating to the accused technologies that are not staple articles of commerce and have no substantial non-infringing uses. On information and belief, John Deere supplies its customers,

employees, and other third parties with access to its systems and services through various client and/or internal services that allows its customers, employees, and other third parties to use the claimed methods and systems.

26.    On information and belief, John Deere servers, or servers that are run on behalf of John Deere and subject to its control, are involved in the infringement of the Patents-in-Suit. On information and belief, John Deere provides instructions on how to use its various systems and offerings, the use of which results in infringement of the Patents-in-Suit through performance of the claimed methods and use of the claimed systems are controlled and beneficial use is derived in this District.

27.    On information and belief, John Deere's servers located in this District and/or backend servers controlled by John Deere located in this District and elsewhere in Texas process information about products in this District so they can be delivered to customers in this District, all of which constitutes material conduct that is part of, and helps establish, John Deere's infringement of the patented systems and techniques relating to the Accused Products and Services.

28.    On information and belief, John Deere's Products and Services infringe the asserted claims of one or more of the Patents-in-Suit in this District through at least its development, offering, and use of the John Deere Mobile Apps. John Deere further infringes one or more of the Patents-in-Suit in this District by its employees using and testing of the John Deere Mobile Apps' features.  John Deere further infringes one or more of the Patents-in-Suit in this District through making, manufacturing, offering for sale, and using of one or more of the Patents-in-Suit and controlling the systems as a whole and deriving beneficial use in the District.

**FACTUAL BACKGROUND**

29.    Intellectual Ventures Management, LLC ("Intellectual Ventures Management") was founded in 2000. Since then, Intellectual Ventures Management has been involved in the business of inventing. Intellectual Ventures Management facilitates invention by inventors and the filing of patent applications for those inventions, collaboration with others to develop and patent inventions, and the acquisition and licensing of patents from individual inventors, universities, corporations, and other institutions. A significant aspect of Intellectual Ventures Management's business is managing the Plaintiffs in this case, Intellectual Ventures I and Intellectual Ventures II.

30.    One of the founders of Intellectual Ventures Management is Nathan Myhrvold, who worked at Microsoft from 1986 until 2000 in a variety of executive positions, culminating in his appointment as the company's first Chief Technology Officer ("CTO") in 1996. While at Microsoft, Dr. Myhrvold founded Microsoft Research in 1991 and was one of the world's foremost software experts. Between 1986 and 2000, Microsoft became the world's largest technology company.

31.    Under Dr. Myhrvold's leadership, Intellectual Ventures acquired many patents covering important inventions now used in the farming and agriculture industry.

32.    John Deere's Accused Products and Services utilize and/or support various technologies, including but not limited to LTE, Wi-Fi, Kubernetes, Docker, and Spark. Certain of these products and services, such as LTE and Wi-Fi, are offered to John Deere's customers and/or employees and managed by John Deere, to enable John Deere products and services that it further offers to its customers and/or employees. Certain of these products and services, such as Kubernetes, Docker, and Spark, are technologies used and managed by John Deere to enable the

12

various products and services that John Deere offers to its customers. John Deere makes, manufactures, utilizes, services, tests, distributes, offers, and/or sells these products and services throughout the world, including in the United States and the State of Texas.

## THE PATENTS-IN-SUIT

*U.S. Patent No. 7,712,080*

33.     On May 4, 2010, the PTO issued the '080 Patent, titled "Systems and Methods for Parallel Distributed Programming." The '080 Patent is valid and enforceable. A copy of the '080 Patent is attached as Exhibit 1.

34.     Intellectual Ventures I LLC is the exclusive licensee under the '080 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '080 Patent.

35.     The claims of the '080 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

*U.S. Patent No. 8,027,326*

36.     On September 27, 2011, the PTO issued the '326 Patent, titled "Method and System for High Data Rate Multi-Channel WLAN Architecture." The '326 Patent is valid and enforceable. A copy of the '326 Patent is attached as Exhibit 2.

37.     Intellectual Ventures I is the owner of all rights, title, and interest in and to the '326 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '326 Patent.

13

38.     The claims of the '326 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

**U.S. Patent No. 8,332,844**

39.     On December 11, 2012, the PTO issued the '844 Patent, titled "Root Image Caching and Indexing for Block-Level Distributed Application Management." The '844 Patent is valid and enforceable. A copy of the '844 Patent is attached as Exhibit 3.

40.     Intellectual Ventures II is the owner of all rights, title, and interest in and to the '844 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '844 Patent.

41.     The claims of the '844 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

**U.S. Patent No. 8,352,584**

42.     On January 8, 2013, the PTO issued the '584 Patent, titled "Systems for Hosting Customized Computing Clusters." The '584 Patent is valid and enforceable. A copy of the '584 Patent is attached as Exhibit 4.

43.     Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '584 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '584 Patent.

44.     The claims of the '584 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

*U.S. Patent No. 10,136,416*

45.    On November 20, 2018, the PTO issued the '416 Patent, titled "Communicating on a Shared Channel in a Wireless Network." The '416 Patent is valid and enforceable. A copy of the '416 Patent is attached as Exhibit 5.

46.    Intellectual Ventures II is the owner of all rights, title, and interest in and to the '416 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '416 Patent.

47.    The claims of the '416 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

*U.S. Patent No. 7,822,841*

48.    On October 26, 2010, the PTO issued the '841 Patent, titled "Method and System for Hosting Multiple, Customized Computing Clusters." The '841 Patent is valid and enforceable. A copy of the '841 Patent is attached as Exhibit 6.

