# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HARTFORD FIRE INSURANCE
COMPANY and THE HARTFORD
INSURANCE GROUP, INC.,

        Plaintiffs,

        v.

INTELLECTUAL VENTURES I LLC,
INTELLECTUAL VENTURES II LLC,
CALLAHAN CELLULAR L.L.C.,
ZARBANA DIGITAL FUND LLC,
OL SECURITY LLC, and
CUFER ASSET LTD. L.L.C.,

        Defendants.

Civil Action No. _____

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Hartford Fire Insurance Company and The Hartford Insurance Group, Inc. (collectively, "The Hartford") bring this Complaint for Declaratory Judgment against Defendants Intellectual Ventures I LLC, Intellectual Ventures II LLC, and their subsidiaries Callahan Cellular L.L.C., Zarbana Digital Fund LLC, OL Security LLC, and Cufer Asset Ltd. L.L.C. (collectively, "IV"). The Hartford alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action under the patent laws of the United States, Title 35 of the United States Code. IV has accused The Hartford of infringing its patents, including U.S. Patent Nos. 8,332,844 (the "'844 Patent"), 7,949,785 (the "'785 Patent"), 7,712,080 (the "'080 Patent"), 8,447,762 (the "'762 Patent"), 8,266,124 (the "'124 Patent") 7,203,711 (the "'711 Patent"), 7,669,081 (the "'081 Patent"), and 9,686,183 (the "'183 Patent") (collectively, "the DJ Patents").

## **THE PARTIES**

2.    Plaintiff The Hartford Insurance Group, Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at One Hartford Plaza, Hartford, CT 06155. The Hartford Insurance Group, Inc. is a holding company for a group of subsidiaries that provide property and casualty insurance, employee group benefits insurance and services, and mutual funds and exchange-traded funds to individual and business customers in the United States, as well as in the United Kingdom and other international locations.

3.    Plaintiff Hartford Fire Insurance Company is a corporation organized under the laws of the State of Connecticut, with a principal place of business at One Hartford Plaza, Hartford, CT 06155. Hartford Fire Insurance Company is a leading provider of property and casualty insurance.

4.    On information and belief, Defendant Intellectual Ventures I LLC is a Delaware limited liability company.

5.    On information and belief, Defendant Intellectual Ventures II LLC is a Delaware limited liability company.

6.    On information and belief, Defendant Callahan Cellular L.L.C. is a Delaware limited liability company, with its principal place of business located at 2711 Centerville Road, Suite 400 Wilmington, Delaware 19808.

7.    On information and belief, Defendant Zarbana Digital Fund LLC is a Delaware limited liability company, with its principal place of business located at 2711 Centerville Road, Suite 400 Wilmington, New Castle Co, DE 19808.

8.      On information and belief, Defendant OL Security LLC is a Delaware limited liability company, with its principal place of business located at 160 Greentree Drive Suite 101 Dover, Delaware 19904.

9.      On information and belief, Defendant Cufer Asset Ltd. L.L.C. is a Delaware limited liability company, with its principal place of business located at 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

10.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 1338, 2201, and 2202. An actual, substantial, immediate, and continuing controversy exists between IV and The Hartford that requires a declaration of rights by this Court regarding the DJ Patents.

12.     Beginning in late 2023, IV has subjected The Hartford to an aggressive patent licensing and enforcement campaign, making not-so-thinly-veiled threats of litigation along the way. For example, in July 2024, IV accused The Hartford of infringing the DJ Patents and threatened to sue should The Hartford not pay a licensing fee. Ex. 9 at 7–8; Ex. 10. Then, in March 2025, IV expressed that it "expect[ed] to file additional litigations where necessary" against institutions that were unwilling to pay what IV demanded. Ex. 9 at 4. On March 3, 2026, IV escalated its threats with a letter from outside litigation counsel. Ex. 9 at 1; Ex. 12.

13.     This tracks a familiar pattern for IV. IV has accused and sued many others for infringing some of the same patents raised in its letters to The Hartford, based on many of the same software products it accuses The Hartford of using. *See infra* ¶ 41.

3

14.    Prior to suing other entities on some of the same patents, IV sent notice letters signed by Kasowitz LLP that were nearly identical to its March 3, 2026 letter to The Hartford. *Compare* Ex. 12 *with* Exs. 16–19.

15.    The Hartford, however, has not and does not infringe any of the DJ Patents. Given IV's ongoing threats and its pattern of litigation with respect to its patents, IV's actions have created a real, live, immediate, and justiciable dispute between The Hartford and IV as to whether The Hartford infringes the DJ Patents—and whether the DJ Patents are valid. The dispute here is immediate, real, and substantial, and thus The Harford seeks a declaratory judgment to clear its conduct and resolve the dispute with IV.

16.    This Court has personal jurisdiction over IV I under the laws of this State and IV I is subject to general personal jurisdiction in Delaware because it was formed under the laws of the State of Delaware.

17.    This Court has personal jurisdiction over IV II under the laws of this State and IV II is subject to general personal jurisdiction in Delaware because it was formed under the laws of the State of Delaware.

18.    This Court has personal jurisdiction over Callahan Cellular L.L.C. under the laws of this State and Callahan Cellular L.L.C. is subject to general personal jurisdiction in Delaware because it was formed under the laws of the State of Delaware.

19.    This Court has personal jurisdiction over Zarbana Digital Fund LLC under the laws of this State and Zarbana Digital Fund LLC is subject to general personal jurisdiction in Delaware because it was formed under the laws of the State of Delaware.

20.    This Court has personal jurisdiction over OL Security LLC under the laws of this State and OL Security LLC is subject to general personal jurisdiction in Delaware because it was formed under the laws of the State of Delaware.

21.    This Court has personal jurisdiction over Cufer Asset Ltd. L.L.C. under the laws of this State and Cufer Asset Ltd. L.L.C. is subject to general personal jurisdiction in Delaware because it was formed under the laws of the State of Delaware.  IV I and II also have purposefully availed themselves of this forum by bringing prior actions seeking to enforce their patent rights in Delaware. *See e.g., Intellectual Ventures I LLC v. Ubiquiti Inc.*, No. 23-cv-865, D.I. 1 (D. Del. Aug. 8, 2023). On information and belief, IV I and II also have entered into licensing agreements for the use of the DJ Patents and other patents in Delaware, and they have each sent other cease and desist letters into Delaware to other entities regarding their patents.

22.    Venue is proper in this judicial district under at least 28 U.S.C. § 1391(b), (c) because Defendants are residents of, incorporated in, and subject to personal jurisdiction in this District.

## THE DJ PATENTS

23.    IV II alleges it is "the owner of all rights, title, and interest in and to the" '844 Patent. *See, e.g., IV v. Nationwide Mutual Insurance Co.*, No. 25-cv-632, D.I. 1 ¶¶ 5, 31 (N.D. Tex. Mar. 15, 2025); *IV v. Southwest Airlines Co.*, No. 24-277, D.I. 1 ¶¶ 4, 27 (W.D. Tex. Nov. 2, 2024); *IV v. American Airlines, Inc.*, No. 24-980, D.I. 1 ¶¶ 4, 25 (E.D. Tex. Nov. 2, 2024).

