# EXHIBIT 28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APELDYN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 08-568-SLR |
| | ) | |
| AU OPTRONICS, INC., et al., | ) | DM 9 & 9A |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is presently before the Special Master on plaintiff Apeldyn Corporation's ("Apeldyn") Motion for Sanctions against defendant AU Optronics Corporation ("AUO") filed February 11, 2011 (D.I. 435; "AUO Motion") and Apeldyn's Motion for Sanctions against defendant Chimei Innolux Corporation ("CMO") filed February 24, 2011 (D.I. 472; "CMO Motion").

In the AUO Motion, Apeldyn seeks an Order: (1) shifting to AUO the costs for conducting the Fed. R. Civ. P. 30(b)(6) depositions of AUO in Taiwan pursuant to the Court's January 7, 2011 Order (D.I. 405; "January 7 Order"); (2) requiring AUO, pursuant to Fed. R. Civ. P. 37(d)(3), to reimburse Apeldyn for the fees and expenses Apeldyn incurred in taking the Fed. R. Civ. P. 30(b)(6) deposition of Ms. Ling Jung (Kelly) Kao and Mr. Yihsheng (Spencer) Yu in Taiwan; (3) compelling AUO to present in Delaware at AUO's cost another witness (or witnesses) on the topics for which Ms. Kao and Mr. Yu were designated or, alternatively,

1

precluding AUO from challenging Apeldyn's inducement claim[2]; and (4) preventing AUO from designating portions of Ms. Kao's testimony[3].

In the CMO Motion, Apeldyn seeks an Order: (1) shifting to CMO the costs for conducting the Fed. R. Civ. P. 30(b)(6) depositions of CMO in Taiwan pursuant to the Court's January 7 Order; (2) requiring CMO, pursuant to Fed. R. Civ. P. 37(d)(3), to reimburse Apeldyn for the fees and expenses Apeldyn incurred in taking the Fed. R. Civ. P. 30(b)(6) deposition of Ms. Fang I (Denise) Shieh in Taiwan; and (3) requiring CMO, pursuant to Fed. R. Civ. P. 37(d)(3), to reimburse Apeldyn for certain fees and expenses Apeldyn incurred in deposing a second witness in Los Angeles on the same deposition topics for which Ms. Shieh was designated.

Having read and considered the AUO Motion and AUO's opposition thereto (D.I. 473), and having heard argument from the parties during a telephonic hearing on April 5, 2011 ("Apr. 5 Hrg."), the Special Master concludes that: (1) a portion of the costs associated with taking the depositions in Taiwan should be shifted to AUO; and (2) Ms. Kao and Mr. Yu did not have sufficient personal knowledge or preparation to testify as Fed. R. Civ. P. 30(b)(6) designees on behalf of AUO as to at least some of their respective topics and appropriate sanctions are warranted. Accordingly, Apeldyn's AUO Motion is **GRANTED IN PART** as set forth in detail below.

Having read and considered the CMO Motion and CMO's opposition thereto (D.I. 475), and having heard argument from the parties during a telephonic hearing on April 14, 2011 ("Apr. 14 Hrg."), the Special Master concludes that: (1) a portion of the costs associated with taking the

---

[2]    Although not explicitly cited, Apeldyn's request in this regard is pursuant to Fed. R. Civ. P. 37(d)(3) and 37(b)(2)(A)(ii).
[3]    Although not explicitly cited, Apeldyn's request in this regard is pursuant to Fed. R. Civ. P. 37(d)(3) and 37(b)(2)(A)(ii).

depositions in Taiwan should be shifted to CMO; and (2) Ms. Shieh did not have sufficient personal knowledge or preparation to testify as a Fed. R. Civ. P. 30(b)(6) designee on behalf of CMO as to at least some of her respective topics and appropriate sanctions are warranted. Accordingly, Apeldyn's CMO Motion is **GRANTED IN PART** as set forth in detail below.

## I.    BACKGROUND[4]

On November 1, 2010, Apeldyn filed a letter motion seeking a recommendation compelling a Fed. R. Civ. P. 30(b)(6) deposition of AUO in the United States.  (D.I. 353.) Apeldyn filed a similar motion as to CMO and CMO USA on November 16, 2010.  (D.I. 364.) After full briefing, the Special Master conducted a telephonic hearing on December 6, 2010 ("Dec. 6 Hrg.").  After oral argument and consideration of the briefs submitted by all parties, the Special Master recognized the general presumption that depositions of corporate designees are to be conducted in the location of the corporation's principal place of business and concluded that Apeldyn had not met its burden in rebutting the presumption.  On December 13, 2010, the Special Master ordered that the Fed. R. Civ. P. 30(b)(6) depositions of AUO proceed in Taiwan, of CMO proceed in Taiwan, and of CMO USA proceed in California (or such other mutually acceptable location), with all such depositions to be completed by January 28, 2011.  (*See* D.I. 380; "December 13 Order".)

The Special Master's December 13 Order, in discussing the factor of the ability of the Court to intervene in disputes arising during the depositions, noted the following:

> (3) the ability of the deponents to obtain additional information should they not be adequately prepared about a particular topic will be greatly enhanced by having corporate resources readily available; and (4) the Special Master trusts that counsel will conduct themselves professionally during depositions such that all depositions can be completed in full in an efficient and timely manner prior to the deadline of January 28, 2011 established in the (D.I. 315) Court's Amended

---

[4]    A timeline of relevant events is set forth in Appendix A hereto.

Scheduling Order, *keeping in mind the consequences of failure to cooperate under Fed. R. Civ. P. 37.*

(D.I. 380 at 3 (emphasis added).)

Apeldyn filed objections to and sought *de novo* review of the Special Master's December 13 Order on December 14, 2010 (D.I. 388). On January 7, 2011,[5] the Court denied Apeldyn's objections, affirmed the Special Master's December 13 Order, and further ordered that:

> Special Master Poppiti is directed to review, upon request by plaintiff, the actual costs incurred as a result of these depositions in order to determine whether, in fact, the foreign defendants conducted themselves in good faith, especially with respect to the number of designees, or whether some part of plaintiffs' [*sic*] costs for the foreign depositions should be shifted to defendants, given that: (1) a primary justification for the depositions taking place outside the United States is the potential number of designees and the burdens associated with bringing them to the United States; (2) the foreign defendants have not actually finalized the designations to date; and (3) plaintiff's objections to the order are primarily directed to the financial burden these foreign depositions will impose on plaintiff.

(D.I. 405; "January 7 Order".)

Accordingly, the parties moved forward with Fed. R. Civ. P. 30(b)(6) depositions of AUO and CMO in Taiwan on January 19 through January 28, 2011. AUO produced Ms. Ling Jung (Kelly) Kao as its Fed. R. Civ. P. 30(b)(6) designee for Apeldyn's noticed deposition topics 6, 15, 19-40, and 44, and Mr. Yihsheng (Spencer) Yu for topics 28, 30, 31, 42, 45, and 46. Apeldyn conducted the deposition of Ms. Kao on January 24 and 25, 2011, and the deposition of Mr. Yu on January 26, 2011, both in Taiwan. During the deposition of Ms. Kao, Apeldyn's counsel took issue with what she viewed to be Ms. Kao's lack of preparedness (including her admission that she did not review any documents other than the amended notice of deposition) and requested that Ms. Kao confirm certain answers between the conclusion of day one of the deposition and the start of the next day's testimony. Ms. Kao agreed to do so. (D.I. 435 at Ex.

4

A.) Apeldyn was, however, not able to explore these areas on the second day before AUO's counsel concluded the deposition. AUO represented that it would investigate whether it could make Ms. Kao available for additional time. (*See* Kao Depo. Tr. (D.I. 435 at Ex. 2) at 407:19-408:8). Subsequently, AUO confirmed that Ms. Kao was not available. (*See* Apeldyn L. R. 7.1.1 Cert. (D.I. 472) at 2-3, Ex. A.) In total, Apeldyn obtained two days of testimony from the witness, although Apeldyn contends that it did not obtain sufficient testimony. As to Mr. Yu, Apeldyn conducted a full day of testimony on only six topics.

CMO produced Ms. Fang I. (Denise) Shieh as its Fed. R. Civ. P. 30(b)(6) designee for Apeldyn's noticed deposition topics 24-26. Apeldyn commenced the deposition of Ms. Shieh on January 21, 2011 in Taiwan. Of particular relevance to this motion is topic 24, which states:

> 24.    CMI's[6] knowledge of and conduct regarding the U.S. market and North American market for LCD display products, LCD modules, LCD panels or CMI Products including, for example, the extent to which CMI's Products have been and/or could have been imported and/or sold in the untied States, CMI's consideration of the U.S. market in developing and/or pricing CMI Products, information exchanged in communications with CMI Customers (including Brands that use CMI Products) or potential customers, and CMI's efforts to gather information concerning the U.S. market and North American market from such CMI Customers or potential customers and/or other sources, including the identity and location of each such source.

