**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) | |
| *Plaintiffs*, | ) ) | **C.A. No. 4:24-cv-00980-ALM** |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| AMERICAN AIRLINES, INC. | ) ) | |
| *Defendant*. | ) | |

**CORRECTED PLAINTIFFS' MOTION TO
COMPEL DISCOVERY AND FOR OTHER RELIEF**

███████████

**TABLE OF CONTENTS**

<u>**Page**</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL STANDARD ......................................................................................... 3

IV.     AA FAILED TO PRODUCE RELEVANT DISCOVERY .................................. 4

       A.      AA Failed To Produce Relevant Documents Regarding Unlicensed Backend Technologies ....................................................................................... 4

              1.      AA Failed To Produce Discovery Regarding Licensed Technology Including Historical Migration And Configuration Information And Related To AA's License Defense or Backend Technology ...................... 5

       B.      AA Refused To Produce Discovery On Accused Wi-Fi And LTE Technology .... 7

              1.      AA Failed To Produce Discovery On LTE And Wi-Fi Identified in IV's Infringement Contentions And Reasonably Similar To The Same ... 9

       C.      AA Failed To Adequately Prepare Its Witnesses For 30(b)(6) Depositions ........ 11

              1.      Backend Patents .......................................................................................... 11

              2.      Wi-Fi/LTE Patents ..................................................................................... 11

V.      CONCLUSION .................................................................................................. 13

██████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brazos River Authority v. GE Ionics, Inc.*,
    469 F.3d 416 (5th Cir. 2006) ................................................................................1

*Bright Sols., Inc. v. Tire Seal, Inc.*,
    No. 5:06CV247, 2008 WL 11347983 (E.D. Tex. Jan. 14, 2008) ..............................1

*Butowsky v. Folkenflik*,
    No. 4:18-cv-00442, 2020 WL 9936143 (E.D. Tex. Sept. 1, 2020)............................1

*Diamond Consortium, Inc. v. Manookian*,
    No. 4:16CV94-ALM, 2017 WL 3301527 (E.D. Tex. Aug. 3, 2017) ........................1

*EpicRealm Licensing LLC v. Autoflex Leasing, Inc.*,
    Nos. 2-07-CV-163-DF-CMC & 2-05-CV-356-DF-CMC, 2007 WL 2580969
    (E.D. Tex. Aug. 27, 2007) .....................................................................................1

*Hebert v. Lando*,
    441 U.S. 153 (1979)..............................................................................................1

*In Laserdynamics, Inc. v. Asus Computer International*,
    2009 WL 153161 (E.D. Tex. Jan. 21, 2009)...........................................................1

*Ioli Trust v. Avigilon Corp.*,
    No. 2:10–cv–605–JRG, 2012 WL 5830711 (E.D. Tex Nov. 16, 2012) ...................1

*Raytheon Co. v. Cray, Inc.*,
    No. 2:15-cv-01554-JRG-RSP, 2017 WL 2633696 (E.D. Tex. June 19, 2017) ........1

*STMicroelectronics, Inc v. Motorola, Inc.*,
    308 F. Supp. 2d 754 (E.D. Tex. 2004)...................................................................1

**Other Authorities**

Fed. R. Civ. P. 11 ........................................................................................................1

Fed. R. Civ. P. 30(b)(6)................................................................................................1

Fed. R. Civ. P. 34 ........................................................................................................1

Local Rule CV-26(d) ...................................................................................................1

████████████████

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| 1. | September 15, 2025 letter from Casey L. Shomaker to Jonathan K. Waldrop. |
| 2. | March 5, 2025 letter from John B. Campbell to Jonathan K. Waldrop. |
| 3. | May 22, 2026 email string between Jeceaca An to Casey L. Shomaker. |
| 4. | ████████████████████████████████████ |
| 5. | March 31, 2026 email string between Casey L. Shomaker and John Downing. |
| 6. | April 1, 2026 email string between Casey L. Shomaker and John Downing. |
| 7. | ████████████████████████████████████ |
| 8. | ████████████████████████████████ |
| 9. | July 2, 2026 email string between Helena D. Kiepura and John Downing regarding ██████. |
| 10. | Defendant's February 10, 2026 Objections and Responses to Plaintiffs' Notice of 30(b)(6) Deposition. |
| 11. | February 27, 2026 email string between Casey L. Shomaker and Intellectual Ventures' counsel. |
| 12. | ████████████████████████████████ |