49.    Intellectual Ventures II is the owner of all rights, title, and interest in and to the '841 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '841 Patent.

50.    The claims of the '841 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

15

***U.S. Patent No. 11,032,000***

51.     On June 8, 2021, the PTO issued the '000 Patent, titled "Communications in a Wireless Network." The '000 Patent is valid and enforceable. A copy of the '000 Patent is attached as Exhibit 7.

52.     Intellectual Ventures II LLC is the owner of all rights, title, and interest in and to the '000 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '000 Patent.

53.     The claims of the '000 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

***U.S. Patent No. 11,206,670***

54.     On December 21, 2021, the PTO issued the '670 Patent, titled "Communication in a Wireless Network Using Restricted Bandwidths." The '670 Patent is valid and enforceable. A copy of the '670 Patent is attached as Exhibit 8.

55.     Intellectual Ventures II is the owner of all rights, title, and interest in and to the '670 Patent, and holds all substantial rights therein, including the right to grant licenses, to exclude others, and to enforce and recover past damages for infringement of the '670 Patent.

56.     The claims of the '670 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination.

**<u>COUNT I</u>**

(John Deere's Infringement of U.S. Patent No. 7,712,080)

57.     Paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

16

58. **Direct Infringement.** John Deere, without authorization or license from Intellectual Ventures I, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '080 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the '080 Patent, including but not limited to at least the Accused Products and Services identified in the example chart, incorporated by reference below, into this Count (collectively, "Example John Deere Count I Products and Services") that infringe at least the example claims of the '080 Patent identified in the chart incorporated into this Count (the "Example '080 Patent Claims") literally or by the doctrine of equivalents.

59. On information and belief, John Deere has also infringed and continues to directly infringe literally or under the doctrine of equivalents, the Example '080 Patent Claims, by internal testing and use of the Example John Deere Count I Products and Services.

60. Each claim of the '080 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '080 Patent is related to systems and methods for parallel distributed programming over multiple processors and multiple memories including a distributed shared variable. The '080 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of efficiently programming tasks and threads in a parallel distributed program, among other issues. For example, the '080 Patent describes in column 1 at lines 25-30 that software "for operation on multiple processors that uses multiple memory areas" is "more complex" and are generally referred to as "parallel distributed programs." The Patent further describes different approaches to developing such programs at column 1 line 31 to column 2 line 2, but that existing approaches were problematic because developing source code "may be burdensome to develop because

17

programming the multiple tasks and threads and having them send and receive messages to each other may dramatically change the code structure and data structure of the original algorithm" or are "generally not as efficient" because they "may require a transfer of large amounts of data from the memory" on different processor(s) and "thus may not satisfy the need for high performance parallel computing." The '080 Patent further describes that "improved systems and methods for parallel distributed programming are desirable" at column 2 lines 3-4. The '080 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by the asserted claims, including claim 9. Additionally, the claims of the '080 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 9 were not routine or conventional, as evidenced by the '080 Patent file history: "transforming the at least one distributed sequential computing program into at least one distributed parallel computing program by spawning at least one child distributed sequential computing program from the at least one distributed sequential computing program when at least one intermediate condition occurs within the at least one distributed sequential computing program, wherein the at least one distributed parallel computing program concurrently uses the at least one distributed sequential computing program and the at least one spawned child distributed sequential computing program to perform parallel processing and/or operations, wherein the at least one intermediate condition comprising one intermediate result that will be required by the at least one spawned child distributed sequential computing program to continue computation."

61.    Each claim of the '080 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '080 Patent.

18

62.    John Deere has known that its infringing products and services, such as the Example Count I Products and Services, cannot be used without infringing the '080 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

63.    **Willful Blindness.** John Deere knew of the '080 Patent, or should have known of the '080 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of the '080 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '080 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

64.    **Induced Infringement.** John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '080 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example John Deere Count I Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '080 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example John Deere Count I Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '080 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example John Deere Count I Products and Services.

65.    John Deere therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '080 Patent with knowledge of the '080 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '080 Patent. John Deere has actively induced others, including, but not limited to, partners, vendors, customers, and/or third-parties who use the Example John Deere Count I Products and Services to infringe the '080 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example John Deere Count I Products and Services.

66.    **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia,* knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '080 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '080 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

67.    John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '080 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Example John Deere Count I Products and Services for use in a manner that infringes one or more claims of the

'080 Patent. Example John Deere Count I Products and Services are especially made or adapted for infringing the '080 Patent and have no substantial non-infringing use.

68. Exhibit 11 (claim chart) includes the Example John Deere Count I Products and Services and Example '080 Patent Claims. As set forth in the chart, the Example John Deere Count I Products and Services practice the technology claimed by the '080 Patent. Accordingly, the Example John Deere Count I Products and Services incorporated in the chart satisfies all elements of the Example '080 Patent Claims.