24.    IV I alleges it is "the owner of all rights, title, and interest in and to the" '785 and '080 Patents. *See, e.g., IV v. Southwest Airlines Co.*, No. 24-cv-277, D.I. 1 ¶¶ 4, 29, 31, 37; D.I. 97 ¶¶ 4, 35 (N.D. Tex. Nov. 2, 2024); *IV v. American Airlines, Inc.*, No. 24-cv-980, D.I. 1 ¶¶ 4, 27, 29, 35; D.I. 84 ¶¶ 4, 37 (E.D. Tex. Nov. 2, 2024).

25.    IV alleges that OL Security LLC is a wholly owned subsidiary of IV II. IV alleges that OL Security LLC is the assignee of the '081 Patent. *See* Ex. 12 at 2–3.

26.    IV alleges that Cufer Asset Ltd. L.L.C. is a wholly owned subsidiary of IV I. IV alleges that Cufer Asset Ltd. L.L.C. is the assignee of the '762 Patent. *See* Ex. 12 at 2–3.

27.    IV alleges that Callahan Cellular LLC is a wholly owned subsidiary of IV II. IV alleges that Callahan Cellular LLC is the assignee of the '711 and '124 Patents. *See* Ex. 12 at 2–3.

28.    IV I alleges that Zarbaña Digital Fund LLC is a wholly owned subsidiary of IV I and that Zarbaña Digital Fund LLC is the assignee of the '183 Patent. *See* Ex. 12 at 2–3.

## FACTUAL BACKGROUND

29.    For nearly three years, IV has peppered The Hartford with threats of patent infringement litigation.

30.    On December 14, 2023, IV emailed The Hartford "to initiate a dialogue concerning intellectual property and licensing matters," touting its portfolio of "over 7,000 active patents" and urging discussion regarding the portfolio's "relevance to" The Hartford's operations. *See* Ex. 9 at 11. On January 8, 2024, IV followed up with an additional email urging The Hartford to "set up a meeting before the end of January." Ex. 9 at 9–10.

31.    Seven months later, on July 3, 2024, IV emailed The Hartford again. Ex. 9 at 7–8. IV claimed that The Hartford had pushed IV's hand by not responding, giving it "no alternative but to formally put The Hartford . . . on notice." *Id.* IV hoped "that this notice w[ould] prompt a more proactive response." *Id.* The email was accompanied with a letter identifying five patents that IV claimed "cover[ed] technologies used in at least the example products, platforms, features, and/or services . . . that The Hartford makes, uses, sells, offers for sale, imports, and/or encourages its customers and partners to make, use, sell, offer to sell and/or import." Ex. 10 at 1. IV appended

6

the table below, identifying "The Hartford's use of" ElasticSearch, Spark, Kubernetes, Docker, and

Kafka, which are designed and offered by third parties and/or are available as open source:

| US Patent No. | Title | Assignee | Example Claim | Example Product/Feature |
|---|---|---|---|---|
| 7,203,711 | SYSTEMS AND METHODS FOR DISTRIBUTED CONTENT STORAGE AND MANAGEMENT | CALLAHAN CELLULAR L.L.C. | 1 | Open Source Software: The Hartford's use of ElasticSearch https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Senior-Machine-Learning-Engineer_R2416912?source=GoogleOther |
| 7,257,582 | LOAD BALANCING WITH SHARED DATA | CUFER ASSET LTD. L.L.C. a wholly owned subsidiary of IIF1 | 1 | Open Source Software: The Hartford's use of Spark https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Senior-Machine-Learning-Engineer_R2416912?source=GoogleOther<br><br>https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Staff-Data-Engineer---Hybrid_R2415994 |
| 7,949,785 | SECURE VIRTUAL COMMUNITY NETWORK SYSTEM | INTELLECTUAL VENTURES I LLC | 30 | Open Source Software: The Hartford 's use of Kubernetes https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Hartford-CT/AVP-Data-Science--AI--Middle-and-Large-Commercial_R2417222?q=kubernetes&source=GoogleOther https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Sr-Data-Engineer--Hybrid-_R2416806 |
| 8,332,844 | ROOT IMAGE CACHING AND INDEXING FOR BLOCK-LEVEL DISTRIBUTED APPLICATION MANAGEMENT | INTELLECTUAL VENTURES II LLC | 7 | Open Source Software: The Hartford's use of Docker https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Senior-Staff-Software-Engineer--Cloud-Devops----Hybrid_R2416153<br><br>https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Sr-Data-Engineer--Hybrid-_R2416806 |
| 8,407,722 | ASYNCHRONOUS MESSAGING USING A NODE SPECIALIZATION ARCHITECTURE IN THE DYNAMIC ROUTING NETWORK | INTELLECTUAL VENTURES I LLC | 14 | Open Source Software: The Hartford 's use of Kafka https://thehartford.wd5.myworkdayjobs.com/en-US/Careers_External/job/Staff-Data-Engineer---Hybrid_R2415994 |

The letter also asserted that "IV does not authorize The Hartford or [its] customers or partners to

practice any of the above patents and/or other IV patent rights without a license." Ex. 10 at 2.

32.    Two months later, on September 25, 2024, IV sent another email and attached a

pricing sheet. Ex. 9 at 7. IV asserted that The Hartford was "required to obtain a license" to IV's

portfolio and proposed a "one-time license fee" of millions of dollars. *Id.* IV urged The Hartford

to "move discussions forward and avoid escalation." *Id.* In the same breath, IV emphasized that it

was not playing games. In the pricing sheet IV included, it claimed it would enforce its patent

rights, referenced pending litigation against JP Morgan, Liberty Mutual, and Comerica, and

gestured to further actions planned.

33.    Three months later, on January 10, 2025, IV sent yet another email. This email

reiterated that The Hartford must "obtain a license to [IV's] patent portfolio," reasserted its $3.5

7

million demand, and requested "[t]o move discussions forward and avoid unnecessary escalation." Ex. 9 at 6. This time, IV set a deadline—January 22, 2025—and warned that "[i]f no engagement [were] received by this date, we may be left with no alternative but to explore further escalation, which [it] hope[ed] to avoid." *Id.* IV closed by saying IV "remain[ed] committed to resolving this matter amicably." *Id.*

34.    A month later, on February 11, 2025, IV sent The Hartford another email, referred back to IV's prior communications, formal notice letter, and $3.5 million demand, and noted that to date IV had "successfully licensed 35 financial services companies, demonstrating [IV's] ability to work constructively with reasonable companies without resorting to litigation." Ex. 9 at 5. Additionally, IV wrote it "recently resolved three litigations with JPMorgan Chase, Liberty Mutual, and Comerica, which underscores the strength and value of the IV patent portfolio" and attached copies of the dismissal orders filed in the Liberty Mutual and Comerica cases on January 17, 2025. IV reiterated its request to engage in licensing discussions with The Hartford and asked for a response by March 7, 2025, "so that [IV does]n't misinterpret the continued lack of engagement as unwillingness to resolve this matter amicably." *Id.*

35.    On March 18, 2025, IV emailed The Hartford again. Ex. 9 at 4. IV flagged two developments: (1) two of IV's patents—one of which, the '785 Patent, it asserted against The Hartford—had survived *ex parte* reexamination at the USPTO; and (2) IV sued Nationwide Mutual Insurance and The Bank of New York Mellon "following their refusal to engage in licensing discussions." *Id.* IV stated that it "expects to file additional litigations where necessary." *Id.* IV's email concluded that "we remain open, for the time being, to engage constructively with The Hartford to avoid unnecessary escalation." *Id.*

36.     Two weeks later, on April 2, 2025, IV followed up again, expressing its disappointment at The Hartford's "lack of engagement." Ex. 9 at 3. IV again referenced its "recent litigations against other financial institutions following similar non-responsiveness." *Id.* IV's email concluded that "[w]e remain open to engaging with The Hartford to reach a resolution without escalation, but the absence of any reply leaves us with limited options." *Id.* On information and belier, an email dated May 5, 2025 echoed largely the same points.