(D.I. 333-1.)

During the deposition, Apeldyn engaged counsel for CMO on multiple occasions concerning alleged lack of preparedness of Ms. Shieh to testify on sales issues, which Apeldyn asserts are encompassed by topic 24. CMO argues that topic 24 is directed to marketing, not sales. Nevertheless, CMO requested that Apeldyn terminate the deposition of Ms. Shieh with

---

[5]    On January 6, 2011, prior to a hearing before the Special Master on a different issue between the parties to these motions, the Court informed the Special Master that it would be affirming the substantive ruling of the Special Master's December 13 Order. The Special Master so informed the parties during the January 6 hearing.

[6]    "CMI" stands for Chimei Innolux Corporation. In March 2010, subsequent to the filing of this lawsuit, CMO merged with Innolux Display Corporation and TPO Dislpays Corporation to form CMI.

CMO to produce a new witness in the United States at a later date to testify further as to topics 24-26. Apeldyn agreed and terminated the deposition, with both parties reserving all rights, and subsequently requested that CMO produce Mr. Tung Sheng (Jonathan) Lan as a supplemental witness for topics 24-26. CMO produced Mr. Lan in Los Angeles on February 16, 2011, on which date counsel for Apeldyn was unavailable, necessitating coverage of the deposition by another attorney in Apeldyn's counsel's firm.

As to AUO, Apeldyn requests that the Special Master shift the costs for conducting the depositions in Taiwan to AUO, order that AUO reimburse Apeldyn for the fees and expenses incurred in taking the depositions of Ms. Kao and Mr. Yu, order that AUO produce a new witness in Delaware or be prohibited from challenging Apeldyn's inducement claim, and preclude AUO from introducing Ms. Kao's and Mr. Yu's testimony at trial. As to CMO, Apeldyn requests that the Special Master shift the costs for conducting the depositions in Taiwan to CMO, order CMO to reimburse Apeldyn for the fees and expenses it incurred in taking Ms. Shieh's deposition in Taiwan, and order CMO to reimburse Apeldyn for a portion of the fees and expenses incurred in deposing Mr. Lan in Los Angeles.

## II.   SHIFTING OF COSTS

For the first portion of Apeldyn's applications against AUO and CMO, Apeldyn asks the Special Master to shift costs for the taking of depositions in Taiwan pursuant to the Court's January 7 Order. Apeldyn requests that "costs be allocated in the range of between 50% and 66.7% to AUO within the discretion of [the Special Master], with the remainder to CMO." (*See* April 20, 2011 letter from R. Kirk to Special Master Poppiti.) AUO and CMO each argue that shifting of costs is not appropriate but that if the Special Master does shift costs, AUO "believes that the shifted costs should be allocated equally between AUO and CMO," and CMO proposes

6

that any allocation proportionately reflect Apeldyn's complaints against the respective defendants and any curative actions[7] already taken by the defendants. *See id.*

Apeldyn's proposal to allocate a greater share of costs to AUO is based on the assertion that AUO "in effect" produced only one witness (two of three designees allegedly being inadequately prepared), whereas CMO "in effect" produced two (one of three designees allegedly being unprepared). *See id.* Thus, Apeldyn suggests that the Court's January 7 Order extends beyond Apeldyn's Motions to Compel and defendants' pre-deposition conduct to include witness preparedness during the depositions. The Special Master rejects Apeldyn's position, as the Court's January 7 Order is clear that it is defendants' pre-deposition conduct that is relevant to a determination of defendants' good faith. In this regard, the Special Master concludes that the Court's January 7 Order requires a distinct analysis from any conduct during the depositions. The Court's January 7 Order (issued prior to the commencement of the depositions at issue) directed the Special Master to consider shifting costs based on an analysis of whether the "defendants conducted themselves in good faith" in the proceedings leading up to the Special Master's December 13, 2010 Order that the depositions proceed in Taiwan, as well as up to the time of the depositions, such as with respect to witness designations. (*See* D.I. 405). Accordingly, the issue of witness preparedness at deposition is appropriately reserved for the second part of Apeldyn's applications concerning sanctions under Fed. R. Civ. P. 37.[8]

---

[7]     In particular, CMO points to the fact that it produced Mr. Lan on February 16, 2011 in Los Angeles as a replacement witness for Ms. Shieh.

[8]     The Special Master notes, however, that the lack of preparation of the witnesses discussed *infra*, while not part of the analysis under the Court's January 7 Order, does support the Special Master's conclusion that costs of the depositions in Taiwan should be shifted because defendants lacked good faith in their overall deposition preparation.

In determining whether the defendants conducted themselves in good faith,[9] the Special Master has considered that: (1) a primary justification for the depositions taking place outside the United States was the potential number of designees and the burdens associated with bringing them to the United States; (2) CMO did not provide its witness designations until January 6, 2011, and AUO did not provide its witness designations until January 7, 2011, with modifications on January 14 and 19 (*see* Appx. A); and (3) Apeldyn's objections to the Special Master's December 13 Order were primarily directed to the financial burden of the foreign depositions. The "good faith" analysis is therefore not limited to the number of designees represented by defendants and ultimately produced. At the same time, defendants' actions—particularly, delaying in providing witness designations—prevented Apeldyn, the Special Master, and the Court from determining whether any of the witnesses routinely travel to the United States or how significant of an impact on defendants' respective business operations the absence of certain employee witnesses would have—both factors relevant to Apeldyn's Motions to Compel. Under the circumstances of this case, particularly in connection with Apeldyn's Motions to Compel, defendants had a duty to diligently cooperate with Apeldyn to identify and designate Fed. R. Civ. P. 30(b)(6) witnesses in a timely and accurate manner so that Apeldyn could properly make objections or seek relief from the Court.

### A.    The Parties' Lack of Good Faith

Neither AUO nor CMO provided witness designations prior to the Special Master's December 13 Order—CMO provided its designations on January 6, 2011; AUO provided its designations on January 7, 2011, which AUO subsequently amended on January 14 by reducing

---

[9]    In the Special Master's view, an examination of whether AUO and CMO conducted themselves in good faith is a completely different analysis from an examination of whether a party acts in bad faith. An examination of good faith in the matter *sub judice* is an examination of diligence and complete candor. The Special Master has

the number of designees from five to three, and amended again on January 19 to re-assign two of the topics. (*See* Appx. A.)   In the Special Master's view, these late designations made it impossible for Apeldyn to assess the factors of whether the witnesses regularly travel to the United States and the extent of any disruption to defendants' business operations in order to carry its burden of overcoming the presumption that corporate witnesses are deposed at the corporation's place of business and for the Special Master to ultimately evaluate the impact on the defendants of conducting depositions in the United States.   Not only does the number of designees impact the burden on the corporate party, but also the identities of the designees is relevant, as taking officers and executives of a corporation away from their jobs for travel to a foreign country certainly creates a more substantial burden than requiring lower level employees to travel.

As to AUO, in connection with Apeldyn's motion to compel the Fed. R. Civ. P. 30(b)(6) deposition of AUO in the United States (D.I. 352), AUO represented to the Special Master that it intended to produce five witnesses in Taiwan and that a benefit of proceeding in Taiwan would be the witnesses' ability to confirm their answers and gather additional information as necessary. (*See* Dec. 6 Hrg. at 34:4-35:18, 42:13-23.)   Furthermore, prior to the Special Master's December 13 Order, AUO represented that it would have certain designees were the depositions to proceed in the U.S. and different designees for depositions in Taiwan (*See* Dec. 6 Hrg. at 34:4-35:18), implying that at least some thought had gone into the identities of the designees, yet AUO provided no such information to either Apeldyn or the Special Master.[10]   AUO refused to produce its witnesses in the United States despite Apeldyn's offer to pay half of the expenses for

---

examined the record to determine defendants' respective "faithfulness to one's duty or obligation." BLACK'S LAW DICTIONARY 762 (9th ed. 2009) (definition of "good faith").

the witnesses' travel to the United States. (*See* Dec. 6 Hrg. at 11:22-12:15.) AUO finally made its witness designations on January 14, 2011, less than one week prior to Apeldyn's travel to Taiwan to commence depositions, and a mere ten days before the deposition of AUO was to commence. At this time, AUO designated only three witnesses. (*See* Appx. A.) Apeldyn additionally challenges whether Mr. Yu was a necessary witness, asserting that AUO could have proceeded with only two witnesses. (*See, e.g.,* Apr. 5 Hrg. at 18:11-19:6.) However, other than Apeldyn's speculation that AUO's other witnesses could have additionally testified to Mr. Yu's designated topics, there is no evidence in the record that this is the case, and neither Apeldyn nor the Special Master can determine in the abstract exactly how many topics a single witness could have testified to. On this record a determination of capability of any one witness would be mere speculation. Accordingly, the Special Master declines to make a determination as to whether AUO could have done without Mr. Yu or a third witness.