## I.    INTRODUCTION

As directed by the Court[1], Intellectual Ventures I LLC and Intellectual Ventures II LLC, (together "IV") respectfully files this motion to compel discovery that American's Airlines, Inc. ("AA") has refused to produce. AA has failed to comply with its discovery obligations by refusing to produce discovery in its possession, custody, and control regarding: (1)(a) licensed backend technology solely for the purpose of calculating damages and evaluating AA's license defense, and 1(b) AA's infringement of unlicensed backend technology; (2) unlicensed Wi-Fi and LTE products; and (3) preparation and testimony on 30(b)(6) topics concerning the same. AA contends that it is not obligated to produce any discovery on licensed technology, however, IV has made clear throughout the case that IV is not accusing licensed technology. AA also contends that it does not need to provide discovery on any technology that is not specifically identified in IV's infringement contentions. However, this Court requires defendants to provide discovery on reasonably similar technology. Due to AA's refusal to engage in fulsome discovery, IV also requests a 60-day extension of the fact discovery deadline to complete this requested discovery, which should not affect the Court's March 1, 2027, trial date.

While the technology in this case is complicated, the issues before the Court are simple: (1) AA's refusal to produce information in its possession, custody, and control on the basis that some of that information may pertain to third parties, (2) AA's unilateral decision to limit the scope of discovery on the basis that they are not specifically identified in IV's infringement contentions, and (3) AA's refusal to provide discovery relevant to a claim and defense in this case (i.e., the

---

[1] During a June 22, 2026 telephonic hearing, the Court authorized IV to file an expedited motion to compel regarding discovery disputes with AA. *See* Dkt. 139. Since the hearing, IV diligently worked to narrow the disputes before the Court, including regarding additional license issues last week and this week, which delayed this filing. IV apologizes to the Court for any inconvenience this delay has caused.

scope of discovery may be broader than the claims themselves). For the reasons explained below, IV requests that the Court order AA to produce the items above, as specifically identified in Exhibit A.[2]

## II.    FACTUAL BACKGROUND

On November 2, 2024, IV filed a complaint against AA alleging that AA infringed certain patents. On August 5, 2025, IV filed its Amended Complaint alleging that AA infringed United States Patent Nos. 8,332,844 ("the '844 Patent"), 8,407,722 ("the '722 Patent"), 7,949,785 ("the '785 Patent"), 7,257,582 ("the '582 Patent"), 7,712,080 ("the '080 Patent"), 7,721,282 ("the '282 Patent"), 7,822,841 ("the '841 Patent"), 8,352,584 ("the '584 Patent") (collectively the "Backend Patents"), 7,324,469 ("the '469 Patent"), 11,032,000 ("the '000 Patent"), 8,027,326 ("the '326 Patent") (collectively the "Wi-Fi/LTE Patents" together with the Backend Patents, "the Asserted Patents").

From the beginning of the case, AA has asserted that it would not produce relevant documents outside of IV's infringement contentions.[3] AA continued to use this objection to refuse to produce relevant documents in this case. *See* Ex. 1 ("American understands that its public cloud providers are licensed. Accordingly, these non-accused functionalities are not within the scope of this case. American will therefore not produce documents or provide information about its activities relevant only to its use of licensed public clouds as they are not relevant to any claim or defense in this case.").

---

[2] All "Ex. __" refer to exhibits to the Declaration of Jonathan K. Waldrop filed concurrently herewith.

[3] *See* Ex. 2 ("Because American's licensed use of the asserted patents is not relevant the pleaded claims or defenses in an action, American will not be producing any information relating to it in this action."). Indeed, the Court granted IV's prior motion to compel AA to produce discovery into the patents asserted in IV's amended complaint on the grounds that its then-pending motion to dismiss protected AA from having to engage in discovery for the newly asserted patents. *See* Dkt. 109.

2

While IV has been clear that it is <u>not</u> accusing licensed technology of infringement, that doesn't permit AA to block discovery in its possession, custody, or control necessary to determine the full scope of AA's license defense and damages liability. ██████████████ ████████████████████████ Discovery about such third-party software is necessary to determine infringement and damages.[4] However, AA has not produced all agreements between AA and all suppliers of the relevant technology.  In fact, rather than providing any of this discovery, AA has made baseless Rule 11 accusations against IV, alleging IV is accusing and seeking recover damages for licensed technology – that is simply false. IV has explained this issue to AA numerous times, including as recently as a few weeks ago in an attempt to resolve this issue to no avail. *See* Ex. 3.