69. Intellectual Ventures I therefore incorporates by reference in its allegations herein the claim chart of Exhibit 11.

70. Intellectual Ventures I is entitled to recover damages adequate to compensate for Defendant's infringement of the '080 Patent and will continue to be damaged by such infringement. Intellectual Ventures I is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

71. Further, Defendant's infringement of Intellectual Ventures' rights under the '080 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

72. As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT II

(John Deere's Infringement of U.S. Patent No. 8,027,326)

73. Paragraphs 1 through 72 are incorporated by reference as if fully set forth herein.

21

74.    **Direct Infringement.** John Deere, without authorization or license from Intellectual Ventures I, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '326 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the '326 Patent, including but not limited to at least the Accused Products and Services identified in the example chart, incorporated by reference below, into this Count (collectively, "Example John Deere Count II Products and Services") that infringed at least the example claims of the '326 Patent identified in the chart incorporated into this Count (the "Example '326 Patent Claims") literally or by the doctrine of equivalents.

75.    On information and belief, John Deere has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '326 Patent Claims, by internal testing and use of the Example John Deere Count II Products and Services.

76.    Each claim of the '326 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. For example, the '326 Patent is related to increasing Wi-Fi bandwidth using a dual-channel form for increased flexibility and performance. The '326 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of increasing Wi-Fi traffic demand and corresponding need to increase bandwidth, among other issues. For example, the '326 Patent describes at column 1 lines 65 to column 2 line 1 that radios compliant with IEEE 802.11a or 802.11g use "Orthogonal Frequency Division Multiplexing (OFDM) modulation in which a stream of data is transmitted over multiple small frequency sub-channels." Based on the requirement of backward compatibility in IEEE 802.11 (Wi-Fi), this includes all subsequent versions, meaning this OFDM mode is required to be supported in all Wi-Fi hardware today. The

22

patent further describes that "[l]egacy radios" were designed with several assumptions, including relatively stable channels, frames were "bursty in nature and relatively short," and "initial channel estimate information determined at the start of each frame was assumed to be sufficiently accurate for that frame" at column 3 lines 41-47. The patent describes that, with an emphasis on "mobility and/or accuracy," there is a greater need for "improved accuracy [that] can improve transmission speed and enable a higher transmission rate with a lower packet error rate (PER)" at column 3 lines 47-55. The '326 Patent addressed this technical problem and others with a technical solution that is described in the specification, for example at column 3 lines 59 to 67, and captured by, for example claim 1. Additionally, the claims of the '326 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 1 were not routine or conventional, as evidenced by the '326 Patent file history: "partially filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap such that the one or more guard bands are at least partially filled with at least some of the one or more data subcarriers using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform."

77.      Each claim of the '326 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '326 Patent.

78.      John Deere has known that its infringing products and services, such as the Example John Deere Count II Products and Services, cannot be used without infringing the '326 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

79.      **Willful Blindness.** John Deere knew of the '326 Patent, or should have known of the '326 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of

23

the '326 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '326 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

80. **Induced Infringement**. John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '326 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use its products and services, such as Example John Deere Count II Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '326 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with Wi-Fi connectivity provided by the Example John Deere Count II Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '326 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with Wi-Fi connectivity provided by the Example John Deere Count II Products and Services.

81. John Deere therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '326 Patent with knowledge of the '326 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '326 Patent John Deere has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example John Deere Count II Products and Services to infringe

24

the '326 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example John Deere Count II Products and Services.

82.     **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia,* knowingly providing Wi-Fi connectivity that when used, cause the direct infringement of one or more claims of the '326 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '326 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

83.     John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '326 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale Example John Deere Count II Products and Services for use in a manner that infringes one or more claims of the '326 Patent. Example John Deere Count II Products and Services are especially made or adapted for infringing the '326 Patent and have no substantial non-infringing use.

84.     Exhibit 12 (claim chart) includes the Example John Deere Count II Products and Services and Example '326 Patent Claims. As set forth in the chart, the Example John Deere Count II Products and Services practice the technology claimed by the '326 Patent. Accordingly, the Example John Deere Count II Products and Services incorporated in the chart satisfies all elements of the Example '326 Patent Claims.

25

85.    Intellectual Ventures I therefore incorporates by reference in its allegations herein the claim chart of Exhibit 12.

86.    Intellectual Ventures I is entitled to recover damages adequate to compensate for Defendant's infringement of the '326 Patent and will continue to be damaged by such infringement. Intellectual Ventures II is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

87.    Further, Defendant's infringement of Intellectual Ventures' rights under the '326 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

88.    As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT III

(John Deere's Infringement of U.S. Patent No. 8,332,844)

89.    Paragraphs 1 through 88 are incorporated by reference as if fully set forth herein.

90.    **Direct Infringement**. John Deere, without authorization or license from Intellectual Ventures II, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '844 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the '844 Patent, including but not limited to at least the Accused Products and Services identified in the example chart, incorporated by reference below, into this Count (collectively, "Example John Deere Count III Products and Services") that

26

infringe at least the example claims of the '844 Patent identified in the chart incorporated into this Count (the "Example '844 Patent Claims") literally or by the doctrine of equivalents.

91. On information and belief, John Deere has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '844 Patent Claims, by internal testing and use of the Example John Deere Count III Products and Services.

92. Each claim of the '844 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. For example, the '844 Patent is related to root image caching and indexing for block-level distributed application management. The '844 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of updating the boot image(s) for the cluster, among other issues. For example, the '844 Patent describes at column 1 lines 64-67 that "[r]egardless of which of the preceding methods is used, both suffer from the same major problem-updating the boot image(s) for the cluster is cumbersome, as it means updating a number of copies of the boot image." The '844 Patent addressed this technical problem and others with a technical solution that is reflected in the asserted claims, including, for example, claim 7. Additionally, the claims of the '844 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 7 were not routine or conventional, as evidenced by the '844 Patent file history: "said leaf images including only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of the root image" and "wherein said leaf images of respective compute nodes do not include blocks of said root image that are unchanged by respective compute nodes."