37.     Four months later, on August 29, 2025, IV followed up with an additional letter that continued to threaten suit and identified six additional patents. Ex. 9 at 2. Like its previous letters, IV's August 2025 notice letter stated that listed products/features were only "exampl[ary] infringing products" and that IV's "investigation of The Hartford products and services is ongoing." Ex. 11 at 1. IV expressly asserted that it "does not authorize The Hartford or The Hartford's customers or partners to practice any of the above patents and/or other IV patent rights without a license" and stated that IV was willing to offer a patent license either to the referenced patents or to a broader subset of IV's portfolio. *Id.* at 1–2. The letter included the following chart:

| US Patent No. | Title | Assignee | Example Claim | Example Product/Feature |
|---|---|---|---|---|
| 7,669,081 | SYSTEMS AND METHODS FOR SCHEDULING, PROCESSING, AND MONITORING TASKS | OL SECURITY LIMITED LIABILITY COMPANY<br><br>a wholly owned subsidiary of IIF2 | 1 | Open Source Software: The Hartford's use of Spark and/or PySpark<br>See Enclosures |
| 7,712,080 | SYSTEMS AND METHODS FOR PARALLEL DISTRIBUTED PROGRAMMING | CHARGE RECORDS LLC<br><br>a wholly owned subsidiary of IIF1 | 9 | Open Source Software: The Hartford's use of Airflow<br>See Enclosures |
| 8,352,584 | SYSTEM FOR HOSTING CUSTOMIZED COMPUTING CLUSTERS | INTELLECTUAL VENTURES II LLC | 1 | Open Source Software: The Hartford's use of Kubernetes<br>See Enclosures |
| 8,447,762 | STORING LOSSY HASHES OF FILE NAMES AND PARENT HANDLES RATHER THAN FULL NAMES USING A COMPACT TABLE FOR NETWORK-ATTACHED-STORAGE (NAS) | CUFER ASSET LTD. L.L.C.<br><br>a wholly owned subsidiary of IIF1 | 7 | Open Source Software: The Hartford's use of MongoDB<br>See Enclosures |
| 9,678,967 | INFORMATION SOURCE AGENT SYSTEMS AND METHODS FOR DISTRIBUTED DATA STORAGE AND MANAGEMENT USING CONTENT SIGNATURES | CALLAHAN CELLULAR L.L.C.<br><br>a wholly owned subsidiary of IIF2 | 1 | Open Source Software: The Hartford's use of Hadoop<br>See Enclosures |
| RE48,894 | DISAGGREGATED RESOURCES AND ACCESS METHODS | INTELLECTUAL VENTURES I LLC | 15 | Open Source Software: The Hartford's use of Kafka<br>See Enclosures |

38.     Five months later, on March 3, 2026, IV sent a third notice letter, this time signed by outside counsel Kasowitz LLP. Ex. 12. IV reiterated that it did not authorize The Hartford, its customers, or its partners to practice any of the patents unlicensed. Ex. 12 at 3. Notably, Kasowitz LLP is IV's litigation counsel in pending litigation against others IV accuses of infringing some of the same patents IV threatened against The Hartford. The March 3, 2026 letter added two new patents and also included the previously identified eleven patents:

| US Patent No. | Title | Assignee | Example Claim | Example Product/Feature |
|---|---|---|---|---|
| 7,203,711 | SYSTEMS AND METHODS FOR DISTRIBUTED CONTENT STORAGE AND MANAGEMENT | CALLAHAN CELLULAR L.L.C. <br><br> a wholly owned subsidiary of IIF2 | 1 | Open Source Software: The Hartford's use of Elasticsearch See Notice Letter Sent July 2024 |
| 7,257,582 | LOAD BALANCING WITH SHARED DATA | INTELLECTUAL VENTURES I LLC | 1 | Open Source Software: The Hartford's use of Spark and/or PySpark See Notice Letter Sent July 2024 |
| 7,669,081 | SYSTEMS AND METHODS FOR SCHEDULING, PROCESSING, AND MONITORING TASKS | OL SECURITY LIMITED LIABILITY COMPANY <br><br> a wholly owned subsidiary of IIF2 | 1 | Open Source Software: The Hartford's use of Spark and/or PySpark See Notice Letter Sent August 2025 |
| 7,712,080 | SYSTEMS AND METHODS FOR PARALLEL DISTRIBUTED PROGRAMMING | CHARGE RECORDS LLC <br><br> a wholly owned subsidiary of IIF1 | 9 | Open Source Software: The Hartford's use of Apache Airflow See Notice Letter Sent August 2025 |
| 7,949,785 | SECURE VIRTUAL COMMUNITY NETWORK SYSTEM | INTELLECTUAL VENTURES I LLC | 30 | Open Source Software: The Hartford's use of Kubernetes See Notice Letter Sent July 2024 |
| 8,266,124 | INTEGRATED ASSET MANAGEMENT | CALLAHAN CELLULAR L.L.C. <br><br> a wholly owned subsidiary of IIF2 | 1 | Open Source Software: The Hartford's use of Kubernetes See Enclosures |
| 8,332,844 | ROOT IMAGE CACHING AND INDEXING FOR BLOCK-LEVEL DISTRIBUTED APPLICATION MANAGEMENT | INTELLECTUAL VENTURES II LLC | 7 | Open Source Software: The Hartford's use of Docker See Notice Letter Sent July 2024 |
| 8,352,584 | SYSTEM FOR HOSTING CUSTOMIZED COMPUTING CLUSTERS | INTELLECTUAL VENTURES II LLC | 1 | Open Source Software: The Hartford's use of Kubernetes See Notice Letter Sent August 2025 |
| 8,407,722 | ASYNCHRONOUS MESSAGING USING A NODE SPECIALIZATION ARCHITECTURE IN THE | INTELLECTUAL VENTURES I LLC | 14 | Open Source Software: The Hartford's use of Kafka |

11

| US Patent No. | Title | Assignee | Example Claim | Example Product/Feature |
|---|---|---|---|---|
| | DYNAMIC ROUTING NETWORK | | | See Notice Letter Sent July 2024 |
| 8,447,762 | STORING LOSSY HASHES OF FILE NAMES AND PARENT HANDLES RATHER THAN FULL NAMES USING A COMPACT TABLE FOR NETWORK-ATTACHED-STORAGE (NAS) | CUFER ASSET LTD. L.L.C. a wholly owned subsidiary of IIF1 | 7 | Open Source Software: The Hartford's use of MongoDB See Notice Letter Sent August 2025 |
| 9,678,967 | INFORMATION SOURCE AGENT SYSTEMS AND METHODS FOR DISTRIBUTED DATA STORAGE AND MANAGEMENT USING CONTENT SIGNATURES | CALLAHAN CELLULAR L.L.C. a wholly owned subsidiary of IIF2 | 1 | Open Source Software: The Hartford's use of Hadoop See Notice Letter Sent August 2025 |
| 9,686,183 | DIGITAL OBJECT ROUTING BASED ON A SERVICE REQUEST | ZARBAÑA DIGITAL FUND LLC a wholly owned subsidiary of IIF1 | 1 | Open Source Software: The Hartford's use of Airflow See Enclosures |
| RE48,894 | DISAGGREGATED RESOURCES AND ACCESS METHODS | INTELLECTUAL VENTURES I LLC | 15 | Open Source Software: The Hartford's use of Apache Kafka See Notice Letter Sent August 2025 |