As to CMO, in connection with Apeldyn's motion to compel the 30(b)(6) deposition of CMO in the United States (D.I. 366), CMO represented to the Special Master that it would have to produce four to five or more[11] witnesses in Taiwan. (D.I. 390.) CMO refused to produce its witnesses in the United States despite Apeldyn's offer to pay half of the expenses for the witnesses' travel to the United States. (*See* Dec. 6 Hrg. at 11:22-12:15.) CMO made its witness designations on January 6, 2011, less than two weeks prior to commencement of the deposition

---

[10]    AUO also indicated that some of the individuals from these two groups of potential witnesses may have been the same regardless of where the depositions were held, which also would have been relevant to an analysis of the burden on AUO. (*See id.*)

[11]    CMO indicated that its original estimate of four to five witnesses was based on a presumed reduced number of deposition topics and that more witnesses would be needed to cover all of the noticed topics. (*See* Apr. 14 Hrg. at 72:19-23.) CMO also stated that four to five witnesses were identified because Apeldyn had not taken its deposition topics off the table. (*See* Apr. 14 Hrg. at 117:23-119:12.) As discussed below, to the extent any agreement may have been reached to limit the topics from the notice of deposition, there is no such evidence in the record. Moreover, CMO's positions are inconsistent: on the one hand, CMO argues that four to five witnesses would be needed to cover a presumed reduced set of topics, while at the same time defending its representation of needing

10

of CMO in Taiwan. (*See* Appx. A.) At this time, CMO designated only three witnesses. (D.I. 472 at 2.) Apeldyn additionally challenges whether Ms. Shieh was a necessary witness and whether CMO actually needed any more than two witnesses all along. (*See, e.g.*, Apr. 5 Hrg. at 18:11-19:6.) Even after terminating Ms. Shieh's deposition, CMO produced yet a third individual (Mr. Lan) to cover Ms. Shieh's topics. Accordingly, the final number of designees was still three. Furthermore, for the reasons stated above with respect to AUO and Mr. Yu, the Special Master declines to decide the issue of whether a certain designee was actually necessary.

Having reviewed the actual costs incurred as a result of these depositions and analyzing whether AUO and CMO conducted themselves in good faith, especially with regard to the final number of late designated Fed. R. Civ. P. 30(b)(6) designees in view of AUO's and CMO's respective representations to Apeldyn and the Special Master, the Special Master concludes that AUO and CMO did not conduct themselves in good faith in providing witness designations.[12] Accordingly, a shifting of costs to AUO and CMO is warranted.

C.    **Shifting of Costs**[13]

Having determined that costs of the depositions in Taiwan should be shifted such that AUO and CMO bear some of the expense, the Special Master concludes that all reasonable and necessary expenses should be split among the parties to which the expenses pertain, as described below.

---

four to five or more witnesses (instead of the three actually designated) in case Apeldyn did not stick to a limited set of topics. (*See* Apr. 14 Hrg. at 72:19-75:4, 117:23-119:12.)

[12]    As explained in the Special Master's December 13 Order, Apeldyn did not overcome the presumption that the deposition of a corporation is to be held at the corporation's principal place of business. Without deciding the issue anew, the Special Master notes that although AUO and CMO represented a total of eight to ten designees and ultimately produced only six (with the adequacy of some being challenged in Apeldyn's current motions), conducting the depositions in Taiwan would still have been warranted based upon the need for six witnesses total and the potential disruption to the defendants' businesses.

[13]    A table of cost apportionment and total monetary amounts is set forth in the Conclusions, *infra*.

11

### 1.    Counsel Airfare to Taiwan

Apeldyn's counsel's travel to Taiwan was obviously necessary only because the depositions were held in Taiwan. However, it was Apeldyn's choice to fly certain of its counsel in first class and business class as opposed to coach. The Special Master is mindful that the flight from Delaware to Taiwan is lengthy (even with a stopover on the west coast), but convenience and comfort are insufficient reasons to tax additional costs on AUO and CMO. Accordingly, AUO and CMO are each HEREBY ORDERED to reimburse Apeldyn for one-third of coach price airfare to Taiwan for each of Apeldyn's counsel who attended the depositions in Taiwan.[14]

### 2.    Facility Costs

Had the depositions been conducted in the United States, counsel presumably would not have had to pay for a facility within which to conduct the depositions, as the depositions could have been held at counsel's office. Thus, facility charges were necessitated by the fact that the depositions proceeded in Taiwan. Accordingly, AUO and CMO are each HEREBY ORDERED to reimburse Apeldyn for one-half of the facility costs for their respective depositions.

### 3.    Court Reporter Travel Costs & Accommodations[15]

It was Apeldyn's choice to bring a court reporter from the United States for all of the depositions in Taiwan. There are court reporter services available in Taiwan that could have substituted for Apeldyn flying a court reporter from the United States. Apeldyn's preference to bring a court reporter from the United States as opposed to hiring a Taiwanese firm is

---

[14]    Apeldyn sent three attorneys from McKenna Long & Aldridge LLP to Taiwan. (*See, e.g.,* Apr. 12, 2011 letter from R. Kirk, Attachment B.) Neither AUO nor CMO challenged the number of Apeldyn attorneys who traveled to Taiwan, and the Special Master concludes that sending two partners and one associate is not unreasonable.

[15]    The Special Master interprets Apeldyn's request as limited to the travel costs associated with bringing the court reporter to Taiwan, and not including the court reporter's stenography services, as Apeldyn would have been required to hire a court reporter in the United States as well.

12

attributable wholly to Apeldyn, and AUO and CMO should not share in the associated costs. Accordingly, Apeldyn is HEREBY ORDERED to bear the full expense of its court reporter.

### 4.    Translator Travel Costs & Accommodations

Likewise, Apeldyn chose to bring a translator from the United States for all of the depositions in Taiwan.   There are certified translators in Taiwan that Apeldyn could have retained to save on transportation and accommodation costs.  Apeldyn's preference to bring a translator from the United States as opposed to hiring a local translator was of Apeldyn's own accord and the associated costs should be taxed wholly on Apeldyn.  Accordingly, Apeldyn is HEREBY ORDERED to bear the totality of its translator's travel expenses.

### 5.    Document Shipping Costs

AUO and CMO are correct that Apeldyn was not required to transport physical files to Taiwan in advance of the deposition and, instead, could have sent electronic copies of the documents to a Taiwanese law firm or vendor, or brought electronic copies of the documents for printing on arrival.  However, the Special Master believes that there are clear advantages (and reasonable preferences) for being able to prepare deposition documents within the convenience of one's own office in advance of a deposition.  Exhibits frequently need to be assembled in a logical order, checked for accuracy, and reviewed in advance of the deposition.  Certainly one would not want to arrive in Taiwan to find that instructions were not followed or documents inadvertently not assembled correctly.  Therefore, it is likely that even advanced ordering of exhibits from electronic files would require counsel to arrive earlier than otherwise planned to make sure that everything is assembled properly, which would add to accommodation costs. Furthermore, it is certainly preferable to have colleagues one knows and trusts and who are familiar with the case to prepare the exhibits.  Apeldyn can hardly be blamed for this preference—in the Special Master's view this is more than a mere convenience.  Accordingly,

13

AUO and CMO are each HEREBY ORDERED to reimburse Apeldyn for one-third of the total document shipping costs.

### III.    INADEQUATE WITNESS PREPARATION

#### A.    Legal Standard

A Fed. R. Civ. P.30(b)(6) designee has "an affirmative obligation to be prepared on the noticed topics so that [the witness can] give complete, knowledgeable, and binding answers on behalf of the party." *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, *5 (D. Del. Sept. 22, 2006); *See also Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001) ("[T]he law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation.") (ordering new deposition and reserving decision on award of costs and fees); *Buycks-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995) (stating that the duty to present and prepare a Fed. R. Civ. P. 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved). While a Fed. R. Civ. P. 30(b)(6) designee "need not be subjected to a memory contest," the witness must be prepared and knowledgeable. *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 U.S. Dist. LEXIS 58970 (N.D. Cal. Aug. 10, 2006) (internal quotations omitted). A Fed. R. Civ. P. 30(b)(6) designee has an obligation to review all corporate documentation that might have a bearing on the 30(b)(6) deposition topics, including review of prior fact witness deposition testimony, documents, and exhibits. *Calzaturficio*, 201 F.R.D. at 37. The scope of the deposition notice or the fact that the deponent party objects to the discovery sought (absent a pending motion for a protective order) is no excuse for failing to appear or be adequately prepared for a Fed. R. Civ. P. 30(b)(6) deposition ordered by the Court. *See* FED. R. CIV. P. 37(d)(2); *State Farm*, 250 F.R.D. at 218 n.10.