## III.   LEGAL STANDARD

The federal courts accord litigants a broad and liberal application of the rules of discovery. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). The Eastern District of Texas "adheres to, as the Federal Rules of Civil Procedure contemplate, a policy of liberal discovery." *STMicroelectronics, Inc v. Motorola, In*c., 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004). This Court has followed other sister courts in patent litigation, clearly stating its opinion on discovery tactics designed to prejudice the ability of a litigant to obtain discovery in patent cases. The patent rules "are not like other forms of discovery which require a formal request by the opposing party. Rather, it is the responsibility of the party itself to make disclosures that satisfy the Rules." *Ioli Trust v. Avigilon Corp.*, No. 2:10–cv–605–JRG, 2012 WL 5830711 (E.D. Tex Nov. 16, 2012), (internal citation omitted). This Court has also ordered defendants to provide discovery from third parties that is readily available to the defendant.

---

[4]To the extent IV is seeking information regarding AA's public cloud, this information is solely for the purpose of determining AA's damages.

## IV.    AA FAILED TO PRODUCE RELEVANT DISCOVERY

### A.    AA Failed To Produce Relevant Documents Regarding Unlicensed Backend Technologies

As explained above in Section II, AA refused to provide discovery related to AA's usage of third-party software, and historical migration and configuration information, including information about containerized environments (*e.g.*, containerd or Docker), Kubernetes, Kafka, Spark, PySpark, Hadoop, and related technologies. AA limited its responses to a subset of legacy on-premises applications managed through ████████████████ The deposition of Casey Gordon, however, confirmed that AA's discovery position improperly excluded a substantial portion of the relevant computing environment and, at a minimum, prevented IV from obtaining the information necessary to understand how the accused implementations operate, what standards they implement, and the role of unlicensed third-party components ████████████████ ████████████████████████████████.[5] For example, Mr. Gordon ████████████ ████████████████████████ *See* Ex. 4 at ████████. As AA presumably knows, Dynatrace is a system that monitors cluster operations and identifies operational and connectivity issues. AA's ████████████ would lead to documents about certain Kubernetes clusters and its on-premises usage. Even AA's own produced documents indicate that these monitoring documents are available. *See also* AA_IV_0087738 ████████████████████ ████████████████████████ While AA has produced publicly available Dynatrace materials, ████████████████████████████████.

---

[5] *See* Ex. 4 at ████████ ████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████

4

█████████████

This requested discovery includes historical information regarding the same during the relevant damages period given the implementations have changed over time, including a transition from on premises (likely unlicensed) to public cloud environments (potentially licensed). *See* Ex. 4 at ████ ████████████████████████████. Mr. Gordon testified that ████████████ ██████████████████████████████████████████ *Id.* at ████████.

Yet American has produced virtually no discovery identifying when Kubernetes clusters were deployed, when workloads migrated from on-premises environments to ███████████████ ██████████████, how those environments changed over time, or whether the accused functionality migrated between different implementations during the damages period. *Id.* at ████ ██ ████████████████████████████████████████████████████████

████████████████ *Id.* at ████████ ████████████████████████████████

████████████████████████████████████████████████████████████

Therefore, based on these examples and those in Exhibit A, IV respectfully requests that the Court compel AA to produce documents regarding clusters related to AA's use of ████████████ ██████████████████████.

### 1. AA Failed To Produce Discovery Regarding Licensed Technology Including Historical Migration And Configuration Information And Related To AA's License Defense or Backend Technology[6]

Under the Local Rules, documents relevant to the parties' claims and defenses include:

(1) "information that is likely to have an influence on or affect the outcome of a claim or defense";

---

[6] These arguments also apply to AA's failure to produce adequate written discovery. AA has similarly failed to fulfill its discovery obligations with regards to written discovery such as interrogatories about the Wi-Fi/LTE Patents and the Backend Patents. This is expressly improper when a party is asking about the functionality of a product. *In Laserdynamics, Inc. v. Asus Computer International,* 2009 WL 153161 (E.D. Tex. Jan. 21, 2009), the Court noted that it was "implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate." *Id*. IV respectfully requests that AA provide complete, direct answers to IV's Interrogatory Nos. 1-6, 10-11 and 21 (related to the