27

93.     Each claim of the '844 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '844 Patent.

94.     John Deere has known that its infringing products and services, such as the Example John Deere Count III Products and Services, cannot be used without infringing the '844 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

95.     **Willful Blindness.** John Deere knew of the '844 Patent, or should have known of the '844 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of the '844 Patent not later than receipt of a letter, dated December 19, 2024, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '844 Patent. *See* Exhibit 10 (December 19, 2024 Notice Letter). Further, John Deere has had actual knowledge of the '844 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '844 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

96.     **Induced Infringement.** John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '844 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or its products and services, such as Example John Deere Count III Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '844 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with

28

backend functionality provided by the Example John Deere Count III Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '844 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example John Deere Count III Products and Services.

97.     John Deere therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '844 Patent with knowledge of the '844 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '844 Patent. John Deere has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example John Deere Count III Products and Services to infringe the '844 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example John Deere Count III Products and Services.

98.     **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '844 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '844 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

29

99.     John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '844 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Example John Deere Count III Products and Services for use in a manner that infringes one or more claims of the '844 Patent. Example John Deere Count III Products and Services are especially made or adapted for infringing the '844 Patent and have no substantial non-infringing use.

100.    Exhibit 13 (claim chart) includes the Example John Deere Count III Products and Services and Example '844 Patent Claims. As set forth in the chart, the Example John Deere Count III Products and Services practice the technology claimed by the '844 Patent. Accordingly, the Example John Deere Count III Products and Services incorporated in the chart satisfies all elements of the Example '844 Patent Claims.

101.    Intellectual Ventures II therefore incorporates by reference in its allegations herein the claim chart of Exhibit 13.

102.    Intellectual Ventures II is entitled to recover damages adequate to compensate for Defendant's infringement of the '844 Patent and will continue to be damaged by such infringement. Intellectual Ventures II is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

103.    Further, Defendant's infringement of Intellectual Ventures' rights under the '844 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

30

104. As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT IV

(John Deere's Infringement of U.S. Patent No. 8,352,584)

105. Paragraphs 1 through 104 are incorporated by reference as if fully set forth herein.

106. **Direct Infringement**. John Deere, without authorization or license from Intellectual Ventures II, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '584 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the '584 Patent, including but not limited to at least the Accused Products and Services identified in the example chart, incorporated by reference below, into this Count (collectively, "Example John Deere Count IV Products and Services") that infringe at least the example claims of the '584 Patent identified in the chart incorporated into this Count (the "Example '584 Patent Claims") literally or by the doctrine of equivalents.

107. On information and belief, John Deere has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '584 Patent Claims, by internal testing and use of the Example John Deere Count IV Products and Services.

108. Each claim of the '584 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '584 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '584 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. For example, the '584 Patent at column 1 lines 39-43 and

31

column 2 lines 12-20 describes issues with setup, configuration, and management of multi-cluster environments, and also describes at column 2 lines 26-51 the need for multi-cluster systems that are configured to a computing task, and describes multiple failed attempts at solutions to issues involving multi-cluster systems. The '584 Patent addressed this technical problem and others with a technical solution that is described in the specification for example at column 2 line 64 to column 3 line 3 and captured by one or more claims, including for example claim 1. Additionally, the claims of the '584 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 1 were not routine or conventional, as evidenced by the '584 Patent file history: "a monitoring system to monitor operations of the first cluster or the second cluster for communication problems," "wherein the first cluster establishes communications between the set of computing resources of the first cluster and a first gateway communicatively linked between the first cluster and the private communications network," and "wherein the second cluster establishes communications among the set of computing resources of the second cluster and a second gateway communicatively linked between the second cluster and the private communications network," and "wherein communications between the first cluster and the second cluster are isolated."

109.    Each claim of the '584 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '584 Patent.

110.    John Deere has known that its infringing products and services, such as the Example John Deere Count IV Products and Services, cannot be used without infringing the '584 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

32

111.    **Willful Blindness.** John Deere knew of the '584 Patent, or should have known of the '584 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of the '584 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '584 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

112.    **Induced Infringement.** John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '584 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or its products and services, such as Example John Deere Count IV Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '584 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with backend functionality provided by the Example John Deere Count IV Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '584 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with backend functionality provided by the Example John Deere Count IV Products and Services.

113.    **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '584 Patent by its customers, partners,

33

vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '584 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

114.    John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '584 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Example John Deere Count IV Products and Services for use in a manner that infringes one or more claims of the '584 Patent. Example John Deere Count IV Products and Services are especially made or adapted for infringing the '584 Patent and have no substantial non-infringing use.

115.    Exhibit 14 (claim chart) includes the Example John Deere Count IV Products and Services and Example '584 Patent Claims. As set forth in the chart, the Example John Deere Count IV Products and Services practice the technology claimed by the '584 Patent. Accordingly, the Example John Deere Count IV Products and Services incorporated in the chart satisfies all elements of the Example '584 Patent Claims.

116.    Intellectual Ventures II therefore incorporates by reference in its allegations herein the claim chart of Exhibit 14.