39.     In sum, IV accuses The Hartford of infringement based on alleged uses of the following third-party and open-source software—hereinafter referred to as "Accused Software Products":

- Docker as infringing the '844 Patent;

- Kubernetes as infringing the '785 and '124 Patents;

- Airflow and/or Spark as infringing the '080 Patent;

- Spark as infringing the '081 Patent;

- MongoDB as infringing the '762 Patent;

- Elasticsearch as infringing the '711 Patent; and

- Airflow as infringing the '183 PatentAs IV's letters have made strikingly clear, The Hartford is but one target of IV. The '711, '762, '081, '124, and '183 Patents have not yet been subject to formal litigation. But every other

12

patent has been asserted against at least one other entity. Indeed, IV has asserted the '844 Patent against at least twelve other entities. And prior to suing Nationwide Insurance, The Bank of New York Mellon, Home Depot, and Deere, IV sent "formal notice letters" from Kasowitz LLP that were essentially identical to IV's March 3, 2026 letter to The Hartford. *Compare* Ex. 12 *with* Exs. 16–19. IV has filed several waves of litigation asserting the DJ Patents and other patents making the same accusations with respect to some of the exact same third-party and open-source software or products IV accuses The Hartford of infringing, as summarized below:

| # | Case | Accused Products |
|---|---|---|
| 1. | *IV v. JP Morgan Chase & Co.*, No. 23-cv-523 (E.D. Tex. Nov. 15, 2023) | <ul><li>'844 Patent vs. Docker</li><li>'785 Patent vs. Kubernetes</li><li>'722 Patent vs. Kafka</li><li>'080 Patent vs. Spark</li></ul> |
| 2. | *IV v. Comerica Inc.*, No. 23-cv-524 (E.D. Tex. Nov. 15, 2023) | <ul><li>'844 Patent vs. Docker</li><li>'785 Patent vs. Kubernetes</li><li>'722 Patent vs. Kafka</li><li>'080 Patent vs. Spark</li></ul> |
| 3. | *IV v. Liberty Mutual Holding Co. Inc.*, No. 23-cv-525 (E.D. Tex. Nov. 15, 2023) | <ul><li>'844 Patent vs. Docker</li><li>'785 Patent vs. Kubernetes</li><li>'722 Patent vs. Kafka</li><li>'080 Patent vs. Spark</li></ul> |
| 4. | *IV v. American Airlines, Inc.*, No. 24-cv-980 (E.D. Tex. Nov. 2, 2024) | <ul><li>'844 Patent vs. Docker</li><li>'785 Patent vs. Kubernetes</li><li>'584 Patent vs. Kubernetes</li><li>'722 Patent vs. Kafka</li><li>'582 Patent vs. Spark</li><li>'080 Patent vs. Spark</li></ul> |
| 5. | *IV v. Southwest Airlines Co.*, No. 24-cv-277 (W.D. Tex. Nov. 2, 2024) | <ul><li>'844 Patent vs. Docker</li><li>'785 Patent vs. Kubernetes</li><li>'584 Patent vs. Kubernetes</li><li>'722 Patent vs. Kafka</li><li>'582 Patent vs. Spark</li><li>'080 Patent vs. Spark</li></ul> |
| 6. | *IV v. The Bank of New York Mellon Corp.*, No. 25-cv-631 (N.D. Tex. Mar. 15, 2025) | <ul><li>'844 Patent vs. Docker</li><li>'080 Patent vs. Spark</li><li>'584 Patent vs. Kubernetes</li></ul> |
| 7. | *IV v. Nationwide Mutual Insurance Co.*, No. 25-cv-632 (N.D. Tex. Mar. 15, 2025) | <ul><li>'844 Patent vs. Docker</li><li>'080 Patent vs. Spark</li></ul> |
| 8. | *IV v. The Home Depot, Inc. et al*, No. 25-cv-1147 (W.D. Tex. July 23, 2025) | <ul><li>'844 Patent vs. Docker</li><li>'584 Patent vs. Kubernetes</li><li>'582 Patent vs. Spark</li><li>'080 Patent vs. Spark</li></ul> |

| # | Case | Accused Products |
|---|------|------------------|
| 9. | *IV v. Deere & Company*, No. 26-cv-425 (W.D. Tex. Feb. 24, 2026) | • '844 Patent vs. Docker<br>• '080 Patent vs. Spark<br>• '584 Patent vs. Kubernetes |
| 10. | *IV v. Geico*, No. 3-26-cv-978 (N.D. Tex. Mar. 26, 2026) | • '844 Patent vs. Docker<br>• '080 Patent vs. Spark<br>• '584 Patent vs. Kubernetes |

41.     IV's infringement allegations focus on off-the-shelf/built-in functionality in the underlying Accused Software Products, not on any feature, customization, or configuration apparently or allegedly unique to The Hartford or any other accused defendant. IV does not allege that The Hartford makes the underlying accused Docker, Kubernetes, Spark, Airflow, MongoDB, Elasticsearch, or other accused software or products. Rather, the software and products that IV accuses of infringement are allegedly provided by third parties or are open-source. IV's infringement theory is based on The Hartford's alleged use of the Accused Software Products.

42.     In some of its pending litigations, IV has filed charts purporting to show infringement by third-party and open-source software Docker, Kubernetes, and Spark. These charts are illustrative of IV's infringement theories, which The Hartford disputes, and they are appended hereto as exhibits:

- Ex. 13: *IV v. Nationwide*: IV's infringement claim chart for the '844 Patent vs. Docker;

- Ex. 14: *IV v. American Airlines*: IV's infringement claim chart for the '785 Patent vs. Kubernetes;

- Ex. 15: *IV v. American Airlines*: IV's infringement claim chart for the '080 Patent vs. Spark.

## COUNT I
## DECLARATION OF NON-INFRINGEMENT OF THE '844 PATENT

43.     The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

14

44.     An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '844 Patent. IV alleges that The Hartford's use of Docker, a third-party and open-source software, infringes the '844 Patent. *See* Ex. 12 at 2–3.

45.     The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '844 Patent, either literally or under the doctrine of equivalents.

46.     IV has identified independent Claim 7 of the '844 Patent as infringed. Claim 7 recites:

> A method for providing data to a plurality of compute nodes, comprising: storing blocks of a root image of said compute nodes on a first storage unit; storing leaf images for respective compute nodes on respective second storage units, said leaf images including only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of the root image, wherein said leaf images of respective compute nodes do not include blocks of said root image that are unchanged by respective compute nodes; and caching blocks of said root image that have been accessed by at least one of said compute nodes in a cache memory.

47.     Claims 1, 7, 10, and 11 are the only independent claims of the '844 Patent. Each independent claim requires that the "leaf image" contains "only additional blocks not previously contained in said root image and changes made … to the blocks of said root image." *See* Ex. 1, '844 Patent, cls. 1, 7, 10, 11.

48.     Docker does not include a "leaf image" containing "only additional blocks not previously contained in said root image and changes made … to the blocks of said root image," as the claims in the '844 Patent all require.

49.     For instance, on information and belief, IV contends that Docker "containers" satisfy the "leaf image" element in the independent claims.