14

"District courts have the inherent power to control litigation by imposing sanctions appropriate to rectify improper conduct by litigants." *Micron Tech., Inc. v. Rambus Inc.*, No. 00-792, slip op. at 24 (Fed. Cir. May 13, 2011) (internal quotations and citations omitted). The sanctions imposed are within the sound discretion of the district court to assure fairness in proceedings. *Id.* The Third Circuit applies a two-step process and considers several factors when deciding whether to impose sanctions. First, "the court must consider the conduct at issue and explain why the conduct warrants sanction," including consideration of whether counsel or a party is at fault, whether there is a pattern of wrongdoing, whether prejudice has already occurred, and whether any mitigating factors exist. *In re Neurontin Antitrust Litig.*, 2011 WL 253434, *6 (D.N.J. Jan. 25, 2011) (internal quotations omitted). Second, "the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate." *Id.* (internal quotations omitted). "[S]anctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court." *Id.* (internal quotations omitted) (awarding costs and fees associated with motion and substitute deposition).

Fed. R. Civ. P. 37(d) permits the Court to order sanctions if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." For a violation of Fed. R. Civ. P. 37(d), instead of or in addition to any of the orders listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi), "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses

15

unjust." FED. R. CIV. P. 37(d)(3). Where any substantive prejudice can be cured by an additional deposition and the only other prejudice is due to expenditure of time and resources, monetary sanctions are the appropriate remedy. *See State Farm*, 250 F.R.D. at 219 (awarding monetary sanctions for inadequately prepared Fed. R. Civ. P. 30(b)(6) witness); *Innovative Patents, LLC v. Brain-Pad, Inc.*, 2009 WL 3648444 (D. Del. Nov. 4, 2009) (awarding reimbursement of portion of fees and costs associated with 30(b)(6) deposition of inadequately prepared witness).

"Although the application of Rule 37(d) is usually limited to an actual failure to appear for a deposition—rather than an appearance by an unprepared deponent—the Third Circuit has made an exception in the context of Rule 30(b)(6) depositions." *State Farm Mutual Automobile Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 217 (E.D. Pa. 2008) (awarding monetary sanctions for failure to adequately prepare a 30(b)(6) designee). "[W]hen a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), '[p]roducing an unprepared witness is tantamount to a failure to appear' that is sanctionable under Rule 37(d)." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (quoting *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996)) (affirming district court's award of sanctions due to inadequately prepared corporate designee). Furthermore, a failure to appear or present a prepared witness under Fed. R. Civ. P. 37(d) "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." FED. R. CIV. P. 37(d)(2). "Because the duty of preparation extends beyond the deponent's personal knowledge and involves the knowledge of the entity, it may be necessary for the deponent to use documents, past employees or other resources to obtain responsive information." *In re Neurontin Antitrust Litig.*, 2011 WL 253434 at *7 (internal quotations omitted). "A properly prepared Rule 30(b)(6) [witness] must be able to provide facts

16

known by corporate employees . . . or admit that there are no facts known by the corporation." *Id.* at *10.

## B. <u>The AUO Motion</u>[16]

While the parties dispute the extent of a party's responsibility to prepare its Fed. R. Civ. P. 30(b)(6) designees, the law is clear that a party has an affirmative obligation to prepare its witnesses, including by having them review relevant documents.

### 1. Ms. Ling Jung (Kelly) Kao

AUO designated Ms. Kao to testify as to topics 6, 15, 19-40, and 44 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition. (*See* Kao Depo. Tr. 9:21-11:17). Apeldyn took issue with Ms. Kao's lack of preparation on both day one and day two of the deposition. (D.I. 435.) Ms. Kao admitted that she did not review *any* documents in preparation for her deposition other than Apeldyn's notice of deposition. (*See id.* at 23:14-18). While Ms. Kao did work in AUO's sales department for approximately seven years, including approximately three years as a senior manager (*See id.* at 33:11-36:14), Ms. Kao did not have personal knowledge as to each of the twenty-four topics for which she was designated, and could not recall information that related to some of her own experience. Regardless of her experience at AUO and the extent of her personal knowledge, to the extent she did not have any personal knowledge as to certain matters within the scope of her twenty-four designated topics, AUO had an obligation to ensure that Ms. Kao was adequately prepared to testify as to those matters. It is difficult to understand, much less accept, how any witness without full personal knowledge could be adequately prepared without reviewing a single document.

---

[16]    Apeldyn and AUO discussed the possibility of designating portions or the entirety of AUO America's testimony as binding on AUO in lieu of AUO possibly producing another witness, but the two parties were unable to reach an agreement on this issue. (*See* D.I. 449.)

17

The Special Master concludes that Ms. Kao was unable after two days of testimony to answer questions on at least topics 15, 19, 21, 22, 23, 27, 31, 33, 34, 37, 38, and 39 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition. The following are examples from Ms. Kao's deposition as cited by the parties:

| Topic No.[17] | Transcript Citation[18] | Description of Ms. Kao's Lack of Preparedness |
|---|---|---|
| 23 | 145:13-147:10 | lack of knowledge regarding size of U.S. market |
| 31, 37 | 57:3-74:10; 381:20-384:14 | lack of answers regarding repair centers in the U.S. and markets they serve[19] |
| 22, 33, 34 | 15:5-7 | did not review documents regarding business relationship with Dell |
| 22, 33, 34 | 23:7-13 | did not review documents between AUO and Best Buy nor presentations given to Best Buy |
| 22, 33, 34 | 128:11-129:9 | did not review communications within the last three years with Wal-Mart, Best Buy, Apple, HP, or Dell |
| 22, 33, 34 | 35:17-36:14 | could not recall precisely when she personally worked with HP and did not review any of her own emails from this time |
| 21, 22, 34 | 107:17-109:11; 188:9-19; 267:15-269:12; 365:22-368:2 | could not state whether AUO has agreements with Best Buy, HP, Dell, Arrow Electronics, or Jaco Electronics and did not review any documents concerning the same |
| 22, 33, 34 | 21:6-18 | did not speak with any salesperson assigned to work with HP or Apple |
| 22, 33, 34 | 216:16-19; 101:1-22; 104:17-105:8; 148:8-149:20 | could not provide frequency of meetings with Dell or HP, including communications by AUO America, and did not ask others in preparation[20] |

---

[17]    For this witness and the other witnesses discussed *infra*, the Special Master has reviewed only the topics provided by the parties and has not made a determination on the adequacy of the responses as to the other topics—as no determination was requested, none is warranted.

[18]    For this witness and the other witnesses discussed *infra*, the Special Master has reviewed only those citations provided by the parties and has not made a determination as to other portions of the testimony.

[19]    The Special Master cannot decipher from the deposition transcript whether the witness lacked sufficient knowledge to testify as to this information or rather was trying to avoid giving straight answers to the questions. For example, as AUO pointed out (*see, e.g.*, D.I. 440 at 2), the witness did clearly explain (several times) that products are returned to the nearest repair center; however, in the Special Master's view, the witness avoided directly answering the repeated question of whether certain repair centers received U.S. products. In any event, the witness' answers are unsatisfactory.