(2) "information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense"; and (3) even "information that would not support the disclosing parties' contentions." L.R. CV-26(d). AA cannot reasonably argue that information related to the migration and configuration of the licensed technologies is not included in these broad categories.[7] Yet despite their obvious relevance, AA continues to refuse to produce these documents, and has even threatened sanctions for seeking this discovery. *See* Ex. 5; *see also*, *Butowsky v. Folkenflik*, No. 4:18-cv-00442, 2020 WL 9936143, at *24 (E.D. Tex. Sept. 1, 2020), ("denying rule 11 motion for sanctions when the motion "appears to be based on disputed evidence, speculations about the contents of remaining discovery, and subjective opinions as to [Plaintiff's] intent, none of which are proper bases for Rule 11 sanctions.). *report and recommendation adopted*, No. 4:1-cv-00442, 2020 WL 9936140 (E.D. Tex. Sept. 21, 2020).

Although AA claims it has a license defense, American has yet to provide the factual basis for its license defense even after the Court ordered AA to produce and file affirmative defenses. Dkt. 139 (Order), Dkt. 160 ("Fourth Defense (License/Exhaustion) Any alleged practice of any Asserted Claim is covered by license, release, wavier, and/or exhaustion."). In fact, AA has not produced: (1) all agreements between AA and its suppliers of licensed components; or (2) information regarding AA's costs and expenditures for third-party cloud services, and other server, networking, and cloud infrastructure during the relevant period – both of which are necessary to analyze damages. The agreements identify the scope of the rights AA contends it possesses, while AA's expenditures provide objective evidence regarding the scope and value of

---

Backend Patents), and  8, 21, 22 and 23 (related to the Wi-Fi/LTE Patents), and explicitly identify all structural components of the accused products (LTE and Wi-Fi components) that map to the limitations of the asserted claims.

[7] As stated above, to the extent IV seeks information related to AA's public cloud, it is solely for the purposes of damages liability, not for the purposes of infringement.

6

the allegedly unlicensed technologies. IV is entitled to AA's costs and expenditures associated with AA's use of cloud services because they bear directly on the value of the damages calculations of the unlicensed implementations.

AA has this information readily available and should be compelled to produce this information. *See* Ex. A.

**B.    AA Refused To Produce Discovery On Accused Wi-Fi And LTE Technology**

IV has also requested documents concerning AA's implementations of Wi-Fi/LTE connectivity and related costs information which are necessary to show the extent of AA's non-licensed use of these components and to calculate damages. *See Bright Sols., Inc.* at 4. These documents would identify the relevant W-Fi and LTE components AA uses, how AA implements such components, and the functionality of such components.

AA's witnesses also confirmed that responsive historical information existed but had not been gathered. For example, Mr. Stillo testified that

*See* Ex. 7 at

He further testified that

Ex. 7 at

*see* 34:14–19

*see*

7

██████████ AA has not produced any of this despite the fact its own designees repeatedly identified repositories, records, systems, vendors, and personnel containing responsive information. *See* Ex. 7 and Ex. 4.

Surprisingly, Mr. Stillo (one of AA's 30(b)(6) designated witnesses) brought a document to his deposition he had prepared ████████████████████ ████████████ that also illustrates how AA could have collected relevant information but chose not to. ████████████████████

████████████████████

████████ *See* Ex. 8. ████████████

████████████████ *See* Ex. 8. IV had never seen this document before. Exhibit 6 contains information IV has repeatedly asked for and AA has repeatedly refused to produce. The existence of Exhibit 6 further demonstrates that responsive information could have been and should have been produced by AA.

Up until and even after the deposition of Mr. Stillo, AA continues to make IV serve subpoenas to third parties for relevant information that is readily available to AA as described above. *See Diamond Consortium, Inc. v. Manookian,* No. 4:16CV94-ALM, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017) (internal citations omitted) (stating that "Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty.")

████████████████████

████████████████████

████████████████████

████████████████████

████████████ . Ex. 7 at ████████ ████████

8



AA's objections necessitated IV having to serve subpoenas to third-party vendors to access relevant information, such as which vendor provided which component(s) and part(s) to AA. *See* Ex. 6 (

).

*See* Ex. 7 at ▆▆▆. Nevertheless, American produced no witness capable of explaining whether those components were deployed, how this component was configured, whether they provided the accused functionality, or how they related to the systems installed on American aircraft.

IV respectfully requests that the Court compel AA to produce all documents as set forth in Exhibit A sufficient to identify all components of AA's LTE and Wi-Fi systems, along with AA's Sceptre inventory management system and Aircraft Illustrated Parts Catalog, including but not limited to installation history, serial-number tracking, maintenance records and retrofit - installation and historical aircraft configuration information.