117.    Intellectual Ventures II is entitled to recover damages adequate to compensate for Defendant's infringement of the '584 Patent and will continue to be damaged by such infringement. Intellectual Ventures II is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a

34

reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

118.    Further, Defendant's infringement of Intellectual Ventures' rights under the '584 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

119.    As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

### COUNT V

(John Deere's Infringement of U.S. Patent No. 10,136,416)

120.    Paragraphs 1 through 119 are incorporated by reference as if fully set forth herein.

121.    **Direct Infringement**. John Deere, without authorization or license from Intellectual Ventures II, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '416 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the '416 Patent, including but not limited to at least the Accused Products and Services identified in the example chart, incorporated by reference below, into this Count (collectively, "Example John Deere Count V Products and Services") that infringe at least the example claims of the '416 Patent identified in the chart incorporated into this Count (the "Example '416 Patent Claims") literally or by the doctrine of equivalents.

122.    On information and belief, John Deere has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '416 Patent Claims, by internal testing and use of the Example John Deere Count V Products and Services.

35

123.    Each claim of the '416 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '416 Patent is related to transmitting transport channels over a physical channel of a cellular communication system, including allocation channel resources within a physical channel of such a system. The '416 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of reusing channel timeslots and avoiding increase in power requirements, among other issues. For example, the '416 Patent at column 5 lines 35-44 describes issues with reusing forward access channel timeslots, which requires an additional timeslot requiring a portion of transmit power to be used. The '416 Patent further describes that, "although the reuse of the FACH timeslot by mapping the FACH onto [high-speed downlink shared channel] resources provides a considerable improvement in the use of the physical resources, this increase in the power requirements is undesirable" at column 5 lines 45-49. The '416 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by one or more claims, including for example claim 1. Additionally, the claims of the '416 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 1 were not routine or conventional, as evidenced by the '416 Patent file history: "a receiver, the receiver configured to receive broadcast information including a plurality of bits, wherein each of the plurality of bits indicates a respective time interval that physical shared channel resources are utilized to signal channels;" and "a processor, the processor communicatively coupled to the receiver and configured to monitor the signaled channels in indicated time intervals, to determine whether signaling information for the UE is

36

present based on an identification of the UE, and to process the signaling information in response to the determination that signaling information for the UE is present."

124.    Each claim of the '416 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '416 Patent.

125.    John Deere has known that its infringing products and services, such as the Example John Deere Count V Products and Services, cannot be used without infringing the '416 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

126.    **Willful Blindness.** John Deere knew of the '416 Patent, or should have known of the '416 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of the '416 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '416 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

127.    **Induced Infringement.** John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '416 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or its products and services, such as Example John Deere Count V Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '416 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with LTE connectivity provided by the Example John Deere Count V Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '416 Patent by offering such products and services and contributing to and/or

37

inducing its customers and third parties and/or employees to use such products and services that are associated with LTE connectivity provided by the Example John Deere Count V Products and Services.

128.    John Deere therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '416 Patent with knowledge of the '416 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '416 Patent. John Deere has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example John Deere Count V Products and Services to infringe the '416 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example John Deere Count V Products and Services.

129.    **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '416 Patent by its customers, partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '416 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

130.    John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '416 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing,

38

servicing, testing, distributing, selling, offering, and/or offering for sale the Example John Deere Count V Products and Services for use in a manner that infringes one or more claims of the '416 Patent. Example John Deere Count V Products and Services are especially made or adapted for infringing the '416 Patent and have no substantial non-infringing use.

131.    Exhibit 15 (claim chart) includes the Example John Deere Count V Products and Services and Example '416 Patent Claims. As set forth in the chart, the Example John Deere Count V Products and Services practice the technology claimed by the '416 Patent. Accordingly, the Example John Deere Count V Products and Services incorporated in the chart satisfies all elements of the Example '416 Patent Claims.

132.    Intellectual Ventures II therefore incorporates by reference in its allegations herein the claim chart of Exhibit 15.

133.    Intellectual Ventures II is entitled to recover damages adequate to compensate for Defendant's infringement of the '416 Patent and will continue to be damaged by such infringement. Intellectual Ventures II is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

134.    Further, Defendant's infringement of Intellectual Ventures' rights under the '416 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

135.    As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VI

(John Deere's Infringement of U.S. Patent No. 7,822,841)

136.    Paragraphs 1 through 135 are incorporated by reference as if fully set forth herein.

137.    **Direct Infringement**. John Deere, without authorization or license from Intellectual Ventures II, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '841 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Accused Products and Services that infringe the '841 Patent, including but not limited to at least the Accused Products and Services identified in the example charts, incorporated by reference below, into this Count (collectively, "Example John Deere Count VI Products and Services") that infringe at least the example claims of the '841 Patent identified in the charts incorporated into this Count (the "Example '841 Patent Claims") literally or by the doctrine of equivalents.

138.    On information and belief, John Deere has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '841 Patent Claims, by internal testing and use of the Example John Deere Count VI Products and Services.