50.     Based on publicly available information regarding Docker, its architecture consists of two layers: (1) an image layer; and (2) a container layer. "Images" are "read-only template[s]

15

with instructions for creating a Docker container." Ex. 30 at 5. "Containers" are "runnable instance[s] of an image" "defined by its image." Ex. 30 at 5–6. "The major difference between a container and an image is the top writable layer." Ex. 31 at 4.

51.    Docker containers do not include "only additional data blocks not previously contained in said root image and changes made ... to the blocks of said root image" as required by the independent claims of the '844 Patent.

52.    For at least the above reasons, use of Docker by The Hartford does not infringe any claim of the '844 Patent, either literally or under the doctrine of equivalents.

53.    The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '844 Patent.

**COUNT II**
**<u>DECLARATION OF INVALIDITY OF THE '844 PATENT</u>**

54.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

55.    One or more claims of the '844 Patent are invalid for failing to meet the conditions for patentability as set forth in under 35 U.S.C. § 1 et seq., including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

56.    One or more claims of the '844 Patent are invalid as anticipated and/or obvious over at least U.S. Patent Nos. 6,292,941 and 6,018,747.

57.    The claims of the '844 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

58.    The claims of the '844 Patent are directed to at least the abstract ideas related to storing and accessing data in a computer system, and none of the claims contain an inventive

16

concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

59.    For example, Claim 7 discloses a "method for providing data to a plurality of compute nodes" that "store" "blocks" and "leaf images" and "cache blocks."  "[L]eaf images include[] only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of said root image." The process of storing and accessing data in nodes is quintessentially abstract.

60.    The claims of the '844 Patent are broad and generic, and do not contain meaningful limitations that would restrict it to a non-routine, inventive application of the abstract idea of storing and accessing data in a computer system.

61.    The claimed components, including a "storage unit[s]" and a "cache memory" are used for their ordinary purpose to implement the abstract ideas. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

62.    The '844 Patent issued before *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).

63.    The Hartford is entitled to a judgment that the claims of the '844 Patent are invalid.

**COUNT III**
**DECLARATION OF NON-INFRINGEMENT OF THE '785 PATENT**

64.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

65.    An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '785 Patent. IV alleges that The Hartford's use of Kubernetes, a third-party and open-source software, infringes the '785 Patent. *See* Ex. 12 at 2–3.

17

66.    The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '785 Patent, either literally or under the doctrine of equivalents.

67.    IV has identified independent Claim 30 of the '785 Patent as infringed. Claim 30 recites:

> A virtual network manager, comprising: a network interface configured for data communication via a virtual network that is defined by a domain name having an associated public network address; a memory and a processor to implement a register module configured to register devices in a virtual network, the register module further configured to: receive a registration request from an agent associated with a device; distribute a virtual network address to the device when the device is registered in the virtual network, the device being identified to other devices in the virtual network by the virtual network address; and a DNS server for the virtual network, the DNS server configured to receive a DNS request from a first device in the virtual network, and return a network address associated with a network route director, a private network address associated with a second device in the virtual network, and a virtual network address associated with the second device.

68.    Claims 1, 30, 38, 48, 62, and 75 are the only independent claims of the '785 Patent. Each independent claim of the '785 Patent requires that a device is registered in a virtual network. *See* Ex. 2, '785 Patent, cls. 1, 30, 38, 48, 62, 75.

69.    Kubernetes does not register devices in a virtual network, as the claims in the '785 Patent all require.

70.    For instance, based on publicly available information regarding Kubernetes, including the "kubernetes.io" website, to the extent that Kubernetes is configured to register anything in a virtual network, it is configured to register "Pods" in a virtual network, which are not a "device" as claimed by the '785 Patent.

71.    For at least the above reasons, use of Kubernetes by The Hartford does not infringe any claim of the '785 Patent, either literally or under the doctrine of equivalents.

72.     The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '785 Patent.

## COUNT IV
## DECLARATION OF INVALIDITY OF THE '785 PATENT

73.     The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

74.     One or more claims of the '785 Patent are invalid for failing to meet the conditions for patentability as set forth in under 35 U.S.C. § 1 et seq., including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

75.     One or more claims of the '785 Patent are invalid as anticipated and/or obvious over at least U.S. Patent Nos. 7,853,714 and 7,827,304.

76.     The claims of the '785 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

77.     The claims of the '785 Patent are directed to at least the abstract ideas related to registering devices and communicating, receiving and distributing data on a virtual network manager, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

78.     For example, Claim 30 recites a virtual network manager that includes "a network interface," a "memory and a processor to implement a register module" that "receives" and "distributes," and a "DNS server." Moreover, the virtual network manager is also "configured to receive a DNS request from a first device in the virtual network, and return a network address associated with a network route director, a private network address associated with a second device in the virtual network, and a virtual network address associated with the second device," This process is quintessentially abstract.

19

79.    The claims of the '785 Patent are broad and generic, and do not contain meaningful limitations that would restrict them to a non-routine, inventive application of the abstract idea related to registering devices and communicating, receiving and distributing data on a virtual network manager.

80.    The claimed components, including memory, processor, and DNS server are generic and used for their ordinary purpose to implement the abstract ideas. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

81.    The '785 Patent issued before both *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), and *Mayo v. Prometheus*, 566 U.S. 66 (2012).

82.    The Hartford is entitled to a judgment that the claims of the '785 Patent are invalid.

**COUNT V**
**DECLARATION OF NON-INFRINGEMENT OF THE '080 PATENT**

83.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

84.    An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '080 Patent. IV alleges that The Hartford's use of Airflow, a third-party and open-source software, infringes the '080 Patent. *See* Ex. 12 at 2–3.

85.    The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '080 Patent, either literally or under the doctrine of equivalents.

86.    IV has identified independent Claim 9 of the '080 Patent as infringed. Claim 9 recites:

> A distributed parallel computing system, having at least one memory area and at least one processor, comprising: at least one distributed shared variable capable of loading into the at least one memory area, wherein the at least one

20

distributed shared variable is a single variable that includes several variables that may be physically loaded into the at least one memory area; and at least one distributed sequential computing program, configured to operate in the at least one processor, configured to access the at least one distributed shared variable, and configured to transform into at least one distributed parallel computing program by spawning at least one child distributed sequential computing system program when at least one intermediate condition occurs within the at least one distributed sequential program, wherein the at least one distributed parallel computing program concurrently uses the at least one distributed sequential computing program and the at least one spawned child distributed sequential computing program to perform parallel processing and/or operations, wherein the at least one intermediate condition comprising one intermediate result that will be required by the at least one spawned child distributed sequential computing program to continue computation.

87.    Claims 1 and 9 are the only independent claims of the '080 Patent and they both require a "distributed shared variable."

88.    Airflow does not include a distributed shared variable as the claims in the '080 Patent all require.

89.    Airflow is a wrapper for another software tool called Spark. *See* Ex. 20 ("The Apache Airflow SparkSubmitOperator is an operator that allows you to run Spark jobs from within your Airflow DAGs. It is a wrapper around the spark-submit binary."); Ex. 21 (Apache Airflow provides official integration with Apache Spark through the *apache-airflow-providers-apache-spark* provider package).

90.    On information and belief, IV contends that use of Airflow infringes the '080 Patent based on features in Spark.

91.    For instance, IV has contended that the '080 Patent's distributed shared variable limitation corresponds to Spark's "Resilient Distributed Datasets" ("RDDs"). *See* Ex. 15 at 6–7.