[20]    AUO contends that Ms. Kao adequately testified that AUO's customer is Dell Singapore and that AUO will meet wherever Dell Singapore requests. *See* D.I. 440 at 2. But beyond this basic response, the record does not reflect that Ms. Kao could provide details concerning such meetings. AUO further argues that Ms. Kao should not have been expected to testify as to AUO America communications because AUO America provided its own designee for deposition. *See id.* However, topics 22 and 34 explicitly include AUO America's interaction with customers (D.I. 412), and Ms. Kao testified that she as a witness was not sure of the extent of such communications, not that AUO does not possess such information or have such communications. To the extent AUO objects to the

18

| Topic No. | Transcript Citation | Description of Ms. Kao's Lack of Preparedness |
|---|---|---|
| 31, 37 | 18:11-21:5 | other than obtaining names, did not gather information concerning U.S. repair centers |
| 19, 27, 38, 39 | 395:15-399:16 | lack of full information on sales and invoicing of U.S. customers |
| 15 | 372:13-373:13 | no knowledge of communications with customers regarding overdrive technology |
| 33 | 263:18-266:14 | incomplete knowledge regarding subsidies and rebates to customers |
| 33 | 361:16-365:2 | lack of personal knowledge on pricing discussions with customers; did not speak with Sales Director about pricing discussions with Best Buy[21] |

While the Special Master concludes that, on the whole, Ms. Kao was inadequately prepared to answer questions relating to the topics for which she was designated, the Special Master also concludes that Apeldyn's assertions and characterizations of Ms. Kao's testimony are not completely accurate. For example, with reference to Ms. Kao's transcript at 215:10-226:12, Apeldyn asserts that Ms. Kao would not "acknowledge" that "AUO provides road maps to its customers with the intent that the customers use AUO modules in their products." (*See* Apr. 5 Hrg. at 28:24-29:12.) However, Ms. Kao did provide substantive answers to questions regarding product road maps. That AUO America's corporate designee answered differently does not make Ms. Kao's testimony insufficient. Apeldyn further asserts that Ms. Kao would not "acknowledge" alignment of products with HP. (*See id.* at 31:2-31:9.) Ms. Kao did respond to these questions (although not directly addressing the question as posed), it appearing that Ms. Kao was merely unwilling to accept counsel's characterization. It is not clear that Ms. Kao was unprepared on these issues as Apeldyn asserts. Here and elsewhere (*e.g., id.* at 31:10-19 (regarding AUO as an OEM), 42:15-43:3 (regarding where AUO finished products are sold)) Apeldyn argues that discrepancies between Ms. Kao's testimony and Mr. Chen's testimony on

scope of the deposition topics, it could have sought a protective order to narrow the topics prior to the depositions— it did not.

19

behalf of AUO America support the conclusion that Ms. Kao was uninformed or not prepared. To the extent that Apeldyn believes it has obtained incongruous testimony, it may seek to impeach witnesses at trial; this alone is not, in the Special Master's view, grounds for concluding that a witness was unprepared when the witness has in fact provided substantive responses.

At the conclusion of day two of the deposition, Apeldyn requested that AUO make Ms. Kao available for additional time (about two hours) at a later date, which request AUO ultimately rejected.[22]  (*See id.* at 405:16-408:20; D.I. 473 at Ex. A.)  While the Special Master understands that Apeldyn had already deposed Ms. Kao for two full days, permitting Apeldyn a few additional hours to explore previously provided information may have made Ms. Kao's deposition more complete.  In sum, Apeldyn did not obtain as much substance as it could have from an adequately prepared witness.

Accordingly, the Special Master concludes that Ms. Kao was inadequately prepared to testify as a Fed. R. Civ. P. 30(b)(6) designee as to at least topics 15, 19, 21, 22, 23, 27, 31, 33, 34, 37, 38, and 39 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition.

### 2.    Mr. Yihsheng (Spencer) Yu

AUO designated Mr. Yu to testify as to topics 28, 30, 31, 42, 45, and 46 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition.  (*See* Yu Depo. Tr. 10:4-13:1).  Mr. Yu testified that he spent more than ten hours reviewing documents in preparation for his deposition. (*Id.* at 24:2-25:14).  Mr. Yu was unable to answer questions on at least topics 28, 30, 31, and 46

---

[21]    However, Apeldyn's counsel did not ask substantive questions of Ms. Kao, only what she did to prepare, so a determination cannot be made as to whether Ms. Kao was in fact not prepared to testify as to these issues.

[22]    The Special Master notes that Apeldyn did not make any attempt to contact the Special Master while depositions were ongoing in Taiwan to request additional testimony from Ms. Kao or production of a substitute AUO witness. However, the Special Master is also mindful that he had previously granted Apeldyn five full days of depositions in Taiwan for use in Apeldyn's discretion. *See* Jan. 6 Hrg. at 20:6-21:6.

of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition,[23] as demonstrated by the following examples from his testimony:

| Topic No. | Transcript Citation | Description of Mr. Yu's Lack of Preparedness |
| --- | --- | --- |
| 31 | 28:21-38:18; 90:15-92:21 97:8-103:18 | lack of knowledge regarding subsidiaries and repair centers and agreements with same; lack of knowledge regarding distribution agreements[24] |
| 28 | 78:19-79:20 | no knowledge as to sales department assignments |
| 30 | 81:7-90:4 | insufficient knowledge regarding AUO America and its relationship with AUO[25] |
| 46 | 137:22-153:17 | lack of knowledge about custodians of relevant information and documents |

Despite Mr. Yu's review of documents and information in preparation for his deposition, he was unable to answer many of Apeldyn's questions that were explicitly within the scope of the noticed deposition topics for which he was designated. Accordingly, the Special Master concludes that Mr. Yu was inadequately prepared to testify as a Fed. R. Civ. P. 30(b)(6) designee as to at least topics 28, 30, 31, and 46 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition.

---

[23] Apeldyn complains that "Mr. Yu offered nothing more than did Ms. Kao, and any witness could have given his sparse testimony on topics 42 and 45" (product work-arounds and defenses in this action, respectively). As Apeldyn has not provided specific examples of such alleged deficiencies, the Special Master declines to dig through the record in search of such examples. The Special Master, therefore, makes no conclusions as to topics 42 and 45.

[24] Apeldyn asserts that Mr. Yu should not be faulted "for supposedly not reviewing agreements between AUO and the service centers, when, in fact, as Ms. Kao established, there were not such agreements." (Apr. 5 Hrg. at 71:19-24). However, Ms. Kao did not establish that there were no agreements with the service centers, only that she was not sure if such agreements exist and would need to check with AUO's legal department. (*See* Kao Depo. Tr. 366:3-367:8). As neither witness appears to have had enough information to state definitively whether or not such agreements exist, the Special Master concludes that neither Ms. Kao nor Mr. Yu were adequately informed on this topic for their depositions.

[25] AUO argues that it made clear in its objections that it was providing Ms. Kao and Mr. Yu on behalf of AUO Taiwan solely and, therefore, it would be inappropriate to expect Ms. Kao and Mr. Yu to have extensive details concerning AUO America issues. AUO never sought a protective order to limit the scope of the depositions with respect to AUO America topics, and AUO has not provided the Special Master with any written record of its objections or any purported agreements reached as to the scope of certain topics. Nevertheless, had AUO's witnesses indicated that certain information concerning AUO America's activities is in the possession of AUO America only—rather than merely indicating a lack of knowledge of answers to various questions—that may have been an appropriate response in certain contexts. Here, however, there are examples of AUO's witness not being able to provide details as to AUO's relationship with AUO America, something that is well within the scope of the deposition notice and that the Special Master would expect AUO Taiwan to have information about.

21

### 3.    Appropriate Sanctions

While AUO argues that Apeldyn's questioning clearly demonstrates a purpose to create a record of unpreparedness—and it does—the record ultimately supports Apeldyn's contention that Ms. Kao and Mr. Yu were not able to fully answer Apeldyn's questions concerning the noticed deposition topics. The record also supports Apeldyn's contention that Ms. Kao did not take sufficient steps to adequately prepare to testify on behalf of AUO as a Fed. R. Civ. P. 30(b)(6) designee, particularly given her failure to review any documents whatsoever. Apeldyn was, however, able to obtain more than insubstantial testimony from Ms. Kao and Mr. Yu and likely could have obtained more had counsel referred to documents and used them as exhibits rather than establishing that Ms. Kao and Mr. Yu did not review those documents of interest.

Because Ms. Kao and Mr. Yu were not completely and, therefore, not adequately prepared, Apeldyn is entitled to remedial discovery and a shifting of costs and fees. At the same time, Apeldyn could have more efficiently conducted its depositions (such as by reference to documents of interest), and, thus, the sanctions should be limited to curative discovery and a narrow monetary award to remedy only the precise deficiencies in Ms. Kao's and Mr. Yu's testimony.

With respect to AUO's inadequately prepared witnesses, Apeldyn requests, pursuant to Fed. R. Civ. P. 37(d)(3), an Order: (1) requiring AUO to reimburse Apeldyn for the fees and expenses Apeldyn incurred in taking the Fed. R. Civ. P. 30(b)(6) deposition of Ms. Kao and Mr. Yu in Taiwan; (2) compelling AUO to present in Delaware at AUO's cost another witness (or witnesses) on the topics for which Ms. Kao and Mr. Yu were designated or, alternatively, precluding AUO from challenging Apeldyn's inducement claim; and (3) preventing AUO from designating portions of Ms. Kao's testimony. AUO denies that any sanctions are appropriate and

22

requests that, to the extent the Special Master orders additional discovery, such discovery should be limited to the topics for which Ms. Kao and Mr. Yu did not provide sufficient information.