> **1. AA Failed To Produce Discovery On LTE And Wi-Fi Identified in IV's Infringement Contentions And Reasonably Similar To The Same**

IV's infringement contentions sufficiently identified AA's infringement of IV's patented LTE and Wi-Fi technology. However, AA failed to comply with its discovery obligations by

████████████

refusing to produce discovery regarding LTE and Wi-Fi technology identified in IV's infringement

contentions, as well as reasonably similar technology.

AA limited discovery to solely the technology and products specifically identified in IV's

infringement contentions – taking a narrow interpretation of what was specifically identified. This

is improper. *See EpicRealm Licensing LLC v. Autoflex Leasing, Inc.*, Nos. 2-07-CV-163-DF-CMC

& 2-05-CV-356-DF-CMC, 2007 WL 2580969 at *3 (E.D. Tex. Aug. 27, 2007) (rejecting

proposition that discovery can be obtained only if it relates to an accused product identified in

party's preliminary infringement contentions and concluding that "the scope of may include

products and services "reasonably similar" to those accused in the [preliminary infringement

contentions]."); *Bright Sols., Inc. v. Tire Seal, Inc.,* No. 5:06CV247, 2008 WL 11347983, at *4

(E.D. Tex. Jan. 14, 2008) (compelling defendants to produce discovery outside of the four products

specifically identified in plaintiff's infringement contentions).

On multiple occasions IV requested discovery on reasonably similar technology, including

but not limited to, █████████████████████████████. *See* Ex. A for full list.

Rather than produce this discovery, AA insisted that IV serve subpoenas to third parties to obtain

this information. *See* Ex. 6 ████████████████████████

████████████████████████████████

████████████████████████ Yet at the same time, AA appears to be

instructing those third parties not to produce anything as evidenced by third-party ██████████

████████████████████████████████

████████████████████. *See* Ex. 9 ("Regarding the ████████,

it is neither in IV's complaint nor in IV's infringement contentions. Thus, IV's late request that

████, a third party, collect and produce information about this product is unduly burdensome

10

and appears to be an irrelevant fishing expedition."). AA's apparent obstruction of discovery on relevant reasonably similar technology is untenable, especially since it has this information in its possession, custody and control as explained below in Section IV(C)(2). IV respectfully requests the Court order AA to comply with its discovery obligations and provide discovery on the reasonably similar technology listed in Exhibit A.

### C.   AA Failed To Adequately Prepare Its Witnesses For 30(b)(6) Depositions

#### 1.   Backend Patents

AA designated witnesses who were inadequately prepared to answer questions on topics related to the Backend Patents. Similar to the Wi-Fi/LTE Patents, AA designated Casey Gordon as a Rule 30(b)(6) witness on topics 2, 4, 5, 9, 12, 14, 15, 18-31, and 33-4, relating to AA's use of ███████, containerized environments, ████████████████, cloud infrastructure, and related technical platforms. *See* Ex. 10 and Ex. 11. ███████████████████

████████████████████████

████████████████ *See* Ex. 4 at 195: 3-9 (████████████

████████████████████████

████████████████████████ IV was thus prevented from getting complete and meaningful testimony about AA's use of ████████, containerized environments, ████████████████ cloud infrastructure, and related technical platforms – all of which fall within the scope of topics 2, 4, 5, 14 and 21.

#### 2.   Wi-Fi/LTE Patents

AA continues to complicate discovery by not adequately preparing its designees to discuss AA's implementations and configurations of the Wi-Fi and LTE Patents. Courts have held that if the deponent designates a person to testify, the deponent must prepare that person to answer the questions posed about the subject matter. *See Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d

416, 433 (5th Cir. 2006) ("The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."). If a designee is unable to adequately respond to relevant questions on listed subjects, the responding corporation has a duty to timely designate additional, supplemental witnesses as substitute deponents. *See id.*; *see also Raytheon Co. v. Cray, Inc.*, No. 2:15-cv-01554-JRG-RSP, 2017 WL 2633696, at *2 (E.D. Tex. June 19, 2017) (allowing plaintiff to reexamine defendant's deponent about what "hardware, and software are covered by the asserted patents… because without it [plaintiff] cannot tie revenue, expenses, and commercialization efforts to specific patents.).