139.    Each claim of the '841 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '841 Patent is related to secure, customizable computer clusters and detecting cluster-level and node-level issues. The '841 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of multi-cluster configuration management and efficient usage of cluster resources, among other issues. For example, the '841 Patent describes that multi-clusters or multiple clusters can be used to perform various tasks, but that they raise technical issues because of their technical complexity for example by "consum[ing] a much larger set of resources

40

and be[coming] even more expensive to maintain" (at column 2 lines 22-25) and raise technical issues in "monitoring the individual cluster components" (at column 4 lines 19-27). The '841 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by the asserted claims including claim 1. The Patent further describes attempts to address these technical issues with multi-cluster environments, all of which have failed at column 2 lines 25-44. Additionally, the claims of the '841 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 1 were not routine or conventional, as evidenced by the '841 Patent file history: "a monitoring system monitoring operations of the first and second clusters, identifying operational and connectivity problems, and issuing an alert in response to the identified problems indicating a corresponding one of the first and second clusters associated with the identified problems"; and "wherein the monitoring system comprises a main monitor that operates to monitor the first and second clusters to identify the operation and connectivity problems and further comprises monitors for each node of the first and second clusters operating to check for hardware and software problems within a particular node and to report the hardware and software problems to the main monitor."

140.    Each claim of the '841 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '841 Patent.

141.    John Deere has known that its infringing products and services, such as the Example John Deere Count VI Products and Services, cannot be used without infringing the '841 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

142. **Willful Blindness.** John Deere knew of the '841 Patent, or should have known of the '841 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of the '841 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '841 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

143. **Induced Infringement.** John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '841 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or its products and services, such as Example John Deere Count VI Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '841 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with LTE connectivity provided by the Example John Deere Count VI Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '841 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with LTE connectivity provided by the Example John Deere Count VI Products and Services.

144. John Deere therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '841 Patent with knowledge of the '841 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '841 Patent.

42

John Deere has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example John Deere Count VI Products and Services to infringe the '841 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example John Deere Count VI Products and Services.

145.    **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '841 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '841 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

146.    John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '841 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing, servicing, testing, distributing, selling, offering, and/or offering for sale the Example John Deere Count VI Products and Services for use in a manner that infringes one or more claims of the '841 Patent. Example John Deere Count VI Products and Services are especially made or adapted for infringing the '841 Patent and have no substantial non-infringing use.

147.    Exhibit 16 (claim chart) include the Example John Deere Count VI Products and Services and Example '841 Patent Claims. As set forth in this chart, the Example John Deere Count VI Products and Services practice the technology claimed by the '841 Patent. Accordingly, the

43

Example John Deere Count VI Products and Services incorporated in this chart satisfies all elements of the Example '841 Patent Claims.

148.    Intellectual Ventures II therefore incorporates by reference in its allegations herein the claim chart of Exhibit 16.

149.    Intellectual Ventures II is entitled to recover damages adequate to compensate for Defendant's infringement of the '841 Patent and will continue to be damaged by such infringement. Intellectual Ventures II is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

150.    Further, Defendant's infringement of Intellectual Ventures' rights under the '841 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

151.    As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VII

(John Deere's Infringement of U.S. Patent No. 11,032,000)

152.    Paragraphs 1 through 151 are incorporated by reference as if fully set forth herein.

153.    **Direct Infringement**. John Deere, without authorization or license from Intellectual Ventures II, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '000 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '000 Patent, including but not limited to at least the Accused Products and Services identified in the example charts, incorporated by reference

44

below, into this Count (collectively, "Example John Deere Count VII Products and Services") that infringe at least the example claims of the '000 Patent identified in the charts incorporated into this Count (the "Example '000 Patent Claims") literally or by the doctrine of equivalents.

154.    On information and belief, John Deere has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '000 Patent Claims, by internal testing and use of the Example John Deere Count VII Products and Services.

155.    Each claim of the '000 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '000 Patent is related to improving user equipment (UE) devices by improving UE uplink channel control. The '000 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of lack of correlation between uplink and downlink path loss, among other issues. For example, the '000 Patent describes at column 1 lines 29-40 channel reciprocity, which "gives equipment the ability to derive information about uplink channel conditions from downlink channel conditions based on upon signals received by the user equipment (UE)." The Patent further describes that channel reciprocity "cannot always be guaranteed," for example when "TDD transmissions [are not] permitted in certain frequency spectrum allocations," resulting in losing "correlation between uplink and downlink channels" at column 1 lines 53-64. The Patent further describes that, "in high speed mobile applications, the time delay between downlink and uplink transmissions may exceed the coherence time of the channel," which can be tolerated only to a certain degree, and the "use of multiple transmit and/or receive antennas at the network and/or the mobile terminal can introduce unintentional decorrelation between the uplink and downlink channels" at column 1 line 65 to column 2 line 7. The Patent then describes that "it would be advantageous to find a substitute for channel

45

reciprocity" where correlation between an uplink and downlink path loss is not guaranteed at column 2 lines 8 -11. The '000 Patent addressed this technical problem and others with a technical solution that is described in the specification and captured by the asserted claims including claim 1. Additionally, the claims of the '000 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 14 were not routine or conventional, as evidenced by the '000 Patent file history: "the transmitter and the processor are further configured, in a time interval that it is not sending information over the physical uplink shared channel, to send the uplink physical signal based on the received resource allocation information, wherein the uplink physical signal is used to determine channel conditions by a base station and in the same time interval that the uplink physical signal is sent, a plurality of UEs transmit uplink physical signals in the same time interval"; and "the receiver and the processor are further configured to receive, on a physical control channel, control information, wherein the control information is based on the determined channel conditions, wherein physical control channels are transmitted in a same time slot with other physical channels in a plurality of predetermined time slots in a downlink frame, wherein other time slots of the downlink frame do not include a physical control channel, wherein a number of bits sent over the physical control channel is based on a number of fields of control information to be sent to the UE."