92.    Airflow (and Spark) do not infringe the '080 Patent's distributed shared variable limitation because Spark's RDDs are immutable and read-only, whereas the distributed shared variables disclosed in the '080 Patent require read/write capability. *See* Ex. 22 (describing RDD as

21

"an immutable, partitioned collection of elements that can be operated on in parallel."). Once an RDD is created, it cannot be modified and instead any operation that appears to modify an RDD actually creates a new RDD, leaving the original unchanged. *See* Ex. 23 ("RDDs are immutable, meaning they cannot be modified after creation. Immutability helps the data remain stable over time throughout multiple operations."); Ex. 24 at 1 ("Resilient Distributed Datasets (RDD) is a fundamental data structure of Spark. It is an immutable distributed collection of objects.... Formally, an RDD is a read-only, partitioned collection of records."); Ex. 25 at 2 ("RDDs are immutable — they cannot be changed once created and distributed across the cluster's memory.").

93.    For at least the above reasons, use of Airflow (and/or Spark) by The Hartford does not infringe any claim of the '080 Patent, either literally or under the doctrine of equivalents.

94.    The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '080 Patent.

## COUNT VI
## DECLARATION OF INVALIDITY OF THE '080 PATENT

95.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

96.    One or more claims of the '080 Patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 et seq., including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

97.    One or more claims of the '080 Patent are invalid as anticipated and/or obvious over at least Pan et al., *Distributed Parallel Computing Using Navigational Programming: Orchestrating Computations Around Data*, INT'L J. PARALLEL PROGRAMMING (2004) (Ex. 34) and Stanislaw Chrobot, *Sharing Variables in Distributed Memory*, 44 FUNDAMENTA INFORMATICAE (2000) (Ex. 35).

22

98.     The claims of the '080 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

99.     The claims of the '080 Patent are directed to at least the abstract ideas of establishing, developing, and transforming a computing program, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

100.     For example, Claim 9 recites a "distributed parallel computing system" having a "memory area" and a "processor" comprising "a distributed shared variable" and "a distributed sequential computing program."  These distributed shared variables "include[] several variables that may be physically loaded into the at least one memory area." Moreover, "at least one distributed sequential computing program [] access[es] the … distributed shared variable[s]." Claim 9 also recites that the distributed sequential computing programs are "transform[ed]" into "distributed parallel computing program[s]." This process is quintessentially abstract.

101.     The claims of the '080 Patent are broad and generic, and do not contain meaningful limitations that would restrict it to a non-routine, inventive application of the abstract idea of establishing, developing, and transforming a computing program.

102.     The claimed components, including a processor, are used for their ordinary purpose to implement the abstract idea. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

103.     The '080 Patent predates both *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), and *Mayo v. Prometheus*, 566 U.S. 66 (2012).

104.     The Hartford is entitled to a judgment that the claims of the '080 Patent are invalid.

23

## COUNT VII
## DECLARATION OF NON-INFRINGEMENT OF THE '762 PATENT

105. The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

106. An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '762 Patent. IV alleges that The Hartford's use of Airflow, a third-party and open-source software, infringes the '762 Patent. *See* Ex. 12 at 2–3.

107. The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '762 Patent, either literally or under the doctrine of equivalents.

108. IV has identified independent Claim 7 of the '762 Patent as infringing. Claim 7 recites:

> A method for accessing files, comprising: receiving from a file system apparatus, via a network, by a storage apparatus, a translated file-access request of a client device, wherein the translated file-access request includes a native file handle determined based on a virtual file handle having a client unique identifier and included in a file-access request of the client device, wherein a file-opening request including a file name and parent-directory virtual file handle have been combined into a combination name prior to the translated file-access request being received by the storage apparatus for use in generating and providing the client unique identifier to the client device for inclusion in the virtual file handle of the file access request; accessing a selected file stored on the storage apparatus, by the storage apparatus, using the native file handle; and sending the accessed file back to the client device, via the network, by the storage apparatus.

109. Claims 1, 7, 10, and 11 are the only independent claims of the '762 Patent. All the independent claims require: a client unique identifier, a native file handle, and a virtual file handle.

110. On information and belief, MongoDB does not have all three of a client unique identifier, a native file handle, and a virtual file handle.

111. For instance, the _id variable in MongoDB cannot simultaneously be all three of a client unique identifier, a native file handle, and a virtual file handle. *See, e.g.*, Ex. 26 at 1

24

("MongoDB default collections are similar to heap tables because their documents are stored independently of the primary key ('_id') exposed to the application [i.e., client]. Internally, the WiredTiger storage engine organizes collection documents using a B+Tree structure, with an internal RecordId as the key, assigned by MongoDB."); *see also* Ex. 27 at 1 (_id and ObjectID are used interchangeably) ("A field required in every MongoDB document. The _id field must have a unique value. You can think of the _id field as the document's primary key. If you create a new document without an _id field, MongoDB automatically creates the field and assigns a unique BSON ObjectID to the field.").

112.    For at least the above reasons, use of MongoDB by The Hartford does not infringe any claim of the '762 Patent, either literally or under the doctrine of equivalents.

113.    The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '762 Patent.

**COUNT VIII**
**DECLARATION OF INVALIDITY OF THE '762 PATENT**

114.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

115.    One or more claims of the '762 Patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 et seq., including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

116.    One or more claims of the '762 Patent are invalid as anticipated and/or obvious over at least U.S. Patent Nos. 7,814,554 and 6,356,915.

117.    The claims of the '762 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

25

118. The claims of the '762 Patent are directed to the abstract ideas of receiving, accessing, and sending data for digital file storage, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

119. For example, Claim 7 recites a method for accessing files that receives a "translated file-access request" that "includes a native file handle determined based on a virtual file handle having a client unique identifier." Claim 7 also recites a file-opening request that combines a file name and "virtual file handle" to generate a "client unique identifier." The claimed method "access[es] a selected [stored] file," then "send[s] the file" back to the client device via a network." This claimed method is quintessentially abstract.

120. The claims of the '762 Patent are broad and generic, and do not contain meaningful limitations that would restrict it to a non-routine, inventive application of the abstract idea of receiving, accessing, and sending data for digital file storage.

121. The claimed components, including a non-transitory tangible storage medium, are used for their ordinary purpose to implement the abstract idea. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

122. The '762 Patent issued before *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).

123. The Hartford is entitled to a judgment that the claims of the '762 Patent are invalid.

## COUNT IX
## DECLARATION OF NON-INFRINGEMENT OF THE '124 PATENT

124. The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

26

125.    An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '124 Patent. IV alleges that The Hartford's use of Kubernetes, a third-party and open-source software, infringes the '124 Patent. *See* Ex. 12 at 2–3.

126.    The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '124 Patent, either literally or under the doctrine of equivalents.

127.    IV has identified independent Claim 1 of the '124 Patent as infringed. Claim 1 recites:

> A method comprising: receiving an indication of an occurrence of at least one transition event performed for at least one of a plurality of computer-related hardware devices, wherein the plurality of computer-related hardware devices include respective processors; recording information from the transition event into a centralized computerized database; monitoring for at least one change to the plurality of computer-related hardware devices and recording information associated with the change into the centralized computerized database; and managing at least one additional transition event for at least one of the plurality of computer related hardware devices using information available in the centralized computerized database.

128.    Claims 1 and 18 are the only independent claims of the '124 Patent. Each independent claim requires "receiving an indication of an occurrence of at least one transition event performed for at least one of a plurality of computer-related hardware devices" or "receiving an indication of at least one transition event performed for at least one of a plurality of computer-related hardware devices."