In the context of the matters *sub judice*, it is not the Special Master's responsibility to narrow topics for deposition, and the Special Master declines to do so, although the parties are encouraged to discuss an appropriate scope of any additional depositions to conserve resources. While Ms. Kao and Mr. Yu did provide some substantive testimony, there were substantial gaps in their preparation as noted above. In particular, Ms. Kao's failure to review any documents is inexcusable; moreover, on this record it is not possible for the Special Master to make a finding as to Ms. Kao's knowledge on various topics for which she was designated. Apeldyn should, therefore, be entitled to a full deposition of an adequately prepared witness on all topics for which Ms. Kao and Mr. Yu were designated, including leeway to follow up on its questions in any additional depositions, and any strict limitation as to categories, particularly given that the plurality of topics for which the witnesses were unprepared would unfairly limit Apeldyn's ability to obtain discovery. Accordingly, the Special Master declines to narrow any individual deposition topics or restrict the remedial depositions to specific topics, with one exception as to topic 46 for which Mr. Yu was designated, as discussed below.

AUO argues that "much of Apeldyn's complaint seems to have been mooted, because it now claims that it got the information from AUO America." (Apr. 5 Hrg. at 76:13-19). The Special Master concludes otherwise. Although Apeldyn did get information from AUO America's witness, Apeldyn and AUO were unable to reach an agreement on whether any portion of AUO America's testimony will be binding upon AUO. Separate depositions are therefore in order.

23

Accordingly, pursuant to Fed. R. Civ. P. 37(d), AUO is HEREBY ORDERED to reimburse Apeldyn for its fees associated with taking the depositions of Ms. Kao and Mr. Yu as set forth in detail in the Conclusions, *infra*. AUO is further ORDERED to produce for deposition in Delaware (unless counsel can mutually agree on an alternative location) at AUO's expense a new witness or witnesses to testify as to the topics for which Ms. Kao and Mr. Yu were designated, subject to the following exception for topic 46.

As to topic 46, AUO challenges whether any Fed. R. Civ. P. 30(b)(6) witness can be expected to know the identity of the custodians of documents produced in an action (at least for companies as large as AUO). In the Special Master's view, Mr. Yu's inability to identify each person who produced documents on behalf of AUO in this action is not in and of itself deficient. However, Apeldyn is entitled to have an answer to this inquiry. AUO should be able to provide such information after reviewing its document production procedures. Thus, AUO is HEREBY ORDERED to either (i) produce for deposition in Delaware (unless counsel can mutually agree on an alternative location) at AUO's expense a new witness or witnesses to testify as to topic 46, or (ii) identify, by name and title or position, the custodians of documents produced in this action and the factual criteria for identifying the custodians in possession of responsive information. Apeldyn may then use other appropriate resources and discovery means to determine whether those custodians had dealings with HP or other customers.

Furthermore, the Special Master concludes that Apeldyn is entitled to recover a portion of its fees in making the AUO Motion pursuant to Fed. R. Civ. P. 37(d)(3). Since Apeldyn's AUO Motion is a joint application under the Court's January 7 Order and Fed. R. Civ. P. 37, AUO is HEREBY ORDERED to reimburse Apeldyn for one-half of its expenses, including reasonable attorney's fees, in making the AUO Motion, as set forth in detail in the Conclusions, *infra*.

24

Apeldyn alternatively seeks a recommendation precluding AUO from challenging Apeldyn's claims of inducing infringement. (*See, e.g.*, Apr. 5 Hrg. at 47:4-6). Because "sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court" (*In re Neurontin Antitrust Litig.*, 2011 WL 253434 at *6), and reimbursement of fees coupled with the opportunity for additional testimony addresses AUO's specific wrongdoing, the Special Master HEREBY DENIES Apeldyn's request to limit AUO's defenses in this action.

During the April 5 hearing, Apeldyn additionally requested that AUO be prevented from designating any portion of Ms. Kao's testimony for trial purposes. In this regard Apeldyn asserts that Ms. Kao's testimony is incorrect is based on lack of preparation and, therefore, could be used to dispute testimony by AUO America. That two entities—although here they are related entities—may have provided incongruous sworn testimony at deposition, whether due to inadequate preparation or otherwise, does not justify the exclusion of their testimony. Said application is therefore HEREBY DENIED. To the extent Apeldyn is correct that certain of Ms. Kao's statement are incorrect and at odds with AUO America's testimony,[26] Apeldyn will have the opportunity to impeach the appropriate witnesses at trial.

---

[26] This issue is not before the Special Master, and the Special Master accordingly declines to make any conclusions as to this issue.

### C.    The CMO Motion

#### 1.    Ms. Fang I (Denise) Shieh[27]

CMO designated Ms. Shieh to testify as to topics 24-26 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition.  While CMO contests whether topics 24-26 extend beyond marketing to reach sales issues, and while Ms. Shieh did provide substantive testimony in response to many of Apeldyn's questions, the record demonstrates that Ms. Shieh was not able to answer all of Apeldyn's questions as to the marketing issues that are clearly within the scope of topics 24-26.  For example, Ms. Shieh was unable to identify or provide details concerning which conferences CMO attends in the United States (*See* Shieh Depo. at 15:1-18:11); stated that she did not review communications between CMO and North American brand customers, which is explicitly within the scope of topic 24 (*id.* at 70:7-22); and admitted that she did not review any CMO USA documents (*id.* at 62:8-17).

Although Ms. Shieh was not able to answer several of Apeldyn's questions based on her personal knowledge or deposition preparation, Apeldyn ignored Ms. Shieh's multiple requests to review specific documents in connection with the lines of questioning (*See, e.g.*, Shieh Depo. at 69:15-19; 70:18-71:4).  Thus, it appears that some amount of Apeldyn's dissatisfaction with Ms. Shieh's deposition could have been avoided with more document focused examination by Apeldyn.

---

[27]    CMO informed the Special Master that Ms. Shieh had difficulty testifying in part due to the way she was treated by Apeldyn's counsel during the deposition.  According to CMO's counsel, based on discussions with Ms. Shieh outside of the deposition room, the conduct of Apeldyn's counsel "demoralized and exasperated" Ms. Sheih. (*See* Apr. 14 Hrg. at 79:8-80:1.)  A review of the video recording of Ms. Shieh's deposition (at the request of CMO's counsel), however, reveals no inappropriate conduct whatsoever on the part of Apeldyn's counsel.  The Special Master is mindful of the stress that a witness might experience when interrogated in a deposition, and our Court is sympathetic to the needs and comfort of witnesses.  To that end, counsel are expected to be courteous, civil, and considerate in the deposition room as elsewhere in litigation.  Although Apeldyn's counsel may have been curt or impatient with Ms. Shieh at times, the Special Master concludes that such conduct was not unreasonable given that Apeldyn's counsel faced an uncooperative and unprepared witness.  Indeed, if CMO's counsel was truly concerned with Apeldyn's counsel's conduct during the deposition, an objection could have been placed on the

26

While Apeldyn's questioning of Ms. Sheih clearly demonstrates a purpose to create a record of Ms. Shieh's lack of preparation, the record ultimately supports Apeldyn's contention that Ms. Shieh did not adequately prepare to testify on behalf of CMO as a Fed. R. Civ. P. 30(b)(6) designee.    Indeed, in the Special Master's view, CMO's request to terminate the deposition in favor of a supplemental witness implicitly supports this conclusion.  Apeldyn was, however, able to obtain more than insubstantial testimony from Ms. Shieh and likely could have obtained more had counsel referred to documents rather than establishing that Ms. Shieh could not name off the top of her head every single document reviewed in preparation for her deposition.  Because Ms. Shieh was not completely and, therefore, not adequately prepared, Apeldyn is entitled to a shifting of costs and fees.

CMO disputes the appropriate scope of topic no. 24.  CMO asserts that topic no. 24 concerns marketing information, not sales information, as Apeldyn asserts and sought in its depositions.  (D.I. 475.)  The Special Master concludes that questions directed to both marketing and sales are within the scope of topic number 24, and are reasonably calculated to lead to the discovery of admissible evidence.  Without engaging in a discussion as to the meaning of the terms used in topic no. 24, the request explicitly includes "the extent to which CMI's products have been and/or could have been imported and/or sold"—i.e., sales information.  (D.I. 333-1 at 12.)  Furthermore, although CMO asserts that Apeldyn and CMO discussed the proper scope of topic 24, CMO did nothing to preserve a record of its discussions or agreements with Apeldyn as to the scope of topic no. 24 (or any other topic for that matter).  During Ms. Shieh's deposition, CMO's counsel did not raise a single objection as to the scope of the questions until more than three-quarters of the way through the deposition, when counsel asserted that "[m]ost of

---

record.  CMO did not make such an objection, and in any event, such an objection would not have been warranted given that Apeldyn's counsel did not behave inappropriately toward Ms. Shieh during the deposition.