Based on multiple depositions, it is apparent that AA's designees have not been properly prepared. For example, AA designated Anthony Stillo to testify on topics 2, 4, 11, 13, 15, 19, 21, 22, 23, 24, 26-32, and 34-41 as those topics relate to ▮▮▮▮▮▮▮▮▮▮▮▮▮[8] However, Mr. Stillo was not prepared to discuss Topics 4 and 15 for instance.[9] Mr. Stillo testified he ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ despite being the designee for Topic 4 X and X. *See* Ex. 7 at 219:8-17, 71:12-18. Similarly, AA designated Brian Riffe as its 30(b)(6) witness for topics such as 2, 10, 13, 15, 19, 21, 22, 23, 24, 29, 34, 35, 36, 37, 38, 39, 40, 41 as those topics relate to

---

[8] *See* Ex. 10.

[9] Topic 4 states that Mr. Stillo be prepared to discuss "all internal or external software or applications that utilize or are linked to American's implementation of the Accused Functionalities during the Damages Time Period." Topic 15 states that AA prepare Mr. Stillo to discuss "The identity and operation of each Accused Instrumentality (and all versions thereof), including but not limited to those made the subject of IVs' Infringement Contentions, that are or have been: (i) made, used, sold, or offered for sale in the United States by (or for) American since the issuance of the Patent-in-Suit, and/or (ii) otherwise utilized in, or with, any product(s) made, used, sold, or offered for sale in the United States by (or for) American since the issuance of the Patent-in-Suit."

████████████

AA's in-flight Wi-Fi products, but Mr. Riffe could not testify on topics 15, 21 and 24 as to the components that provided Wi-Fi functionality. *See e.g.,* Ex. 12. Even though Mr. Riffe was the designated Wi-Fi witness, Mr. Riffe stated that Mr. Stillo was the proper deponent for ████ and Wi-Fi, but Mr. Stillo could not answer the questions either. *See* Ex. 12 at ████████ and Ex. 7 at 219:8-17 ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Therefore, IV respectfully requests that the Court compel AA to designate an adequately prepared corporate witness(es) for Rule 30(b)(6) deposition topics including but not limited to, 4, 5, 12, 14, 15, and 21 as set forth in more detail in Exhibit A.

## V.    CONCLUSION

For the reasons set forth above, IV respectfully requests that the Court grant this Motion to Compel and enter the Proposed Order submitted herewith, compelling AA to serve full and complete responses to IV's interrogatories within fourteen (14) days of the Court's order, extend the fact discovery deadline by sixty (60) days, and for such other and further relief to which IV may be justly entitled.

Dated: July 14, 2026

RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com

13

ThucMinh Nguyen (CA Bar No. 304382)
(Admitted in this District)
tnguyen@kasowitz.com
**KASOWITZ LLP**
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 358-4408

Paul G. Williams (GA Bar No. 764925)
(Admitted in this District)
pwilliams@kasowitz.com
**KASOWITZ LLP**
1230 Peachtree Street N.E., Suite 3750
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

Jeceaca An (NY Bar No. 5849898)
(Admitted *pro hac vice*)
jan@kasowitz.com
Binta Watkins (NY Bar No. 5482492)
(Admitted *pro hac vice*)
bwatkins@kasowitz.com
Kristine Abrenica (NY Bar No. 5781489)
(Admitted *pro hac vice*)
kabrenica@kasowitz.com
Paula Ajumobi (NY Bar No. 6056097)
(Admitted *pro hac vice*)
pajumobi@kasowitz.com
**KASOWITZ LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1800
Facsimile: (212) 506-1700

Allen F. Gardner (TX Bar No. 24043679)
allen@allengardnerlaw.com
**ALLEN GARDNER LAW, PLLC**
609 S. Fannin
Tyler, Texas 75701
Telephone: (903) 944-7537
Facsimile: (903) 944-7856

**Attorneys for Plaintiffs**
**INTELLECTUAL VENTURES I LLC and**
**INTELLECTUAL VENTURES II LLC**

14

## CERTIFICATE OF CONFERENCE

At the June 22, 2026 hearing, the Court directed IV to file this motion to compel. *See* June 22, 2026 Hearing Transcript at 12:11-20. Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel for Plaintiffs conferred with counsel for Defendant, on June 22, 2026 and prior thereto, concerning the relief requested in this motion, and Defendant represented that it is opposed to the relief requested in this motion.

Date:  July 14, 2026

/s/ Jonathan K. Waldrop
Jonathan K. Waldrop

15

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on July 14, 2026, via electronic mail.

/s/ *Jonathan K. Waldrop*
Jonathan K. Waldrop