156.    Each claim of the '000 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '000 Patent.

157.    John Deere has known that its infringing products and services, such as the Example John Deere Count VII Products and Services, cannot be used without infringing the '000 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

158.   **Willful Blindness.** John Deere knew of the '000 Patent, or should have known of the '000 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of the '000 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '000 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

159.   **Induced Infringement.** John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '000 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example John Deere Count VII Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '000 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with LTE connectivity provided by the Example John Deere Count VII Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '000 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with LTE connectivity provided by the Example John Deere Count VII Products and Services.

160.   John Deere therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '000 Patent with knowledge of the '000 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '000 Patent.

47

John Deere has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example John Deere Count VII Products and Services to infringe the '000 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example John Deere Count VII Products and Services.

161.    **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '000 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '000 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

162.    John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '000 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example John Deere Count VII Products and Services for use in a manner that infringes one or more claims of the '000 Patent. Example John Deere Count VII Products and Services are especially made or adapted for infringing the '000 Patent and have no substantial non-infringing use.

163.    Exhibit 17 (claim chart) includes the Example John Deere Count VII Products and Services and Example '000 Patent Claims. As set forth in these charts, the Example John Deere Count VII Products and Services practice the technology claimed by the '000 Patent. Accordingly,

48

the Example John Deere Count VII Products and Services incorporated in these charts satisfy all elements of the Example '000 Patent Claims.

164.    Intellectual Ventures II therefore incorporates by reference in its allegations herein the claim chart of Exhibit 17.

165.    Intellectual Ventures II is entitled to recover damages adequate to compensate for Defendant's infringement of the '000 Patent and will continue to be damaged by such infringement. Intellectual Ventures II is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

166.    Further, John Deere's infringement of Intellectual Ventures' rights under the '000 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

167.    As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT VIII

(John Deere's Infringement of U.S. Patent No. 11,206,670)

168.    Paragraphs 1 through 167 are incorporated by reference as if fully set forth herein.

169.    **Direct Infringement**. John Deere, without authorization or license from Intellectual Ventures II, has directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, the '670 Patent, by making, manufacturing, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Accused Products and Services that infringe the '670 Patent, including but not limited to at least the Accused Products and Services identified in the example charts, incorporated by reference

49

below, into this Count (collectively, "Example John Deere Count VIII Products and Services") that infringe at least the example claims of the '670 Patent identified in the charts incorporated into this Count (the "Example '670 Patent Claims") literally or by the doctrine of equivalents.

170.    On information and belief, John Deere has also infringed and continues to directly infringe, literally or under the doctrine of equivalents, the Example '670 Patent Claims, by internal testing and use of the Example John Deere Count VIII Products and Services.

171.    Each claim of the '670 Patent is valid, enforceable, and patent eligible under Section 101 of the Patent Act. The '670 Patent is related to improving wireless communications between a base station and user equipment ("UE") using a subordinate carrier of a host carrier. The '670 Patent discloses and claims systems and methods that address technical problems that are inherent in and derive from prior art methods and systems involving the problems of using "relatively inexpensive and less complex devices to communication using LTE type networks" due to development of advanced data modulation techniques and wide bandwidth usage on radio interfaces, among other issues. For example, the '670 Patent describes at column 1 lines 56-59 that the development of 3G and 4G networks has led to the "development of a class of devices and applications which, rather than taking advantage of the high data rates available, instead take advantage of the robust radio interface and increasing ubiquity of the coverage area." The Patent further describes that, while it "can be convenient for a terminal … to take advantage of the wide coverage area provided by a [3G] or [4G] mobile telecommunications network," there are disadvantages such as providing for "relatively simple and inexpensive" terminals at column 2 lines 3-25. The Patent then describes that it would be advantageous to "use relatively inexpensive and less complex devices to communicate using LTE type networks" at column 2 lines 23-25. The '670 Patent addressed this technical problem and others with a technical solution that is described

in the specification and captured by the asserted claims including claim 1. Additionally, the claims of the '670 Patent are novel and non-obvious and recite elements and steps that were not routine or conventional at the time of the invention, either individually or in combination. For example, the following claim limitations recited in claim 1 were not routine or conventional, as evidenced by the '670 Patent file history: "wherein the indicated frequency resources and the time resources include control information for use by the UE to acquire a system information block 1." Each claim of the '670 Patent recites an independent invention. Neither the example claims described nor any other individual claim is representative of all claims in the '670 Patent.

172.    John Deere has known that its infringing products and services, such as the Example John Deere Count VIII Products and Services, cannot be used without infringing the '670 Patent, and are not staple articles of commerce suitable for substantial non-infringing uses.

173.    **Willful Blindness.** John Deere knew of the '670 Patent, or should have known of the '670 Patent, but was willfully blind to its existence. John Deere has had actual knowledge of the '670 Patent not later than receipt of a letter, dated December 19, 2024, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '670 Patent. *See* Exhibit 10 (December 19, 2024 Notice Letter). Further, John Deere has had actual knowledge of the '670 Patent not later than receipt of a letter, dated February 23, 2026, and received on the same date. By the time of trial, John Deere will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '670 Patent. *See* Exhibit 9 (February 23, 2026 Notice Letter).