129.    Kubernetes does not receive an indication of at least one transition event or an occurrence of at least one transition event performed for at least one of a plurality of computer-related hardware devices.

130.    For example, based on publicly available information, "Kubernetes operates at the container level rather than at the hardware level ...." Ex. 28 at 2. Kubernetes is "decoupled from

27

the underlying infrastructure" hardware and "raises the level of abstraction from running an OS on virtual hardware to running an application on an OS using logical resources." *Id*. at 4-5.

131. For at least the above reasons, use of Kubernetes by The Hartford does not infringe any claim of the '124 Patent, either literally or under the doctrine of equivalents.

132. The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '124 Patent.

## COUNT X
## DECLARATION OF INVALIDITY OF THE '124 PATENT

133. The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

134. One or more claims of the '124 Patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 et seq., including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

135. One or more claims of the '124 Patent are invalid as anticipated and/or obvious over at least U.S. Patent No. 7,467,198.

136. The claims of the '124 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

137. The claims of the '124 Patent are directed to at least the abstract idea of receiving, recording, monitoring, and managing information, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

138. For example, Claim 1 recites "transition events" (i.e., an operation that changes the status, location, or configuration of the asset). Claim 1 also recites "recording information from the transition event" and "information associated with the change" into a centralized computerized

28

database. Claim 1 also discloses monitoring … change[s] to" the hardware devices and "managing … additional transition event[s] … using information available in the … database." The claimed protocol of receiving, recording, monitoring, and managing information is quintessentially abstract and can be—and has been—done on pen and paper and by humans. *See* Ex. 5, '124 Patent at 1:14–22 ("Typically, a computer technician would access the existing asset and make either handwritten notes of the user's setting and preferences or input the information into a computer and save it to a diskette. This process is expensive and time consuming and yields a static result in which the data becomes stale as soon as the asset returns to service.").

139.    The claims of the '124 Patent are broad and generic, and do not contain meaningful limitations that would restrict it to a non-routine, inventive application of the abstract idea of information aggregation.

140.    The claimed components, including computer-related hardware devices, processors, and computer databases, are used for their ordinary purpose to implement the abstract idea. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

141.    The '124 Patent issued before *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).

142.    The Hartford is entitled to a judgment that the claims of the '124 Patent are invalid.

**COUNT XI**
**<u>DECLARATION OF NON-INFRINGEMENT OF THE '711 PATENT</u>**

143.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

144.    An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '711 Patent. IV alleges that The Hartford's use of

Elasticsearch, a third-party and open-source software, infringes the '711 Patent. *See* Ex. 12 at 2–3.

145.    The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '711 Patent, either literally or under the doctrine of equivalents.

146.    IV has identified independent Claim 1 of the '711 Patent as infringed. Claim 1 recites:

> A system for archiving and indexing files contained within information source clients, comprising:
> a) a content engine for managing the storage of file content;
> b) an indexing engine for indexing file data content;
> c) metadata engine for managing metadata characterizing a file; and
> d) a triage engine for monitoring files as they are received by the system wherein said triage engine is coupled to and managing said content engine, said indexing engine and said metadata engine, the system further comprising an information entryway coupled to said triage engine, wherein said information entryway receives files from information source clients, wherein said system is embodied on one or more computer-readable storage medium.

147.    Claims 1 and 10 require an indexing engine, a metadata engine, and a triage engine. Claim 1 further requires a content engine.

148.    Elasticsearch does not include three different, let alone four different, engines to perform the recited steps or functions.

149.    For at least the above reasons, use of Elasticsearch by The Hartford does not infringe any claim of the '711 Patent, either literally or under the doctrine of equivalents.

150.    The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '711 Patent.

## COUNT XII
## DECLARATION OF INVALIDITY OF THE '711 PATENT

151.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

152.    One or more claims of the '711 Patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 *et seq.*, including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

153.    One or more claims of the '711 Patent are invalid as anticipated and/or obvious over at least U.S. Patent Nos. 6,775,665 and 7,035,468.

154.    The claims of the '711 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

155.    The claims of the '711 Patent are directed to the abstract ideas of indexing, managing, and receiving data for archiving and indexing files, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

156.    For example, Claim 1 recites a "system for archiving and indexing files contained within information source clients." "Information source clients can be any type of device capable of storing files," such as "desktop computers, … personal digital assistants, CDROMs, and printer ROMS," Ex. 6, '711 Patent at 4:30–34. The process of archiving and indexing files is quintessentially abstract and can be—and has been—done on pen and paper and by humans.

157.    The claims of the '711 Patent are broad and generic, and do not contain meaningful limitations that would restrict it to a non-routine, inventive application of the abstract idea of distributed content storage and retrieval.

158.    The claimed components, including various engines, information source clients, and back-up systems, are used for their ordinary purpose to implement the abstract idea. For example, "Information source clients can be any type of device capable of storing files," such as "desktop computers, … personal digital assistants, CDROMs, and printer ROMS," Ex. 6, '711 Patent at 4:30–34. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

159.    The '711 Patent issued before both *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), and *Mayo v. Prometheus*, 566 U.S. 66 (2012).

160.    The Hartford is entitled to a judgment that the claims of the '711 Patent are invalid.

## COUNT XIII
## DECLARATION OF NON-INFRINGEMENT OF THE '081 PATENT

161.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

162.    An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '081 Patent. IV alleges that The Hartford's use of Spark and/or PySpark, both third-party and open-source software, infringes the '081 Patent. *See* Ex. 12 at 2–3.

163.    The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '081 Patent, either literally or under the doctrine of equivalents.

164.    IV has identified independent Claim 1 of the '081 Patent as infringed. Claim 1 recites:

> A computer-implemented method for performing a process, the method comprising:
>
> (a) receiving a request to perform a process, the process having a state and comprising a plurality of tasks and at least a scheduler rule;

32

(b) receiving a plurality of checkpoints associated with the process, each checkpoint comprising checkpoint state data and at least a respective checkpoint rule governing execution of the process, wherein the checkpoint state data comprises information about the state of the process and wherein the checkpoint rule defines, based at least in part on at least one of the checkpoint state data and a first predetermined condition, one or more of the plurality of tasks to be executed and the way in which the one or more tasks will execute;

(c) determining a first task of the plurality of tasks to be scheduled into a priority queue, in accordance with the scheduler rule;

(d) determining the first checkpoint of the plurality of checkpoints that is to be the first checkpoint used in processing the first task, in accordance with the scheduler rule;

(e) creating the checkpoint state data for the first checkpoint; and

(f) saving the checkpoint state data for the first checkpoint.

165.    Spark and/or PySpark do not have a checkpoint comprising a "checkpoint rule governing execution of the process ... [that] defines ... one or more of the plurality of tasks to be executed and the way in which the one or more tasks will execute."

166.    For example, based on publicly available information, although Spark and/or PySpark create backups of its "resilient distributed dataset," these backups do not contain rules governing execution of a process that define one or more of the plurality of tasks to be executed and the way in which the one or more tasks will execute. *See* Exs. 32; 33.

167.    For at least the above reasons, use of Spark and/or PySpark by The Hartford does not infringe any claim of the '081 Patent, either literally or under the doctrine of equivalents.