27

[Apeldyn's] questions today have been related to sales." (D.I. 476.) Despite CMO's contention that Apeldyn had agreed to limit topic no. 24 to marketing information during counsels' meet and confer discussions (D.I. 472), CMO's counsel apparently did not document these discussions, or at least did not present the Special Master with any such documentation.[28] Nor did CMO seek any protective order or written clarification concerning the scope of any deposition topics. Moreover, it is not lost on the Special Master that Mr. Tung Sheng (Johnathon) Lan—the supplemental witness for topic 24—testified as to both sales and marketing information.

Ms. Shieh admittedly spent only about one hour reviewing documents. (D.I. 472 at Ex. 1.) Although Ms. Shieh personally had five years of experience in the R&D Department, she lacked personal knowledge and preparation sufficient to address the full scope of her designated topics. Irrespective of the dispute as to the scope of topic no. 24, the deficiency of Ms. Shieh's preparation is confirmed by the fact that she could not answer questions concerning the information explicitly included within the text of topic no. 24. (*See, e.g.*, Shieh Depo. Tr. at 118:10-124:7 (lack of knowledge concerning working with U.S. customers to set pricing; lack of knowledge about working with customers regarding competition in the U.S. market), 22:12-25:21 (lack of information concerning customer communications), 80:21-86:5 (lack of information regarding communications with customers about U.S. market).) Additionally, Ms. Shieh admitted that she relied on Mr. Wu, one of CMO's other designees, for information responsive to topic no. 26 concerning the Consumer Electronics Show. (*See, e.g.*, Shieh Depo. Tr. at 12:21-14:22).

---

[28]  The record is devoid of any emails, letters, or other documentation confirming the substance of the conversations regarding the noticed deposition topics. Had any agreement been reached to narrow or limit the scope of certain topics, a confirmatory letter could have protected against such a dispute at the deposition or before the

Accordingly, the Special Master concludes that Ms. Shieh was not completely and, therefore, not adequately prepared to testify as a Fed. R. Civ. P. 30(b)(6) designee as to topic no. 24 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition. Topic no. 24 includes information concerning the North American market, sales, and customer communications, none of which Ms. Shieh was adequately prepared to discuss. Furthermore, since CMO closed the deposition of Ms. Shieh to offer a substitute witness in Mr. Lan, Apeldyn did not have a full and fair opportunity to ask questions on topic nos. 25 and 26. Accordingly, the Special Master concludes that Ms. Shieh did not provide adequate testimony as a Fed. R. Civ. P. 30(b)(6) designee as to topics 24-26 of Apeldyn's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition.

## 2.    Appropriate Sanctions

With respect to CMO's inadequately prepared witness, Apeldyn requests an Order: (1) requiring CMO to reimburse Apeldyn for the fees and expenses Apeldyn incurred in taking the Fed. R. Civ. P. 30(b)(6) deposition of Ms. Shieh in Taiwan pursuant to Fed. R. Civ. P. 37(d); and (2) requiring CMO to reimburse Apeldyn for one-half of its fees incurred in deposing Mr. Lan in Los Angeles on the same deposition topics for which Ms. Shieh was designated.

Once again, although AUO and CMO argue that Apeldyn's questioning clearly demonstrates a purpose to create a record of unpreparedness—and it does—the record ultimately supports Apeldyn's contention that Ms. Shieh was not able to fully answer Apeldyn's questions concerning the noticed deposition topics, and the record also supports Apeldyn's contention that Ms. Shieh did not take sufficient steps to adequately prepare to testify on behalf of CMO as a Fed. R. Civ. P. 30(b)(6) designee, particularly given that she spent only about an hour reviewing

Special Master. The Special Master can base his decision only on the present record, which includes Apeldyn's original Amended Notice of Rule 30(b)(6) Deposition.

29

documents. Upon reaching an impasse with counsel, CMO did, however, voluntarily offer a new witness on the same topics at issue, evidencing CMO's good faith attempts to provide informed and prepared witnesses. Ultimately, however, it was CMO's burden to present a prepared witness—or seek a protective order to limit the topics as purportedly agreed to among counsel— and CMO did not satisfy this burden in Ms. Shieh.

Having concluded that CMO did not adequately prepare Ms. Shieh, yet mindful that CMO has already produced a substitute witness, the Special Master concludes that Apeldyn is entitled only to a shifting of costs and fees tailored to remedy only the deficiencies in Ms. Shieh's deposition. However, because the record reflects that CMO unilaterally scheduled Mr. Lan's deposition (albeit due to Mr. Lan's availability) at a time when Apeldyn's counsel was unavailable, Apeldyn should not bear the full cost associated with substitute counsel's preparation for Mr. Lan's deposition.

Accordingly, pursuant to Fed. R. Civ. P. 37(d), CMO is HEREBY ORDERED to reimburse Apeldyn for its fees associated with taking the deposition of Ms. Shieh and one-half of Apeldyn's fees for the preparation and taking of Mr. Lan's deposition in Los Angeles as set forth in detail in the Conclusions, *infra*.

## IV.    CONCLUSIONS

### A.    Shifting of Costs

As to Apeldyn's application to shift costs in accordance with the Court's January 7 Order, for the reasons discussed above, the Special Master concludes that a shifting of certain costs is appropriate and ORDERS that the parties bear the following proportionate shares of the expenses related to Apeldyn's taking of the Fed. R. Civ. P. 30(b)(6) depositions of AUO and CMO in Taiwan:

| Expense Category | Apeldyn Total Expense | AUO Share | CMO Share | Apeldyn Share |
|---|---|---|---|---|
| counsel airfare to Taiwan[29] | $15,675.00 | $1,137.40 (one-third of coach airfare) | $1,137.40 (one-third of coach airfare) | $13,400.20 (remaining expense |
| facility costs[30] | $5,193.10 | $1,081.90 (one-half of cost for AUO witnesses) | $649.14 (one-half of cost for CMO witnesses) | $3,462.06 (remaining expense) |
| travel expenses and costs for court reporter, videographer, and translator[31] | $41,584.64 | $0 | $0 | $41,584.64 |
| document shipping costs[32] | $9,000.15 | $3,000.05 (one-third) | $3,000.05 (one-third) | $3,000.05 (one-third) |
| Total: | | $5,219.35 | $4,786.59 | |

Accordingly, AUO is HEREBY ORDERED to reimburse Apeldyn in the amount of $5,219.35, and CMO is HEREBY ORDERED to reimburse Apeldyn in the amount of $4,786.59. AUO and CMO shall make such payments to Apeldyn within thirty (30) days of the date of this Order.

### B.    The AUO Motion

For the reasons discussed *supra*, it is HEREBY ORDERED that, within thirty (30) days of the date hereof, AUO shall:

---

[29]    Apeldyn requested reimbursement for first class and business class airfare from California to Taiwan. The Special Master limits the shifting of costs to coach airfare. The only evidence in the record showing the coach airfare from California to Taiwan during the relevant time period is the airfare for Apeldyn's translator, who traveled from California at a cost of $1,137.40 per person, for a total cost of $3,412.20 for three Apeldyn attorneys. *See* April 12, 2011 letter from R. Kirk, Attachment A.  This cost is consistent with Mr. Werner's representation during the April 14 hearing that at the time he bought his airfare from California to Taiwan, "[c]oach tickets were just over a thousand dollars." Apr. 14 Hrg. at 120:19-121:2.

[30]    *See* April 12, 2011 letter from R. Kirk, Attachment C.  The total facility charge was $5,193.10 for twelve days rental time and hospitality supply.  AUO's deposition lasted five days. (*See* Appx. A.)  CMO's deposition lasted three days. (*See id.*)  The facility charge has been apportioned based on the number of days of deposition per party—i.e., for AUO, one-half of five-twelfths of $5,193.10 for a total of $1,081.90; for CMO, one-half of three-twelfths of $5,193.10 for a total of $649.14.

[31]    *See* April 12, 2011 letter from R. Kirk, Attachments A (airfare), E (accommodations), F (additional travel and set-up charges), H (international charges for Kao deposition), I (international charges for Yu deposition), and J (international charges for Shieh deposition).