51

174.    **Induced Infringement.** John Deere has also contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '670 Patent by contributing to and/or inducing its partners, vendors, customers, and/or third parties to use or cause to use its products and services, such as Example John Deere Count VIII Products and Services, in an infringing manner as described above, including encouraging and instructing its partners, vendors, customers, and/or third parties to infringe the '670 Patent. For example, on information and belief, John Deere offers products and services to its customers and third parties and/or employees that are associated with LTE connectivity provided by the Example John Deere Count VIII Products and Services. John Deere has contributed to and/or induced, and continues to contribute to and/or induce the infringement of the '670 Patent by offering such products and services and contributing to and/or inducing its customers and third parties and/or employees to use such products and services that are associated with LTE connectivity provided by the Example John Deere Count VIII Products and Services.

175.    John Deere therefore actively, knowingly, and intentionally has committed, and continues to commit, affirmative acts that cause infringement, literally and/or by the doctrine of equivalents, of one or more claims of the '670 Patent with knowledge of the '670 Patent and knowledge that the induced acts constitute infringement of one or more claims of the '670 Patent. John Deere has actively induced others, including, but not limited to, partners, vendors, customers, and/or third parties who use the Example John Deere Count VIII Products and Services to infringe the '670 Patent, literally and/or by the doctrine of equivalents, throughout the United States, including within this District, by, among other things, advertising, promoting, and instructing the infringing use of the Example John Deere Count VIII Products and Services.

176.    **Contributory Infringement.** John Deere actively, knowingly, and intentionally has committed, and continues to commit contributory infringement, literally and/or by the doctrine of equivalents, by, *inter alia*, knowingly providing software and technologies that when used, cause the direct infringement of one or more claims of the '670 Patent by its partners, vendors, customers, and/or third parties, and which have no substantial non-infringing uses, or include a separate and distinct technology that is especially made or especially adapted for use in infringement of the '670 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

177.    John Deere therefore actively, knowingly, and intentionally has been and continues to materially contribute to their partners', vendors', and/or third-parties' infringement of the '670 Patent, literally and/or by the doctrine of equivalents, by making, manufacturing, utilizing, servicing, testing, distributing, offering, and/or offering for sale the Example John Deere Count VIII Products and Services for use in a manner that infringes one or more claims of the '670 Patent. Example John Deere Count VIII Products and Services are especially made or adapted for infringing the '670 Patent and have no substantial non-infringing use.

178.    Exhibit 18 (claim chart) includes the Example John Deere Count VIII Products and Services and Example '670 Patent Claims. As set forth in these charts, the Example John Deere Count VIII Products and Services practice the technology claimed by the '670 Patent. Accordingly, the Example John Deere Count VIII Products and Services incorporated in these charts satisfy all elements of the Example '670 Patent Claims.

179.    Intellectual Ventures II therefore incorporates by reference in its allegations herein the claim chart of Exhibit 18.

180.    Intellectual Ventures II is entitled to recover damages adequate to compensate for Defendant's infringement of the '670 Patent and will continue to be damaged by such infringement. Intellectual Ventures II is entitled to recover damages from Defendant to compensate them for Defendant's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284, as well as enhanced damages pursuant to 35 U.S.C. § 284.

181.    Further, John Deere's infringement of Intellectual Ventures' rights under the '670 Patent will continue to damage Intellectual Ventures' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court.

182.    As a result of Defendant's acts of infringement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

183.    Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment that the Patents-in-Suit are valid and enforceable;

B.    A judgment that Defendant directly infringes, contributorily infringes, and/or actively induces infringement of one or more claims of *each of* the Patents-in-Suit;

C.    A judgment that awards Plaintiffs all damages adequate to compensate them for Defendant's direct infringement, willful infringement, contributory infringement, and/or induced infringement, of the Patents-in-Suit, including all pre- judgment and post- judgment interest at the maximum rate permitted by law;

54

D. A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendant's past infringement with respect to the Patents-in-Suit;

E. A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendant's infringement of the '080 Patent, '326 Patent, '844 Patent, '584 Patent, '416 Patent, '841 Patent, '000 Patent, and '670 Patent, which continue to damage Plaintiffs' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by the Court;

F. A judgment that awards Plaintiffs all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to the Patents-in-Suit, including ongoing royalties, pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

G. A judgment that this case is exceptional under 35 U.S.C. § 285;

H. An accounting of all damages not presented at trial; and

I. A judgment that awards Plaintiffs their costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by the Court.

Dated: February 24, 2026                    Respectfully submitted,

By: */s/ Mark D. Siegmund*
Mark D. Siegmund (TX Bar No. 24117055)
msiegmund@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND
JAMES PLLC**
7901 Fish Pond Road, 2nd Floor
Waco, TX 76710
Telephone: (254) 732-2242

55

Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(Admitted in this District)
tnguyen@kasowitz.com
Jonathan H. Hicks (CA Bar No. 274634)
(Admitted in this District)
jhicks@kasowitz.com
**KASOWITZ LLP**
101 California Street, Suite 3950
San Francisco, CA 94111
Telephone: (415) 421-6140
Facsimile: (415) 358-4408

Paul G. Williams (GA Bar No. 764925)
(Admitted in this District)
pwilliams@kasowitz.com
**KASOWITZ LLP**
1230 Peachtree Street N.E., Suite 2445
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

Jeceaca An (NY Bar No. 5849898)
(Admitted in this District)
jan@kasowitz.com
**KASOWITZ LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

**Attorneys for Plaintiff**
**INTELLECTUAL VENTURES I LLC**
**INTELLECTUAL VENTURES II LLC**

56

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record on this 24th day of February, 2026, via the Court's CM/ECF system.

/s/ Mark D. Siegmund
Mark D. Siegmund