168.    The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '081 Patent.

## COUNT XIV
## DECLARATION OF INVALIDITY OF THE '081 PATENT

169.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

33

170.    One or more claims of the '081 Patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 et seq., including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

171.    One or more claims of the '081 Patent are invalid as anticipated and/or obvious over at least U.S. Patent Nos. 7,363,288 and 6,421,676.

172.    The claims of the '081 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

173.    The claims of the '081 Patent are directed to the abstract idea of task scheduling, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

174.    For example, Claim 1 recites a "computer-implemented method." The method contemplates scheduling, based on a "scheduler rule," the order in which a plurality of tasks is to be completed. The method also recites a "plurality of checkpoints associated with the process" that contains state data and "checkpoint rule[s]" that "govern[s] execution of the process." This sort of task scheduling and checkpoint creation is quintessentially abstract and can be—and has been—done on pen and paper and by humans.

175.    The claims of the '081 Patent are broad and generic, and do not contain meaningful limitations that would restrict it to a non-routine, inventive application of the abstract idea of task scheduling.

176.    The claimed components, including processors, are used for their ordinary purpose to implement the abstract idea. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

34

177.    The '081 Patent issued before *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), and *Mayo v. Prometheus*, 566 U.S. 66 (2012).

178.    The Hartford is entitled to a judgment that the claims of the '081 Patent are invalid.

**COUNT XV**
**<u>DECLARATION OF NON-INFRINGEMENT OF THE '183 PATENT</u>**

179.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

180.    An actual and justiciable controversy exists between The Hartford and IV concerning the non-infringement of the '183 Patent. IV alleges that The Hartford's use of Airflow, a third-party and open-source software, infringes the '183 Patent. *See* Ex. 12 at 2–3.

181.    The Hartford has not infringed, and does not infringe—directly or indirectly—any valid and enforceable claim of the '183 Patent, either literally or under the doctrine of equivalents.

182.    IV has identified independent Claim 1 of the '183 Patent as infringed. Claim 1 recites:

> A method, comprising:
>
> receiving a digital transmission form from a source node, wherein said receiving is performed by a network device within a network, wherein the digital transmission form corresponds to a digital object to be forwarded from the source node to a destination node, wherein the digital transmission form is wholly separate from the digital object, wherein the digital transmission form specifies at least one requested service to be performed in transmitting the digital object from the network device to the destination node, and wherein the at least one requested service specifies information relating to a time of transmission of the digital object by the network device;
>
> determining an availability of one or more nodes within the network to provide the at least one requested service, wherein said determining is performed by the network device;
>
> receiving, at the network device, at least one portion of the digital object from the source node; and
>
> transmitting, from the network device, the at least one portion of the digital object over the network to the one or more nodes based at least in part on the availability of the one or more nodes to provide the at least one requested service.

35

183.    Airflow does not have a "network device" that receives and determines which nodes to forward a "digital object" to, nor do they have a "digital transmission form" as required in claim 1.

184.    For instance, based on publicly available information, "Airflow **is not** a data streaming solution. Tasks do not move data from one to the other. . . ." *See* Ex. 29 at 2 (emphasis in original). Airflow lacks a "network device" that receives and determines how to forward a "digital object" through a network using a "digital transmission form" and the availability of nodes within the network to provide a requested service.

185.    For at least the above reasons, use of Airflow by The Hartford does not infringe any claim of the '183 Patent, either literally or under the doctrine of equivalents.

186.    The Hartford is entitled to a judgment from this Court that The Hartford has not infringed, and does not infringe, any valid and enforceable claim of the '183 Patent.

## COUNT XVI
## DECLARATION OF INVALIDITY OF THE '183 PATENT

187.    The Hartford incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

188.    One or more claims of the '183 Patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 et seq., including, but not limited to §§ 101, 102, 103, and the rules, regulations, and laws pertaining thereto.

189.    One or more claims of the '183 Patent are invalid as anticipated and/or obvious over at least U.S. Patent Nos. 7,212,975 and 5,854,897.

190.    The claims of the '183 Patent are also invalid under § 101 because the claims encompass unpatentable abstract ideas and do not recite a patent eligible inventive concept.

191.    The claims of the '183 Patent are directed to the abstract idea of receiving, determining, and transmitting digital objects, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

192.    For example, the network device in Claim 1 examines the digital transmission form to "determine how and/or when the digital object should be transmitted to one or more destination nodes 118." Ex. 8, '183 Patent at 14:8-11. In essence, the network device uses the data in the digital transmission form—and the "availability of" nodes in the network—to make scheduling and routing decisions to get the digital objects from point A to point B. This digital transmission form must contain a "requested service to be performed in transmitting the digital object" and can also contain other information related to the digital object, like its metadata. This sort of data-based scheduling and routing is quintessentially abstract and can be—and has been—done on pen and paper and by humans.

193.    The claims of the '183 Patent are broad and generic, and do not contain meaningful limitations that would restrict it to a non-routine, inventive application of the abstract idea of routing digital objects.

194.    The claimed components, including network devices, processors, and computing platforms, are used for their ordinary purpose to implement the abstract idea. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

195.    The Hartford is entitled to a judgment that the claims of the '183 Patent are invalid.

**PRAYER FOR RELIEF**

WHEREFORE, The Hartford respectfully requests the following relief:

1.    A declaration that The Hartford does not infringe the '844 Patent;

2.    A declaration that The Hartford does not infringe the '785 Patent;

3.    A declaration that The Hartford does not infringe the '080 Patent;

4.    A declaration that The Hartford does not infringe the '081 Patent;

5.    A declaration that The Hartford does not infringe the '762 Patent;

6.    A declaration that The Hartford does not infringe the '124 Patent;

7.    A declaration that The Hartford does not infringe the '711 Patent;

8.    A declaration that The Hartford does not infringe the '183 Patent;

9.    A declaration that the '844 Patent is invalid;

10.    A declaration that the '785 Patent is invalid;

11.    A declaration that the '080 Patent is invalid;

12.    A declaration that the '081 Patent is invalid;

13.    A declaration that the '762 Patent is invalid;

14.    A declaration that the '124 Patent is invalid;

15.    A declaration that the '711 Patent is invalid;

16.    A declaration that the '183 Patent is invalid;

17.    An order enjoining IV and those in privity with IV from asserting the '844, '785, '080, '081, '762, '124, '711, and '183 Patents against The Hartford and its affiliates, subsidiaries, representatives, agents, vendors, and customers;

38

18.     A finding this is an exceptional case under 35 U.S.C. § 285, entitling The Hartford to reasonable attorney's fees, litigation expenses, and costs;

19.     Other relief as the Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

The Hartford demands a jury trial on all issues and claims so triable.

|  |  |
|---|---|
| | /s/ Kelly E. Farnan |
| *Of Counsel*: | Kelly E. Farnan (#4395) |
| | Sara M. Metzler (#6509) |
| Sean M. McEldowney | Danielle I. Bell (#7367) |
| Matthew J. McIntee | Richards, Layton & Fingers, P.A. |
| Kirkland & Ellis LLP | One Rodney Square |
| 1301 Pennsylvania Ave NW | 920 North King Street |
| Washington, DC 20004 | Wilmington, DE 19801 |
| 202.389.5161 | 302.651.7705 |
| sean.mceldowney@kirkland.com | farnan@rlf.com |
| matt.mcintee@kirkland.com | metzler@rlf.com |
| | bell@rlf.com |
| | |
| | *Attorneys for Plaintiffs Hartford Fire Insurance Company and The Hartford Insurance Group, Inc.* |
| Dated: April 7, 2026 | |

39