[32]    *See* April 12, 2011 letter from R. Kirk, Attachment D.

31

(a)    produce one or more substitute witnesses in Delaware (or such other mutually agreeable location) at AUO's cost to testify as to topic nos. 6, 15, 19-40, 42, 44, and 45 of Apeldyn's Amended Notice of Rule 30(b)(6) Deposition of AU Optronics Corporation dated September 10, 2010 (D.I. 330);

(b)    produce one or more substitute witnesses in Delaware (or such other mutually agreeable location) at AUO's cost to testify as to topic no. 46 or, alternatively, identify, by name and title or position, the custodians of documents AUO produced in this action and, without being required to reveal privileged information, the factual criteria used to determine appropriate custodians for retrieval of documents;

(c)    reimburse Apeldyn for its fees in connection with the inadequately prepared witnesses ($33,010.00)[33]; and

(d)    reimburse Apeldyn for half of Apeldyn's fees in connection with this motion ($17,470.00)[34].

Therefore, AUO's total monetary sanctions are $50,480.00. Apeldyn shall be responsible for its own costs and fees in connection with the deposition of the substitute witness(es) in Delaware. The Special Master expects that AUO will produce an adequately prepared witness and that Apeldyn will endeavor to extract substantive information beyond what the witness has done to prepare.

---

[33]    *See* April 12, 2011 letter from R. Kirk, Attachment G (attorney fees totaling $66,020.00). The Special Master concludes that it is appropriate to discount the total fees by 50% in that certain preparation activities are presumed to be beneficial for the substitute witnesses that AUO is Ordered to produce.

[34]    *See* April 12, 2011 letter from R. Kirk, Attachment G (attorney fees for preparing the motion of $24,630.00 and for preparing for the hearing of $10,310.00, for a total of $34,940.00).

## C.    The CMO Motion

For the reasons discussed *supra*, the it is HEREBY ORDERED that, within thirty (30) days of the date hereof, CMO shall:

(a)    reimburse Apeldyn for the entirety of Apeldyn's fees in connection with taking the deposition of Ms. Shieh in Taiwan ($14,697.50)[35]; and

(b)    reimburse Apeldyn for one-half of Apeldyn's fees in connection with taking the deposition of Mr. Lan in Los Angeles ($16,762.00)[36].

Therefore, CMO's total monetary sanctions are $31,459.50.

THE SPECIAL MASTER'S ORDER WILL BECOME A FINAL ORDER OF THE COURT UNLESS OBJECTION IS TAKEN IN ACCORDANCE WITH THE ANTICIPATED ORDER OF THE COURT WHICH SHORTENS THE TIME WITHIN WHICH AN APPLICATION MAY BE FILED PURSUANT TO FED. R. CIV. P. 53(f)(2).

SO ORDERED this 8th day of June, 2011.

_____
Vincent J. Poppiti (#100614)
Special Master

---

[35]    *See* April 12, 2011 letter from R. Kirk, Attachment G (attorney fees totaling $29,395.00). The Special Master concludes that it is appropriate to discount the total fees by 50% in that certain preparation activities were beneficial for the deposition of Mr. Lan.

[36]    *See* April 12, 2011 letter from R. Kirk, Attachment G (attorney fees totaling $33,524.00). Apeldyn is willing to discount this amount by 50%. *See id.*

33

**APPENDIX A**

| | |
|---|---|
| April 2010 | Apeldyn Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) to AUO (*See, e.g.*, Dec. 6 Hrg. at 36:9-24) |
| April 23, 2010 | AUO Objections to Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) (*See, e.g.*, Dec. 6 Hrg. at 36:9-24) |
| September 10, 2010 | Apeldyn Amended Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) to AUO (D.I. 330) |
| September 10, 2010 | Apeldyn Amended Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) to CMO (D.I. 333) |
| November 1, 2010 | Apeldyn Motion to Compel Deposition of AUO in the United States (D.I. 352) |
| November 9, 2010 | CMO Objections to Amended Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) (*See, e.g.*, Dec. 6 Hrg. at 21:8-22:9, 65:12-66:14) |
| November 16, 2010 | Apeldyn Motion to Compel Deposition of CMO in the United States (D.I. 366) |
| November 29, 2010 | AUO Objections to Amended Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) (*See, e.g.*, Dec. 6 Hrg. at 30:18-31:11) |
| December 1, 2010 | AUO-Apeldyn Meet and Confer (*See, e.g.*, Dec. 6 Hrg. at 30:18-31:11) |
| December 3, 2010 | CMO-Apeldyn Meet and Confer (*See, e.g.*, D.I. 475 at p. 2; D.I. 476 at p. 2 ) |
| | AUO rejects Apeldyn offer to pay 50% of costs if AUO agrees to bring Fed. R. Civ. P. 30(b)(6) designees to the United States (Dec. 6 Hrg. at 11:22-12:15) |
| December 6, 2010 | Special Master Hearing on Apeldyn Motions to Compel |
| | CMO rejects Apeldyn offer to pay 50% of costs if CMO agrees to bring Fed. R. Civ. P. 30(b)(6) designees to the United States (Dec. 6 Hrg. at 11:22-12:15) |
| December 7, 2010 | CMO-Apeldyn Continued Meet and Confer (*See, e.g.*, D.I. 475 at p. 2; D.I. 476 at p. 2 ) |
| December 13, 2010 | Special Master's Order Denying Apeldyn's Motions to Compel and Ordering Fed. R. Civ. P. 30(b)(6) Depositions of AUO and CMO to Proceed in Taiwan (D.I. 380) |
| January 6, 2011 | CMO Provides Fed. R. Civ. P. 30(b)(6) Witness Designations (*See, e.g.*, D.I. 472 at Ex. 5) |
| | Judge Robinson Orally Advises Special Master Poppiti that the Court will Affirm the Special Master's Substantive Ruling in the December 13 Order |
| | Special Master hearing on Apeldyn's Motion to Compel CMO and AUO to Provide Requested Information Relating to Depositions in Taiwan (D.I. 399) |
| January 7, 2011 | Court's Order Affirming Special Master's December 13 Order (D.I. 405) |
| | AUO Provides Initial Fed. R. Civ. P. 30(b)(6) Witness Designations (five witnesses, subject to modification) (*See, e.g.*, Apeldyn Apr. 6, 2011 Letter to Special Master Poppiti at Ex. E (Jan. 7 email from P. Wied)) |

i

ii

**APPENDIX A**

| January 14, 2011 | AUO Provides First Supplemental Witness Designations (reduced from five to three) (*See, e.g.*, Apeldyn Apr. 6, 2011 Letter to Special Master Poppiti at Ex. E (Jan. 14 email from P. Wied); Apr. 5 Hrg. at 21:12-13) |
|---|---|
| January 19, 2011 | Deposition of Y.Y. Tsai, Corporate Designee for CMO (Taiwan) (*See, e.g.*, D.I. 472 at Ex. 5) |
|  | AUO Provides Second Supplemental Witness Designations (transferred topic nos. 6 and 24 from Ho to Kao) (*See, e.g.*, Apeldyn Apr. 6, 2011 Letter to Special Master Poppiti at Ex. E (Jan. 19 email from P. Wied)) |
| January 20, 2011 | Deposition of Ken Wu, Corporate Designee for CMO (Taiwan) (*See, e.g.*, D.I. 472 at Ex. 5) |
| January 21, 2011 | Deposition of Denise Shieh, Corporate Designee for CMO (Taiwan) (*See, e.g.*, D.I. 472 at Exs. 1, 5) |
| January 24-25, 2011 | Deposition of Kelly Kao, Corporate Designee for AUO (Taiwan) (*See, e.g.*, D.I. 435 at Ex. 2) |
| January 26, 2011 | Deposition of Spencer Yu, Corporate Designee for AUO (Taiwan) (*See, e.g.*, D.I. 435 at Ex. 3) |
| January 27-28, 2011 | Deposition of Chia Pu Ho, Corporate Designee for AUO (Taiwan) (*See, e.g.*, Apeldyn Apr. 6, 2011 Letter to Special Master Poppiti at Ex. E (Jan. 19 email from P. Wied)) |
| January 28, 2011 | Deposition of Todd Middleton, Corporate Designee for CMO USA (*See, e.g.*, D.I. 472 at Ex. 5) |
| February 16, 2011 | Deposition of Jonathan Lan, Corporate Designee for CMO (Los Angeles) (*See, e.g.*, D.I. 472 at Exs. 6, 9) |
| February 16, 2011 | Deposition of Jeremy Chen, Corporate Designee for AUO America (*See, e.g.*, D.I. 435 at Ex. 4) |